UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MELINDA SERIN, JUDSON RUSS, LONG SOUI   :
LIM, PERI KETTLER, GORDON REDNER, AND   :
THOMAS J. SMITH,   :
  :
                    Plaintiffs,   :
  :   06 CV 1625 (SCR)
  :
        - against -   :
  :
NORTHERN LEASING SYSTEMS, INC., JAY   :
COHEN, RICH HAHN, and SARA KRIEGER,   :
  :
                  Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO DISMISS

EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York 10177
212-351-4500

Attorneys for Defendants

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS ...... 1

STATEMENT OF FACTS ....................................................................................... 2

    A.   Summary of Allegations ............................................................................ 2

    B.   Prior RICO Cause of Action ...................................................................... 4

STANDARD OF REVIEW ....................................................................................... 5

I      PLAINTIFFS' CLAIMS UNDER  18 U.S.C. §1962(C) SHOULD BE DISMISSED ...... 6

    A.   Elements of a RICO claim under Section 1962(c) ........................................ 6

    B.   Filing of a lawsuit – even if meritless or harassing – is  not "extortion" under the Hobbs Act or New York law .............................................................. 7

    C.   Plaintiffs' RICO claims also fail  because defendants are not an "enterprise" ............... 10

    D.   Statute of limitations bars RICO claims by four of six plaintiffs ..................................... 12

II     PLAINTIFFS' RICO COUNT, ALLEGING A RICO  CONSPIRACY UNDER 18 U.S.C. §1962(d), MUST ALSO BE  DISMISSED FOR FAILURE TO STATE A CLAIM ........................................................................................................ 15

III    PLAINTIFFS' SECTION 349(a) CLAIMS SHOULD BE DISMISSED ....................... 17

IV    PLAINTIFFS' CLAIMS ARE BARRED BY  RES JUDICATA AND THE COLORADO RIVER DOCTRINE. ................................................................. 20

    A.   Plaintiffs' Claims should be dismissed under the Colorado River doctrine .................... 20

    B.   Plaintiffs' claims are barred by res judicata ......................................................... 22

Conclusion ........................................................................................................ 25

# TABLE OF AUTHORITIES

## CASES

Adler v. Berg Harmon Associates, 790 F. Supp. 1222 (S.D.N.Y. 1992) .......................16

Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143 (1987).........................12

Allen v. New World Coffee, Inc., No. 00 Civ. 2610, 2001 WL. 293683 (S.D.N.Y. Mar. 27, 2001) ......................................................................................................................16

Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85 (2d Cir. 1999).................................10

Andrea Doreen Ltd. v. Building Material Local Union 282, 299 F. Supp. 2d 129 (E.D.N.Y. 2004)...................................................................................................8, 9

Arkwright-Boston Manufacturers Mutual Insurance Co. v. City of New York, 762 F.2d 205 (2d Cir. 1995).........................................................................................................22

Bannon v. Bannon, 270 N.Y. 484, 1 N.E.2d 975 (1936).........................................23

Bennett v. United States Trust Co, 770 F.2d 308 (2d Cir. 1985)................................10

Building Industry Fund v. Local Union No. 3, International Brotherhood of Electric Workers, 992 F. Supp. 162 (E.D.N.Y., 1996) aff'd mem., 141 F.3d 1151 (2d Cir. 1988)..........8, 9

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) ..................20

Creed Taylor, Inc. v. CBS, Inc., 718 F. Supp. 1171 (S.D.N.Y. 1989)..............................24

Cruz v. NYNEX Information Resources, 263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dep't 2000) ................................................................................................................17

De Cisneros v. Younger, 871 F.2d 305 (2d Cir. 1989).................................................21

DeFalco v. Bernas, 244 F.3d 286 (2d Cir. 2001)........................................................10

DirecTV Inc. v. Lewis, No. 03-CV-6241, 2005 WL. 1006030 (W.D.N.Y. Apr. 29, 2005)............8

Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12 (1st Cir. 2000)......................15

Federated Department Stores, Inc. v. Moitie, 452 U.S. 394 (1981) ..............................22

Federated Rural Electric Insurance Corp. v. Arkansas Electric Cooperative, Inc., 48 F.3d 294 (8th Cir. 1995).....................................................................................................21

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004)...............10

First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89 (S.D.N.Y. 1993), aff'd, 27 F.3d 763 (2d Cir. 1994)................................................................................................11

Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000) ..........................................................13

Frooks v. Town of Cortlandt, 997 F. Supp. 438 (S.D.N.Y. 1998), aff'd mem., 182 F.3d 899 (2d Cir. 1999)..........................................................................................................7

G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233 (S.D.N.Y. 2001)...................8

Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331 (S.D.N.Y. 2000) ....................................6

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985) ..........................................................5

Goshen v. Mutual Life Insurance Co., 98 N.Y.2d 314, 746 N.Y.S.2d 858 (2002) .......19

Grandon v. Merrill Lynch & Co., 147 F.3d 184 (2d Cir. 1998) ......................................5

Heights Community Congressional v. Smythe, Cramer Co., 862 F. Supp. 204 (N.D. Ohio 1994) ..............................................................................................................................9

Hennessy v. Cement and Concrete Worker's Union Local 17A, 963 F. Supp. 334 (S.D.N.Y. 1997)............................................................................................................23

Heslin v. Metropolitan Life Inc. Co., 287 A.D.2d 113 (N.Y. App. Div. 2001)..............19

I.S. Joseph Co. v. J. Lauritzen A/S, 751 F.2d 265 (8th Cir. 1984) ..................................8

In re Integrated Resources Real Estate, Ltd. P'ships Sec. Litigation, 850 F. Supp. 1105 (S.D.N.Y. 1993) ............................................................................................................6

IPS Card Solutions v. Boyd, No 00 Civ 0776, 2000 WL. 620213 (S.D.N.Y. May 12, 2000) ............................................................................................................................20

Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 154 F. Supp. 2d 682 (S.D.N.Y. 2001)................................................................................................6

Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649 (S.D.N.Y. 1996), aff'd mem., 113 F.3d 1229 (2d Cir. 1997)...................................................................................6, 16

Klehr v. A. O. Smith Corp., 521 U.S. 179, 117 S. Ct. 1984, 138 L. Ed. 2d 373 (1997) .........12, 13

Laverpool v. N.Y.C. Transit Authority, 760 F. Supp. 1046 (E.D.N.Y. 1991)...............16

Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993)..................................16

Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80 (2d Cir. 1961) ..........................23

Mann v. Alvarez, No. 96 Civ 2641, 1996 WL. 535540 (S.D.N.Y. Sept. 20, 1996) .....................22

Maurizio v. Goldsmith, 230 F.3d 518 (2d Cir. 2000) .....................................................................17

In re Merrill Lynch Ltd. P'ships Litigation, 154 F.3d 56 (2d Cir. 1998) .......................................15

Migra v. Warren City School District, 465 U.S. 75 (1984) ...........................................................22

Moll v. US Life Title Insurance Co., 654 F. Supp. 1012 (S.D.N.Y. 1987) ....................................11

Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983) ..............20

Moss v. Morgan Stanley Inc., 719 F.2d 5 (2d Cir. 1983) ................................................................6

Mouchantaf v. International Modeling and Talent Association, 368 F. Supp. 2d 303
(S.D.N.Y. 2005) ..............................................................................................................................21

New York University v. Continental Insurance Co., 87 N.Y.2d 308, 639 N.Y.S.2d 283
(1995).............................................................................................................................................17

O'Brien v. City of Syracuse, 54 N.Y.2d 353, 445 N.Y.S.2d 687 (1981) .................................22, 23

Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 623
N.Y.S.2d 529 (1995).......................................................................................................................17

Park South Associates v. Fischbein, 626 F. Supp. 1108 (S.D.N.Y. 1986), aff'd mem., 800
F.2d 1128 (2d Cir. 1986)................................................................................................................8, 9

Pincay v. Andrews, 238 F.3d 1106 (9th Cir. 2001) ......................................................................13

Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339 (2d Cir.
1994) ...........................................................................................................................................5, 10

Rotella v. Wood, 528 U.S. 549 (2000) ...............................................................................12, 13,
14

Salinas v. United States, 522 U.S. 52 (1997)................................................................................15

Saud v. Bank of N.Y., 929 F.2d 916 (2d Cir. 1991).................................................................22, 24

Schmidt v. Fleet Bank, 16 F. Supp. 2d 340 (S.D.N.Y. 1998).......................................................15

Scott v. Bell Atlantic Corp., 282 A.D.2d 180, 726 N.Y.S.2d 60 (1st Dep't 2001).......................19

Slater v. American Mineral Spirits Co., 33 N.Y.2d 443, 354 N.Y.S.2d 620 (1974) ....................23

Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236 (2d Cir. 2002)..............................6

Sony Music Entertainment, Inc. v. Robison, No. 01 Civ. 6415, 2002 WL. 272406 (S.D.N.Y. Feb. 26, 2002) .....................................................................................11

In re Sumitomo Copper Litigation, 104 F. Supp. 2d 314 (S.D.N.Y. 2000)....................15

Telesco v. Telesco Fuel & Masons Materials, Inc., 765 F.2d 356 (2d Cir. 1985)..........21

Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995)...........19

In re Teltronics Services, Inc., 762 F.2d 185 (2d Cir. 1985) .......................................25

United States Fidelity & Guaranty Co. v. Murphy Oil USA, Inc., 21 F.3d 259 (8th Cir. 1994) .............................................................................................................22

United States v. Pendergraft, 297 F.3d 1198 (11th Cir. 2002) .......................................8

Vemco, Inc. v. Camardella, 23 F.3d 129 (6th Cir. 1994) ...............................................9

Viacom International Inc. v. Icahn, 747 F. Supp. 205 (S.D.N.Y. 1990), aff'd, 946 F.2d 998 (2d Cir. 1991)...................................................................................................7

Virgilio v. City of N.Y., 407 F.3d 105 (2d Cir. 2005) cert. denied, 126 S. Ct. 1142 (2006)...........5

Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230 (2d Cir. 2002) .........6

Yaba v. Roosevelt, 961 F. Supp. 611 (S.D.N.Y. 1997) ................................................24

## STATUTES

18 U.S.C. § 1951 ............................................................................................................7

18 U.S.C. § 1961(c) ...................................................................................................2, 7, 10

18 U.S.C. § 1962(d) ...................................................................................................1, 2, 3, 15

Clayton Act, 15 U.S.C. § 15b ....................................................................................12

Hobbs Act, 18 U.S.C. § 1951.....................................................................................3, 7

N.Y. Penal Law § 155.05............................................................................................3, 5, 7, 9

Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. § 1962(c)........................ passim

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MELINDA SERIN, JUDSON RUSS, LONG SOUI          :
LIM, PERI KETTLER, GORDON REDNER, AND          :
THOMAS J. SMITH,                               :
                                               :
                          Plaintiffs,          :
                                               :    06 CV 1625 (SCR)
            - against -                         :
                                               :
                                               :
NORTHERN LEASING SYSTEMS, INC., JAY            :
COHEN, RICH HAHN, and SARA KRIEGER,            :
                                               :
                          Defendants.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' MEMORANDUM OF LAW IN
## SUPPORT OF MOTION TO DISMISS

Defendants Northern Leasing Systems, Inc. ("NLS"), Jay Cohen, Rich Kahn and

Sara Krieger, by their attorneys, Epstein Becker & Green, P.C., submit this memorandum of law

in support of their motion to dismiss the complaint.

Plaintiffs contend that NLS's filing of "bogus" suits against them, nearly all of

which are still pending in New York state court, constitutes "extortion" and is a necessary

"predicate act" under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1962(c).   That assertion is without merit.   Courts within this Circuit and others have

unanimously held that the filing of lawsuits – even meritless ones – cannot, as a matter of law, serve

as the basis for a RICO claim.   Plaintiffs' RICO claim also fails because they have not alleged an

"enterprise" – an essential element of a RICO claim – nor have they satisfied the "distinctness"

requirement.   Plaintiffs' remaining claims, purporting to state a RICO conspiracy claim under 18

U.S.C. § 1962(d) and consumer fraud under Section 349 of New York General Business Law

("Section 349"), should also be dismissed for failure to state a claim.

Moreover, the fact that this litigation is duplicative of a putative class action, as well as counterclaims filed by several of the plaintiffs in actions pending in New York State court, provides independent grounds for dismissal. First, under the <u>Colorado River</u> doctrine, this Court should decline even to exercise subject matter jurisdiction of the action. Second, the principle of res judicata applies because the plaintiffs here are members of the putative class, which alleged identical facts and nearly identical RICO claims, and those RICO claims have been dismissed on the merits by the State court.

**STATEMENT OF FACTS**[1]

**A.      Summary of Allegations**[2]

NLS engages in the business of "financing credit card point of sale (POS) terminals and other business equipment" to "small business persons" like the plaintiffs. (Complaint, ¶ 9,13.) Defendants Cohen, Hahn and Krieger are President, Vice President of Sales and Vice President of Operations, respectively, at NLS. (Complaint, ¶¶ 10-12.) Plaintiffs assert that NLS contends that each of them signed a lease with NLS for such terminals and other business equipment; plaintiffs deny entering into any such leases. (Complaint, ¶¶ 18-80.) Plaintiffs allege that from 1998 to the present, NLS has filed suit or threatened to bring a lawsuit against each of the six plaintiffs in New York state court claiming, in general, that the plaintiffs have breached the terms of the lease agreement each had executed. (<u>Id.</u>)

Plaintiffs allege three separate claims. In the first claim, styled "Count I," plaintiffs seek damages under the civil remedy provisions of RICO, 18 U.S.C. § 1964(c). Plaintiffs allege that the corporate and individual defendants and other unnamed "Conspirators" constitute an "enterprise" within the meaning of 18 U.S.C. § 1961(c) that engaged in a "pattern

---

[1] As noted below, defendants – for purposes of this motion only – must assume all the facts as pled as true. The additional facts as set forth herein regarding defendants' statute of limitations defense are supported by the accompanying affidavit of Sara Krieger, sworn to July 14, 2006 ( "Krieger Aff.").

[2] A copy of the complaint in this action is attached as Exhibit 1 to the Krieger Aff.

of racketeering activity." (Complaint, ¶¶ 86, 91.) This alleged activity consists solely of engaging in a "practice and pattern of starting bogus legal proceedings based on false representations and solely for the purposes of injuring plaintiffs and recovering unwarranted sums through extortion." (Complaint, ¶ 92.) Plaintiffs maintain that the legal proceedings brought by NLS against them "affirmatively misrepresented" facts to the New York state court in the complaints. (Complaint, ¶¶ 93-97.) Plaintiffs assert that while a lawsuit has not been commenced against Redner, he has been threatened with suit. (Complaint, ¶ 98.) Plaintiffs claim that defendants' alleged misrepresentations "deprived the litigation of its legitimacy" and that as a result, defendants "attempted to extort undeserved sums of money from plaintiffs" by means of the lawsuits. (Complaint, ¶¶ 99-100.) Plaintiffs claim that such "extortion" violated both the federal Hobbs Act, 18 U.S.C. § 1951, and New York's "Extortion Act," N.Y. Penal Law § 155.05 (McKinney 1998), which violations constitute the predicate acts of racketeering activity on which their civil RICO claim is based. (Complaint, ¶¶ 92-108.) Plaintiffs claim that the extortion was a "pattern" and not isolated and began as early as January 1998; they then claim that the defendants participated in this alleged scheme and that NLS acted through "its representatives, salesmen, employees and officers." (Complaint, ¶¶ 109, 112.) Plaintiffs claim that they have been injured by having to "waste time and resources responding to defendants's [sic] dunning calls, threats, lawsuit [sic] in New York, retaining lawyers and incurring legal expenses therefor." (Complaint, ¶ 116.)

In Count II, plaintiffs reallege the prior averments and allege a conspiracy under 18 U.S.C. § 1962(d) to participate in the racketeering activity alleged in Count I. (Complaint, ¶¶ 118-123.) In Count III, plaintiffs allege a purely state law claim that defendants committed "deceptive acts or practices" in violation of Section 349 of New York's General Business Law. (Complaint, ¶¶ 124-127.) Defendants now move to dismiss all claims.

**B.     Prior RICO Cause of Action**

In 2004, counsel representing the present plaintiffs brought a putative class action

in New York State court claiming, among other causes of action, a violation of Civil RICO.

Pludeman v. Northern Leasing Systems, Index No. 04/101059 (the "State Action").[3]   In the

RICO cause of action in the State Action, the purported class claimed that defendants' "pattern"

of conduct is to "entrap small businesspersons into signing a 1 page lease, and forge their

signatures of 4-page leases imposing highly onerous terms, charge them excessive sums and

intimidate them into paying undeserved sums by threatening expensive New York litigation."

(See Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opposition") at 19)[4];

see also First Amended Complaint in the State Action, ¶¶1-2.)   The class plaintiffs specifically

asserted that the RICO claims in the State Action were not based on "extortion", "but mail fraud

and wire fraud pursuant to fraudulent scheme."   (Plaintiffs' Opposition at 30.) Nevertheless, a

comparison of the RICO claims in both actions shows that the allegations are nearly identical

despite the difference in predicate acts.   Although a motion to certify the class is pending in the

State Action, a decision has not yet been rendered.

Defendants moved to dismiss the State Action in August 2004.   Although not

named as plaintiffs in the class action, current plaintiffs Russ, Redner and Kettler each filed

affidavits in opposition to the motion to dismiss. (Plaintiffs' Opposition at 4, n.2.)   In their brief

opposing the motion to dismiss, the class representative plaintiffs admitted that "these persons

[Russ, Redner and Kettler, plaintiffs here] are class members here, and are ready, willing and

---

[3]A copy of the First Amended Complaint in the State Action is attached as Exhibit 2 to the Krieger Aff.  The Court should note that the original complaint in the State Action contained a cause of action arising under Section 349. This cause of action was dropped from the First Amended Complaint.  Krieger Aff. ¶ 4.

[4]  A copy of excerpts from the plaintiffs' memorandum of law in opposition to the motion to dismiss in the State Action is annexed as Exhibit 3 to the Krieger Aff.

able to be plaintiffs herein. . . . However, since their interests are adequately protected by the named plaintiffs, we have not filed a motion to intervene." (Plaintiffs' Opposition at 4, n.2.)

The New York Supreme Court dismissed the RICO count, holding that the complaint "fails to sufficiently allege the predicate act of mail and wire fraud." (Decision and Order dated Apr. 7, 2005 ("Decision") at 7.)[5] The court also found that the complaint fails to allege that the enterprise [required by RICO] is distinct from NLS and the allegation that the "corporate defendant associated with its own employees or agents carrying on the regular affairs of [the corporation fails to satisfy the] distinctness requirement" (citing Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994)). (Decision at 8.)[6]

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, the Court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998) (citations omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). Dismissal is appropriate "only if there are no legal grounds upon which relief may be granted." Virgilio v. City of N.Y., 407 F.3d 105, 111 (2d Cir. 2005) (citations omitted) cert. denied, 126 S. Ct. 1142 (2006). While this Court is required to accept the complaint allegations as true and view all inferences in favor of the non-moving party, "conclusory allegations or legal

---

[5] A copy of the decision is attached as Exhibit 4 to the Krieger Aff.

[6] The defendants appealed and the plaintiffs have cross-appealed that decision to the Supreme Court, Appellate Division, First Department. The appeal is still pending. Krieger Aff., ¶6.) However, the Supreme Court's decision is still a "final judgment" for purposes of res judicata, as discussed below.

conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) (quoting Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000)); see Virtual Countries, Inc. v. Republic of South Africa, 300 F.3d 230, 241 (2d Cir. 2002) ("'bald assertions' of harm contained in the complaint were not sufficient to defeat the motion to dismiss") (citation omitted).

Courts within this Circuit carefully scrutinize civil RICO claims. "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations and citation omitted), aff'd mem., 113 F.3d 1229 (2d Cir. 1997). A careful examination of a RICO complaint is necessary to separate a valid claim from one that is "nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." In re Integrated Res. Real Estate, Ltd. P'ships Sec. Litig., 850 F. Supp. 1105, 1148 (S.D.N.Y. 1993).

## Argument
### I

### PLAINTIFFS' CLAIMS UNDER
### 18 U.S.C. §1962(C) SHOULD BE DISMISSED

#### A.    Elements of a RICO claim under Section 1962(c)

The Second Circuit summarized the elements of a civil RICO claim as follows: the plaintiff must prove: (1) that the defendant, (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity," (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise, (7) the activities of which affect interstate or foreign commerce. Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983); Jordan (Bermuda) Inv. Co., Ltd. v. Hunter Green Invs. Ltd., 154 F. Supp. 2d 682, 690 (S.D.N.Y.

2001); Frooks v. Town of Cortlandt, 997 F. Supp. 438 (S.D.N.Y. 1998), aff'd mem., 182 F.3d 899 (2d Cir. 1999). Here, plaintiffs' Count I fails because the alleged actions upon which plaintiffs predicate a RICO claim do not constitute "racketeering activity" as a matter of law, nor has the complaint pleaded the existence of an "enterprise" as that term is used in RICO. Plaintiffs' claims further fail because they are barred, at least in part, by the applicable four-year statute of limitations.

**B.      Filing of a lawsuit – even if meritless or harassing – is not "extortion" under the Hobbs Act or New York law**

To state a claim under RICO, a plaintiff must allege a predicate act of "racketeering activity." 18 U.S.C. § 1961(1) states that the Hobbs Act, 18 U.S.C. § 1951, is such a predicate act, as is an "act or threat involving . . . extortion," such as a violation of N.Y. Penal Law § 155.05. Here, however, because plaintiffs' claims as a matter of law are not violations of the Hobbs Act nor the New York extortion statute, plaintiffs' RICO claims must fail.

The Hobbs Act states in relevant part: "Whoever in any way or degree obstructs, delays, or affects commerce. . . [by] extortion or attempts or conspires so to do. . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951. The act further defines "extortion" as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear. . ." Id. (emphasis added). To prove extortion under the Hobbs Act, a "wrongful means and wrongful objective" must be proven. Viacom Int'l Inc. v. Icahn, 747 F. Supp. 205, 210 (S.D.N.Y. 1990), aff'd, 946 F.2d 998 (2d Cir. 1991).

The linchpin of plaintiffs' RICO claim here is that NLS commenced or threatened baseless or fraudulent civil litigation. (Complaint, ¶92.) However, the "filing of . . . a lawsuit - even if it were meritless and for the purpose of harassment - would not as matter of law

constitute extortion under New York or federal extortion law because it does not involve threat of force, violence or fear, as required under both the N.Y. Penal Law § 155.05(2)(e) and the Hobbs Act, 18 U.S.C. § 1951." Andrea Doreen Ltd. v. Building Material Local Union 282, 299 F. Supp. 2d 129, 149 (E.D.N.Y. 2004); see also Building Industry Fund v. Local Union No. 3, Int'l Bhd. of Elec. Workers, 992 F. Supp. 162, 176 n.9 (E.D.N.Y., 1996) ("The filing of a meritless lawsuit or administrative action, even if for the purpose of harassment, does not involve threat of force, violence or fear.") aff'd mem., 141 F.3d 1151 (2d Cir. 1988); Park South Assocs. v. Fischbein, 626 F. Supp. 1108, 1112 (S.D.N.Y. 1986) (dismissing RICO action based on plaintiff's allegations that defendant's allegedly meritless lawsuit constituted extortion under state law and the Hobbs Act), aff'd mem., 800 F.2d 1128 (2d Cir. 1986).

As Judge Sweet of this Court stated in an action where a plaintiff attempted to allege a violation of the Hobbs Act, "[t]hreats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion." G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001) (citations omitted); see also DirecTV Inc. v. Lewis, No. 03-CV-6241, 2005 WL 1006030, at *5 (W.D.N.Y. Apr. 29, 2005) (copy attached) ("Threats of litigation, even economically ruinous litigation, even unmeritorious litigation, do not constitute extortion") (citation omitted).

Courts in other circuits have reached similar results, refusing to impose Hobbs Act liability even on baseless litigation brought with malice. See, e.g., United States v. Pendergraft, 297 F.3d 1198, 1208 (11th Cir. 2002) (holding threats to sue a public entity cannot constitute Hobbs Act extortion, even where supported by false testimony and fabricated evidence); I.S. Joseph Co. v. J. Lauritzen A/S, 751 F.2d 265, 267-68 (8th Cir. 1984) (holding threats of groundless litigation cannot constitute extortion under the Hobbs Act and stating, "If a suit is groundless or filed in bad faith, the law of torts may provide a remedy. Resort to a federal

criminal statute is unnecessary."); <u>Vemco, Inc. v. Camardella</u>, 23 F.3d 129, 134 (6th Cir. 1994) (holding threats to enforce even a fraudulent contract not extortion under RICO); <u>Heights Cmty Cong. v. Smythe, Cramer Co.</u>, 862 F. Supp. 204, 207 (N.D. Ohio 1994) (dismissing RICO claim and holding that a threat to sue unless a party agreed to settlement was not extortion or a predicate act for RICO purposes).

Plaintiffs' attempt to allege a RICO predicate act on the New York extortion statute is likewise legally insufficient.  As Judge Young made clear in dismissing a civil RICO claim in <u>Andrea Doreen Ltd.</u>, 299 F. Supp. 2d at 148, an extortion claim under N.Y. Penal Law § 155.05 also requires the threat of force, violence, or fear.  Judge Young expressly held that the filing of a meritless lawsuit does not constitute "extortion" under New York law in <u>Building Industry Fund,</u> 992 F. Supp. at 176 n.9 ("[p]laintiffs also contend that [defendant] has conducted a systematic campaign to harass them through the filing of litigation and administrative complaints. These activities, however, are entirely legitimate, and, even if meritless, cannot be said to constitute . . . extortion under N.Y. Penal Law § 155.05(2)(e).").  <u>See also</u> <u>Park South Assocs.,</u> 626 F. Supp. at 1112 (dismissing RICO action based on plaintiff's allegations that defendant's allegedly bringing a meritless lawsuit constituted extortion under New York state law and the Hobbs Act).  Here, because plaintiffs' state law extortion claims are based solely on NLS' alleged commencement of unmeritorious litigation, plaintiffs cannot sustain a claim under N.Y. Penal Law § 155.05(2)(e).  Plaintiffs' sole predicate act for purposes of RICO is the theory that commencing baseless litigation constitutes extortion under federal and state law.  Since this theory has been so soundly rejected by the courts, plaintiffs have failed to plead a viable predicate act with the statute, and their RICO claims should be dismissed.

**C.**     **Plaintiffs' RICO claims also fail**
          **because defendants are not an "enterprise"**

Plaintiffs' claims under RICO also fail because plaintiffs have not alleged an "enterprise" in that defendants are not distinct from the alleged racketeering enterprise required by RICO. Congress has defined an "enterprise" under RICO as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under 18 U.S.C. § 1962(c), an "enterprise" and the persons conducting the affairs of an "enterprise" must be distinct. First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004); see also Anatian v. Coutts Bank (Switz.) Ltd., 193 F.3d 85, 88-89 (2d Cir. 1999). A plaintiff may not fulfill this distinctness requirement by alleging a RICO enterprise that "consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant." Riverwoods Chappaqua Corp., 30 F.3d at 344 (stating that a group consisting of a corporation and two of its employees could not "conduct" the corporation itself as the RICO enterprise); accord Anatian, 193 F.3d at 89; Bennett v. United States Trust Co, 770 F.2d 308, 315 (2d Cir. 1985) ("[A] corporate entity may not be simultaneously the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity."). "[T]he plain language of section 1962(c) clearly envisions separate entities, and the distinctness requirement comports with legislative intent and policy." DeFalco v. Bernas, 244 F.3d 286, 307 (2d Cir. 2001) (citation omitted).

Here, plaintiffs define the RICO enterprise as "the association of defendants, certain attorneys retained by defendants, salesmen and others whose identities are known only to defendants at this time." (Complaint ¶86.) This fails to satisfy the distinctness requirement because the defendants and their agents and employees are all part of the enterprise. Simply adding the word "others" without any specificity does not satisfy the plaintiffs' burden of

alleging and proving an enterprise under Section 1962(c). See Smith & Reed, 1-3 *Civil RICO* §3.07[2][a] (Matthew Bender 2004) ("The courts have grown increasingly reluctant to tolerate such easy evasion of the enterprise person distinctiveness requirement under Section 1962(c)."); see also Decision at 8 ("The amended complaint fails to allege that the enterprise is distinct from the NLS and the allegation that the corporate defendant associated with its own employees or agents carrying on the regular affairs of the corporation fails to satisfy the distinctness requirement"). Plaintiffs' RICO claim fails on this separate ground here, as it did in the State Action.

Plaintiffs' attempt to allege an enterprise also fails because they have not provided a "plain and concise" statement of the "enterprise" as required by the law. See Sony Music Entm't, Inc. v. Robison, No. 01 Civ. 6415, 2002 WL 272406, at *5 (S.D.N.Y. Feb. 26, 2002)(copy attached). As in Sony Music, plaintiffs provide no specific identities or numbers of participants, the structure of the enterprise or how the enterprise's activities are sufficiently distinguishable from the regular business activities of the entities. See also First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (complaint should identify information regarding the specific identities or number of participants, the structure of the enterprise, or how the enterprise's activities are sufficiently distinguishable from the regular business activities of these entities), aff'd, 27 F.3d 763 (2d Cir. 1994); Moll v. US Life Title Ins. Co., 654 F. Supp. 1012, 1032 (S.D.N.Y. 1987)(same). Instead, plaintiffs make conclusory assertions that the "enterprise" had an "ascertainable structure" and that it consisted of an unknown number of "certain attorneys," "salesmen" and "others". (Complaint, ¶88.) They concede ignorance about the roles allegedly played by the participants as "exclusively within the . . . knowledge of defendants." (Complaint, ¶115.) Their lack of specificity is plainly insufficient to satisfy the pleading requirements of the federal rules.

**D.     Statute of limitations bars RICO claims by four of six plaintiffs**

Some of plaintiffs' RICO claims are barred by the applicable statute of limitations.  Civil RICO actions are subject to a four-year statute of limitations.  <u>Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,</u> 483 U.S. 143 (1987) (holding that the four-year limitations period established by the Clayton Act, 15 U.S.C. § 15b, applies to civil RICO claims).  A civil RICO claim accrues for purposes of starting the running of the statute of limitations when the plaintiff discovers or should have discovered his injury.  As explained by the Supreme Court in <u>Rotella v. Wood,</u> 528 U.S. 549 (2000):

> Three distinct approaches emerged in the wake of *Malley-Duff.*  Some Circuits . . . applied an injury discovery accrual rule starting the clock when a plaintiff knew or should have known of his injury.
>
> Some applied the injury and pattern discovery rule that Rotella seeks, under which a civil RICO claim accrues only when the claimant discovers, or should discover, both an injury and a pattern of RICO activity.
>
> The Third Circuit applied a "last predicate act" rule.  Under this rule, the period began to run as soon as the plaintiff knew or should have known of the injury and the pattern of racketeering activity, but began to run anew upon each predicate act forming part of the same pattern.
>
> In *Klehr v. A. O. Smith Corp., 521 U.S. 179, 117 S. Ct. 1984, 138 L.Ed.2d 373 (1997),* we cut the possibilities by one, in rejecting the last predicate act rule.  Since a pattern of predicate acts can continue indefinitely, with each separated by as many as 10 years, that rule might have extended the limitations period to many decades, and so beyond any limit that Congress could have contemplated. . . .
>
> The decision in *Klehr* left two candidates favored by various Courts of Appeals:  some form of the injury discovery rule (preferred by a majority of Circuits to have considered it), and the injury and pattern discovery rule.  Today, guided by principles enunciated in *Klehr,* we eliminate the latter.

<u>Id</u>. at 553-54 (other citations and footnote omitted).

Thus, the "injury discovery" principle governs the accrual of a civil RICO claim. As indicated, under the "injury discovery" principle, a civil RICO claim accrues when the plaintiff discovers, or should have discovered, his injury. Id. at 552-53; see also Pincay v. Andrews, 238 F.3d 1106, 1109 (9th Cir. 2001) ("[T]he civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.") (citation omitted); Forbes v. Eagleson, 228 F.3d 471, 484 (3d Cir. 2000) (same). With respect to the question of whether a plaintiff "should have discovered" his injury, Rotella makes it clear that the question is resolved by answering the separate question of whether the plaintiff was diligent in investigating whatever facts were first presented to him that would have led him to determine that he had been injured and the source of the injury. Rotella, 528 U.S. at 556-57 (analogizing the duties of a civil RICO plaintiff to a medical malpractice plaintiff; the civil RICO plaintiff, like a malpractice plaintiff, must promptly take steps to discover the reason for his injury, and he cannot wait for events fortuitously to make it clear to him). If those facts are available to a plaintiff, and yet the plaintiff does nothing to investigate whether he had been injured and, if so, the source of the injury, the statute of limitations commences to run nonetheless. Id.

Here, four out of the six plaintiffs' claims are barred by the applicable statute of limitations because they knew or should have known about their alleged injuries by March 1, 2002 – four years prior to the filing of this lawsuit. Only Redner's and Smith's claims appear to be filed within the four-year statute of limitations period.

### Serin

Plaintiff Serin claims that she started receiving "phone calls and dunning letters" from defendants in early 2003. (Complaint ¶18.)  In fact, Serin is or was the principal of Jim Cameron's Garage Doors, a California business located in West Hills, California.  According to

NLS records, Ms. Serin signed an Equipment Finance Lease with NLS on August 15, 2001. NLS began electronic debits from the lessee's business account on September 7, 2001 and stopped such debits on April 4, 2002. (Krieger Aff. ¶7.)

### Russ

Plaintiff Russ claims that he "discovered that defendant Northern Leasing" had been electronically debiting funds from four of his corporate accounts in May 2002. (Complaint, ¶33.) Russ signed four Equipment Finance Leases with NLS on March 26, 2001 on behalf of Rapid Cash Advances, a Florida corporation based in Orlando, according to NLS records. NLS began electronic debits from all four corporate business accounts starting on April 2, 2001 and stopped such debits on February 1, 2003. (Krieger Aff. ¶8.)

### Lim

Plaintiff Lim claims that he received a Summons and Verified Complaint filed by defendants in May of 2001. (Complaint, ¶45.) He further contends that upon receipt, he "called and informed defendants that the signatures on the lease underlying that action were a forgery." (Complaint, ¶46.) Thus, by May 2001, he knew or should have known of the injury underlying this cause of action.

### Kettler

Plaintiff Kettler claims that on or about February 1, 2002, she received a four page lease from defendants "which was clearly not the lease she had signed." (Complaint, ¶77.) She further claims, "her signature had been forged on the lease." (Id.) In fact, Kettler signed an Equipment Finance Lease with NLS in early January 2002, according to NLS records. The first electronic debits from her business's account occurred on January 15, 2002 and the last, on August 1, 2003. (Krieger Aff. ¶9.)

The date plaintiffs signed the leases is, at a minimum, the date of accrual of the RICO claims. See In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56 (2d Cir. 1998) (holding that allegedly defrauded investors sustained their RICO injury at the time they purchased their limited partnership interests). Alternatively, if as plaintiffs contend, their signatures on the leases were forged and no actual agreement existed between them and NLS, plaintiffs should have been placed on inquiry notice of the injury at the first unauthorized deduction on their monthly bank statement; that date should serve as the date of accrual. See In re Sumitomo Copper Litig., 104 F. Supp. 2d 314, 323 (S.D.N.Y. 2000) ("Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises.") (citation omitted). Similarly, when NLS instituted a lawsuit against Lim in 2001, he also should have been put on notice of the potential injury he now claims. By using either of these dates to begin running the RICO limitations period, the claims of plaintiffs Serin, Russ, Lim and Kettler are time barred and should be dismissed.

## II

### PLAINTIFFS' RICO COUNT, ALLEGING A RICO CONSPIRACY UNDER 18 U.S.C. §1962(d), MUST ALSO BE DISMISSED FOR FAILURE TO STATE A CLAIM

Plaintiffs' RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) must fail because the substantive RICO claim under Section 1962(c) fails. Under 18 U.S.C. § 1962(d), a party is liable for RICO conspiracy if it knew of the conspiracy's goals and agreed to facilitate them. Salinas v. United States, 522 U.S. 52, 65 (1997). There can be no RICO conspiracy, however, without a substantive RICO violation. See Schmidt v. Fleet Bank, 16 F. Supp. 2d 340, 353 (S.D.N.Y. 1998); Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000) ("If the pleadings do not state a substantive RICO claim upon which relief may be granted,

then the conspiracy claim also fails") (citations omitted); <u>Lightning Lube, Inc. v. Witco Corp</u>, 4 F.3d 1153, 1191 (3d Cir. 1993).   Thus, if "the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations." <u>Id</u>.   <u>See also</u> <u>Katzman</u>, 167 F.R.D. at 658 ("failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), 1962(b) or 1962(c) necessarily dooms any claim [that the plaintiff] might assert arising under 1962(d)") (citation omitted)(copy attached).   Accordingly, because plaintiffs have failed to plead a legally sufficient substantial RICO claim, their conspiracy claim also fails.

What is more, in order to allege a conspiracy under § 1962(d), a plaintiff must assert that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise. . . " <u>Allen v. New World Coffee, Inc.</u>, No. 00 Civ. 2610, 2001 WL 293683, at *9 (S.D.N.Y. Mar. 27, 2001) (citation omitted).   Conclusory allegations that "[a]ll of the defendants conspired among themselves to further the scheme to defraud" and "knowingly and willingly participat[ed] in the conspiracy" are insufficient. <u>Adler v. Berg Harmon Assocs.</u>, 790 F. Supp. 1222, 1234 (S.D.N.Y. 1992); <u>see</u> <u>Laverpool v. N.Y.C. Transit Auth.</u>, 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991) ("Bare or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud."). (citations omitted) (coy attached).   Here, the plaintiffs' allegations are conclusory in nature and, in fact, plaintiffs have failed to specify how any of the individual defendants "manifested an agreement to commit two predicate acts in furtherance of a common purpose of a RICO enterprise." Therefore, plaintiffs' conspiracy claims under § 1962(d) should be dismissed.

# III

## PLAINTIFFS' SECTION 349(a) CLAIMS SHOULD BE DISMISSED

Section 349(a) of New York's General Business Law provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful," and a person injured by such acts may bring a civil action for damages. Plainly, however, this law is a consumer   protection law and not a basis for suits between businesses.

In order to prevail on a claim under Section 349, plaintiffs must demonstrate that (1) NLS directed the alleged deceptive acts at consumers, (2) the alleged acts misled customers in a material way, and (3) plaintiffs have been injured as a result. Maurizio v. Goldsmith, 230 F. 3d 518, 521 (2d Cir. 2000) (citing Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995), recognizing that Section 349 "requires a finding of conduct that is consumer–oriented"). Courts have also defined "deceptive acts" as those acts "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego, 85 N.Y.2d at 26 (emphasis added). Thus, the sine qua non for a claim under Section 349 is a consumer injury as a result of the conduct of NLS's business. See New York Univ. v. Continental Ins. Co., 87 N.Y2d 308, 320, 639 N.Y.S.2d 283 (1995). Indeed, the New York legislature enacted this statute to "protect consumers, that is, those who purchase goods and services for personal, family or household use. Sheth v. New York Life Ins. Co., 273 A.D.2d 72, 73, 709 N.Y.S.2d 74 (1st Dep't 2000). Quite simply, "the gravamen of the [claim] must be consumer injury or harm to the public interest." Securitron Magnallock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995) (citation omitted).

The First Department's decision in Cruz v. NYNEX Info. Res., 263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dep't 2000), is remarkably on point here. In Cruz, plaintiffs were an

automotive repair service, a video service and two small law firms that placed advertisements in defendants' "Yellow Pages" publications. Similar to the leases in this case, the applications to place an advertisement included preprinted terms and conditions that were applied to all applicants and not subject to negotiation. Those contract terms included the issue period, a "payment for advertising" clause that allowed defendants to automatically bill the advertisers' phone bills, and a limitation of liability clause. The plaintiffs asserted consumer protection claims concerning the method and timing of distribution, the number of directories distributed, the alleged failure to attempt notice to the advertisers of a change in the issue period, or the applicability of the contractual refund provision to errors and omissions in the distribution of directories.

> In dismissing the Section 349 claim in <u>Cruz</u>, the First Department explained:

> This appeal raises the issue of whether, for purposes of General Business Law Article 22-A (§§349 et seq.) "Consumer Protection from Deceptive Acts and Practices," the term "consumer" encompasses small businesses which purchase a widely-sold service that can only be used by businesses. We hold that it does not . . . .

> In New York law, the term "consumer" is consistently associated with an individual or natural person who purchases goods, services or property primarily for "personal, family or household purposes". . . [The] analysis must take due account of the threshold question noted above – whether the conduct at issue is consumer-oriented.

> Since advertisement space in the Yellow Pages is, by definition, a commodity available to businesses only, and plaintiffs fail to show how the complained-of conduct might either directly or potentially affect consumers, such conduct does not fall within the parameters of the statute,

<u>Cruz</u>, 262 A.D. 2d at 286-91, 703 N.Y.S.2d at 104-08.

> In this action, there can be no dispute that plaintiffs are businesses that leased credit card terminals from NLS in order to conduct their businesses. Since, as in <u>Cruz</u>, the lease

and use of credit card terminals is a product and service available for businesses only, the lease agreements are not consumer transactions.  Accordingly, the conduct alleged does not fall within the parameters of the statute. See also Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 630 N.Y.S.2d 769 (2d Dep't 1995) (stating that Section 349 is "intended to be a consumer protection statute" and "wears it purpose on its face.").  Because NLS's pre-litigation acts and filing of lawsuits do not implicate the consumer relationship essential to a claim under Section 349, plaintiffs have failed to state a claim under Gen. Bus. Law § 349.

Moreover, even if the Section 349 claims were actionable, such claims only apply to the "furnishing of any service in this state [New York]." § 349(a).  See Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314, 325, 746 N.Y.S.2d 858 (2002) ("to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York"); see also Scott v. Bell Atl. Corp., 282 A.D.2d 180, 184, 726 N.Y.S.2d 60, 63 (1st Dep't 2001) (dismissing § 349 claims made by non-New York residents who did not allege receiving Defendant's services in New York).  Similarly, the group of plaintiffs here – who reside or resided in Florida, Georgia, Washington, Texas, Wisconsin and the District of Columbia – do not allege any deceptive activity in New York, but rather deceptive activities of salespersons at their respective workplaces.  (Complaint, ¶¶3-8.)  Therefore, plaintiffs' claims under Section 349 have no merit and must fail as a matter of law.

In addition, Section 349 claims are governed by a three year statute of limitations See Heslin v. Metro. Life Inc. Co., 287 A.D.2d 113 (N.Y. App. Div. 2001) ("The statute of limitation for a N.Y. Gen. Bus. Law § 349 cause of action was three years and accrued when the owner of a 'vanishing premium' life insurance policy was first called upon to pay an additional premium").  In this action, any consumer fraud claim would have accrued at the latest when the

first alleged unauthorized deduction was made from plaintiffs' accounts.   Accordingly, the claims of all the plaintiffs except Redner and Smith are time-barred.

**IV**

**PLAINTIFFS' CLAIMS ARE BARRED BY
RES JUDICATA AND THE <u>COLORADO RIVER</u> DOCTRINE.**

This action also should be dismissed because it is duplicative of the State Action. As such, it is barred both by the <u>Colorado River</u> doctrine and res judicata.

**A.      Plaintiffs' claims should be dismissed under the <u>Colorado River</u> doctrine**

In the first instance, the abstention principles outlined by the Supreme Court provide a basis for dismissal of this action unrelated to the merits.   In <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976) and <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1 (1983), the Supreme Court held that when "exceptional circumstances" exist, a federal court may abstain from jurisdiction in order to avoid interference with parallel state proceedings.   The factors to be considered normally include: (1) whether maintaining separate actions may result in piecemeal litigation; (2) the order in which jurisdiction was obtained by the convenient forums; (3) the relative progress of the state and federal proceedings; (4) the adequacy of the state forum to protect the federal plaintiff's rights; (5) the presence or absence of concurrent jurisdiction; (6) whether state or federal law controls; (7) the relative convenience of the federal forum; and (8) whether this is a res over which one court has established jurisdiction.   <u>See</u> <u>Moses H. Cone</u>, 460 U.S. at 15-16; <u>see also</u> <u>IPS Card Solutions v. Boyd</u>, No. 00 Civ 0776, 2000 WL 620213, at *4 (S.D.N.Y. May 12, 2000).

Courts have repeatedly held that one important consideration that is implicit in the above factors is whether the federal or state suit constitutes vexatious or "reactive" litigation, or seeks to subvert a prior state court decision that was adverse to the federal plaintiff.   <u>E.g.</u>, <u>Moses</u>

H. Cone, 460 U.S. at 17 n.20; Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coop., Inc., 48

F.3d 294, 299 (8th Cir. 1995); Telesco v. Telesco Fuel & Masons Materials, Inc., 765 F.2d 356,

363 (2d Cir. 1985).

   In this case, the parties and the issues in both the State Action and here are

virtually identical.   In both actions, the plaintiffs charge that defendants have engaged in

racketeering resulting in substantially the same injuries.   Indeed, the allegations are so

inescapably alike that the language for both complaints is many times, identical.   Plaintiffs

essentially seek to recover for defendants' alleged acts of extortion and fraud relating to

defendants' leasing agreements with them.   In each case, plaintiffs seek to show this court and

the State court that defendants targeted the plaintiffs in order to collect debts that they were not

entitled to seek.   Moreover, the timing of this action – occurring during the pendency of an

appeal of the dismissal of a RICO claim arising from the same type of activity – demonstrates

the vexatious and reactive nature of this lawsuit.

   In addition, the avoidance of piecemeal litigation also weighs strongly in favor of

dismissal. Colorado River, 424 U.S. at 499.   Where state and federal issues are "inextricably

linked," the risk of piecemeal litigation may become a significant obstacle to obtaining the final

resolution of the case.   De Cisneros v. Younger, 871 F.2d 305, 308 (2d Cir. 1989).   "The

existence of concurrent proceedings creates 'the serious potential for spawning an unseemly and

destructive race to see which forum can resolve the same issues first, [which would be]

prejudicial, to say the least, to the possibility of reasoned decision making by either forum.'"

Mouchantaf v. International Modeling and Talent Ass'n, 368 F. Supp. 2d 303, 307 (S.D.N.Y.

2005)(citations omitted). Because there would be the possibility here in creating potentially

inconsistent and contradictory holdings arising out of the same transaction and involving the

same parties, this Court should dismiss the matter.   Moreover, because the State Action is far

more advanced than this matter (and indeed, is already on appeal), this Court should dismiss the action. See Mann v. Alvarez, No. 96 Civ 2641, 1996 WL 535540, at *2 (S.D.N.Y. Sept. 20, 1996) (citing Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205, 211 (2d Cir. 1995)). As to the remaining Colorado River factors, there is no presumption that the state court here is inadequate to protect the plaintiffs' rights. United States Fid. & Guar. Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994). Nor can the plaintiffs' claim that that federal court is more convenient than the state court. For all of the foregoing reasons, Colorado River should apply and this Court should decline to entertain this action.

**B.   Plaintiffs' claims are barred by res judicata**

Res judicata provides a second basis for dismissing the complaint apart from the merits. It is well established that a federal court must accord a state court's final judgment the same preclusive effect it would be entitled to by the law of the state in which it was rendered. Migra v. Warren City School Dist., 465 U.S. 75, 81 (1984). Thus, New York law will determine the preclusive effect of the state action on this lawsuit. The doctrine of res judicata precludes parties or their privies from relitigating issues that were or could have been raised in an action where a final judgment has been entered. Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Saud v. Bank of N.Y., 929 F.2d 916 (2d Cir. 1991); O'Brien v. City of Syracuse, 54 N.Y.2d 353, 355, 357, 445 N.Y.S.2d 687 (1981). Thus, in order for res judicata to apply: (1) there must be the same parties in the two actions or the parties must be in privity; (2) there must be a final judgment on the merits in the first action; and, (3) the issues raised in the second action were raised or could have been raised in the first action.

New York follows a transactional analysis approach in deciding res judicata issues. Under this analysis, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon

different theories or if seeking a different remedy." <u>O'Brien</u>, 54 N.Y.2d at 357. A plaintiff "may

not [] bring another action . . . to recover damages for the same acts as those on which the first

lawsuit was grounded." <u>Id.</u> at 355 (citation omitted).    In <u>O'Brien</u>, the New York Court of

Appeals explained that if all of the defendants' conduct was raised in a prior litigation "no other

claim may be predicated upon the same incidents." <u>Id.</u> at 357 The Court further cautioned that:

> When alternative theories are available to recover what is
> essentially the same relief for harm arising out of the same or
> related facts such as would constitute a single "factual grouping,"
> the circumstance that the theories involve materially different
> elements of proof will not justify presenting the claim by two
> different actions.

<u>Id.</u> at 357-58 (citation and footnote omitted).

Here, there can be no debate that the dismissal of the State Action in April 2005

constitutes a final judgment even though some claims were not dismissed and even though an

appeal is pending. <u>Hennessy v. Cement and Concrete Worker's Union Local 17A</u>, 963 F. Supp.

334 (S.D.N.Y. 1997). The requirement of finality for purposes of res judicata does not

necessarily mean a final judgment in an action. <u>See</u> <u>Bannon v. Bannon</u>, 270 N.Y. 484, 489,  1

N.E.2d 975 (1936). The test of the finality of a decision is the nature of the proceedings in which

the adjudication is made. <u>Id.</u> at 489-91; <u>see also</u> <u>Slater v. American Mineral Spirits Co.</u>, 33

N.Y.2d 443, 446, 354 N.Y.S.2d 620 (1974) ("Although technical and historical distinctions

might be drawn between final orders and final judgments, we find no occasion here to reach a

different result because the record does not disclose the formal entry of a final judgment. In the

state of modern practice it would be inappropriate to attach significance to any such

distinction."); <u>cf.</u> <u>Lummus Co. v. Commonwealth Oil Ref. Co.</u>, 297 F.2d 80, 89 (2d Cir. 1961)

("'Finality' in the context here relevant may mean little more than that the litigation of a

particular issue has reached such a stage that a court sees no really good reason for permitting it

to be litigated again."); <u>Yaba v. Roosevelt</u>, 961 F. Supp. 611, 621-22 n. 3 (S.D.N.Y. 1997) ("Finality for the purposes of res judicata is not as strict as the requirements of finality for the purposes of bringing an appeal.") (citations omitted); <u>Creed Taylor, Inc. v. CBS, Inc.</u>, 718 F. Supp. 1171, 1175 (S.D.N.Y. 1989) (entry of partial summary judgment was a final decision even though it left four causes of action unlitigated because "[t]here was nothing of significance left to litigate").  Therefore, here, where the state Supreme Court has entered an order dismissing the same RICO causes of action at issue here, and plaintiffs have sought an appeal on such claims, this order should be treated under New York law as a "final judgment" for purposes of res judicata.

There can also be no question that the putative class plaintiffs in the first class action were in privity with the plaintiffs here. Indeed, the named plaintiffs in the State Action had represented to the state court that three of the plaintiffs here were members of the class; the other three plaintiffs here also are in privy with the State Action plaintiffs since the allegations raised, and the parties' interests, are nearly identical.  Moreover, three of the plaintiffs here submitted affidavits on behalf of the class plaintiffs. (Plaintiffs' Opposition at 4, n.2.)

As noted above, New York uses a "transactional" approach to res judicata.  Thus, the remaining issue is whether the claims raised here arise out of the same operative facts or transactions in the State Action.[7] "Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, whether the facts essential to the second were present in the first." <u>Saud</u>, 929 F.2d at 919 (emphasis and citations omitted).

---

[7] The factual allegations of the State Action are in the complaint here, and are almost verbatim at times. <u>Compare</u> State Action ("[P]laintiffs have been injured in that, *inter alia*, they paid sums they should never have paid, have been saddled with unwarranted liabilities, and have had to expend time and resources in responding to defendants' dinning class, threats, and/or lawsuit in New York." (First Amended Complaint, ¶105, emphasis added)) <u>with</u> present action ("[P]laintiffs have been injured in that, *inter alia*, they had to waste time and resources in responding to defendants' dunning calls, threats, lawsuit in New York....") (Complaint, ¶116 (emphasis added).)

Simply reading the First Amended Complaint and the complaint here demonstrates that the claims here arise out of the same allegedly fraudulent methods of signing up merchants for POS terminal Leases and bringing suits in New York courts to enforce the Leases, and by reason of the fact that the State Action is a class action, plaintiffs' position necessarily is that the class action is typical of, and includes, the claims plaintiffs assert here.  That plaintiffs try to allege different predicate acts is immaterial.  In re Teltronics Servs., Inc., 762 F.2d 185, 193 (2d Cir. 1985)("[n]ew legal theories do not amount to a new cause of action so as to defeat the application of the principle of res judicata")(citations omitted).  Subjecting defendants to identical allegations bearing different legal labels is exactly the conduct that the doctrine of res judicata seeks to prevent. The New York Supreme Court also dismissed plaintiffs' RICO claims based on plaintiffs' failure to satisfy the distinctness requirement.  This complaint suffers from the same infirmities and should be dismissed as well.[8]

<b>Conclusion</b>

For the foregoing reasons, the complaint should be dismissed.

New York, New York
July 17, 2006

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By  s/ Kenneth J. Kelly
      Kenneth J. Kelly (KK 4195)
      Attorneys for Defendants

---

[8] Similarly, Count III, purporting to state a claim under Section 349 also should be dismissed because it could have been litigated in the State Action. In fact, the class plaintiffs originally brought a claim under Section 349 only to withdraw it in the First Amended Complaint. (Krieger Aff., ¶4.)

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1006030 (W.D.N.Y.), RICO Bus.Disp.Guide 10,868
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents

United States District Court, W.D. New York.
DIRECTV, INC., a California Corporation, Plaintiff,
v.
Jeffrey L. LEWIS, John M. Militello, Andrew
Hermeckar, Richard Tompkins, Defendants,
John M. MILITELLO, Counterclaimant,
v.
DIRECTV, INC., a California Corporation, Counter
defendant.
No. 03-CV-6241-CJS-JWF.

April 29, 2005.

Paul I. Perlman, Buffalo, NY, for Plaintiff.
Stephanie A. Cole, Buffalo, NY, for Defendants and
Counterclaimant.
Aline K. Piccola, Rochester, NY, for Defendants.

DECISION AND ORDER
SIRAGUSA, J.

I. INTRODUCTION

**\*1** Plaintiff/counter defendant DirecTV, Inc.
("DirecTV") alleges in a four-count complaint filed
on May 22, 2003, that defendant/counterclaimant
John M. Militello ("Militello") purchased and used a
pirate access device designed to permit viewing of
DirecTV's scrambled television programming
without authorization by or payment to DirecTV. The
case is now before the Court on DirecTV's motion (#
70) pursuant to Federal Rule of Civil Procedure
12(b)(6) to dismiss Militello's counterclaims. For the
reasons stated below, DirecTV's application is
granted.

II. PROCEDURAL AND FACTUAL
BACKGROUND

DirecTV commenced this action by filing a
complaint on May 22, 2003. In its complaint,
DirecTV alleges that it is the nation's leading direct
broadcast satellite system, delivering over 225
channels of television and other programming to
more than ten million homes and businesses in the
United States. Further, DirecTV maintains that it

encrypts-electronically scrambles-its satellite
transmissions to provide security for and prevent
unauthorized viewing of its satellite television
programming. DirecTV also states that it offers its
television programming to residential and business
customers either by a subscription, or on a pay-per-
view basis only, and that each customer is required to
obtain a DirecTV Access Card and other system
hardware, including a small satellite dish, and create
an account with DirecTV. DirecTV further alleges
that upon its activation of the Access Card, the
customer can receive and view in a decrypted format
(*i.e.,* unscrambled) those channels to which the
customer has subscribed or otherwise made
arrangement to purchase. (Complaint ¶ ¶ 1-2.)

The complaint also states that on or about May 25,
2001, with the assistance of local law enforcement,
DirecTV executed several writs of seizure upon a
mail shipping facility used by several major sources
of pirate technologies, including Vector
Technologies, DSS-Stuff, DSSPro, DSS-Hangout,
Whiteviper Technologies, Meadco, PCEase, Intertek
Technologies, Shutt, Inc., and Canadian Security and
Technology. During and subsequent to the raids,
DirecTV contends that it came into possession of a
substantial body of sales and shipping records, e-
mailed communications, credit card receipts, and
other materials.

Paragraph 11 of the complaint contains factual
allegations pertaining specifically to Militello. There,
DirecTV alleges the following:
Defendant John M. Militello is a resident of East
Rochester, New York. Upon information and belief,
beginning in or about April 2001, defendant Militello
purchased one or more Pirate Access Devices from
Canadian Security. Defendant placed each order by
using interstate or foreign wire facilities, and
received his orders via the Postal Service or
commercial mail carriers. Specifically, these illegal
purchases included:
(a) On or about April 10, 2001, defendant Militello
purchased a Pirate Access Device, consisting of a
printed circuit board device called an Unlooper, from
Canadian Security. The device was shipped to
defendant Militello at his address in East Rochester,
New York.

**\*2** (Complaint ¶ 11.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

DirecTV's complaint raises three claims against Militello: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a); and (3) possession of Pirate Access Devices in violation of 18 U.S.C. § 2512(1)(b). (Complaint ¶¶ 20-31.)

Militello filed an answer and counterclaims on April 30, 2004. In his counterclaims, Militello raises the following causes of action against DirecTV: (1) attempted extortion in violation of 18 U.S.C. § 1951 ("Hobbs Act"); (2) conspiracy to commit extortion in violation of 18 U.S.C. § 1951; (3) mail fraud in violation of 18 U.S.C. § 1341; a claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962; (5) violation of the New York Consumer Protection Law, N.Y. Gen. Bus. Law § 349; and (6) fraud and misrepresentation.

### III. LEGAL STANDARDS

In considering a motion to dismiss pursuant Rule 12(b)(6), a moving party must show that the claimant can prove no set of facts in support of his claim that would entitle him to relief. See H.J. Inc. v. Northwest Bell Telephone Co., 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); see also 2 Moore's Federal Practice, § 12.34[1][a] (Matthew Bender 3d ed.). here, the Court must view the counterclaims in the light most favorable to Militello, as the non-moving, giving him the benefit of all reasonable inferences party. Id.; see also 2 Moore's Federal practice, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true).

Further legal standards, pertaining to each of Militello's, counterclaims are discussed in detail below.

### IV. ANALYSIS

*A. Militello's First and Second Counterclaims alleging Attempted Extortion and Conspiracy to Commit Extortion under the Hobbs Act*

Militello states that he was sent pre-litigation letters indicating the following: that he possessed an illegal pirate access device; that by so doing he violated federal law; that he was subjected to damages of up to $10,000 per violation; and that his involvement in modifying devices to illegally gain access to DirecTV's scrambled satellite programming increased the potential damages to $100,000. In this regard, Militello maintains that DirecTV, Hughes Electronics, Yarmuth Wilsdon Calfo, PLLC and the End User Recovery Project have violated 18 U.S.C. § 1951, also known as the Hobbs [FN1] Act. That statute provides in relevant part as follows:

> FN1. Hobbs Act (June 25, 1948, c. 645, 62 Stat. 793), Anti-Racketeering Act (Copeland Anti-Racketeering Act) (Hobbs Anti-Racketeering Act) (June 18, 1934, ch. 569, 48 Stat. 979), Sept. 13, 1994, Pub.L. 103-322, Title XXXIII, § 330016(1)(L), 108 Stat. 2147, now codified at 18 U.S.C. § 1951 (2005).

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both. 18 U.S.C. § 1951(a) (2005).

*3 Militello further alleges that "DirecTV and its agents" have sent about 100,000 letters to individuals throughout the country seeking settlements of $3,500 each. (Answer ¶ 44.) He also states that, upon information and belief, DirecTV "and its agents" have no evidence of actual interception of DirecTV's satellite signals, and that there are legitimate uses for the pirate access device allegedly possessed by Militello. (Answer ¶¶ 45-47.) Finally, Militello alleges that the communication from DirecTV, Hughes Electronics, Yarmuth Wilsdon Calfo, PLLC and the End User Recovery Project demanded that he give DirecTV "personal property, money and a signed statement that he would cease and desist from having any involvement in obtaining" unauthorized satellite broadcasts from DirecTV's system.

The Second Circuit reviewed the legislative history of the Hobbs Act, particularly with respect to its purpose, in a decision reversing judgments of conviction in a criminal case (which were subsequently affirmed by a later hearing at the same court):
The 1945 debates on the bill that was eventually to

become the Hobbs Act, *see* 91 Cong. Rec. 11,839-48, 11,899-922 (1945), showed both that the legislators believed that the 1934 Congress viewed extortion as having an element of wrongfulness, and that the Hobbs Act Congress-which retained the substance of the 1934 Act's prohibition-held the same view. *See id.* at 11,901-02, 11,906, 11,908, 11,920. The discussion leading to the express use of the word "extortion" in the Hobbs Act, and of the definition of that term, centered on the generally accepted meaning of the term, which traditionally included a component of wrongfulness. The Hobbs Act proponents pointed out that the 1934 Act was fashioned in no small measure after the then-current definition of extortion used in the New York Penal Code. *See, e.g.,* 91 Cong. Rec. 11,843, 11,900, 11,906; *see also United States v. Zappola, 677 F.2d 264, 268 (2d Cir.), cert. denied, 459 U.S. 866, 103 S.Ct. 145, 74 L.Ed.2d 122 (1982); United States v. Nedley, 255 F.2d 350, 355 (2d Cir.1958).* That definition expressly included a "wrongfulness" element, *see* N.Y. Penal Law § 850 (Consol.1930) (extortion is the "obtaining of property from another ... with [his] consent, induced by a *wrongful* use of force or fear, or under color of official right" (emphasis added)), and the Hobbs Act proponents viewed that definition as representative of the extortion laws of every state, *see* 91 Cong. Rec. at 11,906. Thus, the definition of extortion included in the Hobbs Act reflected what its proponents believed to be the generally accepted definition. *See id.* at 11,900, 11,906, 11,910, 11,914; *see generally* Black's Law Dictionary 696 (4th ed.1957) ("extort": "To gain by wrongful methods, to obtain in an unlawful manner, to compel payments by means of threats of injury to person, property, or reputation .... to exact something unlawfully by threats or putting in fear."). Accordingly, Representative Hobbs stated that the terms extortion and robbery "have been construed a thousand times by the courts. Everybody knows what they mean." 91 Cong. Rec. 11,912.

**\*4** *United States v. Jackson, 180 F.3d 55, 68-69 (2d Cir.1999).*

As the Southern District of New York observed in an action where a plaintiff alleged a violation of the Hobbs Act, "[t]hreats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion." *G-1 Holdings, Inc. v. Baron & Budd, 179 F.Supp.2d 233, 259 (S.D.N.Y.2001); see also Building Industry Fund v. Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO, 992 F.Supp. 162, 176 (E.D.N.Y.1996)* ("The filing of a meritless

lawsuit or administrative action, even if for the purpose of harassment, does not involve a threat of force, violence or fear."). The case law also states that,

[t]o prove extortion under the Hobbs Act ..., [a plaintiff] would have to show "wrongful means and wrongful objective." *Viacom Int'l Inc. v. Icahn, 747 F.Supp. 205, 210 (S.D.N.Y.1990)* (discussing the Hobbs Act); *United States v. Emmons, 410 U.S. 396, 419 n. 16, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973)* ("[E]xtortion requires an intent 'to obtain that which injustice and equity the party is not entitled to receive.' " *(quoting People v. Cuddihy, 151 Misc. 318, 271 N.Y.S. 450, 456 (1934),* and referring to New York State Law)).

*Andrea Doreen Ltd. v. Building Material Local Union 282, 299 F.Supp.2d 129, 149 (E.D.N.Y.2004).*

Turning to the communications of which Militello complains, the first he includes is one from DirecTV End User Development Group, is dated August 7, 2002 and is signed by David Bautista, Investigator. (Militello's Mem. of Law (Docket No. 74), Ex. A.) Later that month, plaintiff received a letter with virtually identical wording, this time on the letterhead of law firm Yarmuth, Wilsdon, Calfo, PLLC, and signed by Spencer D. Freeman, Gregory Q. Zamudio, Deborah T. Boylston, and John M. Stellwagon. That letter starts with this sentence: "This law firm represents DIRECTV, Inc. in the investigation of and litigation regarding the illegal reception and use of its satellite television programming." (Letter from Spencer D. Freeman, Gregory Q. Zamudio, Deborah T. Boylston, and John M. Stellwagon to Mr. John M. Militello (Aug. 23, 2002), at 1.) It also warns that, "possessors and users of illegal signal theft equipment face substantial monetary damage awards for their conduct" (*Id.,* at 2), and makes the following offer:

In return for your cooperation, DIRECTV is willing to forego litigation against you for violations occurring prior to the date of this letter. DIRECTV is prepared to release its claims in return for your agreement to: (1) surrender all illegally modified Access; Cards or other satellite signal theft devices in your possession, custody, or control; (2) execute a written statement to the effect that you will not purchase or use illegal signal theft devices to obtain satellite programming in the future, nor will you have any involvement in the unauthorized reception and use of DIRECTV's satellite television programming; and (3) pay a monetary sum to DIRECTV for your past wrongful conduct and the damages thereby incurred by the company.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 4
Not Reported in F.Supp.2d, 2005 WL 1006030 (W.D.N.Y.), RICO Bus.Disp.Guide 10,868
(Cite as: Not Reported in F.Supp.2d)

*5 (*Id.,* at 2.) The second letter Militello provides is one dated July 2, 2003, from DirecTV End User Development Group. That letter includes information about the 6,465 individuals DirecTV sued in the United States as of the date of that letter, including 631 in New York State, advises Militello that his case had been forwarded to outside counsel, and indicates that, "[i]n the event we decide to file a lawsuit, any previous settlement offers are revoked...." (Militello's Mem. of Law (Docket No. 74), Ex. A, at 3.)

Militello's complaint is that the letters threaten litigation even though "DirecTV and its fellow wrongdoers possessed no evidence of actual interception of DirecTV's satellite signal by Defendant Militello at the time the demand letter was sent to him." (Militello's Mem. of Law, at 4.) However, this assertion overlooks the evidence that DirecTV did have. Specifically, DirecTV had documentary proof that Militello had purchased an Unlooper, a device which DirecTV alleges is capable of altering DirecTV access cards so those cards can receive DirecTV signals illegally. "A plaintiff need not produce direct evidence to establish that a communication was received or intercepted, but may rely upon circumstantial evidence to do so." *DirecTV, Inc. v. Gilliam,* 303 F.Supp.2d 864, 870 (W.D.Mich.2004) (*citing Walker v. Darby,* 911 F.2d 1573, 1578 (11th Cir.1990) (holding that circumstantial evidence may be used to prove a wiretap claim, including actual interception)). In any event, the Court concludes that the actions of DirecTV's, and those of its "fellow wrongdoers," do not amount to a violation of the Hobbs Act. Threats of litigation, even economically ruinous litigation, even unmeritorious litigation, do not constitute extortion. See *G.I. Holdings, Inc. v. Baron & Budd,* 179 F.Supp.2d 233, 259 (S.D.N.Y.2001).

Moreover, the Court finds that prelitigation activities, such as those engaged in here, are protected by the *Noerr-Pennington* doctrine, a judicially created doctrine that protects a party's entitlement to act in furtherance of the First Amendment right to petition governmental authorities for redress. *Eastern Railroads Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). In construing a claimed antitrust violation, the Ninth Circuit held that the filing of a lawsuit is immune from antitrust laws under the *Noerr-Pennington* doctrine, unless that suit is a sham. The Court wrote: A sham suit is one that is an abuse of the judicial

processes. In California Transport, the Supreme Court identified two types of sham activity: "misrepresentations ... in the adjudicatory process" and the pursuit of "a pattern of baseless, repetitive claims." Thus, in California Transport, the Court held that a complaint alleging that the petitioner's competitors initiated administrative proceedings against the petitioner "without probable cause, and regardless of the merits," stated an antitrust cause of action.

*6 *Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.,* 944 F.2d 1525, 1529 (9th Cir.1991), *aff'd sub nom Professional Real Estate Investors v. Columbia Pictures Indus.,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) (*citing California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510 & 512, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972)) (footnote omitted).

The Court is aware that a contrary view exists, that is, that *Noerr-Pennington* is applicable only to antitrust litigation. See, e.g., *Cardtoons, L.C. v. Major League Baseball Players Ass'n,* 208 F.3d 885 (10th Cir.2000). However, the concept has been extended, by analogy, as recognized by the Second Circuit, to cases not involving anti-trust litigation:
Courts have extended *Noerr-Pennington* to encompass concerted efforts incident to litigation, such as prelitigation "threat letters," see *McGuire Oil Co. v. Mapco, Inc.,* 958 F.2d 1552, 1560 (11th Cir.1992) (holding that concerted threats of litigation are protected under *Noerr-Pennington* ); *Coastal States Mktg., Inc. v. Hunt,* 694 F.2d 1358, 1367-68 (5th Cir.1983) (same); *Barq's Inc. v. Barq's Beverages, Inc.,* 677 F.Supp. 449, 452-53 (E.D.La.1987) (applying prelitigation rights to enforcement of trademark litigation), and settlement offers, see *Columbia Pictures Indus., Inc. v. Professional Real Estate Investors, Inc.,* 944 F.2d 1525, 1528-29 (9th Cir.1991), *aff'd,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). Litigation, including good faith litigation to protect a valid copyright, therefore falls within the protection of the *Noerr-Pennington* doctrine.

*Primetime 24 Joint Venture v. National Broadcasting, Co., Inc.,* 219 F.3d 92, 100 (2d Cir.2000); *Sosa v. DirecTV,* No. CV 03-5972 AHM (Rzx) (C.D.Cal. Dec. 3, 2003). *Noerr-Pennington* has also been extended to protect petitioning activity. See, e.g., *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 913-15, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (holding First Amendment immunized non-violent petitioning conduct, and applied *Noerr-*

Not Reported in F.Supp.2d                                              Page 5
Not Reported in F.Supp.2d, 2005 WL 1006030 (W.D.N.Y.), RICO Bus.Disp.Guide 10,868
(Cite as: Not Reported in F.Supp.2d)

*Pennington* in considering whether intent or purpose of boycott was relevant); *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155, 160 (3d Cir.1988) (*Noerr-Pennington* doctrine immunized defendants from tort liability for petitioning government to shut down nursing home); *Havoco of Am., Ltd. v. Hollobow,* 702 F.2d 643, 649-50 (7th Cir.1983) (applying *Noerr-Pennington* doctrine in context of complaints registered with Securities and Exchange.); *Cove Rd. Dev. v. Western Cranston Indus. Park Assocs.,* 674 A.2d 1234, 1237-38 (R.I.1996) (Rhode Island Supreme Court held that the Petition Clause protected both petitioning at "the town-council level" and "access to court."); *see generally* Carol Rice Andrews, *A Right of Access to Court under the Petition Clause of the First Amendment: Defining the Right,* 60 Ohio St. L.J. 557 (1999). As the Second Circuit observed,This circuit has not gone so far as to apply the *Noerr-Pennington* doctrine to state law causes of action. But it has, in the process of applying *Noerr-Pennington* and the sham exception to Sherman Act claims, explicitly described the doctrine as an application of the First Amendment. See *Landmarks Holding Corp. v. Bermant,* 664 F.2d 891, 895-96 (2d Cir.1981) (issue is whether the conduct alleged "is immunized by the First Amendment from antitrust liability under the *Noerr-Pennington* doctrine"); *Miracle Mile Associates v. City of Rochester,* 617 F.2d 18, 20 (2d Cir.1980) ("Under *Noerr,* mere solicitation of governmental action through legislative processes ... is an activity which is fully protected by the First Amendment and is immune from Sherman Act liability...."); *Mountain Grove Cemetery Assoc. v. Norwalk Vault Co.,* 428 F.Supp. 951, 956 (D.Conn.1977) ("" *Noerr* and *California Motor Transport* teach that when antitrust objectives and the right to petition for government action are in conflict, the scales must tip in favor of the First Amendment."). See also *Taylor Drug Stores, Inc. v. Associated Dry Goods Corp.,* 560 F.2d 211, 214 (6th Cir.1977) (per curiam) (referring to "rights under the First Amendment ... as those rights have been described in [*Noerr*] and [*Pennington* ]").

*7 *Suburban Restoration Co., Inc. v. ACMAT Corp.,* 700 F.2d 98, 101 (C.A.Conn.1983)

Accordingly, the Court finds that Militello can prove no set of facts in support of his claim that would entitle him to relief. DirecTV had a good faith basis for asserting a claim against Militello and its statements in the letters, and the letters of its lawyers, are nothing more than threats to enforce a right they already had-litigation in this Court. Therefore, his

First Counterclaim alleging attempted extortion in violation of the Hobbs Act must be dismissed.

Since the Court has determined that there was no attempt to violate the Hobbs Act, Militello's Second Counterclaim, alleging a conspiracy to violate that Act, is similarly dismissed.

### B. Militello's Third Counterclaim Alleging Mail Fraud in Violation of 18 U.S.C. § 1341

Militello also alleges that DirecTV, Hughes Electronics, Yarmuth Wilsdon Calfo, PLLC and the End User Recovery Project "have intentionally made false representation of material facts to Defendant regarding Defendant's purchase, possession and use of electronic equipment, as well as fraudulently represented misleading or false interpretations of federal statutes so DirecTV could collect an unlawful debt and attempt to extort money from the Defendant." (Answer ¶ 62.) The statute Militello relies on reads as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341 (2005). Militello has not alleged a scheme to defraud, and sending letters to a potential defendant in a lawsuit is, as the Court has already determined, above, protected activity in the context of a lawsuit. The Seventh Circuit, reviewing the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

meaning of "scheme to defraud" in the context of a similar statute, held that *8 [t]he plain meaning of "scheme" is a "design or plan formed to accomplish some purpose," Black's Law Dictionary 1344 (6th ed.1990), or "a plan, design, or program of action to be followed." The Random House College Dictionary 1177 (rev. ed.1980). To "defraud" means "to practice fraud," "to cheat or trick," Black's, *supra*, at 483, or "to deprive of a right or property by fraud," Random House, *supra*, at 349; "fraud" means "deceit, trickery, or breach of confidence, used to gain some unfair or dishonest advantage." *Id.* at 526.

*United States v. Doherty*, 969 F.2d 425, 428 (7th Cir.1992). Nothing Militello has plead in his counterclaim suggests a scheme to defraud. Further, courts have held that serving litigation documents by mail cannot be a predicate act to establish mail fraud under the RICO statute. *Vemco v. Camardella*, 23 F.3d 129, 134 (6th Cir.1994) (citations omitted); *see also Heights Community Congress v. Smythe, Cramer Co.*, 862 F.Supp. 204, 207 (N.D.Ohio 1994) (dismissing RICO claim and holding that a threat to sue unless a party agreed to settlement was not extortion or a predicate act for RICO purposes). These courts have rejected this mail-fraud theory on policy grounds, recognizing that such charges are merely 'artfully pleaded claims for malicious prosecution." ' *Id.* at 1208; *see also Auersperg v. von Bulow*, 657 F.Supp. 1134, 1146 (S.D.N.Y.1987) (explaining that allegations of RICO fraudulent scheme was merely malicious prosecution claim); *Auburn Med. Ctr. Inc. v. Andrus*, 9 F.Supp.2d 1291, 1297 (M.D.Ala.1998) (finding "malicious prosecution claims, couched in terms of mail fraud claims, cannot give rise to a RICO action").

The Court also finds no misstatement of the law in the letters sent and cited by Militello. Though it is true that this Court has held there is no private cause of action for illegal possession of a pirate access device, the content of the letters correctly stated that possession of such devices is an offense under federal law. *See* 18 U.S.C. § 2512; *DirecTV, Inc. v. Lewis*, No. 03-CV-6241CJS(F), 2004 WL 941805 (W.D.N.Y. Jan.6, 2004). Militello can prove no set of facts in support of his mail fraud claim that would entitle him to relief. Consequently, the Third Counterclaim must be dismissed.

*C. Militello's RICO Counterclaim*

Militello alleges that through a " 'settlement scam' " (quotations in the original), DirecTV and its "co-

conspirators ... collected and attempted to collect an unlawful debt through overt extortion demands and/or directly or indirectly invested in, or maintained an interest in, or participated in an enterprise, the activities of which affect interstate or foreign commerce in violation of 18 U.S.C. § 1962(b)." [FN2] (Answer ¶ 70.) In addition to the allegations in his counterclaim, Militello has filed a RICO statement setting forth his claim in detail. The relevant subdivisions of § 1962 read as follows:

> FN2. In his RICO statement and in a later paragraph of the counterclaim, Militello alleges that DirecTV has violated both subdivisions (b) and (c) of 18 U.S.C. § 1962.

*9 (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(a) & (b)(2005). Militello, in the RICO statement, cites to the prelitigation correspondence referred to earlier, and alleges that itmisrepresented the illegality of an "unlooper" utilized [sic] the area of "smart card technology" by implying the device's only function was illegal.... This letter was sent without DirecTV, or its agents, possession any evidence of actual interception of Plaintiff's signal by Defendant, and with DirecTV conducting no investigation in to Mr. Militello's alternate reasons for the alleged possession.

(RICO Case Statement, at 3.) To plead a case under RICO, a claimant must allege at least two predicate acts. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (3d Cir.1983). Racketeering activity includes extortion, as well as many other crimes. *See* 18 U.S.C. § 1961 (2005) (definitions). However, as the Court has previously determined, DirecTV and the others Militello names have not committed extortion. Even DirecTV's offer to settle its claim against Militello for $3,500 does not constitute extortion. *See G-I Holdings, Inc.*, 179 F.Supp.2d at 259. Thus,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 1006030 (W.D.N.Y.), RICO Bus.Disp.Guide 10,868
(Cite as: Not Reported in F.Supp.2d)

Militello has failed to meet even the first prerequisite to pleading a civil RICO action. *Moss,* 719 F.2d at 17.

The Court is unpersuaded by Militello's citation to *DirecTV v. Haston,* No. 03-0228-CV-W-HFS (W.D.Mo. Mar. 30, 2004). In his decision, Judge Sachs addressed an argument made by DirecTV in that case that the defendant "fails to allege that it acquired the enterprise as a result of racketeering activity...." *Haston,* slip. opn. at 4. That argument has not been made here. Furthermore, as Judge Sachs points out in his decision, DirecTV failed to respond there to the defendant's assertion of a claim under § 1962(c). Thus, unlike the situation before this Court, in *Haston,* Judge Sachs was faced with a counterclaim and no argument in contradiction. Here, by contrast, the Court has reviewed DirecTV's arguments about its protected conduct and lack of extortion. and has determined that Militello has no basis for a claim that DirecTV attempted to extort money from him through a scheme to defraud. Furthermore, precedent in this circuit and others convinces the Court that Militello can prove no set of facts on his RICO claim that would entitle him to relief. *See G-I Holdings, Inc.,* 179 F.Supp.2d at 259; *I.S. Joseph Co. v. J. Lauritzen A/S,* 751 F.2d 265, 267 (8th Cir.1984); *DirecTV v. Keehn,* No. 5:03-CV-58, 2003 WL 23200249, *7 (W.D.Mich. May 21, 2003). As the court observed in *Nakahara v. Bal,* No. 97 CIV.2027(DLC), 1998 U.S. Dist. LEXIS 825 (S.D.N.Y.1998),

*10 The core conclusion in *von Bulow [v. von Bulow,* 657 F.Supp. 1134 (S.D.N.Y.1987) ], that the threat of litigation or the initiation of unjustified lawsuits constituting malicious prosecution cannot alone form a predicate act for purposes of RICO, has been reached by numerous courts encountering these circumstances in this jurisdiction and others. *See, e.g.,* Harris Custom Builders, Inc. v. Hoffmeyer, 1994 U.S. Dist. LEXIS 9299, 90 Civ. 741, 1994 WL 329962, at *4 (N.D.Ill. July 7, 1994); *Ippolito v. State of Florida,* 824 F.Supp. 1562, 1575 (M.D.Fla.1993); *Capasso v. CIGNA Ins. Co.,* 765 F.Supp. 839, 843 & n. 2 (S.D.N.Y.1991); *Manax v. McNamara,* 660 F.Supp. 657, 660-61 (W.D.Tex.1987); *Paul S. Mullin & Assocs., Inc. v. Bassett,* 632 F.Supp. 532, 540 (D.Del.1986); *American Nursing Care of Toledo, Inc. v. Leisure,* 609 F.Supp. 419, 430 (N.D.Ohio 1984).

*Nakahara v. Bal,* No. 97 CIV.2027(DLC). Therefore, the Court grants DirecTV's motion to dismiss Militello's Fourth Counterclaim.

### D. Militello's Fifth Counterclaim

Militello alleges a violation of the New York Consumer Protection Law, codified under New York General Business Law § 349(h). That statute reads in pertinent part as follows:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful....

(h) In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.

N.Y. Gen. Bus. Law § 349(a) & (h). Under this statute, "[i]t is clear that 'the gravamen of the complaint must be consumer injury or harm to the public interest." ' *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 (2d Cir.1995) (quoting *AZBY Brokerage, Inc. v. Allstate Ins. Co.,* 681 F.Supp. 1084, 1089 n. 6 (S.D.N.Y.1988)).

Here, Militello has alleged as a basis for his claim under § 349 that, "DirecTV is attempting to defraud Defendant, and other similarly situated New York consumers, with false allegations, and with absolutely no proof whatsoever that [Defendant] had viewed without authorization any of DirecTV's television programming...." (Answer ¶ 80.) In order to make out a prima facie case claim under this statute, Militello must demonstrate that: (1) DirecTV directed the alleged deceptive acts at consumers; (2) the alleged acts misled customers in a material way; and (3) Militello has been injured as a result. *See Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (citing *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank,* 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995)). In this case, the Court finds that the deceptive acts alleged by Militello fall outside the scope of § 349. For example, Militello does not allege that DirecTV intended to deceive consumers in a material way when it alleged that Militello "purchased illegal signal theft equipment to gain unauthorized access to DirecTV's programming." (Letter from Spencer D. Freeman, Gregory Q. Zamudio, Deborah T. Boyfston, and John M. Stellwagon to Mr. John M. Militello (Aug. 23, 2002), at 1.) DirecTV's prelitigation correspondence to Militello was not the conduct of any business, trade or commerce or in the furnishing of any service in this state; it was a threat

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1006030 (W.D.N.Y.), RICO Bus.Disp.Guide 10,868
(Cite as: Not Reported in F.Supp.2d)

to sue Militello for allegedly stealing DirecTV's satellite signals. Further, Militello has failed to show that the letters mislead him. In fact, he alleges just the opposite–that the letters falsely claim that he possessed illegal signal theft equipment. He makes a conclusory allegation that the unlooper is "legitimate electronic equipment." (Answer ¶ 83.) Finally, the Court has already determined that the letters in this case were protected conduct by analogy to the *Noerr-Pennington* doctrine. Thus, the Court determines that the letters cannot form the basis for a claim under the New York statute. Further, the Court's research reveals one case from this District analogous to the case at bar: *DirecTV v. Rowland,* No. 04-CV-297S, 2005 U.S. Dist. LEXIS 2454, *8 (W.D.N.Y. Jan.22, 2005). In that case, Judge Skretny held, *inter alia,* that the defendant had not properly plead a counterclaim under New York General Business Law § 349 since, "DirecTV's litigation letters were not sent in the course of conducting business."

*11 Moreover, the Court concurs with the rationale in the district court cases cited by DirecTV construing the same type of counterclaim, based upon the Michigan Consumer Protection Act ("MCPA"). *See DirecTV, Inc. v. Keehn,* No. 5:03-CV-58, 2003 WL 2300249, at *3 (W.D.Mich. Jan.22, 2004); *DirecTV, Inc. v. Personette,* No. 5:03-CV-66, 2003 WL 23200252 (W.D.Mich. Oct.20, 2003); *DirecTV, Inc. v. Shea,* No. 5:03-CV-61, 2003 WL 23200250 (W.D.Mich. Oct.20, 2003); *DirecTV, Inc. v. Shouldice,* No. 5:03-CV-62, 2003 WL 23200253 (W.D.Mich. Oct.20, 2003). For example, Judge Quist of the Western District of Michigan wrote,
the MCPA does make clear that the defendant's acts must have occurred as part of an effort to further the sale or lease of goods or services to consumers. While DirecTV sells goods or services to consumers, the acts by DirecTV at issue in this case were not "trade or commerce," *i.e.,* conduct designed to further the sale or lease of goods or services to consumers. Rather, DirecTV was seeking to enforce its legal rights against persons whom DirecTV believed were engaging in the illegal theft of DirecTV's product (television signal).

*DirecTV, Inc. v. Shouldice,* 2003 WL 23200253, *4. Clearly this is what DirecTV's letters were attempting to do in this case as well, and that activity does not meet the New York statute's requirements or purpose.

Thus, the Court determines that Militello can prove no set of facts to support his claim under the New York Consumer Protection Law, and his Fifth Counterclaim must be dismissed.

### E. Militello's Sixth Counterclaim Alleging Fraud and Misrepresentation

Based on his conclusory assertion that an unlooper is a legitimate piece of electronic equipment, Militello alleges in his Sixth Counterclaim that DirecTV and its "coconspirators" falsely represented that possession of an unlooper was illegal under federal law, and that DirecTV's representations "have caused Defendant to suffer humiliation, outrage, and indignation" in addition to economic losses. (Answer ¶ ¶ 86-91.) The Court agrees with DirecTV's assessment of this counterclaim as nothing more than a malicious prosecution claim pleaded as a fraud claim. The Court is persuaded that it cannot successfully be maintained in this action. *See Sasso v. Corniola,* 154 A.D.2d 362, 363, 545 N.Y.S.2d 839 (N.Y.App.Div.1989) ("A cause of action sounding in malicious prosecution ... cannot be interposed as a counterclaim in the very civil action that was allegedly instituted wrongfully."); *von Bulow by Auersperg v. von Bulow,* 657 F.Supp. 1134 (S.D.N.Y.1987) (fraud claim was really a cause of action for malicious prosecution). Moreover, possession of an unlooper, as alleged by DirecTV, is illegal, *see DirecTV v. Trone,* No. CV 02-05194 PA (Rcx) (C.D.Cal. Feb. 10, 2003) (finding that the T5 Loaders, Bootloaders, Unloopers, and Emulators in dispute were "primarily of assistance" in the unauthorized decryption of direct-to-home satellite systems), or if it is not, then DirecTV's expression of its opinion that its possession is illegal is not an opinion that can form the basis for a fraud claim, *see, e.g. Magalnick v. Empire State Mutual Life Ins. Co.,* 13 Misc.2d 468, 468, 180 N.Y.S.2d 575 (N.Y. Sup.Ct. Appellate Term 1958) (holding that a "misrepresentation was not actionable inasmuch as it was in essence a misrepresentation of law or a mere expression of opinion on the part of the defendant as to the legal effect or consequence of what plaintiff did."); *Zuyder Zee Land Corp. v. Broadman Bldg. Co., Inc.,* 86 N.Y.S.2d 827, 828-29 (N.Y.Sup.Ct.1949) ("Even if the action be considered as one for damages for innocent misrepresentation or breach of a warranty, there can still be no recovery for plaintiff. In an action to recover damages for an innocent misrepresentation, just as in an action to recover for a knowingly false misrepresentation, it is essential that plaintiff establish reliance upon the representation.").

### V. CONCLUSION

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1006030 (W.D.N.Y.), RICO Bus.Disp.Guide 10,868
**(Cite as: Not Reported in F.Supp.2d)**

**\*12** DirecTV's motion (# 70) to dismiss Militello's counterclaims is granted in total, and Militello's First, Second, Third, Fourth, Fifth and Sixth counterclaims (Answer ¶ ¶ 41-91) are dismissed from the Answer (# 64).

IT IS SO ORDERED.

W.D.N.Y.,2005.
DirecTV, Inc. v. Lewis
Not Reported in F.Supp.2d, 2005 WL 1006030 (W.D.N.Y.), RICO Bus.Disp.Guide 10,868

Briefs and Other Related Documents (Back to top)

• 2004 WL 4000468 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion to Compel and for Expenses (Nov. 5, 2004)
• 2004 WL 4000467 (Trial Motion, Memorandum and Affidavit) Directv's Reply Memorandum of Law in Support of its Motion to Dismiss Defendant Militello's Counterclaims (Jul. 27, 2004)
• 2004 WL 4000466 (Trial Motion, Memorandum and Affidavit) Defendant Militello's Memorandum of Law Opposing Plaintiff's Motion to Dismiss Defendant Militello's Counter-Claims (Jul. 9, 2004)
• 2004 WL 4000465 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of its Motion to Dismiss Defendant Militello's Counterclaims (Apr. 30, 2004)
• 2004 WL 4000463 (Trial Pleading) Answer with Jury Demand (Mar. 15, 2004)
• 2004 WL 4000464 (Trial Pleading) Answer with Jury Demand and Counter-Claims (Mar. 15, 2004)
• 6:03cv06241 (Docket) (May 22, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 272406 (S.D.N.Y.), RICO Bus.Disp.Guide 10,218
(Cite as: Not Reported in F.Supp.2d)

▷

Briefs and Other Related Documents

United States District Court, S.D. New York.
**SONY MUSIC ENTERTAINMENT INC.**, Plaintiff-
Counterclaim Defendant,
v.
Emily Burns Erwin **ROBISON**, Martha Eleanor
Seidel and Natalie Louise Maines Pasdar, d/b/a/
"Dixie Chicks," Defendants-Counterclaim Plaintiffs.
No. 01 CIV. 6415(LMM).

Feb. 26, 2002.

L. Peter Parcher, Orin S. Snyder, Cynthia S. Arato,
Parcher, Hayes & Snyder, New York, NY, for Sony
Music Entertainment Inc.
Donald S. Engel, Engel & Engel, New York, NY, for
Emily Burns Erwin Robison, Martha Eleanor Seidel,
and Natalie Louise Maines Pasdar.

MEMORANDUM AND ORDER
MCKENNA, D.J.
*1 Plaintiff-Counterclaim Defendant ("Plaintiff")
Sony Music Entertainment Inc. ("Sony") brings this
action for injunctive and declaratory relief against
Defendants-Counterclaim Plaintiffs ("Defendants")
Dixie Chicks ("Dixie Chicks") in response to the
Dixie Chicks' alleged attempts to terminate their
recording contract. Dixie Chicks bring counterclaims
for breach of contract, fraud, breach of fiduciary
duty, and violation of 18 U.S.C. § 1961 et seq .
("RICO"). In the motion currently before the Court,
Sony moves to dismiss Dixie Chicks' Second, Third,
Fourth and Fifth Counterclaims pursuant to Rule
12(c) of the Federal Rules of Civil Procedure, and
strike the Second and Fourth Affirmative Defenses
pursuant to Rule 12(f). For the reasons stated below,
Sony's motion is granted in part and denied in part.

FACTS

The Dixie Chicks, a country music group, entered
into a "Demo Agreement" with Sony in 1995 for the
purpose of determining whether Sony was interested
in signing a recording contract with the group. In
1997, Sony and the Dixie Chicks entered into a long
form recording agreement (the "Recording
Agreement") which required the Dixie Chicks to

deliver to Sony, at Sony's option, up to six albums.
According to Defendants, Sony engaged in a scheme
to deprive the Dixie Chicks of millions of dollars in
royalties and tried to extract an extra album from the
group. After repeated attempts to complete an audit
and resolve the disputes, the Dixie Chicks, in a letter
to Sony dated July 13, 2001, purportedly terminated
the Recording Agreement, asserting that Sony had
"fraudulently induced" the Dixie Chicks into entering
the contract, and because Sony had issued "false and
fraudulent royalty statements." (Ans.¶ ¶ 11-13, 35,
38, 39, 81, 84, 85.) Defendants allege that "Sony
applied its institutional policies and practices to
engage in a pervasive, systematic and intentional
scheme to under-account and deprive them of
millions of dollars they were entitled to receive."
(Defs.' Mem. in Opp'n at 2.) Sony commenced an
action seeking a declaratory judgment and an
injunction. Dixie Chicks brought counterclaims for
breach of contract, fraud, breach of fiduciary duty,
and violation of RICO.

LEGAL STANDARD

The standard for granting a Rule 12(c) motion for
judgment on the pleadings is identical to that on a
12(b)(6) motion for failure to state a claim. Patel v.
Contemporary Classics of Beverly Hills, 259 F.3d
123, 125 (2d Cir.2001); Irish Lesbian & Gay Org. v.
Giuliani, 143 F.3d 638, 644 (2d Cir.1998). The Court
must read the complaint generously accepting the
truth of and drawing all reasonable inferences from
well-pleaded factual allegations. Mills v. Polar
Molecular Corp., 12 F.3d 1170, 1174 (2d Cir.1993).
A court should dismiss a complaint only "if it appears
beyond doubt that the plaintiff can prove no set of
facts in support of his claim which would entitle him
to relief." Valmonte v. Bane, 18 F.3d 992, 998 (2d
Cir.1994) (quoting Conley v. Gibson, 355 U.S. 41,
45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

DISCUSSION

I. Fraud-Second and Fourth Counterclaims

*2 Defendants' Second Counterclaim alleges that
Sony fraudulently induced Defendants to enter into
the Recording Contract by promising that Sony

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

would comply with the contract. (Ans.¶¶ 88-91, 93-94.) The Fourth Counterclaim alleges that Sony misrepresented and failed to disclose material facts regarding a producer's royalty rate. (Ans.¶¶ 104, 106.) Plaintiff contends that these are both breach of contract claims wrongly pled as fraud claims.

In New York, to support a claim for fraud where a contract exists, a party must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentations and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.,* 98 F.3d 13, 20 (2d Cir.1996) (internal citations omitted). Since Defendants fail to show a legal duty separate from the duty to perform under the contract because there is no fiduciary relationship between the parties (see Part II, *supra),* and Defendants do not seek special damages, in order to state a claim for fraud the allegations must relate to facts collateral and extraneous to the Recording Contract. "Fraud in the inducement can be supported by a false statement of present fact, or by a false statement of future intent which concerns a matter collateral to a contract between the parties." *Ohio Players, Inc. v. Polygram Records, Inc.,* No. 99 Civ. 33, 2000 WL 1616999, at *2 (S.D.N.Y. Oct. 29, 2000) (quoting *International CableTel Inc. v. Le Groupe Videotron Ltee,* 978 F.Supp. 483, 491 (S.D.N.Y.1997)).

In the Second Counterclaim, Defendants allege fraudulent inducement based on Sony's alleged intention not to perform the contract at the time of its inception. According to Defendants, "prior to the execution of the recording agreement, Sony represented to the Dixie Chicks that it would render timely, accurate and honest accountings, would pay all amounts due to them and would permit them to conduct meaningful audits to ascertain the accuracy of its accountings, which representations were known to Sony to be false at the time." (Defs.' Mem. in Opp'n at 9; Ans.¶¶ 31, 88, 89.) While the New York Court of Appeals has held in a number of cases that "a contractual promise made with the undisclosed intention not to perform it constitutes fraud," *Sabo v. Delman,* 3 N.Y.2d 155, 164 N.Y.S.2d 714, 718, 143 N.E.2d 906 (1957), the Appellate Divisions have held the opposite. *Papa's-June Music, Inc. v. McLean,* 921 F.Supp. 1154, 1162 (S.D.N.Y.1996). Recent Southern District case law suggests that the Appellate Divisions' approach is preferred. "The Second Circuit's rule, which, of

course, we follow here seems to be based on the view that the Appellate Division cases state the general principle of law, and that each of the individual Court of Appeals decisions to the contrary should be read as a fact-specific exception to that principle." *Cougar Audio, Inc. v. Reich,* No. 99 Civ. 4498, 2000 WL 420546, at *6 n. 4 (S.D.N.Y. Apr.18, 2000); *see also John Paul Mitchell Sys., v. Quality King Distribs.,* No. 99 Civ. 9905, 2001 WL 910405, at *4 (S.D.N.Y. Aug.13, 2001). The promises regarding accountings, payments and audits are consistent with the express terms of the Recording Contract, and therefore cannot be the basis for a fraud claim. *John Paul Mitchell,* 2001 WL 910405, at *5. Consequently, the Dixie Chicks have failed to state a claim for fraudulent inducement and the Second Counterclaim is dismissed.

*3 The Fourth Counterclaim alleges that Sony misrepresented the royalty basis for Paul Worley ("Worley"), the producer Sony suggested Defendants use to produce their second album. (Defs.' Mem. in Opp'n at 11; Ans. ¶¶ 104(A)-(B).) According to Defendants, Sony "represented that the royalty rate for Mr. Worley, deductible from the Dixie Chicks' royalties, would be 8% and would be calculated on the same basis as the Dixie Chicks' royalties." (Defs.' Mem. in Opp'n at 11.) The Dixie Chicks allege that they were overcharged at least $150,000 for Worley's services. (Ans.¶ 105-106.) The Court finds that Defendants have sufficiently alleged that Sony made a false statement about how Worley's royalties would be calculated, and that this alleged fraudulent representation is extraneous to the contract and therefore sufficiently independent from Defendants' cause of action for breach of contract. In addition, Defendants have sufficiently alleged reasonable reliance, falsity, concealment of the truth, and injury. *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 289, 662 N.E.2d 763 (1995) (elements for cause of action for fraud are "representation of a material existing fact, falsity, scienter, deception and injury"). Therefore, Defendants' Fourth Counterclaim may go forward.

## II. Breach of Fiduciary Duty-Third Counterclaim

Defendants' Third Counterclaim alleges a breach of fiduciary duty. Sony asserts that it did not owe fiduciary duties to Defendants. (Pls.' Mem. of Law in Supp. at 13.) While it is not entirely clear when fiduciary duties arise out of a contractual relationship, additional factors are necessary to convert a conventional business relationship into a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fiduciary relationship. *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.,* 893 F.Supp. 285, 289 (S.D.N.Y.1995); *Carter v. Goodman Group Music Publishers,* 848 F.Supp. 438, 445 (S.D.N.Y.1994). "Courts have repeatedly rejected the existence of a fiduciary relationship between recording artists and their record label .... Generally, an arm's length business transaction, even those where one party has superior bargaining power is not enough to give rise to fiduciary relationship." *Savage Records Group, N.Y. v. Jones,* No. 600814/95 at 6-7 (N.Y.Sup.Ct. July 17, 1997), *aff'd,* 667 N.Y.S.2d 906 (N.Y.App.Div.1998). The fact that Sony is responsible for collecting royalties and passing them on to Defendants does not create a fiduciary relationship. *Rodgers v. Roulette Records,* Inc., 677 F.Supp. 731, 739 (S.D.N.Y.1988).

This Court finds Judge Berman's decision in *Cooper v. Sony Records Int'l,* No. 00 Civ. 233, 2001 WL 1223492 (S.D.N.Y. Oct. 15, 2001) persuasive. The court in *Cooper* dismissed a very similar breach of fiduciary duty claim, stating that "[c]ourts in this district have routinely failed to find a fiduciary duty between a recording artist and a record company." *Cooper,* 2001 WL 1223492, at *5 & n. 10. In *Cooper,* the recording artists claimed that their relationship with the record company was one of trust and confidence, but the court found such allegations insufficient to qualify as special circumstances. *Id.* at *5. The cases cited by Defendants are distinguishable because they all involve special relationships that are not applicable in this situation. *E.g., CBS, Inc. v. Ahern,* 108 F.R.D. 14 (S.D.N.Y.1985) (involving existence of special account for plaintiff's benefit); *Apple Records, Inc. v. Capitol Records, Inc.,* 137 A.D.2d 50, 529 N.Y.S.2d 279 (1st Dept.1988) (involving long enduring relationship). Dixie Chicks' assertions that they placed "trust and confidence" in Sony over the six years of their relationship beginning with the 1995 "Demo Agreement" (Ans. ¶ ¶ 40, 99; Defs.' Mem. in Opp'n at 8) are not sufficient to create fiduciary duties in the absence of a special relationship, and therefore Defendants' Third Counterclaim is dismissed.

### III. RICO-Fifth Counterclaim

*4 "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 655 (S.D.N.Y.1996)

(internal quotations omitted). A careful examination of a RICO complaint is necessary to separate a valid claim from one that is "nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *In re Integrated Res. Real Estate,* 850 F.Supp. 1105, 1148 (S.D.N.Y.1993).

### 1. 1962(a) & 1962(b)

Defendants fail to clearly specify in their Counterclaims the specific subsections of RICO under which they are bringing claims. In their Memorandum in Opposition, the Dixie Chicks note in a footnote that "[f]or purposes of responding to the instant motion, and until they have had an opportunity to take discovery, the Dixie Chicks are limiting their RICO claim to 18 U.S.C. § 1962(c) and (d) and will not deal with issues relating to reinvestment of racketeering proceeds or injury resulting from investment of racketeering income." (Defs.' Mem. in Opp'n at 15 n. 14.) If Defendants intend to bring claims under 1962(a) and (b), Defendants must amend their Counterclaims to so specify, and must allege the substantive elements of these claims. Accordingly, the Court dismisses Defendants' claims under these two sections of RICO with leave to replead.

### 2. 1962(c)

A violation of 18 U.S.C. § 1962(c) [FN1] requires injury by: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). Sony moves to dismiss this claim, arguing that Defendants have failed to allege: 1) predicate acts that are sufficient as a matter of law and pleaded with specificity as required by Rule 9(b); 2) an enterprise; 3) a pattern of racketeering activity; and 4) operation or management of the alleged enterprise.

FN1. Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ... 18 U.S.C. § 1962(c).

### A. Predicate Acts

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Racketeering activity includes any acts indictable under a series of offenses listed in 18 U.S.C. § 1961(1). The predicate acts Defendants base liability upon include mail and wire fraud under 18 U.S.C. § § 1341 and 1343. According to Defendants, a series of royalty statements was sent through the mails knowingly, intentionally and fraudulently understating amounts due from Sony to the Dixie Chicks. (Defs.' Mem. in Opp'n at 18; Ans. ¶ ¶ 49-65.) The predicate acts "include making telephone calls and sending correspondence, fraudulent accounting statements, checks and other documents by interstate fax and mail to the Dixie Chicks and their representatives, mail and wire communications between and among members of the Record Club Enterprise and the members of the Foreign Accounting Enterprise and the use of mail and wires to promote, distribute and sell recordings and receive monies that were criminally diverted from the Dixie Chicks and other recording artists." (Defs.' Mem. in Opp'n at 19; Ans. ¶ ¶ 39, 49-81, 111-121.)

*5 This Court finds that the dismissal of the Second Counterclaim, for fraud, does not prevent Defendants from alleging predicate acts of mail and wire fraud, because the alleged RICO scheme to defraud is broader in scope than the fraudulent inducement claim, and because to sustain a conviction for mail fraud, "[i]t is enough that [the RICO defendant] knowingly devised a scheme to defraud and caused the use of the mails in furtherance of the scheme." United States v. King, 860 F.2d 54, 55 (2d Cir.1988). However, Defendants' claim must be dismissed for failure to plead the predicate acts with particularity as required by Rule 9(b).

"To satisfy Rule 9(b)'s particularity requirement, the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir.1989). These pleading requirements apply to RICO predicate acts sounding in fraud. Clifford v. Hughson, 992 F.Supp. 661, 666 (S.D.N.Y.1998). "[A]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir.1993). The Court concludes that Defendants have failed to meet their burden under Rule 9(b) because Defendants have failed to specify specific dates and details of the predicate acts and the people involved,

and why such acts constituted fraud. Therefore, this claim is dismissed pursuant to Rule 9(b) with leave to replead.

### B. Enterprise

A RICO enterprise is an organization consisting of a "group of people associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The enterprise must be supported by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Id. An association's existence is often proven by "what it does, rather than by abstract analysis of its structure." United States v. Bagaric, 706 F.2d 42, 56 (2d Cir.1983) (emphasis in original). The RICO 'person' (in this case, Sony, the plaintiff,) must conduct the affairs of the enterprise, and "the person and the enterprise referred to must be distinct." Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir.1994).

The enterprise participants, according to Defendants, "include the various companies, societies, record clubs and other persons engaged in the distribution of sound recordings and/or the collection of monies generated from the distribution and sale of sound recordings." (Ans.¶ 112.) Although Sony is part owner of one of the record clubs that Defendants identify as part of the enterprise (Ans.¶ 113), this fact is not fatal to Defendants' claim because Sony does not constitute the entire enterprise. Riverwoods, 30 F.3d at 344; Cullen v. Margiotta, 811 F.2d 698, 729-30 (2d Cir.1987) ("we see no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise' ").

*6 To plead the existence of a RICO enterprise, a party need only provide a clear and concise statement of the enterprise pursuant to Rule 8 of the Federal Rules of Civil Procedure. Trustees of the Plumbers and Pipefitters Ntl. Pension Fund v. Transworld Mech., Inc., 886 F.Supp. 1134, 1145 (S.D.N.Y.1995). However, Defendants fail to define the RICO enterprise with even this degree of particularity. There are no allegations in the Counterclaims regarding the specific identities or number of participants, the structure of the enterprise, or how the enterprise's activities are sufficiently distinguishable from the regular business activities of these entities. First Nationwide Bank v. Gelt

Not Reported in F.Supp.2d                                                                                      Page 5
Not Reported in F.Supp.2d, 2002 WL 272406 (S.D.N.Y.), RICO Bus.Disp.Guide 10,218
(Cite as: Not Reported in F.Supp.2d)

*Funding, Corp.,* 820 F.Supp. 89, 98 (S.D.N.Y.1993); *Moll v. U.S. Life Ins.,* 654 F.Supp. 1012, 1032 (S.D.N.Y.1987). Accordingly, Defendants' RICO claim is dismissed with leave to replead.

### C. Pattern of Racketeering Activity

A "pattern of racketeering" requires the commission of at least two predicate acts within a ten year period. 18 U.S.C. § 1961(5). In addition, the acts must be related and continuous. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 239-43, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Defendants allege that Sony rendered fraudulent accounting statements for all of the accounting periods for which the Dixie Chicks earned royalties, and engaged in fraudulent activities involving the record club and foreign sales royalties. (Ans.¶ ¶ 32, 38, 113-119.) The Court finds that (assuming that Defendants can properly plead the other RICO elements considered herein) Defendants have pleaded a pattern of racketeering activity sufficient to survive a motion to dismiss, based on their allegations that the predicate acts were related, had similar purposes, participants, victims, and methods, and that the acts extended over a substantial amount of time. *Plumbers and Pipefitters,* 886 F.Supp. at 1144.

### D. Conduct or Participation

The Supreme Court held in *Reves v. Ernst & Young,* 507 U.S. 170, 184, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) that § 1962(c) only applies to those who "participate in the operation or management of an enterprise." Defendants' allegations are (again, assuming proper pleading of the other RICO elements) sufficient to show that Sony was a major participant in orchestrating the alleged fraudulent enterprise through its rendering of false accounting statements and underpayment of royalties to Defendants, and by entering into agreements with the record clubs and foreign distributors. (Ans.¶ ¶ 111, 113, 116.) Therefore, this requirement is met.

Since Defendants have failed to plead the predicate acts with specificity as required by Rule 9(b) and have failed to adequately allege the existence of an enterprise, Defendants' claim under § 1962(c) is dismissed with leave granted to replead.

### 3. 1962(d)

Section 1962(d) prohibits any conspiracy to commit a RICO violation. Defendants allege that "Sony and the sub-distribution companies and other entities that participate in the foreign distribution of sound recordings, some of whom are partially or fully owned and controlled by Sony, associated and conspired with each other to defraud the Dixie Chicks and other Sony artists and deprive them of monies due to them." (Ans.¶ 116.) Defendants have failed to allege specific facts that support a conclusion that Sony and the other conspirators consciously agreed to commit predicate acts, as required to state a claim under § 1962(d). *Black Radio Network, Inc. v. NYNEX,* 44 F.Supp.2d, 565, 581 (S.D.N.Y.1999). Conclusory allegations of a conspiracy are insufficient. *Id.; see also Naso v. Park,* 850 F.Supp. 264, 275 (S.D.N.Y.1994) (dismissing RICO conspiracy claim where the complaint "simply does not make specific factual allegations from which we can conclude that defendants consciously agreed to commit predicate acts"). Defendants' RICO civil conspiracy claim is dismissed with leave to replead.

### IV. Motion to Strike Affirmative Defenses

*7 Sony makes a Rule 12(f) [FN2] motion to strike the Dixie Chicks' Second Affirmative Defense, that Sony is barred from bringing this action because the Recording Agreement was entered into as a result of its fraud, and Fourth Affirmative Defense, that Sony has breached its fiduciary duty to the Dixie Chicks. A motion to strike affirmative defenses is generally not favored. *Country Vanlines Inc. v. Experian Info. Solutions, Inc.,* No. 01 Civ. 7075, 2002 WL 21918, at *3 (S.D.N.Y. Jan.4, 2002). To prevail on a motion to strike: (1) there may be no question of fact which might allow the defense to succeed; (2) there may be no substantial question of law, a resolution of which could allow the defense to succeed; (3) the moving party must show that it is prejudiced by the inclusion of the defense. *SEC v. Toomey,* 866 F.Supp. 719, 722 (S.D.N.Y.1992). Since Sony fails to allege that it would be prejudiced should the affirmative defenses remain, the motion to strike is denied, with the exception that those defenses cannot be premised on the facts alleged in Defendants' Second and Third Counterclaims.

FN2. Rule 12(f) provides that "[u]pon motion made by a party .... the court may order stricken from any pleading any insufficient defense or any redundant,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    **Page 6**
Not Reported in F.Supp.2d, 2002 WL 272406 (S.D.N.Y.), RICO Bus.Disp.Guide 10,218
**(Cite as: Not Reported in F.Supp.2d)**

> immaterial, impertinent defense or any
> redundant, immaterial, impertinent or
> scandalous matter."

### CONCLUSION

For the reasons stated above, Defendants' Second and
Third Counterclaims, for fraud and breach of
fiduciary duty respectively, are dismissed with
prejudice. The Fourth Counterclaim, for fraud, may
go forward. Defendants' RICO claim (the Fifth
Counterclaim) is dismissed with leave to replead
within forty-five days of the date hereof. Sony's
motion to strike is denied.

SO ORDERED.

S.D.N.Y.,2002.
Sony Music Entertainment Inc. v. Robison
Not Reported in F.Supp.2d, 2002 WL 272406
(S.D.N.Y.), RICO Bus.Disp.Guide 10,218

Briefs and Other Related Documents (Back to top)

• 1:01cv06415 (Docket) (Jul. 17, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Benjamin A. ALLEN and Allen Foods, Inc.,
Plaintiffs,
v.
NEW WORLD COFFEE, INC., New World Coffee
& Bagels, New World Coffee-Manhattan Bagel, Inc.,
New World Holdings, Inc., Ramin Kamfar, Collin
Gaffney, and John Does 1-12, Defendants.
**No. 00 CIV 2610 AGS.**

March 27, 2001.

*MEMORANDUM ORDER*
SCHWARTZ, J.
*1 In this action, plaintiffs seek damages, and
injunctive and declaratory relief arising out of a
franchise agreement with defendants. They allege
that defendants fraudulently induced plaintiff
Benjamin A. Allen ("Allen") to enter into the
agreement, asserting claims under the Racketeer
Influenced and Corrupt Organizations Act ("RICO"),
19 U.S.C. § § 1962 *et seq.,* and under New York
state law for common law fraud. Currently before the
Court is defendants' motion to dismiss each of
plaintiffs' RICO claims pursuant to Fed.R.Civ.P.
12(b)(6) ("Rule 12(b)(6)") and Fed.R.Civ.P. 9(b)
("Rule 9(b)"). For the reasons set forth below, the
motion is granted with prejudice as to plaintiffs'
claim under 19 U.S.C. § 1962(c) and without
prejudice as to the others.

I. Factual Background [FN1]

FN1. The following facts are derived from
the Complaint and plaintiffs' RICO
statement, which are accepted as true for the
purposes of the instant motion, unless
otherwise noted. Defendants point out that
plaintiffs filed the RICO statement after
defendants' served their moving papers on
the instant motion. The Court declines to
disregard the RICO statement as requested
by defendants, and declines to dismiss the
RICO claims on this ground, (Reply
Memorandum in Support of Defendants'

Motion to Dismiss Counts IV Through VII
of the Complaint ("Def.Rep.") at 2-4), but
bears in mind the timing of the Statement's
filing in its consideration of the motion.

Allen, a resident of New Jersey, is the president,
chief financial officer, and sole shareholder of
plaintiff Allen Foods, Inc., a New Jersey corporation
with its principal place of business in Jersey City,
New Jersey. (Compl.¶ 6.) Allen is the franchisee of a
unit of New World Coffee & Bagels located in New
Brunswick, New Jersey. (*Id.* ¶ 7.) Defendant New
World Coffee & Bagels is the franchisor of the New
World Coffee & Bagels restaurant system. The other
corporate defendants are entities affiliated with New
World Coffee & Bagels. All of the corporate
defendants (collectively, "New World") have their
principal places of business in New York. (*Id.* ¶ ¶ 9,
10.) Defendant Ramin Kamfar ("Kamfar") is the
chief executive officer of New World; defendant
Collin Gaffney ("Gaffney") is New World's director
of franchising. (*Id.* ¶ ¶ 12, 13.) Defendants John
Does 1-12 are officers, directors, employees, and/or
agents of New World whose identities are currently
unknown to plaintiffs. (*Id.* ¶ 14.)

Plaintiffs allege that "prior to, or during the fall of
1997," New World made false and misleading
statements in an effort to induce Allen to invest in a
New World franchise. (*Id.* ¶ 15.) Specifically, in
November or December of 1997, Gaffney conducted
a seminar during which he distributed a brochure that
allegedly made false and misleading statements
concerning the sales and income potential of New
World franchise units. (*Id.* ¶ ¶ 17-20; RICO Stmt. at
3-4.) The brochure, entitled "Why Consider Our
Franchise Before Any Other Coffee, Bagel, or Food
Franchise," set forth earnings capability projections
for franchise units in three levels of potential annual
sales: (i) $500,000, with net income of $101,900; (ii)
$750,000, with net income of $170,700; and (iii) $1
million, with net income of $237,000. (Compl. ¶ 19,
Exs. A, B; RICO Stmt. at 4-5.) $750,000 was
purportedly represented to be the average sales
amount. (Compl.¶ ¶ 20, 21.) Gaffney allegedly stated
at the seminar that the income statements were based
on units located in New York City, and that
restaurants located in New Jersey would have greater
earnings potential because they paid lower rent. (*Id.* ¶
20; RICO Stmt. at 5.) Defendants allegedly made
additional misrepresentations as to projected sales

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

figures by telephone, mail, and Internet.[FN2] (Compl. ¶ ¶ 21, 24-27; RICO Stmt. at 6.)

> FN2. Plaintiffs also allege that defendants mailed a "circular" to plaintiffs and other prospective franchisees. (Compl.¶ 25.) However, no details are provided as to the content of this circular; nor is the circular provided as an exhibit on the motion.

*2 Plaintiffs claim that in reliance upon the misrepresentations, Allen entered into a contract with defendants pursuant to which he invested money in a New World franchise in New Brunswick, New Jersey. (Compl.¶ ¶ 32, 33.) Plaintiffs later suffered damages because Allen's New World unit generated revenues lower than those represented in New World's projections. (Id. ¶ ¶ 34-35; RICO Stmt. at 8, 36-39.) Plaintiffs allege that other, unidentified New World franchisees also experienced lower revenues. (Compl. ¶ 34; RICO Stmt. at 7, 9, 36-37.)

This action was filed on April 5, 2000. Plaintiffs' central allegation, upon which each of their causes of action is based, is that "defendants ... intended to deceive plaintiffs, and did deceive plaintiffs, by making false and material representations regarding the earnings capabilities of their new franchise restaurants. Defendants grossly inflated the earnings capabilities of their new franchise restaurants in asserting that their new franchise restaurants would [gross] a minimum of $500,000 annually, an average of $750,000 annually, and a high of $1,000,000 annually." (Compl. ¶ ¶ 22, 36-88; RICO Stmt.) Plaintiffs' RICO Statement was filed on June 8, 2000.[FN3]

> FN3. The Complaint and RICO statement, when discussed together in this Order, are hereinafter referred to as "plaintiffs' pleadings."

II. Discussion

A. Motion to Dismiss Standard

On a motion to dismiss RICO claims, the Court must accept the factual allegations contained in the Complaint and RICO Statement as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the Complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993) (noting that factual allegations in the complaint must be accepted as true on motion to dismiss); *McLaughlin v. Anderson,* 962 F.2d 187, 189 (2d Cir.1992) ("In analyzing the issues on this motion to dismiss, we must take as true the facts as alleged in the complaint and as supplemented by the RICO case statement ordered by the district court."). In deciding a motion under Rule 12(b)(6), the Court may consider "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint, as well as [ ] matters of which judicial notice may be taken." *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.,* 155 F.3d 59, 67 (2d Cir.1998). When matters extrinsic to the pleadings are presented on a Rule 12(b)(6) motion to dismiss, the district court must either exclude the additional material and decide the motion on the Complaint alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material. *See Morelli v. Cedel,* 141 F.3d 39, 46 (2d Cir.1998) (citing *Carter v. Stanton,* 405 U.S. 669, 671 (1972)). In this case, the Court declines to consider matters outside of those permissible under Rule 12(b)(6), and chooses not to convert the motion into one for summary judgment.[FN4]

> FN4. Plaintiffs have submitted affirmations in support of their submissions on the instant motion. (Affirmation of Jimmie Engram in Opposition to Defendants' Motion to Dismiss dated June 19, 2000; Affirmation of Jimmie Engram in Sur-Reply to Defendants' Motion to Dismiss Counts IV Through VII of the Complaint dated July 5, 2000.) The Court declines to consider these affirmations for the purposes of the instant motion.

B. Plaintiffs' RICO Claims Must Be Dismissed

*3 In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." *United States v. Porcelli,* 865 F.2d 1352, 1362 (2d Cir.1989). "Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." '

Not Reported in F.Supp.2d                                                                                Page 3
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 346 (S.D.N.Y.1998). In ensuring that "RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetrate the acts of racketeering ... courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Id.*

Plaintiffs assert four separate causes of action under RICO pursuant to 18 U.S.C. § § 1962(a), (b), (c), and (d). In their motion to dismiss, defendants make several arguments in support of dismissal of each of these claims. Defendants first contend that all four claims must be dismissed because plaintiffs have failed to allege the predicate acts of mail and wire fraud with particularity under Fed.R.Civ.P. 9(b) ("Rule 9(b)"). Alternatively, defendants contend that plaintiffs have failed to allege a pattern of racketeering activity necessary to support any RICO cause of action brought pursuant to Section 1962. Further, defendants assert that: (i) the Section 1962(a) claim should be dismissed because plaintiffs have failed to allege injury as the result of investment of racketeering income; (ii) the Section 1962(b) claim should be dismissed for failure to allege acquisition or maintenance of an interest in an enterprise, namely New World, through a pattern of racketeering activity; (iii) the Section 1962(c) claim should be dismissed for failure to allege a RICO enterprise separate and distinct from the persons comprising the enterprise; and (iv) the Section 1962(d) claim must be dismissed because plaintiffs have failed to allege any actionable RICO violation or facts to demonstrate a conspiracy. The Court addresses each of defendants' arguments in turn.[FN5]

FN5. In their reply, defendants assert that plaintiffs' RICO claims are barred because Allen contractually agreed to waive all his rights under RICO when he entered into his franchise agreement with New World. (Def. Rep. at 2.) They cite to Section 29.4 of the agreement, which states that Allen and New World consented "to waive now and forever, any and all rights either may have under the federal statute known as RICO." (Id. at 2, Ex. A.) However, plaintiffs claim that the franchising agreement is void on the ground that defendants fraudulently induced Allen to enter into the agreement. (Compl. ¶ ¶ 41-48; Memorandum of Law of Plaintiffs in Sur-Reply To Defendants' Motion to Dismiss at 2-4.) The Court therefore

declines to dismiss the Complaint based on the provisions of Allen's franchise agreement, the validity of which is disputed, and the circumstances of negotiation of which are the subject of this action. *See Cramer v. Newburgh Molded Prods., Inc.,* 645 N.Y.S.2d 46, 47 (2d Dep't 1996) (stating that a release may be set aside "for duress, illegality, *fraud,* or mutual mistake") (citations omitted) (emphasis added); *Zipper v. Sun Co.,* 947 F.Supp. 62, 70 (E.D.N.Y.1996) (stating same as a "fundamental principle"); *Mashreqbank PSC v. Heller Fin., Inc.,* No. 99 Civ. 4748, 2001 WL 11065, at *2 (S.D.N.Y. Jan. 4, 2001) ("A release however may be vitiated on the basis of fraudulent inducement.")

1. Failure to Plead with Particularity

To state a cause of action under RICO, a plaintiff must allege (i) that the defendant (ii) through the commission of two or more acts (iii) constituting a "pattern" (iv) of "racketeering activity" (v) directly or indirectly invests in, or maintains an interest in, or participates in (vi) an "enterprise" (vii) the activities of which affect interstate commerce. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983). Plaintiffs allege that each defendant has committed the predicate acts of mail and wire fraud, in violation of 18 U.S.C. § § 1341 and 1343, which are defined as "racketeering activities" by section 18 U.S.C. § 1961(1). These allegations are subject to the particularity requirement of Rule 9(b) because they sound in fraud. *Lukonia Management Ltd. v. Meriwether,* 106 F.Supp.2d 540, 543 (S.D.N.Y.2000); *Sluka v. Estate of Herink,* No. 94 CV 4999, 1996 WL 612462, at *4 (E.D.N.Y. Aug. 13, 1996); *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 280 (S.D.N.Y.1991) (citations omitted).

*4 To plead mail or wire fraud with the requisite particularity under Rule 9(b), plaintiffs must, at a minimum: (i) specify the statements that they contend were false or misleading; (ii) explain why the statements were fraudulent; (iii) state when and where the statements were made; and (iv) identify the speaker or speakers. *McLaughlin,* 962 F.2d at 191 (citing *Cosmas v. Hassett,* 886 F .2d 8, 11 (2d Cir.1989)). Furthermore, "[p]laintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *Id.* "Although allegations of intent are subject to a less strict standard, plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent

intent." _Sluka_, 1996 WL 612462, at *4 (citing _Shields v. Citytrust Bancorp._, 25 F.3d 1124, 1128 (2d Cir.1994)). Further, where multiple defendants are accused of mail or wire fraud, plaintiffs must plead fraud with particularity as to each defendant, _Mills v. Polar Molecular Corp._, 12 F.3d 1170, 1176 (2d Cir.1993), unless such defendants are corporate insiders, _DiVittorio v. Equidyne Extractive Indus., Inc._, 822 F.2d 1242, 1247 (2d Cir.1987).

Having examined the Complaint according to these standards, the Court concludes that plaintiffs have failed to meet their burden under Rule 9(b). Although plaintiffs have asserted facts which might suggest fraud on the part of some of the defendants, the Complaint is impermissibly vague as to the details. Plaintiffs have specified certain statements that they contend were false and misleading, namely the income projections contained in the brochure distributed at the seminar to potential franchisees and discussed there by Gaffney. (Compl.¶ ¶ 17-19, Exs.A, B.) They allege that these statements were fraudulent because they misstated the potential revenue of New World franchises in order to induce franchisees to invest. However, plaintiffs have failed to specify the statements they allege were made (i) in the unidentified "New World circular" which was mailed to plaintiffs, (ii) by Gaffney in phone conversations with plaintiffs after the seminar, and (iii) by defendants on the New World Internet website. (_Id._ ¶ ¶ 25-27.) In addition, plaintiffs have failed to sufficiently identify when any defendants' allegedly false representations was made. The only information they provide with regard to timing is that the alleged scheme to defraud occurred "prior to, or during, the fall of 1997," and that the seminar took place "[d]uring November or December of 1997"; the timing of the mailings of the brochure and circular, telephone calls, and the Internet advertisements is unspecified, although plaintiffs state that the telephone calls were made "subsequent" to the seminar. (_Id._ ¶ ¶ 16-17, 21, 24-28; RICO Stmt. at 10-14.) Further, while plaintiffs allege that Gaffney made certain statements at the seminar and in telephone conversations, their pleadings do not specify any other defendant's acts in connection with the fraud. While Kamfar is arguably excluded from this requirement because he is New World's CEO, and thereby an insider, plaintiffs do not specifically explain how each of the corporate defendants or John Does 1-12 are linked to the fraud, stating only that Gaffney acted "on behalf of New World and the other defendants." [FN6] (Compl.¶   17.) Because plaintiffs have failed to plead the predicate acts of mail and wire fraud with the requisite particularity, their RICO

claims must be dismissed pursuant to Rules 12(b)(6) and 9(b).[FN7]

> **FN6.** While the Court is mindful that plaintiffs do not know the identities of John Does 1-12, the Complaint neither alleges their involvement in the alleged fraud on information and belief, which is permitted "when the facts at issue are 'peculiarly within the opposing party's knowledge' " _DiVittorio_, 822 F.2d at 1247, nor alleges that some or all of these individuals are insiders.

> **FN7.** Plaintiffs' failure to provide the requisite details is particularly notable given that the RICO Statement guide provided to parties by the Court requires them to identify with particularity "the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made." (_See_ RICO Stmt. at 13 (listing question and answer).)

### 2. Pattern of Racketeering Activity

**\*5** Section 1962 prohibits: (a) the use of income "derived ... from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce; (b) the acquisition of any interest in or control of such an enterprise "through a pattern or racketeering activity"; (c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity"; and (d) conspiring to do any of the above. 18 U.S.C. § 1962. The existence of a "pattern of racketeering activity" is therefore a requirement under any prong of Section 1962. _GICC Capital Corp. v. Tech. Fin. Group, Inc._, 67 F.3d 463, 465 (2d Cir.1995). In order to demonstrate a pattern of racketeering activity under Section 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity. _H.J. Inc. v. Northwestern Bell Tel. Co._, 492 U.S. 229, 240 (1989). The predicate acts are sufficient to form a pattern if the acts have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." _Id._ at 240. "Continuity is both a closed- and open-ended concept, referring to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Id.; see also GICC Capital Corp., 67 F.3d at 465-66.*

Closed-ended continuity requires an allegation of "a series of related predicates extending over a substantial period of time." *H.J. Inc.,* 492 U.S. at 241. Where the underlying conduct is not inherently unlawful, as in the instant case, predicate acts continuing over a few weeks or months and threatening no future criminal conduct do not satisfy this continuity requirement. *Id.* at 241; *United States v. Aulicino,* 44 F.3d 1102, 1111-12 (2d Cir.1995) (comparing the continuity requirement in criminal RICO cases with those of civil RICO cases); *Protter v. Nathan's Famous Sys., Inc.,* 925 F.Supp. 947, 953 (E.D.N.Y.1996). In considering whether a plaintiff's allegations are sufficient to establish closed-ended continuity, the court must examine such factors as the "length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp., 67 F.3d at 467.* Here, plaintiffs' pleadings cannot support a finding of closed-ended continuity because they fail to adequately specify when the alleged fraud took place; as noted *supra,* the only allegations in this regard are that the seminar occurred in November or December of 1997, that other misrepresentations were subsequently made by phone, and possibly mail and the Internet, and that at some time after that Allen entered into a franchise agreement with New World.[FN8] (Compl. ¶¶ 17-20, 21-27, 32; RICO Stmt. at 10-14.) The number of victims is also undefined in plaintiffs' pleadings, as plaintiffs merely assert that the alleged fraud was perpetrated against "other franchise investors." [FN9] (*Id.* ¶¶ 18, 23, 25, 28, 34.) Moreover, plaintiffs' conclusory allegations that the predicate acts of mail and wire fraud "amounted to continued criminal activity in that they were a series of substantial predicates extending over a substantial period of time" and that "defendants have engaged in such practices for several years" are insufficient to establish closed-ended continuity. (*Id.* ¶ 28; RICO Stmt. at 16; Memorandum of Plaintiffs in Opposition to Defendants' Motion to Dismiss ("Pl.Mem.") at 13-14.) Plaintiffs also provide no facts to support their allegation that defendants' practices associated with their scheme to defraud "are related because they have the same or similar purposes, results, participants, victims and methods of commission ... and are not isolated events." (RICC Stmt. at 17; Pl. Mem. at 14); *see HJ Inc., 492 U.S. at 240* (employing this language in setting forth the closed continuity requirement).

FN8. If the acts took place only during the two or three months in late fall 1997 and early winter 1998, such acts would likely not satisfy the continuity requirement. When the Second Circuit has found closed-ended continuity, the predicate acts have spanned over two years. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992); *Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989); *see also DeFalco v. Bernas,* No. 99 Civ. 7648, 2001 WL 261934 (2d Cir. Mar. 16, 2001) (noting that the Court has never held that a period of less than a year-and-one-half satisfies the continuity requirement).

FN9. While plaintiffs assert in the RICO Statement that "[a] host of other franchise owners" were defrauded and are listed on "Schedule A," the attached list contains only a list of franchise locations in New York, New Jersey, Connecticut, Pennsylvania, and Germany, some of which bear the handwritten designation "closed." The names of franchisees are not listed. (RICO Stmt. at 7, Ex. A.)

*6 Plaintiffs' allegations of open-ended continuity are similarly deficient. To show open-ended continuity, a complaint must allege facts to show that the predicate acts "by [their] nature project[ ] into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241; *Protter,* 925 F.Supp. at 954. "In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant ." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999) (citing *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 97 (2d Cir.1997); *GICC Capital Corp., 67 F.3d at 466*). Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity. *See H.J. Inc., 492 U.S. at 242-43* ("[T]he threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes."); *see also Cofacredit,* 187 F.3d at 242. However, where, as here, the enterprise primarily conducts a legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

threat of continued criminal activity." *Cofacredit,* 187 F.3d at 243 (citing *H.J. Inc.,* 492 U.S. at 243). In this case, the only fraud that is specified in the Complaint relates to the sale of the New World franchise to Allen; the alleged solicitation of business from and sale of franchises to other investors is not sufficiently defined as to permit an inference that defendants' predicate acts constitute a threat of continued criminal activity. Further, plaintiffs' allegations that defendants' conduct with regard to Allen applied to other investors, was defendants' "regular way of doing business," and that "the very nature of these acts imply a threat of continued criminal activity, at present and in the future," are merely conclusory. (Compl. ¶ 30; RICO Stmt. at 13, 17, 29; Pl. Mem. at 14.)

Because plaintiffs' pleadings fail to set forth facts that, considered in the light most favorable to plaintiffs, are sufficient to warrant the inference of a pattern of racketeering activity, the Complaint must be dismissed.

### 3. Section 1962(a)

Defendants further contend that plaintiffs' allegations pursuant to Section 1962(a) must be dismissed because the Complaint fails to allege "injury" as a result of defendants' investment of racketeering income. The Court agrees. "Under the plain language of this section, a violation of 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise." *Quaknine v. MacFarlane,* 897 F.2d 75, 82-83 (2d Cir.1990). A plaintiff "must allege injury 'by reason of' defendants' investment of racketeering income in [the] enterprise." *Id.; see also Goldfine v. Sichenzia,* 118 F.Supp.2d 392, 399 (S.D.N.Y.2000) (stating that "injury by reason of investment of racketeering income in an enterprise is the very foundation of a § 1962(a) claim"). "Allegations that the predicate acts caused injury, or that the defendants reinvested their income in an enterprise conducting unlawful activity will not suffice." *Protter,* 925 F.Supp. at 954.

*7 While the Complaint alleges that defendants "used or invested, directly or indirectly, part of such [racketeering] income, or the proceeds of such income, in the establishment or operation of the New World enterprise" which resulted in "economic injury," there are no factual allegations indicating that plaintiffs' injury was the result of the investment of racketeering income as opposed to the alleged

predicate fraudulent acts. (Compl. ¶ ¶ 52, 58-59; RICO Stmt. at 17.) In their submissions on the motion, plaintiffs contend that they "were injured by the investment itself," without specifying the nature of that investment. They then state that the "income derived from a pattern of racketeering activity" injured plaintiffs, and state a few paragraphs later that they were injured by defendants' "misrepresentations" as to the earnings potential of New World franchises, i.e. the predicate acts. (Pl. Mem. at 16-17; *see* RICO Stmt. at 33 (stating that the money received by defendants was used to fund the "scheme of activities" intended to fraudulently induce plaintiffs to invest in a franchise, without describing such activities.) Plaintiffs' inconsistent allegations exemplify the flaws of their Section 1962(a) claim. *Cf. Guiliano v. Everything Yogurt, Inc.,* 819 F.Supp. 240, 248-49 (E . D.N.Y.1993) (dismissing Section 1962(a) claim with prejudice where claim was "solely predicated on the injuries that they sustained through defendants' racketeering activity, not through the investment of proceeds derived from prior racketeering activity.") Accordingly, plaintiffs' Section 1962(a) claim must be dismissed.

### 4. Section 1962(b)

Defendants claim that the Section 1962(b) claim should similarly be dismissed. This section prohibits a person from acquiring or maintaining an interest or control in an enterprise through a pattern of racketeering. 18 U.S.C. § 1962(b). To survive a motion to dismiss, the pleadings must "specify the connection between defendants' racketeering activity and their interest in the.. enterprise." *Protter,* 925 F.Supp. at 955. Injury in fact is insufficient to state a Section 1962(b) claim unless such injury was caused by the acquisition or maintenance of control in the enterprise and not merely by the predicate acts. *See O & G Carriers, Inc. v. Smith,* 799 F.Supp. 1528, 1543 (S.D.N.Y.1991); *see also Danielsen v. Burnside-Ott Aviation Training Ctr., Inc .,* 941 F.2d 1220, 1231 (D.C.Cir.1991) ("[P]laintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation.") In this case, plaintiffs allege, in conclusory fashion, that the individual defendants "acquired or maintained, directly or indirectly, an interest in or control of the New World enterprise," and that defendants' racketeering activity was "an integral part of their scheme to build their franchising business by misrepresenting earnings capabilities of their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

restaurants." (Com pl. ¶ ¶ 62-63; RICO Stmt. at 19; Pl. Mem. at 18.) However, absent from plaintiffs' pleadings are any facts supporting an inference that defendants acquired or maintained control of the enterprise in question through their racketeering activity, or that plaintiffs suffered injury as a result of such control.[FN10] (See RICO Stmt. at 33-34.) Accordingly, the Court dismisses plaintiffs' Section 1962(b) claim.

> FN10. Plaintiffs' contention that defendants' argument in support of dismissal of their Section 1962(b) claim fails because "it specifies the wrong entity as the RICO enterprise" is unavailing; plaintiffs' allegations are insufficient regardless of the enterprise at issue. Plaintiffs go on to allege, as they did under Section 1962(a), that "defendants injured plaintiffs by using the pattern of racketeering activity to fraudulently induce plaintiffs to invest in a New World franchise." (Pl. Mem. at 19-20.) Such allegations are insufficient because they do not support the proposition that the acquisition or maintenance of control of the enterprise was the cause of plaintiffs' alleged injury; rather, the latter statement implies, as do the entirety of the factual allegations in plaintiffs' pleadings, that plaintiffs' alleged injury resulted from defendants' predicate acts.

### 5. Section 1962(c)

*8 Defendants move for dismissal of plaintiffs' Section 1962(c) claim on the ground that the pleadings fail to distinguish the RICO "persons," i.e. the defendants individually, from the New World enterprise. Section 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." 18 U.S.C. § 1962(c). Under this section, the RICO 'person' must conduct the affairs of the enterprise, and "the person and the enterprise must be distinct ." Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir.1994). The requirement that the person and enterprise be distinct leads to two conclusions. First, "the employees in association with [a] corporation do not form an enterprise distinct from the corporation." Id. Second, "a corporate entity may not be both [a] RICO person and the RICO enterprise under Section 1962(c)." Id.

In the Complaint, plaintiffs support their Section 1962(c) claim by alleging that the various corporate defendants are all affiliated entities which constitute New World, that the individual defendants are employees of New World, and that "New World constitutes an 'enterprise' within the meaning of 18 U.S.C. § § 1961(4) and 1962." (Compl.¶ ¶ 9, 10, 12-14, 51.) The Complaint alleges no facts that would indicate that the individual defendants were acting outside the scope of their authority as employees of New World in fraudulently inducing Allen to purchase a New World franchise. Rather, the most the Complaint alleges is that the individual defendants associated together to commit certain predicate acts in the course of their employment and on behalf of the corporation, which is insufficient to establish an enterprise distinct from the corporation.[FN11] See Riverwoods, 30 F.3d at 344.

> FN11. Plaintiffs' reliance on the Second Circuit's decision in Securiton Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir.1995) is unavailing. In that case, the court held that if the RICO enterprise consists of two "separate and distinct corporations," the enterprise may be distinct from those corporations and a RICO person who is an employee of both corporations. Id. at 263 (finding a RICO enterprise consisting of three RICO persons, an individual and two corporations engaged in distinct lines of business). However, in this case, each of the corporations are interrelated, as they are joint franchisors of New World restaurants, share the same office, and employ the individual RICO persons. (Compl.¶ ¶ 7-14). Further, plaintiffs' statement that each corporation "is each is or [sic] independent activity that could benefit from the activities of [the individual defendants]" is insufficient to establish that such corporations could part of an enterprise distinct from themselves. (Pl. Mem. at 21-22.)

Evidently seeking to cure this deficiency in the RICO Statement, plaintiffs contradict the clear language of the Complaint and allege for the first time that the "enterprise" in question is an entity called "the Racket," which is "not both the liable 'person(s) and the RICO 'enterprise." ' [FN12] (RICO Stmt. at 25, 35; Pl. Mem. at 20 .) They further allege that while the individual defendants are associated with and are

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

members of the Racket, they are not employees thereof. (RICO Stmt. at 27-28.)

> FN12. In fact, plaintiffs falsely state in their submissions on the motion that they "do not allege that New World was the RICO enterprise," when such statement is clearly set forth in the Complaint. (Pl. Mem. at 19; Compl. ¶ 51.)

However, plaintiffs do not specify the nature of "the Racket," stating, in accordance with the RICO statute, that it consists of a "group of individuals associated in fact although not a legal entity." (Id. at 25; Pl. Mem. at 12.) Plaintiffs acknowledge that these individuals are the same as those who were members of the New World "enterprise" set forth in the Complaint. (RICO Stmt. at 2-3, 25; Pl. Mem. at 12, 20-21.) Moreover, plaintiffs do not allege that the Racket is a distinct entity, but that defendants "corrupted New World and, collectively, transformed it into a RICO enterprise participant through mail fraud, wire fraud, conspiracy, fraudulent inducement, and other illegal acts." (RICO Stmt. at 26.) The Court declines to credit plaintiffs' attempt to create an illusory enterprise to save their Section 1962(c) claim. Even if the Racket were indeed a separate entity, the RICO Statement gives no plausible reason for its existence other than the perpetration of the alleged racketeering activity. Plaintiffs "do not allege facts sufficient to support an inference that the enterprise existed as a continuous structure 'separate and apart' from the commission of the predicate acts alleged, or that there was an organized mechanism for directing the enterprise's affairs on an ongoing basis beyond the fraudulent scheme alleged." [FN13] Schmidt, 16 F.Supp.2d at 350. Such an enterprise, which would fail to exist once the predicate acts are removed from the equation, is not a cognizable enterprise for RICO purposes. See Goldfine, 118 F.Supp. at 400-01 (citing Schmidt, 16 F.Supp.2d at 349-50). Accordingly, for the reasons set forth above, the Court dismisses plaintiffs' Section 1962(c) claim with prejudice and without leave to replead.

> FN13. Plaintiffs' conclusory allegation that the Racket is "an entity separate and apart from the pattern of activity in which it engages" fails to show that there is "an ascertainable structure distinct from that inherent in [the alleged] pattern of racketeering ." Black Radio Network, Inc. v. NYNEX Corp. 44 F.Supp.2d 565, 581

(S.D.N.Y.1999) (citations and internal quotations omitted).

### 6. Section 1962(d)

*9 Finally, defendants move to dismiss plaintiffs' Section 1962(d) claim on the ground that plaintiffs have (i) failed to state a claim under Sections 1962(a)-(c), and (ii) failed to plead facts showing the existence of a RICO conspiracy. Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of Section 1962(a)-(c). To state a claim thereunder, a plaintiff must allege that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise," Colony at Holbrook, Inc. v. Strata, Inc., 928 F.Supp. 1224, 1238 (E.D.N.Y.1996). An individual may be liable only if he knew of the conspiracy's goals and agreed to facilitate them. Schmidt, 16 F.Supp.2d at 353 (citation omitted).

The Second Circuit has held that there can be no RICO conspiracy without a substantive RICO violation. In other words, "if the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations." Id. (citing Discon v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir.1996)); Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 658 (S.D.N.Y.1996) ( "[F]ailure to adequately plead facts that would satisfy the pleading requirements of 1962(a), 1962(b), or 1962(c) dooms any claim [plaintiff] might assert arising under 1962(d)."). Consequently, because plaintiffs have failed to assert a substantive RICO claim, their conspiracy claim under Section 1962(d) must likewise be dismissed.

Alternatively, the Section 1962(d) claim must be dismissed because plaintiffs' pleadings fail to provide specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy. Plaintiffs allege in conclusory fashion that defendants "conspired to engage in racketeering activity" and each "agreed to participate in what he knew to be a collective venture directed toward a common goal" and thereby "came to an agreement with the other defendants to engage in criminal activity." (Compl. ¶ ¶ 81-82; RICO Stmt. at 22, 35-36; Pl. Mem. at 23.) However, plaintiffs' pleadings only specify certain actions of Gaffney, who conducted the seminar and subsequently made telephone calls; no facts are alleged regarding the other defendants' participation in the alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 9

fraudulent scheme. The mere fact that Gaffney conducted the seminar, made the calls, and thereby made representations "on behalf of New World and the other defendants" does not adequately allege a conspiracy to commit fraud.[FN14] (Compl.¶¶ 17, 26.) The Court concludes that plaintiffs' allegations, devoid of factual assertions concerning the nature of the agreement and unspecific as to time period during which the conspiracy took place, are insufficient to state a claim under Section 1962(d). *Schmidt,* 16 F.Supp.2d at 354.

> FN14. Plaintiffs' repeated enumeration of defendants' alleged predicate acts also does not support their claim that defendants engaged in a conspiracy to defraud. (Compl. ¶ ¶ 83-84; RICO Stmt. at 36; Pl. Mem. at 23-24.)

### 7. Leave to Replead

*10 While the Court finds the allegations in plaintiffs' pleadings insufficient to support their RICO claims, the Court cannot determine that plaintiffs could not, under any circumstances, sufficiently allege such claims. [FN15] Accordingly, although the Court dismisses plaintiffs' Section 1962(c) claim with prejudice, the Court grants plaintiffs leave to replead their claims under Sections 1962(a), 1962(b), and 1962(d) within 21 days from the date of this Order. *See* Fed.R.Civ.P. 15(a) (providing that "leave [to amend a pleading] shall be freely given when justice so requires"); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) (stating that undue delay, bad faith, dilatory motive, or futility of amendment may preclude an amendment). However, "plaintiff[s][are] cautioned about perfunctory substantive or cosmetic changes ... An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11." *Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 111 (E.D.N.Y.1995). The Court may take appropriate action if plaintiffs file an Amended Complaint that is insufficiently pled or not in accord with the above rulings.

> FN15. Defendants contend that the Complaint should be dismissed without prejudice because plaintiffs had the benefit of their motion to dismiss when drafting the RICO Statement. (Def. Rep. at 12 n. 7.) The Court declines to so order, given that

defendants' moving papers are not equivalent to an order of the Court on the merits of the motion.

### III. Conclusion

For the foregoing reasons, the Court dismisses plaintiffs' RICO claims in full; plaintiffs have leave to replead their claims under Sections 1962(a), 1962(b), and 1962(d) within 21 days from the date of this Order.

SO ORDERED.

S.D.N.Y.,2001.
Allen v. New World Coffee, Inc.
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2001 WL 34727486 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss All Counts in the First Amended Complaint and Request for Sanctions (Aug. 03, 2001)
• 2001 WL 34727487 (Trial Motion, Memorandum and Affidavit) Memorandum of Plaintiffs in Opposition to Defendants' Motion to Dismiss (Aug. 03, 2001)
• 2001 WL 34727488 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss All Counts in the First Amended Complaint and Request for Sanctions (Aug. 03, 2001)
• 2001 WL 34727503 (Trial Pleading) Plaintiff's First Amended Complaint (May. 01, 2001)
• 2000 WL 34474878 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Plaintiffs in Sur-Reply to Defendants' Motion to Dismiss (Jul. 11, 2000)
• 2000 WL 34475012 (Trial Pleading) Affirmation of Jimmie Engram in Sur-Reply to Defendants' Motion to Dismiss Counts IV Through VII of the Complaint (Jul. 11, 2000)
• 2000 WL 34474875 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss Counts IV Through VII of the Complaint (Jun. 30, 2000)
• 2000 WL 34474876 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss Counts IV Through VII of the Complaint (Jun. 30, 2000)
• 2000 WL 34474877 (Trial Motion, Memorandum and Affidavit) Memorandum of Plaintiffs in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Opposition to Defendants' Motion to Dismiss (Jun. 19, 2000)
• 1:00cv02610 (Docket) (Apr. 05, 2000)
• 2000 WL 34475011 (Trial Pleading) Verified Complaint (Apr. 04, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Benjamin A. ALLEN and Allen Foods, Inc.,
Plaintiffs,
v.
NEW WORLD COFFEE, INC., New World Coffee
& Bagels, New World Coffee-Manhattan Bagel, Inc.,
New World Holdings, Inc., Ramin Kamfar, Collin
Gaffney, and John Does 1-12, Defendants.
No. 00 CIV 2610 AGS.

March 27, 2001.

*MEMORANDUM ORDER*
SCHWARTZ, J.
**\*1** In this action, plaintiffs seek damages, and injunctive and declaratory relief arising out of a franchise agreement with defendants. They allege that defendants fraudulently induced plaintiff Benjamin A. Allen ("Allen") to enter into the agreement, asserting claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 19 U.S.C. § § 1962 *et seq.,* and under New York state law for common law fraud. Currently before the Court is defendants' motion to dismiss each of plaintiffs' RICO claims pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") and Fed.R.Civ.P. 9(b) ("Rule 9(b)"). For the reasons set forth below, the motion is granted with prejudice as to plaintiffs' claim under 19 U.S.C. § 1962(c) and without prejudice as to the others.

I. Factual Background [FN1]

FN1. The following facts are derived from the Complaint and plaintiffs' RICO statement, which are accepted as true for the purposes of the instant motion, unless otherwise noted. Defendants point out that plaintiffs filed the RICO statement after defendants' served their moving papers on the instant motion. The Court declines to disregard the RICO statement as requested by defendants, and declines to dismiss the RICO claims on this ground. (Reply Memorandum in Support of Defendants'

Motion to Dismiss Counts IV Through VII of the Complaint ("Def.Rep.") at 2-4), but bears in mind the timing of the Statement's filing in its consideration of the motion.

Allen, a resident of New Jersey, is the president, chief financial officer, and sole shareholder of plaintiff Allen Foods, Inc., a New Jersey corporation with its principal place of business in Jersey City, New Jersey. (Compl.¶ 6.) Allen is the franchisee of a unit of New World Coffee & Bagels located in New Brunswick, New Jersey. (*Id.* ¶ 7.) Defendant New World Coffee & Bagels is the franchisor of the New World Coffee & Bagels restaurant system. The other corporate defendants are entities affiliated with New World Coffee & Bagels. All of the corporate defendants (collectively, "New World") have their principal places of business in New York. (*Id.* ¶ ¶ 9, 10.) Defendant Ramin Kamfar ("Kamfar") is the chief executive officer of New World; defendant Collin Gaffney ("Gaffney") is New World's director of franchising. (*Id.* ¶ ¶ 12, 13.) Defendants John Does 1-12 are officers, directors, employees, and/or agents of New World whose identities are currently unknown to plaintiffs. (*Id.* ¶ 14.)

Plaintiffs allege that "prior to, or during the fall of 1997," New World made false and misleading statements in an effort to induce Allen to invest in a New World franchise. (*Id.* ¶ 15.) Specifically, in November or December of 1997, Gaffney conducted a seminar during which he distributed a brochure that allegedly made false and misleading statements concerning the sales and income potential of New World franchise units. (*Id.* ¶ ¶ 17-20; RICO Stmt. at 3-4.) The brochure, entitled "Why Consider Our Franchise Before Any Other Coffee, Bagel, or Food Franchise," set forth earnings capability projections for franchise units in three levels of potential annual sales: (i) $500,000, with net income of $101,900; (ii) $750,000, with net income of $170,700; and (iii) $1 million, with net income of $237,000. (Compl. ¶ 19, Exs. A, B; RICO Stmt. at 4-5.) $750,000 was purportedly represented to be the average sales amount. (Compl.¶ ¶ 20, 21.) Gaffney allegedly stated at the seminar that the income statements were based on units located in New York City, and that restaurants located in New Jersey would have greater earnings potential because they paid lower rent. (*Id.* ¶ 20; RICO Stmt. at 5.) Defendants allegedly made additional misrepresentations as to projected sales

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

figures by telephone, mail, and Internet.[FN2] (Compl. ¶ ¶ 21, 24-27; RICO Stmt. at 6.)

> FN2. Plaintiffs also allege that defendants mailed a "circular" to plaintiffs and other prospective franchisees. (Compl.¶ 25.) However, no details are provided as to the content of this circular; nor is the circular provided as an exhibit on the motion.

*2 Plaintiffs claim that in reliance upon the misrepresentations, Allen entered into a contract with defendants pursuant to which he invested money in a New World franchise in New Brunswick, New Jersey. (Compl.¶ ¶ 32, 33.) Plaintiffs later suffered damages because Allen's New World unit generated revenues lower than those represented in New World's projections. (Id. ¶ ¶ 34-35; RICO Stmt. at 8, 36-39.) Plaintiffs allege that other, unidentified New World franchisees also experienced lower revenues. (Compl. ¶ 34; RICO Stmt. at 7, 9, 36-37.)

This action was filed on April 5, 2000. Plaintiffs' central allegation, upon which each of their causes of action is based, is that "defendants ... intended to deceive plaintiffs, and did deceive plaintiffs, by making false and material representations regarding the earnings capabilities of their new franchise restaurants. Defendants grossly inflated the earnings capabilities of their new franchise restaurants in asserting that their new franchise restaurants would [gross] a minimum of $500,000 annually, an average of $750,000 annually, and a high of $1,000,000 annually." (Compl. ¶ ¶ 22, 36-88; RICO Stmt.) Plaintiffs' RICO Statement was filed on June 8, 2000.[FN3]

> FN3. The Complaint and RICO statement, when discussed together in this Order, are hereinafter referred to as "plaintiffs' pleadings."

## II. Discussion

### A. Motion to Dismiss Standard

On a motion to dismiss RICO claims, the Court must accept the factual allegations contained in the Complaint and RICO Statement as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the Complaint "unless it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993) (noting that factual allegations in the complaint must be accepted as true on motion to dismiss); *McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir.1992) ("In analyzing the issues on this motion to dismiss, we must take as true the facts as alleged in the complaint and as supplemented by the RICO case statement ordered by the district court."). In deciding a motion under Rule 12(b)(6), the Court may consider "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint, as well as [ ] matters of which judicial notice may be taken." *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir.1998). When matters extrinsic to the pleadings are presented on a Rule 12(b)(6) motion to dismiss, the district court must either exclude the additional material and decide the motion on the Complaint alone or convert the motion to one for summary judgment and afford all parties the opportunity to present supporting material. *See Morelli v. Cedel*, 141 F.3d 39, 46 (2d Cir.1998) (citing *Carter v. Stanton*, 405 U.S. 669, 671 (1972)). In this case, the Court declines to consider matters outside of those permissible under Rule 12(b)(6), and chooses not to convert the motion into one for summary judgment.[FN4]

> FN4. Plaintiffs have submitted affirmations in support of their submissions on the instant motion. (Affirmation of Jimmie Engram in Opposition to Defendants' Motion to Dismiss dated June 19, 2000; Affirmation of Jimmie Engram in Sur-Reply to Defendants' Motion to Dismiss Counts IV Through VII of the Complaint dated July 5, 2000.) The Court declines to consider these affirmations for the purposes of the instant motion.

### B. Plaintiffs' RICO Claims Must Be Dismissed

*3 In considering RICO claims, courts must attempt to achieve results "consistent with Congress's goal of protecting legitimate businesses from infiltration by organized crime." *United States v. Porcelli*, 865 F.2d 1352, 1362 (2d Cir.1989). "Because the 'mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." '

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                              Page 3
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998). In ensuring that "RICO's severe penalties are limited to enterprises consisting of more than simple conspiracies to perpetrate the acts of racketeering ... courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb." *Id.*

Plaintiffs assert four separate causes of action under RICO pursuant to 18 U.S.C. § § 1962(a), (b), (c), and (d). In their motion to dismiss, defendants make several arguments in support of dismissal of each of these claims. Defendants first contend that all four claims must be dismissed because plaintiffs have failed to allege the predicate acts of mail and wire fraud with particularity under Fed.R.Civ.P. 9(b) ("Rule 9(b)"). Alternatively, defendants contend that plaintiffs have failed to allege a pattern of racketeering activity necessary to support any RICO cause of action brought pursuant to Section 1962. Further, defendants assert that: (i) the Section 1962(a) claim should be dismissed because plaintiffs have failed to allege injury as the result of investment of racketeering income; (ii) the Section 1962(b) claim should be dismissed for failure to allege acquisition or maintenance of an interest in an enterprise, namely New World, through a pattern of racketeering activity; (iii) the Section 1962(c) claim should be dismissed for failure to allege a RICO enterprise separate and distinct from the persons comprising the enterprise; and (iv) the Section 1962(d) claim must be dismissed because plaintiffs have failed to allege any actionable RICO violation or facts to demonstrate a conspiracy. The Court addresses each of defendants' arguments in turn.[FN5]

FN5. In their reply, defendants assert that plaintiffs' RICO claims are barred because Allen contractually agreed to waive all his rights under RICO when he entered into his franchise agreement with New World. (Def. Rep. at 2.) They cite to Section 29.4 of the agreement, which states that Allen and New World consented "to waive now and forever, any and all rights either may have under the federal statute known as RICO." (Id. at 2, Ex. A.) However, plaintiffs claim that the franchising agreement is void on the ground that defendants fraudulently induced Allen to enter into the agreement. (Compl. ¶ ¶ 41-48; Memorandum of Law of Plaintiffs in Sur-Reply To Defendants' Motion to Dismiss at 2-4.) The Court therefore

declines to dismiss the Complaint based on the provisions of Allen's franchise agreement, the validity of which is disputed, and the circumstances of negotiation of which are the subject of this action. *See Cramer v. Newburgh Molded Prods., Inc.*, 645 N.Y.S.2d 46, 47 (2d Dep't 1996) (stating that a release may be set aside "for duress, illegality, *fraud*, or mutual mistake") (citations omitted) (emphasis added); *Zipper v. Sun Co.*, 947 F.Supp. 62, 70 (E.D.N.Y.1996) (stating same as a "fundamental principle"); *Mashreqbank PSC v. Heller Fin., Inc.*, No. 99 Civ. 4748, 2001 WL 11065, at *2 (S.D.N.Y. Jan. 4, 2001) ("A release however may be vitiated on the basis of fraudulent inducement.")

1. Failure to Plead with Particularity

To state a cause of action under RICO, a plaintiff must allege (i) that the defendant (ii) through the commission of two or more acts (iii) constituting a "pattern" (iv) of "racketeering activity" (v) directly or indirectly invests in, or maintains an interest in, or participates in (vi) an "enterprise" (vii) the activities of which affect interstate commerce. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983). Plaintiffs allege that each defendant has committed the predicate acts of mail and wire fraud, in violation of 18 U.S.C. § § 1341 and 1343, which are defined as "racketeering activities" by section 18 U.S.C. § 1961(1). These allegations are subject to the particularity requirement of Rule 9(b) because they sound in fraud. *Lakonia Management Ltd. v. Meriwether*, 106 F.Supp.2d 540, 543 (S.D.N.Y.2000); *Sluka v. Estate of Herink*, No. 94 CV 4999, 1996 WL 612462, at *4 (E.D.N.Y. Aug. 13, 1996); *Zaro Licensing, Inc. v. Cinmar, Inc.*, 779 F.Supp. 276, 280 (S.D.N.Y.1991) (citations omitted).

*4 To plead mail or wire fraud with the requisite particularity under Rule 9(b), plaintiffs must, at a minimum: (i) specify the statements that they contend were false or misleading; (ii) explain why the statements were fraudulent; (iii) state when and where the statements were made; and (iv) identify the speaker or speakers. *McLaughlin*, 962 F.2d at 191 (citing *Cosmas v. Hassett*, 886 F .2d 8, 11 (2d Cir.1989)). Furthermore, "[p]laintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme." *Id.* "Although allegations of intent are subject to a less strict standard, plaintiffs must nonetheless allege facts that give rise to a strong inference of fraudulent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                 Page 4
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

intent." *Sluka,* 1996 WL 612462, at *4 (citing *Shields v. Citytrust Bancorp.,* 25 F.3d 1124, 1128 (2d Cir.1994)). Further, where multiple defendants are accused of mail or wire fraud, plaintiffs must plead fraud with particularity as to each defendant, *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993), unless such defendants are corporate insiders. *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

Having examined the Complaint according to these standards, the Court concludes that plaintiffs have failed to meet their burden under Rule 9(b). Although plaintiffs have asserted facts which might suggest fraud on the part of some of the defendants, the Complaint is impermissibly vague as to the details. Plaintiffs have specified certain statements that they contend were false and misleading, namely the income projections contained in the brochure distributed at the seminar to potential franchisees and discussed there by Gaffney. (Compl. ¶ ¶ 17-19, Exs.A, B.) They allege that these statements were fraudulent because they misstated the potential revenue of New World franchises in order to induce franchisees to invest. However, plaintiffs have failed to specify the statements they allege were made (i) in the unidentified "New World circular" which was mailed to plaintiffs, (ii) by Gaffney in phone conversations with plaintiffs after the seminar, and (iii) by defendants on the New World Internet website. (*Id.* ¶ ¶ 25-27.) In addition, plaintiffs have failed to sufficiently identify when any defendants' allegedly false representations was made. The only information they provide with regard to timing is that the alleged scheme to defraud occurred "prior to, or during, the fall of 1997," and that the seminar took place "[d]uring November or December of 1997"; the timing of the mailings of the brochure and circular, telephone calls, and the Internet advertisements is unspecified, although plaintiffs state that the telephone calls were made "subsequent" to the seminar. (*Id.* ¶ ¶ 16-17, 21, 24-28; RICO Stmt. at 10-14.) Further, while plaintiffs allege that Gaffney made certain statements at the seminar and in telephone conversations, their pleadings do not specify any other defendant's acts in connection with the fraud. While Kamfar is arguably excluded from this requirement because he is New World's CEO, and thereby an insider, plaintiffs do not specifically explain how each of the corporate defendants or John Does 1-12 are linked to the fraud, stating only that Gaffney acted "on behalf of New World and the other defendants." [FN6] (Compl. ¶ 17.) Because plaintiffs have failed to plead the predicate acts of mail and wire fraud with the requisite particularity, their RICO

claims must be dismissed pursuant to Rules 12(b)(6) and 9(b). [FN7]

> FN6. While the Court is mindful that plaintiffs do not know the identities of John Does 1-12, the Complaint neither alleges their involvement in the alleged fraud on information and belief, which is permitted "when the facts at issue are 'peculiarly within the opposing party's knowledge' ' *DiVittorio,* 822 F.2d at 1247, nor alleges that some or all of these individuals are insiders.

> FN7. Plaintiffs' failure to provide the requisite details is particularly notable given that the RICO Statement guide provided to parties by the Court requires them to identify with particularity "the time, place, and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made." (*See* RICO Stmt. at 13 (listing question and answer).)

### 2. Pattern of Racketeering Activity

*5 Section 1962 prohibits: (a) the use of income "derived ... from a pattern of racketeering activity" to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce; (b) the acquisition of any interest in or control of such an enterprise "through a pattern or racketeering activity"; (c) the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity"; and (d) conspiring to do any of the above. 18 U.S.C. § 1962. The existence of a "pattern of racketeering activity" is therefore a requirement under any prong of Section 1962. *GICC Capital Corp. v. Tech. Fin. Group, Inc.,* 67 F.3d 463, 465 (2d Cir.1995). In order to demonstrate a pattern of racketeering activity under Section 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 240 (1989). The predicate acts are sufficient to form a pattern if the acts have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240. "Continuity is both a closed- and open-ended concept, referring to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

*Id.; see also GICC Capital Corp., 67 F.3d at 465-66.*

Closed-ended continuity requires an allegation of "a series of related predicates extending over a substantial period of time." *H.J. Inc.,* 492 U.S. at 241. Where the underlying conduct is not inherently unlawful, as in the instant case, predicate acts continuing over a few weeks or months and threatening no future criminal conduct do not satisfy this continuity requirement. *Id.* at 241; *United States v. Aulicino,* 44 F.3d 1102, 1111-12 (2d Cir.1995) (comparing the continuity requirement in criminal RICO cases with those of civil RICO cases); *Protter v. Nathan's Famous Sys., Inc.,* 925 F.Supp. 947, 953 (E.D.N.Y.1996). In considering whether a plaintiff's allegations are sufficient to establish closed-ended continuity, the court must examine such factors as the "length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes." *GICC Capital Corp., 67 F.3d at 467.* Here, plaintiffs' pleadings cannot support a finding of closed-ended continuity because they fail to adequately specify when the alleged fraud took place; as noted *supra,* the only allegations in this regard are that the seminar occurred in November or December of 1997, that other misrepresentations were subsequently made by phone, and possibly mail and the Internet, and that at some time after that Allen entered into a franchise agreement with New World.[FN8] (Compl. ¶ ¶ 17-20, 21-27, 32; RICO Stmt. at 10-14.) The number of victims is also undefined in plaintiffs' pleadings, as plaintiffs merely assert that the alleged fraud was perpetrated against "other franchise investors."[FN9] (*Id.* ¶ ¶ 18, 23, 25, 28, 34.) Moreover, plaintiffs' conclusory allegations that the predicate acts of mail and wire fraud "amounted to continued criminal activity in that they were a series of substantial predicates extending over a substantial period of time" and that "defendants have engaged in such practices for several years" are insufficient to establish closed-ended continuity. (*Id.* ¶ 28; RICO Stmt. at 16; Memorandum of Plaintiffs in Opposition to Defendants' Motion to Dismiss ("Pl.Mem.") at 13-14.) Plaintiffs also provide no facts to support their allegation that defendants' practices associated with their scheme to defraud "are related because they have the same or similar purposes, results, participants, victims and methods of commission ... and are not isolated events." (RICC Stmt. at 17; Pl. Mem. at 14); *see HJ Inc.,* 492 U.S. at 240 (employing this language in setting forth the closed continuity requirement).

FN8. If the acts took place only during the two or three months in late fall 1997 and early winter 1998, such acts would likely not satisfy the continuity requirement. When the Second Circuit has found closed-ended continuity, the predicate acts have spanned over two years. *See Metromedia Co. v. Fugazy,* 983 F.2d 350, 369 (2d Cir.1992); *Jacobsen v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989); *see also DeFalco v. Bernas,* No. 99 Civ. 7648, 2001 WL 261934 (2d Cir. Mar. 16, 2001) (noting that the Court has never held that a period of less than a year-and-one-half satisfies the continuity requirement).

FN9. While plaintiffs assert in the RICO Statement that "[a] host of other franchise owners" were defrauded and are listed on "Schedule A," the attached list contains only a list of franchise locations in New York, New Jersey, Connecticut, Pennsylvania, and Germany, some of which bear the handwritten designation "closed." The names of franchisees are not listed. (RICO Stmt. at 7, Ex. A.)

*6 Plaintiffs' allegations of open-ended continuity are similarly deficient. To show open-ended continuity, a complaint must allege facts to show that the predicate acts "by [their] nature project[ ] into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241; *Protter,* 925 F.Supp. at 954. "In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate acts are relevant ." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999) (citing *Schlaifer Nance & Co. v. Estate of Andy Warhol,* 119 F.3d 91, 97 (2d Cir.1997); *GICC Capital Corp., 67 F.3d at 466).* Where an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity, there is a threat of continued criminal activity, and thus open-ended continuity. *See H.J. Inc.,* 492 U.S. at 242-43 ("[T]he threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes."); *see also Cofacredit,* 187 F.3d at 242. However, where, as here, the enterprise primarily conducts a legitimate business, "there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a

threat of continued criminal activity." *Cofacredit,* 187 F.3d at 243 (citing *H.J. Inc.,* 492 U.S. at 243). In this case, the only fraud that is specified in the Complaint relates to the sale of the New World franchise to Allen; the alleged solicitation of business from and sale of franchises to other investors is not sufficiently defined as to permit an inference that defendants' predicate acts constitute a threat of continued criminal activity. Further, plaintiffs' allegations that defendants' conduct with regard to Allen applied to other investors, was defendants' "regular way of doing business," and that "the very nature of these acts imply a threat of continued criminal activity, at present and in the future," are merely conclusory. (Compl. ¶ 30; RICO Stmt. at 13, 17, 29; Pl. Mem. at 14.)

Because plaintiffs' pleadings fail to set forth facts that, considered in the light most favorable to plaintiffs, are sufficient to warrant the inference of a pattern of racketeering activity, the Complaint must be dismissed.

### 3. Section 1962(a)

Defendants further contend that plaintiffs' allegations pursuant to Section 1962(a) must be dismissed because the Complaint fails to allege "injury" as a result of defendants' investment of racketeering income. The Court agrees. "Under the plain language of this section, a violation of 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise." *Ouaknine v. MacFarlane,* 897 F.2d 75, 82-83 (2d Cir.1990). A plaintiff "must allege injury 'by reason of' defendants' investment of racketeering income in [the] enterprise." *Id.; see also Goldfine v. Sichenzia,* 118 F.Supp.2d 392, 399 (S.D.N.Y.2000) (stating that "injury by reason of investment of racketeering income in an enterprise is the very foundation of a § 1962(a) claim"). "Allegations that the predicate acts caused injury, or that the defendants reinvested their income in an enterprise conducting unlawful activity will not suffice." *Protter,* 925 F.Supp. at 954.

*7 While the Complaint alleges that defendants "used or invested, directly or indirectly, part of such [racketeering] income, or the proceeds of such income, in the establishment or operation of the New World enterprise" which resulted in "economic injury," there are no factual allegations indicating that plaintiffs' injury was the result of the investment of racketeering income as opposed to the alleged

predicate fraudulent acts. (Compl. ¶ ¶ 52, 58-59; RICO Stmt. at 17.) In their submissions on the motion, plaintiffs contend that they "were injured by the investment itself," without specifying the nature of that investment. They then state that the "income derived from a pattern of racketeering activity" injured plaintiffs, and state a few paragraphs later that they were injured by defendants' "misrepresentations" as to the earnings potential of New World franchises, i.e. the predicate acts. (Pl. Mem. at 16-17; *see* RICO Stmt. at 33 (stating that the money received by defendants was used to fund the "scheme of activities" intended to fraudulently induce plaintiffs to invest in a franchise, without describing such activities.) Plaintiffs' inconsistent allegations exemplify the flaws of their Section 1962(a) claim. *Cf. Guiliano v. Everything Yogurt, Inc.,* 819 F.Supp. 240, 248-49 (E.D.N.Y.1993) (dismissing Section 1962(a) claim with prejudice where claim was "solely predicated on the injuries that they sustained through defendants' racketeering activity, not through the investment of proceeds derived from prior racketeering activity.") Accordingly, plaintiffs' Section 1962(a) claim must be dismissed.

### 4. Section 1962(b)

Defendants claim that the Section 1962(b) claim should similarly be dismissed. This section prohibits a person from acquiring or maintaining an interest or control in an enterprise through a pattern of racketeering. 18 U.S.C. § 1962(b). To survive a motion to dismiss, the pleadings must "specify the connection between defendants' racketeering activity and their interest in the.. enterprise." *Protter,* 925 F.Supp. at 955. Injury in fact is insufficient to state a Section 1962(b) claim unless such injury was caused by the acquisition or maintenance of control in the enterprise and not merely by the predicate acts. *See O & G Carriers, Inc. v. Smith,* 799 F.Supp. 1528, 1543 (S.D.N.Y.1991); *see also Danielsen v. Burnside-Ott Aviation Training Ctr., Inc .,* 941 F.2d 1220, 1231 (D.C.Cir.1991) ("[P]laintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation.") In this case, plaintiffs allege, in conclusory fashion, that the individual defendants "acquired or maintained, directly or indirectly, an interest in or control of the New World enterprise," and that defendants' racketeering activity was "an integral part of their scheme to build their franchising business by misrepresenting earnings capabilities of their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                Page 7
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

restaurants." (Com pl. ¶¶ 62-63; RICO Stmt. at 19; Pl. Mem. at 18.) However, absent from plaintiffs' pleadings are any facts supporting an inference that defendants acquired or maintained control of the enterprise in question through their racketeering activity, or that plaintiffs suffered injury as a result of such control.[FN10] (See RICO Stmt. at 33-34.) Accordingly, the Court dismisses plaintiffs' Section 1962(b) claim.

> FN10. Plaintiffs' contention that defendants' argument in support of dismissal of their Section 1962(b) claim fails because "it specifies the wrong entity as the RICO enterprise" is unavailing; plaintiffs' allegations are insufficient regardless of the enterprise at issue. Plaintiffs go on to allege, as they did under Section 1962(a), that "defendants injured plaintiffs by using the pattern of racketeering activity to fraudulently induce plaintiffs to invest in a New World franchise." (Pl. Mem. at 19-20.) Such allegations are insufficient because they do not support the proposition that the acquisition or maintenance of control of the enterprise was the cause of plaintiffs' alleged injury; rather, the latter statement implies, as do the entirety of the factual allegations in plaintiffs' pleadings, that plaintiffs' alleged injury resulted from defendants' predicate acts.

### 5. Section 1962(c)

*8 Defendants move for dismissal of plaintiffs' Section 1962(c) claim on the ground that the pleadings fail to distinguish the RICO "persons," i.e. the defendants individually, from the New World enterprise. Section 1962(c) prohibits "any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..." 18 U.S.C. § 1962(c). Under this section, the RICO 'person' must conduct the affairs of the enterprise, and "the person and the enterprise must be distinct ." Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339, 344 (2d Cir.1994). The requirement that the person and enterprise be distinct leads to two conclusions. First, "the employees in association with [a] corporation do not form an enterprise distinct from the corporation." Id. Second. "a corporate entity may not be both [a] RICO person and the RICO enterprise under Section 1962(c)." Id.

In the Complaint, plaintiffs support their Section 1962(c) claim by alleging that the various corporate defendants are all affiliated entities which constitute New World, that the individual defendants are employees of New World, and that "New World constitutes an 'enterprise' within the meaning of 18 U.S.C. § § 1961(4) and 1962." (Compl.¶¶ 9, 10, 12-14, 51.) The Complaint alleges no facts that would indicate that the individual defendants were acting outside the scope of their authority as employees of New World in fraudulently inducing Allen to purchase a New World franchise. Rather, the most the Complaint alleges is that the individual defendants associated together to commit certain predicate acts in the course of their employment and on behalf of the corporation, which is insufficient to establish an enterprise distinct from the corporation.[FN11] See Riverwoods, 30 F.3d at 344.

> FN11. Plaintiffs' reliance on the Second Circuit's decision in Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256 (2d Cir.1995) is unavailing. In that case, the court held that if the RICO enterprise consists of two "separate and distinct corporations," the enterprise may be distinct from those corporations and a RICO person who is an employee of both corporations. Id. at 263 (finding a RICO enterprise consisting of three RICO persons, an individual and two corporations engaged in distinct lines of business). However, in this case, each of the corporations are interrelated, as they are joint franchisors of New World restaurants, share the same office, and employ the individual RICO persons. (Compl.¶ ¶ 7-14.). Further, plaintiffs' statement that each corporation "is each is or [sic] independent activity that could benefit from the activities of [the individual defendants]" is insufficient to establish that such corporations could part of an enterprise distinct from themselves. (Pl. Mem. at 21-22.)

Evidently seeking to cure this deficiency in the RICO Statement, plaintiffs contradict the clear language of the Complaint and allege for the first time that the "enterprise" in question is an entity called "the Racket," which is "not both the liable 'person(s) and the RICO 'enterprise." ' [FN12] (RICO Stmt. at 25, 35; Pl. Mem. at 20 .) They further allege that while the individual defendants are associated with and are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

members of the Racket, they are not employees thereof. (RICO Stmt. at 27-28.)

> FN12. In fact, plaintiffs falsely state in their submissions on the motion that they "do not allege that New World was the RICO enterprise," when such statement is clearly set forth in the Complaint. (Pl. Mem. at 19; Compl. ¶ 51.)

However, plaintiffs do not specify the nature of "the Racket," stating, in accordance with the RICO statute, that it consists of a "group of individuals associated in fact although not a legal entity." (Id. at 25; Pl. Mem. at 12.) Plaintiffs acknowledge that these individuals are the same as those who were members of the New World "enterprise" set forth in the Complaint. (RICO Stmt. at 2-3, 25; Pl. Mem. at 12, 20-21.) Moreover, plaintiffs do not allege that the Racket is a distinct entity, but that defendants "corrupted New World and, collectively, transformed it into a RICO enterprise participant through mail fraud, wire fraud, conspiracy, fraudulent inducement, and other illegal acts." (RICO Stmt. at 26.) The Court declines to credit plaintiffs' attempt to create an illusory enterprise to save their Section 1962(c) claim. Even if the Racket were indeed a separate entity, the RICO Statement gives no plausible reason for its existence other than the perpetration of the alleged racketeering activity. Plaintiffs "do not allege facts sufficient to support an inference that the enterprise existed as a continuous structure 'separate and apart' from the commission of the predicate acts alleged, or that there was an organized mechanism for directing the enterprise's affairs on an ongoing basis beyond the fraudulent scheme alleged." [FN13] Schmidt, 16 F.Supp.2d at 350. Such an enterprise, which would fail to exist once the predicate acts are removed from the equation, is not a cognizable enterprise for RICO purposes. See Goldfine, 118 F.Supp. at 400-01 (citing Schmidt, 16 F.Supp.2d at 349-50). Accordingly, for the reasons set forth above, the Court dismisses plaintiffs' Section 1962(c) claim with prejudice and without leave to replead.

> FN13. Plaintiffs' conclusory allegation that the Racket is "an entity separate and apart from the pattern of activity in which it engages" fails to show that there is "an ascertainable structure distinct from that inherent in [the alleged] pattern of racketeering ." Black Radio Network, Inc. v. NYNEX Corp., 44 F.Supp.2d 565, 581

(S.D.N.Y.1999) (citations and internal quotations omitted).

### 6. Section 1962(d)

*9 Finally, defendants move to dismiss plaintiffs' Section 1962(d) claim on the ground that plaintiffs have (i) failed to state a claim under Sections 1962(a)-(c), and (ii) failed to plead facts showing the existence of a RICO conspiracy. Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of Section 1962(a)-(c). To state a claim thereunder, a plaintiff must allege that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise," Colony at Holbrook, Inc. v. Strata, Inc., 928 F.Supp. 1224, 1238 (E.D.N.Y.1996). An individual may be liable only if he knew of the conspiracy's goals and agreed to facilitate them. Schmidt, 16 F.Supp.2d at 353 (citation omitted).

The Second Circuit has held that there can be no RICO conspiracy without a substantive RICO violation. In other words, "if the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations." Id. (citing Discon v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir.1996)); Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 658 (S.D.N.Y.1996) ( "[F]ailure to adequately plead facts that would satisfy the pleading requirements of 1962(a), 1962(b), or 1962(c) dooms any claim [plaintiff] might assert arising under 1962(d)."). Consequently, because plaintiffs have failed to assert a substantive RICO claim, their conspiracy claim under Section 1962(d) must likewise be dismissed.

Alternatively, the Section 1962(d) claim must be dismissed because plaintiffs' pleadings fail to provide specific allegations supporting an inference that each defendant knowingly agreed to participate in a conspiracy. Plaintiffs allege in conclusory fashion that defendants "conspired to engage in racketeering activity" and each "agreed to participate in what he knew to be a collective venture directed toward a common goal" and thereby "came to an agreement with the other defendants to engage in criminal activity." (Compl. ¶ ¶ 81-82; RICO Stmt. at 22, 35-36; Pl. Mem. at 23.) However, plaintiffs' pleadings only specify certain actions of Gaffney, who conducted the seminar and subsequently made telephone calls; no facts are alleged regarding the other defendants' participation in the alleged

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

fraudulent scheme. The mere fact that Gaffney conducted the seminar, made the calls, and thereby made representations "on behalf of New World and the other defendants" does not adequately allege a conspiracy to commit fraud <sup>FN14</sup> (Compl.¶ ¶ 17, 26.) The Court concludes that plaintiffs' allegations, devoid of factual assertions concerning the nature of the agreement and unspecific as to time period during which the conspiracy took place, are insufficient to state a claim under Section 1962(d). *Schmidt,* 16 F.Supp.2d at 354.

> FN14. Plaintiffs' repeated enumeration of defendants' alleged predicate acts also does not support their claim that defendants engaged in a conspiracy to defraud. (Compl. ¶ ¶ 83-84; RICO Stmt. at 36; Pl. Mem. at 23-24.)

### 7. Leave to Replead

*10 While the Court finds the allegations in plaintiffs' pleadings insufficient to support their RICO claims, the Court cannot determine that plaintiffs could not, under any circumstances, sufficiently allege such claims. <sup>FN15</sup> Accordingly, although the Court dismisses plaintiffs' Section 1962(c) claim with prejudice, the Court grants plaintiffs leave to replead their claims under Sections 1962(a), 1962(b), and 1962(d) within 21 days from the date of this Order. *See* Fed.R.Civ.P. 15(a) (providing that "leave [to amend a pleading] shall be freely given when justice so requires"); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962) (stating that undue delay, bad faith, dilatory motive, or futility of amendment may preclude an amendment). However, "plaintiff[s][are] cautioned about perfunctory substantive or cosmetic changes ... An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11." *Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 111 (E.D.N.Y.1995). The Court may take appropriate action if plaintiffs file an Amended Complaint that is insufficiently pled or not in accord with the above rulings.

> FN15. Defendants contend that the Complaint should be dismissed without prejudice because plaintiffs had the benefit of their motion to dismiss when drafting the RICO Statement. (Def. Rep. at 12 n. 7.) The Court declines to so order, given that

defendants' moving papers are not equivalent to an order of the Court on the merits of the motion.

### III. Conclusion

For the foregoing reasons, the Court dismisses plaintiffs' RICO claims in full; plaintiffs have leave to replead their claims under Sections 1962(a), 1962(b), and 1962(d) within 21 days from the date of this Order.

SO ORDERED.

S.D.N.Y.,2001.
Allen v. New World Coffee, Inc.
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2001 WL 34727486 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss All Counts in the First Amended Complaint and Request for Sanctions (Aug. 03, 2001)
• 2001 WL 34727487 (Trial Motion, Memorandum and Affidavit) Memorandum of Plaintiffs in Opposition to Defendants' Motion to Dismiss (Aug. 03, 2001)
• 2001 WL 34727488 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Defendants' Motion to Dismiss All Counts in the First Amended Complaint and Request for Sanctions (Aug. 03, 2001)
• 2001 WL 34727503 (Trial Pleading) Plaintiffs First Amended Complaint (May. 01, 2001)
• 2000 WL 34474878 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Plaintiffs in Sur-Reply to Defendants' Motion to Dismiss (Jul. 11, 2000)
• 2000 WL 34475012 (Trial Pleading) Affirmation of Jimmie Engram in Sur-Reply to Defendants' Motion to Dismiss Counts IV Through VII of the Complaint (Jul. 11, 2000)
• 2000 WL 34474875 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendants' Motion to Dismiss Counts IV Through VII of the Complaint (Jun. 30, 2000)
• 2000 WL 34474876 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Dismiss Counts IV Through VII of the Complaint (Jun. 30, 2000)
• 2000 WL 34474877 (Trial Motion, Memorandum and Affidavit) Memorandum of Plaintiffs in

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 293683 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 10

Opposition to Defendants' Motion to Dismiss (Jun.
19, 2000)
• 1:00cv02610 (Docket) (Apr. 05, 2000)
• 2000 WL 34475011 (Trial Pleading) Verified
Complaint (Apr. 04, 2000)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 620213 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
IPS CARD SOLUTIONS, INC. Plaintiff,
v.
Dudley G. BOYD, individually, and Dudley G. Boyd
and Jan E. Boyd, as trustees of the Boyd Revocable
Inter-Vivos Trust, Defendants.
No. 00 CIV. 0776(MBM).

May 12, 2000.

<u>John G. Hutchinson, Esq.</u>, Sidley & Austin, New
York, for Plaintiff.
<u>Mark R. Crosby, Esq.</u>, New York, for Defendants.
<u>Scott J. Crosby, Esq.</u>, <u>Susan M. Clark, Esq.</u>, Durch,
Porter & Johnson, PLLC, Memphis, TN, Of Counsel
to Attorney for Defendants.

OPINION AND ORDER
<u>MUKASEY</u>, D.J.
*1 This lawsuit grows out of the failure of an
accounts receivable financing venture, and its
sequelae, that are the subject also of an action
pending in the state courts of Tennessee (the
"Tennessee case"). Plaintiff IPS Card Solutions, Inc.,
a Delaware corporation with its principal place of
business in Texas, sues to enforce a note and a
guaranty issued by defendants in connection with that
failed venture. Defendants in this case-Dudley G.
Boyd, individually and, along with Jan E. Boyd, both
Tennessee citizens, sued as trustees of the Boyd
Revocable Inter-Vivos Trust, a California entity
(collectively, "the Boyds")-are plaintiffs in the
Tennessee case. They move for abstention or
dismissal on two grounds: first, this court should
abstain from deciding this case in favor of the
Tennessee case, and second, this forum is so
inconvenient that the litigation should not proceed
here. For the reasons set forth below, the motion to
abstain is granted.

I.

From the First Amended Complaint in the Tennessee
case <u>FN1</u> ("Tenn.Cmplt."), the complaint in this case
("Cmplt."), and the affidavits submitted in
connection with this motion, the dispute appears to

have developed as follows. Defendant Dudley G.
Boyd was the president and majority shareholder of
The Fidelity Group, Inc., an entity that provided
receivables financing for small transportation
companies. (Cmplt.¶ 9) NTS, Inc., predecessor in
interest to plaintiff IPS Card Solutions, Inc., extended
an unsecured line of credit to Fidelity, which Fidelity
in 1997 became unable to pay. The Boyds then
agreed to guarantee Fidelity's previously unsecured
credit line in return for NTS's agreement to provide
certain services to another company owned by
Dudley G. Boyd, Sovryn, Inc., that was also engaged
in receivables financing for transportation companies.
(Cmplt.¶ ¶  10-12) It was anticipated that with the
help of the services provided by NTS, Sovryn
eventually would repay Fidelity's indebtedness.
(Tenn.Cmplt.¶ 9)

> <u>FN1.</u> This pleading was part of a motion
> filed in the Tennessee action on February
> 14, 2000, to join IPS Card Solutions, Inc.,
> plaintiff in the case at bar, as an additional
> defendant in that action. That motion was
> granted on February 28.

On January 15, 1998, NTS and Sovryn executed a
Marketing Services Agreement (the "Agreement")
outlining the services NTS was to provide. The same
day, Fidelity and Sovryn executed a note (the "Note")
in favor of NTS in the amount of the outstanding
Fidelity indebtedness, and the Boyds executed a
Guaranty Agreement securing the Note as well as a
Security Agreement giving NTS a security interest in
their rights to certain payments under certain
conditions (the "Guaranty"). (Cmplt. ¶ ¶  12-13;
Tenn. Cmplt. ¶ 10) The Guaranty recites that it was
given in exchange for NTS entering into the
Agreement, and contains a clause whereby the Boyds
"submit to the non-exclusive personal jurisdiction of
the State of New York for the enforcement of this
Guaranty" and waive objections to personal
jurisdiction. (Cmplt. Ex. A at 4)

Within two days, NTS assigned the Agreement, the
Note, and the Guaranty to Comdata Network, Inc.
(Cmplt. ¶ 14; Tenn. Cmplt. ¶ 22) According to the
Boyds, Comdata failed to provide the services it was
obligated to provide under the Agreement, terminated
the Agreement unilaterally, and then started to
service the companies Sovryn had enrolled but could

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 620213 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

not service due to Comdata's breach. (Tenn.Cmplt.¶¶ 25-34)

**\*2** The Tennessee case, in which the Boyds seek to rescind the Guaranty and obtain restitution of certain sums paid on the Note, was filed in July 1999, initially against Comdata alone. Comdata is a Maryland corporation with its principal place of business in Williamson County, Tennessee. (Tenn.Cmplt.¶ 3) After Comdata obtained extensions of time to answer and to respond to discovery requests, it answered and made its discovery responses on November 15, 1999. (Clark Aff. ¶ 6) The same day, Comdata sold the Note and Guaranty to IPS, plaintiff in this case and the parent company of the former owner of those instruments, NTS. (Tenn.Cmplt.¶ 36) Although plaintiff argues that defendants were aware that the sale was pending, it appears to be undisputed that defendants did not learn that the deal had closed until December 14, 1999, when their attorney was inspecting documents produced by Comdata in the Tennessee litigation. (Clark Aff. ¶¶ 7-8) According to the attorney who represents the Boyds in the Tennessee case, where they are the plaintiffs, she first contacted counsel for Comdata to determine whether Comdata would file a third-party complaint against IPS and, when she learned the answer to that question was no, contacted counsel for IPS to determine whether IPS intended to intervene as a party in the Tennessee litigation. Two days later, she was told that IPS had filed the case at bar in New York. (Clark Aff. ¶¶ 10-11)

The complaint in the case at bar was filed on February 3, 2000. On February 28, 2000, the court in which the Tennessee case is pending granted a motion to join IPS, plaintiff here, as a defendant in addition to Comdata. The reasons advanced by the Boyds in the Tennessee litigation as grounds for voiding the Note and the Guaranty include the alleged failure of Comdata, IPS's assignor, to perform its obligations under the Agreement. Comdata is not a party to the litigation in this court, and there has been no showing or claim that it could be made a party here.

## II.

Although federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976), they may abstain in favor of concurrent state court litigation if such a step is warranted by "exceptional circumstances,"

including "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." ' *Id.* (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 183 (1952).

The test for determining whether exceptional circumstances are present, as developed by the Supreme Court in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983), includes examination of six factors: (1) whether the state or federal court has assumed jurisdiction over a *res;* (2) relative inconvenience of the federal forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) whether federal or state law provides the rule of decision; and (6) whether the federal plaintiff's rights will be protected in the state action. *See Youell v. Exxon Corp.,* 48 F.3d 105, 108 (2d Cir.1995). None of these factors taken alone is necessarily decisive, and the test "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16.

**\*3** Before applying those factors, I must determine whether the Tennessee case and this case in fact are concurrent. *See Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 17 F.3d 46, 50 (2d Cir.1994) ("[W]e need not examine the factors to determine whether 'exceptional circumstances' exist, because the state and federal proceedings here are not 'concurrent' in the manner required by the *Colorado River* doctrine."). The parties appear to have assumed that the two actions are concurrent, and their assumption seems correct. Both actions test the enforceability of the Guaranty, the Tennessee case more comprehensively, as discussed below.

There is no *res* at issue here, and the absence of that factor adds weight to the balance in favor of federal jurisdiction. However, as set forth below, every other factor weighs in favor of abstention.

As noted, plaintiff IPS is a Delaware corporation with its principal place of business in Texas. It is authorized to do business in Tennessee. The Boyds are Tennessee citizens; their trust is a California entity. The subject transactions all appear to have been entered into in Tennessee. The only connection between this forum and this litigation is the permissive forum selection clause in the Guaranty, quoted above. This forum is relatively less convenient for all parties than the Tennessee forum.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 620213 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

I will pass over, for the moment, the question of whether staying this action would avoid piecemeal litigation, which I find to be the principal consideration here, and examine the other *Moses H. Cone* factors. The Tennessee case certainly was filed first, although IPS was not joined until later, when its interest became known and shortly after IPS filed this action. Discovery has proceeded in the Tennessee case, and there is every reason to believe that IPS would obtain the benefit of that discovery in the course of its participation in the Tennessee case. IPS has argued that there will soon be pending dispositive motions in this case, but that argument is disingenuous. When the abstention issue was raised in this case, IPS insisted it wished to make a summary judgment motion. Because I am without the power to prevent a party from making a motion, the motion has been made. However, all discovery in this case has been stayed, and the only papers that have been filed in connection with the motion are plaintiffs; the motion itself appears to be no more than an attempt to create the appearance of activity in this case.

The parties agree that state law rather than federal law provides the rule of decision, although defendants cite a clause in the Guaranty providing that its terms are governed by New York law, excluding New York choice of law rules, and argue that a federal court in New York is better qualified than a state court in Tennessee. However, even such a provision would not bind a federal court sitting in diversity in New York if other interests suggested a contrary result. *See Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 53 (2d Cir.1984) ("Although New York courts generally accord deference to choice-of-laws provisions in contracts, such provisions are not controlling and may be disregarded where the most significant contacts with the matter in dispute are in another State. Moreover, in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied.") (citations omitted). Further, there is no reason why a Tennessee court cannot apply New York law, if such law is found ultimately to apply. In any event, the relevant question for purposes of abstention is whether federal law controls or not, and it does not in this case. Therefore, this factor does not weigh against abstention.

*4 As to the last of the *Moses H. Cone* factors, IPS concedes that its interests would be adequately protected in the Tennessee case. (Memo in Opp'n. at

8)

Here, I return to the question of avoidance of piecemeal litigation, which I believe is the strongest factor weighing in favor of abstention. If I were to undertake a ruling on the enforceability of the Guaranty, I would do so in the absence of Comdata, which is not a party to this litigation and apparently cannot be made a party to it. The adequacy of Comdata's performance under the Agreement could not be litigated, and the issue of whether that performance is relevant to the enforceability of the Guaranty could not be litigated authoritatively. The Boyds and IPS likely would be bound by the outcome, but Comdata would not. By contrast, all parties are present in the Tennessee case, where these issues can be litigated both comprehensively and authoritatively. In this respect, the case is similar to *DeCisneros v. Younger*, 871 F.2d 305 (2d Cir.1989), where the Court of Appeals upheld a decision to abstain even where the federal forum was far more convenient than the federal forum is in this case, and more discovery had been conducted in the federal action than in the parallel state proceeding. *See id.* at 307.

For the above reasons, the motion to abstain is granted, and all further proceedings in this case are stayed pending further order of the court. Settle order on ten days' notice.

S.D.N.Y.,2000.
IPS Card Solutions, Inc. v. Boyd
Not Reported in F.Supp.2d, 2000 WL 620213 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 2:00cv00776 (Docket) (Feb. 03, 2000)

END OF DOCUMENT

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 535540 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

C

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Elkin MANN, Plaintiff,
v.
Michael ALVAREZ, Michael Ferrado, Lt. Doug
Greenwood and Sgt. Danny Barker, Individually, and
as New York City Police Officers, and City of New
York, a municipal corporation, Defendants.
No. 96 Civ 2641 (RWS).

Sept. 20, 1996.

Herbst & Greenwald, (Adrian Eisman, of counsel),
New York City, for Plaintiff.
Paul A. Crotty, Corporation Counsel of the City of
New York (Christopher Reo, Assistant Corporation
Counsel, of counsel), New York City, for
Defendants.

OPINION

SWEET, District Judge.
*1 Defendants Michael Alvarez ("Alvarez"), Michael
Ferrado, Lt. Doug Greenwood, Sergeant Danny
Barker and the City of New York ("Defendants")
have moved to dismiss or, in the alternative, to stay
this action pursuant to Rule 12(b)(6), Fed. R. Civ. P.
For the reasons set forth below, Defendants' motion
will be granted.

Parties

Defendants Alvarez, Michael Ferrado, Lieutenant
Doug Greenwood and Sergeant Danny Barker are
Officers of the New York City Police Department.

Plaintiff Elkin Mann ("Mann" or "Plaintiff") is an
individual residing in Queens, New York.

Background

Plaintiff commenced the instant action on April 15,
1996, asserting claims under 42 U.S.C. § § 1981,
1983 and 1988, as well as New York common law,
arising out of the alleged false arrest of the Plaintiff.
No discovery has been conducted in this action; the
only activity that has taken place is a status

conference on May 22, 1996.

On July 7, 1994, Mann had commenced a nearly
identical action in New York State Supreme Court,
Queens County. On November 5, 1994, in the state
court action, Mann served Defendants with a
combined Demand for Discovery and Inspection, to
which Defendant City of New York responded on
April 28, 1995. On October 5, 1995, Mann took the
deposition of Defendant Alvarez. Mann thereafter
moved to compel Defendants to respond to certain
discovery requests and to produce Defendant Alvarez
for another deposition. Defendants cross-moved to
dismiss Mann's Section 1983 and 1988 claims and for
a protective order regarding certain documents
requested by Mann.

On February 9, 1996, the state court dismissed
Mann's Section 1988 and 1983 claims on the grounds
that Mann had failed to plead an official policy which
resulted in the deprivation of Mann's civil rights. The
court also denied Plaintiff's request to further depose
Defendant Alvarez, and granted in part Mann's
remaining discovery motions.

On August 16, 1996, Defendants filed the instant
motion to dismiss or stay Mann's federal action,
based on the pendency of Mann's similar state action.
Defendants' motion was considered fully submitted
on August 28, 1996.

Discussion

Defendants urge the Court to decline to exercise
jurisdiction over this action in light of the pendency
of similar state proceedings. In Colorado River Water
Conservation District v. United States, 424 U.S. 800,
817 (1976), the Supreme Court noted the existence of
certain principles governing the contemporaneous
exercise of concurrent jurisdiction by state and
federal courts. While recognizing the obligation of
federal courts to exercise jurisdiction, the Supreme
Court set out several factors in Colorado River for a
district court to evaluate in determining whether
exceptional circumstances permitted abstention for
reasons of "wise judicial administration." 424 U.S. at
817. For purposes of the exceptional circumstances
test, there is no distinction between a stay and a
dismissal. King v. Hahn, 885 F. Supp 95, 97, n.2
(S.D.N.Y. 1995).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 535540 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

**\*2** The factors to be weighed are: (1) the existence of jurisdiction over property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether federal or state law provides the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking federal jurisdiction. *Colorado River,* 424 U.S. at 818; *Moses H. Cone Hospital v. Mercury,* 460 U.S. 1, 21-27 (1983). *See also Bank of N.Y. v. Bin Saud,* 628 F. Supp .474, 476 (S.D.N.Y. 1986) (citing *Arkwright-Boston Manufacturers Mutual Insurance Co. v. City of New York,* 762 F.2d 205, 210 (2d Cir. 1985)).

These factors must be carefully balanced and applied to the specific facts before a court. *Id.; Moses H. Cone,* 460 U.S. at 14-15. Since *Colorado River,* federal courts have "time and time again followed the analysis set forth by the Supreme Court and have declined to adjudicate disputes before them in deference to parallel state court proceedings." *Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 815 F. Supp. 127, 131 (S.D.N.Y. 1993) (citing *American Disposal Services, Inc. v. O'Brien,* 839 F.2d 84, 87 (2d Cir. 1988)).

Dismissal or a stay is appropriate where the party opposing federal jurisdiction "clearly demonstrates that litigation in the two fora is an inequitable or wasteful use of judicial resources." *Bank of N.Y. v. Bin Saud,* 628 F.Supp. at 476. The decision to dismiss or stay proceedings "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case," *Moses H. Cone,* 460 U.S. at 16, and is within the discretion of the district court. *Giardina v. Fontana,* 733 F.2d 1047, 1053 (2d Cir. 1984).

In this case, four of the six factors listed above weigh in favor of dismissal or stay. The first two factors appear to be neutral here; there is no issue before this Court concerning jurisdiction over property, and the federal forum is not inconvenient relative to the state forum.

The third factor, the avoidance of piecemeal litigation, weighs strongly in Defendants' favor. Mann does not contest the virtual identity of the state and federal actions. The state action is being actively litigated, and should Mann be permitted to proceed concurrently with the identical action in this Court, a wasteful duplication of efforts and an inconsistent disposition of the claims would likely result.[FN1] *See*

*Arkwright-Boston,* 762 F.2d at 211.

The fourth factor the Court is to consider is which Court first obtained jurisdiction. This factor also weighs in favor of dismissing or staying the federal action. In this regard, the important consideration is not simply which action was filed first, but "how much progress has been made in each forum." *Arkwright-Boston,* 762 F.2d at 211 (citing *Moses H. Cone,* 460 U.S. at 21-22). In the case at bar, significantly more progress has been made in Plaintiff's state proceeding than in this federal proceeding.

**\*3** Since Plaintiff commenced his state action in July 1994, he has served discovery requests, provided a bill of particulars and releases for his criminal court records, and taken the deposition of one of the Defendants. Mann has also moved for a default, an inquest and to compel discovery responses. In contrast, little or no progress has occurred in the federal action. Since Mann filed his federal action on April 15, 1996, Defendants have not yet responded to the complaint, and no discovery has been conducted.

With respect to this factor, moreover, the fact that Mann suffered an adverse ruling in the state action prior to commencing this action militates strongly against this Court exercising jurisdiction. Indeed, Mann's attacks on the propriety of the state court's ruling give rise to the inference that his displeasure with those rulings prompted him to commence an action in this Court. A proper means of redressing what he believes to be an erroneous state court ruling is available to Mann; indeed, he has exercised his right to appeal that ruling to the state appellate court, and that appeal is currently pending. Thus, as set forth above, to allow Mann to proceed with his claims in this court would thus invite inconsistent outcomes in the two litigations.

In *Moses H. Cone,* "the Supreme Court stated that it found 'considerable merit' in the idea 'that the vexatious or reactive nature of either the federal or state litigation may influence the decision whether to defer to a parallel state litigation under Colorado River.'" *Telesco v. Telesco Fuel,* 765 F.2d 356, 363 (2d Cir. 1985) (citing *Moses H. Cone,* 460 U.S. at 21-22). This case is precisely the type of vexatious action that should properly be dismissed or stayed under the *Colorado River* doctrine.

This Circuit has repeatedly upheld dismissal and stay of federal actions in circumstances such as those presented here, where a plaintiff who had suffered

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 535540 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

adverse rulings in a state court proceeding subsequently filed a similar federal action. *See Telesco*, 765 F.2d at 363 ("The sequence of events in this case show that the same party is plaintiff in both courts and sues in the federal court on the same cause of action after he suffered some failures in the earlier state court action."); *American Disposal Services*, 839 F.2d at 87 ("...this is a case involving a plaintiff who, having failed to obtain the desired relief in its home state forum of choice, brings a second proceeding in order to try again"); *Weinstock*, 815 F.Supp at 132 (dismissal appropriate where plaintiff suffered several adverse rulings over several years in nearly identical state proceedings, and "appear[ed] to have instituted [federal] action as much for tactical reasons as for a genuine interest in obtaining relief").

The fifth factor, whether questions of federal or state law are predominant in the federal action, also militates against this Court's exercise of jurisdiction. Plaintiff includes ten state causes of action in his federal complaint, including "assault, battery, false arrest and imprisonment, abuse of process, intentional and negligent infliction of emotional distress, prima facie tort, negligence and gross negligence." Complaint ¶ 22. Plaintiff's complaint does include federal causes of action under sections 1981, 1983 and 1988 as well, which he asserts are the core of his federal complaint. Those claims, however, are likely to be barred by *res judicata*, in light of the state court's dismissal -- for failure to state a cause of action -- of Mann's section 1983 and 1988 claims based on the same incident and the same allegations.

*4 Finally, there is no question that complete relief is available in the state action. The state court is fully competent to adjudicate all of Mann's claims, including his federal constitutional claims. As set forth above, Mann's position that his federal claims were erroneously dismissed by the state court does not amount to a basis for finding that the state court is not competent to adjudicate this dispute. The proper channel for Mann to challenge those alleged errors is through the state appellate process.

After a careful balancing of the above factors, and particularly in light of Mann's apparent attempt to avoid the consequences of adverse rulings suffered in parallel state court proceedings, stay of Mann's federal action in deference to his state court proceeding is appropriate.

*Conclusion*

For the reasons set forth above, Defendants' motion to stay these proceedings is hereby granted. Defendants are granted leave to renew their motion to dismiss after one year.

It is so ordered.

> FN1. Mann has offered to voluntarily discontinue the state action in favor of this one in order to avoid duplicative litigation. Nonetheless, in light of the adverse rulings he has suffered in the state action, his offer does not provide appropriate grounds for the denial of Defendants' motion to dismiss or stay this action.

S.D.N.Y.,1996.
Mann v. Alvarez
Not Reported in F.Supp., 1996 WL 535540 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:96cv02641 (Docket) (Apr. 15, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.