**United States District Court**
**Southern District Of New York**

| | |
|---|---|
| Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler, Gordon Redner, and Thomas J. Smith, | } |
| Plaintiffs | } No. 06 CV 1625 (SCR) |
| v. | } |
| Northern Leasing Systems, Inc., Jay Cohen, Rich Hahn, and Sara Krieger | } |
| Defendants | } |

**Plaintiffs' Memorandum of Law in**
**Opposition to Defendants' Motion To Dismiss**

Dated:      New York, New York
             August 25, 2006

**Chittur & Associates, P.C.**
The Lincoln Building 15th Floor
60 East 42nd Street 1501
New York, NY 10165
Tel: (212) 370-0447
Attorneys for plaintiffs

TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1.    The RICO Claims Are Viable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      a.    Fraudulent Lawsuits May Constitute Extortion Where They Are Part of a
            Racketeering Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            i.    Extortion May be Predicated on Wrongful Use of Fear of Economic
                  Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            ii.   Fraudulent Lawsuits Are "Wrongful Means" . . . . . . . . . . . . . . . . . 5

            iii.  Defendants' Cases Are Readily Distinguishable . . . . . . . . . . . . . . . 8

            iv.   Defendants' Activities Constituted Extortion under New York Law . . . . 9

      b.    The Complaint properly pleads an "Enterprise" . . . . . . . . . . . . . . . . . . . . 10

            i.    A "Pattern of Racketeering Acts" May Suffice To Show "Enterprise" . . 10

            ii.   In Any Event, the "Enterprise" is Properly Pleaded . . . . . . . . . . . . . . 11

      c.    The RICO Claims Are Not Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      d.    The Conspiracy Claims Are Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

2.    The Claims Under Section 349, G.B.L., are Viable . . . . . . . . . . . . . . . . . . . . . . . . 19

      a.    Plaintiffs Are Not Businesses, and Section 349 is Clearly Applicable . . . . . . . . 19

      b.    Defendants' Deceptive Activity Took Place in New York . . . . . . . . . . . . . . . . 20

3.    Neither *Colorado River* Nor *Res Judicata* Is Applicable Here . . . . . . . . . . . . . . . . . . 22

      a.    No Parallel State Proceedings Exist With Respect to the Claims Here . . . . . . . . 22

      b.    The State Court's Dismissal of Different RICO Claims By Others Is No Bar . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

<u>Cases</u>

*Adler v. Berg Harmon Associates*, 790 F.Supp. 1222, 1227 (S.D.N.Y. 1992) . . . . . . . . . . . . . . 18

*Allen v. New World Coffee, Inc.*, 2001 WL 293683, *1 (S.D.N.Y. Mar 27, 2001) . . . . . . . . . . 18

*Andrea Doreen Ltd. v. Building Material Local Union 282*, 299 F.Supp.2d 129, 149 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Averbach v. Rival Manufacturing Co.*, 809 F.2d 1016 (3d Cir.), *cert. denied,* 482 U.S. 915 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Azurite Corp. v. Amster & Co.*, 730 F.Supp. 571, 577 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . 11

*Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1100 (2d Cir.1988), *cert. denied,* 490 U.S. 1007 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bell Atlantic Corp.*, 726 N.Y.S.2d 60, 63 (1st Dep't 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 785 N.Y.S.2d 399, 403 (N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Blue Cross of California v. SmithKline Beecham Clinical Laboratories, Inc.*, 62 F.Supp.2d 544, 551 (D.Conn. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Building Industry Fund v. Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO,* 992 F.Supp. 162, 176 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Burrowes v. Combs*, 2005 WL 670644, *1 (2nd Cir. Mar 23, 2005) . . . . . . . . . . . . . . . . . . . . . 15

*C & W Constr. Co. v. Brotherhood of Carpenters and Joiners, Local 745*, 687 F.Supp. 1453, 1467 (D.Haw.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001) . . . . . . . . . . . . . . . . . . . . 13

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213, 235 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103 (1st Dep't 2000) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Cullen v. Margiotta*, 811 F.2d 698, 730 (2nd Cir.), *cert. denied*, 483 U.S. 1021 (1987) . . . . . . . 12

*Deem v. Lockheed Corp.*, 749 F.Supp. 1230 (S.D.N.Y.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*DeFalco v. Bernas*, 244 F.3d 286, 313 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*DirecTV, Inc. v. Lewis*, 2005 WL 1006030, *7 (W.D.N.Y. Apr 29, 2005) . . . . . . . . . . . . . . . . . 8

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346  (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Eazypower Corp. v. ICC Innovative Concepts Corp.*, 2002 WL 31473813,  *2 (N.D.Ill. November 1, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Farkas v. D'Oca*, 857 F.Supp. 300, 303 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89 (S.D.N.Y. 1993) . . . . . . . . 13, 14

*Florida Evergreen Foliage v. Du Pont*, 135 F.Supp.2d 1271 (S.D.Fla. 2001) . . . . . . . . . . . . . . 7

*Florida Evergreen Foliage v. Du Pont*, 135 F.Supp.2d 1271 (S.D.Fla. 2001) . . . . . . . . . . . . . . 7

*Francis ex rel. Francis v. City of New York*  2006 WL 2091235, *1 (2nd Cir. Jul 26, 2006) . . . . 3

*G-I Holdings, Inc. v. Baron & Budd*, 179 F.Supp.2d 233, 258 (S.D.N.Y.,2001) . . . . . . . . . . 8, 13

*Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51 -52 (1st Cir. 2000) . . . . . . . . . . . 8

*Goshen v. Mutual Life Ins. Co. of N.Y.*, 746 N.Y.S.2d 858 (N.Y. 2002) . . . . . . . . . . . . . . . 19-21

*Gulf Coast Development Group, LLC v. Lebror*, 2003 WL 22871914, *4 (S.D.N.Y. 2003) . . . 17

*H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989) . . . . . . . . . . . . . . . . . . . . 2

*H2O Swimwear, Ltd. v. Lomas,* 560 N.Y.S.2d 19, 21 (1st Dep't 1990) . . . . . . . . . . . . . . . . . . . 20

*Hall American Center Associates Ltd. Partnership v. Dick*, 726 F.Supp  1083, 1096 (E.D.Mich. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, *23 (2nd Cir. 1990) . . . . . . . . . . . 15, 17

*I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8th Cir. 1984) . . . . . . . . . . . . . . . 8

*In re Crazy Eddie Securities Litigation*, 747 F.Supp. 850, 863 (E.D.N.Y. 1990) . . . . . . . . . . . 17

*In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 58 (2nd Cir. 1998) . . . . . . . . . . 15

*In re Scrimpsher*, 17 B.R. 999, 1015 (Bkrtcy. N.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Sumitomo Copper Litigation,* 104 F.Supp.2d 314, 322 (S.D.N.Y. 2000) . . . . . . . . . . . . . 16

*Jacobson v. Cooper*, 882 F.2d 717, 720 (2nd Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kansas Judicial Watch v. Stout,* 2006 WL 2038045, *7 (D.Kan. Jul. 19, 2006) . . . . . . . . . . . 23

*Karlin v. IVF Am.*, 690 N.Y.S.2d 495 (N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kraft General Foods, Inc. v. Cattell*, 18 F.Supp.2d 280, 284 (S.D.N.Y. 1998) . . . . . . . . . . . . 10

*Laverpool v. New York City Transit Authority*, 760 F.Supp. 1046, 1058 (E.D.N.Y.,1991) . . . . 18

*Leatherman v. Tarrant Co. Narcotics Intell. and Coord. Unit*, 507 U.S. 163, 167- 68 (1993) . . 17

*Lemelson v. Wang Laboratories Inc.*, 874 F.Supp. 430, 434 (D.Mass.1994) . . . . . . . . . . . . . . . 5

*Lemelson v. Wang Laboratories, Inc.*, 874 F.Supp. 430, 434 (D.Mass. 1994) . . . . . . . . . . . . . . 7

*Levit v. Brodner*, 75 B.R. 281, 285 (N.D.Ill.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016,  1021-22 (7th Cir. 1992) . . . . . . . . . . . . . . 6

*Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2nd Cir. 2003) . . . . . . . . . . . . . . . . 11

*Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y.1987) . . . . . . . . . . . . . . . . . 14

*Moses H. Cone Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 25-26 (1983) . . . . . . . . 23

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 22 (2nd Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 260 (1994) . . . . . . . . . . . . . . . . . . . . . . 11

*New York v. Feldman*, 210 F.Supp.2d 294 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Park South Associates v. Fischbein*, 626 F.Supp. 1108, 1114 (S.D.N.Y. 1986) . . . . . . . . . . . . . 8

*Patrick Carter Associates, Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.*, 781 F.Supp. 207, 216 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Capparelli*, 158 Misc.2d 996 (N.Y.Sup.Ct.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Dioguardi*, 8 N.Y.2d 260, 268 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Spatarella*, 34 N.Y.2d 157, 161-62 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 173 (S.D.N.Y. 1998) . . . . . . . 17

*Rafter v. Liddle*, 2006 WL 2255093, *6 (S.D.N.Y. Aug. 4, 2006) . . . . . . . . . . . . . . . . . . . . . . . 15

*Richards v. Jefferson County, Ala.*, 517 U.S. 793, 795 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994) 12

*S.E.C. v. Seahawk Deep Ocean Technology, Inc.*, 74 F.Supp.2d 1188, 1194 (M.D.Fla. 1999) . 25

*San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, __, 125 S.Ct. 2491, 2500 n.16 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2nd Cir.1995) . . . . . . . . . . . . . . 20

*Sony Music Entertainment Inc. v. Robison*, 2002 WL 272406 at *5 (S.D.N.Y. Feb. 26, 2002) . 13

*South Chicago Bank v. Notaro*, 1991 WL 21185 (N.D.Ill. Feb.12, 1991) . . . . . . . . . . . . . . . . . . 6

*Stolow v. Greg Manning Auctions Inc.*, 258 F.Supp.2d 236, 247 (S.D.N.Y. 2003) . . . . . . . . . . 12

*Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . 15

*Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076, 1101 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . 18

*Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1145 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Turkish v. Kasenetz*, 27 F.3d 23, 27 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Turkish v. Kasenetz*, 832 F.Supp. 565, 572 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*U.S. v. Albertson*, 971 F.Supp. 837, 841 (D.Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*U.S. v. Brecht*, 540 F.2d 45, 50 n.10 (2nd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. v. Pendergraft* 297 F.3d 1198, 1208 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

*UFCW Local 174 Commercial Health Care Fund v. Homestead Meadows Foods Corp.,* 2005 WL 2875313, *2 (S.D.N.Y. Nov. 1, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States Fire Ins. Co. v. United Limousine Service, Inc.*, 303 F.Supp.2d 432, 454 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Bagaric,* 706 F.2d 42, 55 (2d Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Clemente*, 640 F.2d 1069, 1076 (2nd Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Coonan*, 938 F.2d 1553, 1560 (2nd Cir.1991) . . . . . . . . . . . . . . . . . . . . . . 10, 14

*United States v. Eisen*, 974 F.2d 246, 251-54 (2nd Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

*United States v. Enmons*, 410 U.S. 396 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Ferguson*, 758 F.2d 843, 853 (2d Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Hathaway,*  534 F.2d 386, 394 (1st Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Hyde,* 448 F.2d 815, 833 (5th Cir.1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Mazzei,* 700 F.2d 85, 89 (2d Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Rastelli,* 551 F.2d 902, 904 (2nd Cir.), *cert. denied,* 434 U.S. 831 (1977) . . . . . . 5

*United States v. Rodolitz*, 786 F.2d 77 (2nd Cir.), *cert. denied,* 479 U.S. 826 (1986) . . . . . . . . . 9

*United States v. Sturm*, 870 F.2d 769 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Turkette*, 452 U.S. 576, 583 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Viacom Intern. Inc. v. Icahn*, 747 F.Supp. 205, 211 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2nd Cir. 1991), *cert denied*, 502 U.S. 1122 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*White v. Union Leader Corp.*,  2001 WL 821527, 6 (D.N.H. 2001) . . . . . . . . . . . . . . . . . . . . . . . 5

*Will v. Hallock*, __ U.S. __, 126 S.Ct. 952, 960 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Wilson v. Toussie*, 260 F.Supp.2d 530, 536 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wood v. Incorporated Village of Patchogue of New York*, 311 F.Supp.2d 344, *357 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 425 F.Supp.2d 484, 500 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Wynder v. McMahon*, 360 F.3d 73, 77 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Statutes

18 U.S.C. § 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

18 U.S.C. § 1962(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. §§ 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y. G.B.L. §349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>PRELIMINARY STATEMENT</u>

Defendants seek dismissal of this action arising out of defendants' racketeering scheme to intimidate out-of-state individuals into paying unwarranted sums of money by commencing fraudulent lawsuits in New York City Civil Court.  First, defendants argue that the RICO claims are infirm because (a) their filing "meritless" lawsuits is not extortion and hence, no predicate acts exist; (b) the "enterprise" is not distinct from the defendants, and plaintiffs have not specifically identified each participant therein; and (c) the claims of 4 plaintiffs are time-barred because their "injuries" occurred with the first electronic deductions for lease payments to their accounts over 4 years ago.  Defendants also dispute the conspiracy claims for want of a substantive RICO violation, and for alleged failure to "specify how any of the individual defendants" manifested their agreement to the racketeering activity, DM, 16.

But the RICO claims are based on defendants' ***pattern*** of filing/threatening ***fraudulent*** - not just meritless - lawsuits, i.e., lawsuits based on wilfully false, perjurious assertions.  Courts have repeatedly upheld RICO claims where abuse of judicial process was part of a pattern of racketeering.  So also, the "enterprise" is clearly distinct from the defendants; defendants do not claim that filing fraudulent lawsuits was part of Northern Leasing's legitimate business.  Besides, the RICO time-bar commences only with a RICO injury.  The electronic deductions took place from business accounts, not plaintiffs' accounts, and in any event, were not RICO injuries.  Hence, the conspiracy claims are also viable, and the Complaint clearly pleads each defendants' active role in and concurrence with the racketeering enterprise.

Second, defendants contend that the 349 claims are not viable because (a) the "lease agreements are not consumer transactions," DM, 18-19; and (b) plaintiffs "do not allege any

1

deceptive activity in New York, but rather deceptive activities of salespersons at their respective workplaces," DM, 19.  Defendants also raise the same time-bar objection as the RICO claims.

This is frivolous.  The gravamen of the claims is that plaintiffs never had any dealings with defendants, and never entered into any lease agreements.  So also, the claims are *not* based on "activities of salespersons", but on defendants' fraudulent lawsuits in New York; even some injuries were in New York (default judgments).

Third, defendants seek dismissal under the *Colorado River* doctrine, blithely asserting that the "parties and issues in" the pending class action in State Court and here "are virtually identical," DM, 21.  This is, once again, frivolous.  None of the plaintiffs here is a party to that action, and the State Court expressly held that these plaintiffs' claims were "inconsistent and contrary to the" class action claims in that action.  Thus, no "parallel" State Court action exists and *Colorado River* is inapplicable.

Defendants' reliance on *res judicata* is equally flawed.  The State Court disallowed these plaintiffs' claims from being a part of that action, and defendants' assertion of "privity" between the different plaintiffs with mutually inconsistent claims is facile.  Accordingly, the motion to dismiss should be denied.

<u>ARGUMENT</u>[1]

This Court may dismiss a RICO claim only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989) (citations omitted).  The facts alleged in the complaint must be accepted as true, and "we must construe the allegations in the light most

---

[1]Plaintiffs refer to the Complaint for a statement of facts.

2

favorable to the plaintiff," *Francis ex rel. Francis v. City of New York* 2006 WL 2091235, *1 (2nd Cir. Jul 26, 2006).

1.    The RICO Claims Are Viable

   a.    *Fraudulent Lawsuits May Constitute Extortion Where They Are Part of a Racketeering Scheme*

   "Extortion as defined in the Hobbs Act consists of the use of wrongful means to achieve a wrongful objective." *United States v. Clemente*, 640 F.2d 1069, 1076 (2nd Cir. 1981) (*citing United States v. Enmons*, 410 U.S. 396 (1973)).  Moreover, "allegations of extortion need not be pleaded with particularity, and the court will not decide a question of fact when addressing the adequacy of a proposed pleading." *Turkish v. Kasenetz*, 832 F.Supp. 565, 572 (E.D.N.Y. 1993), *rev'd on o'r gr*, 27 F.3d 23 (2nd Cir. 1994).

   Here, the Complaint asserts that defendants' wrongful objective was to get money which they knew they were not entitled to, and their wrongful means was fraudulent litigation.  That suffices for present purposes.

      i.    **Extortion May be Predicated on Wrongful Use of Fear of Economic Loss**

   The Hobbs Act criminalizes the "wrongful" use of fear, and "courts have since applied it to conduct other than the classic threat to do violence unless the victim parts with his pocketbook." *U.S. v. Albertson*, 971 F.Supp. 837, 841 (D.Del. 1997) (*citing United States v. Sturm*, 870 F.2d 769 (1st Cir. 1989) and other cases).  Thus, "wrongful means" does not necessarily mean the use of means that are illegal per se, but includes the use of "fear" to obtain property to which "the alleged extortionist has no lawful claim." *Enmons,* 410 U.S. at 400;

*Clemente*, 640 F.2d at 1076.  Activities that are "not inherently unlawful can constitute wrongful means of obtaining property." *Viacom Intern. Inc. v. Icahn*, 747 F.Supp. 205, 211 (S.D.N.Y. 1990), *aff'd*, 946 F.2d 998 (2nd Cir. 1991), *cert denied*, 502 U.S. 1122 (1992).[2]  Hence, as Judge Patterson held:

> Under the *Enmons* framework, when the objective is wrongful (i.e., to obtain property to which one "has no lawful claim"), then the means (e.g., exploitation of fear) is also wrongful. Stated another way, both elements of extortion occur whenever one exploits fear to obtain property to which one has no lawful claim.

*Viacom*, 747 F.Supp at 210.[3]

Thus, for example, in *Turkish v. Kasenetz*, 27 F.3d 23, 27 (2nd Cir. 1994), the plaintiffs asserted that they feared that if they failed to execute the releases, defendants would withhold distribution of certain trust assets due to her.   Judge Nickerson upheld the claim, and the Second Circuit affirmed:

> The complaint therefore alleged that defendants deliberately sought to obtain property by putting Trask in reasonable fear of economic loss, in violation of the Hobbs Act. *See United States v. Capo*, 817 F.2d 947, 951 (2d Cir. 1987).

27 F.3d at 27.  However, it reversed his dismissal which had been based on failure to plead a

---

[2]*Citing Clemente,* 640 F.2d at 1077-78 ("a broad spectrum of legitimate business transactions" can constitute wrongful means if used to obtain property to which no lawful claim exists); *United States v. Hyde,* 448 F.2d 815, 833 (5th Cir.1971) ("It is the wrongful use of an otherwise valid power that converts dutiful action into extortion."), *cert. denied,* 404 U.S. 1058 (1972); *Deem v. Lockheed Corp.*, 749 F.Supp. 1230 (S.D.N.Y.1989) (client's threat to exercise "absolute right to terminate the attorney-client relationship" can constitute extortion if used as a means to obtain property to which client has no lawful claim)

[3]Judge Patterson dismissed the Hobbs Act claim in *Viacom* because that defendants' objective was not wrongful:  "the law did not entitle Viacom to a right to pursue its business interests free of the problems and fears caused by the threat of a takeover by defendants," *Viacom Intern. Inc*., 747.Supp at 213.

4

"pattern".

Here, defendants used the fear of economic loss - expensive long-distance litigation or default judgment - to get money which they knew they were not entitled to.  Clearly this was wrongful.  *DeFalco v. Bernas*, 244 F.3d 286, 313 (2nd Cir. 2001) ("Extortion may therefore be established on a theory that activities amounted to extortion by wrongful use of fear of economic loss," *citing United States v. Capo*, 817 F.2d 947, 951 (2nd Cir.1987) (*en banc*); *United States v. Rastelli,* 551 F.2d 902, 904 (2nd Cir.), *cert. denied,* 434 U.S. 831 (1977)).[4]

ii.   **Fraudulent Lawsuits Are "Wrongful Means"**

Abuse of the judicial process could be RICO predicate acts where additional allegations of extortion or some other pattern of racketeering activity are involved. *United States v. Eisen*, 974 F.2d 246, 251-54 (2nd Cir.1992) (mail and wire fraud violations arising out of scheme by law firm to deprive civil defendants and their liability insurers of money through the filing of fraudulent lawsuits, bribery and intimidation of witnesses and the creation of false photographs, documents and physical evidence of accidents for use before and during trial could be RICO predicate act); *Lemelson v. Wang Laboratories Inc.*, 874 F.Supp. 430, 434 (D.Mass.1994) (mail and wire fraud violations in case claiming extortion of millions of dollars through a pattern of litigation and subsequent settlement over fraudulently obtained patents were RICO predicate acts); *Eazypower Corp. v. ICC Innovative Concepts Corp.*, 2002 WL 31473813,  *2 (N.D.Ill. November 1, 2002) ("filing of lawsuits as part of a scheme to extort money may support a RICO

---

[4]*Accord*, *White v. Union Leader Corp.*,  2001 WL 821527, 6 (D.N.H. 2001) ("Fear of economic loss, generally called 'economic fear,' is included within the meaning of the statutory term 'fear'," *citing United States v. Hathaway*,  534 F.2d 386, 394 (1st Cir. 1976)).

claim in patent cases").[5]  As the Second Circuit explained,

> Litigants depend on the integrity of the conduct of participants in civil proceedings though disputing the validity of their opponents' claims to impose or resist civil liability. It is one thing to challenge the perception, memory, or bias of an opponent's witnesses; it is quite another for a party's lawyer and a witness to concoct testimony that they know has been wholly fabricated.

*U.S. v. Eisen*  974 F.2d 246, 253 (2nd Cir. 1992).[6]  That's precisely what defendants have been

doing here: presenting "concoct[ed] testimony that they know has been wholly fabricated."  That

---

[5]Thus, for example, even though perjury by itself is not a predicate act for a RICO violation, if those lies "constituted mail or wire fraud, 18 U.S.C. §§ 1341 and 1343, or an obstruction of justice, 18 U.S.C. § 1503, then those cover-up acts theoretically may serve as predicate acts."  *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016,  1021-22 (7th Cir. 1992) (*citing C & W Constr. Co. v. Brotherhood of Carpenters and Joiners, Local 745*, 687 F.Supp. 1453, 1467 (D.Haw.1988) ("The more reasoned rule would allow perjury to be a predicate act under 18 U.S.C. § 1962(1), through 18 U.S.C. § 1503, where the plaintiffs allege that the perjury was part of the pattern of racketeering."); *South Chicago Bank v. Notaro*, 1991 WL 21185 (N.D.Ill. Feb.12, 1991) (mailing false financial statements during litigation might be considered predicate acts if mailings proximate cause of RICO injury); *Levit v. Brodner*, 75 B.R. 281, 285 (N.D.Ill.1987) (perjury and destruction of evidence in bankruptcy action might serve as predicate act in subsequent RICO suit)).

[6]Thus, our courts have upheld claims based on abuse of the judicial process through the filing of sham suits which were not even fraudulent:
> A sham suit is one that is an abuse of the judicial processes. In *California Transport [v. Trucking Unlimited,* 404 U.S. 508 (1972)], the Supreme Court identified two types of sham activity: "misrepresentations ⋯ in the adjudicatory process" and the pursuit of "a pattern of baseless, repetitive claims." Thus, in *California Transport*, the Court held that a complaint alleging that the petitioner's competitors initiated administrative proceedings against the petitioner "without probable cause, and regardless of the merits," stated an antitrust cause of action.

*Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir.1991), *aff'd sub nom*, *Professional Real Estate Investors v. Columbia Pictures Indus.*, 508 U.S. 49 (1993).  The instant case based on fraudulent lawsuits is that much stronger.

suffices to sustain RICO claims.

For example, in *Lemelson v. Wang Laboratories, Inc.*, 874 F.Supp. 430, 434 (D.Mass. 1994), that plaintiff sued for patent infringement, and that defendant sought to assert RICO counterclaims.  That defendant claimed that plaintiff had "extorted millions of dollars in settlement monies through a pattern of litigation involving infringement claims based on fraudulently obtained patents."   *Id*.  Rejecting a 12(b)(6) challenge, that Court upheld the RICO claim since the complaint alleged "that the taxing of victims with the prospects of vexatious litigation is an integral component of the racketeering scheme," *Lemelson*,  874 F.Supp. 430, 433.

The instant case is remarkably similar.  Defendants here routinely tax "victims with the prospects of vexatious litigation," which is "an integral component of the racketeering scheme." *Accord*, *Hall American Center Associates Ltd. Partnership v. Dick*, 726 F.Supp  1083, 1096 (E.D.Mich. 1989)[7].  *See also Florida Evergreen Foliage v. Du Pont*, 135 F.Supp.2d 1271

---

[7]Hall American alleged that those defendants (Dick) "had made the wrongful use of economic fear to obtain property to which they are not, and know they are not, entitled."  After initially pretending to be a renter, Dick sent letters of intent to create evidence of a contract, although he did not even have money for even the down payment, let alone complete financing. He then filed frivolous lawsuits and notices of lis pendens, and took other steps - none of which steps was per se illegal - to prevent Hall American from making business decisions involving the property, and to force Hall American to sell him that property below market value.  As the Court summarized,

> The implicit threat was that, should the plaintiffs refuse to sell the
> Property, the Property would be tied up in litigation, the Joint
> Venture would collapse, the mortgage would be foreclosed, the
> high interest payments would continue to be owed, and the
> Property would be lost completely. Viewing the allegations in the
> complaint as true, the court cannot say that the plaintiffs have
> failed to allege a predicate act under the Hobbs Act.

*Hall American Center Associates Ltd. Partnership*, 726 F.Supp at 1096.

(S.D.Fla. 2001) (RICO claims upheld based on a pattern of witness intimidation, fraudulent

depositions, and concealment of data and documents); *Gonzalez-Morales v.*

*Hernandez-Arencibia*, 221 F.3d 45, 51 -52 (1ˢᵗ Cir. 2000) ("we will assume that the filing of

frivolous suits may constitute RICO extortion in some instances").

### iii.   **Defendants' Cases Are Readily Distinguishable**

Defendants' cases did not involve a scheme involving the wilful systematic filing/threat

of ***fraudulent*** lawsuits.  For example, in *Andrea Doreen Ltd. v. Building Material Local Union*

*282*, 299 F.Supp.2d 129, 149 (E.D.N.Y. 2004), the Trustees' ERISA collection action was ***not*** an

attempt "to obtain property 'to which [they had] no lawful claim'"; that is not so here.  *See also*

*Building Industry Fund v. Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO,* 992

F.Supp. 162, 176 (E.D.N.Y. 1996) (filing not fraudulent); *Park South Associates v. Fischbein*,

626 F.Supp. 1108, 1114 (S.D.N.Y. 1986) (defendant law firm represented 60 tenants in lawsuits

to stop property development; not fraudulent); *G-I Holdings, Inc. v. Baron & Budd*, 179

F.Supp.2d 233, 258 (S.D.N.Y.,2001) ("The 'property' at issue here is GAF's right to petition

Congress, and the alleged Hobbs Act violation can survive only if the Defendants had no right to

seek that 'property.'"); *DirecTV, Inc. v. Lewis*, 2005 WL 1006030, *7 (W.D.N.Y. Apr 29, 2005)

(attorneys' letters "nothing more than threats to enforce a right they already had-litigation in this

Court.")[8]

In *I.S. Joseph Co., Inc. v. J. Lauritzen A/S*, 751 F.2d 265, 267 (8ᵗʰ Cir. 1984), the Court

merely held that shipowners' threat to bring action against parent and parent's lender if parent did

---

[8]In *U.S. v. Pendergraft*  297 F.3d 1198, 1208 (11ᵗʰ Cir. 2002), DM, 8, the Court itself
cautioned that the "holding is a narrow one".

not pay subsidiary lessee's debt or inject capital into lessee was not threatened "fear" within

definition of "extortion".  So also, in *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir.

1994),  the Court rejected the RICO claims for want of continuity for a "pattern of racketeering

activity".   Thus defendant's cases are of no help to them.

That apart, defendants' perjurious averments in the City Civil Court constituted a fraud

on plaintiffs, and abundantly support claims for mail fraud and wire fraud.[9]  Accordingly, should

this Court be inclined to uphold defendants' objection to extortion as predicate acts, plaintiffs

seek leave to replead.

    iv.    **Defendants' Activities Constituted Extortion under New York Law**

Under New York law, extortion is the obtaining of property by "comp[ulsion] or

induc[ing] another person to deliver such property ⋯ by a means of instilling in him a fear that if

the property is not so delivered, the actor or another will ⋯ harm [the] person materially with

---

[9]*United States v. Rodolitz*, 786 F.2d 77 (2nd Cir.), *cert. denied,* 479 U.S. 826 (1986).  That
defendant had brought a fraudulent civil action against his insurance company and recovered a
money judgment from the company at trial. In affirming the defendant's conviction for mail
fraud, the Second Circuit explicitly recognized that false evidence at a civil trial works a fraud
not only on the jury but on the opposing party as well. 786 F.2d 77, 80-81. *See also Averbach v.
Rival Manufacturing Co.*, 809 F.2d 1016 (3d Cir.), *cert. denied,* 482 U.S. 915 (1987).  As the
Second Circuit reiterated in a later case,

> [U]se of the mail fraud offense as a RICO predicate act cannot be
> suspended simply because perjury is part of the means for
> perpetrating the fraud. We do not doubt that where a series of
> related state court perjuries occurs, it will often be possible to
> allege and prove both a scheme to defraud within the meaning of
> the mail fraud statute as well as the elements of a RICO violation.
> But in such cases, it will not be the fact of the perjuries alone that
> suffices to bring the matter within the scope of RICO. In any event,
> we cannot carve out from the coverage of RICO an exception for
> mail fraud offenses that involve state court perjuries.

*Eisen*, 974 F.2d at 254.

respect to his ⋯ business calling, career, [or] financial condition⋯⋯" Id., § 155.05(2)(e); *Kraft General Foods, Inc. v. Cattell*, 18 F.Supp.2d 280, 284 (S.D.N.Y. 1998).  Fear of future economic harm is sufficient. *People v. Capparelli*, 158 Misc.2d 996 (N.Y.Sup.Ct. 1993) (*citing People v. Spatarella*, 356 N.Y.S.2d 566 (N.Y. 1974), and other cases).  Moreover,

> it is not essential that a defendant create the fear existing in the mind of his prospective victim so long as he succeeds in persuading him that he possesses the power to remove or continue its cause, and instills a new fear by threatening to misuse that power as a device to exact tribute. . .  Our statute . . . talks in terms of a wrongful use of fear, and the ultimate issue "is not so much the cause of the victim's fear, as it is whether or not defendants played upon that fear, in other words, made use of that fear to extort money or property"

*People v. Dioguardi*, 203 N.Y.S.2d 870, 877 (N.Y. 1960)(citations omitted); *accord*, *U.S. v. Brecht*, 540 F.2d 45, 50 n.10 (2nd Cir. 1976).  Thus, the RICO claims are properly based on extortion.

   b.    *The Complaint properly pleads an "Enterprise"*

   Defendants argue that the complaint does not plead an enterprise distinct from defendants.  This is a complete misreading of controlling law.

   i.    **A "Pattern of Racketeering Acts" May Suffice To Show "Enterprise"**

   The "enterprise" need be no more than the sum of the predicate racketeering acts.  *United States v. Coonan*, 938 F.2d 1553, 1560 (2nd Cir.1991) ("proof of various racketeering acts may be relied on to establish the existence of the charged enterprise."); *United States v. Mazzei,* 700 F.2d 85, 89 (2d Cir.1983) (RICO's legislative history did not require, and "it does not make sense to import a 'distinctiveness' requirement"); *United States v. Bagaric,* 706 F.2d 42, 55 (2d Cir.1983) ("We have upheld application of RICO to situations where the enterprise was, in effect, no more

10

than the sum of the predicate racketeering acts."), *abrogated on other grounds*, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 260 (1994).[10]

Here, defendants do ***not*** dispute - thereby, necessarily conceding for present purposes - the existence of a "pattern of racketeering activity".  That suffices for present purposes.

### ii.      In Any Event, the "Enterprise" is Properly Pleaded

Plaintiffs "are not required to plead the existence of the enterprise with particularity, and may allege a short and plain statement of the enterprise under Rule 8," *Azurite Corp. v. Amster & Co.*, 730 F.Supp. 571, 577 (S.D.N.Y. 1990); *accord*, *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*,  808 F.Supp. 213, 235 (S.D.N.Y. 1992); *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1145 (S.D.N.Y. 1995). Moreover, at this pleading stage, plaintiffs cannot be required to plead facts which are exclusively within defendants' knowledge.  *See, e.g., Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2nd Cir. 2003).

The RICO enterprise can be, quite simply, "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  A corporation may be one of the participants in such enterprise.  As the Second Circuit held, it may be

> held liable as a defendant under section 1962(c) where it associates
> with others to form an enterprise that is sufficiently distinct from
> itself. In this regard we have noted that a section 1962(c) claim

---

[10]*Accord, United States v. Ferguson*, 758 F.2d 843, 853 (2d Cir.1985) ("RICO charges may be proven even when the enterprise and predicate acts are functionally equivalent, and the proof used to establish them coalesced." (citations omitted)); *Moss v. Morgan Stanley, Inc*., 719 F.2d 5, 22 (2nd Cir.1983) (*Mazzei* rejected "the Eighth Circuit's view that the evidence offered to prove the 'enterprise' and 'pattern of racketeering' must necessarily be distinct").

> may be sustained where there is only a partial overlap between the RICO person and the RICO enterprise, *Jacobson v. Cooper*, 882 F.2d 717, 720 (2nd Cir.1989), and that a defendant may be a "RICO 'person' and one of a number of members of the RICO 'enterprise,'" *Cullen v. Margiotta*, 811 F.2d 698, 730 (2nd Cir.), *cert. denied*, 483 U.S. 1021 (1987). Nevertheless, by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents ***carrying on the regular affairs of the defendant***, the distinctness requirement may not be circumvented.

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994).[11]

*Accord, Wood v. Incorporated Village of Patchogue of New York*, 311 F.Supp.2d 344, *357 (E.D.N.Y. 2004) (Village mayors and chief constables "sufficiently distinct RICO persons from the RICO enterprise").

Thus, for example, in *Stolow v. Greg Manning Auctions Inc.*, 258 F.Supp.2d 236, 247 (S.D.N.Y. 2003), a stamp dealer asserted RICO claims against various defendants whom he accused of participating in a bid-rigging scheme. The "enterprise" comprised of 9 corporations and 7 individuals. *Id.* at 247.  Judge Scheindlin held:

> Unlike enterprises that only consist of a corporation and its employees, here the bid-rigging enterprise is an amalgam of unrelated individual defendants and corporations. . . .  Neither Stolow nor defendants have alleged that all of the individuals are merely employees or agents of the corporations. Instead, Stolow claims that "all of the defendants acted individually and in consort [sic] to support the illegal enterprise and are members of the enterprise." Id. ¶ 6. Stolow has standing and has properly pled his section 1962(c) claim.

*Stolow*, 258 F.Supp.2d at 247.  This reasoning is fully applicable here.

The enterprise at issue is ***not*** just Northern Leasing and its employees conducting

---

[11]All emphasis in quotations are supplied.

Northern Leasing's regular, ostensible business of financing equipment leases.  Indeed,

defendants do not claim that filing fraudulent lawsuits based on wilfully false, perjurious

statements to bully out-of-state individuals to pay unwarranted sums of money is Northern

Leasing's "regular" business.  Hence, defendants, together with others such as certain vendors

and  attorneys, constitute an enterprise distinct from defendants..  *Sony Music Entertainment Inc.*

*v. Robison*, 2002 WL 272406 at \*5 (S.D.N.Y. Feb. 26, 2002) (Sony, the RICO person, could also

be considered part of the enterprise, even though Sony was part-owner of an entity identified as

part of the enterprise, "because Sony does not constitute the entire enterprise."); *G-I Holdings,*

*Inc. v. Baron & Budd*, 238 F.Supp.2d 521, 546 (S.D.N.Y. 2002) (sole defendant law firm could

be conducting an association-in-fact enterprise comprised of law firm, various local counsel,

doctors and/or unions); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165

(2001) (RICO claims upheld where a corporation's "regular" business is conducted fraudulently

by its sole stockholder and president; employee "who conducts the corporation's affairs through

an unlawful RICO 'pattern ⋯ of activity,' §1962(c), uses that corporation as a 'vehicle' whether

he is, or is not, its sole owner.").

A partial overlap between defendants and the "enterprise" is clearly permitted.

Defendants cite no authority - and we found none - mandating dismissal of a RICO claim just

because the plaintiff could not identify all the participants in the racketeering enterprise.

Defendants' reliance on *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89

(S.D.N.Y. 1993), is misconceived.  That case involved a mortgagee's RICO claims against a

mortgage broker and unrelated borrowers who were alleged to have made misrepresentations in

connection with mortgage loans.  Judge Mukasey held that a RICO "enterprise" was not

supported even by "common sense," because .

> it appears at worst that several borrowers each committed a similar
> but independent fraud with the aid of a particular lender, and that
> each such borrower acted on a particular occasion to benefit
> himself or herself and not to assist any other borrower. That series
> of discontinuous independent frauds is no more an "enterprise"
> than it is a single conspiracy.

820 F.Supp at 98.

That is not the case here; every bullying lawsuit was to benefit defendants.  Moreover,

*First Nationwide* cannot be read to have overruled *Coonan*, 938 F.2d 1553, and other decisions

discussed above that an enterprise may be simply the sum of predicate acts.  As Judge Karas

observed, Judge Mukasey's holding on "enterprise" was not even briefed on appeal, the opinion

being affirmed on the issue of RICO "injury".  *World Wrestling Entertainment, Inc. v. Jakks*

*Pacific, Inc.*, 425 F.Supp.2d 484, 500 (S.D.N.Y. 2006).[12]

      c.    *The RICO Claims Are Not Time-Barred*

Defendants assert that the RICO claims of Ms. Serin, Mr. Russ, Mr. Lim, and Ms.

Kettler, are time-barred because the claims accrued (a) when they signed the leases, DM, 15; or

(b) with the first unauthorized electronic deduction from their bank accounts.  Defendants

fundamentally misconstrue the facts as well as applicable law.

First, "Civil RICO claims are subject to a four-year statute of limitations that begins to

---

[12]*Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y.1987), DM, 11,
involved real estate purchasers' RICO claims that the defendant title insurance company formed
an "enterprise" with several real estate attorneys for rebating premiums.  Judge Leisure directed
the plaintiffs to replead because they had not specified how the individuals joined together as a
group; each could have been acting, independent of the others, to benefit from the rebating.  *See
Blue Cross of California v. SmithKline Beecham Clinical Laboratories, Inc.*, 62 F.Supp.2d 544,
551 (D.Conn. 1998).

run 'when the plaintiff discovers or should have discovered the ***RICO injury***.'" *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2nd Cir. 2002) (*quoting In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 58 (2nd Cir. 1998)); *accord, Burrowes v. Combs*, 2005 WL 670644, *1 (2nd Cir. Mar 23, 2005); *Rafter v. Liddle*, 2006 WL 2255093, *6 (S.D.N.Y. Aug. 4, 2006).  That injury

> must be caused by a pattern of racketeering activity violating
> section 1962 or by individual RICO predicate acts. *See Bankers
> Trust Co. v. Rhoades,* 859 F.2d 1096, 1100 (2d Cir.1988), *cert.
> denied,* 490 U.S. 1007 (1989).

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2nd Cir. 1990)

Here, the pattern of racketeering activity was defendants' commencement or threat of "bogus legal proceedings based on false representations and solely for the purpose of injuring plaintiffs and recovering unwarranted sums through extortion."  Ver. Comp., 18¶52.  The ***RICO injury*** is, thus, ***not*** the wrongful electronic deductions.  Rather, it is the injuries inflicted by this racketeering scheme.  Plaintiffs' injuries are thus (a) waste of time and resources in responding to defendants's dunning calls, threats, lawsuit in New York, retaining lawyers and incurring legal expenses therefor; and (b) adverse effect upon their credit rating and damages therefrom.  Ver. Comp., 25¶116.

Defendants do not claim that any of these RICO injuries occurred beyond the 4-year limitation period.  Thus, their argument based on the wrongful electronic deductions is wholly misconceived.

Second, defendants' contention that the statute of limitations started accruing with plaintiffs' signatures on the leases is frivolous.  Plaintiffs assert that they never signed the lease.

Third, defendants' reliance on the date of electronic deductions is also wrong.  The wrongful electronic deductions took place from business accounts, not plaintiffs' individual accounts.  Moreover, the RICO injury - the dunning, threats, and lawsuits - commenced only after the electronic deductions stopped.

Furthermore, Ms. Serin was never the "principal" of "Jim Cameron's Garage Doors," DM, 13, or any other California business.  Mr. Russ was not in the country, and discovered the illicit deductions to his business Rapid Cash only in May 2002, Ver. Comp., 8¶33.

Mr. Lim came to know of defendants' threatened lawsuit and promptly informed defendants of the forgery.  He sent highly private information such as drivers' license and all other information they demanded.  Defendants did not respond to Mr. Lim, but simply proceeded to enter a default judgment against him in May 2004, which Mr. Lim learnt about only in August 2004.  Was it unreasonable for him to believe that, given defendants' silence, their  lawsuit had been commenced in error, and that with the evidence he sent, defendants would voluntarily withdraw that lawsuit?  That is a factual issue which cannot be resolved now.  As Judge Pollack held in the very case cited by defendants, *In re Sumitomo Copper Litigation,* 104 F.Supp.2d 314, 322 (S.D.N.Y. 2000), "Plaintiffs' allegations suffice to preclude dismissal on statute of limitations grounds."

So also, defendants' threats and dunning letters to Ms. Kettler commenced only after she closed her bank account in August 2003, when defendants' electronic deductions were stopped.  Thus, all plaintiffs' cases are timely.

      d.   *The Conspiracy Claims Are Proper*

Defendants object to the RICO conspiracy claims because (a) the "substantial RICO

claim" is infirm; and (b) plaintiffs' allegations are "conclusory," DM, 16. This is baseless.

But the 1962( c) claims are not infirm, as already seen. Besides, "Pleadings averring conspiracy are properly measured under the 'liberal pleading requirements of Rule 8(a).'" *UFCW Local 174 Commercial Health Care Fund v. Homestead Meadows Foods Corp.,* 2005 WL 2875313, *2 (S.D.N.Y. Nov. 1, 2005) (*quoting Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir.1990)).[13]

Under Rule 8(a), the complaint is only to give "fair notice" of a claim and "the grounds upon which it rests". *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346  (2005) (citation omitted). Rule 8 is "not meant to impose a great burden upon a plaintiff." *Id.*   The Rule is meant to ensure fair and reasonable notice, not technicality, and "extensive pleading of the facts is not required." *Wynder v. McMahon*, 360 F.3d 73, 77 (2nd Cir. 2004) (citation omitted).[14]  Greater specificity is required only in cases where - unlike here - Rule 9(b) is applicable.  *Leatherman v. Tarrant Co. Narcotics Intell. and Coord. Unit*, 507 U.S. 163, 167- 68 (1993).

Here, plaintiffs have alleged that defendants "knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described about ,"AC30¶108.   This suffices for present purposes; as the Court held in *Patrick Carter Associates, Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.*, 781

---

[13]*Accord, Wilson v. Toussie*, 260 F.Supp.2d 530, 536 (E.D.N.Y. 2003); *Gulf Coast Development Group, LLC v. Lebror*, 2003 WL 22871914, *4 (S.D.N.Y. 2003) ("the pleading requirements with respect to a RICO conspiracy . . . are governed by FRCP 8(a)").

[14]*Accord, Schwartz v. Michaels,* 1992 WL 184527, at 26 (S.D.N.Y. July 23, 1992) (pleadings under § 1962(d) are analyzed pursuant to the more liberal standards of Rule 8(a)); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 173 (S.D.N.Y. 1998); *In re Crazy Eddie Securities Litigation,* 747 F.Supp. 850, 863 (E.D.N.Y. 1990).

F.Supp. 207, 216 (S.D.N.Y. 1991):

> plaintiff has alleged that "[e]ach defendant understood the nature of the conspiracy and knowingly agreed to further its affairs through the commission of the aforesaid acts." Am. Complaint at ¶ 34. While this allegation could be said to be nothing more than boilerplate, the Court believes that when considered in conjunction with the other allegations of the Complaint, it is sufficient to charge a RICO conspiracy.

*Accord, Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076, 1101 (S.D.N.Y. 1994). [15]

Defendants' cases involved fraud allegations, which are governed by Rule 9(b) requirements of particularity.  *Allen v. New World Coffee, Inc.*, 2001 WL 293683, *1 (S.D.N.Y. Mar 27, 2001) ("fraudulently induced plaintiff . . . to enter into the agreement"); *Adler v. Berg Harmon Associates*, 790 F.Supp. 1222, 1227 (S.D.N.Y. 1992) ("Where securities law fraud or mail or wire fraud offenses are alleged as predicate acts for RICO violations, such allegations are subject to the pleading requirements of Rule 9(b).").[16]  That is not the case here.

---

[15]Indeed, here, plaintiffs have gone much farther and even set forth the role played by each defendant, Ver. Comp., 18¶¶88-90.  "Considered as a whole, these allegations 'provide[ ] a substantial factual basis from which to infer an agreement among these defendants,'" *United States Fire Ins. Co. v. United Limousine Service, Inc.*, 303 F.Supp.2d 432, 454 (S.D.N.Y. 2004) (citations omitted).

[16]*Laverpool v. New York City Transit Authority*, 760 F.Supp. 1046, 1058 (E.D.N.Y.,1991), was a putative class action asserting a slew of claims challenging the Transit Authority's employment related actions based on drug testing.  Those plaintiffs did not even file opposition papers to defendants' motion to dismiss, and Judge Spatt reviewed the Complaint suo motu although he could have simply dismissed the action, *id*., 1053; Rule 3(b) of Local Rules. That apart, those plaintiffs asserted predicate acts of (a) "bribery," without specifying even the statutory violation for bribery, and Judge Spatt found no applicable statutes; and (b) "wire fraud", without any particulars but a "mere conclusory assertion that the defendants have committed wire fraud."  760 F.Supp at 1059.

18

2.      The Claims Under Section 349, G.B.L., are Viable

Defendants object that the 349 claims are not viable because (a) "the lease agreements are not consumer transactions," DM, 18-19; (b) plaintiffs do not "allege any deceptive activity in New York," DM, 19; and ( c) the claims are time barred, DM, 19-20.  Defendants's objections are unfounded.

a.      *Plaintiffs Are Not Businesses, and Section 349 is Clearly Applicable*

Defendants blithely assert that "there can be no dispute that plaintiffs are businesses that leased credit card terminals . . . in order to conduct their businesses," and that their forged "lease agreements are not consumer transactions," DM, 19.  This is frivolous.  Plaintiffs' case here is that there were **no** lease agreements.  Plaintiffs are **not** businesses that had **any** dealings with defendants, but have been lassoed in based on forged documents.  *Cruz v. NYNEX Info. Res.*, 703 N.Y.S.2d 103 (1st Dep't 2000), is thus completely beside the point.

Section 349, making unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," N.Y. G.B.L. §349, was "intended to be broadly applicable, extending far beyond the reach of common law fraud."  *New York v. Feldman*, 210 F.Supp.2d 294 (S.D.N.Y. 2002).  Its scope "is intentionally broad, applying 'to virtually all economic activity'," *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 785 N.Y.S.2d 399, 403 (N.Y. 2004) (*quoting Goshen v. Mutual Life Ins. Co. of N.Y.*, 746 N.Y.S.2d 858 (N.Y. 2002); *Karlin v. IVF Am.*, 690 N.Y.S.2d 495 (N.Y. 1999)).  As the New York Court of Appeals clarified, 349 permits recovery by "any person" not just consumers:

> we do not agree with plaintiff that precluding recovery here will
> necessarily limit the scope of section 349 to only consumers, in
> contravention of the statute's plain language permitting recovery by

19

any person injured "by reason of" any violation (*see e.g. Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 264 [2d Cir.1995], *cert. denied*, 516 U.S. 1114 [1996] [allowing a corporation to use section 349 to halt a competitor's deceptive consumer practices]; *Mem. of Atty. Gen., Bill Jacket, L.* 1980, ch. 346 ["a business itself will be able to use the private right of action against another business engaged in deceptive practices and thereby obtain increased legal protection"] ).

\*\*\*\*\*\*\*\*\*\*          \*\*\*\*\*\*\*\*\*\*          \*\*\*\*\*\*\*\*\*\*

[I]t is beyond dispute that section 349(h) permits an actually (nonderivatively) injured party to sue a tortfeasor. We hold simply that what is required is that the party actually injured be the one to bring suit.

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.* 785 N.Y.S.2d 399, 403-04 (N.Y. 2004).

Thus, for example, Section 349 claims have been upheld against a collection bureau for sending deceptive debtor notices using simulated telegram formats. *In re Scrimpsher*, 17 B.R. 999, 1015 (Bkrtcy. N.D.N.Y. 1982).  *See also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2nd Cir.1995) ("corporate competitors now have standing to bring a claim under this [statute] ... so long as some harm to the public at large is at issue"); *H2O Swimwear, Ltd. v. Lomas,* 560 N.Y.S.2d 19, 21 (1st Dep't 1990) (same).

Clearly, defendants' deceptive notices, summons, and complaints and filing of fraudulent lawsuits in New York was an "unfair and deceptive" trade practice.  Defendants do not dispute that their activities had a widespread impact; thus, the 349 claims are proper.

b.    *Defendants' Deceptive Activity Took Place in New York*

*Goshen v. Mutual Life Ins. Co. of New York*, 746 N.Y.S.2d 858 (N.Y. 2002), involved 349 claims by out-of-state plaintiffs misled into purchasing "vanishing premium" policies

through fraudulent sales and marketing practices originating in New York.  The Court reasoned

that the statutory language of 349 "unambiguously evinces a legislative intent to address

commercial misconduct occurring within New York."  Hence, the "mere invention of a scheme

or marketing strategy" is not a deceptive act per se.  Applying 349 to those types of cases -

alleging a deceptive scheme which was "hatched" in New York but executed elsewhere - would

"lead to an unwarranted expansive reading of the statute, contrary to legislative intent, and

potentially leading to the nationwide, if not global application of" Section 349.  This would

impinge on other states' ability to police their markets and enforce their consumer protection

statutes.  However, the Court cautioned:

> Lastly, we note that our General Business Law analysis does not
> turn on the residency of the parties. As both the text of the statute
> and the history suggest, the intent is to protect consumers in their
> transactions that take place in New York State. It was not intended
> to police the out-of-state transactions of New York companies, nor
> was it intended to function as a per se bar to out-of-state plaintiffs'
> claims of deceptive acts leading to transactions within the state.

*Goshen*, 746 N.Y.S.2d at 863-64.

Here, the gravamen of the misconduct is what defendants did - and continue to do - in

New York, i.e., filing fraudulent and perjurious lawsuits, and even obtaining default judgments

here.  Not just the "hatching" of the scheme, but its implementation and even some injury

occurred here.  This is unlike *Scott v. Bell Atlantic Corp.*, 726 N.Y.S.2d 60, 63 (1st Dep't 2001),[17]

which involved DSL services provided outside New York.  Significantly, defendants' own

standard form lease provides for exclusive jurisdiction in New York.

---

[17] *Scott* was modified by the Court of Appeals in *Goshen* to permit claims based on New York activity.

21

Lastly, defendants' assertion of a 3 -year time bar for this claim is infirm for the reasons already discussed in connection with the RICO claims.  Plaintiffs' injuries did not commence with unauthorized electronic deductions.

3.      Neither *Colorado River* Nor *Res Judicata* Is Applicable Here

      a.      *No Parallel State Proceedings Exist With Respect to the Claims Here*

Defendants seek dismissal under the *Colorado River* doctrine because "the parties and the issues in both the State action and here are virtually identical," DM, 21.  According to them, the allegations are "inescapably alike", and plaintiffs seek to "recover for defendants' alleged acts of extortion and fraud," DM, 21.  This is facetious.

These 6 plaintiffs are ***not*** parties to the State Court action.  The allegations there are completely different; as that Court summarized, those plaintiffs alleged:

> that the four page lease agreement and personal guaranty was a single page document as both the lease's acceptance and personal guaranty was on the first page; that the first page of the document contains nothing incorporating the remaining three pages which would alert plaintiffs to the existence of additional pages; that the defendants' representatives or salespersons never discussed, mentioned or even referred to the remaining three pages; that they were manipulated into signing in a hurry; that the lease agreement was clipped in a clip-board making it appear that the agreement was a single page document; that they were not given a copy of the lease agreement at the time they signed and that they had to telephone a special number and request a copy.
>
> The amended complaint, while conceding that at the bottom of the first page of the lease it reads "Page 1 of 4," alleges that such is tucked away in the far left corner in print size alleged to be "microprint."
>
> The amended complaint further alleges that undisclosed pages concealed higher charges, indefinite automatic electronic deductions unless lessee gave a 60-day notice of cancellation, no

> warranties from NLS, absolute obligation to pay, insurance
> obligations, late charges, attorneys' fees and expenses and a New
> York choice of forum.

Opinion, at 2-3.  ***Not a single one of those allegations is made here***.

The stark difference is only highlighted by the State Court's refusal to even consider the

affidavits submitted by 3 of the 6 plaintiffs here (Kettler, Redner, and Russ):

> While generally a court should consider affidavits to remedy any
> defects in the pleading on a motion to dismiss for insufficiency, the
> affidavits of these non-party affiants shall not be considered as the
> allegations are ***inconsistent and contrary to the allegations in
> both*** the affidavits of the named plaintiffs and the amended
> complaint and is an improper attempt at repleading without court
> leave.

Opinion at 2.  In other words, the State Court expressly ***rejected*** these 3 plaintiffs' attempt to

have their claims included there.

In the face of this express rejection, there are simply ***no*** parallel State Court proceedings

warranting abstention, which requires "'exceptional' circumstances, 'the clearest of justifications,'

. . . to justify the surrender of . . . jurisdiction." *Moses H. Cone Hospital v. Mercury Construction

Corp.,* 460 U.S. 1, 25-26 (1983).  Defendants' arguments are simply beside the point.[18]

     b.     *The State Court's Dismissal of Different RICO Claims By Others Is No Bar*

"Under res judicata, a final judgment on the merits of an action precludes the parties or

their privies from relitigating issues that were or could have been raised in that action."  *San

Remo Hotel, L.P. v. City and County of San Francisco, Cal.,* 545 U.S. 323, __, 125 S.Ct. 2491,

---

[18]*See, e.g., Farkas v. D'Oca*, 857 F.Supp. 300, 303 (S.D.N.Y. 1994) ("because the cases
are not parallel, *Colorado River* abstention is not appropriate."); *Kansas Judicial Watch v. Stout,*
2006 WL 2038045, *7 (D.Kan. Jul. 19, 2006) ("Because there is no state court proceeding
pending on this matter, the Court finds this abstention doctrine inapplicable").

2500 n.16 (2005).  Thus, it is not "a policy that a defendant should be scot free of any liability," but "of avoiding duplicative litigation, "multiple suits on identical entitlements or obligations between the same parties.  *Will v. Hallock*, __ U.S. __, 126 S.Ct. 952, 960 (2006).

Thus, for example, in *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 795 (1996), non-federal employees brought a class action challenging a county tax.  The county sought summary judgment based on res judicata, because the tax had been upheld in an earlier action by the city of Birmingham consolidated with a taxpayer suit.  517 U.S. at 795.  The Alabama Supreme Court agreed, but the U.S. Supreme Court reversed, holding that decision violative "of the due process of law guaranteed by the Fourteenth Amendment," 517 U.S. at 797.  That is controlling here.

Even in a class action context, a non-parties' claims could be barred by res judicata only if the class proceeding had been

> "so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue."

517 U.S. at 801 (citations omitted).  *Accord*, *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940) ("because the interests of those class members who had been a party to the prior litigation were in conflict with the absent members who were the defendants in the subsequent action, the doctrine of representation of absent parties in a class suit could not support the decree.")

Here, the State Court expressly held that these plaintiffs' claims contradicted the class claims.  Given that holding, defendants' reliance upon earlier submissions rejected by that Court is disingenuous.  In fact, the class certification motion pending before the State Court seeks certification of "all persons who ***signed*** as lessees and/or guarantors" - and plaintiffs are clearly ***not*** such persons and are clearly not part of that class.  This case was commenced after the State

24

Court rejected these plaintiffs' attempts to be included there.[19]

Defendants' argument that "the allegations raised, and the parties' interests, are nearly identical," DM, 24, is baseless.  As this Court itself painstakingly explained to defendants' previous counsel in the conference of May 12, fraud claims are fundamentally different from forgery claims.  Unlike these plaintiffs, the class action plaintiffs did ***not*** dispute having signed the leases.

This is also highlighted by the difference in the predicate acts underlying the RICO claims: the class action complaint asserted mail fraud and wire fraud, not extortion.  These different claims are based on mutually inconsistent underlying facts.   Defendants' assertion that the claims "arise out of the same allegedly fraudulent methods of signing up merchants for POS terminal Leases," is inaccurate.  Hence, the State Court's dismissal of the RICO claims resolved issues as between those plaintiffs and defendants, "but it does not conclude the rights of strangers to those proceedings."  *S.E.C. v. Seahawk Deep Ocean Technology, Inc.*, 74 F.Supp.2d 1188, 1194 (M.D.Fla. 1999) (citations omitted)

<u>CONCLUSION</u>

The defendant's motion to dismiss must be denied in its entirety with costs.

Dated:        New York, New York            **Chittur & Associates, P.C.**
              August 25, 2006                              S/
                                            By:  Krishnan Chittur, Esq. (KC 9258)
                                            The Lincoln Building 15th Floor
                                            60 East 42nd Street 1501
                                            New York, NY 10165
                                            Tel: (212) 370-0447
                                            Attorneys for plaintiffs

---

[19]Incidentally, defendants' assertion that the class plaintiffs' position is"typical" of even these plaintiffs is directly contrary to their submissions to the State Court opposing certification.