UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MELINDA SERIN, JUDSON RUSS, LONG SOUI : LIM, PERI KETTLER, GORDON REDNER, AND : THOMAS J. SMITH, :      No. 06 CV 1625 (SCR)

                    Plaintiffs,  :

           - against -  :

NORTHERN LEASING SYSTEMS, INC., JAY : COHEN, RICH HAHN, and SARA KRIEGER, :

                 Defendants.  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' REPLY MEMORANDUM**

EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500

Attorneys for Defendants

## TABLE OF CONTENTS

PAGE

Argument ............................................................................................................................. 1

I    COMMENCING ALLEGEDLY "ABUSIVE" LITIGATION
     DOES NOT CONSTITUTE EXTORTION................................................................. 1

II   PLAINTIFFS FAIL TO IDENTIFY A RICO "ENTERPRISE" ............................... 5

III  PLAINTIFFS FAIL TO PLEAD A VIABLE CLAIM UNDER GBL §349 ............................ 8

IV   DISMISSAL ON THE GROUND OF RES JUDICATA IS APPROPRIATE ..................... 9

## TABLE OF AUTHORITIES

PAGE

### CASES

Blue Cross and Blue Shield of N.J., Inc. v. Phillip Morris USA, Inc., 3 N.Y.2d 200
(2004).....................................................................................................................9

C.A. Westel de Venezuela v. Americal Telephone and Telegraph Co., No. 90 Civ. 6665,
1994 WL. 558026 ......................................................................................................7

California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) ...............................4

Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001).....................................................6

Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc., 944 F.2d
1525 (9th Cir. 1991), aff'd, 508 U.S. 49 (1993)............................................................4

DeFalco v. Bernas, 244 F.3d 286 (2d Cir. 2001) .......................................................................3

First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004)................6

Florida Evergreen Foliage v. E.I. DuPont de Nemours & Co., 135 F. Supp. 2d 1271 (S.D. Fla. 2001), aff'd sub nom., Green Leaf Nursery v E.I.DuPont de Nemours & Co., 341 F.3d 1292 (11th Cir. 2003) ...................................................................................................3

G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233 (S.D.N.Y. 2001)................................2

Glessner v. Kenny, 952 F.2d 702 (3d Cir. 1991) ...........................................................................7

Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45 (1st Cir. 2000) .......................................3

Greenfield v. Professional Care, Inc., 677 F. Supp. 110 (E.D.N.Y. 1987)........................................7

Hall American Center Associates Ltd. Partnership v. Dick, 726 F. Supp. 1083 (E.D. Mich. 1989).................................................................................................................................2

Lemelson v. Wang Laboratories, Inc., 874 F. Supp. 430 (D. Mass. 1994) .....................................2

Medallion TV Enterprises Inc. v. SelecTV of Calif., Inc., 627 F. Supp. 1290 (C.D. Cal. 1986), aff'd, 833 F.2d 1360 (9th Cir. 1987) ..................................................................................5

Nakahara v. Bal, No. 97 Civ. 2027, 1998 WL.35123 (S.D.N.Y. Jan. 30, 1998)...........................2

Turkish v. Kasenetz, 27 F.3d 23 (2d Cir. 1994) ...........................................................................3

United States v. Albertson, 971 F. Supp. 837 (D. Del. 1997), aff'd mem., 156 F.3d 1225 (3d Cir. 1998)...............................................................................................................................3

United States v. Clemente, 640 F.2d 1069 (2d Cir. 1981)...........................................................4

United States v. Coonan, 938 F.2d 1553 (2d Cir. 1991)..............................................................5

United States v. Eisen, 974 F.2d 246 (2d Cir. 1992) ...................................................................2

United States v. Turkette, 452 U.S. 576 (1981).............................................................................6

Viacom International, Inc. v. Icahn, 747 F. Supp. 205 (S.D.N.Y. 1990), aff'd, 946 F. 2d 998 (2d Cir. 1991)........................................................................................................................3

**STATUTES**

N.Y. Penal Law § 155.05 (McKinney 1998) ................................................................................5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MELINDA SERIN, JUDSON RUSS, LONG SOUI    :
LIM, PERI KETTLER, GORDON REDNER, AND  :
THOMAS J. SMITH,                 :    No. 06 CV 1625 (SCR)

                       Plaintiffs,   :

                               :

           - against -         :

                               :

NORTHERN LEASING SYSTEMS, INC., JAY    :
COHEN, RICH HAHN, and SARA KRIEGER,   :

                     Defendants.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANTS' REPLY MEMORANDUM

Defendants Northern Leasing Systems, Inc. ("NLS"), Jay Cohen, Rich Kahn and

Sara Krieger, by their attorneys, Epstein Becker & Green, P.C., submit this reply memorandum

of law in support of their motion to dismiss the verified complaint (the "Complaint").

## <u>Argument</u>

### I

## COMMENCING ALLEGEDLY "ABUSIVE" LITIGATION
## DOES NOT CONSTITUTE EXTORTION

The first sentence of plaintiffs' brief makes clear that the sole alleged violation of

the Hobbs Act, which they claim is the predicate act required by RICO, is the purportedly

abusive and fraudulent litigation commenced against plaintiffs in New York City Civil Court.

(*See* Plaintiffs' Memorandum of Law ("Mem.") at 1; Complaint ¶¶ 1,14, 52, 92, 109.)  It is well

settled law in the Second Circuit that a threat or initiation of litigation, even where the litigation

is unjustified or malicious, does not violate the Hobbs Act, and thus cannot constitute a predicate

act for purposes of RICO.  See, e.g., G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001) and the decisions cited in defendants' principal brief; see also Nakahara v. Bal, No. 97 Civ. 2027, 1998 WL35123 (S.D.N.Y. Jan. 30, 1998) (holding that numerous courts within and beyond Second Circuit hold that the threat of litigation or commencement of an unjustified lawsuit may constitute the tort of malicious prosecution but cannot alone constitute a predicate act under RICO).

In their opposition memorandum, plaintiffs concede that abusive and fraudulent litigation alone does not amount to a predicate act that qualifies as extortion for RICO purposes. Indeed, plaintiffs argue that the "[a]buse of the judicial process could be RICO predicate acts where additional allegations of extortion or some other pattern of racketeering activity are involved." (Mem. at 5, emphasis added.)  Consistent with plaintiffs' summary of the law, the cases plaintiffs cite involve use of the judicial process as a component of a broader unlawful scheme  involving distinct and undisputable acts of bribery, mail fraud, wire fraud, or some other criminal offense.  For example, in Lemelson v. Wang Laboratories, Inc., 874 F. Supp. 430, 434 (D. Mass. 1994), defendant's RICO counterclaim pleaded that "plaintiff has extorted millions of dollars in settlement monies through a pattern of litigation involving infringement claims based on fraudulently obtained patents . . . [and] that the predicate acts are the enterprise's repeated and continuing use of the United States mails and the interstate use of the telephone wires to further of this extortionate scheme." (Emphasis added.)  Likewise, in Hall American Center Associates Ltd. Partnership v. Dick, 726 F. Supp. 1083 (E.D. Mich. 1989), the alleged RICO scheme involved allegations of mail and wire fraud as well as extortion and attempted extortion under the Hobbs Act.  The court held, as in Lemelson,  that the lawsuits were filed as part of a broader extortion scheme.  In United States v. Eisen, 974 F. 2d 246 (2d Cir. 1992), the subject RICO

claim arose from a law firm's purportedly fraudulent conduct of civil litigation as plaintiff's counsel in personal injury cases in conjunction with predicate acts of mail fraud and witness bribery.

Plaintiffs' other decisions involve acts other than or in addition to commencing lawsuits. See Viacom Int'l, Inc. v. Icahn, 747 F. Supp. 205 (S.D.N.Y. 1990), aff'd, 946 F. 2d 998 (2d Cir. 1991) (extortion claim based on threatened corporate takeover); DeFalco v. Bernas, 244 F. 3d 286 (2d Cir. 2001) (extortion claim based on threat to thwart real estate development project via misuse of public office in exchange for compliance with demands by enterprise for money, real and personal property for personal benefit); Turkish v. Kasenetz, 27 F. 3d 23 (2d Cir. 1994) (extortion claim based on threat to withhold distribution of trust assets if plaintiffs failed to execute proffered release); United States v. Albertson, 971 F. Supp. 837 (D. Del. 1997) (extortion of money in exchange for reversal of political opposition to development deal), aff'd mem., 156 F.3d 1225 (3d Cir. 1998);  Florida Evergreen Foliage v. E.I. DuPont de Nemours & Co. 135 F. Supp. 2d 1271, 1284 (S.D. Fla. 2001) (RICO scheme involved mail fraud, wire fraud, obstruction of justice, witness tampering, perjury and false statements to the court), aff'd sub nom., Green Leaf Nursery v E.I.DuPont de Nemours & Co., 341 F.3d 1292 (11th Cir. 2003); Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45 (1st Cir. 2000) (dismissal of RICO claim affirmed; court only "assumes" filing frivolous suits "may" constitute RICO extortion). None of the foregoing decisions holds that a party's fear of economic loss solely as a result of threatened or commenced litigation is a violation of the Hobbs Act.  This is not surprising, since extortion under the Hobbs Act is the use of "wrongful means" to achieve a "wrongful objective."

United States v. Clemente, 640 F.2d 1069, 1076 (2d Cir. 1981).  Lawsuits are not wrongful means in themselves.[1]

A review of the Complaint shows that the sole act that plaintiffs claim violates the Hobbs Act is commencing and prosecuting litigation.  See e.g., Complaint ¶ 1 ("This action arises out of defendants' racketeering scheme . . . [of] commencing fraudulent lawsuits . . ."); ¶ 92 ("[d]efendants had . . . a practice . . . of starting bogus legal proceedings . . ."); ¶ 100 ("[b]ased upon [the five Civil Court] actions, they attempted to extort . . .").  Because no other allegedly extortionate actions are alleged, nor is any statute other than the Hobbs Act or the New York State Penal Law cited as a predicate act, the Complaint cannot even arguably come within the cases plaintiffs' cite.

Plaintiffs appear to assert that the Supreme Court's decision in California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972), and the Ninth Circuit's decision in Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc., 944 F.2d 1525 (9th Cir. 1991), aff'd, 508 U.S. 49 (1993), support their argument that a "sham suit" is sufficient to give rise to a violation of the Hobbs Act (Mem. at 6).  In fact, neither case had anything to do with the Hobbs Act or RICO.  Rather, in each case the issues were whether bringing an "abusive" lawsuit constituted a violation of the antitrust laws and whether the defendants' actions in bringing such litigation were immune from antitrust liability under the Noerr-Pennington doctrine.

---

[1]      In an effort that could be best categorized as an afterthought, plaintiffs argue that the alleged "perjurious averments" in the Civil Court litigation "abundantly support claims of mail and wire fraud," and they informally seek leave to replead.  This request should be denied on the ground that neither the 127 paragraph Complaint nor plaintiffs' opposition papers indicate, or suggest in the slightest, any purported factual basis for such a claim, either as to the mails or use of telephone lines, nor is any proposed amended complaint presented to the Court in connection with such a request.

Plaintiffs do not even attempt to distinguish the defendants' cited decisions holding that merely commencing litigation does not constitute a violation of the New York State Penal Law outlawing extortion. (<u>See</u> Defendants' Mem. at 9.) None of the State court decisions plaintiffs cite (Mem. at 9-10) involved bringing a "abusive" litigation, let alone holding such actions violated N.Y. Penal Law § 155.05 (McKinney 1998).

## II

## PLAINTIFFS FAIL TO IDENTIFY A RICO "ENTERPRISE"

Plaintiffs' brief deftly avoids telling the Court what the RICO "enterprise" is. What is alleged in the Complaint (¶ 86) is merely that the corporate defendant, some of its senior officers and their attorneys (<u>i.e.</u>, NLS's agents), together with some salesmen and unnamed "conspirators" are the RICO "enterprise." In view of plaintiffs' theory that the sole predicate act is the defendant corporation bringing lawsuits to enforce what the plaintiffs claim are invalid lease agreements, plaintiffs' "enterprise" allegation is insufficient.

The RICO "enterprise" must be separate from the pattern of racketeering activity, although, as plaintiffs correctly note, the activities may shed light on what the often-secretive enterprise is, particularly when the enterprise is a criminal "association-in-fact" and not a formal organization. <u>United States v. Coonan</u>, 938 F.2d 1553 (2d Cir. 1991). Nevertheless, the RICO enterprise must have a existence separate and apart from the pattern of activity in which it is engaged. <u>Medallion TV Enters. Inc. v. SelecTV of Calif., Inc.</u>, 627 F. Supp. 1290 (C.D. Cal. 1986), <u>aff'd</u>, 833 F.2d 1360 (9th Cir. 1987).

Here, plaintiffs' allegations are that the corporate and employee defendants brought lawsuits to enforce (allegedly forged) contracts in furtherance of defendant NLS's

equipment lease financing business.  They do not allege any enterprise structure distinct from what would be inherent in NLS's business insofar as NLS wanted to enforce its agreements. United States v. Turkette, 452 U.S. 576, 583 (1981); Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161-62 (2001).  As the Supreme Court held in Turkette, while the proof necessary to establish the separate existence of an enterprise and the pattern of racketeering activity may overlap, the element that is an "enterprise" and the element that is "pattern of racketeering activity"  are not one and the same.   In other words, an "enterprise" is not a "pattern of racketeering activity" and vice versa.[2]  Therefore, proof of one element does not automatically establish the existence of the other element.  The additional allegations as to what the enterprise is, is lacking here.

In First Capital Asset Management, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004), the Second Circuit followed the Supreme Court in Turkette, 452 U.S. 576, holding that the plaintiff's amended complaint failed to allege an "enterprise separate from the pattern of racketeering activity" and which also is "distinct from the person conducting the affairs of the enterprise."  385 F.3d at 173 (citations omitted).  Plaintiffs attempt to avoid the controlling principle in First Capital Asset Management by offering general principles and quotations from decisions, but their brief does not identify any "enterprise" distinct from NLS and its employees and attorneys (the latter who presumably commenced the litigation at the heart of plaintiffs' purported RICO claim or the filing lawsuits itself).  The fact that the Complaint mentions "salesmen" and "vendors" and others unknown, is irrelevant, since none of these persons is involved in the essential RICO "racketeering activities," namely, bringing or threatening

---

[2]  Plaintiffs assert (Mem. at 11) that defendants do not dispute, and thus concede, the "existence of a pattern of racketeering activity."  Not so.  Defendants initial point was that bringing lawsuits was not "racketeering activity" under RICO, and what is more, the five lawsuits and one threatened lawsuit alleged (Complaint ¶¶ 93-98) over a three year period does not constitute a pattern.

lawsuits. This Court should not dismiss the complaint because plaintiffs cannot "identify all of the participants" (as plaintiffs assert, Mem. at 13), but because the defendants (being only "salesmen" or "vendors") are either not part of the essential alleged racketeering activity charged or (as employees or lawyers) are indistinct from NLS and its business activity. <u>Greenfield v. Professional Care, Inc.</u>, 677 F. Supp. 110 (E.D.N.Y. 1987) (holding that ultimately plaintiff bears burden to show that defendants were associated in a manner apart from the regular affairs of defendant business or else complaint should be dismissed); <u>Glessner v. Kenny</u>, 952 F.2d 702 (3d Cir. 1991) (holding plaintiffs failed to allege racketeering activity distinct from regular activities carried out by defendants, its employees, agents and affiliates).

In <u>C.A. Westel de Venezuela v. Americal Telephone and Telegraph Co.</u>, No. 90 Civ. 6665, 1994 WL 558026,*7 (S.D.N.Y. Oct. 11, 1994, Judge Leisure dismissed a complaint that, as here, failed to plead a RICO enterprise distinct from the corporate defendants and its agents, stating as follows:

> The non-identity requirement "would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf." *Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991). "[A]n organization cannot join with its own members to do that which it normally does and thereby form an enterprise separate and apart from itself." *Kable News*, 775 F. Supp. at 636 (*quoting, Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union* 639, 280 883 F.2d 132, 141 (D.C. Cir. 1989).

> In the instant action, plaintiff has made no allegation that AT&T, its subsidiaries, and the named employees were associated in any manner apart from the activities of AT&T. Plaintiff has attempted to plead a RICO violation in what is essentially a routine commercial dispute. The RICO persons enumerated by plaintiff and the entities that purportedly constitute the associated-in-fact RICO enterprise, are not distinct. Plaintiff's pleadings do not

portray the infiltration of a business by racketeers.  The enterprise is, in reality, no more than the defendants themselves.

> The situation present here is similar to that present in *Brittingham*, where the court ruled that the alleged enterprise was not distinct from the defendants and stated that "a § 1962 (c) enterprise must be more than an association of individuals or entities conducting the normal affairs of a defendant corporation." *Brittingham*, 943 F.2d at 301.  A close examination of plaintiff's enterprise allegations reveals that the purported enterprise is no more than an association of entities acting on behalf of defendant AT&T.

Lastly, see also Pludeman v. Northern Leasing Systems, Inc. at 8, annexed as Exhibit 4 to

defendants' main moving papers, where plaintiffs lost this very argument once before.

## III

### PLAINTIFFS FAIL TO PLEAD A VIABLE CLAIM UNDER GBL §349

In attempting to avoid the clear law that New York General Business Law § 349 ("Section 349") applies only to consumer transactions, plaintiffs assert that the gravamen of the complaint is that plaintiffs never actually entered into any lease agreements with NLS, and thus they "are not businesses that had any dealing with defendants . . . ." (Mem. at 19.)  This verbal sleight of hand should be rejected as the sophistry it is.  The central allegation is that NLS brought "abusive" litigation to recover money under equipment finance leases for point of sale credit card transaction terminals.  (Complaint, ¶13.)  The disputed lease agreements, whether or not they are valid, were made with businesspersons for commercial purposes, and not for consumer purchases for personal or household use.  Simply put, housewives do not lease credit card terminals for use at home.  The Complaint shows the commercial nature of the underlying transactions in alleging, for example, that plaintiff "Russ discovered that defendant . . . had been electronically debiting funds from four of his corporate accounts . . ."  and that "Mr. Russ was forced to close his business accounts because of defendants unauthorized withdrawals."

(Complaint, ¶¶ 33, 38.)  Similarly, the Complaint alleges plaintiff "Kettler is the principal of Yodamo, Inc., a small business . . . [who] received an . . . e-mail for lease of a credit card payment terminal," and "[a]fter further communication, she agreed to lease specific equipment." (Complaint, ¶¶73, 74.)

The New York Court of Appeals decision in <u>Blue Cross and Blue Shield of N.J., Inc. v. Phillip Morris USA, Inc.</u>, 3 N.Y.2d 200 (2004), does not expand Section 349 beyond deceptive acts directed toward consumers.  Rather, after reiterating that the statute requires "a deceptive act . . . directed toward consumers," <u>id.</u> at 205-06, the Court held that a plaintiff, such as a party's corporate competitor, might have standing to sue to recover for an injury arising from such a consumer-oriented act.   (<u>Blue Cross</u> involved health insurers' claims for reimbursement of medical expenses arising from defendant cigarette manufactures' fraudulent "campaign to encourage consumers to smoke." <u>Id.</u> at 206.)  Here, the Complaint fails to allege any harm to the consuming "public at large," but only to individuals who operate businesses and sell goods or services through credit card purchases.

**IV**

**DISMISSAL ON THE GROUND OF
RES JUDICATA IS APPROPRIATE**

Plaintiffs now strive to disassociate themselves from the decision in the State Action as vigorously as they once supported the amended complaint in opposition to NLS's motion to dismiss.  The flaw in plaintiffs' argument is that, under New York law, res judicata bars both causes of action that were actually asserted, and causes of action arising from the same series of transactions which could have been asserted.  Here and in the State Action, plaintiffs assailed NLS's leasing practices as "racketeering" in violation of RICO.  Plaintiffs here were

well aware of the claims asserted in the State Action, even submitting affidavits in that action, and all are represented by the same counsel. Nothing prevented the present plaintiffs or their putative class representatives from asserting in the State Action the RICO claims now asserted. In fact, the <u>Pludeman</u> plaintiffs' brief in the State Action (Krieger Exhibit 3 at 19) alleges that defendants' "'pattern' is crystal clear: entrap small businessmen into signing a 1-page lease, and forge their signatures on 4-page leases . . ." Plaintiffs here, by submitting affidavits chronicling their alleged experiences, were known to the <u>Pludeman</u> plaintiffs' counsel. Because the claim here could have been brought by plaintiffs' privies in the State Action, res judicata should apply.

New York, New York
September 8, 2006

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:   s/Kenneth J. Kelly
       Kenneth J. Kelly  (KK 4195)
250 Park Avenue
New York, New York  10177-1211
(212) 351-4500
Attorneys for Defendants