UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――X
:
MELINDA SERIN, JUDSON ROSS, LONG SOUI LIM, :
PERI KETTLER, GORDON REDNER, and THOMAS J. :
SMITH,                                     :    06 Civ. 1625 (SCR)
:
            Plaintiffs,                    :    **DECISION AND ORDER**
:
      -against-                            :
:
NORTHERN LEASING SYSTEMS, JAY COHEN,       :
RICH HAHN, and SARA KRIEGER,               :
:
            Defendants.                    :
―――――――――――――――――――――――X

STEPHEN C. ROBINSON, U.S. District Judge:

I.    **Background**

   A.    **Procedural history**

   Melinda Serin ("Serin"), Judson Ross ("Ross"), Long Soui Lim ("Lim"), Peri Kettler

("Kettler"), Gordon Redner ("Redner"), and Thomas J. Smith ("Smith") (collectively the

"Plaintiffs") brought suit on March 1, 2006 against Northern Leasing Systems ("NLS"), Jay

Cohen, Rich Hahn, and Sara Krieger (collectively the "Defendants"), alleging violations of the

federal Racketeer Influenced Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1962, and

New York Gen. Bus. L. § 349(a). Defendants filed a motion to dismiss pursuant to Fed. R. Civ.

P. 12(b)(6), claiming that the Complaint fails to state a claim upon which relief can be granted.

Specifically, Defendants maintain: (a) that filing of lawsuits, even if they are meritless, cannot

constitute predicate acts of extortion for civil RICO purposes; (b) that Plaintiffs fail to set forth

the existence of a distinct "enterprise"[1]; and (c) that Plaintiffs do not satisfy the requirements for

―――――――――――

[1] Because we need only rely on Defendants' first argument to resolve the RICO portion of this motion, the Court declines to address the "enterprise" arguments, and offers no opinion as to the merits of that argument.

a state consumer protection law claim.[2]  For the reasons discussed below, Defendants' motion to dismiss is GRANTED.  Plaintiffs, however, may submit an amended complaint within 30 days of the date of this order.

**B.     Facts**

According to the facts set forth in the Complaint, Plaintiffs allege, generally, that Defendants are engaged in a scheme to intimidate "small businesses" into paying unwarranted sums of money by commencing fraudulent lawsuits in New York City Civil Court.  NLS is in the business of providing financing for credit card "point of sale" terminals and other business equipment to small businesses.  According to Plaintiffs, Defendants contend that each Plaintiff entered into a lease with NLS for business equipment, but Plaintiffs insist that their signatures on these leases were forged.  Plaintiffs allege that Defendants brought lawsuits against the individual Plaintiffs to recover damages for failure to comply with terms of the leases, despite Defendants' knowledge that Plaintiffs' signatures on the leases were forged.  Plaintiffs contend that the lawsuits constitute extortions, and that the extortions serve as the required predicate acts for a civil RICO claim.

Each named plaintiff alleges specific facts to support his or her claims.  Serin, a resident of Washington, D.C., began receiving calls and letters from Defendants in early 2003 demanding money due under a lease of which she had no knowledge; she told NLS that her signature on the document was a forgery.  See generally Compl. at ¶¶ 18-31.  In May 2005, Defendants demanded payment of $2,478 under the lease and threatened a lawsuit.  Serin appeared in New

---

[2] In addition, in their motion papers, Defendants argued that this Court should abstain from considering any of Plaintiffs' claims based on the principles articulated by the United States Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976); alternatively, Defendants argued that Plaintiffs' claims are barred by res judicata.  During oral argument, however, Defendants explicitly indicated that they were withdrawing their Colorado River and res judicata arguments.  Accordingly, we also do not address those arguments here.

York for the initial court conference on January 23, 2006, at which time Defendants' representative voluntarily withdrew the suit with prejudice. According to Plaintiffs, Serin suffered injuries because of derogatory entries made by Defendants in her credit report, and also incurred legal expenses.

Russ, a resident of Orlando, Florida, is the principal of Rapid Cash Advances, Inc., a Florida corporation. See generally Compl. at ¶¶ 32-44. In May 2002, he discovered that NLS was electronically debiting funds from four of his corporate accounts. When he contacted NLS, he was told that "someone had signed four leases in his name." Compl. at ¶ 33. According to the Complaint, Russ was in Ukraine at the time these documents were signed, and notified the Defendants of this fact. Eventually, NLS brought four actions against Russ in New York City Civil court for a total of $8,496. Russ allegedly suffered injuries substantially similar to those suffered by Serin.

In May 2001, Lim, a resident of Marietta, Georgia, received a summons and complaint filed by Defendants in New York City Civil Court demanding $2,060 from him. See generally Compl. at ¶¶ 45-63. He informed Defendants that the signatures on the lease underlying the action were forged. In May 2004, a default judgment was entered against Lim in the amount of $3,253. Lim alleges that he had neither seen nor signed the lease agreement. Lim allegedly suffered injuries substantially similar to those suffered by Serin and Russ.

In January 2004, Redner, a resident of Duncanville, Texas, met with Defendants' local sales representative in Texas regarding a credit card terminal. See generally Compl. at ¶¶ 64-72. He signed two applications – one for a credit check and one for the machine – but the application for the machine was signed "with the First American-Hurst," not with Defendants specifically. Defendants subsequently commenced electronic withdrawals from his bank account pursuant to

3

a lease that, according to Redner, he had never seen before. There is no lawsuit involving Redner, but Defendants allegedly have threatened to bring suit against him. He claims his signature was forged, and that he suffered injuries similar to those of the other Plaintiffs.

Kettler, a resident of Port Townsend, Washington, is the principal of Yodamo, Inc. See generally Compl. at ¶¶ 73-80. In January 2002, she agreed to lease a piece of equipment called a "Tran 330" from Defendants' representative, First National Processing. She signed a one-page lease on January 9, 2002, and when she received a machine different from the one specified in the lease, she sought to cancel the lease. Kettler then received in the mail a copy of a four-page document, with her signature, which was not the lease she signed. Kettler alleges that she returned her machine in March 2002; Defendants refused to accept the equipment and continued automatic deductions from her bank account. Ultimately, Defendants sued Kettler in New York City Civil Court for $1,390.

Smith, a resident of Waukesha, Wisconsin, arranged for credit card processing facilities in October 2002, and ultimately stopped using the machine. See generally Compl. at ¶¶ 81-84. Defendants continued to charge him for the machine pursuant to his lease agreement. Smith informed defendants that he never signed such an agreement. Defendants commenced suit in New York City Civil Court for $2,116.

**II.     Analysis**

    **A.     Standard of review for Rule 12(b)(6) motion**

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). At this stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the

claimant is entitled to offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (internal quotations omitted).  When considering a motion to dismiss for failure to state a claim, a district court may consider the facts as set forth in the complaint, documents attached to the complaint, and any other documents incorporated in the complaint by reference. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

**B.     Civil RICO claim – 18 U.S.C. § 1962(c)**

To state a civil RICO claim, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity (5) resulting in (6) injury to business or property." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999).  Plaintiffs here allege Defendants violated 18 U.S.C. § 1962(c), which provides that: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c); see also Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).

### i. Lawsuits as predicate acts

Defendants maintain that the lawsuits described in the Complaint do not suffice as predicate RICO acts, and therefore the Plaintiffs have not set forth the pattern of racketeering activity required for a violation of § 1962(c).  A "pattern of racketeering activity" consists of at least two related predicate acts of racketeering activity, committed in a ten year period, which "amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).  A violation of the Hobbs Act, or any other "act or threat involving…extortion," falls within the definition of "racketeering activity" and can therefore

5

constitute the predicate acts necessary for a RICO action. See 18 U.S.C. § 1961(1) (listing offenses); 18 U.S.C. § 1951 (Hobbs Act); N.Y. Penal L. § 155.05 (New York extortion statute).

Under 18 U.S.C. § 1951, any person who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion" is subject to fines and/or imprisonment. 18 U.S.C. § 1951(a). Extortion is defined in this statute as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). "Extortion under the Hobbs Act consists of the use of wrongful means to achieve a wrongful objective." United States v. Clemente, 640 F.2d 1069, 1076 (2d Cir. 1981). The term "wrongful means" is not limited to acts that are themselves illegal; instead, the term incorporates the use of "actual or threatened force, violence, or fear," as described in the statute, to obtain property to which "the alleged extortionist has no lawful claim." See United States v. Enmons, 410 U.S. 396, 400 (1973). Thus, a broad spectrum of legitimate business activity, including the use of fear of economic loss, can constitute wrongful means if used to obtain property to which no lawful claim exists. See Clemente, 640 F.2d at 1077-78 ("fear of economic loss is not an inherently wrongful means; however, when employed to achieve a wrongful purpose, its "use" is wrongful); Turkish v. Kasenetz, 27 F.3d 23, 27 (2d Cir. 1994) (Hobbs Act violated where plaintiffs feared that if they failed to execute certain releases, defendants would withhold assets due to plaintiffs).

Plaintiffs argue that Defendants' lawsuits engendered a fear of economic loss. Several district courts in this Circuit, however, have held that the filing of a lawsuit, "even if it were meritless and for the purpose of harassment, would not as matter of law constitute extortion under New York or federal extortion law because it does not involve threat of force, violence, or

fear." Andrea Doreen Ltd. v. Bldg. Material Local Union 282, 299 F. Supp. 2d 129, 149 (E.D.N.Y. 2004); see also G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 259 (S.D.N.Y. 2001) ("Threats of litigation, and even threats of meritless litigation or the actual pursuit of such litigation, have been held not to constitute acts of extortion") (citing numerous cases); Nakahara v. Bal, 97 Civ. 2027 (DLC), 1998 U.S. Dist. LEXIS 825, *23-24 (S.D.N.Y. Jan. 30, 1998); Park South Assn. v. Fischbein, 626 F. Supp. 1108, 1112 (S.D.N.Y. 1986) (dismissing RICO action based on plaintiff's allegations that defendant's allegedly meritless lawsuit constituted extortion under state law and the Hobbs Act); Building Indus. Fund v. Local Union No. 3, IBEW, 992 F. Supp. 162, 176 n.9 (E.D.N.Y. 1996) (filing of litigation and administrative complaints does not constitute extortion under N.Y. Penal Law § 155.05).

Plaintiffs describe Defendants' conduct here as an "abuse of the judicial process" in an attempt to bring the conduct within the contours of a RICO predicate act. But each case Plaintiffs discuss in their memorandum of law relies on a finding that mail and/or wire fraud, not extortion, was the substantive violation that constituted the abuse of process. Plaintiffs have not cited any case where lawsuits alone, absent any other finding of fraud or other activity, were sufficient to support a RICO claim. According to Plaintiffs, the aforementioned cases are distinguishable because the lawsuits there were not "fraudulent"; the district courts cited above, however, explicitly stated that even "meritless litigation" could not constitute extortion. Consequently, this Court concludes that Plaintiffs have failed to set forth the pattern of racketeering activity required for a violation of § 1962(c), and Plaintiffs' first cause of action must therefore be dismissed.

### C. RICO conspiracy claim – 18 U.S.C. § 1962(d)

Plaintiffs also purport to state a claim under the conspiracy provision of RICO, 18 U.S.C. § 1962(d). Section 1962(d) makes it unlawful "to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). As described above, Plaintiffs' claims pursuant to § 1962(c) have been dismissed. Where, as here, the conspiracy claim relies on the same allegations as the § 1962(c) claim, "the dismissal of [the] § 1962(c) claim mandates dismissal of [the] conspiracy claim." McLoughlin v. Altman, 92 Civ. 8106 (KMW), 1993 U.S. Dist. LEXIS 12677, *15 (S.D.N.Y. 1993); see also FD Prop. Holding, Inc. v. US Traffic Corp., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002). Accordingly, Plaintiffs' second cause of action must therefore be dismissed.

### D. N.Y. Gen. Bus. L. § 349 claim

N.Y. Gen. Bus. L. § 349 declares that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." To state a claim for relief under Section 349, Plaintiffs must show that: "(1) the defendant's deceptive acts were directed at consumers; (2) the acts are misleading in a material way; and (3) the plaintiff has been injured as a result." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995)). The Second Circuit has held that the "gravamen of the complaint must be consumer injury or harm to the public interest." Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995).

Various state and federal courts in New York have defined consumers, for the purposes of this statute, as "those who purchase goods and services for personal, family or household use." See, e.g., In re Rezulin Prods. Liab. Litig., 392 F. Supp. 2d 597, 614 n.98 (S.D.N.Y. 2005)

8

(collecting cases). The Second Circuit has made clear that § 349 "was not intended to be a sword to be wielded in business-versus-business disputes…where the party asserting the claim is not acting in a consumer role." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 636 (2d Cir. 1996) (internal quotation omitted). This reading does not preclude the use of § 349 for any business versus business disputes, but it does limit the application of the statute for those types of claims. See Oswego, 85 N.Y.2d at 26-27; Cruz v. NYNEX Info. Resources, 263 A.D.2d 285, 290 (N.Y. App. Div. 2000). For example, claims made by "businesses engaged in arm's length transactions for services that are not available to the general public" do not fall within the remedial framework of § 349. See Black Radio Network, Inc. v. NYNEX Corp., 44 F. Supp. 2d 565, 583 (S.D.N.Y. 1999).

Defendants here argue that Plaintiffs do not qualify for protection under § 349 because they do not fit the definition of "consumer" for purposes of this statute; indeed, the Complaint alleges that NLS provides services to "small businesses," not individual consumers using products "for personal, family or household use." While the Complaint does not list the particular business affiliation of each of the Plaintiffs[3], it is clear that the allegedly fraudulent transactions and the purportedly problematic lawsuits at issue here between Plaintiffs and Defendants were business-related activities; simply put, the Complaint does not describe, nor can this Court envision, why any of these six Plaintiffs would have sought any of NLS's products or services for personal, family or household use. Further, there is no indication here of how these six individual episodes could be construed to have had a demonstrable impact on the public at large. Accordingly, Plaintiffs' cannot make out a cognizable claim under § 349, and their third cause of action must therefore be dismissed.

---

[3] The business affiliations of two of the Plaintiffs are made clear in the Complaint: Russis described is the principal of Rapid Cash Advances, Inc., a Florida corporation, and Kettler is described as the is the principal of Yodamo, Inc.

9

### E. Request for leave to amend complaint

Plaintiffs argue in their memorandum of law that "Defendants perjurious averments in the City Civil Court constituted a fraud on plaintiffs, and abundantly support claims for mail fraud and wire fraud," and accordingly seek leave to file an amended complaint in this action. Defendants object to this request in their reply memorandum of law on the ground that "neither the 127 paragraph Complaint nor plaintiffs' opposition papers indicate, or suggest in the slightest, any purported factual basis for such a claim, either as to the mails or use of telephone lines." Following oral argument in this case, Plaintiffs wrote a letter to the Court indicating their intention to amend the Complaint by March 15, 2007, but they have not done so to date.

The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006). Though Plaintiffs have not provided a detailed breakdown of how they would amend their complaint, they have signaled to the Court that they seek to add allegations of mail and wire fraud; we deem this representation sufficient in this instance to grant leave to re-plead. Accordingly, Plaintiffs' request for leave to amend their complaint is GRANTED; Plaintiffs have 30 days from the date of this order to make any amendments.

### III. Conclusion

For the reasons discussed above, it is hereby ordered that:
1. Defendants' motion to dismiss (docket number 15) is GRANTED.
2. Plaintiffs' request for leave to amend her complaint is GRANTED – Plaintiffs have 30 days from the date of this order to make any amendments.

The Clerk of the Court is directed to terminate docket number 15.

IT IS SO ORDERED.

Dated: September 2, 2008
White Plains, New York

Stephen C. Robinson
United States District Judge

10