**United States District Court**
**Southern District Of New York**



Melinda Serin, Judson Russ, Long Soui Lim,
Peri Kettler, Gordon Redner, and Thomas J. Smith,
                                    Plaintiffs

       v.

Northern Leasing Systems, Inc., Jay Cohen,
Rich Hahn, and Sara Krieger

                                    Defendants

06 Civ. 1625 (SCR)

JURY TRIAL DEMANDED

# Amended Complaint

## Nature of the Action

1.     This action arises out of defendants' racketeering scheme to intimidate out-of-state individuals into paying unwarranted sums of money by commencing fraudulent lawsuits in New York City Civil Court for relatively small sums of money, typically under $3,000. Defendants were aware well before bringing such actions that the documents underlying Defendants' claims against Plaintiffs were forged. Nevertheless, Defendants persisted in these small claims proceedings - and even obtained fraudulent default judgments - in order to harass, intimidate, and thereby extort money from Plaintiffs through threats of expensive long-distance litigation, of damage to credit rating, and/or entry of default judgments. On these and related grounds, Plaintiffs assert claims under the federal racketeering statute, 18 U.S.C. §1962, and New York's Anti-Deceptive Trade Practices Act, N.Y.G.B.L., §349, and seek compensatory, treble and/or punitive damages, together with attorneys' fees and expenses.

**Jurisdiction**

2.   Jurisdiction is proper under the federal racketeering statute, 18 U.S.C. §1964(c),

and the principles of supplementary jurisdiction, 28 U.S.C. §1367.  Defendants

conducted a racketeering scheme in interstate commerce, through the use of

interstate communication facilities.

**Parties**

3.   Ms. Melinda Serin is a resident of Washington, D.C.

4.   Mr. Judson Russ is a resident of Orlando, Florida.

5.   Mr. Long Soui Lim is a resident of Marietta, Georgia.

6.   Ms. Peri Kettler is a resident of Port Townsend, Washington.

7.   Mr. Gordon Redner is a resident of Duncanville, Texas.

8.   Mr. Thomas J. Smith is a resident of Waukesha, Wisconsin.

9.   Defendant Northern Leasing Systems, Inc., is a New York corporation with its

registered offices at 333 Seventh Avenue, New York, New York  10001, and

principal executive offices at 132 West 31 Street, 14th Floor, New York, New York

10001.

10.   Defendant Jay Cohen is and has been at all relevant times the President of the

Defendant Northern Leasing.

11.   Defendant Rich Hahn is and has been at all relevant times the Vice President for

Sales of the Defendant Northern Leasing.

12.   Defendant Sara Krieger is and has been at all relevant times the Vice President for Operations of the Defendant Northern Leasing.

**Factual Allegations**

13.   As summarized above, this case involves the systematic and repeated manner in which Defendants attempted to and did intimidate individuals located around the country in essentially a "shakedown" effort, in common parlance, to bully them into paying Defendants monies to which Defendants never were entitled. Based on forged documents, which Defendants knew were forged, Defendants sought to intimidate Plaintiffs with dunning letters and phone calls, telling them that it would be more expensive for them to dispute Defendants's claims in New York City Civil Court than it would be to pay off Defendants.

14.   Obviously, when Defendants commenced these legal proceedings, Plaintiffs faced significant hurdles to having their day in court, including excessive expenses of long-distance litigation, and multiple trips to New York. The relatively small amounts at issue would, as Defendants were aware, have prevented these Plaintiffs from obtaining counsel or from otherwise developing their defense. Further, Plaintiffs' potential witnesses were all in their respective local areas, and quite far from the New York City Civil Court. Obviously, Defendants' entire scheme was to designed to ensure that Plaintiffs had no real opportunity to raise defenses to Defendants' bogus lawsuits, so that the entry of a default judgment was all but certain.

15.   As this Court is well aware, once a judgment is entered in the New York City Civil Court, it would be almost impossible for Plaintiffs to challenge Defendants in the

subsequent judgment enforcement actions without incurring costs far in excess of the judgment itself.  Had Defendants filed the suits in Plaintiffs' home location to enforce their claims, Plaintiffs might have been able to present a defense, either through an attorney or by themselves.

16.    Further, the very entry of judgment in New York City Civil Court is automatically reported as an adverse entry in Plaintiffs' respective personal credit reports. This has significant impact on credit availability to Plaintiffs, including without limitation, denial of credit opportunities, increase in interest rates, and diverse other consequences.

17.    Thus, while Defendants commenced these actions claiming to be financiers under equipment finance leases with businesses, Defendants never sued the businesses themselves.

18.    As shown below through the facts of each Plaintiff, the repeated nature of the manner in which Defendants acted and their wrongful behavior set the pattern and practice of a scheme unlawful under both federal and state law.

Ms. Serin

19.    In early 2003, Ms. Serin started receiving phone calls and dunning letters from Defendants demanding sums allegedly due under a lease with Defendant Northern Leasing.  Ms. Serin had never heard of any of the Defendants, and never had any dealings with them.   Perplexed at the demand, Ms. Serin informed Defendants that she had never signed or guaranteed any such lease, and that any such signature was a forgery.

20.     After some communication with Defendants, Ms. Serin received a General Release from Northern Leasing, releasing her from any liabilities under the said lease.  The General Release was duly notarized on June 24, 2003.  "Ex. A," General Release.

21.     Nevertheless, Ms. Serin continued receiving dunning letters from Defendants. Eventually, on or about May 17, 2005, Defendants sent Ms. Serin a lawyer's notice demanding $2,478 under the same lease, and threatening to sue her in New York on her alleged guarantee.  In their notice, they claimed that Ms. Serin was personally responsible for the lease obligations, and enclosed a Summons and Verified Complaint.  Defendants offered to give her "one final opportunity" to pay them off within ten days.

22.     Ms. Serin assumed that this was an oversight which would be rectified in due course.

23.     However, by subsequent letter of June 15, 2005, Defendants informed Ms. Serin that they had "obtained a summons/complaint against" Ms. Serin from the New York City Civil Court.  Defendants now offered to settle for $743.

24.     In response, Ms. Serin called up Defendants and reminded them that the document was a forgery.  Several weeks later, by an "Important Notice" dated September 2, 2005, Defendants demanded a notarized affidavit of forgery from Ms. Serin, and at least 3 other pieces of evidence.  In what appears to be a standard form letter, they stated:

> In order for Northern Leasing . . . to pursue this matter, we require three (3) different proofs of your signature to compare to the signature on our lease.  These copies can

> include: a valid driver's license, a cancelled bank check, a copy of a passport, a social security card, an employee or school ID reflecting your signature, and the enclosed affidavit of forgery verifying your signature. Please ensure that the signature on your copy is legible.

These documents were to be sent to Defendants' offices in New York. When they received these documents, Defendants represented, they would conduct an inquiry and inform Ms. Serin accordingly:

> Upon receipt of the documents, an investigation will be conducted and a determination will be made of the fraud claim. You will be notified of our findings.

25.   On September 26, 2005, Ms. Serin sent the said affidavit of forgery, duly executed, and other documents demanded by Defendants. These documents were duly received by Defendants.

26.   However, Ms. Serin never received any "notification" from Defendants about their 'findings." Defendants never bothered conducting any "investigation", let alone a reasonable one, and in response to her phone inquiries, Defendants demanded $750 to mark the account as "closed" and $1,250 for removing all adverse entries on her credit report. Intriguingly, Defendants' representatives refused to make this offer in writing.

27.   Shortly thereafter, Defendants commenced an action against Ms. Serin here. In the Verified Complaint filed with the New York City Civil Court, Defendant Krieger falsely asserted, under penalties of perjury, that Ms. Serin had unconditionally and personally guaranteed the obligations under the said lease. Without revealing the General Release aforesaid, Defendants demanded $2,478 with

6

interest, and $495.60 towards attorneys' fees. "Ex. B," Summons and Verified Complaint.

28. Ms. Serin once again attempted to reason with Defendants. However, her repeated emails and telephone inquiries were simply met with a stonewalling response. All answers to her queries, she was told, were in the lease.

29. Finally, Ms. Serin received a notice from the Clerk, Civil Court of the City of New York, that Defendants' lawsuit against her was calendared for January 23, 2006. The official court notice stated that she had to appear in person in the Civil Court in New York (emphasis in original):

> THE CLERK CANNOT GRANT CHANGE IN THE SCHEDULED DATE OR TIME. YOU MUST APPEAR AND BRING THIS CARD WITH YOU.

30. Ms. Serin had no choice but to come to New York to avoid an unwarranted default judgment against her. For this, she had to take time off from her work, spend time and resources on travel, boarding, and lodging expenses in New York.

31. Ms. Serin did so, and came to New York to attend the City Civil Court as required on January 23, 2006. However, after making her wait for about an hour in Court, Defendants' representative came to the City Civil Court, and voluntarily withdrew their bogus lawsuit against her with prejudice and without costs.

32. Meanwhile, Defendants made derogatory entries in Ms. Serin's personal credit report. As a result, she suffered the usual consequences of such adverse reports, quite apart from from having to retain attorneys and incurring legal

7

expenses in New York.[1]  In addition, she was unable to secure a mortgage at affordable rates in order to purchase her first home.  This is, of course, in addition to her boarding, lodging, travel and legal expenses in New York.

<u>Mr. Judson Russ</u>

33.  In May 2002, Mr. Russ discovered that Defendant Northern Leasing had been electronically debiting funds from four bank accounts of his corporation, Rapid Cash Advances, Inc., in Orlando, Florida.  He promptly contacted Defendants demanding an explanation.  Defendants' representative informed him that someone had signed four equipment leases in the name of his corporation, and also signed his name to guarantee payments thereunder.  Mr. Russ demanded a copy of the four alleged leases and guarantees.

34.  Defendants sent him the alleged leases and guarantees.  Upon review, the forgery was clear and undisputable:  Mr. Russ was in Ukraine at the time when these documents were signed.  He so informed Defendants.

35.  Defendants thereupon sent him their standard form letter referred to above, demanding a notarized affidavit of forgery and 3 other pieces of evidence of signature.

36.  Mr. Russ filled out an Affidavit of Forgery as demanded by Defendants.  He presented evidence of his absence from the United States at that time, including copies of his passport stamped by the United States Immigration and

---

[1]Such damages include, for example, increased interest rates on existing debts, loss of promotional opportunities, curtailment and even possible refusal of credit.  P. McGeehan, *The Plastic Trap: Soaring Interest Compounds Credit Card Pain for Millions*, N.Y. Times, Nov. 21, 2004, at A1.

Naturalization Service, and even receipt of a cash withdrawal from an ATM in Odessa, Ukraine at that time.

37.    As before, Defendants never bothered conducting any "investigation", let alone a reasonable one, or making any "findings."  Nevertheless, Defendants insisted that the signatures on each of the leases as well as the guarantees were genuine, not forgeries.

38.    Mr. Russ closed his corporation's bank accounts wherefrom Defendants had been making the unauthorized withdrawals.  Thereupon, Defendants nonchalantly commenced debiting funds electronically from the account of another, completely separate corporation.  Information for this account was not listed on even the forged documents, and Defendants appear to have obtained this information unauthorizedly and in violation of law.

39.    Obviously, Defendants' electronic deductions from the said account were also unauthorized and illegal.

40.    Mr. Russ was forced to close his corporate bank accounts because of Defendants' unauthorized withdrawals.  Thereafter, Defendants commenced their dunning process, threatening their usual lawsuit in New York.

41.    Defendants then brought, under the name of Defendant Northern Leasing, four lawsuits against Mr. Russ personally in the New York City Civil Court, in a bid to bully him into paying them totally, $8,366.28 with costs.   In each of the Verified Complaints filed with the New York City Civil Court, Defendant Krieger falsely asserted, under penalties of perjury, that Mr. Russ had unconditionally and personally guaranteed the obligations under the leases.

42. Extremely significant, Defendants did <u>not</u> ever seek to sue Rapid Cash anywhere.  Rapid Cash - an active and viable Florida corporation at all relevant times - was not a party to the above proceedings in the New York City Civil Court.

43. Mr. Russ got notices from the City Civil Court requiring his personal attendance in Court in New York, whereupon he had to retain attorneys in New York.[2]

44. In addition, Defendants made derogatory entries in Mr. Russ's <u>personal</u> credit report.

45. As a result, Mr. Russ suffered the consequences of such adverse reports.

46. Mr. Russ had to incur travel, boarding, lodging and legal expenses in New York. In addition, At the time Defendants made several adverse entries on his <u>personal</u> credit report, Mr. Russ was attempting to buy a house, and his loan application was denied by the bank due to these adverse entries; instead, he had to settle for another home at a less desirable location at a higher interest rate. Furthermore, Mr. Russ was denied leases for his businesses due to these

---

[2]As already seen, Mr. Russ had already submitted indisputable evidence of forgery to Defendants long before they even commenced these actions.  Nevertheless, Defendants not only commenced these lawsuits, but insisted on proceeding with the litigation, expecting a default judgment and not anticipating that he would spend the time and resources to come personally.  Defendants refused to consent to even an adjournment of the evidentiary hearing, whereupon Mr. Russ had to come all the way from Florida. Mr. Russ did so, and testified at the hearing in the New York City Civil Court, much to Defendants' shock and dismay.  Defendants had no evidence whatsoever to dispute Mr. Russ's assertion of forgery, whereupon all four of Defendants' lawsuits were dismissed by Judge Barbara Jaffe by an order dated December 4, 2006.  <u>Northern Leasing Systems, Inc. V. Judson Russ</u>, 47733 CV 2003, 47737CVN2003, 47754CVN2003, 47755CVN03 (N.Y. City Civ. Ct.).

adverse entries.  Moreover, Defendants took about $10,000 from his corporate accounts before Mr. Russ closed those accounts.

Mr. Long Soui Lim

47.   In May of 2001, Mr. Lim received a copy of a Summons and Verified Complaint filed by Defendants in the City Civil Court demanding $2,060.26 from him personally.  That copy had been mailed to Mr. Lim's old address at 3251 Old Concord Road, Smyrna, Georgia  30082, and forwarded to him at his new address at 2105 Taylor Meadows Way, Marietta, Georgia  30008.

48.   Immediately upon receipt of that Summons and Complaint, Mr. Lim called and informed Defendants that the signatures on the guarantee underlying that action were a forgery.

49.   Defendants demanded that Mr. Lim send him a copy of identification documents to verify his signature and identity.  Mr. Lim promptly sent a copy of his driver's license and other documents, which reflected the new address at Marietta, Georgia.

50.   Defendants never bothered conducting any "investigation", let alone a reasonable one.  Mr. Lim never heard back from Defendants.

51.   On or about July 9, 2001, Mr. Lim sent two letters to Defendants, one addressed to Defendant Krieger, and the other to Ms. Erica Cohen, Esq., the attorney whose name appeared on the Summons and Complaint. He demanded the return of money wrongfully collected by Defendants, and an explanation for the forgery and Defendants' actions thereon.

52.   Neither Defendant Krieger nor anyone else responded to Mr. Lim's letters.

53.  More than two years thereafter, according to records of the New York City Civil Court, Defendants purported to serve Mr. Lim with another Summons and Complaint. According to the Affirmation of Service, a Summons and Complaint dated July 29, 2003, was delivered on or about October 20, 2003, once again to Mr. Lim's old address at 3251 Old Concord Road, Smyrna, Georgia  30082.

54.  Mr. Lim never received a copy of this Summons and Complaint.

55.  Indisputably, Defendants were well aware of Mr. Lim's current address at Marietta, Georgia from previous correspondence, and from his driver's license. However, Defendants purported to effect service of process at his old address.

56.  Consequently, Mr. Lim was not even aware of Defendants' lawsuit against him in the City Civil Court in New York.

57.  Defendants proceeded to enter a default judgment against Mr. Lim in the sum of $3,253.63 in May 2004.

58.  Mr. Lim learned of the said entry of default judgment against him in the Civil Court of the City of New York, in August 2004, when he applied for a credit card with a financial institution.  The financial institution denied him credit due to this judgment.

59.  On or about August 31, 2004, Mr. Lim sent a letter to Defendant Krieger strongly objecting to the default judgment, noting his surprise and the wrongful nature of the suit.  Further, he said:

> This is a very serious matter; therefore, your immediate attention and explanation is a must.

Mr. Lim reiterated the above facts, confirming once again that he had "never

seen the lease agreement nor [had he] sign[ed] it." Further, he recorded:

> It has been more than three years already, I have not hear
> [sic, heard] or get [sic, received] a reply from Mr. James, Ms.
> Erika Cohen or you. Not only has this matter has not been
> resolved, but it has been escalated. I will hold you
> responsible for this fraud.
> I will allow you ten days to clear my name and respond to
> my letter. . . . I promise you that I will bring justice to fix your
> corruption.

60. As before, Defendants never bothered responding to that letter either.

61. Mr. Lim then called Northern Leasing, and asked for a copy of the judgment.

Defendants' representative refused to send such a copy unless Mr. Lim was

willing to satisfy this judgment.

62. Thereafter, Mr. Lim wrote to the Court Clerk of the New York City Civil Court

about this fraud. However, he was advised that he would need to hire an

attorney in New York, and set aside this judgment which had been causing, and

continued to cause, him serious damages by adversely affecting his credit rating.

63. From the Court files, it is clear that Defendants did not advise the City Civil Court

that (a) Mr. Lim was not residing at Smyrna, Georgia; and (b) Mr. Lim had

specifically asserted, with supporting documents, that Defendants' entire claim

was predicated on a forged document. Instead, concealed these material facts

and further, Defendants deliberately used Mr. Lim's old address for service of

process and thereby secure a judgment on default.

64. Mr. Lim had to retain a lawyer and incur legal expenses in New York to set aside the default judgment.[3]

65. Meanwhile, Defendants made derogatory entries in his <u>personal</u> credit reports. As a result, he has suffered the usual consequences of such adverse reports, apart from having to retain attorneys and incurring legal expenses in New York. Defendants ruined his credit, sued him, and even obtained a default judgment based on documents which were clearly forged.

<u>Mr. Gordon Redner</u>

66. In early 2004, Mr. Redner became aware of Defendants when Defendants commenced electronic withdrawals from his bank account and Defendant Northern Leasing's name appeared on his bank statement.  He never had any transactions with Defendant Northern Leasing.

67. Mr. Redner got Defendant Northern Leasing's telephone number from the internet, and called Defendants to inquire about the deduction.  Thereupon, they claimed to be lessors, and sent him a copy of a lease with his alleged signature guarantee thereon.

---

[3]Even when the manifest errors were pointed out to Defendants, they refused to voluntarily vacate the default judgment against Mr. Lim, let alone dismiss the lawsuit. As a result, Mr. Lim's attorneys had to commence motion practice, whereupon Defendants had no choice but to acknowledge that the default judgment ought to be vacated.  Even so, Defendants insisted on proceeding with the lawsuit against Mr. Lim, and even sought to compel Mr. Lim to come to New York for a deposition on their bogus claim for $3,253.  Mr. Lim's attorneys had to commence motion practice once again seek dismissal for insufficient service and want of jurisdiction.  The action was dismissed by Judge Arthur F. Engoron.  <u>Northern Leasing Systems, Inc. V. Long Soui Lim</u>, 57937 CV 2003 (N.Y. City Civ. Ct.) (Order of April 20, 2006).

68. Mr. Redner had never even seen this lease before.  Clearly, his signature was forged on this document.

69. Further, obviously, Mr. Redner never signed any pre-authorization for Defendant Northern Leasing for automatic electronic deduction from any bank account. Nevertheless, Defendants routinely deducted funds electronically, through the use of interstate wires, from his bank account at Duncanville, Texas.

70. Eventually, Mr. Redner had to close his bank account to prevent such unauthorized withdrawal.

71. Thereafter, Defendants commenced their dunning process, threatening their usual lawsuit in New York.

72. Meanwhile, Defendants made derogatory entries in Mr. Redner's personal credit reports.  As a result, he has suffered the usual consequences of such adverse reports, apart from having to retain attorneys and incurring legal expenses in New York.

Ms. Peri Kettler

73. Ms. Kettler was the principal of Yodamo, Inc., a small business in Port Townsend, Washington.  On or about January 9, 2002, Yodamo received a standard form one page lease agreement with Defendants through UPS Next Day Air Service.  Yodamo signed and returned the original of this lease to the UPS driver (who was waiting) as advised by Northern Leasing's representative, and kept a copy of the said document.

15

74. Thereafter, Yodamo received equipment different from that specified in the lease, and worthless for Yodamo.  Yodamo complained, whereupon Defendants claimed that the lease was noncancellable, and they would send a copy.

75. About three weeks later, on or about February 1, 2002, Yodamo received a four page lease from Defendants, which was clearly not the document that Yodamo had signed.  Ms. Kettler's signature had been forged as guarantor on the lease.

76. On or about March 11, 2002, Yodamo returned the equipment to Defendant Northern Leasing with a notice of cancellation of the lease for fraudulent misrepresentation.  Defendants refused the equipment, but continued their automatic deduction from Yodamo's bank account month after month. Eventually, in August 2003, Yodamo closed its bank account; meanwhile, Defendants had wrongfully collected about $900 cumulatively.

77. Thereafter, Defendants commenced their dunning process, threatening their usual lawsuit in New York.  In response, Ms. Kettler reminded them of the above facts.  But to no avail.

78. In the Verified Complaint filed with the New York City Civil Court, Defendant Krieger falsely asserted, under penalties of perjury, that Ms. Kettler had unconditionally and personally guaranteed the lease obligations, and demanded $1,390.26 with interest and costs[4].

79. Once again, this action was only against Ms. Kettler, and Defendants never ever sought to pursue their alleged claim against Yodamo anywhere.

_____

[4]After the default judgment was vacated, proceedings in this case are currently stayed.

16

80.     In addition, Defendants made adverse entries in Ms. Kettler's <u>personal</u> credit report.  As a result, Ms. Kettler sustained damages.

<u>Thomas J. Smith</u>

81.     Mr. Smith is a resident of Waukesha, Wisconsin.

82.     In Winter 2002, Mr. Smith started receiving dunning calls and letters from Defendants, purportedly based on his signature guaranteeing an alleged equipment lease.  Mr. Smith informed them that he never signed any such document, and had no agreement with Defendants.[5]

83.     Nevertheless, Defendants commenced an action against Mr. Smith in New York City Civil Court.  In the Verified Complaint filed with the New York City Civil Court, Defendant Krieger falsely asserted, under penalties of perjury, that Mr. Smith had unconditionally and personally guaranteed the lease obligations, and demanded $1,764 with interest, and $352.80 towards attorneys' fees[6].

84.     In addition, Defendants made an adverse entry in Mr. Smith's <u>personal</u> credit report.  As a result, Mr. Smith suffered damages.

---

[5]Details of Defendants' communication with Mr. Smith are substantially similar to those of the other Plaintiffs.

[6]Mr. Smith filed a motion for dismissal on the ground of forum non convenience, and Plaintiff moved for summary judgment.  Judge Barbara Jaffe denied both motions motion stating that "although the evidence submitted on the motion is insufficient to warrant a dismissal of the action, it is sufficient to raise a triable issue of fact as to whether Defendant entered into a contract with Plaintiff, which issue precludes a summary judgment".  <u>Northern Leasing Systems, Inc. V. Tom Smith</u>, 39815 CV 2004 (N.Y. City Civ. Ct.) (Order of December 4, 2006).

## COUNT I

### (RICO, 18 U.S.C. §1962(c))

85.   The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

86.   The association of Defendants, certain attorneys retained by Defendants, salesmen and others whose identities are known only to Defendants at this time (cumulatively, the "Conspirators"), constituted an enterprise within the meaning of 18 U.S.C. §1961(c), which enterprise was engaged in, and whose activities affected, interstate and foreign commerce.  This enterprise was continuous in that it lasted for more than two years, had an ascertainable structure, and was distinct from the predicate offenses alleged here.

87.   Each Defendant is a person within the meaning of 18 U.S.C. §1961(3) and separate from the enterprise.

88.   Defendant Cohen, the President of the Defendant Northern Leasing, was in charge of all its operations.  As such, he set up, orchestrated, and supervised the entire racketeering scheme at issue.

89.   Defendant Hahn, the Vice President for Sales of the Defendant Northern Leasing, was the supervisor of its internal account managers and customer service.  As such, he was in-charge of monitoring the racketeering scheme at issue.

90.   Defendant Krieger, the Vice President for Operations of the Defendant Northern Leasing, was responsible for several aspects of its day-to-day operations and

sales. In addition, she routinely verified the fraudulent complaints filed in the New York City Civil Court under penalties of perjury.

91.   Defendants' scienter is clearly established from their pattern and practices at issue. Moreover, Defendants' continued repeating these false statements nonchalantly even after knowing of their falsity.[7]

92.   Defendants participated, and conspired with others (including their attorneys and others whose identities are known only to Defendants at this time) to participate, in the affairs of the aforementioned enterprise through a pattern of racketeering activity, as more fully set forth below, an all in violation of 18 U.S.C. §§ 1962©).

Mail Fraud, Violations of 18 U.S.C. §1341

93.   Defendants and the other members of the enterprise, having devised or intending to devise the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed in post office(s) or authorized depository for mail matter, several letters and/or packages to be sent or delivered by the Postal Service, and/or took or received therefrom, letters and/or packages, or knowingly caused to be

---

[7]Thus, for example, Defendant Krieger boldly asserted under oath in State court filings that Mr. Russ's passport and visa entries were "inconclusive as to whether Mr. Russ was out of the country at the time the leases were signed". Indeed, even in this very case, Defendant Krieger swore that Ms. Serin

> is or was the principal of Jim Cameron's Garage Doors, a
> California business located in West Hills. Ms. Serin signed
> an Equipment Finance Lease with NLS on August 15, 2001.

Krieger Aff., July 14, 2006. This was about seven months after Defendants themselves had voluntarily dismissed, with prejudice and without costs, all claims against Ms. Serin, and 3 years after Defendants had given a "General Release" to Ms. Serin.

delivered by mail or such carrier according to the direction thereon, or at the place at which it was directed to be delivered by the addressee such letters and/or packages.  Specifically,

a.   On or about September 27, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

b.   On or about March 1, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

c.   On or about June 15, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

d.   On or about September 2, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

e.   On or about September 9, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

f.   On or about August 14, 2002, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Russ in Florida;

g.   On or about August 2, 2004, the Clerk of the New York City Civil Court, County of New York, through the use of interstate mail, mailed a letter to Mr. Russ in Florida, requiring him to appear in New York in connection with Defendants' bogus lawsuit;

h.      On or about September 10, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Lim in Georgia;

i.      On or about January 27, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Lim in Georgia;

j.      On or about February 14, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Lim in Georgia;

k.      On or about January 24, 2002, Defendants in New York, through the use of interstate mail, mailed the alleged lease to Ms. Kettler in Washington;

l.      On or about March 11, 2002, Ms. Kettler in Washington, through the use of interstate mail, mailed the equipment with a notice of termination to Defendants in New York;

m.      On or about May 17, 2002, Ms. Kettler in Washington, through the use of interstate mail, mailed by certified mail postage prepaid a notice of termination to Defendants in New York;

n.      On or about June 3, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas;

o.      On or about June 8, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas;

p.      On or about September 13, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas

q.      On or about June 16, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas;

r.     On or about February 5, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

s.     On or about February 24, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

t.     On or about March 4, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

u.     On or about March 19, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

v.     On or about March 29, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

w.    On or about April 29, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin.

94.    Each participant knew, expected, reasonably foresaw, and intended that the facilities of interstate mail would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

95.    The Conspirators wilfully and with intent to mislead concealed the material facts from the New York City Civil Court and from Plaintiffs as referred to above.

96.    The material misrepresentations were made by Conspirators to the New York City Civil Court concerning Plaintiffs, and to Plaintiffs, Ms. Serin in Washingtion, District of Columbia, Mr. Russ in Florida, Mr. Lim in Georgia, Ms. Kettler in Washington, and Mr. Smith in Wisconsin.

97.    The New York City Civil Court, and Plaintiffs, relied upon Defendants' misrepresentations, and such reliance was reasonable.

98.     Defendants' perjurious misconduct was a fraud on the court and on Plaintiffs.

Extortion Under The Hobbs Act, 18 U.S.C. §1951

99.     Defendants had and implemented a practice and pattern of starting bogus legal
proceedings based on false representations and solely for the purpose of injuring
Plaintiffs and recovering unwarranted sums through extortion.

100.    For this purpose, Defendants affirmatively misrepresented in filings with the City
Civil Court in New York, under penalties of perjury, that

a.      Ms. Serin "unconditionally guaranteed all of the merchant's obligations to"
Defendant Northern Leasing;

b.       Ms. Serin "personally guaranteed" a "non-cancelable equipment lease
agreement" with Defendant Northern Leasing;

c.      Ms. Serin "consented" to litigation in New York;

d.      There was "presently due and owing" from Ms. Serin to Northern Leasing
the sum of $2,478 with interest thereon from March 1, 2002;

e.      There "is due and owing" from Ms. Serin to Northern Leasing attorneys'
fees in the sum of $495.60;

101.    Defendants similarly affirmatively misrepresented in 4 different filings with the
City Civil Court in New York, under penalties of perjury, that in each of those 4
cases,

a.      Mr. Russ "unconditionally guaranteed all of the merchant's obligations to"
Defendant Northern Leasing;

b.       Ms. Russ "personally guaranteed" a "non-cancelable equipment lease
agreement" with Defendant Northern Leasing;

    c.      Ms. Russ "consented" to litigation in New York;

    d.      There was "presently due and owing" from Ms. Russ to Northern Leasing the sum of $1,770 with interest thereon;

    e.      There "is due and owing" from Ms. Russ to Northern Leasing attorneys' fees in the sum of $354;

102.   Defendants similarly affirmatively misrepresented in filings with the City Civil Court in New York, under penalties of perjury, that

    a.      Mr. Lim "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;

    b.       Mr. Lim "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

    c.      Mr. Lim "consented" to litigation in New York;

    d.      There was "presently due and owing" from Mr. Lim to Northern Leasing the sum of $2,060.26 with interest thereon;

    e.      There "is due and owing" from Mr. Lim to Northern Leasing attorneys' fees in the sum of $412.05;

    f.      That Defendants were entitled to a default judgment in the amount of $3,253.63 against Mr. Lim.

103.   Defendants similarly affirmatively misrepresented in filings with the City Civil Court in New York, under penalties of perjury, that

    a.      Ms. Kettler "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;

    b.    Ms. Kettler "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

    c.    Ms. Kettler "consented" to litigation in New York;

    d.    There was "presently due and owing" from Ms. Kettler to Northern Leasing the sum of $1,158.55 with interest thereon;

    e.    There "is due and owing" from Ms. Kettler to Northern Leasing attorneys' fees in the sum of $231.71;

104.    Defendants similarly affirmatively misrepresented in filings with the City Civil Court in New York, under penalties of perjury, that

    a.    Mr. Smith "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;

    b.    Mr. Smith "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

    c.    Mr. Smith "consented" to litigation in New York;

    d.    There was "presently due and owing" from Mr. Smith to Northern Leasing the sum of $1,764 with interest thereon;

    e.    There "is due and owing" from Mr. Smith to Northern Leasing attorneys' fees in the sum of $352.

105.    Defendants also threatened Mr. Redner with a similar lawsuit in New York City Civil Court.  However, Mr. Redner retained attorneys in New York, and submitted an affidavit in the class action referred to above.  Presumably as a result, Defendants have not commenced their threatened lawsuit.

25

106. Defendants knew, and should have known, that the above representations were false when made. Defendants' knowing fraud upon, and/or their intentional misrepresentations to, the Court deprived the litigation of its legitimacy.

107. Nevertheless, Defendants commenced at least 5 actions in The New York City Civil Court with the aforesaid false statements. Based upon such actions, they attempted to extort undeserved sums of money from Plaintiffs.

108. Thereby, Defendants used wrongful means for a wrongful objective, with an intent to obtain that which in justice and equity Defendants were not entitled to, and knew that they were not entitled to, receive.

109. Defendants affected interstate commerce by extortion and/or attempted or conspired so to do.

110. Defendants attempted to extort property from each Plaintiff, with each Plaintiff's consent, induced by wrongful use of actual or threatened fear of economic loss and/or injury. Such loss or injury included, without limitation, legal expenses in long-distance litigation, damage to credit rating, and/or entry of default judgments which could remain valid and enforceable for upto 20 years.

<u>Extortion Under New York Law</u>

111. Plaintiffs incorporate the aforesaid allegations herein by reference.

112. Defendants intended to deprive Plaintiffs of property or to appropriate the same to themselves. They wrongfully took or obtained, or attempted to take or obtain, such property from each Plaintiff.

113. Defendants wrongfully attempted to take such property by compelling or inducing Plaintiffs and other persons to deliver such property to Defendants. They did so

by attempting to induce a fear that, if the property is not so delivered, Defendants will cause damage to Plaintiffs' property, or engage in other conduct constituting a crime, or testify or provide false information with respect to Defendants' legal claim.

114. Thereby, Defendants committed the offense of extortion under New York's Extortion Act, N.Y. Penal Law, §155.05.

115. Defendants' extortions are chargeable under New York law and punishable by imprisonment for more than one year.  As such, they constitute predicate racketeering acts under 18 U.S.C. §1961.

Pattern of Racketeering Activity

116. The aforesaid acts had the same or similar purposes, results, participants, victims, and/or methods of commission, and were otherwise interrelated by distinguishing characteristics and were not isolated events.  The pattern of racketeering activity engaged in by Defendants consisted of a scheme executed by the aforementioned conspirators from January 1998, and continuing to date, to extort and collect unwarranted sums through litigation based on perjurious averments or threats thereof.  That pattern included multiple predicate acts of extortion.

117. The racketeering acts identified hereinabove were related to one another and formed a pattern of racketeering activity in that they: (a) were in furtherance of a common goal, including the goal of profiting illegally by improperly commencing or threatening fraudulent litigation; (b) used similar methods and standard form letters to intimidate; (c) had similar participants; and (d) had similar victims.

118.   The acts of racketeering activity extended over a substantial period of time from January 1998, and continue to this day.  They were sufficiently continuous to form a pattern of racketeering activity.

119.   Defendants participated in the scheme through themselves, and, in the case of Northern Leasing, its representatives, salesmen, employees and officers, and others whose identities are known only to Defendants at this time.  Defendants benefitted enormously by the profits they made from the scheme, and the various amounts collected unlawfully.  The Conspirators knew, enabled, and actively participated in the racketeering scheme.

120.   Defendants engaged in a pattern of racketeering activity consisting of extortion.  The predicate acts occurred over a period of well over 6 years.  Defendants received income from these patterns in the form of unwarranted payments.  Defendants disbursed these funds amongst themselves in a manner known only to them.

121.   Each Defendants' participation was critical to the racketeering scheme. They enabled, conducted, maintained, aided, and abetted the racketeering scheme by:

   a.   Drafting and preparing letters, "Important Notices," Verified Complaints, false affidavits, and other documents;

   b.   Supervising, conducting, and monitoring the conduct of the fraudulent scheme;

   c.   Concealing the scheme or, alternatively, consciously avoiding discovery of the scheme;

      d.     encouraging third parties to participate in the racketeering scheme;

      e.     wilfully violating, or being recklessly indifferent to, mandatory requirements of federal law and procedure concerning racketeering, and the misuse of the judicial system;

      f.     Wilfully violating or being recklessly indifferent to their legal obligations to verify the legality of the alleged lease agreements to ensure that they were not fraudulently procured; and

      g.     Wilfully violating or being recklessly indifferent to their legal obligations to conduct "due diligence" with respect to the accounts at issue.

122.   The precise role played by each Defendant is known only to Defendants at this time.  Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of Defendants.

123.   Plaintiffs have been injured in their business or property by reason of Defendants' violation of 18 U.S.C. §1962(c).  As a direct and proximate result of these violations, Plaintiffs have been injured in that, <u>inter alia</u>, they had to waste time and resources in responding to Defendants's dunning calls, threats, lawsuit in New York, retaining lawyers and incurring legal expenses therefor.  In addition, Plaintiffs' credit rating has also been adversely affected, and they have suffered damages as a consequence as detailed above.

124.   By reason of this violation of 18 U.S.C. §1964(c), Plaintiffs are entitled to recover from Defendants three times their damages plus pre- and post- judgment interest, costs and attorneys' fees.

**COUNT II**

(Violation of 18 U.S.C. § 1962(d))

125.   The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

126.   In violation of 18 U.S.C. § 1962(d), Defendants and others whose identities are known only to Defendants at this time conspired to violate the provisions of 18 U.S.C. §1962(c) in that, beginning no later than January 1998 and continuing through today, they knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above.  The volume and frequency of the transactions, and the continuance of the scheme at issue for over 6 years, could not have occurred without the consent and knowing connivance of Defendants and other Conspirators.

127.   As part of and in furtherance of their conspiracy, each Defendant agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that they were in furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, each Defendant agreed to and did commit at least two predicate acts of racketeering.  Further, each Defendant's actions are attributable to the other Defendants.

128.   None of the Defendants have withdrawn, or otherwise dissociated themselves from the conspiracy at issue or the other Conspirators.  Defendants have also continued filing of perjurious affidavits under oath, abundantly showing the continuance of this conspiracy till today.

129.  Plaintiffs have been injured in business or property by reason of Defendant's violations of 18 U.S.C. S 1962(d).

130.  As a direct and proximate result of each Defendant's violations, Plaintiffs have been injured as aforesaid.

131.  By reason of Defendants's violation of 18 U.S.C. §1964(d), Plaintiffs are entitled to three times their damages plus interest, costs and attorneys' fees.

**COUNT III**

**(N.Y. General Business Law Article 22-A)**

132.  Plaintiffs incorporate the contents of the paragraphs hereinabove.

133.  None of the Plaintiffs had any commercial or other relationship with Defendants or any of them.  None of the Plaintiffs signed any document, whether lease or otherwise, signifying a relationship with Defendants or any of them.  None of the Plaintiffs sought any of Defendant Northern Leasing's alleged products or services for any purpose whatsoever.  Plaintiffs were ordinary citizens and as such, "consumers" for purposes of consumer protection statutes.

134.  Further, Defendants nonchalantly misused the state court system, and routinely made false and baseless statements with reckless abandon, and even after knowing the falsity of such statements.  Litigants depend on the integrity of the conduct of participants in civil proceedings through disputing the validity of their opponents' claims to impose or resist civil liability.  For a litigant and its Conspirators to concoct testimony or make false statements under oath even after they know it is wholly fabricated and baseless is an unacceptable fraud on

31

the court.  Defendants' conduct at issue was thus, a deceptive and/or unfair practice which affected, and continues to affect, the public at large.

135.   Defendants committed deceptive acts or practices in the conduct of business in New York.  Their conduct was unlawful and of a recurring nature, and strongly affected the public interest.  By its conduct aforesaid, defendants violated Article 22-A (Section 349) of New York's General Business Law.

136.   Plaintiffs sustained damages due to the defendants' violation.  Accordingly, under Section 349(h) of New York's General Business Law, Plaintiffs are entitled to recover compensatory and treble damages and reasonable attorneys' fees and expenses.  In addition, Plaintiffs are also entitled to an injunction against Defendants preventing them from continuing the aforesaid deceptive practices.

## Jury Demand

137.   Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs demand judgment against Defendants on each

Count aforesaid:

a.   awarding compensatory, punitive, and/or treble damages to Plaintiffs in

such amount, not less than $10 million, as may be determined after

discovery and trial;

b.   awarding Plaintiffs the costs of this action, including reasonable attorneys'

fees and expenses, experts' fees and other disbursements; and

c.   for such further and other reliefs as may be just and proper.

Dated:      New York, New York          **Chittur & Associates, P.C.**
            October 1, 2008

By:  Krishnan Chittur, Esq. (KC9258)
286 Madison Avenue Suite 1100
New York, NY 10017
Tel: (212) 370-0447

Attorneys for Plaintiffs

# Exhibit A

# GENERAL RELEASE

Northern Leasing Systems, Inc. and its predecessors and successors, respective heirs, administrators, executors, successors and assigns and any and all other persons, firms, and corporations who have acted or who might be claimed to have acted, in concert with, or on behalf of them or any of them (collectively, the "RELEASORS") do hereby remise, release and forever discharge **MELINDA J. SERIN** and **JIM CAMERON GARAGE DOORS** his/her predecessors and subsidiaries, divisions, parents, assigns and its respective subsidiaries and affiliates, the officers, directors, employees, attorneys and agents, past and present, for each of the foregoing, together with his respective heirs, administrators, executors, successors and assigns and any all other persons, firms and corporations who have acted or who might be claimed to have acted, in concert with, or on behalf of them or any of them (collectively, the "RELEASEES") of and from any and all manner of action and causes of action, suits, debts, claims and demands whatsoever, in law or in equity, in connection with all matters or contractual obligations, known or unknown, in any way relating to the lease agreement number **0228846** between Northern Leasing Systems, Inc. and **JIM CAMERON GARAGE DOORS** as lessee and **MELINDA SERIN** as guarantor. IN WITNESS WHEREOF, the undersigned have caused this RELEASE to be executed as of the 24th day of June 2003

NORTHERN LEASING SYSTEMS, INC.

_Bonita Burton_
Authorized Signature

_Bonita Burton    Legal Rep_
Print Name                    Title

STATE OF NEW YORK   }
                    } s.s.:
COUNTY OF NEW YORK }

ARACELIS DIAZ
Notary Public, State Of New York
No. 01DI6043033
Qualified In New York County
Commission Expires 06/05/2006

On this 24 day of _June_____,2003, before me personally came
_Bonita Burton_, to me known and known to me by the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he/she executed the same, and who further stated that he/she is a duly authorized representative of Northern Leasing Systems, Inc., and that this Release is, and shall be, binding on Northern Leasing Systems, Inc.

_Aracelis D_
Notary Public

**Exhibit B**

923

CIVIL COURT OF THE CITY OF NEW YORK          Index No.
COUNTY OF NEW YORK

NORTHERN LEASING SYSTEMS, INC.                    )
                                                  )
                        Plaintiff,                )     **SUMMONS**
                                                  )
                    -against-                     )     Plaintiff's Address:
                                                  )     132 W 31st Street
MELINDA J. SERIN A/K/A MELINDA SERIN              )     New York, NY 10001
                                                  )
                        Defendant(s).             )     The basis of the venue selected is
                                                  )     plaintiff's place of business
                                                  )

To the above-named defendant:

        YOU ARE HEREBY SUMMONED to appear in the Civil Court of the City of New York, County of
New York at the office of the Clerk of the said Court at 111 Centre Street, New York City, 10013, in the County
of New York and State of New York, within the time provided by law as noted below and to file your answer to
the annexed complaint with the Clerk; upon your failure to answer, judgment will be taken against you for the
remaining balance due of **$2,478.00** with interest thereon from 3/1/2002, and in addition there is due attorneys'
fees of **$495.60**, making a total sum due from defendant(s) to plaintiff of **$2,973.60** together with the costs of
this action.

  Dated: New York County, NY, May 17, 2005

Defendant's Address:
4101 GARRISON ST NW, WASHINGTON, DC 20016           **JOSEPH I. SUSSMAN**
                                                    Attorney for plaintiff
Defendant's Business Address:                       132 West 31st Street, 13th Floor
JIM CAMERON GARAGE DOORS                            New York, NY 100001
7800 PONCE AVE, WEST HILLS, CA, 91304               (212) 502-6449

        NOTE: The law provides that:   (a) If this summons is served by its delivery to you personally within
the City of New York, you must appear and answer within TWENTY days after such service; or  (b) if this
summons is served by delivery to any person other than you personally, or is served outside the City of New
York, or by publication, or by any means other than personal delivery to you within the City of New York,
you're allowed THIRTY days after proof of service thereof is filed with the Clerk of this Court within which to
appear and answer.

        (c) Where a defendant appears by an attorney, a copy of his answer shall be served upon the plaintiff's
attorney, or upon the plaintiff if the plaintiff appears in person, at or before the time of filing the original answer
with proof of service thereof.

CIVIL COURT OF THE CITY OF NEW YORK         Index No.
COUNTY OF NEW YORK

---

NORTHERN LEASING SYSTEMS, INC.       )
                                              )
              Plaintiff,             )    **VERIFIED COMPLAINT**
                                              )
              -against-               )
                                              )
MELINDA J. SERIN A/K/A MELINDA SERIN     )
                                              )
              Defendant(s).         )
                                              )

---

PLAINTIFF, Northern Leasing Systems, Inc. ("Plaintiff"), by its attorney JOSEPH I. SUSSMAN, as and for its complaint against Defendant herein, alleges as follows:

### PARTIES

1.      Plaintiff was and is a corporation engaged in the lease finance business, is duly organized and existing under the laws of the State of New York, and maintains its principal office in New York City, at 132 West 31st. Street, New York, New York 10001.

2.      Upon information and belief, Defendant MELINDA J. SERIN ("defendant") was and is an individual residing in the State of DC.

### FACTUAL ALLEGATIONS

3.      In the course of its business, plaintiff leases credit card verification equipment ("equipment") to merchants who wish to utilize credit card transactions in their businesses.

4.      The equipment is chosen by the merchant and provided by an independent third party vendor.

5.      Pursuant to the business described above, on 9/7/2001, plaintiff entered into a non-cancelable equipment lease agreement ("agreement") with JIM CAMERON GARAGE DOORS ("the merchant"), payment on which was personally guaranteed by defendant. A copy of the agreement is annexed hereto as Exhibit A.

6.      Defendant unconditionally guaranteed all of the merchant's obligations to plaintiff under the agreement, including the basic monthly lease payment by the merchant to plaintiff of $59.00, plus applicable taxes, for a period of 48 months.

7.      Further, the agreement provides that in the event of a default, plaintiff may require immediate payment of all amounts then due plus the unpaid balance of amounts due for the original term of the agreement.

8.      In the event of a default in payment under the agreement, the agreement provides that the merchant will pay plaintiff's reasonable attorneys' fees.

9.      The merchant defaulted on the monthly payments under the agreement. The last payment under the agreement was made by the merchant on 2/1/2002, for a total amount paid of $354.00.

## JURISDICTION

10.    The agreement provides, and defendant consented thereto, that all actions, proceedings, or litigation with respect to the obligations under the agreement shall be instituted and prosecuted in the Courts of the State of New York, the jurisdiction in which plaintiff maintains its principal place of business.

## AS AND FOR A FIRST CAUSE OF ACTION

11.    Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs "1" through "10" of the verified complaint with the same force and effect as if more fully set forth herein.

12.    As a result of merchant's failure to make the payment due on 3/1/2002 and each and every monthly lease payment due thereafter, there has been a default under the agreement.

13.    By reason of the foregoing, there is presently due and owing from the merchant to plaintiff the remaining unpaid lease balance of $2,478.00, with interest thereon from 3/1/2002.

14.    Accordingly, by reason of the defendant's personal guaranty, there is presently due and owing from defendant to plaintiff the sum of $2,478.00, with interest thereon from 3/1/2002.

## AS AND FOR A SECOND CAUSE OF ACTION

15.    Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs "1" through "14" of the verified complaint with the same force and effect as if more fully set forth herein.

16.    The agreement provides for the merchant's payment of plaintiff's reasonable attorneys' fees in the event of a default under the agreement.

17.    In this action, plaintiff's reasonable attorneys' fees are in the sum of $495.60.

18.    Accordingly, by reason of the defendant's personal guaranty, there is due and owing from the defendant, to plaintiff, attorneys' fees in the sum of $495.60.

WHEREFORE, plaintiff demands judgment against defendant as follows:

A.    In the First Cause of Action against defendant, the sum of $2,478.00, with interest from 3/1/2002;

B.    In the Second Cause of Action against defendant, for reasonable attorneys' fees in the sum of $495.60;

C.    For such other and further relief as this Court may deem just and proper.

Dated New York County, NY: May 17, 2005

JOSEPH I. SUSSMAN
Attorney for Plaintiff
132 West 31st Street, 13th Floor
New York, NY 10001
Tel. (212) 502-6449

STATE OF NEW YORK )
                                    ) ss.:
COUNTY OF NEW YORK )

SARA KRIEGER, affirms under penalties of perjury and says: that she is the Vice President of Plaintiff, Northern Leasing Systems, Inc.; that she has read the Verified Complaint and knows the contents thereof; that the same is true to her own knowledge, except as to those matters therein stated to be upon information and belief, and as to those matters she believes them to be true.

Affirmed to be true before me this
17th Day of May 2005

_____
NOTARY PUBLIC

Northern Leasing Systems, Inc.
By: SARA KRIEGER
Vice President

     ARACELIS DIAZ
Notary Public, State Of New York
        No. 01DI6045128
   Qualified In New York County
Commission Expires 06/06/2006

**United States District Court**
**Southern District Of New York**

| | |
|---|---|
| Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler, Gordon Redner, and Thomas J. Smith, Plaintiffs | } } } } 06 Civ. 1625 (SCR) |
| v. | } } } } |
| Northern Leasing Systems, Inc., Jay Cohen, Rich Hahn, and Sara Krieger | } } } } } |
| Defendants | } } **AFFIRMATION OF SERVICE** } } |

I Andrey Strutinskiy, declare under penalty of perjury that on October 1, 2008, I have

served a copy of the attached Amended Complaint upon Abraham Y. Skoff of Moses & Singer

LLP, attorneys for defendants, whose address is 405 Lexington Avenue, New York, NY

10174-1299 by personal delivery.

Dated:  New York, NY
        October 1, 2008

Andrey Strutinskiy, Esq.
286 Madison Avenue Suite 1100
New York, NY 10017
Tel 212-370-0447