UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
MELINDA SERIN, JUDSON RUSS, LONG SOUI            :
LIM, PERI KETTLER, GORDON REDNER, AND            :
THOMAS J. SMITH,                                 :
                                                 :
                                                 :
                              Plaintiffs,         :
                                                 :
                                                 :        06 CV 1625 (SCR)
              -against-                           :
                                                 :
                                                 :
NORTHERN LEASING SYSTEMS, INC., JAY              :
COHEN, RICH HAHN, and SARA KRIEGER,              :
                                                 :
                                                 :
                              Defendant.          :
-------------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

MOSES & SINGER LLP
*Attorneys for Defendants*
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

Of Counsel:

Abraham Y. Skoff, Esq
Robert D. Lillienstein, Esq
Scott E. Silberfein, Esq.
Danielle S. Friedberg, Esq.

731489  011082.0121

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................................. 1

Statement Of Facts ...................................................................................................................... 3

Argument ..................................................................................................................................... 7

I.      THE RULE 12(b)(6) STANDARD ................................................................................ 7

II.     PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED ........................................... 8

      A.     Elements Of A RICO Claim Under Section 1962(c) .............................................. 8

      B.     Plaintiffs Have Not Sufficiently Alleged Predicate Acts Of Racketeering
            Activity .................................................................................................................. 8

            1.     The Amended Complaint Does Not Adequately Allege Mail or Wire
                   Fraud ......................................................................................................... 9

            2.     The Amended Complaint Does Not Allege Fraud With The Required
                   Particularity As Required By Rule 9(b) .................................................. 11

            3.     As this Court previously held, the filing of lawsuits – even if meritless
                   or harassing – is not "extortion" under the Hobbs Act or New York
                   law ........................................................................................................... 13

      C.     The Alleged "Pattern" Of Racketeering Activity Lacks Either Closed-Ended
            Or Open-Ended Continuity ................................................................................. 14

      D.     Plaintiffs Have Not Adequately Alleged A RICO "Enterprise" .......................... 17

            1.     The alleged "enterprise" is not distinct from the Defendants ................. 17

             2.     The "enterprise" allegations are not sufficiently specific ........................ 19

      E.     The Statute Of Limitation Bars RICO Claims By Three Of The Plaintiffs ......... 19

      F.     Plaintiffs' Rico Conspiracy Claim Must Also Be Dismissed ............................. 21

III.    PLAINTIFFS' SECTION 349(a) CLAIM SHOULD BE DISMISSED ......................... 23

IV.   PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD AGAIN ................... 23

Conclusion ................................................................................................................................. 24

Conclusion ................................................................................................................................. 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*236 Cannon Realty, L.L.C., v. Ziss,*
2005 WL. 289752 (S.D.N.Y. Feb. 8, 2005) ........................................................................ 9

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.,*
483 U.S. 143 (1987) ............................................................................................................ 19

*Allen v. New World Coffee, Inc.,*
2001 WL. 293683 (S.D.N.Y. Mar. 27, 2001) ....................................................... 15, 16, 22

*Anatian v. Coutts Bank (Switz.) Ltd.,*
193 F.3d 85 (2d Cir. 1999) ................................................................................................. 17

*Appalachian Enters. v. ePayment Solutions Ltd.,*
2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 18, 2004) .................................................. 13

*Bank of China v. NBM LLC,*
359 F.3d 171 (2d Cir. 2004) ................................................................................................. 9

*Bennett v. United States Trust Co.,*
770 F.2d 308 (2d Cir. 1985) ............................................................................................... 17

*Celpaco, Inc. v. MD Papietfabriken,*
686 F.Supp. 983 (D. Conn. 1988) ...................................................................................... 11

*Cofacredit, S.A. v. Windsor Plumbing Supply, Co., Inc.,*
187 F.3d 229 (2d Cir. 1999) ............................................................................................... 14

*Cosmos v. Hassett,*
886 F.2d 8 (2d Cir. 1989) ................................................................................................... 12

*DeFalco v. Bernas,*
244 F.3d 286 (2d. Cir. 2001) .............................................................................................. 18

*Denny v. Barber,*
576 F.2d 465 (2d Cir. 1978) ............................................................................................... 24

*DiVittorio v. Equidyne Extractive Industrial, Inc.,*
822 F.2d 1242 (2d Cir. 1987) ............................................................................................. 13

*In re Eaton Vance Mutual Funds Fee Litigation,*
403 F.Supp.2d 310 (S.D.N.Y. 2005) .................................................................................. 24

*Efron v. Embassy Suites (Puerto Rico), Inc.,*

223 F.3d 12 (1st Cir. 2000) ............................................................................... 21

*Feinstein v. Resolution Trust Corp.,*
    942 F.2d 34 (lst Cir. 1991) ........................................................................... 13

*Feirstein v. Nanbar Realty Corp.,*
    963 F.Supp. 254 (S.D.N.Y. 1997) ....................................................... 12, 15, 16

*First Capital Asset Management Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004) ...................................................................... 15, 17

*First Nationwide Bank v. Gelt Funding Corp.,*
    820 F.Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ................... 19

*Fitzgerald v. Henderson,*
    251 F.3d 345 (2d Cir. 2001) .......................................................................... 3

*Frooks v. Town of Cortlandt,*
    997 F.Supp. 438 (S.D.N.Y. 1998), *aff'd mem.*, 182 F.3d 899 (2d Cir. 1999) ..................... 8

*Gebhardt v. Allspect, Inc.,*
    96 F.Supp. 2d 331 (S.D.N.Y. 2000) ................................................................. 7

*Goldman v. Belden,*
    754 F.2d 1059 (2d Cir. 1985) ......................................................................... 7

*Grandon v. Merrill Lynch & Co.,*
    147 F.3d 184 (2d Cir. 1998) ........................................................................... 7

*H.J., Inc. v. Northwestern Bell Telephone Co.,*
    492 U.S. 229 (1989) ............................................................................... 14, 15

*Hayduk v. Lanna,*
    775 F.2d 441 (1st Cir. 1985) ......................................................................... 24

*Hernandez v. Ballesteros,*
    333 F.Supp.2d 6 (D.P.R. 2004), *aff'd*, 449 F.3d 240 (1st Cir. 2006) ................................ 13

*In re Integrated Resources Real Estate, Ltd. P'ships Sec. Litigation,*
    850 F.Supp. 1105 (S.D.N.Y. 1993) .................................................................. 8

*In re Sumitomo Copper Litigation,*
    104 F.Supp.2d 314 (S.D.N.Y. 2000) ............................................................... 21

*Jordan (Bermuda) Investment Co., Ltd. V. Hunter Green Investments Ltd.,*
    154 F. Supp. 2d 682 (S.D.N.Y. 2001) .............................................................. 8

*Katzman v. Victoria's Secret Catalogue,*
  167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd mem.*, 113 F.3d 1229 (2d Cir. 1997) ............... 7, 22

*Knoll v. Schectman,*
  275 Fed. Appx. 50, 51 (2d Cir. 2008) ............................................................................ 12

*Lakonia Management Ltd. v. Meriwether,*
  106 F.Supp.2d 540 (S.D.N.Y. 2000) .............................................................................. 12

*Lightning Lube, Inc. v. Witco Corp,*
  4 F.3d 1153 (3d Cir. 1993) .............................................................................................. 22

*McLaughlin v. Anderson,*
  962 F.2d 187 (2d Cir. 1992) ............................................................................................ 12

*Medina v. Bauer,*
  2004 U.S. Dist. LEXIS 910 (S.D.N.Y. Jan. 26, 2004) ..................................................... 13

*Midwest Grinding Comp., Inc.,*
  976 F.2d 1016 (7th Cir. 1992) .................................................................................... 14, 24

*Mills v. Polar Molecular Corp.,*
  12 F.3d 1170 (2d Cir. 1993) ............................................................................................ 12

*Moll v. US Life Title Insurance Co.,*
  654 F.Supp. 1012 (S.D.N.Y. 1987) ................................................................................. 19

*Moss v. Morgan Stanley Inc.,*
  719 F.2d 5 (2d Cir. 1983) .................................................................................................. 8

*Pincay v. Andrews,*
  238 F.3d 1106 (9th Cir. 2001) ......................................................................................... 20

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
  30 F.3d 399, 344 (2d Cir. 1994) ...................................................................................... 17

*Rotella v. Wood,*
  528 U.S. 549 (2000) ........................................................................................................ 20

*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.,*
  84 F.3d 629 (2d Cir. 1996) ................................................................................................ 9

*Salinas v. United States,*
  522 U.S. 52 (1997) .......................................................................................................... 21

*Schlaifer Nance & Co. v. Estate of Warhol,*
  119 F.3d 91 (2d Cir. 1997) .............................................................................................. 14

*Schmidt v. Fleet Bank*,
  16 F.Supp.2d 340 (S.D.N.Y. 1998) ................................................................................. 21

*Schuh v. Druckman & Sinel, L.L.P.*,
  2008 WL 542504 (S.D.N.Y. Feb. 29, 2008) ............................................................... 9, 10

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002) ............................................................................................ 7

*Sony Music Entertainment, Inc. v. Robison*,
  2002 WL. 272406 (S.D.N.Y. Feb. 26, 2002) ................................................................. 19

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008) ...................................................................................... 12-13

*State Farm Mutual Automobile Insurance Co. v. Eastern Medical, P.C.*,
  2008 WL. 3200256 (E.D.N.Y. Aug. 5, 2008) .................................................................. 9

*United States v. Gelb*,
  700 F.2d 875 (2d Cir.), *cert. denied,* 464 U.S. 853 (1983) ............................................. 9

*Vaughn v. Air Line Pilots Association, Intern*,
  395 B.R. 520 (Bankr. E.D.N.Y. 2008) ........................................................................... 16

*Virtual Countries, Inc. v. Republic of South Africa*,
  300 F.3d 230 (2d Cir. 2002) ............................................................................................ 7

*Wexner v. First Manhattan Co.*,
  902 F.2d 169 (2d Cir. 1990) .......................................................................................... 12

*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*,
  530 F.Supp.2d 486 (S.D.N.Y. 2007) .............................................................................. 15

## STATE CASES

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ...................................................................................................... 23

## DOCKETED CASES

*Pludeman v. Northern Leasing Systems, Inc.*,
  Index No. 101059 (Sup.Ct. N.Y. Co. April 7, 2005) ................................................. 18, 19

*Shuh v. Sinel*,
  Docket No. 07 Civ. 0366 (S.D.N.Y. March 19, 2008) ..................................................... 11

## FEDERAL STATUTES

Clayton Act, 15 U.S.C. § 15b.............................................................................................. 20

Fed. R. Civ. P. 9(b)............................................................................................... 3, 9, 12, 13

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 7

Fed. R. Civ. P. 15(a)........................................................................................................ 24

Hobbs Act, 18 U.S.C. § 1951 ................................................................................... 1, 4, 14

Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961(c).................................. 19

Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. §1962 .......................................... 1

Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1962(d)................... 3, 6, 22, 23

Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1964(c).................................... 4

## STATE STATUTES

N.Y. Gen. Bus. Law § 349 ........................................................................................... 1, 23

N.Y. Penal Law § 155.05 ........................................................................................... 1, 4, 13

## MISCELLANEOUS

*Smith & Reed*, 1-3 *Civil RICO* §3.07[2][a] (Matthew Bender 2004)............................................ 18

## Preliminary Statement

Defendants Northern Leasing Systems, Inc. ("NLS"), Jay Cohen, Rich Kahn and Sara Krieger (collectively, "Defendants"), by their attorneys, Moses & Singer, LLP, submit this memorandum of law in support of their motion to dismiss the Am. Compl., dated October 1, 2008 (the "Amended Complaint").[1]  The Amended Complaint purports to assert claims under the Racketeer Influenced Corrupt Organizations (RICO) statute, 18 U.S.C. §1962, and under section 349(a) of the New York General Business Law ("section 349(a)"), which proscribes the use of deceptive acts or practices directed at consumers or the public generally.  The Amended Complaint was filed by Plaintiffs in response to this Court's Order, dated September 2, 2008 (the "Order"; Exhibit B), which dismissed Plaintiffs' original Complaint.  The original Complaint also purported to assert claims under RICO and under section 349(a).  The Court dismissed the RICO claims on the ground that allegations that NLS had engaged in a pattern of filing "bogus" lawsuits, even if true, did not amount to extortion under either the Hobbs Act (28 U.S.C. §1951) or under New York law (N.Y. Penal L. § 155.05).  Because those were the only predicate acts alleged in the Complaint, the Court concluded that "Plaintiffs have failed to set forth the pattern of racketeering activity required for a violation of § 1962(c)", and dismissed the Complaint.  Exhibit B, p. 7.[2]  The Court also dismissed Plaintiffs' section 349(a) claim on the ground that the six plaintiffs were not

---

[1]  A copy of the Amended Complaint is annexed to the Declaration of Abraham Y. Skoff, dated November 21, 2008 (the "Skoff Dec."), as Exhibit A.  Unless otherwise indicated, all further references to Exhibits are to the Exhibits annexed to the Skoff Declaration.

[2]  The Court dismissed the RICO conspiracy claim because it relied on the same allegations as the § 1962(c) claim.  Exhibit B, p. 8.  The Court did not address the other grounds for dismissal asserted by Defendants.

consumers who were protected by the statute, and because the claims made by these six plaintiffs could not "be construed to have had a demonstrable impact on the public at large." *Id.* at p. 9.[3]

In a letter sent by Plaintiffs' counsel following oral argument of the motion, Plaintiffs "signaled to the Court that they seek to add allegations of mail and wire fraud." Exhibit B, p. 10. The Court deemed that "representation sufficient in this instance to grant leave to replead", and therefore allowed Plaintiffs leave to serve an amended complaint as to Plaintiffs' RICO claims. Exhibit B, p. 10. The Amended Complaint filed by Plaintiff goes beyond the leave granted by the Court, purporting to amend the section 349(a) claim. Further, the Amended Complaint alleges the same predicate acts under the Hobbs Act, and the New York extortion statute, which were found by this Court to be legally insufficient.

The Amended Complaint does not come close to satisfying the shortcomings of the original Complaint, and is, itself, legally insufficient. The only new allegations in support of the mail fraud claim are found in paragraph 93 of the Amended Complaint, where Plaintiffs list eighteen letters allegedly mailed by Defendants (as well as two letters mailed by the Plaintiffs), without describing the contents of those letters, and without describing in what way the mailings were in any way fraudulent. Even giving plaintiffs the benefit of all favorable inferences, as set forth below, these new allegations fail to state a claim of mail fraud. They also fall short of the specificity required by Fed. R. Civ. P. 9(b).[4]

The RICO claims in the Amended Complaint should also be dismissed because Plaintiffs have failed to properly allege a "pattern" of racketeering activity, or the existence of an enterprise

---

[3] In a transparent attempt to avoid the fact that Plaintiffs are not consumers, Plaintiffs amended the Complaint by simply deleting the allegations from the original Complaint that described plaintiffs as proprietors of small businesses that had submitted applications to NLS for equipment lease financing. *See e.g.* Complaint, ¶¶ 9 (last sentence), 13, 32, 64, 68 ("based on … First American-Hurst"); 74, 82.

[4] In paragraph 93 of the Am. Compl., as they do throughout that pleading, Plaintiffs make no attempt to distinguish among the actions of any of the Defendants.

that is distinct from the defendants.  Such allegations have been repeatedly found to be insufficient by Courts in the Second Circuit and elsewhere.

Plaintiffs' remaining claims, purporting to state a RICO conspiracy claim under 18 U.S.C. § 1962(d) and consumer fraud under section 349 of New York General Business Law ("section 349"), should also be dismissed for failure to state a claim.  The RICO conspiracy claims fails because it relies on the same allegations as the § 1962(c) claim, which are legally insufficient.  The section 349 claim should be dismissed because Plaintiffs were not granted leave to replead that claim, and because it is legally insufficient, as already found by this Court.  *Id.* at p. 9.

**Statement Of Facts**

NLS engages in the business of equipment lease financing, involving, as plaintiffs describe it, "financing credit card point of sale (POS) terminals and other business equipment" to "small business persons" like the plaintiffs. Complaint, ¶¶ 9, 13; Am. Compl., ¶¶ 9, 17, 33.[5]  Defendants Cohen, Hahn and Krieger are President, Vice President of Sales and Vice President of Operations, respectively, at NLS.  Am. Compl., ¶¶ 9-12.  Plaintiffs assert that NLS contends that each of them signed a lease with NLS for such terminals and other business equipment; plaintiffs deny entering into any such leases. Am. Compl., ¶¶ 19-84.  Plaintiffs allege that from 1998 to the present, NLS has filed suit or threatened to bring a lawsuit against each of the six plaintiffs in New York state court claiming, in general, that the plaintiffs have breached the terms of the lease agreement each had executed. *Id.*

---

[5] As noted above in footnote 3, Plaintiffs deleted certain allegations describing the Plaintiffs' businesses, and that of NLS, when they amended the Complaint.  The original Complaint was verified by each of the Plaintiffs.  The sworn statements of the Complaint constitute binding admissions by Plaintiffs, notwithstanding the fact that the Complaint has now been amended.  *See Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (factual assertions sworn to by plaintiff in verified pleading are to be accepted as true).

Plaintiffs Amended Complaint continues to allege three separate claims, including one – the section 349(a) claim – that was dismissed by this Court, and that Plaintiffs have neither requested, nor been granted, leave to replead.  Exhibit B, p. 10.  In their first Count, Plaintiffs seek damages under the civil remedy provisions of RICO, 18 U.S.C. § 1964(c).  Plaintiffs allege that the NLS, certain of its officers (i.e. defendants Cohen, Hahn and Krieger), as well as "certain attorneys retained by Defendants, salesmen and others whose identities are known only to Defendants at this time," constituted an enterprise that engaged in a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(c).  Am. Compl., ¶¶ 86, 92.  According to the Amended Complaint, this alleged activity consists of engaging in a "practice and pattern of starting bogus legal proceedings based on false representations and solely for the purposes of injuring plaintiffs and recovering unwarranted sums through extortion."  Am. Compl., ¶ 99.  Plaintiffs maintain that the legal proceedings brought by NLS against them "affirmatively misrepresented" facts to the New York State court in the complaints.  Am. Compl., ¶¶ 100-104.  Plaintiffs allege that defendants' alleged misrepresentations in their State Court proceedings "deprived the litigation of its legitimacy" and that as a result, defendants "attempted to extort undeserved sums of money from plaintiffs" by means of the lawsuits. Am. Compl., ¶¶ 106-107.  Although this Court previously held that these precise claims do not amount to extortion under federal or state law (Exhibit B, p. 8), Plaintiffs again allege that such "extortion" violated both the federal Hobbs Act, 18 U.S.C. § 1951, and New York's "Extortion Act," N.Y. Penal Law § 155.05 (McKinney 1998) (Am. Compl., ¶¶ 106-115), and that such violations constitute the predicate acts of racketeering activity on which their civil RICO claims are based. Am. Compl., ¶ 115.

The Amended Complaint also purports to allege mail fraud, without providing any supporting detail as to the content of the mailings, or how they were fraudulent.  The Amended Complaint contains a conclusory allegation that defendants used the mail for the purpose of

4

executing a "scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Paragraph 93 of the Amended Complaint then goes on to lists eighteen separate mailings allegedly made by "Defendants". Typical of these allegations is paragraph 93(a), which alleges, "On or about September 27, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia." That identical allegation, with immaterial variations, is repeated eighteen times in paragraph 93.[6]

Elsewhere in the Amended Complaint, Plaintiffs provide a limited description of some of the letters that they claim to have received from the "Defendants." In paragraphs 21, 71, and 77, they allege that "Defendants" sent them letters demanding payments that were due under equipment leases that were, according to NLS, guaranteed by Plaintiffs, but which Plaintiffs contend were forged documents. In paragraphs 24, 35, and 49, they allege that "Defendants" sent out a form letter requesting Plaintiffs to provide evidence to support their claims of an alleged forgery. In paragraphs 34, 67, 73, and 75, they allege that Defendants mailed a copy of the lease that was the basis of the claims being made by NLS against that Plaintiff.

What these allegations fail to do is describe how any of the mailings was used to deceive the Plaintiffs. Rather, the Amended Complaint alleges that these mailings made Plaintiffs aware of the allegedly "fraudulent" claims being made by NLS, and placed each Plaintiff in a position to contest those claims. Thus, there was nothing deceptive about them; the Amended Complaint is devoid of any allegations showing that any of the Plaintiffs were, in fact, deceived by any of the mailings they allege.

---

[6] The only variations are found in the name and address of the addressee of each letter. Three sub-paragraphs of paragraph 93 do not even allege mailings by any of the Defendants. *See* Am. Compl., ¶¶ 93(g), 93(l) and 93(m).

Further, the Amended Complaint does <u>not</u> allege that the foregoing mailings constitute the predicate acts for purposes of RICO.  Plaintiffs continue to allege that "Defendants" commencement of "bogus" litigations constitutes the pattern of racketeering activity on which their RICO claims are based:  the "pattern of racketeering activity engaged in by Defendants **consisted of a scheme . . . to extort and collect unwarranted sums through litigation based on perjurious averments or threats thereof.  That pattern included multiple predicate acts *of extortion***." (Am. Compl., ¶ 117) (emphasis added).

Plaintiffs claim that the predicate acts of extortion constitute a "pattern" which began as early as January 1998 and continues to date.  (Am. Compl., ¶ 116).  Despite that allegation, the Amended Complaint contains very limited allegations about only five allegedly "bogus" lawsuits commenced by NLS over a period of approximately five years.  (Am. Compl., ¶¶ 19-84).[7]  There are no facts alleged in the Amended Complaint to suggest that there is a "pattern" or that theses are anything other than isolated lawsuits, or that there were any such situations prior to 2001, or that they are continuing to date.

In Count II, Plaintiffs reallege the prior averments and allege a conspiracy under 18 U.S.C. § 1962(d) to participate in the racketeering activity alleged in Count I. (Am. Compl., ¶¶ 125-131).  In Count III, plaintiffs allege a purely state law claim that defendants committed "deceptive acts or practices" in violation of section 349 of New York's General Business Law. (Complaint, ¶¶ 124-127).  As noted above, this identical claim was dismissed by this Court, without leave to replead.

---

[7] Although Gordon is named as a plaintiff in this action, the Amended Complaint alleges that he was not sued by NLS.  Am. Compl., ¶ 105.

# Argument

## I.

## THE RULE 12(b)(6) STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, the Court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998) (citations omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted).  While this Court is required to accept the complaint allegations as true and view all inferences in favor of the non-moving party, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (*quoting Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000); *see Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002) ("'bald assertions' of harm contained in the complaint were not sufficient to defeat the motion to dismiss") (citation omitted).

Courts within this Circuit carefully scrutinize civil RICO claims.  "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations and citation omitted), *aff'd mem.*, 113 F.3d 1229 (2d Cir. 1997).  A careful examination of a RICO complaint is necessary to separate a valid claim from one that is "nothing more than an

7

ordinary fraud case clothed in Emperor's trendy garb." *In re Integrated Res. Real Estate, Ltd.*

*P'ships Sec. Litig.*, 850 F.Supp. 1105, 1148 (S.D.N.Y. 1993).

**II.**

**PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED**

**A.**     **Elements Of A RICO Claim Under Section 1962(c)**

The Second Circuit summarized the elements of a civil RICO claim as follows: the plaintiff

must prove: (1) that the defendant, (2) through the commission of two or more acts (3) constituting

a "pattern" (4) of "racketeering activity," (5) directly or indirectly invests in, or maintains an

interest in, or participates in (6) an enterprise, (7) the activities of which affect interstate or foreign

commerce. *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); *Jordan (Bermuda) Inv.*

*Co., Ltd. V. Hunter Green Invs. Ltd.*, 154 F.Supp.2d 682, 690 (S.D.N.Y. 2001); *Frooks v. Town of*

*Cortlandt*, 997 F.Supp. 438 (S.D.N.Y. 1998), *aff'd mem.*, 182 F.3d 899 (2d Cir. 1999). Here, Count

I of the Amended Complaint fails because the alleged actions upon which plaintiffs predicate a

RICO claim do not constitute "racketeering activity" as a matter of law. Even if they did, the

complaint does not plead a "pattern" of racketeering activity, or the existence of an "enterprise" as

that term is used in RICO. Plaintiffs' RICO claims also fail because they fail to allege the elements

of mail fraud with the requisite specificity mandated by Rule 9(b). Finally, some of those claims

are barred by the applicable four-year statute of limitations.

**B.**     **Plaintiffs Have Not Sufficiently Alleged Predicate Acts Of Racketeering Activity**

In their initial Complaint, Plaintiffs claimed that the filing of five "bogus" lawsuits

constituted a violation of the Hobbs Act and New York's extortion statute, and that such violations

were the predicate acts necessary for their RICO claim. The Court dismissed the Complaint,

holding that the commencement of even "meritless litigation" does not amount to extortion under

federal or state law. Exhibit B, p. 7. In their Amended Complaint, Plaintiffs attempt to cure that

8

defect by alleging mail and wire fraud as RICO predicate acts. However, their amended pleading
also fails as a matter of law. Not only have Plaintiffs failed to allege the necessary elements of a
claim of mail or wire fraud, but the allegations they have made clearly lack the specificity required
by Rule 9(b).

      1.     The Amended Complaint Does Not Adequately Allege Mail or Wire Fraud

      To successfully allege the predicate acts of mail and wire fraud, Plaintiffs must allege (1) the
existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme,
and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.
*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996); *United
States v. Gelb*, 700 F.2d 875, 879 (2d Cir. 1983), *cert. denied*, 464 U.S. 853 (1983).

      Moreover, in order to prevail in a civil RICO action predicated on any type of fraud,
including mail and wire fraud, "the plaintiff must establish 'reasonable reliance' on the defendants'
purported misrepresentations or omissions." *Bank of China v. NBM LLC*, 359 F.3d 171, 178 (2d
Cir. 2004); *236 Cannon Realty, L.L.C., v. Ziss*, 2005 WL 289752 at *5-6 (S.D.N.Y. Feb. 8, 2005)
(where mail fraud is alleged as the RICO predicate act, the proximate cause element requires the
plaintiff to show reasonable reliance); *State Farm Mutual Automobile Ins. Co. v. Eastern Medical,
P.C.*, 2008 WL 3200256, at *5 (E.D.N.Y. Aug. 5, 2008) (same); *Schuh v. Druckman & Sinel,
L.L.P.*, 2008 WL 542504, at * 9 (S.D.N.Y. Feb. 29, 2008) (plaintiff, who alleged that lender
fraudulently pursued collection of amounts not due and owing under its mortgage, was not misled
by lender's actions, in light of allegations that plaintiff consistently denied the amounts claimed by
lender to be due, and challenged them in court; there was therefore no showing of reliance to
support a claim of mail or wire fraud).

      According to the Amended Complaint, the Defendants' scheme to defraud consists of a
campaign to extract monies from Plaintiffs to which the Defendants were not entitled. Am. Compl.,

¶ 13. The alleged scheme to defraud begins with dunning letters and phone calls and ends up with the Defendants suing the Plaintiffs in the Civil Court of the City of New York, based on allegedly fraudulent equipment leases. *Id.*

Even assuming the truth of Plaintiffs' allegations – that Defendants used the mails and interstate wires to demand payment of amounts not due and owing, and to pursue those claims through "fraudulent" lawsuits – it is clear that Plaintiffs did not reasonably rely on any allegedly fraudulent mailings or communications to their detriment. To the contrary, as the Amended Complaint makes clear, those mailings put Plaintiffs on notice of exactly what NLS was claiming, and identified the documents – including the allegedly fraudulent equipment leases – on which those claims were based. In each of the five civil court actions identified in the Complaint, the affected Plaintiff alleges that Defendants'' communications alerted him or her to the fact that NLS was demanding monies based on what Plaintiffs claim was a fraudulent equipment lease. Am. Compl., ¶¶ 29-31 (Serin); ¶¶ 33-34 and fn. 2 (Russ); ¶¶ 47-48 and fn. 3 (Lim); ¶¶ 66-67 (Redner); ¶¶ 75, 77, 78; ¶¶ 82, 83 and fn. 6 (Smith). Each of those Plaintiffs alleges that he/she contested the claims being made by NLS, either before or after legal action was commenced, after learning of NLS's claims through these communications and mailings. These allegations make clear that none of the plaintiffs was misled by any communications from NLS, and that they did not rely on the truth of the representations made by Defendants.

A situation very similar to the allegations in this case was present in *Schuh v. Druckman & Sinel, L.L.P., supra.* In that case, the plaintiffs accused a mortgage lender and others involved in the mortgage foreclosure process (including the lender's employees, agents and attorneys), of fraudulently trying to recover sums in excess of amounts that they knew were due and owing under a mortgage. 2008 WL 542504 at *1. Like here, the plaintiff accused the lender and its alleged associates of using the mails and wires to pursue the "fraudulent" legal action, by initiating

10

seventeen "communications, such as letters and telephone calls, from the defendants to the plaintiffs

or the New York State courts relating to the mortgage." *Id.* at \*3. This Court dismissed the civil

RICO count on the ground, *inter alia*, that the plaintiffs had not alleged reasonable reliance

necessary to establish the predicate acts of mail or wire fraud (2008 WL 542504 at \*10):

> Here, the complaint does not allege any facts that suggest (let alone
> "plausibly" suggest) that the plaintiffs actually "believed and
> justifiably relied" on any statements made by the defendants with
> respect to the amounts required to pay off their mortgage or on any
> other statements alleged by plaintiffs to have been false. **To the
> contrary, the pleadings and the state court papers reflect that the
> plaintiffs repeatedly questioned or denied the amounts that the
> defendants asserted were required to be paid and other
> statements that had been made by the defendants**.

*   *   *

> [W]here a party makes a statement that is false but other facts are
> available to plaintiff to demonstrate that the statement is false, the
> plaintiff cannot show justifiable reliance. (Emphasis added).[8]

Here, as in *Shuh*, the Amended Complaint does not allege any facts that suggest (let alone

"plausibly" suggest) that the plaintiffs actually "believed and justifiably relied" on any statements

made by the Defendants with respect to the amounts due under the allegedly fraudulent equipment

leases. They did not, therefore, reasonably rely on those statements, and their mail fraud and wire

fraud allegations are therefore insufficient.

2.   The Amended Complaint Does Not Allege Fraud With
     The Required Particularity As Required By Rule 9(b)

As explained by the Second Circuit:

> Allegations of mail fraud must be made with the particularity required
> by Federal Rule of Civil Procedure 9(b). *Celpaco, Inc. v. MD
> Papietfabriken*, 686 F. Supp. 983, 989 (D. Conn. 1988). Pursuant to
> this higher pleading standard, the "complaint must adequately specify

---

[8]   The report and recommendation of Magistrate Judge Gabriel W. Gorenstein, quoted above, was approved by the Southern District Judge Lewis Kaplan, in an order dated March 19, 2008.  *Shuh v. Sinel*, Docket No. 07 Civ. 0366 (S.D.N.Y. March 19, 2008).  A copy of Judge Kaplan's order is annexed hereto as an appendix.

> the statements it claims were false or misleading, give particulars as
> to the respect in which plaintiffs contend the statements were
> fraudulent, state when and where the statements were made, and
> identify those responsible for the statements." *Cosmos v. Hassett*, 886
> F.2d 8, 11 (2d Cir. 1989). Plaintiffs asserting mail fraud must also
> identify the purpose of the mailing within the defendant's fraudulent
> scheme.

*McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). *See also Knoll v. Schectman,* 275 Fed.

Appx. 50, 51 (2d Cir. 2008) (affirming dismissal of plaintiff's complaint because "its assertions as

to their contents and the reason each communication was fraudulent are conclusory…The amended

complaint's general descriptions of fraud suffered by the plaintiff do not save it, for the complaint

offers no indication how they are specifically related to the allegations of wire and mail fraud.");

*Wexner v. First Manhattan Co.*, 902 F.2d 169, 172-73 (2d Cir. 1990) (A claim of mail or wire fraud

must specify the content, date, and place of any alleged misrepresentation and the identity of the

persons making them); *Lakonia Management Ltd. v. Meriwether*, 106 F.Supp.2d 540, 543

(S.D.N.Y. 2000) (RICO claims of predicate acts of mail and wire fraud are subject to the

particularity requirement of Rule 9(b) because they sound in fraud).

  Paragraph 93 of the Amended Complaint lists eighteen mailings that were allegedly made by

"Defendants" to Plaintiffs.  Although the dates of the mailings, and the address to which the alleged

mailings were sent are given, virtually none of the other required details are alleged.  The content of

the items mailed, and how each of the items was false and misleading, are not alleged and Plaintiffs

do not allege who made the misrepresentations. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170,

1176 (2d Cir.1993) ("[A]llegations of predicate mail and wire fraud acts should state the contents of

the communications, who was involved, where and when they took place, and why they were

fraudulent"); *see also Knoll,* 275 Fed. Appx. at 51; *Spool v. World Child Int'l Adoption Agency*, 520

F.3d 178, 185 (2d Cir. 2008) (same); *Feirstein v. Nanbar Realty Corp.*, 963 F.Supp. 254 (S.D.N.Y.

1997) (granting defendant's motion to dismiss because plaintiff failed to allege fraud with

particularity). Accordingly, the Plaintiffs' allegations do not nearly contain the specificity required by Rule 9(b).

Plaintiffs' allegations also fail to distinguish between the actions of any of the Defendants, as required by Rule 9(b). Instead of identifying which defendant made which alleged misrepresentations, Plaintiffs lump all Defendants together, as if they each mailed every one of the mailings identified in paragraph 93 of the Amended Complaint, and as if each one of them made each telephone call alluded to in the Amended Complaint. An allegation that "Defendants" collectively committed mail fraud cannot satisfy the RICO pleading standard. *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (dismissing the Amended Complaint as to certain individual defendants where the claims were "pleaded against the defendants generally, with little or no specification as to individual roles"); *Hernandez v. Ballesteros*, 333 F.Supp.2d 6, 11 (D.P.R. 2004), *affirmed*, 449 F.3d 240 (1st Cir. 2006) ("Plaintiff fails to indicate which fraudulent statements were made by which Co-defendant, when such statements were made, and whether those statements were made on the telephone or in person. Other sister districts have found that similarly pleaded allegations do not meet the standard for a RICO Act claim under Rule 9(b). . . . We could not agree more."); *Appalachian Enters. v. ePayment Solutions Ltd.*, 2004 U.S. Dist. LEXIS 24657, at *21 (S.D.N.Y. Dec. 18, 2004) (dismissing plaintiff's complaint because "[t]he complaint in this case does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff. Rather, the complaint simply attributes the wrongful acts as being committed collectively by the seventeen defendants"); *Medina v. Bauer*, 2004 U.S. Dist LEXIS 910, at *18 (S.D.N.Y. Jan. 26, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiffs [Amended [C]omplaint fails to satisfy the requirements of Rule 8."). "It is not enough for a plaintiff to file a RICO claim, chant

13

the statutory mantra, and leave the identification of predicate acts to the time of trial." *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991).

> 3.   As this Court previously held, the filing of lawsuits – even if meritless or harassing – is not "extortion" under the Hobbs Act or New York law

In dismissing the original Complaint in this action, this Court held that the filing of even meritless lawsuits does not constitute extortion under either the Hobbs Act, 18 U.S.C. § 1951, or under New York's extortion statute, N.Y. Penal Law § 155.05.   Exhibit B, p. 7.   That holding is the law of the case and may not be re-litigated by the Plaintiffs. *Fogel v. Chestnutt*, 668 F.2d 100, 108 (2d Cir. 1981).   Although this Court granted Plaintiffs leave to amend their Complaint to assert claims of mail fraud, the Amended Complaint continues to allege the same predicate acts of extortion that were found to be insufficient, as a matter of law, by this Court.   For the same reasons that the RICO claims in the original Complaint were dismissed, the Amended Complaint should likewise be dismissed to the extent it relies on claims of extortion as predicate RICO acts.[9]

**C.    The Alleged "Pattern" Of Racketeering Activity Lacks Either Closed-Ended Or Open-Ended Continuity**

To properly allege a pattern of racketeering activity under RICO, a plaintiff must "satisfy the so-called 'continuity plus relationship' test: the predicate acts must be related to one another (the relationship prong) *and* pose a threat of continued criminal activity (the continuity prong)". *Midwest Grinding Comp., Inc.*, 976 F.2d 1016, 1022 (7th Cir. 1992), *quoting H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989).   Continuity is "both a closed- and open-ended concept." *H.J., Inc.*, 492 U.S. at 241; *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (alleged fraudulent acts were either not sufficiently related or

---

[9]     These issues were fully brief by Defendants in support of their motion to dismiss the original Complaint, and will not be repeated here.   Defendants refer the Court to Defendants' Memorandum of Law In Support of Motion To Dismiss (Docket #16), and in Defendants' Reply Memorandum (Docket #20), which are hereby incorporated by reference.

continuous to sustain a RICO claim). "[A] RICO plaintiff can prevail by either (1) demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended conspiracy that, while short-lived, shows clear signs of threatening to continue into the future." *Midwest Grinding Co.*, 976 F.2d at 1023; *See Cofacredit, S.A. v. Windsor Plumbing Supply, Co., Inc.*, 187 F.3d 229, 242-43 (2d Cir. 1999) (allegations were insufficient to establish either closed- or open-ended continuity where the predicate acts that the Defendants committed spanned less than one year and the nature of the predicate acts did not imply a threat of ongoing racketeering activity).

A "closed-ended" period of racketeering activity involves a course of criminal conduct that has come to a close. To satisfy the continuity element in a closed-ended case, the plaintiff must allege a series of related predicates enduring a "substantial period of time". *H.J., Inc.*, 492 U.S. at 242; *see Allen v. New World Coffee, Inc.*, 2001 WL. 293683, at *5 (S.D.N.Y. Mar. 27, 2001). Since the Supreme Court's decision in *H.J., Inc.*, the Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F.Supp.2d 486 (S.D.N.Y. 2007). Nevertheless, "while two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Capital Asset Mgmt. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004).

An open-ended period of racketeering, by contrast, is a course of criminal activity which lacks the duration and repetition to establish continuity. A RICO plaintiff may still satisfy the continuity requirement in that situation, however, by showing past conduct which "by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 242. Such a threat of continuity exists when the plaintiff can show (1) a "specific threat of repetition," (2) that the "predicate acts or offenses are part of an ongoing entity's regular way of doing business," or (3) that

15

the defendant operates a "long-term association that exists for criminal purposes." *Id.* at 242-43.
Plaintiff must show that the Defendants' acts were neither "isolated nor sporadic." *Feirstein v.
Nanbar Realty Corp.*, 963 F.Supp. 254, 259 (S.D.N.Y. 2007).  The mere fact that a complaint
alleges several mailings does not establish continuity, if they all relate to the same scheme.  '[A]
multiplicity of mailings does not necessarily translate into a 'pattern' of racketeering activity." *U.S.
Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1267 (7th Cir. 1990) (no pattern
where single scheme involved multiple acts of mail fraud causing identical injury), *quoting
Sutherland v. O'Malley*, 882 F.2d 1196 (7th Cir. 1989) (same); *See Beauford v. Helmsley*, 865 F.2d
1386, 1394 (2d Cir. 1989) (Oakes, J., dissenting)

Here, Plaintiffs allege that Defendants engaged in a scheme to extort money from Plaintiffs
by commencing or threatening fraudulent lawsuits.  *See* Am. Compl., ¶ 116, 118.  Plaintiffs claim
that Defendants engaged in mail fraud by allegedly mailing pleadings, letters, and other documents.
*See* Am. Compl., ¶ 93-108.  Although Plaintiffs state, in conclusory fashion, that these acts
"extended over a substantial period of time from January 1998, and continue to this day" (Am.
Compl., ¶ 118), the earliest mailing alluded to in the Amended Complaint (though not in the mail
fraud allegations set forth at paragraph 93) occurred in May 2001.  *See* Am. Compl., ¶ 47.    The
mailings identified in the Amended Complaint involve a total six situations spanning a bit more
than 4 years, from May 2001 to September 2005.  *See* Am. Compl., ¶¶ 93(a)-(w) and 47.

Allegations that Defendants engaged in sporadic instances of mail fraud, involving only a
few victims, over just a few years, is insufficient to satisfy the continuity requirement.  *See
Feirstein*, 963 F.Supp. at 259 (holding that allegations of four acts of annual mailings of allegedly
fraudulent tax returns over a three-year period was insufficient to fulfill the continuity requirement);
*see also Vaughn v. Air Line Pilots Ass'n, Intern*, 395 B.R. 520 (Bankr. E.D.N.Y. 2008) ("[e]ven if
plaintiffs articulate the alleged enterprise's objective broadly, the start and end date of the relevant

16

acts cannot be premised upon inadequate predicate acts).  Plaintiffs allegations of a multiplicity of

mailings over a few years does not translate into a pattern or the sort of "long-term criminal

conduct" that Congress sought to target in RICO.  *See Allen*, 2001 WL. 293683, at *5.  Nor are

there allegations of future threats of repetition, or that the predicate acts, which were not inherently

unlawful, were part of the Defendants' regular way of doing business.  *Id.* at *6 (conclusory

allegations that the predicate acts of the Defendants, who primarily conduct a legitimate business,

were the regular way of operating the business and that the nature of the predicate acts implied a

threat of continued criminal activity were insufficient to warrant the inference of a pattern of

racketeering activity); *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466

(2d Cir. 1995) (allegation that defendant would have continued fraudulent scheme had plaintiff not

commenced litigation was entirely speculative and insufficient to suggest a threat of continuity).

The RICO claims in the Amended Complaint therefore fail to satisfy RICO's continuity

requirement.

**D.**   **Plaintiffs Have Not Adequately Alleged A RICO "Enterprise"**

   1.   The alleged "enterprise" is not distinct from the Defendants

Plaintiffs' claims under RICO also fail because plaintiffs have not alleged an "enterprise"

that is distinct from the defendants, or from the pattern of racketeering activity.  Congress has

defined an "enterprise" under RICO as "any individual, partnership, corporation, association, or

other legal entity, and any union or group of individuals associated in fact although not a legal

entity." 18 U.S.C. § 1961(4).  Under 18 U.S.C. § 1962(c), an "enterprise" and the persons

conducting the affairs of an "enterprise" must be distinct.  *First Capital Asset Mgmt., Inc*, 385 F.3d

at 174; *see also Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88-89 (2d Cir. 1999).  A plaintiff

cannot fulfill this distinctness requirement by alleging a RICO enterprise that "consists merely of a

corporate defendant associated with its own employees or agents carrying on the regular affairs of

17

the defendant." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 399, 344 (2d

Cir. 1994). The Second Circuit explained the reason for this as follows:

> Because a corporation can only function through its employees and
> agents, any act of the corporation can be viewed as an act of such an
> enterprise, and the enterprise is in reality no more than the defendant
> itself.  [Citation omitted]. **Thus, where employees of a corporation
> associate together to commit a pattern of predicate acts in the
> course of their employment and on behalf of the corporation, the
> employees in association with the corporation do not form an
> enterprise distinct from the corporation**.  (Emphasis added).

*Id; accord Anatian*, 193 F.3d at 89; *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir.

1985) ("[A] corporate entity may not be simultaneously the "enterprise" and the "person" who

conducts the affairs of the enterprise through a pattern of racketeering activity."). "[T]he plain

language of section 1962(c) clearly envisions separate entities, and the distinctness requirement

comports with legislative intent and policy." *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d. Cir. 2001)

(citation omitted).

      Here, plaintiffs define the RICO enterprise as "the association of defendants, certain

attorneys retained by defendants, salesmen and others whose identities are known only to

defendants at this time." (Am. Compl., ¶86).  This fails to satisfy the distinctness requirement

because the defendants and their agents and employees are the same as the alleged "enterprise."

Simply adding the word "others," without providing any specificity, does not satisfy the plaintiffs'

burden of alleging and proving an enterprise under Section 1962(c).  *See Smith & Reed*, 1-3 *Civil

RICO* §3.07[2][a] (Matthew Bender 2004) ("The courts have grown increasingly reluctant to

tolerate such easy evasion of the enterprise person distinctiveness requirement under Section

1962(c).")

      This is not the first time that Plaintiffs' counsel has attempted, without success, to allege that

the association of NLS, its employees, officers, attorneys and agents, constitutes a RICO enterprise.

In *Pludeman v. Northern Leasing Systems, Inc.*, Index No. 101059, Supreme Court, New York

County, the same law firm that represents the plaintiffs in this action attempted to allege a RICO enterprise using the identical words that they use here:[10] "the association of defendants, certain attorneys retained by defendants, salesmen and others whose identities are known only to defendants at this time (cumulatively, the "Conspirators"), constituted an enterprise within the meaning of 18 U.S.C. §1861(c)". Exhibit C, ¶ 88.  In *Pludeman*, present plaintiffs' counsel alleged that the RICO enterprise attempted to defraud a class of plaintiffs by participating in a scheme to conceal certain charges contained in the equipment leases that the plaintiff lessees had signed.  The New York State court dismissed that RICO claim (and several other claims as well), holding: "The amended complaint fails to allege that the enterprise is distinct from the NLS and the allegation that the corporate defendant associated with its own employees or agents carrying on the regular affairs of the corporation fails to satisfy the distinctness requirement".  *Pludeman* Order, p. 8 (copy annexed).  Plaintiffs' current attempt to allege a RICO enterprise should fail on this same ground.

      2.     The "enterprise" allegations are not sufficiently specific

Plaintiffs' attempt to allege an enterprise also fails because they have not provided a "plain and concise" statement of the "enterprise" as required by the law.  *See Sony Music Entm't, Inc. v. Robison*, 2002 WL 272406, at *5 (S.D.N.Y. Feb. 26, 2002).  As in *Sony Music*, plaintiffs provide no specific identities or numbers of participants, the structure of the enterprise or how the enterprise's activities are sufficiently distinguishable from the regular business activities of the entities.  *See also First Nationwide Bank v. Gelt Funding Corp.*, 820 F.Supp. 89, 98 (S.D.N.Y. 1993) (complaint should identify information regarding the specific identities or number of participants, the structure of the enterprise, or show the enterprise's activities are sufficiently distinguishable from the regular business activities of these entities), *aff'd*, 27 F.3d 763 (2d Cir.

---

      [10]     A copy of the First Amended Complaint in *Pludeman* is annexed to the Skoff Aff. as Exhibit C.  The state court's order dismissing the RICO claim in *Pludeman* (the "*Pludeman* Order") is annexed hereto as an Appendix.

1994); *Moll v. US Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y. 1987) (same). Instead, plaintiffs make conclusory assertions that the "enterprise" has an "ascertainable structure" and that it consisted of an unknown number of "certain attorneys," "salesmen" and ''others". Am. Compl., ¶86. They concede ignorance about the roles allegedly played by the participants as "exclusively within the … knowledge of defendants." Am. Compl., ¶122. This lack of specificity is plainly insufficient to satisfy the pleading requirements of the federal rules.

**E.**     **The Statute Of Limitation Bars RICO Claims By Three Of The Plaintiffs**

     The RICO claims asserted by three of the Plaintiffs are barred by the applicable statutes of limitations. Civil RICO actions are subject to a four-year statue of limitation. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) (holding that the four-year limitations period established by the Clayton Act, 15 U.S.C. § 15b, applies to civil RICO claims). A civil RICO claim accrues for purposes of starting the running of the statute of limitations when the plaintiff discovers or should have discovered his injury. *Rotella v. Wood*, 528 U.S. 549, 552-554 (2000); *see also Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001) ("[T]he civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.") (citation omitted). With respect to the question of whether a plaintiff "should have discovered" his injury, *Rotella* makes it clear that the question is resolved by answering the separate question of whether the plaintiff was diligent investing whatever facts were first presented to him that would have led him to determine that he had been injured and the source of the injury. *Rotella*, 528 U.S. at 556-57 (the civil RICO plaintiff, like a malpractice plaintiff, must promptly take steps to discover the reason for his injury, and he cannot wait for events fortuitously to make it clear to him). If those facts are available to a plaintiff, and yet the plaintiff does nothing to investigate whether he had been injured and, if so, the source of the injury, the statue of limitations commences to run nonetheless. *Id*.

Here, three out of the six plaintiffs' claims are barred by the applicable statue of limitations because they knew or should have known about their alleged injuries by March 1, 2002 – four years prior to the filing of this lawsuit.

Plaintiff Lim claims that he received a Summons and Verified Complaint filed by defendants in May of 2001. Am. Compl., ¶47. He further contends that upon receipt, he "called and informed defendants that the signatures on the lease underlying that action were a forgery." Am. Compl, ¶48. Thus, by May 2001, he knew or should have known of the injury underlying this cause of action.

Plaintiff Kettler claims that on or about February 1, 2002, she received a four page lease from defendants "which was clearly not the document that Yodamo had signed." Am. Compl., ¶ 75. According to the Amended Complaint, Ms. Kettler's signature had been forged as guarantor on the lease." *Id*. Thus, by February 2002, she knew or should have known of the injury underlying her cause of action. The claims of plaintiffs Lim and Kettler are therefore time barred and should be dismissed.

Each plaintiff was also put on notice of the injury when the first deduction was made from that plaintiff's business bank accounts. *See In re Sumitomo Copper Litig.*, 104 F. Supp. 2d 314, 323 (S.D.N.Y. 2000) ("Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises.") (citation omitted). As set forth in paragraphs 7 - 9 of the Affidavit of Sara Krieger, sworn to on July 14, 2006, which was submitted in support of Defendants' motion to dismiss the original Complaint, the first deduction from Plaintiff Serin's business bank account took place on September 7, 2001; the first deduction from Plaintiff Russ's business bank account took place on April 2, 2001; the first deduction from Plaintiff Kettler's business bank account took place on January 15, 2002. In each case, the affected plaintiff was on notice more than four years prior to the filing of the Complaint in

this action, which took place on March 1, 2006. For that reason, the RICO claims asserted by Plaintiffs Serin, Russ and Kettler are barred by the statute of limitations applicable to civil RICO claims.

**F.      Plaintiffs' Rico Conspiracy Claim Must Also Be Dismissed**

Plaintiffs' RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) must fail because the substantive RICO claim under Section 1962(c) fails. Under 18 U.S.C. ¶ 1962(d), a party is liable for RICO conspiracy if it knew of the conspiracy's goals and agreed to facilitate them. *Salinas v. United States*, 522 U.S. 52, 65 (1997). There can be no RICO conspiracy, however, without a substantive RICO violation. *See Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 353 (S.D.N.Y. 1998); *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000) ("If the pleadings do not state a substantive RICO claim upon which relief may he granted, then the conspiracy claim also fails") (citations omitted); *Lightning Lube, Inc. v. Witco Corp*, 4 F.3d 1153, 1191 (3d Cir. 1993). Thus, if "the prior claims do not state a cause of action for substantive violations of RICO, then a RICO conspiracy claim necessarily does not set forth a conspiracy to commit such violations. *Id*. *See also Katzman*, 167 F.R.D. at 658 ("failure to adequately plead facts that would satisfy the pleading requirements of §§ 1962(a), 1962(b) or 1962(c) necessarily dooms any claim [that the plaintiff] might assert arising under 1962(d)") (citation omitted). Accordingly, because plaintiffs have failed to plead a legally sufficient substantial RICO claim, their conspiracy claim also fails.

What is more, in order to allege a conspiracy under § 1962(d), a plaintiff must assert that "each defendant, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise…" *Allen v. New World Coffee, Inc.*, 2001 WL, 293683, at *9 (S.D.N.Y. Mar. 27, 2001) (citation omitted). Conclusory allegations that "[a]ll of the defendants conspired among themselves to further the scheme to defraud" and "knowingly and willingly participat[ed] in the conspiracy" are insufficient. *Adler v. Berg Harmon Assocs.*, 790

22

F.Supp. 1222, 1234 (S.D.N.Y. 1992); *see Laverpool v. N.Y.C. Transit Auth.*, 760 F.Supp. 1046,

1060 (E.D.N.Y. 1991) ("Bare or conclusory allegations of participation in a conspiracy under

section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that

each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate

acts alleged arc fraud.") (citations omitted). Here, the plaintiffs' allegations are conclusory in nature

and, in fact, plaintiffs have failed to specify how any of the individual defendants "manifested an

agreement to commit two predicate acts in furtherance of a common purpose of a RICO enterprise."

Therefore, all of the Plaintiffs' conspiracy claims under § 1962(d) should be dismissed.

### III.

### PLAINTIFFS' SECTION 349(a) CLAIM SHOULD BE DISMISSED

Section 349(a) of New York's General. Business Law provides that "[d]eceptive acts or

practices in the conduct of any business, trade or commerce or in the furnishing of any service in

this state are hereby declared unlawful," and a person injured by such acts may bring a civil action

for damages. As this Court held in dismissing Plaintiffs' original section 349 claim, section 349 is a

consumer protection law. Exhibit B, p. 9. It has no application to these Plaintiffs, or to these facts.

*Id; Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995);

*Cruz v. NYNEX Corp.*, 44 F. Supp. 2d 565, 583 (S.D.N.Y.).

In its Order dismissing the original Complaint, the Court noted that Plaintiffs request to

replead related only to their RICO claim. *See* Exhibit B, p. 10 ("Though Plaintiffs have not

provided a detailed breakdown of how they would amend their complaint, they have signaled to the

Court that they seek to add allegations of mail and wire fraud. We deem this representation

sufficient in this instance to grant leave to replead."). Because Plaintiffs did not previously seek,

and have not been granted, leave to replead their section 349 claim, Plaintiffs had no right to amend

their section 349 Complaint without leave of Court. *See* Fed. R.Civ. P. 15(a). Accordingly, the third Count in the Amended Complaint should be dismissed.[11]

## IV.

## PLAINTIFFS SHOULD NOT BE PERMITTED TO REPLEAD AGAIN

Rule 15(a) of the Federal Rules of Civil Procedure provides that parties may amend their pleading once as a matter of course and otherwise only by leave of the court. Although leave to amend is freely granted when justice so requires, when a plaintiff is put on notice of the deficiencies of the complaint and fails to correct them in the Amended Complaint, dismissal with prejudice is proper. *See Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) (denying plaintiff leave to amend the amended complaint where it was unlikely that the second amended complaint cured the defects of the first, and in dismissing the initial complaint, the judge had put plaintiff's counsel on notice of what was required); *In re Eaton Vance Mut. Funds Fee Litigation*, 403 F.Supp.2d 310, 318-19 (S.D.N.Y. 2005) ("[i]n light of the plaintiffs' failure to cure the defects after being provided notice, this is not a case where leave to amend should be given because 'justice so requires.'"); *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020-21 (S.D.N.Y. 1992) (district court was justified in denying leave to file a third amended complaint where plaintiff "had fair notice of its pleading deficiencies from the defendants' motion to dismiss, but it chose to ignore that warning."); *see also Hayduk v. Lanna*, 775 F.2d 441, 445 (1st Cir. 1985) ("we find that dismissal of the counts after plaintiffs had two opportunities to amend their complaint was well within the discretion of the district court especially since the plaintiffs were notified before amending a second time that the allegations of fraud in their first amended complaint failed to meet the particularity requirements of Rule 9(b).").

---

[11] The section 349 claim should be dismissed on the merits as well, for all of the reasons set forth in Defendants' Memorandum of Law In Support of Motion To Dismiss (Docket #16), and in Defendants' Reply Memorandum (Docket #20), which are hereby incorporated by reference.

Here, Plaintiffs were told exactly what they had to do and they did not do it. They were given leave to amend their Complaint to assert mail fraud and wire fraud as predicate acts under RICO. Having been given fair notice of what they needed to do, and having failed to take advantage of that notice, they should not be given another opportunity.

### Conclusion

For the foregoing reasons, the Amended Complaint should be dismissed, with prejudice.

Dated:  New York, New York
        November 21, 2008

Respectfully submitted,

MOSES & SINGER LLP
*Attorneys for Defendants*

By: _____
Abraham Y. Skoff, Esq. (AS-5330)
Robert D. Lillienstein, Esq. (RL-4585)
Scott E. Silberfein, Esq. (SS 1947)
Danielle S. Friedberg, Esq. (DF 9679)
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7807 (facsimile)