UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
MELINDA SERIN, JUDSON RUSS, LONG SOUI       :
LIM, PERI KETTLER, GORDON REDNER, AND       :
THOMAS J. SMITH,                            :
                                            :
                                            :
                    Plaintiffs,             :
                                            :        06 CV 1625 (SCR)
                                            :
        -against-                           :
                                            :
                                            :
NORTHERN LEASING SYSTEMS, INC., JAY         :
COHEN, RICH HAHN, and SARA KRIEGER,         :
                                            :
                    Defendant.
------------------------------------------------------------------- X

**APPENDIX TO**


**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**



MOSES & SINGER LLP
*Attorneys for Defendants*
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)

## <u>INDEX TO UNPUBLISHED ORDERS AND OPINIONS</u>

1.      <u>Schuh v. Sinel</u>,
        Index No. 07 Civ. 0366 (S.D.N.Y. March 19, 2008)

2.      <u>Pludeman v. Northern Leasing Systems</u>,
        Index No. 101059/04 (Sup. Ct. N.Y. Co. Apr. 7, 2005)

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CHRISTOPHER SCHUH, et ano.,

          Plaintiffs,

        -against-                           07 Civ. 0366 (LAK)

DRUCKMAN & SINEL, LLP, et al.,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/2008

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        This action is a sign of our economically troubled times. Plaintiffs Christopher and Diane Schuh owned a house in Saratoga County, New York, on which they had procured a mortgage. Over time, the ownership of the note and/or the party responsible for serving the mortgage changed a number of times. Eventually, plaintiffs received a notice of default and, after extensive proceedings that need not be elaborated upon here, suffered a judgment of foreclosure and sale that was filed in New York Supreme Court, Saratoga County, on January 21, 2005. Plaintiffs eventually bought their house at a foreclosure sale. In 2007, they brought this action against a host of parties who were involved in these events. They assert claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), as well as for common law fraud. Defendants move to dismiss the amended complaint on a variety of grounds.

        In a report and recommendation dated February 29, 2008 (the "R&R"), Magistrate Judge Gabriel W. Gorenstein recommended that the motions to dismiss be granted and that plaintiffs be given leave to replead only certain aspects of their FDCPA claims. The R&R began by noting that certain aspects of plaintiffs' claims appeared to be foreclosed by the *Rooker-Feldman* doctrine while others did not, but declined to resolve the issue in light of the availability of other grounds of decision. It proceeded to reject plaintiffs' RICO and common law fraud claims, the former of which is based on alleged mail and wire fraud, on the ground that plaintiffs had not alleged, and could not allege, that they had relied on any misrepresentations by any of the defendants. It concluded that the first three alleged FDCPA violations were time-barred, that three others were insufficient for failure to allege facts to show that defendant HSBC is a "debt collector" subject to the statute, and that the remaining claim was insufficient because the amended complaint failed to allege which entity

involved with the communication at issue was the alleged debt collector. It nevertheless recommended that leave to amend be granted with respect to the fourth through seventh FDCPA claims alleged in paragraph 214 of the amended complaint. Plaintiffs object to the R&R to the extent that it is adverse to them. The HSBC defendants and the MERS defendants object to the R&R on a variety of grounds, most of which, if meritorious, involve what they see as alternative grounds for dismissal. The Court finds it unnecessary to reach all of the grounds advanced by the parties.

## *Rooker-Feldman*

The amended complaint here tells a long and tortured tale that includes allegations that defendants forged signatures on an assignment of the mortgage (¶ 109), falsely assured Mr. Schuh that no foreclosure was contemplated (¶ 119), filed a complaint for foreclosure that "contained numerous false statements and misrepresentations" (¶ 124), submitted an affidavit in support of a motion for summary judgment that contained a false statement (¶¶ 133-35), and submitted affidavits in support of an application for a judgment of foreclosure that also contained false statements (¶¶ 138-43). It alleges that the judgment of foreclosure was filed on January 21, 2005. *Id.* ¶ 145 & Ex. X. And it goes on to assert that defendants in a variety of ways frustrated plaintiffs' efforts to close the first foreclosure sale, at which they had bought the property, and to pay off the mortgage. *Id.* ¶¶ 157-78) It does not seek to set aside the judgment of foreclosure. But it does seek damages including, "but . . . not limited to, payments for fees and expenses in attempting to pay-off the note an[d] mortgage; interest paid at excessive rates because the defendants refused to allow the mortgage to be paid-off; and damages to [plaintiffs'] credit." *Id.* ¶ 206. Thus, while the complaint is none too clear on the point, it at least arguably is susceptible to the interpretation that plaintiffs claimed, perhaps among other things, damages flowing from the entry of the judgment of foreclosure on the basis that the judgment had been procured, at least in part, by fraud.

For reasons alluded to in the R&R, any such claim would raise a serious question under *Rooker-Feldman,* which goes to the jurisdiction of the district court. *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 84 (2d Cir. 2005). Our Circuit, moreover, has read recent Supreme Court decisions as foreclosing the practice of assuming the existence of subject matter jurisdiction in order to dispose of a case on other grounds in a manner adverse to the party asserting jurisdiction. *Prof'l Traders Fund, LLC v. Prarie Oil & Gas, Inc.,* 521 F. Supp.2d 313 (S.D.N.Y. 2007) (discussing cases). In consequence, as the case then stood, it would have been preferable, indeed perhaps essential, first to have sorted out the precise nature of plaintiffs' claims and then to determine as to each whether the Court lacked jurisdiction under *Rooker-Feldman.* Fortunately, however, the posture of the case has changed somewhat, and this exercise no longer is necessary.

Plaintiffs' objections state:

"The Schuhs do not in the Amended Complaint request vacation of the judgment of foreclosure. That is not an issue. Whether or not the judgment of foreclosure was the result of extrinsic or intrinsic fraud, the claims for relief are

> addressed to damages for actions that occurred in furtherance of the scheme after the judgment was entered. * * * The defendants sought to extort, and in fact received, monies from the Schuhs that they were not entitled to receive." Pl. Obj. 7 (emphasis in original).

As this unequivocal statement abandons any claims based upon injuries caused by the judgment of foreclosure and does not invite this Court to review and reject that judgment, *Rooker-Feldman* is not an obstacle to the exercise of jurisdiction with respect to the remaining aspects of the complaint. *See Hoblock,* 422 F.3d at 85.

### *The RICO and Fraud Claims*

The R&R concluded that the RICO and fraud claims are insufficient because they fail to allege reliance. R&R 17-21. Plaintiffs object to this conclusion, arguing that "[r]eliance by third parties is sufficient" and pointing to "the wildly inconsistent demands of the defendants as set forth in the Amended Complaint and in communications annexed to these Objects [*sic*] as Exhibit 4." Pl. Obj. 7. But plaintiffs' objection is without merit.

The Court assumes, without having to decide, that a RICO or common law fraud plaintiff could make out a legally sufficient claim by alleging that a defendant deceived a third party and that the plaintiff suffered injury as a proximate consequence. Now that plaintiffs unequivocally have abandoned any attack on the judgment of foreclosure and limited their claim to the defendants' post-judgment actions, however, they do not even remotely approach stating such a claim. There simply is nothing in the amended complaint that suggests that defendants – in the post-judgment period – made any false statements or material omissions in communications with plaintiffs or anyone else *upon which plaintiffs or anyone else relied.* While it may well be that defendants, advertently or otherwise, engaged in actions and made statements that plaintiffs found frustrating or inaccurate, there simply is nothing here to suggest any actionable fraud.

### *The FDCPA Claims*

Plaintiffs object to the R&R to the extent it recommends limitation of leave to amend to the three incidents referred to above. They argue that they may wish to add claims based on other events that occurred within the year prior to and the period after the commencement of the action. The Court agrees as to post-filing events. It sees no reason, however, why plaintiffs, after having previously amended the complaint once, should be permitted to expand the case yet again with respect to matters occurring before the case was filed.

4

*Defendants' Objections*

HSBC objects to the R&R on the grounds that it did not reach HSBC's arguments regarding its alleged *res judicata* and "litigation privilege" defenses to the non-FDCPA claims. Because a court is not obligated to reach arguments that are unnecessary to its decision, this objection is overruled.

HSBC asserts also that it has various defenses to the FDCPA claims and that plaintiffs therefore should not be allowed to replead them because any such repleading would be futile. Whether a Court denies leave to amend based on futility, however, is a matter of "discretion." *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000). In this case, HSBC will not suffer prejudice if the Court addresses its defenses in the context of an amended complaint.

MERS objects to the R&R on the ground that it permits reinstatement of FDCPA claims against MERS. The Court does not so interpret the R&R. Rather, leave is granted to reinstate the claims only against the party that sent the communications at issue that is, HSBC (with respect to the fourth, sixth, and seventh claims) and Druckman & Sinel (the fifth claim).

*Conclusion*

For the foregoing reasons, defendants' motions to dismiss the amended complaint [docket items 18, 20, 25, 29, 47, and 49] all are granted. Plaintiffs, on or before March 31, 2008, may amend solely with respect to the four FDCPA claims beginning in 2006 that are referred to in paragraph 214 of the amended complaint as against the party that sent each communication and, in addition, may add any additional claims based on events subsequent to the date of filing of the amended complaint.

SO ORDERED.

Dated:        March 19, 2008

_____
Lewis A. Kaplan
United States District Judge

**2**

11

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:        IAS PART 30
------------------------------------------------------------X
KEVIN PLUDEMAN, CHRIS HANZSEK
d/b/a HANZSEK AUDIO, SARA HUSH,
OZARK MOUNTAIN GRANITE & TILE CO.
and DENNIS E. LAUCHMAN, on behalf of
themselves and all others similarly situated,

Index No. 101059/04

**DECISION & ORDER**

                                    Plaintiffs,

      -against-

NORTHERN LEASING SYSTEMS, INC.,
JAY COHEN, STEVE BERNADONE,
RICH HAHN and SARA KRIEGER,

                              Defendants.
------------------------------------------------------------X
SHERRY KLEIN HEITLER, J.:

The corporate defendant Northern Leasing Systems, Inc. ("N.S."), and the individual defendants Jay Cohen, Steve Bernadone, Rich Hahn and Sara Krieger, officers and the alleged management of NLS (hereinafter "individual defendants"), move for an order dismissing this action, pursuant to CPLR §3211 (a)(1), (3), (4), (5) and (7).

The amended complaint alleges a purported class action against the defendant NLS and the individual defendants based upon the defendants' scheme to defraud the plaintiffs, generally small businesses, which entered into finance lease agreements with NSL for credit card point of sale terminals, and principals of those businesses, who personally guaranteed the lease agreements, by concealing material terms of the agreements unfavorable to the putative class.

The amended complaint alleges causes of action for violations of the Federal Racketeering Statue, 18 U.S.C. §1962, the Electronic Funds Transfer Act, 15 U.S.C. §1692 and Fair Debt Collection Practices Act, 15 U.S.C. §1692 as well as causes of action for fraud, negligent misrepresentation, breach of implied covenant of good faith and fair dealing, breach of contract,

unjust enrichment and money had and received.

The defendant NLS previously moved for dismissal of the original complaint, which was resolved pursuant to a "so ordered" stipulation. The "so ordered" stipulation provided for, *inter alia*, the addition of Jane Hush, Ozark Mountain Granite & Tile Co. and Dennis E. Lauchman as plaintiffs; the addition of the individual defendants as defendants and leave to serve an amended complaint. The issue of whether plaintiff Challenger Deep Imports, Inc., a plaintiff in the original complaint, but not a plaintiff in the amended complaint, properly discontinued its claims remained an open issue subject to motion practice.

The amended complaint alleges that plaintiffs were mislead into believing that the four page lease agreement and personal guaranty was a single page document as both the lease's acceptance and personal guaranty was on the first page; that the first page of the document contains nothing incorporating the remaining three pages, which would alert the plaintiffs to the existence of additional pages; that the defendants' representatives or salespersons never discussed, mentioned or even referred to the remaining three pages; that they were manipulated into signing in a hurry; that the lease agreement was clipped in a clip-board making it appear that the agreement was a single page document; that they were not given a copy of the lease agreement at the time they signed and that they had to telephone a special number and request a copy.

The amended complaint, while conceding that at the bottom of the first page of the lease it reads "Page 1 of 4," alleges that such is tucked away in the far left corner in print size alleged to be "microprint."

The amended complaint further alleges that undisclosed pages concealed higher charges, indefinite automatic electronic deductions unless lessee gave a 60-day notice of cancellation, no

13

warranties from NLS, absolute obligation to pay, insurance obligations, late charges, attorneys' fees and expenses and a New York choice of forum.

Defendants' motion to dismiss includes copies of the leases and guarantees of the plaintiffs, which consist of a four-page document in booklet form, with all pages being attached and double-sided. On the bottom of page one, the signature page, in the left corner it states "Page 1 of 4." Additionally, in extremely small type, the paragraph, on the signature page, allowing automatic bank account deductions refers to paragraph 11, which is found on page three of the agreement. The lease agreements are the documentary evidence upon which defendants seek dismissal.

The defendants also contend that the terms of the finance lease agreements alleged to be burdensome, unfair and onerous are specifically allowed or imposed by Article 2A of the New York Uniform Commercial Code.

Prior to addressing the sufficiency of the various causes of action alleged in the amended complaint, consideration will be first be given to other issues raised by the motion papers. The first are the affidavits, submitted by plaintiffs in opposition to this dismissal motion, which included not only affidavits from the named plaintiffs but affidavits from five non-parties.

While the affidavits of the named plaintiffs are generally consistent with the allegations in the amended complaint, the affidavits of the non-parties attempt to allege an entirely new theory, with three of the non-party affiants raising issues of forgery. Mark Thomason alleges his signature was forged on the lease acceptance but not on the personal guarantee; Judson Ross alleges that it was impossible for him to execute the lease (and a personal guarantee), on behalf of Rapid Cash Advances, Inc., a Florida corporation, in which he is a principal, since, at the time he allegedly signed, he was in the Ukraine. The alleged forgery appears to have been by a former employee of

Rapid Cash Advances, Inc.  Finally, Keri Kettler, who signed a lease agreement on behalf of Yodarno, Inc., a Washington corporation, and personally guaranteed the lease, alleges that the copy of the lease she obtained from defendants differed from the lease which she signed and copied, at the time of execution, in that the lease she signed was only one page with the left corner stating "Page 1" rather than "Page 1 of 4."

While generally a court should consider affidavits to remedy any defects in the pleading on a motion to dismiss for insufficiency, the affidavits of these non-party affiants shall not be considered as the allegations are inconsistent and contrary to the allegations in both the affidavits of the named plaintiffs and the amended complaint and is an improper attempt at repleading without court leave.

The next issue is defendants' argument that the amended complaint must be dismissed since plaintiffs are attempting to plead various causes of action when in reality their claims are for unconscionability with their exclusive remedy being  recession under New York UCC §2-A-108. The law is well settled that the UCC does not displace common-law causes of action unless the particular Code provision expressly so provides (*Bank of Hawaii International Corp. v Marco Trading Corp.*, 261 AD2d 333 [1st Dept 1999], quoting *Hechter v New York Life Ins. Co.*, 46 NY2d 34, 39 [1978]). Since there is nothing in UCC §2-A-109 stating it replaces other available remedies, the plaintiffs are entitled to allege other available causes of action.  Accordingly, dismissal based upon this argument is denied.

Defendants also contend that the class allegation contained in the amended complaint should be stricken as the alleged RICO and fraud claims are not generally suitable for class action treatment since issues of reliance and scienter would predominate over any purported proof of a common

-4-

15

scheme to defraud. Additionally, to the extent plaintiffs seek treble damages under the RICO statute such would not be recoverable in a class action, pursuant to CPLR 901(b).

While the legal positions asserted above could be relevant when plaintiffs move for an order of class action certification, these arguments are premature. Accordingly, that branch of defendants' motion seeking to strike the class action allegations is denied without prejudice to renew at the appropriate time.

As to the issue of whether Challenger Deep Imports, Inc., a named plaintiff in the original complaint, may discontinue it claims, without court approval and without notice to all members of the putative class, appears to be an issue of first impression. Plaintiffs maintain that CPLR 908 is applicable only when there is an attempt to discontinue the class action itself, rather than a claim of an individual class member. The purpose of CPLR 908 is to protect the putative class and to discourage collusive settlements of class actions. Clearly the plaintiff Challenger Deep Imports, Inc.'s attempt to discontinue its claim is not based upon settlement with the defendants as the defendants object to discontinuation based upon a perceived prejudice to them. Therefore, this court finds that a voluntary discontinuance would have been permissible, however, it finds, no evidence that plaintiff Challenger Deep Imports, Inc. ever served a notice of discontinuance in a timely manner as provided by CPLR 3217(a). Accordingly, this application is denied without prejudice to renew in the context of a motion seeking an order of discontinuance, pursuant to CPLR 3217(c). Although, the motion should be on notice to the named plaintiffs and defendants, notice need not be given to the putative plaintiff class.

Finally, with respect to that branch of defendants' motion seeking an order dismissing the individual claims of plaintiffs Kevin Pludeman and Sarah Jane Hush, pursuant to CPLR 3211(a)(4),

-5-

**16**

based upon prior pending actions, such is denied. The prior pending actions were brought by NLS against Pludeman and Hush, in New York City Civil Court, based upon the personal guarantees. The relief sought in this action differs from the relief available, by way of counterclaim, in the Civil Court action and includes additional parties.

This court shall now address each of the causes of action alleged in the amended complaint.

## RICO CLAIMS

On a motion to dismiss, the factual allegations of the complaint must be accepted as true and the complaint must be liberally construed in the light most favorable to plaintiffs. (See, Cron v. Hargro Fabrics, Inc., 91 N.Y.2d 362 [1997].)

The elements of a cause of action under RICO are as follows: (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which effect interstate or foreign commerce (*Moss v Morgan Stanley, Inc.*, 719 F2d 5, 17 [2d Cir 1983], *cert. denied*, 465 US 1025 [1984]).

The defendants seek dismissal of the RICO claims on the grounds that the alleged predicate acts of mail and wire fraud are not pleaded with particularity; that the distinctness requirement of an enterprise is lacking and that plaintiffs cannot show a RICO injury. The defendants also maintain that the individual plaintiffs, as guarantors, have no standing as they suffered only a derivative RICO injury and that with respect to plaintiffs Kevin Pludeman, Chris Hanzsek and Hanzsek Audio, any RICO claims they may have had are barred by the 4-year statute of limitations applicable to RICO claims.

17

With respect to the alleged mail fraud the amended complaint at paragraph 91 list 3 mailings to plaintiff Pludeman, 4 mailings to plaintiff Hanzsek and 1 mailing to plaintiff Hush.

The predicate acts sounding in fraud must comply with Fed. R. Civ. P. 9(b) which provides that "[i]n all averments of fraud ...the circumstances constituting the fraud...shall be stated with particularity." To specify fraud with particularity, a plaintiff must allege specifically the circumstances of the fraud, including the content of any alleged misrepresentation, the date and place of the misrepresentation and the identity of the speaker or writer (*Cohen v Koenig*, 25 F3d 1168, 1173 [2d Cir 1994]). The amended complaint fails to give the content of the items mailed, fails to state how the items were false and misleading and fails to allege who made the misrepresentations.

With respect to the alleged wire fraud, the amended complaint alleges a single telephone call to plaintiffs Pludeman, Hanzsek and Hush. There is however no allegation concerning the content of the alleged misleading statements and no allegations as to the identity of the speaker. The attorneys for the plaintiffs, in an attempt to remedy this defect, assert in their memorandum of law that the monthly automatic electronic deductions from plaintiffs' bank accounts constituted wire fraud.

The signature page of the lease agreements provided for monthly automatic electronic deductions from the lessee's bank account and the lessee was required to provide a voided check for purpose of commencing said deductions. Therefore, the wire transfers did not defraud the plaintiffs.

Accordingly, this court finds that the amended complaint fails to sufficiently allege the predicate act of mail and wire fraud (*SMS Marketing & Telecommunications, Inc. v H.G. Telecom, Inc.*, 949 F Supp 134 [ED NY 1996]).

18

Additionally, as to the individual defendants, the amended complaint fails to allege facts sufficient to create an inference that each individual defendant knew of and participated in the fraud. It is well established that the mere fact that an individual is affiliated with a defendant corporation fails to satisfy Rule 9(b)'s pleading requirements as to that individual (*Mills v Polar Molecular Corp.*, 12 F3d 1170, 1175 [2d Cir 1993]).

The amended complaint fails to allege that the enterprise is distinct from the NLS and the allegation that the corporate defendant associated with its own employees or agents carrying on the regular affairs of the corporation fails to satisfy the distinctness requirement (*Riverwoods Chappaqua Corp. v Marine Midland Bank*, 30 F3d 339, 343-44 [2d Cir 1994]).

Accordingly, that branch of defendants' motion seeking dismissal of all RICO claims is granted, including any RICO conspiracy claim as well, as dismissal of the substantive RICO claims mandates dismissal of any RICO conspiracy claim (*Purgess v Sharrock*, 806 F Supp 1102, 1110 [SD NY 1992]). As such, this court finds no need to address those branches of the defendants' motion seeking dismissal of some of the RICO claims based upon either lack of standing or as barred by the statute of limitations.

*EFTA*

Plaintiffs' causes of action based upon Electronic Funds Transfer Act, 15 U.S.C. §1692, are dismissed as plaintiffs offer no opposition to that branch of defendants' motion seeking their dismissal. Defendants are seeking attorneys' fees, and a reference as to the amount of said fees, arguing that such claims were alleged in bad faith and for the purpose of harassment. This court finds that these claims were not alleged in bad faith, therefore, it denies that branch of the defendants' application for attorneys' fees.

*FDCPA*

The amended complaint alleges a cause of action for violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, alleging defendants used deceptive means in an attempt to collect a debt from the plaintiff Pludeman by sending him a phony summons and verified complaint, when no legal action was commenced.  While plaintiffs maintain that the FDCPA is applicable alleging that the claim against Pludeman was personal; since it is based upon his personal guaranty, 15 U.S.C. §1692a(5) defines the term "debt" as, "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes..."

Pludeman's alleged debt is not based upon a consumer's alleged obligation to pay money but rather a guaranty to pay an obligation of his business and therefore does not arise out of a transaction primarily for personal, family, or household purposes.

Accordingly, that branch of defendants' motion seeking dismissal of the cause of action alleging a violation of FDCPA is granted and the application for attorney fees is denied.

*FRAUD*

The elements of a cause of action for fraud include (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff.

CPLR 3016(b) provides that in a fraud action, the circumstances constituting the wrong shall be stated in detail.

As stated earlier, the amended complaint alleges that the plaintiffs were mislead into believing that the four-page lease agreement and personal guaranty was a single page document as

20

both the lease's acceptance and personal guaranty was on the first page; that the first page of the document contains nothing incorporating the remaining three pages, which would alert the plaintiffs to the existence of additional pages; that the defendants' representatives or salespersons never discussed, mentioned or even referred to the remaining three pages; that they were manipulated into signing in a hurry; that the lease agreement was clipped in a clip-board making it appear that the agreement was a single page document; that they were not given a copy of the lease agreement at the time they signed and that they had to telephone a special number and request a copy.

The law is well settled that a fraud may be committed by concealment as well as by positive falsehood or misrepresentation. While mere silence may constitute a fraud if there exists a legal duty to communicate to the other party, the allegations in the amended complaint go well beyond mere silence. In addition to failing to disclose material terms, the amended complaint alleges conduct which might lull a party into a false sense of security that the lease agreement and personal guaranty were a single page document, deliberately concealing the other three pages of the agreement. While it is true that the signature page, contrary to the amended complaint, does refer to paragraph 11, which is found on page three of the agreement, the type size could constitute evidence of intentional deception under such circumstances (*George v Lumbrazo*, 184 AD2d 1050 [4th Dept 1992]).

This court finds that the amended complaint sufficiently alleges a cause of action for common-law fraud as against the corporate defendant NLS, pursuant to CPLR 3016(b) as well as the individual defendants based upon the allegations that the individual defendants were officers of the corporation and that they participated in the fraud (*Finkel v D.H. Blair & Co., Inc.*, 213 AD2d 588 [2d Dept 1995]).

21

Also, contrary to defendants' position, this fraud claim is independent of any contract claim and where a party has fraudulently induced plaintiff to enter into a contract, it may be liable in tort.

Accordingly, that branch of defendants' motion seeking dismissal of the fraud cause of action is denied.

## NEGLIGENT MISREPRESENTATION

A cause of action for negligent misrepresentation requires that defendant: 1) had a duty to use reasonable care to impart correct information due to a special relationship between the parties; 2) that the information was false; and 3) that plaintiff reasonably relied on the information.

This action involves a commercial context and liability has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified (*Kimmell v Schaefer*, 89 NY2d 257 [1996]).

There is no allegation in the amended complaint of the existence of a special relationship, which requires a closer degree of trust than an ordinary business relationship, existing between the parties that would support a cause of action for negligent misrepresentation (*Fresh Direct, LLC v Blue Martini Software, Inc.*, 7 AD3d 487 [2nd Dept., 2004]).

Accordingly, that branch of defendants' motion dismissing this action for insufficiency is granted.

## PUNITIVE DAMAGES

This court finds that the amended complaint supports its demand for punitive damages as the allegations address more than a private wrong contending that defendants engaged in a course of conduct throughout the United States with such wanton dishonesty as to imply a criminal

22

indifference to civil obligations (*New York University v Continental Ins. Co.*, 87 NY2d 308 [1995]).

Accordingly, that branch of defendants' motion seeking to dismiss the demand for punitive damages is denied.

## BREACH OF CONTRACT

The amended complaint fails to allege a breach as there is no claim that defendants were actually in breach of any of the provisions of the four page lease. In fact, the amended complaint seeks to void the lease agreements based upon defendants' misleading plaintiffs into believing that the lease agreement was a single page document.

Accordingly, that branch of defendants' motion to dismiss the breach of contract claim is granted.

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Every contract is subject to an implied covenant of good faith and fair dealing and the covenant is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement" (*Jaffe v Paramount Communications Inc.*, 222 AD2d 17, 22-23 [1st Dept 1996]).

The amended complaint does not allege what benefits plaintiffs were deprived of due to the breach of the covenant of good faith and fair dealing.

Accordingly, that branch of defendants' motion seeking to dismiss the cause of action for breach of the covenant of good faith and fair dealing is granted.

23

## MONEY HAD AND RECEIVED AND UNJUST ENRICHMENT

The amended complaint sufficiently states causes of action for money had and received and unjust enrichment.

Accordingly, that branch of defendants' motion seeking to dismiss these causes of action are denied.

## SUMMARY

The defendants' motion is granted to the extent of dismissing the causes of action alleged in the amended complaint for violations of RICO, EFTA and FDCPA, and for negligent misrepresentation, breach of contract and breach of implied covenant of good faith and fair dealing.

The plaintiff Challenger Deep Imports, Inc. shall remain as a plaintiff in this action pending a motion for leave to discontinue its claims, pursuant to CPLR 3217(b).

Any branch of the defendants' motion not specifically addressed, in this summary, is denied.

DATED:   APRIL 7 , 2005

SHERRY KLEIN HEITLER
J.S.C.