**United States District Court**
**Southern District Of New York**

|  |  |
|---|---|
| Melinda Serin, Judson Russ, Long Soui Lim,<br>Peri Kettler, Gordon Redner, and Thomas J. Smith,<br><br>                                   Plaintiffs<br><br>                  v.<br><br>Northern Leasing Systems, Inc., Jay Cohen,<br>Rich Hahn, and Sara Krieger<br><br>                                   Defendants | }<br>}<br>}<br>}<br>}     No. 06 CV 1625 (SCR)<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>} |

**Plaintiffs' Memorandum of Law in Opposition to**
**Defendants' Motion To Dismiss Amended Complaint**

| | | |
|---|---|---|
| Dated: | New York, New York<br>January 14, 2009 | **Chittur & Associates, P.C.**<br>286 Madison Avenue Suit 1100<br>New York, NY 10017<br>Tel: (212) 370-0447<br>Attorneys for plaintiffs |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The RICO Claims Are Viable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The Mail/Wire Fraud Allegations Are Proper . . . . . . . . . . . . . . . . . . . . . . . 4

                1.      Reliance Is Not an Element of Mail Fraud . . . . . . . . . . . . . . . . . . . . 4

                2.      "Innocent" Mailings In Furtherance of the Fraudulent Scheme Suffice . . 6

                3.      Defendants Need Not Do The Mailings Themselves . . . . . . . . . . . . . . . 7

        B.      The Extortion Claims Are Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                1.      The Amended Complaint Rectifies the Deficiencies Identified by the
                        Decision; Hence, the Extortion Claims Are Not Barred . . . . . . . . . . . . . 9

                2.      The Fraudulent Scheme Sustains the Extortion Claims . . . . . . . . . . . . . 10

        C.      "Pattern" Is Properly Pleaded . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        D.      The Amended Complaint Properly Pleads an "Enterprise" . . . . . . . . . . . . . . . 15

                1.      A "Pattern of Racketeering Acts" May Suffice To Show "Enterprise" . . 15

                2.      In Any Event, the "Enterprise" is Properly Pleaded . . . . . . . . . . . . . . . 16

        E.      The RICO Claims Are Not Time-Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        F.      The Conspiracy Claims Are Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

II.     The Claims Under Section 349, G.B.L., are Viable . . . . . . . . . . . . . . . . . . . . . . . . 22

III.    Should the Court Find Pleading Deficiencies, Plaintiffs May Be Granted Leave to
        Amend In View of the Clear Existence of a Fraudulent Racketeering Scheme . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

*Cases*

*AARP v. 200 Kelsey Associates, LLC*, 2009 WL 47499, *2 (S.D.N.Y. Jan 8, 2009) . . . . . . . . . . 3

*Muscletech Research and Development, Inc. v. East Coast Ingredients, LLC,* 2004 WL 941815, *17(W.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2nd Cir. 2007) . . . . . . . . . . 8

*Azurite Corp. v. Amster & Co.*, 730 F.Supp. 571, 577 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . 16

*Badders v. United States,* 240 U.S. 391, 394 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 785 N.Y.S.2d 399, 403-04 (N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Bostic v. City of Binghamton*, 2006 WL 2927145, *6 (N.D.N.Y. Oct 11, 2006) . . . . . . . . . . . 25

*Bridge v. Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131 (2008) . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

*Buyers and Renters United to Save Harlem v. Pinnacle Group N.Y. LLC*, 575 F.Supp.2d 499, 508 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001) . . . . . . . . . . . . . . . . . . . . 18

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*,  808 F.Supp. 213, 235 (S.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2nd Cir. 2008) . . . . . . . . . . . . 7

*City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2nd Cir. 2008) . . . . . . . . . 7, 8

*Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, 2007 U.S. Dist. LEXIS 22097, at *25 (N.D.N.Y. Mar. 27, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Devilla v. Schriver*, 245 F.3d 192, 197 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 n.3 (E.D.N.Y.  2008) . . . . . . . . . . . . . . 23

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346  (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

*Eazypower Corp. v. ICC Innovative Concepts Corp.*, 2002 WL 31473813,  *2 (N.D.Ill. 2002)  10

*Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 180 (W.D.N.Y. 2003) . . . . . . . . . . 24

*First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89 (S.D.N.Y. 1993) . . . . . . . . . . 18

*Florida Evergreen Foliage v. Du Pont*, 135 F.Supp.2d 1271 (S.D.Fla. 2001) . . . . . . . . . . . . . 12

*Foster v. Wintergreen Real Estate Co.*, 2008 WL 4829674, *5 (W.D.Va. Nov 6, 2008) . . . . . . 4

*Fresh Meadow Food Services, LLC v. RB 175 Corp.*, 2008 WL 2566731, *5 (2nd Cir. Jun 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*G-I Holdings, Inc. v. Baron & Budd*, 238 F.Supp.2d 521, 546 (S.D.N.Y. 2002) . . . . . . . . . . . 18

*Ginsberg v. Government Properties Trust, Inc.*, 2008 WL 3833876, *3 (S.D.N.Y. Aug 13, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51 -52 (1st Cir. 2000) . . . . . . . . . . . 12

*Gulf Coast Development Group, LLC v. Lebror,* 2003 WL 22871914, *4 (S.D.N.Y. 2003) . . . 21

*H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989) . . . . . . . . . . . . . . . . . . . 3

*Hall American Center Associates Ltd. Partnership v. Dick*, 726 F.Supp. 1083, 1097 (E.D.Mich. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Hayden v. Pataki*, 449 F.3d 305, 343 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2nd Cir. 1990) . . . . . . . . . . . . . . . 20

*Ideal Steel Supply Corp. v. Anza*, 254 F.Supp.2d 464, 466 (S.D.N.Y. 2003) . . . . . . . . . . . . . . 7

*In re Crazy Eddie Securities Litigation,* 747 F.Supp. 850, 863 (E.D.N.Y. 1990) . . . . . . . . . . . 21

*Lemelson v. Wang Laboratories Inc.*, 874 F.Supp. 430, 434 (D.Mass.1994) . . . . . . . . . . . 10, 12

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 25

*Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2nd Cir. 2003) . . . . . . . . . . . . . . . 16

*Muscletech Research and Development, Inc. v. East Coast Ingredients, LLC,* 2004 WL 941815, *17 (W.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 260 (1994) . . . . . . . . . . . . . . . . . . . . . . 16

*New York v. Feldman*, 210 F.Supp.2d 294 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Parr v. U.S.,* 363 U.S. 370, 390 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Patrick Carter Associates, Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.,* 781 F.Supp. 207, 216 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pereira v. United States,* 347 U.S. 1, 8 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 173 (S.D.N.Y. 1998) . . . . . . . 21

*Pludeman v. Northern Leasing Systems, Inc.*, 860 N.Y.S.2d 422, 426 (N.Y. 2008). . . . . . . 8, 14

*Rafter v. Liddle*, 2006 WL 2255093, *6 (S.D.N.Y. Aug. 4, 2006) . . . . . . . . . . . . . . . . . . . . . . 20

*Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2nd Cir.1999) . . . . . . . . . . . . . . . . . . . . . . 9

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994) 17

*Rombach v. Chang*, 355 F.3d 164, 175 n. 10 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Schmuck v. United States,* 489 U.S. 705, 714-15 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schwartz v. Chan*, 142 F.Supp.2d 325, 329 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sony Music Entertainment Inc. v. Robison*, 2002 WL 272406 at *5 (S.D.N.Y. Feb. 26, 2002) . 17

*Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2nd Cir. 2008) . . . . . . . 7

*State Farm Mut. Auto. Ins. Co. v. Eastern Medical, P.C.* 2008 WL 3200256, *5 (E.D.N.Y. Aug 5, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stolow v. Greg Manning Auctions Inc.*, 258 F.Supp.2d 236, 247 (S.D.N.Y. 2003) . . . . . . . . . . 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007) . . . . . . . . . . . . . . . . 3

*Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2nd Cir. 2002) . . . . . . . . . . . . . . . . 20

*Tribune Co. v. Purcigliotti,* 869 F.Supp. 1076, 1101 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . 22

*Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.*, 886

iii

F.Supp. 1134, 1145 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*U.S. v. Ben Zvi*, 242 F.3d 89, 94 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*U.S. v. Eisen*  974 F.2d 246, 253 (2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Bagaric,* 706 F.2d 42, 55 (2nd Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Bortnovsky*, 879 F.2d 30, 36 (2nd Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Coonan*, 938 F.2d 1553, 1560 (2nd Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Eisen*, 974 F.2d 246, 251-54 (2nd Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Eppolito*, 543 F.3d 25, 48-49 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Freitag*, 768 F.2d 240, 244 (8th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Hickok*, 77 F.3d 992 (7th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mazzei,* 700 F.2d 85, 89 (2nd Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Slevin,* 106 F.3d 1086, 1088 (2nd Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Turkette*, 452 U.S. 576, 583 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Weatherspoon,* 581 F.2d 595, 601 (7th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . 7

*Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91 (2nd Cir.2003) . . . . . . . . . . . . . . . . 25

*Wilson v. Toussie,* 260 F.Supp.2d 530, 536 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wood v. Incorporated Village of Patchogue of New York*, 311 F.Supp.2d 344, *357 (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 425 F.Supp.2d 484, 500 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wynder v. McMahon*, 360 F.3d 73, 77 (2nd Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Zigman v. Giacobbe*, 944 F.Supp. 147, 153 (E.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## *Statutes*

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 1961(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Section 349, N.Y.G.B.L . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 22-25

PRELIMINARY STATEMENT

This is an action by six victims of Defendants' racketeering scheme to intimidate out-of-state individuals into paying tribute by commencing fraudulent lawsuits in New York City Civil Court.  Plaintiffs assert claims under RICO, and Section 349, N.Y.G.B.L.  New York's appellate courts have already required these very Defendants to answer fraud claims by others arising out of a related scheme.

Defendants seek dismissal under Rule 12(b)(6).  First, Defendants argue that their misrepresentations were to New York Courts, not to Plaintiffs themselves; hence, Plaintiffs cannot show "reasonable reliance" on Defendants' misrepresentations, and the mail/wire fraud claims are improper.  Defendants' argument is squarely contrary to *Bridge v. Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131 (2008).

Second, Defendants contend that Plaintiffs have not specified the contents of the mailings, or how such mailings were fraudulent.  This is also contrary to well-settled law that even innocent, foreseeable mailings may constitute mail fraud.  Further, at this pre-discovery stage, the claims against individual Defendants are properly based on their masterminding the fraudulent scheme at issue which, as the N.Y. Court of Appeals held, gives rise to an inference of *scienter*.

Third, Defendants claim that the earlier decision herein ("Decision") bars extortion as a predicate act under the Law of the Case Doctrine.  But the Decision disallowed extortion **standing alone** as a predicate act for RICO, which is not so now: Plaintiffs have also pleaded mail/wire fraud.  Besides, that Doctrine is discretionary, and the Court may revise its rulings. Hence, extortion is properly considered a predicate act.

1

Fourth, Defendants claim that the mailings at issue were "sporadic" and not part of a "pattern". This is frivolous, given the dozens of similar mailings over several years involving the unrelated 6 individuals in furtherance of the same fraudulent scheme. The Court may also take judicial notice of express pronouncements by two New York appellate courts, the lawsuits by Attorneys General of Missouri and Arizona, and mass media reports about Defendants' continuing scheme.

Fifth, Defendants object that the alleged "enterprise" is not distinct from Defendants, and each participant therein is not identified. That is incorrect, and Plaintiffs have clearly met the pleading requirements under Second Circuit law.

Sixth, Defendants contest the timeliness of 3 Plaintiffs' RICO claims (Serin, Russ and Kettler) based on Defendants' first electronic deductions from their business accounts over 4 years ago. Moreover, they say, Ms. Kettler knew of the forgery when she received a copy of the lease in February 2002. But the RICO time-bar commences only with a RICO injury, i.e., injuries resulting from Defendants' commencement and conduct of fraudulent lawsuits. In any event, the electronic deductions took place from Ms. Kettler's and Mr. Russ's company's accounts, not from their personal accounts, and were not RICO injuries. Ms. Serin had no business, and no deductions took place from her account.

Seventh, Defendants dispute the conspiracy claims for want of a substantive RICO claim, and for alleged failure to "specify how any of the individual defendants" manifested their agreement to the racketeering activity. But the substantive RICO claims are viable, and, the individual Defendants' continued masterminding of the scheme suffices at this pre-discovery stage.

2

Lastly, Defendants claim that the Decision did not grant leave for amending the 349 claim, and in any event, 349 does not apply to "these Plaintiffs or these facts."  Defendants are clearly wrong; the Decision required that the 349 claims needed to indicate the harm to public interest by Defendants' misconduct, and this requirement is met in the Amended Complaint. Plaintiffs never had any dealings with Defendants; they were members of the public wantonly hauled into Court in New York to pay tribute to Defendants.  Accordingly, the motion to dismiss should be denied.

<u>ARGUMENT</u>[1]

This Court may dismiss an action only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989) (citations omitted).   "The court must accept as true all factual allegations in the complaint, and draw all reasonable inferences in the light most favorable to the plaintiff," *AARP v. 200 Kelsey Associates, LLC*, 2009 WL 47499, *2 (S.D.N.Y. Jan 8, 2009) (Robinson, J.).  Moreover,

> courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See* 5B *Wright & Miller* § 1357 (3d ed.2004 and Supp.2007). The inquiry, as several Courts of Appeals have recognized, is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007).

---

[1]For the sake of brevity, Plaintiffs incorporate the factual assertions of the Amended Complaint ("AC"), Skoff Decl., "Ex. A".

3

Put differently, Plaintiffs "are entitled to prevail unless it appears beyond doubt that they can prove no facts in support of their claims which would entitle them to relief.," *Hayden v. Pataki*, 449 F.3d 305, 343 (2nd Cir. 2006) (citation omitted).

I.      The RICO Claims Are Viable

      A.      *The Mail/Wire Fraud[2] Allegations Are Proper*

"The essential elements of the offense of mail fraud are: '(1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme.'" *Foster v. Wintergreen Real Estate Co.*, 2008 WL 4829674, *5 (W.D.Va. Nov 6, 2008) (*quoting  Pereira v. United States*, 347 U.S. 1, 8 (1954)).  Quite apart from the concurrent holdings of the three different state courts of New York, Plaintiffs have clearly met these requirements.

      1.      Reliance Is Not an Element of Mail Fraud

Defendants contend that the mail fraud claims are improper because "Plaintiffs did not reasonably rely on any allegedly fraudulent mailings or communications to their detriment," DM10.[3]  This is directly contrary to controlling Supreme Court law.

---

[2]Defendants have briefed the issue of wire fraud along with mail fraud.  The Amended Complaint alleges, and Defendants themselves concede, Defendants' electronic deductions from bank accounts.  These deductions being in furtherance of the fraudulent scheme at issue constitute wire fraud, *see, e.g., U.S. v. Ben Zvi*, 242 F.3d 89, 94 (2nd Cir. 2001).  And "[b]ecause the [mail and wire fraud] statutes use the same relevant language, they are analyzed in the same way." *United States v. Slevin*, 106 F.3d 1086, 1088 (2nd Cir.1996).   *Accord, Muscletech Research and Development, Inc. v. East Coast Ingredients, LLC*, 2004 WL 941815, *17 (W.D.N.Y. 2004).  Therefore, the Court may appropriately consider wire fraud along with the mail fraud.  Defendants have provided the dates of the deductions, i.e., wire fraud, themselves, which were clearly part of the scheme.  *See, e.g., United States v. Eppolito*, 543 F.3d 25, 48-49 (2nd Cir. 2008).

[3]As used here, "DM" refers to "**Memorandum of Law In Support of Defendants' Motion to Dismiss the Amended Complaint**," Dkt. No. 33, filed Nov. 21, 2008; and "CX" refers to the Exhibits to the accompanying Chittur Declaration.

4

In *Bridge*, 128 S.Ct. 2131, 2134, the Supreme Court considered "whether a plaintiff asserting a RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations."  The case involved RICO claims based on mail fraud by bidders at auctions of tax liens in Cook's County, Illinois, against a competitor.  The bidders alleged that the competitor had filed certain false statements with the County; the mail fraud allegations were that the competitor "'mailed or caused to be mailed hundreds of mailings in furtherance of the scheme,' . . when they sent property owners various notices required by Illinois law," 128 S.Ct. 2131, 2136.  The District Court rejected these claims because the bidders were not "recipients of the alleged misrepresentations," *id.,* 2136.  The 7th Circuit reversed, and the Supreme Court affirmed, declaring categorically:

> we reject petitioners' contention that . . . reliance by the plaintiff is an element of a civil RICO claim predicated on a violation of the mail fraud statute. Congress chose to make mail fraud, not common-law fraud, the predicate act for a RICO violation. And "the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim."

*Bridge*, 128 S.Ct. 2131, 2141 (2008) (citation omitted).

Defendants' cases  predate *Bridge*, and are totally irrelevant.[4]  The only post-*Bridge*

---

[4]Defendants are disingenuous when they quote the Magistrate Judge's opinion in *Schuh v. Druckman & Sinel, LLP*, 2008 WL 542504 (S.D.N.Y. Feb. 29, 2008), DM9.  Although Judge Kaplan affirmed that recommendation, he expressly observed:

> The Court assumes, without having to decide, that a RICO or common law fraud plaintiff could make out a legally sufficient claim by alleging that a defendant deceived a third party and that plaintiff suffered injury as a proximate consequence. . . . There simply is nothing in the amended complaint that suggests that defendants . . made any false statements or material omissions in communications with plaintiffs or anyone else **upon which plaintiffs or anyone else relied.**

decision they cite, *State Farm Mut. Auto. Ins. Co. v. Eastern Medical, P.C.* 2008 WL 3200256,

*5 (E.D.N.Y. Aug 5, 2008), neither cited or discussed *Bridge* and is hence, of no consequence.

2.   "Innocent" Mailings In Furtherance of the Fraudulent Scheme Suffice

Defendants then argue that Plaintiffs have not detailed the "contents" of the 18 mailings

listed, "how each of the items was false and misleading," and "who made the representations,"

DM12.  This, they say, violates Rule 9(b).  Once again, Defendants misstate the law.

Over 40 years ago, the United States Supreme Court categorically held that "'innocent'

mailings – ones that contain no false information – may supply the mailing element [for mail

fraud]." *Parr v. U.S.*, 363 U.S. 370, 390 (1960); *accord, Schmuck v. United States,* 489 U.S. 705,

714-15 (1992); *Bridge*, 128 S. Ct. 2131, 2138; *Muscletech Research and Development, Inc. v.

East Coast Ingredients, LLC*, 2004 WL 941815, *17 (W.D.N.Y. 2004).  Thus, mail fraud does

not require that the specific mailing itself be fraudulent; "a mailing may be a 'routine' mailing or

even one that is sent for a 'legitimate business purpose' so long as it assists . . . in carrying out the

fraud." *United States v. Freitag*, 768 F.2d 240, 244 (8th Cir.1985).

Indeed, the mailing need not even be integral to the fraud:

> the use of the mails need not be an essential element of the scheme.
> *Pereira []*347 U.S. 1, 8 [].  It is sufficient for the mailing to be
> "incident to an essential part of the scheme," *ibid.*, or "a step in
> [the] plot," *Badders v. United States*, 240 U.S. 391, 394 (1916).

*Schmuck*, 489 U.S. at 710-711.  As another Court summarized, all that is required is that

defendants "act with the knowledge that use of the mails will follow in the ordinary course of

business or can reasonably be foreseen even though not intended." *Zigman v. Giacobbe*, 944

---

*Schuh*, , 7-cv-0366 (LAK), at 3 (Annexed as No. 1 in Defendants' Appendix) (emphasis in
original).

F.Supp. 147, 153 (E.D.N.Y. 1996).[5]  Thus, mail fraud occurs where the underlying fraudulent

scheme was clear from the complaint, even where the specific mailings were not detailed.[6]

  In any event, the Amended Complaint sets forth the contents of many of the mailings.

*See, e.g.,* AC5¶21-8¶32.  Copies of the mailings are also being submitted contemporaneously,

CX1, mooting this issue.  *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425

(2nd Cir. 2008); *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 234 (2nd Cir. 2008)

(documents "incorporated by reference in, the complaint" properly considered).

   3. <u>Defendants Need Not Do The Mailings Themselves</u>

> "To constitute a [mail or wire fraud]  violation . . . it is not
> necessary to show that [defendants] actually mailed [or wired] . . .
> anything themselves; it is sufficient if they caused it to be done."
> *Pereira v. United States*, 347 U.S. 1, 8 (1954); *accord McLaughlin*,
> 962 F.2d at 191 (mail fraud); *United States v. Whiting*, 308 F.2d
> 537, 540 (2nd Cir. 1962) (wire fraud), *cert. denied*, 372 U.S. 909
> (1963).

*City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 446 (2nd Cir. 2008).  Defendants

---

  [5]*See also Pereira,* 347 U.S. at 8-9 ("[w]here one does an act with knowledge that the use
of the mails will follow in the ordinary course of business, or where such use can reasonably be
foreseen, even though not actually intended," mail fraud); *Spira v. Nick*, 876 F.Supp. 553, 560
(S.D.N.Y. 1995) ("each defendant would be indictable for mail fraud if he or she knowingly
adhered to a fraudulent scheme and one or more mailings foreseeably were made in furtherance
of that scheme, irrespective of by whom the mailings were made", *citing United States v.
Weatherspoon,* 581 F.2d 595, 601 (7th Cir. 1978)).

  [6]*See, e.g., Ideal Steel Supply Corp. v. Anza,* 254 F.Supp.2d 464, 465 (S.D.N.Y. 2003)
("By filing, or directing National to file, by U.S. mail New York State sales tax returns that they
knew to be fraudulent on a quarterly (or monthly) basis for each reporting period at least since
1998 if not before, defendants Joseph and Vincent Anza on each occasion violated the federal
mail fraud statute (18 U.S.C. § 1341). Each violation constitutes a predicate act of racketeering
under 18 U.S.C. § 1961(b). To the extent that any of the false returns are filed with the State
electronically, defendants also violated 18 U.S.C. § 1343.  Each violation of this statute is a
predicate act of racketeering.")

need not personally place a letter in the mailbox.  *Brooke v. Schlesinger*, 898 F.Supp. 1076, 1086

(S.D.N.Y. 1995).  "A person causes mailings to be made if he directs employees to engage in

fraudulent actions . . . or if his fraudulent scheme makes the mailings reasonably foreseeable."

*United States v. Bortnovsky*, 879 F.2d 30, 36 (2nd Cir.1989); *accord*, *Buyers and Renters United*

*to Save Harlem v. Pinnacle Group N.Y. LLC*, 575 F.Supp.2d 499, 508 (S.D.N.Y. 2008).

Here, Defendants caused the mailings - dunning letters, threats, summons and complaint,

and legal documents.  These mailings were clearly foreseeable and a part of the fraudulent

scheme.  *See, e.g., United States v. Hickok*, 77 F.3d 992 (7th Cir.1996) (defendant submitted

fraudulent sales reports to cell phone company, which mailed him commission checks based in

part on those reports; held, use of the mails was "an essential part of Hickok's scheme to

defraud").

Defendants' objection that Plaintiffs "fail to distinguish between" the actions of each

Defendant, DM13, is equally misconceived.  Plaintiffs have pleaded the individual Defendants'

role, AC18¶¶88-19¶91.  Further details are exclusively within Defendants' knowledge; they need

not be pleaded at this pre-discovery stage.  *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 102 (2nd Cir. 2007); *Rombach v. Chang*, 355 F.3d 164, 175 n. 10 (2nd Cir. 2004).

As the New York Court of Appeals held, the individual Defendants were part of the top

management of the corporate defendant.  Given the massive nature of the fraudulent scheme,

which stretched over several years and was nationwide, and given the remarkable similarity of

allegations by completely unrelated persons, the individual Defendants' masterminding the

scheme may be inferred at this stage.  *Pludeman v. Northern Leasing Systems, Inc.*, 860 N.Y.S.2d

422, 426 (N.Y. 2008).  *See also City of New York v. Smokes-Spirits.com, Inc.,* 541 F.3d 425, 446

8

(2nd Cir. 2008) (suffices that defendant was "one of the participants in a fraudulent scheme which was furthered by the use of interstate transmission facilities,"citation omitted).  As the Second Circuit held under similar circumstances,

> Even assuming arguendo that the District Court was correct to find that the individual defendants acting in their official capacities could not be liable under the Jenkins Act for their companies' failures to comply with the reporting laws, the individuals allegedly committed the predicate acts of mail and wire fraud by directing the companies to use the mails and wires to sell cigarettes and to violate the Jenkins Act. These allegations are sufficient to allege a pattern of racketeering activity for purposes of RICO. *See Pereira,* 347 U.S. [1] at 8-9 [1954].

*Smokes-Spirits.com, Inc.,* 541 F.3d at 446

B.   *The Extortion Claims Are Proper*

1.   <u>The Amended Complaint Rectifies the Deficiencies Identified by the Decision; Hence, the Extortion Claims Are Not Barred</u>

Defendants cite the Law of the Case Doctrine as a bar to the extortion claims now.  But that Doctrine is "at best, a discretionary doctrine which does not constitute a limitation on the court's power," *Devilla v. Schriver*, 245 F.3d 192, 197 (2nd Cir. 2001); *accord*, *Krasnyi Oktyabr, Inc. v. Trilini Imps.*, 578 F. Supp. 2d 455  (E.D.N.Y. 2008).  It "permits a district court to revise its rulings 'at any time before the entry of final judgment.'"  *Schwartz v. Chan*, 142 F.Supp.2d 325, 329 (E.D.N.Y. 2001) (*quoting* Fed.R.Civ.P. 54(b), and *citing Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2nd Cir.1999)).[7]

The Decision had disallowed extortion as a predicate act because "lawsuits alone, absent

---

[7]In *Fogel v. Chestnut*, 668 F.2d 100, 108 (2nd Cir. 1981), DM14, the Second Circuit referred to the Doctrine in connection with its own decision in an earlier appeal.

any finding of fraud or other activity, were [not] sufficient to support a RICO claim," Decision at

7.  That is rectified in the amended complaint, which clearly sets forth the "fraud or other

activity" - including perjury - underlying the extortion.  The Hobbs Act claims are clearly proper.

*See, e.g., Hall American Center Associates Ltd. Partnership v. Dick*, 726 F.Supp. 1083, 1097

(E.D.Mich. 1989) ("plaintiffs' allegations-the defendants' filing of lawsuits and notices of lis

pendens as part of a scheme to extort the plaintiffs' Property, which included the defendants'

interference with the Joint Venture, the defendants' attempt to involve the United States Attorney

in the matter, and other harassment of third persons involved with the Property, Property to

which they knew they were not entitled-suffice to state a claim under the Hobbs Act and

consequently a predicate act under RICO.")

> 2.    The Fraudulent Scheme Sustains the Extortion Claims

In *United States v. Eisen*, 974 F.2d 246, 251-54 (2nd Cir.1992), the Second Circuit upheld

convictions for mail and wire fraud violations arising out of scheme by law firm to deprive civil

defendants and their liability insurers of money through the filing of fraudulent lawsuits, bribery,

and intimidation of witnesses and the creation of false photographs, documents and physical

evidence of accidents for use before and during trial could be RICO predicate act.  *See also*

*Lemelson v. Wang Laboratories Inc.*, 874 F.Supp. 430, 434 (D.Mass.1994) (mail and wire fraud

violations in case claiming extortion of millions of dollars through a pattern of litigation and

subsequent settlement over fraudulently obtained patents were RICO predicate acts); *Eazypower*

*Corp. v. ICC Innovative Concepts Corp.*, 2002 WL 31473813,  *2 (N.D.Ill. 2002) ("filing of

10

lawsuits as part of a scheme to extort money may support a RICO claim in patent cases").[8]  As

the Second Circuit explained,

> Litigants depend on the integrity of the conduct of participants in
> civil proceedings though disputing the validity of their opponents'
> claims to impose or resist civil liability. It is one thing to challenge
> the perception, memory, or bias of an opponent's witnesses; it is
> quite another for a party's lawyer and a witness to concoct
> testimony that they know has been wholly fabricated.

*U.S. v. Eisen*  974 F.2d 246, 253 (2nd Cir. 1992).[9]  That's precisely what Defendants have been

doing here: presenting "concoct[ed] testimony that they know has been wholly fabricated."  That

suffices to sustain RICO claims.

---

[8]Thus, for example, even though perjury by itself is not a predicate act for a RICO
violation, if those lies "constituted mail or wire fraud, 18 U.S.C. §§ 1341 and 1343, or an
obstruction of justice, 18 U.S.C. § 1503, then those cover-up acts theoretically may serve as
predicate acts."  *Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016,  1021-22 (7th Cir. 1992)
(*citing C & W Constr. Co. v. Brotherhood of Carpenters and Joiners, Local 745*, 687 F.Supp.
1453, 1467 (D.Haw.1988) ("The more reasoned rule would allow perjury to be a predicate act
under 18 U.S.C. § 1962(1), through 18 U.S.C. § 1503, where the plaintiffs allege that the perjury
was part of the pattern of racketeering."); *South Chicago Bank v. Notaro*, 1991 WL 21185
(N.D.Ill. Feb.12, 1991) (mailing false financial statements during litigation might be considered
predicate acts if mailings proximate cause of RICO injury); *Levit v. Brodner*, 75 B.R. 281, 285
(N.D.Ill.1987) (perjury and destruction of evidence in bankruptcy action might serve as predicate
act in subsequent RICO suit)).

[9]Thus, our courts have upheld claims based on abuse of the judicial process through the
filing of sham suits which were not even fraudulent but only meritless:
> A sham suit is one that is an abuse of the judicial processes. In *California
> Transport [v. Trucking Unlimited,* 404 U.S. 508 (1972)], the Supreme Court
> identified two types of sham activity: "misrepresentations ··· in the adjudicatory
> process" and the pursuit of "a pattern of baseless, repetitive claims." Thus, in
> *California Transport*, the Court held that a complaint alleging that the petitioner's
> competitors initiated administrative proceedings against the petitioner "without
> probable cause, and regardless of the merits," stated an antitrust cause of action.
*Columbia Pictures Industries, Inc. v. Professional Real Estate Investors, Inc.*, 944 F.2d 1525,
1529 (9th Cir.1991), *aff'd sub nom*, *Professional Real Estate Investors v. Columbia Pictures
Indus.*, 508 U.S. 49 (1993).  The instant case based on fraudulent lawsuits is that much stronger.

For example, the *Lemelson*, 874 F.Supp. 430, plaintiff sued for patent infringement, and that defendant sought to assert RICO counterclaims.  That defendant claimed that plaintiff had "extorted millions of dollars in settlement monies through a pattern of litigation involving infringement claims based on fraudulently obtained patents."  *Id*.  Rejecting a 12(b)(6) challenge, that Court upheld the RICO claim since the complaint alleged "that the taxing of victims with the prospects of vexatious litigation is an integral component of the racketeering scheme," *Lemelson*,  874 F.Supp. 430, 433.

The instant case is remarkably similar.  Defendants here routinely tax "victims with the prospects of vexatious litigation," which is "an integral component of the racketeering scheme." *Accord*, *Hall American*, 726 F.Supp at 1096[10]; *Florida Evergreen Foliage v. Du Pont*, 135 F.Supp.2d 1271 (S.D.Fla. 2001) (RICO claims upheld based on a pattern of witness intimidation, fraudulent depositions, and concealment of data and documents); *Gonzalez-Morales v. Hernandez-Arencibia*, 221 F.3d 45, 51 -52 (1st Cir. 2000) ("we will assume that the filing of frivolous suits may constitute RICO extortion in some instances").

---

[10]Hall American alleged that those defendants (Dick) "had made the wrongful use of economic fear to obtain property to which they are not, and know they are not, entitled."  After initially misrepresenting as a renter, Dick sent letters of intent to create evidence of a contract, although he did not have money for even the down payment, let alone complete financing.  He then filed frivolous lawsuits and notices of *lis pendens,* and took other steps - none of which steps was per se illegal - to prevent Hall American from making business decisions involving the property, and to force Hall American to sell him that property below market value.  As the Court summarized,

> The implicit threat was that, should the plaintiffs refuse to sell the Property, the Property would be tied up in litigation, the Joint Venture would collapse, the mortgage would be foreclosed, the high interest payments would continue to be owed, and the Property would be lost completely. Viewing the allegations in the complaint as true, the court cannot say that the plaintiffs have failed to allege a predicate act under the Hobbs Act.

*Hall American*, 726 F.Supp at 1096.

C.     *"Pattern" Is Properly Pleaded*

Defendants argue that the "pattern" requirement is not met here because the mailings were "sporadic instances" which involved "just a few victims" and was "over just a few years," DM16.  This is frivolous.

The claims at issue involves six, unrelated individuals from different parts of the country making similar allegations about Defendants.  Further, the mailings were of substantially similar form letters, in the same pattern, which occurred over a period of several years.  As Plaintiffs assert, "the repeated nature of manner in which Defendants acted and their wrongful behavior set the pattern and practice of a scheme," AC4¶18.  That suffices.  *See, e.g., Fresh Meadow Food Services, LLC v. RB 175 Corp.*, 2008 WL 2566731, *5 (2nd Cir. Jun 24, 2008) (one wire fraud of August 1997, and the two acts of mail fraud in January 2001; held, "the requisite relationship between the alleged racketeering acts is clear: both were committed as part of an ongoing scheme . . . Where the racketeering acts span nearly three and one-half years, as they do here, the presence or absence of the other factors is less critical.")

Moreover, this Court may take judicial notice of certain facts.  The New York Court of Appeals held, upholding claims by businesspersons who signed the deceptive leases with Defendants:

> [T]he fraud in this case was not an isolated incident, but rather a
> nationwide scheme that took place over a number of years. The
> very nature of the scheme, as alleged, gives rise to the reasonable
> inference - re-buttable though it may later prove to be - that the
> officers, as individuals and in the key positions they held, knew of
> and/or were involved in the fraud. . .
> Here it is significant that plaintiffs, unrelated to one another, all
> registered parallel complaints.

13

*Pludeman*, 860 N.Y.S.2d at 426.  The claims at bar are by individuals lassoed in by Defendants in the related scheme under the pretext of the deceptive lease.[11]

Defendants' scheme has also been the subject of mass media attention all over the country[12].  CX2.  So also, the Attorney Generals of Arizona and Mississippi have sued Defendants for fraudulent tactics, which proceedings were settled by Defendants. CX3.[13]

In sum, all that Defendants required to ensnare someone in their racketeering scheme was bank account information, and that the Form Lease be signed by ***someone***.  Ms. Serin had neither a business nor a business bank account, but somehow Defendants roped in her to.  Defendants have converted their Form Lease into a potent device for a massive scam with great success.[14]

Given this well-known, systematic unlawful scheme uniformly decried all over the

_____

[11]That Court also found that "the language, structure and format of the deceptive lease form and the systematic failure by the salespeople to provide each lessee a copy of the lease at the time of its execution that permits, at this early stage, an inference of fraud against the corporate officers in their individual capacity," *Pludeman*, 860 N.Y.S.2d at 426.  In other words, Defendants' ostensibly legitimate business was based on a document, and practices, designed to deceive.

[12]S. Kelleher, *Merchants Complain Credit-Card machine peddlers trap them into costly leases,* The Seattle Times, Oct 19, 2008; *"Is a Corporation scamming Small Businesses?"* broadcast on New York channel 7 on May 17, 2007; "*Alleged Fraud Targeting Small Businesses?*" (broadcast on New York channel 7 on June 12, 2007); C. Young, "*Nationwide scheme' in Orange County: 2 businesses say leasing company altered contracts*," Times Herald-Record, Feb. 24, 2008.

[13]"*Firm that leases credit Card machines defrauded small businesses in Missouri of thousands of dollars, Nixon says,*" Apr. 9, 2007; "*Firm that leases credit Card machines to pay $25,000 in restitution, $5,000 to the state in agreement with Nixon.*"

[14]Even a cursory search in the web reveals the enormous number of complaints against Defendants for fraudulent practices.  *See, e.g.*, ripoffreport.com, complaintsboard.com.

14

country; the concurrent decisions of the appellate courts in New York;[15] and Defendants' conduct in cases where victims have fought back,[16] the ineluctable conclusion is that the systematic misconduct at issue is intentional and orchestrated by Defendants to continue collecting millions of dollars every month.  *See also Eppolito*, 543 F.3d at 48-49 ("[A] RICO conspiracy continues until the objectives of the conspiracy are either accomplished or abandoned.").

      D.    *The Amended Complaint Properly Pleads an "Enterprise"*

Defendants argue that the Amended Complaint does not plead an enterprise distinct from defendants.  This is a complete misreading of the pleading as well as controlling law.

      1.    <u>A "Pattern of Racketeering Acts" May Suffice To Show "Enterprise"</u>

The "enterprise" need be no more than the sum of the predicate racketeering acts.  *United States v. Coonan*, 938 F.2d 1553, 1560 (2nd Cir.1991) ("proof of various racketeering acts may be relied on to establish the existence of the charged enterprise."); *United States v. Mazzei,* 700 F.2d 85, 89 (2nd Cir.1983) (RICO's legislative history did not require, and "it does not make sense to import a 'distinctiveness' requirement"); *United States v. Bagaric,* 706 F.2d 42, 55 (2nd Cir.1983) ("We have upheld application of RICO to situations where the enterprise was, in effect, no more

---

[15] *Pludeman v. Northern Leasing Systems, Inc.*, 837 N.Y.S.2d 10 (1st Dept. 2007), *aff'd*, 860 N.Y.S.2d 422, 426 (N.Y. 2008)

[16] Indeed, *Northern Leasing v. Turner*, Index No. 602006/04 (N.Y. Sup., N.Y. Co.), CX4 - is illustrative.  While Mr. Turner was incapacitated by at least 14 different sedatives in the ICU in an Arizona hospital, Defendants' agent obtained his signatures, through fraudulent misrepresentations, on 4 Form Leases.  Out of the 18 credit card processing machines allegedly leased but not needed by Mr. Turner's restaurants, several of the machines were not even delivered, while the 6 which were delivered were useless.  Despite being fully aware of all this, Defendants sued to recover over $50,000 from Mr. Turner - plus attorneys' fees and expenses - and have indulged in scorched earth litigation tactics instead of offering him reasonable compensation.

than the sum of the predicate racketeering acts."), *abrogated on other grounds*, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 260 (1994).[17]  Since the predicate acts are properly pleaded, that suffices for now.

2.    In Any Event, the "Enterprise" is Properly Pleaded

Plaintiffs "are not required to plead the existence of the enterprise with particularity, and may allege a short and plain statement of the enterprise under Rule 8," *Azurite Corp. v. Amster & Co.*, 730 F.Supp. 571, 577 (S.D.N.Y. 1990); *accord*, *Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*,  808 F.Supp. 213, 235 (S.D.N.Y. 1992); *Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Transworld Mechanical, Inc.*, 886 F.Supp. 1134, 1145 (S.D.N.Y. 1995). Moreover, at this pleading stage, plaintiffs cannot be required to plead facts which are exclusively within defendants' knowledge.  *See, e.g., Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2nd Cir. 2003).

The RICO enterprise can be, quite simply, "a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).  A corporation may be one of the participants in such enterprise.  As the Second Circuit held, it may be

> held liable as a defendant under section 1962(c) where it associates
> with others to form an enterprise that is sufficiently distinct from
> itself. In this regard we have noted that a section 1962(c) claim
> may be sustained where there is only a partial overlap between the
> RICO person and the RICO enterprise, *Jacobson v. Cooper*, 882

---

[17]*Accord, United States v. Ferguson*, 758 F.2d 843, 853 (2nd Cir.1985) ("RICO charges may be proven even when the enterprise and predicate acts are functionally equivalent, and the proof used to establish them coalesced." (citations omitted)); *Moss v. Morgan Stanley, Inc*., 719 F.2d 5, 22 (2nd Cir.1983) (*Mazzei* rejected "the Eighth Circuit's view that the evidence offered to prove the 'enterprise' and 'pattern of racketeering' must necessarily be distinct").

> F.2d 717, 720 (2nd Cir.1989), and that a defendant may be a "RICO
> 'person' and one of a number of members of the RICO
> 'enterprise,'" *Cullen v. Margiotta*, 811 F.2d 698, 730 (2nd Cir.),
> *cert. denied*, 483 U.S. 1021 (1987). Nevertheless, by alleging a
> RICO enterprise that consists merely of a corporate defendant
> associated with its own employees or agents ***carrying on the***
> ***regular affairs of the defendant***, the distinctness requirement may
> not be circumvented.

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2nd Cir. 1994).[18]

*Accord, Wood v. Incorporated Village of Patchogue of New York*, 311 F.Supp.2d 344, *357

(E.D.N.Y. 2004) (Village mayors and chief constables "sufficiently distinct RICO persons from

the RICO enterprise").

Thus, for example, in *Stolow v. Greg Manning Auctions Inc.*, 258 F.Supp.2d 236, 247

(S.D.N.Y. 2003), a stamp dealer asserted RICO claims against various defendants whom he

accused of participating in a bid-rigging scheme. The "enterprise" comprised of 9 corporations

and 7 individuals, *id.* at 247, which was upheld. *Stolow*, 258 F.Supp.2d at 247 ("Stolow claims

that 'all of the defendants acted individually and in consort [sic] to support the illegal enterprise

and are members of the enterprise.'").  This reasoning is fully applicable here.

The enterprise here is ***not*** just Northern Leasing and its employees conducting a

legitimate business of financing equipment leases.  Defendants do not claim that filing fraudulent

lawsuits based on wilfully false, perjurious statements is Northern Leasing's "regular" business.

Hence, Defendants, together with others such as certain vendors and  attorneys, constitute an

enterprise distinct from defendants.  *Sony Music Entertainment Inc. v. Robison*, 2002 WL

272406 at *5 (S.D.N.Y. Feb. 26, 2002) (Sony, the RICO person, could also be considered part of

---

[18]All emphasis in quotations are supplied.

the enterprise, even though Sony was part-owner of an entity identified as part of the enterprise,

"because Sony does not constitute the entire enterprise."); *G-I Holdings, Inc. v. Baron & Budd*,

238 F.Supp.2d 521, 546 (S.D.N.Y. 2002) (sole defendant law firm could be conducting an

association-in-fact enterprise comprised of law firm, various local counsel, doctors and/or

unions); *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001)

(corporation's "regular" business conducted fraudulently by sole stockholder and president;

employee "who conducts the corporation's affairs through an unlawful RICO 'pattern ⋯ of

activity,' §1962(c), uses that corporation as a 'vehicle' whether he is, or is not, its sole owner.").

   A partial overlap between defendants and the "enterprise" is clearly permitted.

Defendants cite no authority - and we found none - mandating dismissal of a RICO claim just

because the plaintiff could not identify all the participants in the racketeering enterprise.

   Defendants' reliance on *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89

(S.D.N.Y. 1993), DM19, is misconceived.  That case involved a mortgagee's RICO claims

against a mortgage broker and unrelated borrowers who were alleged to have made

misrepresentations in connection with mortgage loans.  Judge Mukasey held that a RICO

"enterprise" was not supported even by "common sense," because

> it appears at worst that several borrowers each committed a similar
> but independent fraud with the aid of a particular lender, and that
> each such borrower acted on a particular occasion to benefit
> himself or herself and not to assist any other borrower. That series
> of discontinuous independent frauds is no more an "enterprise"
> than it is a single conspiracy.

820 F.Supp at 98.

   That is not the case here; every action in the fraud and every lawsuit was to benefit

Defendants.  Moreover, *First Nationwide* cannot be read to have overruled *Coonan*, 938 F.2d

1553, and other decisions discussed above that an enterprise may be simply the sum of predicate

acts.  As Judge Karas observed, Judge Mukasey's holding on "enterprise" was not even briefed

on appeal, the opinion being affirmed on the issue of RICO "injury".  *World Wrestling

Entertainment, Inc. v. Jakks Pacific, Inc.*, 425 F.Supp.2d 484, 500 (S.D.N.Y. 2006).[19]

     E.     *The RICO Claims Are Not Time-Barred*

     Defendants assert that the RICO claims of "three Plaintiffs" - Mr. Russ, Mr. Lim, and Ms.

Kettler - are time-barred because these individuals knew about the forged leases by March 1,

2002, DM21.[20]  Defendants also argue that the first unauthorized electronic deduction from these

Plaintiffs' bank accounts took place over 4 years ago, *id*.  Defendants misstate the facts as well as

applicable law.

     First, the RICO 4-year statute of limitations "begins to run 'when the plaintiff discovers

---

[19]*Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y.1987), DM19,
involved real estate purchasers' RICO claims that the defendant title insurance company formed
an "enterprise" with several real estate attorneys for rebating premiums.  Judge Leisure directed
the plaintiffs to replead because they had not specified how the individuals joined together as a
group; each could have been acting, independent of the others, to benefit from the rebating.  *See
Blue Cross of California v. SmithKline Beecham Clinical Laboratories, Inc.*, 62 F.Supp.2d 544,
551 (D.Conn. 1998).

[20]Defendants also assert a time-bar against Mr. Lim's claims based on his receipt of their
Summons and Complaint in 2001, and subsequent protest to Defendant, DM21.  This is
frivolous.  Mr. Lim's receipt of these documents was not a "RICO injury" to commence the
statute of limitations.  Defendants never responded to his protests; instead, they proceeded to
enter a default judgment against him in May 2004, which Mr. Lim learnt about only in August
2004.  Defendants may argue to the jury that it was unreasonable for him to believe, based on
defendants' silence, that the lawsuit was an error, and that with the evidence he sent, defendants
would voluntarily withdraw that lawsuit.  But that is a factual issue which cannot be resolved
now.  As Judge Pollack held in the very case cited by defendants, *In re Sumitomo Copper
Litigation,* 104 F.Supp.2d 314, 322 (S.D.N.Y. 2000), DM21, "Plaintiffs' allegations suffice to
preclude dismissal on statute of limitations grounds."

or should have discovered the ***RICO injury***.'" *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 35 (2nd Cir. 2002) (citation omitted); *accord, Burrowes v. Combs*, 2005 WL 670644, *1 (2nd Cir. 2005); *Rafter v. Liddle*, 2006 WL 2255093, *6 (S.D.N.Y. Aug. 4, 2006).  That injury

> must be caused by a pattern of racketeering activity violating
> section 1962 or by individual RICO predicate acts. *See Bankers
> Trust Co. v. Rhoades,* 859 F.2d 1096, 1100 (2nd Cir.1988), *cert.
> denied,* 490 U.S. 1007 (1989).

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2nd Cir. 1990).

Here, the pattern of racketeering activity was defendants' mail and wire fraud, and commencement or threat of bogus legal proceedings based on false representations.  The ***RICO injury*** is, thus, ***not*** the forged leases or wrongful electronic deductions.

Rather, RICO injuries are those inflicted by Defendants' racketeering scheme.  Plaintiffs' injuries are thus (a) inconvenience, annoyance, distress, waste of time and resources, and the nuisance in responding to Defendants's dunning calls, threats, fraudulent lawsuit, retaining lawyers and incurring legal expenses therefor; and (b) adverse effect upon their credit rating.

Defendants do not claim that any of these RICO injuries occurred beyond the 4-year limitation period.  Thus, the RICO claims are clearly timely.

Second, Defendants' contention based on their electronic deductions is misconceived. Ms. Serin did not have any business, and no "deductions" took place.  With respect to Mr. Russ and Ms. Kettler, the deductions took place from their company's business accounts, i.e., from accounts of Rapid Cash Advances, Inc., and Yodamo, Inc., not from their personal accounts. Moreover, ***their personal RICO injuries commenced only after these electronic deductions stopped***.  Thus, no issue of statute of limitations arises with respect to any Plaintiff.

20

F.    *The Conspiracy Claims Are Proper*

Defendants object to the RICO conspiracy claims because (a) the "substantial RICO claim" is infirm; and (b) Plaintiffs' allegations are "conclusory," DM, 22-23.  This is baseless.

But the 1962(c) claims are not infirm, as already seen.  Besides, "Pleadings averring conspiracy are properly measured under the 'liberal pleading requirements of Rule 8(a).'" *UFCW Local 174 Commercial Health Care Fund v. Homestead Meadows Foods Corp.,* 2005 WL 2875313, *2 (S.D.N.Y. Nov. 1, 2005) (*quoting Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2nd Cir.1990)).[21]  Plaintiffs have only to give "fair notice" of a claim and "the grounds upon which it rests". *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346  (2005) (citation omitted). Rule 8 is "not meant to impose a great burden upon a plaintiff." *Id.*   The Rule is meant to ensure fair and reasonable notice, not technicality, and "extensive pleading of the facts is not required." *Wynder v. McMahon*, 360 F.3d 73, 77 (2ⁿᵈ Cir.2004) (citation omitted).[22]

Here, Plaintiffs have alleged that Defendants "knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above with the knowledge that they were in furtherance of that pattern of racketeering activity,"AC30¶108.   This suffices for present purposes; as the Court

---

[21]*Accord, Kottler v. Deutsche Bank AG  2009 WL 55885, 9 (S.D.N.Y. Jan 9, 2009); Wilson v. Toussie*, 260 F.Supp.2d 530, 536 (E.D.N.Y. 2003); *Gulf Coast Development Group, LLC v. Lebror*, 2003 WL 22871914, *4 (S.D.N.Y. 2003) ("the pleading requirements with respect to a RICO conspiracy . . . are governed by FRCP 8(a)").

[22]*Accord,. Leatherman v. Tarrant Co. Narcotics Intell. and Coord. Unit*, 507 U.S. 163, 167- 68 (1993) (greater specificity is required only in the specific circumstances in which Rule 9(b) is applicable); *Schwartz v. Michaels,* 1992 WL 184527, at * 26 (S.D.N.Y. July 23, 1992) (pleadings under § 1962(d) are analyzed pursuant to the more liberal standards of Rule 8(a)); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 173 (S.D.N.Y. 1998); *In re Crazy Eddie Securities Litigation,* 747 F.Supp. 850, 863 (E.D.N.Y. 1990).

held in *Patrick Carter Associates, Inc. v. Rent Stabilization Ass'n of N.Y.C., Inc.*, 781 F.Supp.

207, 216 (S.D.N.Y. 1991):

> While this allegation could be said to be nothing more than boilerplate, the Court believes that when considered in conjunction with the other allegations of the Complaint, it is sufficient to charge a RICO conspiracy.

*Accord, Tribune Co. v. Purcigliotti*, 869 F.Supp. 1076, 1101 (S.D.N.Y. 1994).[23]

II.     The Claims Under Section 349, G.B.L., are Viable

Defendants contend that (a) Plaintiffs did not have leave to amend this claim; and (b) that

349 does not apply "to these Plaintiffs or to these facts," DM23.  This contention is baseless.

First, the Decision imposed no limitations on the leave to amend.  It had faulted the 349

allegations for giving "no indication of how these six individual episodes could be construed to

have a demonstrable impact on the public at large," Decision at 9.  That is rectified in the

Amended Complaint.

Second, Section 349 is clearly applicable.  That provision was "intended to be broadly

applicable, extending far beyond the reach of common law fraud."  *New York v. Feldman*, 210

F.Supp.2d 294 (S.D.N.Y. 2002).  Its scope "is intentionally broad, applying 'to virtually all

economic activity'," *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 785

N.Y.S.2d 399, 403-04 (N.Y. 2004) (citation omitted).  It permits recovery by "any person" not

just consumers:

---

[23]Indeed, here, Plaintiffs have gone much farther and even set forth the role played by each defendant, AC18¶¶88-90.  "Considered as a whole, these allegations 'provide[ ] a substantial factual basis from which to infer an agreement among these defendants,'" *United States Fire Ins. Co. v. United Limousine Service, Inc.*, 303 F.Supp.2d 432, 454 (S.D.N.Y. 2004) (citations omitted).

22

> we do not agree with plaintiff that precluding recovery here will
> necessarily limit the scope of section 349 to only consumers, in
> contravention of the statute's plain language permitting recovery by
> any person injured "by reason of" any violation . . .
>
> **********          **********          **********
>
> [I]t is beyond dispute that section 349(h) permits an actually
> (nonderivatively) injured party to sue a tortfeasor. We hold simply
> that what is required is that the party actually injured be the one to
> bring suit.

*Blue Cross,* 785 N.Y.S.2d at 403-04.[24]

Here, Plaintiffs are individuals, not businesses.  Defendants brought fraudulent collection

actions against Plaintiffs personally; as the Amended Complaint asserts,

> while Defendants commenced these actions claiming to be
> financiers under equipment finance leases with businesses,
> Defendants never sued the businesses themselves.

AC4¶17.  There were no transactions between Plaintiffs and NLS, fraudulent or otherwise.  *See,*

*e.g.,* AC at ¶¶ 19-84.  Indeed, ***Ms. Serin is not even a businessperson***.

349 protection cannot be denied simply because ***some*** Plaintiffs also happen to be

business proprietors; to hold otherwise  "misinterprets the statute." *Dupler v. Costco Wholesale*

*Corp.*, 249 F.R.D. 29, 43 n.3 (E.D.N.Y.  2008)(rejecting argument that businesses should be

excluded from a 349 class).[25]

---

[24]Thus, for example, Section 349 claims have been upheld against a collection bureau for
sending deceptive debtor notices using simulated telegram formats. *In re Scrimpsher*, 17 B.R.
999, 1015 (Bkrtcy. N.D.N.Y. 1982).  *See also Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d
256, 264 (2nd Cir.1995) ("corporate competitors now have standing to bring a claim under this
[statute] ... so long as some harm to the public at large is at issue"); *H2O Swimwear, Ltd. v.
Lomas,* 560 N.Y.S.2d 19, 21 (1st Dep't 1990) (same).

[25]*Accord, M.V.B. Collison, Inc., v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 57930, 2007
WL 2288046, at *4 (E.D.N.Y Aug. 8, 2007); *Constr. Tech., Inc. v. Lockformer Co., Inc.*, 704 F.

Moreover, the consumer-orientation requirement of the statute is met where "some harm to the public at large is at issue." *Consol. Risk Servs., Inc. v. Auto. Dealers WC Self Ins. Trust*, 2007 U.S. Dist. LEXIS 22097, at *25 (N.D.N.Y. Mar. 27, 2007) (citation omitted); *Excellus Health Plan, Inc. v. Tran*, 287 F. Supp. 2d 167, 180 (W.D.N.Y. 2003) ("The critical concern is 'whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor,'" *quoting Securitron*, 65 F.3d at 264).  Defendants' misconduct clearly harms the public interest - especially New Yorkers - significantly.  *Eisen*, 974 F.2d at 253.[26]  Thus, Defendants' misconduct was violative of Section 349.[27]

III.   Should the Court Find Pleading Deficiencies, Plaintiffs May Be Granted Leave to Amend In View of the Clear Existence of a Fraudulent Racketeering Scheme

"The Second Circuit has instructed that 'leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., *if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him*

---

Supp. 1212, 1222 (S.D.N.Y. 1989); *Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1089, n.6 (S.D.N.Y. 1988).  *See also Sulner v. General Accident Fire & Life Ins. Co.*, 471 N.Y.S.2d 794, 796 (N.Y. Sup. 1984)("In supporting passage of the legislation, the Attorney General took the time to underscore its application"; "a business itself will be able to use the private right of action against another business engaged in deceptive practices and thereby obtain increased legal protection," *citing Memorandum of Attorney General* (contained in Bill Jacket for ch. 346 of 1980 N.Y. Laws)).

[26]*Accord, Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 294 (S.D.N.Y. 1996)(where healthcare provider alleged that insurer had failed to timely and fully reimburse provider for medical services rendered, "although [the insurer's] deceptive acts allegedly impede plaintiffs' ability to earn a living, they may also affect the public interest").

[27]Defendants incorporate various unspecified arguments from their earlier brief.  Should this Court choose to consider those arguments, Plaintiffs respectfully rely on their own brief in opposition.

*to relief*.'"  *Ginsberg v. Government Properties Trust, Inc.*, 2008 WL 3833876, *3 (S.D.N.Y.

Aug 13, 2008) (*quoting Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2nd Cir. 2001));

*accord*, *Kottler*, 2009 WL 55885, *4.

  Here, the Decision addressed only two issues:  extortion, *per se*, as a RICO violation, and

the pleading sufficiency of Section 349.  Those identified deficiencies have been rectified in the

Amended Complaint.  However, Defendants raise several other issues in this motion.  While

these are addressed above, should the Court find a pleading deficiency in some other respect,

leave to amend should be granted **because unquestionably, the underlying racketeering scheme**

**is clear**.  It cannot be said "beyond doubt" that Plaintiffs can "prove no facts" entitling them to

relief.  *Van Buskirk v. The New York Times Co.*, 325 F.3d 87, 91 (2nd Cir.2003)(leave to file an

amended complaint should be granted "when a liberal reading of the complaint gives any

indication that a valid claim might be stated"); *accord*, *Bostic v. City of Binghamton*, 2006 WL

2927145, *6 (N.D.N.Y. Oct 11, 2006).

CONCLUSION

  Defendants' motion to dismiss must be denied in its entirety with costs. Alternatively,

Plaintiffs should be granted leave to amend the Complaint.

Dated:  New York, New York    **Chittur & Associates, P.C.**
     January 14, 2009


                /s/
             By:  Krishnan Chittur, Esq. (KC 9258)
             286 Madison Avenue Suite 1100
             New York, New York 10017
             Tel: (212) 370-0447
             Attorneys for Plaintiffs