**Northern** **Leasing** **Systems, Inc.**

September 27, 2004

Melinda J. Serin
5135 Coldwater Canyon Ave.
Sherman Oaks CA 91423

Lease Number: **0228846**

Re: **Equipment Lease Agreement**

Balance: **$1,238.60**

# **FINAL NOTICE**

Dear Melinda J. Serin,

You have failed to respond to our previous requests for payment.

This is to advise you that we are going to take the necessary steps to collect the balance due. This may include legal proceedings, and if reduced to judgement will increase the monies due on this claim.

This is your **FINAL NOTICE.**

Take this last opportunity to resolve this matter at (800) 683-5433 extension #8427.

Very Truly Yours,

Bonita Burton

Northern Leasing Systems, Inc.
Legal Collections Department

Northern Leasing Systems, Inc.
132 W 31st Street
New York NY 10001

Monday – Friday 8:30am – 8:00pm

52L-H

**Northern Leasing Systems, Inc.**

March 1, 2004

Melinda J. Serin
5135 Coldwater Canyon Ave.
Sherman Oaks, CA 91423

Re: <u>Northern Leasing Systems, Inc v. Melinda J. Serin</u>
  Lease #: 0228846 Outstanding Balance: **$2,478.00** (excluding Attorney Fees).

Dear Melinda J. Serin:

Please be advised Northern Leasing Systems, Inc has obtained a summons/complaint against you due to the default on the above-referenced lease.

Accordingly, Northern Leasing Systems, Inc will accept **$743.00** with the return of the equipment to satisfy your Outstanding Balance of $2,478.00 **as settlement in full.**

Your payment of **$743.00** is due on or before **March 15, 2004.** Please write your lease number **0228846** on your payment and send to:

> **NORTHERN LEASING SYSTEMS, INC**
> **P.O. BOX 7861**
> **NEW YORK, NY 10116**
> **ATTN.: Bonita Burton**

**Payment is to be made payable to Northern Leasing Systems, Inc.** Upon clearance of your payment, Northern Leasing Systems, Inc. will release **Melinda J. Serin** ("Personal Guarantor") and **JIM CAMERON GARAGE DOORS** ("Lessee") from any further lease obligations. Additionally, any action previously commenced against **Melinda J. Serin,** if any, in the Civil Court City of New York will be withdrawn by virtue of this settlement.

**If Northern Leasing Systems, Inc does not receive the above-mentioned payment by March 15, 2004, this settlement offer will be null and void. Accordingly, Northern Leasing Systems, Inc will continue with the legal action. As personal guarantor Melinda J. Serin will be responsible for any court costs and reasonable attorney fees incurred.** If you should have any questions, I may be reached at (800) 683-5433 extension #8427.

Sincerely,

*Bonita Burton*

Bonita Burton
Legal Collections Department



June 15, 2005

Melinda J. Serin
4101 Garrison St Nw
Washington, DC 20016

Re: <u>Northern Leasing Systems, Inc v. Melinda J. Serin</u>
Lease #: **0228846** Outstanding Balance: **$2,478.00** (excluding Attorney Fees).

Dear Melinda J. Serin:

Please be advised Northern Leasing Systems, Inc has obtained a summons/complaint against you due to the default on the above-referenced lease.

Accordingly, Northern Leasing Systems, Inc will accept **$743.00** which includes the purchase of the equipment to satisfy your Outstanding Balance of $2,478.00 **as settlement in full.**

Your payment of **$743.00** is due on or before **June 24, 2005**. Please write your lease number **0228846** on your payment and send to:

**NORTHERN LEASING SYSTEMS, INC**
**P.O. BOX 7861**
**NEW YORK, NY 10116**
**ATTN.: Bonita Burton**

**Payment is to be made payable to Northern Leasing Systems, Inc.** Upon clearance of your payment, Northern Leasing Systems, Inc. will release **Melinda J. Serin** ("Personal Guarantor") and **JIM CAMERON GARAGE DOORS** ("Lessee") from any further lease obligations. Additionally, any action previously commenced against **Melinda J. Serin,** if any, in the Civil Court City of New York will be withdrawn by virtue of this settlement.

**If Northern Leasing Systems, Inc does not receive the above-mentioned payment by June 24, 2005, this settlement offer will be null and void. Accordingly, Northern Leasing Systems, Inc will continue with the legal action. As personal guarantor Melinda J. Serin will be responsible for any court costs and reasonable attorney fees incurred.** If you should have any questions, I may be reached at (800) 683-5433 extension #8427.

Sincerely,

Bonita Burton
Legal Collections Department

132 West 31ˢᵗ Street 14ᵗʰ Floor
New York, NY 10001-3405
ADDRESS SERVICE REQUESTED

**Northern** Leasing **Systems, Inc.**

**Customer Information:**
Date: September 2, 2005
Lease #: 0228846

MELINDA J. SERIN
4101 GARRISON ST NW
WASHINGTON DC 20016

# Important Notice

Dear MELINDA J. SERIN,

You have indicated that a potential fraud situation exists in reference to the above captioned lease.

In order for Northern Leasing Systems, Inc. to pursue this matter, we require three (3) different proofs of your signature to compare to the signature on our lease. These copies can include: a valid driver's license, a cancelled bank check, a copy of a passport, a social security card, an employee or school ID reflecting your signature, and the enclosed Affidavit of Forgery verifying your signature. Please ensure the signature on your copy is legible.

The Affidavit of Forgery **"must"** be notarized and the original copy of the above information to my attention at:

Northern Leasing Systems, Inc.
132 West 31ˢᵗ Street 14ᵗʰ Floor
New York NY 10001

Upon receipt of the documents, an investigation will be conducted and a determination will be made on the fraud claim. You will then be notified of our findings.

If you should have any further questions, please contact me at (888) 607-3607.

Thank you in advance for your cooperation.

Sincerely,

Bonita Burton
Northern Leasing Systems Inc.

Monday - Friday 8:30 a.m. to 5:30 p.m.
Tel. (888) 607-3607
Fax (212) 279-1495

09-H-5

**Northern Leasing Systems, Inc.**

**Customer Information**
Date: 09/02/05
Lease #: 0228846

JIM CAMERON GARAGE DOORS
MELINDA J. SERIN
4101 GARRISON ST NW
WASHINGTON DC 20016-4223

# Important Notice

Dear Melinda J. Serin,

You have indicated that a potential fraud situation exists in reference to the above captioned lease.

In order for Northern Leasing Systems, Inc. to pursue this matter, we require three (3) different proofs of your signature to compare to the signature on our lease.  These copies can include:  a valid
driver's license, a cancelled bank check, a copy of a passport, a social security card, an employee or school ID reflecting your signature, and the enclosed Affidavit of Forgery verifying your signature.

The Affidavit of Forgery **"must"** be notarized and the original copy of the above information to my attention at:

Northern Leasing Systems, Inc.
132 West 31st Street 14th Floor
New York NY 10001

Upon receipt of the documents, an investigation will be conducted and a determination will be made on the fraud claim.  You will then be notified of our findings.

If you should have any further questions, please contact me at (888) 607-3607.

Thank you in advance for your cooperation.

Sincerely,

*Bonita Burton*

Bonita Burton
Northern Leasing Systems, Inc.

Monday - Friday 8:30 a.m. to 5:30 p.m.
Tel. (888) 607-3607
Fax (212) 279-1495

09-H-5

**Northern**Leasing**Systems,Inc.**

August 14, 2002

Rapid Cash
Judson Russ
1915 South French Avenue
Sanford FL 32771

Lease Number: 0219170

Dear Judson Russ,

You have indicated that a potential fraud situation exists in reference to the above captioned lease.

In order for Northern Leasing Systems, Inc. to pursue this matter, we require three (3) different proofs of your signature to compare to the signature on our lease. These copies can include: a valid driver's license, a cancelled bank check, a copy of a passport, a social security card, an employee or school ID reflecting your signature, and the enclosed Affidavit of Forgery verifying your signature. Please ensure the signature on your copy is legible.

The Affidavit of Forgery **"must"** be notarized and the original copy of the above information to my attention at:

> NORTHERN LEASING SYSTEMS INC.
> 14th Floor
> 132 West 31st Street
> New York NY 10001

Upon receipt of the documents, an investigation will be conducted and a determination will be made on the fraud claim. You will then be notified of our findings.

If you should have any further questions, please contact me at (888) 607-3607.

Thank you in advance for your cooperation.

Sincerely,

Danielle Moore
Northern Leasing Systems Inc.

Monday - Friday 8:30 to 5:30
Monday - Thursday 5:30 to 8:30 and Saturday 9:00 - 1:00
Tel. (888) 607-3607
Fax (212) 279-1495

Doc-09B-3

**Northern Leasing Systems, Inc.**

September 10, 2004

Lung Lim
2105 Taylor Meadows Way Sw
Marietta, GA 30008

Re:   Northern Leasing Systems, Inc V. Lung Lim
      **Index # 057937/03 – Lease # 0086224**
      **Judgment Entered: 5/25/2004**
      **Judgment Amount Due: $3,340.27**

Dear Lung Lim:

Please be advised that Northern Leasing Systems, Inc. has obtained a judgment against you upon which the above amount is due.

Accordingly, Northern Leasing Systems, Inc will accept **$2,850.00** to satisfy the Judgment Amount of $3,340.27 **as settlement in full.**

Your payment of **$2,850.00** is due on or before **September 20, 2004**. Please write your lease number **0086224** on your payment and send to:

              NORTHERN LEASING SYSTEMS, INC
              P.O. BOX 7861
              NEW YORK, NY 10116
              ATTN.: Ricky Brown

Payment can also be made via CREDIT CARD, DEBIT CARD, WESTERN UNION or FEDERAL EXPRESS. Payment is to be made payable to Northern Leasing Systems, Inc. Upon clearance of your final payment, Northern Leasing Systems, Inc. will file a Satisfaction of Judgment in the Civil Court releasing Lung Lim ("Personal Guarantor") from any further lease obligations. **Additionally, the derogatory information reported on your Credit Report by Northern Leasing Systems, Inc. will be reported as paid.**

If Northern Leasing Systems, Inc does not receive the above-mentioned payment by September 20, 2004, this settlement offer will be null and void. **Subsequently, you may be held liable for additional costs of the enforcement of this judgment in your state, such as Property Lien Attachment, Local Docketing, Wage Garnishment and Bank Executions.**

If you should have any questions, I may be reached at (800) 683-5433 extension #8532.

Sincerely,

Ricky Brown
Legal Collections Department



January 27, 2005


Lung Lim
2105 Taylor Meadows Way Sw
Marietta GA 30008


Lease Number: 0086224

Re:  Equipment Lease Agreement

Judgment Date: **5/25/2004**
Index Number:  **057937/03**
Judgment Amount: **$3,451.79**
Court:  **Civil Court City Of New York**
        **111 Centre Street**
        **New York, NY, 10013**

# ADVICE OF JUDGMENT


You are hereby given notice that a judgment has been entered and filed against you in court.  The judgment date, index number, court and amount of judgment are as shown above.

The judgment will continue to have interest added to it and will remain a permanent record against you for (20) twenty years from the date of entry or until it is paid in full.

We urge you to act immediately and contact us now to avoid further proceedings, and additional cost at (800) 683-5433 extension #8366.

Very Truly Yours,

Antoinette Kemp
Legal Collections Department

Northern Leasing Systems, Inc.
PO Box 7861
New York NY 10116


Monday – Friday 8:30am– 8:00pm


54L-H-2



**Northern** Leasing Systems, Inc.

132 West 31st Street
New York, NY 10001

9856846930S 07

YODAMO, INC
PERI KETTLER
2023 E. SIMS WAY
STE 183
PORT TOWNSEND, WA 98368

NEW YORK
PM
24 JAN 2002
100

## Northern Leasing Systems, Inc.
132 West 31st Street, 14th Floor, New York, NY 10001-5095 • 212-239-3500

# EQUIPMENT FINANCE LEASE

## ABOUT YOUR BUSINESS

Lessee (Corporate Business Name) **XodAmo Inc.**

Billing Address **203 Federick Unit-C**

City **Port Townsend** State **Washington** Zip Code **98368** Telephone **(360) 379-3250**

Type of Business **Needleworks Supplier Wholesale** Yrs. in Business **3**

Business Address (if different from above)

City ___ State ___ County ___ Zip Code ___ Business Telephone ( )

Name of Principal **Peri Keitler** Title **President**

Home Address **2023 E. Sims** with #163 City **Pnt townseid** State **WA** Zip Code **98368** Telephone **(360) 379-3250**

## EQUIPMENT SUPPLIER

Supplier's Name **First National Processing**

Address **10526 W. Cermak Rd** City **Westchst** State **IL** Zip Code **60154** Telephone **(708) 492-0703**

## EQUIPMENT INFORMATION

Description (Manufacturer, Model, Serial Number) Quantity

**Tran 330** **1**

**Printer**

Equipment Location ___

## SCHEDULE OF PAYMENTS

Basic Monthly Lease Payment $ **39.95**

Lease Term **48** Months

Plus Applicable Taxes

## PAYABLE AT SIGNING OF THE LEASE

☑ First & Last Monthly Payment $ ~~86~~ RC

☐ Last Monthly Payment $ ~~8~~

Plus Applicable Taxes

## ABOUT YOUR BANK

Bank Name **Bank of America** Routing **125000024** Account # **12769501**

Lessee hereby authorizes Northern Leasing Systems, Inc., or its designee successor or assign (hereinafter "Lessor") to withdraw any amounts including any and all sales and property taxes now due or hereinafter imposed owed by Lessee under this Equipment Finance Lease ("Lease") by initiating debit entries to Lessee's account at the financial institution (hereinafter "Bank") indicated above or at such other Bank as Lessee may from time to time use. In the event of default of Lessee's obligation hereunder, Lessee authorizes debit of Lessee's account for the full amount due under this Lease. Further, Lessee authorizes Bank to accept and to charge any debit entries initiated by Lessor to Lessee's account. In the event that Lessor erroneously from Lessee's account, Lessee authorizes Lessor to credit Lessee's account for the amount erroneously withdrawn. Lessee understands that the foregoing ACH authorization is a fundamental condition to induce Lessor to accept this Lease. Consequently, such authorization is intended to be irrevocable. In the event that Lessee terminates such ACH authorization, Lessor, in its sole discretion, may either deem such termination to be an event of default in accordance with paragraph 11 hereof or may invoke Lessee for payments due under this Lease and include a $5.00 per month processing fee in such invoices. THE TERMS OF THIS LEASE REPRESENT THE FINAL EXPRESSION OF THE AGREEMENT BETWEEN LESSOR AND LESSEE AND MAY NOT BE WAIVED ALTERED MODIFIED REVOKED OR RESCINDED AND ALL PRIOR AND/OR CONTEMPORANEOUS ORAL AND WRITTEN REPRESENTATIONS ARE MERGED HEREIN. ANY AGREEMENTS TO MODIFY THIS LEASE MUST BE BY A SIGNED WRITING EXECUTED BY LESSOR AND LESSEE AND NO ATTEMPT AT ORAL MODIFICATION OR REVISION OF THIS LEASE OR ANY TERM HEREOF WILL BE BINDING. BY INITIALING THIS PROVISION LESSEE AGREES TO BE BOUND BY THE TERMS OF THIS LEASE AND TO THE EXTENT APPLICABLE THE PROVISIONS CONCERNING A SEPARATELY SIGNED DOCUMENT PURSUANT TO §2A-208 OF THE UNIFORM COMMERCIAL CODE HAS BEEN COMPLIED WITH THIS LEASE AND ANY AND ALL MODIFICATIONS AND OTHER AGREEMENTS BETWEEN LESSOR AND LESSEE SHALL ONLY BE EFFECTIVE UPON EXECUTION BY AN OFFICER OF LESSOR.

LESSEE INITIALS

## LEASE ACCEPTANCE

Lessee has read and agrees to all terms and conditions contained in this Equipment Finance Lease. THIS IS A NON-CANCELABLE LEASE FOR THE FULL TERM INDICATED HEREIN. INVESTIGATIVE CREDIT REPORT: Applicant authorizes Northern Leasing Systems, Inc., its assigns or its agents to obtain an investigative credit report from a credit bureau or a credit agency and to investigate the references given on any prior statement or data obtained from Lessee.

Lessee's Signature/Title: Pres RC

Print Name: **Peri Keitler**

Date: **Jan. 9, 2002**

## PERSONAL GUARANTY

To induce Lessor to make this Lease and purchase the Equipment for Lessee knowing that Lessor is relying on this Guaranty as a precondition to making this Lease, I INDIVIDUALLY, PERSONALLY, ABSOLUTELY AND UNCONDITIONALLY GUARANTY to Lessor (and any person or firm Lessor may transfer its interests to) all payments and other obligations owed by Lessee to Lessor under this Lease and any add-on leases, Equipment Schedules and future leases between Lessor and Lessee, including, but not limited to, Lessor's attorney's fees and legal costs incurred in enforcing this Lease, I will also pay all reasonable costs and fees incurred by Lessor in enforcing this Guaranty. I waive notice of demand and notice of default and I agree that Lessor may proceed directly against me without first proceeding against Lessee or the security (including the Equipment). This Guaranty shall be governed by the laws of New York, I FREELY CONSENT TO PERSONAL JURISDICTION IN THE NEW YORK COURTS AND CONSENT WITHOUT LIMITATIONS THE CIVIL COURT OF THE CITY OF NEW YORK AND I WAIVE TRIAL BY JURY. This Guaranty will bind my heirs representatives and successors.

Personal Guarantor's Signature ___ , An Individual Date **Jan. 9, 2002**

Print Name **Peri Keitler** Home Telephone **(360) 379-3250**

Home Address **2023 E. Sims Wac #163** City **Port townsend** State **WA** Zip Code **98368**

Social Security # **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**

## ACCEPTANCE BY Northern Leasing Systems, Inc.

Signature/Title ___ Print Name ___ Date ___

Page 1 of 4

REV. 10/01

# LEASE TERMS

## 1. LEASE TERM; RENTAL.

Northern Leasing Systems, Inc., its successors and assigns (hereinafter "Lessor"), hereby leases to Lessee and Lessee hereby leases from Lessor the equipment described above together with any computer software including all manuals, updates revisions, program and data files, and documentation relating thereto or used or usable in connection therewith (the "Software") (hereinafter, with all replacement parts, repairs, additions, substitutions and accessories incorporated therein and/or affixed thereto, referred to as the "Equipment"), on terms and conditions set forth herein. From time to time Lessor and Lessee may execute one or more equipment schedules ("Equipment Schedules"). Each such Equipment Schedule relating to one or more items of Equipment shall be deemed a separate Lease incorporating all of the terms and provisions of this Lease. In the event of a conflict between the terms of this Lease and the terms and conditions of an Equipment Schedule, the terms and conditions of the Equipment Schedule shall govern and control that Equipment Schedule. This Lease shall commence (the "Commencement Date") on the date that the Equipment is accepted by Lessee (the "Acceptance Date") and continue thereafter until terminated as provided for herein. The Acceptance Date shall be the date Lessee is in receipt of the Equipment and, if applicable, the date the Software is transmitted to Lessee. If the Acceptance Date is other than the first day of a calendar month, then the Commencement Date of this Lease shall be the first day of the calendar month following the month which includes the Acceptance Date; and Lessee shall pay to Lessor, in addition to all other sums due hereunder, an amount equal to one-thirtieth of the amount of the average monthly rental payment due or to become due hereunder multiplied by the number of days from and including the Acceptance Date to the Commencement Date of this Lease. Unless otherwise provided herein, the monthly payments shall be payable on the first day of each month after the Commencement Date, in the amount stated above, until the total rent and all other obligations of Lessee shall have been satisfied and paid in full. All monthly lease payments of rent shall be made to Lessor by Automatic Clearing House ("ACH") transfer from Lessee's designated account as provided above. In the event Lessee has paid the first and last monthly lease payments without applicable taxes pursuant to Paragraph 7 hereof, Lessor may add such taxes to the first or a subsequent ACH transfer from Lessee's designated account as provided above.

## 2. SOFTWARE.

Lessee's right to use the Software is being acquired pursuant to a sub-license from Vendor to Lessee of a software license agreement between Vendor and the Licensor (collectively the "License"). Lessee reaffirms all of its rights and obligations under the License. Lessor is not a party to the License, but is an express third-party beneficiary. Lessee assigns to Lessor all of its rights and benefits, but Lessee retains all of the obligations and burdens under the License. Lessor sub-licenses back to Lessee, expiring upon the termination or expiration of this Lease or upon an Event of Default.

## 3. PURCHASE AND ACCEPTANCE; NO CANCELLATION: NO WARRANTIES.

Lessee requests Lessor to purchase the Equipment from Equipment Supplier or vendor ("Vendor") and arrange for delivery to Lessee and, Lessee shall pay all assessed costs for delivery and installation of Equipment. Lessor shall have no responsibility for delay or failure of Vendor to fill the order for the Equipment. LESSOR DID NOT SELECT, MANUFACTURE, LICENSE, SUPPLY OR INSPECT THE EQUIPMENT AND HAS NO EXPERTISE REGARDING THE EQUIPMENT. LESSEE HAS SELECTED VENDOR AND THE EQUIPMENT BASED ON LESSEE'S OWN JUDGMENT. LESSOR IS BUYING THE EQUIPMENT AT LESSEE'S REQUEST ONLY FOR THE PURPOSE OF LEASING IT TO LESSEE. Before signing this Lease, Lessee approved the supply contract (if any) between Lessor and Vendor and the License, (if any). Lessee has been advised in writing (or is now advised in this Lease) that Lessee may have rights against Vendor under the supply contract (if any) and the License, (if any) and that Lessee may contact Vendor or Licensor to find out what these rights against Vendor or Licensor are, (if any). THIS LEASE CANNOT BE CANCELLED BY LESSEE AT ANY TIME FOR ANY REASON. LESSEE'S DUTY TO MAKE THE MONTHLY LEASE PAYMENTS HEREUNDER IS UNCONDITIONAL DESPITE EQUIPMENT FAILURE, DAMAGE, LOSS OR ANY OTHER SETOFF, DEFENSE, COUNTERCLAIM OR OTHER CLAIM AGAINST THE VENDOR OR LICENSOR OR ANY OTHER PROBLEM INCLUDING THE REVOCATION OR TERMINATION OF THE LICENSE (IF ANY) OR OF ANY MAINTENANCE, SUPPORT OR OTHER SERVICES TO BE PROVIDED LESSEE THEREUNDER. LESSEE AGREES THAT LESSOR HAS MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND/OR ITS QUALITY. AS BETWEEN LESSEE AND LESSOR OR LESSOR'S ASSIGNS, LESSEE LEASES THE EQUIPMENT "AS IS". LESSOR AND LESSOR'S ASSIGNS SHALL NOT BE LIABLE TO LESSEE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY (INCLUDING CLAIMS FOR GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL, DAMAGES OR FOR ANTICIPATORY PROFITS) BY ANY EQUIPMENT LEASED HEREUNDER OR THE USE OR MAINTENANCE THEREOF, OR THE FAILURE OF OPERATION THEREOF, OR REPAIRS, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF, OR BY ANY INTERRUPTION OF SERVICE OR LOSS OF USE THEREOF, OR THE USE THEREOF IN VIOLATION OF THE RIGHTS OF ANY PARTY WHOMSOEVER, OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY VENDOR SHALL BE BINDING ON LESSOR OR LESSOR'S ASSIGNS, NOR SHALL THE BREACH OF SUCH RELIEVE LESSEE OR, IN ANY WAY AFFECT, ANY OF LESSEE'S OBLIGATIONS TO LESSOR OR LESSOR'S ASSIGNS, AS SET FORTH HEREIN. LESSOR AND LESSOR'S ASSIGNS DISCLAIM AND SHALL NOT BE RESPONSIBLE FOR ANY LOSS, DAMAGE OR INJURY TO PERSONS OR PROPERTY CAUSED BY THE EQUIPMENT WHETHER ARISING THROUGH THE NEGLIGENCE OF THE LESSEE OR IMPOSED BY LAW. LESSOR MAKES NO, AND SPECIFICALLY EXCLUDES ANY REPRESENTATION OR WARRANTY RELATING TO ANY SOFTWARE, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF TITLE, VALIDITY OR ENFORCEABILITY OF LICENSE, NON-INFRINGEMENT, AVAILABILITY OR QUALITY OF VENDOR OR LICENSOR SUPPORT, OR FITNESS FOR ANY PARTICULAR PURPOSE. LESSEE EXPRESSLY WAIVES ALL OF ITS RIGHTS AND REMEDIES SET FORTH IN ARTICLE 2A OF THE UNIFORM COMMERCIAL CODE, INCLUDING WITHOUT LIMITATION LESSEE'S RIGHTS, IF ANY, TO REPUDIATE, REJECT, REVOKE ACCEPTANCE, CLAIM A SECURITY INTEREST IN THE EQUIPMENT, OFFSET AND COVER.

If the Equipment is not properly installed, does not operate as represented or warranted by Vendor or is unsatisfactory for any reason, Lessee shall make any claim on account thereof solely against Vendor or Licensor and hereby waives and releases any and all rights to now or hereafter assert any claim against Lessor concerning the Equipment and shall nevertheless pay Lessor all rent payable under this Lease. Lessor agrees to assign to Lessee, solely for the purpose of making and prosecuting any such claims, any rights it may have against Vendor or Licensor for breach of warranty or representations respecting the Equipment.

Notwithstanding any fees that may be paid to Vendor or any agent of Vendor, Lessee understands and agrees that neither Vendor nor any agent of Vendor is an agent of Lessor and that neither Vendor nor his agent is authorized to waive or alter any term or condition of this Lease.

## 4. LESSOR TERMINATION BEFORE EQUIPMENT ACCEPTANCE.

If, within sixty (60) days from the date Lessor orders the Equipment, same has not been delivered, installed and accepted by Lessee in form satisfactory to Lessor, Lessor may on ten (10) days written notice to Lessee, terminate this Lease and its obligation to Lessee.

## 5. TITLE.

Lessor shall at all times retain title to the Equipment unless otherwise agreed to in writing. All documents of title and evidences of delivery shall be delivered to Lessor. Lessee shall not change or remove any insignia or lettering which is on the Equipment at the time of delivery thereof, or which is thereafter placed thereon, indicating Lessors ownership thereof. At any time during the term of this Lease, upon request of Lessor, Lessee shall affix to the Equipment in a prominent place, labels, plates or other markings supplied by Lessor stating that the Equipment is owned by Lessor. Lessor is hereby authorized by Lessee, at Lessee's expense, to cause this Lease, or any statement or other instrument in respect of this Lease showing the interest of Lessor in the Equipment, including Uniform Commercial Code Financing Statements, to be filed or recorded and refiled and re-recorded. Lessee agrees to execute and deliver any statement or instrument requested by Lessor for such purpose, and agrees to pay or reimburse Lessor for any filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. Lessee shall, at its expense, protect and defend Lessor's title at all times keeping the Equipment free from all liens and claims whatsoever except for those created by or in favor of Lessor, its successor and/or assigns, and shall give Lessor immediate written notice thereof and shall indemnify Lessor from any loss caused thereby. Lessee shall execute and deliver to Lessor, upon Lessor's request, such further instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of Lessor's rights hereunder. Lessee authorizes Lessor to file any such instrument, including, but not limited to, any Uniform Commercial Code Financing Statement(s), without Lessee's signature and, if the signature of Lessee is required thereon, Lessee irrevocably appoints Lessor as Lessee's attorney-in-fact to execute and file any such statement or other instrument in the name and on behalf of Lessee. It is the intention of the parties that the transaction(s) contemplated herein shall constitute an equipment finance lease and not a security interest of collateral assignment of the Equipment by Lessor. Notwithstanding the intention of the parties, if any court of competent jurisdiction shall hold that the transaction(s) contemplated herein constitute a security interest or collateral assignment and not an equipment finance lease of the Equipment by Lessor, then Lessor has a first lien security interest in the Equipment (including without limitation, the Software and general intangibles, licenses and intellectual Property rights with respect thereto, and all substitutions, modifications, replacements, additions, accessions, proceeds, and products of, to or for any of the foregoing) as of the date hereof to secure the obligations of Lessee, its successors and assigns, hereunder and Lessor shall have all rights and remedies of a secured party under the Uniform Commercial Code as adopted in any applicable jurisdiction. Notwithstanding anything contained herein to the contrary, the Software is subject to the exclusive proprietary rights of the Vendor or Licensor and Lessee shall have no ownership rights in the Software. Lessee shall have no right, title or interest in the Software except as set forth in the License and as specifically provided here.

## 6. CARE AND USE OF EQUIPMENT.

Lessee shall maintain the Equipment in good operating condition, repair and appearance, and protect the same from deterioration, other than normal wear and tear, shall use the Equipment in the regular course of business only within its normal capacity, without abuse and in a manner contemplated by Vendor, and in accordance with the License, shall comply with laws, ordinances, regulations, requirements and rules with respect to the use, maintenance and operation of the Equipment, shall not make any modification, alteration, or addition to the Equipment (other than normal operating accessories or controls or later or production versions and maintenance or enhancement releases related to and permitted under the License which shall when added to the Equipment, become the property of Lessor) without the prior written consent of Lessor, which shall not be unreasonably withheld, shall not so affix the Equipment to realty as to change its nature to real property or fixture, and agrees that the Equipment shall remain personal property at all times regardless of how attached or installed; shall keep and maintain the Equipment at the location shown above, and shall not remove the Equipment without the consent of Lessor, which shall not be unreasonably withheld. Lessee represents that the Equipment is being leased for business and/or professional purposes and agrees that under no circumstances shall this Lease be construed as a consumer contract. Lessor shall have the right during normal hours, upon reasonable prior notice to Lessee and subject to applicable laws and regulations, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or otherwise protect Lessor's interest.

**7.  NET LEASE; TAXES.**

Lessee intends the monthly lease payments hereunder to be net to Lessor, and Lessee shall pay all sales, use, excise, personal property, stamp, documentary, ad valorem, gross receipt, occupation and other taxes, license and registration fees, assessments, fines, penalties and other charges imposed on the ownership, possession or use of the Equipment during the term of this Lease. Lessor will add such taxes, fees and other charges to the monthly payments hereunder including handling and administration costs. To the extent that such taxes, fees and other charges are not imposed in equal monthly payments, Lessor may estimate the amount thereof and include a proportional amount with each monthly payment hereunder. Lessee agrees to pay such monthly amount as additional monthly rent during the term of this lease and any extension thereof. Upon Lessor's request, Lessee shall file all necessary returns and reports relating to such taxes, fees and charges. Lessee's obligations under this paragraph 7 shall survive the termination of this Lease.

**8.  INDEMNITY.**

Lessee shall and does hereby agree to indemnify and save Lessor, its agents, servants, successors, and assigns harmless against and from any liability, damages, or loss, including reasonable counsel fees, arising out of the ownership, selection, manufacture, possession, leasing, renting, operation (regardless of where, how and by whom operated) control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Lessee), maintenance, delivery and return of the Equipment, and including but not limited to trademark, tort, anticipatory or consequential damages. The indemnities and obligations herein provided shall continue in full force and effect not withstanding termination of this Lease.

**9.  INSURANCE.**

Lessee shall keep the Equipment insured against all risks of loss or damage from every cause whatsoever, in amounts determined by Lessor provided that in no event shall such insurance be less than the loss amount set forth in Section 10(b) herein below. The amount of such insurance shall be sufficient so that neither Lessor nor Lessee will be considered a co-insurer. Lessee shall also carry public liability insurance, personal injury and property damage, covering the Equipment. All such insurance shall provide that losses, if any, shall be payable to Lessor, and all such liability insurance shall include Lessor as named insured and require that the insurer give Lessor at least ten (10) days written notice prior to the effective date of any modification or cancellation thereof. All such policies shall provide that such insurance shall not be cancelled or modified, as against Lessor due to any act or neglect on the part of Lessee or of any other party. Lessee shall pay the premiums for such insurance and deliver to Lessor satisfactory evidence of the insurance coverage required hereunder, on or before the Commencement Date, as requested by Lessor. The proceeds of such insurance, payable as a result of loss or damage to any item of the Equipment, shall be applied to satisfy Lessee's obligations as set forth in Paragraph 10 below. Lessee hereby irrevocably appoints Lessor as Lessee's attorney in-fact to make claim for, receive payment of, and execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy.

**10.  RISK OF LOSS.**

Lessee hereby assumes the entire risk of loss, damage or destruction of the Equipment from any and every cause whatsoever during the term of this Lease and thereafter until redelivery to Lessor. In the event of loss, damage or destruction of any item of Equipment, Lessee shall promptly notify Lessor and shall at its expense (except to the extent of any proceeds of insurance provided by Lessee which shall have been received by Lessor as a result of such loss, damage or destruction), and at Lessor's option, shall either (a) repair such item, returning it to its previous condition, unless damaged beyond repair, or (b) pay Lessor all accrued and unpaid monthly lease and other payments, late charges and interest, plus an amount (the "Loss Amount") equal to (i) the net present value of all rental payments to become due during the remaining terms of this Lease, discounted at a rate of six percent (6%) per annum plus (ii) the amount of any purchase option or obligation with respect to the Equipment, or, if there is no such option or obligation, the fair market value of the Equipment, as estimated by Lessor in its sole reasonable discretion, or (c) replace such item with a like item acceptable to Lessor, in good condition and of equivalent value, which shall become property of Lessor, included within the term "Equipment" as used herein, and leased from Lessor herewith for the balance of the full term of this Lease.

**11.  DEFAULT.**

If any one of the following events (each, an "Event of Default") shall occur, then, to the extent permitted by applicable law, Lessor shall have the right to exercise any one or more of the remedies set forth in Paragraph 12 below: (a) Lessee fails to pay any monthly lease or any other payment hereunder when due, and such failure continues for five (5) days or (b) Lessee or any guarantor becomes insolvent or makes an assignment for the benefit of creditors, or (c) a receiver, trustee, conservator or liquidator of Lessee or any guarantor of all or a substantial part of the assets of Lessee or any guarantor is appointed with or without the application or consent of Lessee or such guarantor, or (d) a petition is filed by or against Lessee or any guarantor under the Bankruptcy Code or any amendment thereto, or under any other insolvency law providing for the relief of debtors, or (e) Lessee admits, in writing, of its in ability to pay its debts, or (f) any of Lessee's property is attached, or (g) any action is taken to dissolve or liquidate Lessee by Lessee or any of its shareholders, partners or members, or (h) Lessee fails to pay when due any obligation to Lessor arising independently of this Lease and such failure continues for five (5) days, or (i) Lessee breaches any other covenant, warranty or agreement hereunder, and such breach continues for ten (10) days after the earlier of (i) the date on which Lessee obtains, or should have obtained, knowledge of such breach, or (ii) the date on which notice thereof shall be given by Lessor to Lessee, or (j) Lessee conveys, sells, transfers or assigns substantially all of Lessee's assets or ceases doing business as a going concern, or (k) Lessee breaches any term or condition of any License governing the right to use the Software.

**12.  REMEDIES.**

If an Event of Default shall occur as described in Paragraph 11 hereinabove, lessor may, at its option, at any time and without notice (a) declare immediately due and payable and recover from Lessee, as liquidated damages for the loss of a bargain and not as a penalty, an amount equal to all accrued and unpaid monthly lease payments, late charges and interest, plus the Loss Amount as set forth in Section 10(b) hereinabove; (b) without demand or legal process enter into the premises where the Equipment may be found and take possession of and remove the Equipment or render it unusable without removal, without liability for such retaking. Lessee, shall, upon demand of Lessor, assemble the Equipment and deliver it as directed by Lessor. Lessee waives any right to recover the Equipment and for any loss of use after an Event of Default has occurred. With respect to any Software, Lessee shall cease to use such Software and will assemble and deliver to Lessor the same in electronic or other form. Lessee shall remit to Lessor upon demand any amounts due and payable with respect to the licensing of the Software or the assignment thereof. Lessor may terminate any sub-license from Lessor to Lessee and may request the Vendor and/or the Licensor to terminate any licenses with the Lessee and all maintenance support or other services under the License. Lessee agrees that monetary damages are not a sufficient remedy and will not adequately compensate Lessor for Lessee's breach and that Lessee shall be entitled to seek specific performance or other injunctive or equitable relief. Lessor may hold, sell or otherwise dispose of any such Equipment at a private or public sale. In the event Lessor takes possession of the Equipment, Lessor shall give Lessee credit for any sums received by Lessor from the sale or rental of the Equipment after deduction of the expenses of sale or rental. Lessee shall pay all of Lessor's recovery costs after a default, including: (i) attorney's fees equal to twenty-five percent (25%) of the amount of Lessor's claim or $1,500, whichever is greater; (ii) reasonable attorney's fees for obtaining an order, writ or similar process to recover possession of the Equipment; (iii) costs of suit; (iv) $250.00 to cover Lessor's internal collection overhead; (v) $225.00 to cover Lessor's internal repossession and remarketing overhead if an internal repossession is made or attempted; and (vi) all other reasonable out-of-pocket costs. Lessor and Lessee acknowledge the difficulty in establishing a value for the unexpired lease term and owing to such difficulty agree that the provisions of this paragraph represent an agreed measure of damages and are not to be deemed a forfeiture or penalty. In the event Lessee has provided a security deposit to Lessor, Lessor shall have the right to apply the unexpired deposit to reduce the amount Lessee owes pursuant to this paragraph. In the event Lessee pays all obligations under this Lease and returns the Equipment to Lessor in accordance with paragraph 16, Lessor will return any security deposit to Lessee. No interest will be paid on the security deposit. All remedies of Lessor hereunder are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently or separately. The exercise of any one remedy shall not be deemed to be an election of such remedy or to preclude the exercise of any other remedy. No failure on the part of Lessor to exercise and no delay in exercising any right or remedy shall operate as a waiver thereof or modify the terms of the Lease.

**13.  LATE CHARGES: ACH REJECTION FEE.**

Whenever any monthly lease payment is not made by Lessee in full when due hereunder, Lessee agrees to pay to Lessor, as a late fee, an amount equal to fifteen percent (15%) of the full scheduled payment, but not less than five dollars ($5.00) and only to the extent allowed by law. Such amount shall be payable in addition to all amounts payable by Lessee as a result of exercise of any of the remedies herein provided. In addition, Lessee will pay a processing charge of fifteen dollars ($15.00) for any rejected automatic bank account debit, for any returned check. Payments shall be applied to late fees and to processing charges first and then to Lease obligations until all funds have been exhausted.

**14.  ASSIGNMENT. NOTICE OF INTENDED ASSIGNMENT**

Lessor may, without notice to and without Lessee's consent, assign or transfer this Lease or any Equipment, rent or other sums due or to become due hereunder, and in such event Lessor's assignee or transferee shall have the rights, powers, privileges and remedies of Lessor hereunder. Lessee hereby acknowledges notice of Lessor's intended assignment of Lessor's interest in this Lease, and upon such assignment, Lessee agrees not to assert, as against Lessor's assignee, any defense, set-off, recoupment, claim or counterclaim, that it may have against Lessor whether arising under this Lease transaction or otherwise. LESSEE SHALL, NOT ASSIGN THIS LEASE, THE LICENSE OR THE EQUIPMENT OR ANY INTEREST HEREUNDER AND SHALL NOT ENTER INTO ANY SUBLEASE WITH RESPECT TO THE EQUIPMENT OR THE LICENSE COVERED HEREBY WITHOUT LESSOR'S PRIOR WRITTEN CONSENT AND IF LESSOR SHALL PERMIT ANY SUCH ASSIGNMENT BY LESSEE, THE ASSIGNEE SHALL, AS A CONDITION TO LESSOR'S GRANTING OF CONSENT TO SUCH ASSIGNMENT, ASSUME LESSEE'S OBLIGATIONS HEREUNDER IN WRITING, IN FORM AND SUBSTANCE SATISFACTORY TO LESSOR, BUT NO SUCH ASSIGNMENT SHALL RELEASE LESSEE FROM ANY OF LESSEE'S OBLIGATIONS HEREUNDER.

# LEASE TERMS

**15. BUYOUT OPTION.**

Upon expiration of the lease term and provided no Event of Default shall have occurred and be continuing, Lessee shall have the option to purchase on an AS-IS, WHERE-IS basis, not less than all of the Equipment (and an assignment of all of Lessor's rights, title and interest in the Software, if any) for its then fair market value, calculated as a percentage of the aggregate monthly lease payments in accordance with the following: If the term of this Lease is forty-eight (48) months or more, the buyout option as a percentage of the aggregate lease payments shall be ten percent (10%). If the term of this Lease is thirty-six (36) to forty-seven (47) months, the buyout option as a percentage of the aggregate lease payments shall be ten percent (10%). If the term of this Lease is twenty-four (24) to thirty-five (35) months, the buyout option as a percentage of the aggregate lease payments shall be fifteen percent (15%). If the term of this Lease is twelve (12) to twenty-three (23) months, the buyout option as a percentage of the aggregate lease payments shall be twenty percent (20%). The exercise of this option must be communicated to Lessor in writing at least sixty (60) days prior to the expiration of the lease term. Purchase option payment will be due at lease expiration.

**16. RETURN OF PROPERTY.**

Upon the termination or expiration of this Lease, or any extension thereof, Lessee, shall forthwith deliver, freight prepaid, the Equipment to Lessor, at its address set forth above, complete and in good order and working condition, reasonable wear and tear alone excepted. Lessee shall assemble and deliver to Lessor all Software in electronic or other form as directed by Lessor. If any software requires re-licensing, Lessee shall bear all costs related thereto and shall execute such documents as may be required. Lessee shall also pay to Lessor such sum as may be necessary to cover replacement for all damaged, broken or missing parts of the Equipment. If, upon such expiration or termination, Lessee does not return the Equipment to Lessor within ten (10) days after the expiration or termination of the Lease, the Equipment shall continue to be held and leased hereunder and this Lease shall thereupon be extended indefinitely as to the term at the same monthly rental, subject to the right of either Lessee or Lessor to terminate the Lease upon sixty (60) days written notice, whereupon Lessee shall forthwith deliver the Equipment to Lessor as set forth in this Paragraph. If Lessee paid the last monthly lease payment at the time of the execution of this Lease, such payment shall be applied (without interest) to the last monthly lease payment upon the return by Lessee of the Equipment provided that no other sums are owing by Lessee to Lessor hereunder, in which event Lessor may apply such payment to any amount outstanding hereunder.

**17. EFFECTIVE DATE.**

This Lease shall become valid when executed and accepted by Lessor, notice of Lessor's acceptance of this Lease being hereby waived by Lessee.

**18. GOVERNING LAW.**

THIS LEASE AND ANY GUARANTY HEREOF SHALL BE INTERPRETED AND CONSTRUED IN ACCORDANCE WITH, AND GOVERNED BY, THE INTERNAL LAWS OF THE STATE OF NEW YORK.

**19. CHOICE OF FORUM FOR RESOLUTION OF DISPUTES.**

AS USED IN THIS PARAGRAPH 19, "APPLICABLE JURISDICTION" MEANS THE COUNTY OF NEW YORK, STATE OF NEW YORK, OR SUCH OTHER COUNTY OR STATE, AS THE SAME MAY CHANGE FROM TIME TO TIME, WHERE THE HOLDER OF LESSOR'S INTEREST IN THIS LEASE MAINTAINS ITS PRINCIPAL OFFICE RESPONSIBLE FOR ADMINISTRATING THIS LEASE. ALL ACTIONS, PROCEEDINGS OR LITIGATION BROUGHT BY LESSOR OR LESSEE OR ANY GUARANTOR SHALL BE INSTITUTED AND PROSECUTED IN THE APPLICABLE JURISDICTION. THE PARTIES ACKNOWLEDGE THEIR AGREEMENT THAT THE STATE COURTS SITTING IN THE APPLICABLE JURISDICTION SHALL BE THE EXCLUSIVE FORUM FOR ALL ACTIONS; PROCEEDINGS OR LITIGATION BETWEEN OR AMONG THE PARTIES, NOTWITHSTANDING THAT OTHER COURTS MAY HAVE JURISDICTION OVER THE PARTIES AND THE SUBJECT MATTER; PROVIDED, HOWEVER, THAT ANY ACTION OR PROCEEDING BY LESSOR TO RECOVER POSSESSION OF THE EQUIPMENT (WHETHER DENOMINATED AS A REPLEVIN, SEQUESTRATION CLAIM AND DELIVERY OR OTHERWISE) MAY BE BROUGHT IN ANY COUNTY WHERE THE EQUIPMENT MAY BE FOUND. LESSEE AGREES THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY LESSOR WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, WITH DELIVERY TO EITHER LESSEE OR LESSEE'S REGISTERED AGENT.

**20.** WAIVER OF JURY TRIAL LESSEE AND ANY GUARANTOR WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY IN ANY ACTION, PROCEEDING OR LITIGATION BETWEEN OR AMONG LESSOR, LESSEE OR ANY GUARANTOR.

**21. NO SUBROGATION.**

Lessee, Lessor and any guarantor agree that no guarantor shall have any right of subrogation to any of Lessor in the Equipment or this Lease or against Lessee, and that any such right of subrogation that may exist, as well as any right of indemnity against Lessee for any obligation which may be performed by guarantor with respect to this Lease, is hereby waived and released.

**22. SUBORDINATION.**

All indebtedness, now existing or hereafter arising, between Lessee and any guarantor is hereby subordinated to all present and future obligations of Lessee or any guarantor to Lessor, including, but not limited to, the Lease obligations, and, after the occurrence of an Event of Default, no payment shall be made or accepted on any such indebtedness due Lessee or any guarantor until all such obligations to Lessor are paid and satisfied in full.

**23. SURVIVAL OF GUARANTY OBLIGATIONS.**

All obligations of any guarantor shall remain enforceable notwithstanding that this Lease, or any obligations performed hereunder, may be void or voidable as against Lessee or any Lessee's creditors, including, but not limited to, a trustee in bankruptcy, by reason of any fact or circumstance.

**24. MISCELLANEOUS.**

This Lease contains the entire agreement between the parties and may not be altered, amended, modified, terminated or otherwise changed including by prior, contemporaneous or subsequent oral agreements, except in writing signed by an executive officer of Lessor. Lessee certifies that no such oral agreements exist. Lessor and Lessee intend this to be a valid and subsisting legal document, and agree that no provision of this Lease which may be deemed unenforceable shall in any way invalidate any other provision or provisions of this Lease, all of which shall remain in full force and effect. The undersigned certifies that he/she is authorized to execute this Lease on behalf of Lessee. Any notice intended to be served hereunder shall be deemed sufficiently sent if sent by regular mail, postage prepaid, addressed to the party at the addresses contained hereon. This Lease shall be binding upon the parties, their successors, legal representatives and assigns. All captions are intended to be descriptive only and shall not govern the Lease provisions.

**25. WAIVER; SEVERABILITY.**

No delay by Lessor in enforcing any rights under this Lease shall be interpreted as a waiver of said rights. If any provision of this Lease or the application thereof to any person, business entity, or circumstance is determined to be invalid, the remainder of this Lease, or the application of such provisions to any person, business entity or circumstances other than those to which it is held invalid, shall not be affected thereby.

Page 4 of 4

---

**DEALER'S BILL OF SALE:**

For good and valuable consideration, the receipt of which is hereby acknowledged, the undersigned hereby sells, assigns, transfers and sets over the Equipment to Northern Leasing Systems, Inc. The undersigned represents and warrants to Lessor that the undersigned is the absolute owner of the Equipment, that the Equipment is free and clear of all liens, charges and encumbrances, and that the undersigned has full right, power and authority to make this bill of sale.

Seller: First National Processing    Dated: 1/10/02

By: WIL GONZALEZ

Its: OWNER.



# Yodamo, Inc.

http://www.yodamo.com
admin@yodamo.com
2023 East Sims Way, Suite 183
Port Townsend, WA  98368
Phone: 360-379-3250
FAX: 360-379-2839

March 11, 2002

Northern Leasing Systems, Inc.
132 West 31st Street, 14th Floor
New York, NY 10001-5095                    re: <u>Lease 0236595</u>

To all it may concern:

## <u>TERMINATION, EFFECTIVE IMMEDIATELY</u>

This is written notice of immediate termination of the Yodamo, Inc.
lease #0236595 due to fraudulent representations: equipment received
is not equipment identified on lease.

*Effective immediately, absolutely no Northern Leasing Systems, Inc.
EFT, ACH or other electronic transaction to or from the Yodamo, Inc.
business checking account are authorized by Yodamo, Inc..*

Any attempted transactions by Northern Leasing Systems, Inc. will be
contested by Yodamo, Inc., and reported to the Better Business
Bureau and other agencies as necessary.

Yours truly,

Peri Kettler
President
Yodamo, Inc.

# Yodamo, Inc.

http://www.yodamo.com
admin@yodamo.com
2023 East Sims Way, Suite 183
Port Townsend, WA   98368
Phone: 360-379-3250
FAX: 360-379-2839

May 17, 2002                               7001 1140 0000 3917 8437

Northern Leasing Systems, Inc.                    VIA CERTIFIED MAIL
132 West 31st Street, 14th Floor
New York, NY 10001-5095

                                              re: Lease 0236595

To all it may concern:

## TERMINATION, EFFECTIVE IMMEDIATELY

This is written notice of immediate termination of the Yodamo, Inc.
lease #0236595 due to fraudulent representations: equipment received
is not equipment identified on lease.

*Effective immediately, absolutely no Northern Leasing Systems, Inc.
EFT, ACH or other electronic transaction to or from the Yodamo, Inc.
business checking account are authorized by Yodamo, Inc..*

Any attempted transactions by Northern Leasing Systems, Inc. will be
contested by Yodamo, Inc., and reported to the Better Business
Bureau and other agencies as necessary.

Yours truly,

Peri Kettler
President
Yodamo, Inc.

# Yodamo, Inc.

http://www.yodamo.com
admin@yodamo.com
2023 East Sims Way, Suite 183
Port Townsend, WA  98368
Phone: 360-379-3250
FAX: 360-379-2839

May 17, 2002

First National Processing
631 N Stephanie Suite 189
Henderson, NV 89014

re: Merchant Account 4468 2502 0306155

To all it may concern:

## TERMINATION OF SERVICE, EFFECTIVE IMMEDIATELY

This is written notice of immediate termination of the Yodamo, Inc. First National Processing merchant account.

No further transactions will occur by Yodamo, Inc. on the merchant account 4468 2502 0306155.

*Effective immediately, absolutely no First National Processing EFT, ACH or other electronic transaction to or from the Yodamo, Inc. business checking account are authorized by Yodamo, Inc..*

Any attempted transactions by First National Processing will be contested by Yodamo, Inc., and reported to the Better Business Bureau and other agencies as necessary.

Yours truly,

Peri Kettler
President
Yodamo, Inc.



June 3, 2004


Gordon Redner
322 Linklea Dr
Duncanville TX 75137


Lease Number: 0396210


Dear Gordon Redner,

I have previously written you regarding the above lease requesting you to contact me. To date I have received no response. Your lease is delinquent for the following: $57.99, excluding applicable fees. You must remit this amount immediately.

The automatic payment deduction from your bank account must also be reactivated, as stipulated by your lease agreement. Please fax a voided check copy with your new banking information to my fax number (212) 279-1495.

Call me immediately need to discuss this matter at (888) 607-3607.

Sincerely,

Andrae Mckay
Northern Leasing Systems Inc.


Remit payment to:
Northern Leasing Systems Inc.
PO Box 1027
Sioux Falls SD 57101-1027

Monday - Friday 8:30 to 5:30
Tel. (888) 607-3607
Fax (212) 279-1495


Doc-04H-3



June 8, 2004


Gordon Redner
322 Linklea Dr
Duncanville TX 75137


Lease Number: 0396210


Dear Gordon Redner,

This letter confirms that a non-cancelable lease agreement between Northern Leasing Systems Inc., and **Gsr Gifts** with the personal guaranty of **Gordon Redner**.

In the event this lease defaults, **Gordon Redner**, as the "Personal Guarantor" is liable for full payment. Failure to honor your payment commitment may result in your account being referred for legal action.

It is necessary for you to contact me at (888) 607-3607 to resolve this matter immediately.

Your cooperation is expected.



Sincerely,

Alice Acevedo
Northern Leasing Systems, Inc.

Remit payment to:
Northern Leasing Systems Inc.
PO Box 1027
Sioux Falls SD 57101-1027

Monday - Friday 8:30 to 5:30
Tel. (888) 607-3607
Fax (212) 279-1495

Doc-07H-3

**Northern** ☐☐☐ **Systems,** l.—

132 West 31st Street 14th Floor
New York, NY 10001-3405
ADDRESS SERVICE REQUESTED

September 13, 2004

Gordon Redner
322 Linklea Dr
Duncanville TX 75137

Lease Number: 0396210

Dear Gordon Redner,

You have not responded to our previous efforts to contact you.

You are now in default of your lease agreement.

Please contact me immediately regarding this situation. I can be reached at (888) 607-3607.

Sincerely,

Eric Wieder
Pre-Legal Department
Northern Leasing Systems, Inc.

Remit payment to:
Northern Leasing Systems Inc.
PO Box 1027
Sioux Falls SD 57101-1027

Monday - Friday 8:30 to 5:30
Tel. (888) 607-3607
Fax (212) 279-1495

Doc-21H-3

N

Northern Leasing Systems Inc
132 West 31st Street 14th Floor
New York NY 10001-3405

# INVOICE

JUNE 16, 2004

INVOICE/LEASE #: 0396210

DUE DATE: JULY 01, 2004

N2I
GSR GIFTS
GORDON REDNER
322 LINKLEA DR
DUNCANVILLE TX 75137-4312

# DUE AND PAYABLE UPON RECEIPT

| | |
|---|---|
| Opening Balance: | $57.99 |
| Monthly Lease Payment: | $57.99 |
| Invoice Service Charge: | $5.00 |
| Total Due This Month: | $120.98 |

To avoid the monthly $5.00 Service Charge for this prepared invoice, you should contact our Customer Service Department to request that we electronically debit your checking account for your monthly lease payment. Late payments will be assessed an additional 15% late fee.

If you have any questions regarding this invoice, please call us at (888) 275-3251.

**If you have already made payment, please disregard this notice.**

\* To expedite future payments, please provide your new bank information below.

| TO ENSURE PROPER CREDIT, DETACH COUPON AND MAIL IN RETURN ENVELOPE WITH YOUR PAYMENT |
|---|

INVOICE/LEASE #: 0396210

**DUE DATE: JULY 01, 2004**

Bank Name: _____
Account #: _____
Routing #: _____

☐ Check here if address has changed. Please note changes on reverse side.

NORTHERN LEASING SYSTEMS INC
PO BOX 1027
SIOUX FALLS SD 57101-1027

GSR GIFTS
GORDON REDNER
322 LINKLEA DR
DUNCANVILLE TX 75137-4312

PAY THIS AMOUNT     $120.98

P1BN2I02     UD100MS001*N2I*

JUNE 16, 2004

 **Northern** Leasing **Systems, Inc.**

February 5, 2004

Tom Smith
1024 W. 22248 Ridgewood Ct.
Waukesha WI 53186

Lease Number: 0254885

Dear Tom Smith,

Thank you for your recent payment on your lease that was posted on 11/01/03 in the amount of $56.69.

Although this payment has been applied, the lease remains due in the amount of $226.76. Please remit immediately to bring your lease current.

If you should have any questions, please contact me at (888) 607-3607.

Thank you in advance for your cooperation.

Sincerely,

Rhonda Mcclanahan
Northern Leasing Systems, Inc.

Remit payment to:
Northern Leasing Systems Inc.
PO Box 1027
Sioux Falls SD 57101-1027

Monday - Friday 8:30 to 5:30
Tel. (888) 607-3607
Fax (212) 279-1495

Doc-08H-3



**Northern Leasing Systems, Inc.**

February 24, 2004


Tom Smith
1024 W. 22248 Ridgewood Ct.
Waukesha WI 53186


Lease Number: 0254885


Dear Tom Smith,

You have not responded to our previous efforts to contact you.

You are now in default of your lease agreement.

Please contact me immediately regarding this situation. I can be reached at (888) 607-3607.



Sincerely,

Madelene Tabor
Pre-Legal Department
Northern Leasing Systems, Inc.


Remit payment to:
Northern Leasing Systems Inc.
PO Box 1027
Sioux Falls SD 57101-1027

Monday - Friday 8:30 to 5:30
Tel. (888) 607-3607
Fax (212) 279-1495


Doc-21H-3



**Northern** Leasing **Systems, Inc.**

March 4, 2004

Tom Smith
1024 W. 22248 Ridgewood Ct.
Waukesha WI 53186

Lease Number: 0254885

Dear Tom Smith,

********************** F I N A L   N O T I C E **********************

Pursuant to the terms of your lease agreement, your lease is in DEFAULT. To avoid further expense, you must immediately send $283.45 to:

> NORTHERN LEASING SYSTEMS, INC.
> 132 West 31st Street 14th Floor
> New York NY 10001

If your payment is not received, your account may be referred to a collection agency or to an attorney in your area. If this becomes necessary, you will be responsible for all costs and expenses incurred to enforce your lease, including attorney fees and other collections costs.

You must contact me at (888) 607-3607.

THIS IS YOUR FINAL NOTICE!

Sincerely,

Shenay Coulter
Pre-Legal Department
Northern Leasing Systems, Inc.

> Monday - Friday 8:30 to 5:30
> Tel. (888) 607-3607
> Fax (212) 279-1495

Doc-22H-3

 **Northern** Systems,

March 19, 2004

Tom Smith
1024 W. 22248 Ridgewood Ct.
Waukesha WI 53186

Lease Number: 0254885

Dear Tom Smith,

Pursuant to the terms of our lease agreement, your lease is now in DEFAULT.

Your lease will be referred to a COLLECTION AGENCY, you will be responsible for all costs and expenses incurred in collection of this debt.

If you have any questions, contact me at (888) 607-3607.

Sincerely,

Shenay Coulter
Pre-Legal Department
Northern Leasing Systems, Inc.

Remit payment to:
Northern Leasing Systems Inc.
PO Box 1027
Sioux Falls SD 57101-1027

Monday - Friday 8:30 to 5:30
Tel. (888) 607-3607
Fax (212) 279-1495

Doc-23H-3



March 29, 2004


Tom Smith
1024 W. 22248 Ridgewood Ct.
Waukesha WI 53186


Lease Number: 0254885


Dear Tom Smith,

Pursuant to the terms of our lease agreement, your lease is now in DEFAULT.

Your lease will be referred to our LEGAL DEPARTMENT, and you will be responsible for all costs and expenses incurred in the collection of this debt.

If you have any questions, contact me at (888) 607-3607.

Sincerely,

Shenay Coulter
Pre-Legal Department
Northern Leasing Systems, Inc.


Remit payment to:
Northern Leasing Systems Inc.
PO Box 1027
Sioux Falls SD 57101-1027

Monday - Friday 8:30 to 5:30
Tel. (888) 607-3607
Fax (212) 279-1495


Doc-24H-3



April 29, 2004

Tom Smith
1024 W. 22248 Ridgewood Ct.
Waukesha WI 53186

Lease Number: **0254885**

Re: **Equipment Lease Agreement**

Outstanding Balance: **$2,617.20**

## DEMAND FOR PAYMENT

Dear Tom Smith,

The above account has been referred to this office for collection of your outstanding balance. Demand is made for payment in full. Please send the above balance to the address mentioned below and write your lease number on your check or money order. Payment can also be made via CREDIT CARD, DEBIT CARD, WESTERN UNION or FEDERAL EXPRESS.

Unless you promptly make arrangements with us to pay your outstanding balance, a licensed process server, constable or sheriff in your area will serve a summons and complaint upon you.

Please take this opportunity to resolve this matter. If you are not in a position to pay in full, contact us to discuss your situation.

Please contact me at (800) 683-5433 extension #8476.

Sincerely Yours,

Louis Cucinota
Northern Leasing Systems, Inc.
Legal Collections Department

Northern Leasing Systems, Inc.
PO Box 7861
New York NY 10116

Monday – Friday 8:30am – 8:00pm

51-H-9