SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: ______________________ Justice    PART ______

Index Number : 602006/2004
NORTHERN LEASING SYSTEMS INC
vs
TURNER, EDWARD M.
Sequence Number : 005
AMEND

INDEX NO. ______
MOTION DATE ______
MOTION SEQ. NO. ______
MOTION CAL. NO. ______
motion to/for ______

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1-3 |
| Answering Affidavits — Exhibits | 4-8 |
| Replying Affidavits | 9-10 |

Cross-Motion: ☑ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion is decided in accordance with the memorandum decision and order annexed hereto

N.B. -- a compliance conference is scheduled for 12/15/08 at 12 noon.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: 12/15/08

HON. JANE S. SOLOMON
J.S.C.

Check one: ☐ FINAL DISPOSITION ☑ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST ☐ REFERENCE

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 55
---------------------------------------x
NORTHERN LEASING SYSTEMS, INC.,

    Plaintiff,

    -against-

EDWARD M. TURNER and SB RESTAURANTS, INC.,

    Defendants.
---------------------------------------x

Index No.: 602006/04

DECISION and ORDER

**JANE S. SOLOMON, J.:**

Plaintiff Northern Leasing Systems, Inc. (NLS) sued to recover under three equipment leases between it and defendant SB Restaurants, Inc. (SB Restaurants). SB Restaurants owns and operates restaurants in Arizona, which received credit card verification equipment that is the subject of the leases. The individual defendant, Edward M. Turner (Turner), guaranteed payment under the leases. Defendants answered with a counterclaim alleging fraudulent inducement, and a counterclaim for personal injury on behalf of Turner. Defendants now move for leave to amend their answer to add counter-claims under federal and New York State consumer protection statutes, to compel discovery, and to obtain a commission to conduct discovery in Arizona. Plaintiff cross-moves for partial summary judgment dismissing the counterclaims and to compel discovery.

In a recent decision, the Court of Appeals described NLS and its business as follows: "NLS, a New York corporation in the business of micro-ticket leasing, finances credit card point-

of-sale . . . terminals and other business equipment. Specifically, NLS, as lessor, enters into finance lease agreements with small businesses . . . for certain equipment. Under the terms of these leases, NLS purchases the equipment from third-party vendors solely for the purpose of leasing it." (Pludeman v NLS, 10 NY3d 486, 489 [2008]). The leases and guarantees (in each case, a single document) at issue here provide that litigation under the agreement shall be prosecuted in the courts of the State of New York.

Turner signed the leases as president of SB Restaurants, and signed the guarantees in his individual capacity. He is a quadriplegic who also suffers from serious medical conditions that require him to use a ventilator to breath and speak. He claims that at the time he signed the leases and guarantees, in July 2003, he was in a hospital intensive care unit in Flagstaff, Arizona. Despite his physical condition, Turner was "very much in charge of all executive decisions" (Answer, paragraph 15). The equipment leases and guarantees were brought to the hospital for Turner's signature by an employee of an equipment vendor that is not a party to this lawsuit. SB Restaurant received the equipment and made payments. NLS contends that SB Restaurant made payments until April 2004, after which it defaulted, and NLS commenced this lawsuit soon thereafter to recover approximately $14,000 plus attorneys fees

2

under each of the three leases.

NLS had sought summary judgment, which was granted by Justice Acosta of this court in a decision and order entered on February 17, 2006. Defendants moved to renew that order, and on October 18, 2007, the parties stipulated that defendants would withdraw the motion and that the February 17 order would be vacated, and the court so-ordered the stipulation.

1. **Leave to Amend the Answer and Counterclaims**

The proposed amendments to the answer would add ten causes of action and a new set of facts.

For the most part, the added facts are addressed to the circumstances under which Turner signed the leases. Defendants allege that the salesperson, named Chet Green, misrepresented how the equipment worked, falsely stated that it was being provided on a trial basis, and otherwise misrepresented terms of payment and other aspects of the lease text. They claim that Green was an agent of NLS, although he apparently was employed by Cardpayment Solutions, Inc. (CSI), an entity with which NLS had a contractual relationship. They further contend that Turner was incapacitated by medication when he signed the papers. SB Restaurants accepted the equipment, but it did not work as promised. Turner asked Green to remove the equipment, but he failed to do. Meanwhile, NLS collected automated payments from

3

SB Restaurants's bank account, which continued until Turner ordered SB Restaurant's bank to stop. Defendants claim that NLS is part of a nation-wide scam to cheat small businesses,[1] and that NLS falsely reported Turner's obligation under the guarantees to Experian, a credit reporting agency.

The new causes of action in the proposed amendment are for negligent misrepresentation, abuse of process, defamation, and violations of the federal Fair Credit Reporting Act (15 USC § 1681, et seq., "FCRA") and the New York State Fair Credit Reporting Act, General Business Law § 380, et seq.

As relevant here, the state and federal fair credit reporting laws are substantially the same. The statutes govern the practice of making and providing financial reports regarding consumers. Although the statutes broadly define a "consumer" as an "individual" (15 USC § 1681a [c]; GBL § 380a [b]), the Federal Trade Commission issued implementing regulations under the federal statute which provide that a report on a consumer made in connection with a business operated by the consumer is not a "consumer report" and FCRA does not apply to it (16 CFR, Part 600, App. Cmt. 6[b], and see, Lucchesi v Experian Info. Solutions, Inc., 2003 US Dist Lexis 1st 11420 [SDNY 2003] [object of FCRA is to regulate credit reports used in establishing

---

[1] The allegation of a wide-spread scam by NLS is the subject of another lawsuit in this court, Pludeman v NLS, New York County index number 101059/04.

4

eligibility for personal, family or household purposes]). The text of these statutes clearly relate to the protection of consumers in connection with personal transactions, and are not implicated each time an individual guarantees a business obligation, as urged by defendants.

The proposed counterclaims do not specify in what manner NLS violated the statutes, but it appears that NLS is accused of negligently or willfully accessing consumer credit reports regarding Turner in connection with his guarantee of SB Restaurant's obligations under the leases. The last such violation is said to have occurred in May 2004. The other basis for recovery is that Turner reported to Experian that NLS's claim was mistaken in November 2007, and if Experian contacted NLS regarding Turner's dispute, NLS failed to admit its error.

In light of the foregoing, leave to amend the complaint to add counter-claims under the state and federal Fair Credit Reporting Acts is denied.

Leave also is denied with respect to the abuse of process counter-claim. The basis for this claim is that NLS abused process by causing a summons and complaint to be issued against defendants. However, defendants admit that there is a controversy over the equipment leases and guarantees, and that they are parties to the transactions. Defendants do not allege facts asserting a prima facie claim for abuse of process.

5

9

Leave also is denied with respect to the defamation counter-claim made on behalf of Turner. First, the allegedly defamatory statement is not specifically set forth, but it appears to be NLS's report to Experian that it had a claim against Turner. On its face, the allegation that NLS had a claim against Turner is true, and not defamatory. The proposed counter-claim does not specify which statements NLS made are defamatory, nor when made or to whom. Accordingly, the amendment is not allowed because it fails to set forth the particular words complained of (CPLR 3016[a]).

The amendments to the fraud and misrepresentation claims, which are expanded from one counter-claim to two, are permitted, and the amendment to the factual recitation is permitted as well because it fleshes out defendants' previous claim. In essence, defendants contend that they were mislead by Chet Green, and that Green was an agent of NLS. NLS denies the agency, but defendants are entitled to discovery into these claims.

Finally, Turner's alleged personal injury claim is not in the proposed amended answer, so it is deemed withdrawn.

2. **Discovery Dispute**

All parties agree that discovery is outstanding. For example, in response to document requests and interrogatories, NLS refused to disclose documents concerning its relationship with CSI. NLS also claims that its communications with CSI are protected under the attorney-client privilege, a claim that is untenable on its face. Defendants have refused to answer basic interrogatories about the location of the equipment they leased, for how long they used it or when it allegedly failed to operate, and interrogatories regarding Turner's medication and physical condition at the time he signed the leases and guarantees, which are matters he has put at issue. According to NLS, defendants have so far failed to produce even the documents they acknowledged must be produced. As a result of this decision, most questions regarding the scope of this lawsuit should be resolved. Therefore, the parties shall serve amended and supplemental responses to discovery demands, and where a privilege is claimed, a detailed privilege log shall be provided.

Defendants also seek a commission to take the deposition of a doctor in Arizona, Charles Bell, MD, and to obtain medical records from the Flagstaff Medical Center of Flagstaff, Arizona. Defendants claim that Dr. Bell was Turner's physician in July 2003, and his testimony is relevant to Turner's defense that he was medically incapacitated. Defendants also

7

seek a commission to subpoena Turner's medical records at the Flagstaff Medical Center.  Since Turner's physical condition is at issue in this lawsuit, that part of defendants' motion is granted.

3.  Cross-Motion for Partial Summary Judgment

NLS seeks partial summary judgment dismissing defendants' counter-claims for fraudulent misrepresentation and personal injuries.  Defendants oppose the motion in part on the ground that NLS had previously sought summary judgment, and it should not be permitted additional bites at the apple.  This argument fails because the parties agreed to nullification of the decision on that motion by their stipulation.

The argument for dismissing the fraud and misrepresentation claims is that Green was not an agent of NLS, and there is no allegation that NLS directly communicated any material misrepresentation of fact to defendants.  NLS relies on a copy of its agreement with Green's alleged direct employer, CSI, which indicates that it was an independent contractor.  However, there is a factual dispute regarding Green's relationship with NLS that is not conclusively resolved by NLS's limited disclosure.

NLS further argues that if the fraud and misrepresentation claims are permitted, then Green and his

Case 7:06-cv-01625-JSG   Document 35-5   Filed 01/14/09   Page 10 of 12

6

employer, CSI, must be joined as necessary parties under CPLR 1001. That rule states that "Persons who ought to be parties if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action shall be made plaintiffs or defendants." Nonjoinder of a party who should be joined under CPLR 1001 is grounds for dismissal of the action (CPLR 1003).

Defendants argue that they do not need Green or CSI to obtain complete relief under their counterclaims. Indeed, all parties apparently agree that NLS's only liability under the fraud and misrepresentation counter-claims is as a principal for its agent, concerning which there is a factual dispute. Green and CSI are not essential parties to that dispute (although the parties herein may seek discovery from them), and NLS's request for summary judgment on this ground is denied.

In short, the fraud and misrepresentation claims regarding the making of the leases survive as amended, and therefore NLS is not entitled to summary judgment on its claim upon the leases. Therefore, the cross-motion for summary judgment is denied with leave to renew at the close of discovery.

Accordingly, it hereby is

ORDERED that defendants' motion for leave to amend the answer and counter-claims is granted to the extent that defendants may assert the first and second counterclaims as set

10

forth in the proposed amended answer, including the factual assertions up to the forty-second paragraph, and the amended answer and counterclaims are deemed served upon service of a copy hereof with notice of entry; and it further is

ORDERED that plaintiff shall serve a reply thereto within twenty days of receipt; and it further is

ORDERED that the parties shall serve amended and supplemental discovery responses in accordance with the foregoing by December 5, 2008, failing which the court will entertain motions to preclude; and it further is

ORDERED that the branch of defendants' motion seeking a commission to obtain the deposition testimony of Charles Bell, MD of Flagstaff, Arizona, and to subpoena records from the Flagstaff Medical Center is granted, and defendants shall settle orders for commissions by October 31, 2008; and it further is

ORDERED that the cross-motion for summary judgment is denied; and it further is

ORDERED that counsel shall appear for a compliance conference in Part 55 on December 15, 2008 at 12 noon, to verify compliance with this order and to extend the note of issue deadline as necessary.

Dated: October 15, 2008

ENTER

J.S.C.

HON. JANE S. SOLOMON