UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MELINDA SERIN, JUDSON RUSS, LONG SOUI
LIM, PERI KETTLER, GORDON REDNER, AND
THOMAS J. SMITH,

                            Plaintiffs,

        -against-

NORTHERN LEASING SYSTEMS, INC., JAY
COHEN, RICH HAHN, and SARA KRIEGER,

                         Defendant.

------------------------------------------------------------------ X

06 CV 1625 (SCR)

## APPENDIX TO

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

MOSES & SINGER LLP
*Attorneys for Defendants*
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

## INDEX TO UNPUBLISHED ORDERS AND OPINIONS

Gagasoules v. MBF Leasing LLC,
Index No. 08 Civ. 2409 (E.D.N.Y. February 2, 2009)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
GUS GAGASOULES, JAN NIBLETT, LUSTER
COTE, INC., RHONDA GARNER, and DECOR
SPECIALTIES, INC., on behalf of themselves and
all other similarly situated,

                           Plaintiffs,

               -against-

MBF LEASING LLC, LINA KRAVIC, BRIAN
FITZGERALD, SAM BUONO, WILLIAM
HEALY, and JOHN DOES 1-100,

                         Defendants.
-------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
08-CV-2409 (ADS)(ARL)

**APPEARANCES:**

**Chittur & Associates, P.C.**
Attorneys for Plaintiffs
286 Madison Avenue, Suite 1100
New York, NY 10017
     By:  Krishnan Shanker Chittur, Esq, Of Counsel

**Klafter Olsen & Lesser LLP**
Attorneys for Plaintiffs
1311 Mamaroneck Avenue, Suite 220
White Plains, NY 10605
     By: Seth R. Lesser, Esq., Of Counsel

**Moses & Singer LLP**
Attorneys for Defendants MBF Leasing, Inc., Linda Kravic, Brian Fitzgerald, Sam
Buono
405 Lexington Avenue
New York, NY 10174
     By:  Jennifer Patricia Nigro, Esq., Of Counsel

**Tashjian & Padian**

Attorneys for Defendant William Healy
15 West 36th Street, 15th Floor
New York, NY 10018
      By: Gerald Padian, Esq.
         Bradley M. Rank, Esq., Of Counsel

**Harrison & Held, LLP**
Attorneys for Defendant William Healy
333 W. Wacker Drive Suite 1700
Chicago, IL 60606
      By: John M Heaphy, Esq., Of Counsel

**SPATT, District Judge**.

      On June 13, 2008, Gus Gagasoules, Jan Niblett, Luster Cote, Inc., Rhonda Garner, and Decor Specialties, Inc. (collectively "the Plaintiffs") commenced a lawsuit against MBF Leasing, LLC ("MBF"), Lina Kravic, Brian Fitzgerald, Sam Buono, and William Healy (collectively "the Defendants") asserting various causes of action arising out of equipment finance leases that the Plaintiffs entered into with MBF. Presently before the Court is a Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) motion to dismiss filed by all of the Defendants and separate motions by Defendants William Healy ("Healy") and Brian Fitzgerald ("Fitzgerald") to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

## I. BACKGROUND

      MBF is a New York corporation that finances credit card swipe machines and other electronic payment equipment for small businesses. Although MBF does not manufacture or supply the equipment, MBF provides financing to merchants who

choose to lease equipment provided by third-party vendors. When MBF is selected as the source of financing, the lessee is required to submit an application and an executed lease agreement for MBF's approval. If the lessee's application is approved, MBF finances the equipment and looks to the lessee for payments structured according to the lease agreement.

**A.     The Defendants' Lease Agreement with Professional Fur Designers**

Gus Gagasoules ("Gagasoules") is the owner of a boutique fur store called Professional Fur Designers ("Professional Furs"). On May 5, 2006, MBF entered into a written lease agreement with Gagasoules to provide financing for electronic payment equipment. Gagasoules states that MBF's agents represented that he could use the equipment on a trial basis without incurring any payment obligation.

According to Gagasoules, two sections of the lease agreement entitled "Schedule of Payments" and "Equipment Information" were left blank when he signed. Gagasoules alleges that these terms were only to be filled in if he decided to use the equipment beyond the trial period. Nevertheless, despite the fact that the equipment was never used, Gagasoules alleges that he later discovered that MBF's agents had filled in these sections of the agreement to reflect that the parties had agreed to a four year lease for $49.99 per month plus taxes. Gagasoules also alleges that MBF added a previously undisclosed insurance premium of $4.95 per month.

3

According to Gagasoules, MBF deducted $59.25 each month from Professional Fur's business account.

Upon learning of MBF's monthly charges, Gagasoules returned the equipment to MBF and demanded that the Defendants cease making deductions from Professional Furs' account. When the Defendants refused to stop making these monthly deductions, Gagasoules arranged with his bank to prevent the Defendants from drawing on his account. Gagasoules alleges that when the Defendants were no longer able to deduct the monthly charges, the Defendants made defamatory statements about Gagasoules to Experian, a credit reporting agency.

In May of 2008, Gagasoules raised a dispute with Experian about the Defendants' allegedly defamatory statements and demanded that the entries be deleted from his credit report. Gagasoules alleges that Experian forwarded the dispute to the Defendants who in turn failed to investigate or verify their claims. Gagasoules also avers that MBF subsequently gained unauthorized access to his credit report on three separate occasions between May of 2006 and January of 2008.

**B.     The Defendants' Lease Agreement with Luster Cote, Inc.**

In September of 2006, Jan Niblett ("Niblett") signed a lease agreement with MBF on behalf of his company Luster Cote, Inc. for the purpose of financing electronic payment equipment. As with Gagasoules, Niblett alleges that, after he signed the lease agreement, MBF's agents supplied unbargained for terms in the

4

agreement obligating Niblett to pay $109 per month plus taxes for, among other equipment, a machine that was never discussed or received. Niblett asserts that these payments, plus a previously undisclosed $4.95 insurance premium, were deducted from Luster Cote's bank account each month by MBF.

After an unsuccessful attempt to convince MBF to cease making the monthly deductions, Luster Cote made arrangements with its bank to prevent MBF from drawing on its account. According to Niblett, when MBF was no longer able to deduct payments from the Luster Cote bank account, the Defendants made defamatory statements about Niblett to Experian. Niblett further alleges that MBF gained unauthorized access to his credit report on four separate occasions between October of 2006 and April of 2008.

**C.     The Defendants' Lease Agreement with Decor Specialties, Inc.**

In January of 2005, Rhonda Garner ("Garner") signed a lease agreement with MBF on behalf of her company, Decor Specialties, Inc for the purpose of financing electronic payment equipment. Garner alleges that, after the lease agreement was executed, MBF's agents filled in payment terms obligating her to pay $69.99 per month plus taxes and levied a previously undisclosed insurance premium of $4.95. As with the other Plaintiffs, Garner alleges that MBF made monthly deductions from Decor Specialties' account.

The Plaintiffs allege that after Decor Specialties arranged with its bank to
prevent MBF from drawing on its account, the Defendants made defamatory
statements about Garner to Experian.  Garner alleges that she disputed these entries on
her credit report with Experian and that Experian forwarded this dispute to the
Defendants.  Garner asserts that the Defendants never investigated or corrected their
report and in fact made an additional false report to Experian in September of 2007.
According to Garner, MBF also gained unauthorized access to her credit report five
times between January of 2005 and March of 2007.

**D.      The Plaintiffs' Complaint**

The Plaintiffs assert sixteen wide-ranging causes of action including claims for
violations of the Fair Credit Reporting Act ("FCRA"),15 U.S.C. 1681 et seq., the New
York Fair Credit Reporting Act ("NYFCRA"), N.Y. Gen. Bus. L. § 380, and New
York Insurance Law § 2102.  The Plaintiffs also allege a defamation claim and several
causes of action sounding in breach of contract.  On October 14, 2008, the Defendants
moved under Rule 12(b)(6) to dismiss the complaint in its entirety and Fitzgerald filed
a 12(b)(2) motion to dismiss the complaint for lack of personal jurisdiction.  On
December 12, 2008, Healy also moved to dismiss the complaint under Rule 12(b)(2).

## II.  DISCUSSION

**A.      Legal Standards**

### 1. 12(b)(6) Motion to Dismiss

In considering a 12(b)(6) motion to dismiss, "'[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).  In this regard, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Starr v. Georgeson S'holder, Inc., 412 F.3d 103, 109 (2d Cir. 2005).

A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has interpreted Twombly to require that a complaint "allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007).  On a 12(b)(6) motion to dismiss, the Court must limits its "consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." Nechis v. Oxford Health Plans Inc., 421 F.3d 96, 100 (2d Cir. 2005).

**B.** **The Defendants' 12(b)(6) Motion to Dismiss**

**1. Fair Credit Reporting Act**

The FCRA regulates the collection, dissemination, and use of consumer credit information. In particular, "its object is to regulate credit reports used in establishing eligibility for personal, family, or household purposes." Lucchesi v. Experian Info. Solutions, Inc., 2003 WL 21542317 (S.D.N.Y. Jul. 7, 2003). In this sense, the statute applies only to "consumer reports . . . and creates a cause of action in favor of 'any consumer' who is damaged" by a defendant's willful or negligent noncompliance with the statute. See Id (citing 15 U.S.C. 1681a(d)(1)); 15 U.S.C. § 1681n; 15 U.S.C. § 1681o. Here, the Plaintiffs allege that the Defendants violated the FCRA by: (1) willfully or negligently gaining access to the Plaintiffs' personal credit reports; and (2) failing to rectify false statements the Defendants made to Experian. The Defendants counter that the FCRA does not apply where, as here, a defendant obtains a merchant's personal credit report in connection with a commercial transaction involving that merchant's business.

The Federal Trade Commission ("FTC") has declared that "[a] report on a consumer for credit or insurance in connection with a business operated by the consumer is not a 'consumer report' and the [FCRA] does not apply to it." Lucchesi, 2003 WL 21542317 at *2 (citing 16 C.F.R. Part 600, App. cmt. 6(b)). Although FTC opinions are not accorded the force of trade rules or regulations, the FTC's

8

interpretation of the FCRA is persuasive authority that clearly supports the

Defendants' argument.  In addition, the Defendants' contention is also supported by

relevant case law.  Lucchesi, 2003 WL 21542317.

In Lucchesi, the plaintiff applied for and personally guaranteed a bank loan in

order to finance the purchase of certain equipment for his business.  When the bank

denied his loan application on the basis of a personal credit report issued by the

defendant, the plaintiff brought a lawsuit alleging that the defendant was negligent in

preparing the report.  The Court dismissed the complaint observing that the FTC's

interpretation of the FCRA foreclosed the plaintiff's claim.

Here, as in Lucchesi, the Plaintiffs signed personal guarantees on behalf of

their businesses in order to finance equipment and the Defendants then accessed their

personal credit reports.  Under these circumstances, the Defendants' access to the

Plaintiffs' personal credit reports does not give rise to a claim under the FCRA

because these were not "consumer reports" within the meaning of the statute.

Accordingly, Counts I-IV are dismissed.

### 2.  New York Fair Credit Reporting Act

The NYFCRA is consumer protection statute that is styled after the FCRA and

courts in the Second Circuit interpret these statutes similarly.  Trikas v. Universal

Card Servs. Corp., 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005); Ali v. Vikar Mgmt. Ltd.,

994 F. Supp. 492, 498 (S.D.N.Y.1998).  In this sense, the Plaintiffs' claims under the

NYFCRA are duplicative of their claims under the FCRA and suffer from the same infirmity. Accordingly, Counts V-VIII are dismissed.

### 3. New York Insurance Law § 2102

The Plaintiffs allege a cause of action under New York Insurance Law § 2102 asserting that the Defendants violated the statute by collecting insurance premiums without a proper license to engage in the insurance business. The statute provides, in pertinent part, that "[n]o person, firm, association or corporation shall act as an insurance producer or insurance adjuster in this state without having authority to do so by virtue of a license issued and in force pursuant to the provisions of this chapter." N.Y. INS. Law § 2102(a)(1). The Plaintiff has not offered and the Court is unable to locate any cases recognizing a private right of action under § 2102. This is not surprising.

"Typically, courts do not construe the Insurance Law as providing for a private right of action, in the absence of express language authorizing such enforcement." Certain Underwriters at Lloyd's, London v. Plasmanet Inc., 2002 WL 1788020, at *3 (S.D.N.Y. Aug 1., 2002) (quoting Bauer v. Mellon Mortgage Co., 178 Misc.2d 234, 680 N.Y.S.2d 397, 400 (1998)). Here, although it is evident that the statute does not expressly authorize a private right of action, the Plaintiffs urge the Court to create an implied private right of action under § 2102.

10

"To imply a private right of action when not expressly provided by statute, plaintiffs must prove (1) they are members of the class for whose benefit the statute was enacted; (2) a private right of action would promote the legislative purpose; and (3) creation of such a right of action would be consistent with the legislative scheme." Masters v. Wilhelmina Model Agency, Inc., 2003 WL 145556, at *6 (S.D.N.Y. Jan. 17, 2003) (citing Sheehy v. Big Flats Cmty. Day, 73 N.Y.2d. 629, 633, 543 N.Y.S.2d 18, 541 N.E.2d 18 (1989)). The Plaintiffs have failed to convince the Court in this case that it should construe § 2102 to create a private right of action.

First, the legislative history clearly reflects that, in enacting § 2102, the legislature sought to "ease multi-state insurance operations by standardizing producer licensing provisions and formalizing reciprocity agreements under which New York producer licensees are recognized by other states and New York in turn recognizes other states' licensees." New York Bill Jacket, 2003 S.B. 5729, Ch. 687. The Plaintiffs fail to explain how recognizing a private right of action against defendants who collect insurance premiums without a license would further this purpose. Second, in light of this avowed legislative purpose, it seems clear that the statute was designed to benefit licensed multi-state insurance companies; not small business owners who are charged insurance premiums by unlicensed companies. Finally, creating a private right of action would be inconsistent with the legislative scheme because N.Y. Insurance Law §109(d) contemplates that only the Superintendent of the

11

New York State Insurance Department retains the authority to institute civil actions to recover for violations of the New York Insurance Law.

Clearly, in this case, the <u>Sheehy</u> factors cut decidedly against recognizing a private right of action under § 2102. Accordingly, Count IX is dismissed.

### 4. Defamation

To assert a viable cause of action for defamation, a Plaintiff must allege: (i) a false defamatory statement of fact; (ii) of and concerning the plaintiff; (iii) that was published to a third party; (iv) made with the applicable level of fault on the part of the speaker; and (vi) caused special harm or constituted defamation per se. <u>Albert v. Loksen</u>, 239 F.3d 256, 265-66 (2d Cir. 2001). Under New York C.P.L.R. § 3016(a), the Plaintiff is required to set forth "the particular words complained of" and the person or persons to whom the alleged defamatory comments were made. <u>Mills v. Miteq, Inc.</u>, 2008 WL 350922, at *2 (E.D.N.Y. Feb. 7, 2008).

The Plaintiffs allege that the Defendants made the following actionable statements to Experian: (i) Mr. Gagasoules had personally opened an account with Defendant MBF on May 1, 2006; (ii) Mr. Gagasoules' personal account was for 48 months with monthly payments due; (iii) Defendant MBF had "charged off" $1,850; (iv) Mr. Niblett had personally opened an account with the Defendants in 10/06; (v) Mr. Niblett's personal account had a credit limit/original amount of $5,517; (vi) Mr. Niblett's personal account was an "installment loan" for "48 months" with monthly

12

payments due; (vii) the Defendants had "charged off" $4,219 which Mr. Niblett allegedly owed on account of "Early termination/balance owing"; (viii) Ms. Garner had personally opened an account with the Defendants in February 2005; (ix) Ms. Garner's personal account had a credit limit/original amount of $3,597; (x) Ms. Garner's personal account was an "installment" loan for "48 months" with monthly payment due; and (xi) the Defendants had "charged off" $2,709 which Ms. Garner allegedly owed on account of "Early termination/balance owing."

At the motion to dismiss stage, the Court must accept that these statements were in fact false. The Court's analysis, then, must turn to "whether the statements at issue are 'reasonably susceptible of a defamatory meaning.'" Krepps v. Reiner, 2008 WL 5056442, at *10 (S.D.N.Y. Nov. 24, 2008) (quoting Treppel v. Biovail Corp., 2005 WL 2086339, at *7 (S.D.N.Y. Aug. 30, 2005). A statement has a defamatory meaning if it "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Foster v. Churchill, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (N.Y.1996) (citations and internal quotations marks omitted).

Here, none of the statements set forth above are reasonably susceptible of a defamatory meaning. The Court fails to apprehend and the Plaintiffs make no cogent effort to explain how any of these statements would expose the Plaintiffs to "public

13

contempt, ridicule, aversion or disgrace." See DiBella v. Hopkins, 2002 WL 31427362, at *2 (S.D.N.Y. Oct. 30, 2002) (noting that "courts should not strain to interpret statements as defamatory."). Accordingly, Count XVI is dismissed.

### 5. Concerted Action Liability

"Concerted-action liability under New York law is based on the principle that '[a]ll those who, in pursuance of a common plan or design to commit a tortious act . . . or who lend aid or encouragement to the wrongdoer . . . are equally liable with him." Pittman by Pittman v. Grayson, 149 F.3d 111, 122 (2d Cir. 1998) (quoting Bichler v. Eli Lilly & Co., 55 N.Y.2d 571, 580, 450 N.Y.S.2d 776, 780, 436 N.E.2d 182 (1982)). "When a cause of action alleges that each defendant has acted in concert, there must be an independent tort to provide the basis for liability. Am. Bldg. Maint. Co. of New York v. Acme Prop. Serv., 515 F. Supp. 2d 298, 321 (N.D.N.Y. 2007) (citing Small v. Lorillard Tobacco Co., Inc., 94 N.Y.2d 43, 57, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999)). Here, with the Court having dismissed their defamation claim, the Plaintiffs have failed to allege that the Defendants committed an independent tort that could serve as the predicate for a concerted action liability claim. Accordingly, Count XII is dismissed.

### 6. Civil Conspiracy

New York does not recognize an independent tort of civil conspiracy. As a threshold matter then, to establish a civil conspiracy claim, the plaintiff must show

that the defendants committed an underlying tort. See Crigger v. Fahnestock & Co., Inc., 443 F.3d 230, 237 (2d Cir. 2006) (observing that, under New York law, a plaintiff may not assert a civil conspiracy claim where it has failed to plead the commission of an underlying tort); Jean-Laurent v. Hennessy, 2008 WL 3049875, at *20 (E.D.N.Y. Aug. 1, 2008) (noting that "[s]ince New York does not recognize an independent tort of civil conspiracy, such a cause of action is available only if there is evidence of an underlying actionable tort.") (citation omitted)).  As with their concerted action claim, the Plaintiffs have failed to set forth a viable independent tort that could serve as the predicate for a civil conspiracy cause of action.  Accordingly, Count XIII is dismissed.

### 7. The Plaintiffs' Breach of Contract Claim

The Plaintiffs allege that MBF breached the lease agreements "by charging and collecting sums in excess of those specified in the first page" of the agreements and "by imposing undisclosed amounts towards alleged taxes and insurance coverage." The Plaintiffs also allege that the Defendants breached the implied covenant of good faith and fair dealing by concealing material terms in the lease agreements.  As a threshold issue, the Plaintiffs contend that collateral estoppel precludes the Defendants from seeking dismissal of their breach of contract claim in light of the New York State Appellate Division, First Department's ruling in Pludeman v. Northern Leasing Systems, Inc., 40 A.D.3d 366, 837 N.Y.S.2d 10 (1st Dep't 2007).

In <u>Pludeman</u>, a different group of plaintiffs alleged, among other causes of action, that Northern Leasing Systems, Inc. ("NLS") breached lease agreements that were identical to those in the present case. In particular, the complaint alleged that the defendants charged the plaintiffs fees in excess of the amounts agreed upon in the lease agreements. On appeal, the First Department, without analysis, reversed a lower court's decision to dismiss the plaintiffs' breach of contract claims. <u>See</u> <u>Id</u>. at 367 ("The cause of action for breach of contract is sufficiently stated by the allegations of overcharges."). Here, the Plaintiffs argue that the First Department's decision has a preclusive effect because the lease agreements in the two cases are identical and the Defendants are in privity with NLS. The Court disagrees.

The Plaintiffs misapprehend the doctrine of collateral estoppel. "The fundamental notion of the doctrine of collateral estoppel . . . is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies." <u>Ali v. Mukasey</u>, 529 F.3d 478, 489 (2d Cir. 2008). It is well-settled that collateral estoppel applies only where "the issues previously litigated were 'necessary to support a valid and final judgment on the merits.'" <u>Ali</u>, 529 F.3d at 489 (citing <u>Gelb v. Royal Globe Ins. Co.</u>, 798 F.2d 38, 44 (2d Cir.1986)). Here, even accepting the Plaintiffs' dubious allegation that the Defendants are in privity with NLS, it is evident that the First Department's finding was not a final judgment on the merits. Therefore,

Pludeman does not estop the Defendants in this action from seeking dismissal of the Plaintiffs' breach of contract claim.

The Court reads the complaint to allege that MBF breached the lease agreements by supplying unbargained for price terms after the Plaintiffs had executed the lease agreements. Accepting these allegation as true, as the Court must at the motion to dismiss stage, the Plaintiffs have offered a plausible claim that MBF breached the lease agreements by charging them payments in excess of the price terms agreed to by the parties.

However, the Plaintiffs' contention that MBF breached the parties' agreements by collecting undisclosed taxes and insurance premiums is belied by the very terms of the agreements. The Defendants' right to collect insurance premiums is set forth in ¶ 10 on Page 3 of the lease agreements. See Defendants' Exhibits A-C, pg. 3 ("Lessee shall keep the Equipment insured against all risks of loss or damage . . . [and] Lessee shall pay the premiums for such insurance . . ."). Moreover, the first page of the lease agreement - the only page of the agreement the Plaintiffs claim they read - clearly indicates that the Defendants had a right to collect applicable taxes in addition to the monthly lease payment. Accordingly, the Defendants' motion to dismiss Count X is denied only to the extent that this cause of action is based upon the allegation that the Defendants charged for price terms that were unilaterally supplied by the Defendants after the lease agreements were executed by the Plaintiffs.

As noted above, the Plaintiffs also allege that the Defendants violated the implied covenant of good faith and fair dealing by concealing material terms in the lease agreement. "New York law imposes an implied covenant of good faith and fair dealing in all contracts, 'pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" Peabody v. Weider Publications, Inc., 2006 WL 3802214, at *5 (S.D.N.Y. Dec. 26, 2006) (citing Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir.2006); see also State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158 (2d Cir. 2004) ("This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.").

Here, the Plaintiffs have failed to allege that the Defendants deprived them of rights under the contract; their argument is rather that lease terms were either concealed or misrepresented. While such allegations may be alleged in support of a fraud cause of action, they do not form the basis of a viable claim for breach of the implied covenant of good faith and fair dealing. Accordingly, the Plaintiffs may not maintain a cause of action for breach of the implied covenant of good faith and fair dealing under Count X.

In Count XI, the Plaintiffs assert a claim against the individual Defendants for aiding and abetting MBF's alleged breach of the lease agreements. Although the

common law does recognize a claim for tortious interference with contract, New York does not recognize a cause of action for aiding and abetting a breach of contract. Here, the Plaintiffs have not alleged tortious interference with contract. However, even if they had, the allegations offered in the complaint would clearly not support such a claim. See Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 934 (N.Y.1993) (noting that tortious interference with contract requires, among other elements, a showing that the defendant induced a third party to breach a contract with the plaintiff). Accordingly, Count XI is dismissed.

It is well-settled that "[c]orporate officers are not liable for breaches of contract unless the corporate veil is pierced." Liberty Mut. Ins. Co. v. Palace Car Services Corp., 2007 WL 2287902, at *1 (S.D.N.Y. Aug. 8, 2007) (citing Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir.1994)). Under New York law, a party seeking to pierce a corporate veil must make a two-part showing: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." See Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141, 82 N.Y.2d 135, 623 N.E.2d 1157 (1993) (collecting cases).

Here, the Plaintiffs have made no attempt to make either required showing. Therefore, the Plaintiffs cannot impose liability on the individual Defendants for MBF's alleged breach of the lease agreements. Because the Plaintiffs' only remaining

19

cause of action is against MBF for breach of contract, the complaint must be dismissed as to the individual Defendants. Accordingly, the Court need not entertain the motions by Healy and Fitzgerald to dismiss the complaint for lack of personal jurisdiction.

### 8. The Plaintiffs' Quasi-Contract Claims

In Counts XIV and XV, the Plaintiffs assert quasi-contract claims for unjust enrichment and money had and received. However, as with other quasi-contract theories of liability, these causes of action cannot be maintained where there is an express agreement between the parties. See Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (N.Y. 2005) (holding that the theory of unjust enrichment is a quasi-contract claim that is inapplicable where there is an actual agreement between the parties); Shovak v. Long Island Commercial Bank, 50 A.D.3d 1118, 1120 858 N.Y.S.2d 660, 663 (2d Dep't 2008) (observing that the quasi-contract theory of money had and received is not viable where the parties entered into an actual contract). Here, there is simply no bona fide dispute as to whether there are express agreements between the parties. Therefore, the Plaintiffs may not proceed in the alternative with their quasi-contract theories of liability. Accordingly, Counts XIV and XV are dismissed.

### III. CONCLUSION

Based on the foregoing, it is hereby

ORDERED, that the Defendants' 12(b)(6) motion to dismiss is **GRANTED** as to Counts I-IX, XI-XVI and **DENIED** as to Count X, and it is further

ORDERED, that the complaint is dismissed as to the individual Defendants Lina Kravic, Brian Fitzgerald, Sam Buono, and William Healy, and it is further

ORDERED, that the caption is amended to read:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
GUS GAGASOULES, JAN NIBLETT,
LUSTER COTE, INC., RHONDA GARNER,
and DECOR SPECIALTIES, INC., on behalf of
themselves and all other similarly situated,

                    Plaintiffs,


        -against-


MBF LEASING LLC,

                    Defendant.

-----------------------------------------------------------
X


**SO ORDERED.**

Dated: Central Islip, New York
       February 2, 2009

                    _Arthur D. Spatt_
                    ARTHUR D. SPATT
                    United States District Judge