United States District Court
Southern District Of New York

Melinda Serin, Judson Russ, Long Soui Lim,
Peri Kettler, Gordon Redner, and Thomas J. Smith,
                            Plaintiffs

v.

Northern Leasing Systems, Inc., Jay Cohen,
Rich Hahn, and Sara Krieger

                            Defendants

06 Civ. 1625 (SCR)

JURY TRIAL DEMANDED

# Amended Complaint

## Nature of the Action

1. This action arises out of defendants' racketeering scheme to intimidate out-of-state individuals into paying unwarranted sums of money by commencing fraudulent lawsuits in New York City Civil Court for relatively small sums of money, typically under $3,000. Defendants were aware well before bringing such actions that the documents underlying Defendants' claims against Plaintiffs were forged. Nevertheless, Defendants persisted in these small claims proceedings - and even obtained fraudulent default judgments - in order to harass, intimidate, and thereby extort money from Plaintiffs through threats of expensive long-distance litigation, of damage to credit rating, and/or entry of default judgments. On these and related grounds, Plaintiffs assert claims under the federal racketeering statute, 18 U.S.C. §1962, and New York's Anti-Deceptive Trade Practices Act, N.Y.G.B.L., §349, and seek compensatory, treble and/or punitive damages, together with attorneys' fees and expenses.

## Jurisdiction

2. Jurisdiction is proper under the federal racketeering statute, 18 U.S.C. §1964(c), and the principles of supplementary jurisdiction, 28 U.S.C. §1367. Defendants conducted a racketeering scheme in interstate commerce, through the use of interstate communication facilities.

## Parties

3. Ms. Melinda Serin is a resident of Washington, D.C.

4. Mr. Judson Russ is a resident of Orlando, Florida.

5. Mr. Long Soui Lim is a resident of Marietta, Georgia.

6. Ms. Peri Kettler is a resident of Port Townsend, Washington.

7. Mr. Gordon Redner is a resident of Duncanville, Texas.

8. Mr. Thomas J. Smith is a resident of Waukesha, Wisconsin.

9. Defendant Northern Leasing Systems, Inc., is a New York corporation with its registered offices at 333 Seventh Avenue, New York, New York 10001, and principal executive offices at 132 West 31 Street, 14th Floor, New York, New York 10001.

10. Defendant Jay Cohen is and has been at all relevant times the President of the Defendant Northern Leasing.

11. Defendant Rich Hahn is and has been at all relevant times the Vice President for Sales of the Defendant Northern Leasing.

12. Defendant Sara Krieger is and has been at all relevant times the Vice President for Operations of the Defendant Northern Leasing.

## Factual Allegations

13. As summarized above, this case involves the systematic and repeated manner in which Defendants attempted to and did intimidate individuals located around the country in essentially a "shakedown" effort, in common parlance, to bully them into paying Defendants monies to which Defendants never were entitled. Based on forged documents, <u>which Defendants knew were forged</u>, Defendants sought to intimidate Plaintiffs with dunning letters and phone calls, telling them that it would be more expensive for them to dispute Defendants's claims in New York City Civil Court than it would be to pay off Defendants.

14. Obviously, when Defendants commenced these legal proceedings, Plaintiffs faced significant hurdles to having their day in court, including excessive expenses of long-distance litigation, and multiple trips to New York. The relatively small amounts at issue would, as Defendants were aware, have prevented these Plaintiffs from obtaining counsel or from otherwise developing their defense. Further, Plaintiffs' potential witnesses were all in their respective local areas, and quite far from the New York City Civil Court. Obviously, Defendants' entire scheme was to designed to ensure that Plaintiffs had no real opportunity to raise defenses to Defendants' bogus lawsuits, so that the entry of a default judgment was all but certain.

15. As this Court is well aware, once a judgment is entered in the New York City Civil Court, it would be almost impossible for Plaintiffs to challenge Defendants in the

3

subsequent judgment enforcement actions without incurring costs far in excess of the judgment itself. Had Defendants filed the suits in Plaintiffs' home location to enforce their claims, Plaintiffs might have been able to present a defense, either through an attorney or by themselves.

16. Further, the very entry of judgment in New York City Civil Court is automatically reported as an adverse entry in Plaintiffs' respective personal credit reports. This has significant impact on credit availability to Plaintiffs, including without limitation, denial of credit opportunities, increase in interest rates, and diverse other consequences.

17. Thus, while Defendants commenced these actions claiming to be financiers under equipment finance leases with businesses, Defendants never sued the businesses themselves.

18. As shown below through the facts of each Plaintiff, the repeated nature of the manner in which Defendants acted and their wrongful behavior set the pattern and practice of a scheme unlawful under both federal and state law.

Ms. Serin

19. In early 2003, Ms. Serin started receiving phone calls and dunning letters from Defendants demanding sums allegedly due under a lease with Defendant Northern Leasing. Ms. Serin had never heard of any of the Defendants, and never had any dealings with them. Perplexed at the demand, Ms. Serin informed Defendants that she had never signed or guaranteed any such lease, and that any such signature was a forgery.

20. After some communication with Defendants, Ms. Serin received a General Release from Northern Leasing, releasing her from any liabilities under the said lease. The General Release was duly notarized on June 24, 2003. "Ex. A," General Release.

21. Nevertheless, Ms. Serin continued receiving dunning letters from Defendants. Eventually, on or about May 17, 2005, Defendants sent Ms. Serin a lawyer's notice demanding $2,478 under the same lease, and threatening to sue her in New York on her alleged guarantee. In their notice, they claimed that Ms. Serin was personally responsible for the lease obligations, and enclosed a Summons and Verified Complaint. Defendants offered to give her "one final opportunity" to pay them off within ten days.

22. Ms. Serin assumed that this was an oversight which would be rectified in due course.

23. However, by subsequent letter of June 15, 2005, Defendants informed Ms. Serin that they had "obtained a summons/complaint against" Ms. Serin from the New York City Civil Court. Defendants now offered to settle for $743.

24. In response, Ms. Serin called up Defendants and reminded them that the document was a forgery. Several weeks later, by an "Important Notice" dated September 2, 2005, Defendants demanded a notarized affidavit of forgery from Ms. Serin, and at least 3 other pieces of evidence. In what appears to be a standard form letter, they stated:

> In order for Northern Leasing . . . to pursue this matter, we require three (3) different proofs of your signature to compare to the signature on our lease. These copies can

5

> include: a valid driver's license, a cancelled bank check, a copy of a passport, a social security card, an employee or school ID reflecting your signature, and the enclosed affidavit of forgery verifying your signature. Please ensure that the signature on your copy is legible.

These documents were to be sent to Defendants' offices in New York. When they received these documents, Defendants represented, they would conduct an inquiry and inform Ms. Serin accordingly:

> Upon receipt of the documents, an investigation will be conducted and a determination will be made of the fraud claim. You will be notified of our findings.

25. On September 26, 2005, Ms. Serin sent the said affidavit of forgery, duly executed, and other documents demanded by Defendants. These documents were duly received by Defendants.

26. However, Ms. Serin never received any "notification" from Defendants about their 'findings." Defendants never bothered conducting any "investigation", let alone a reasonable one, and in response to her phone inquiries, Defendants demanded $750 to mark the account as "closed" and $1,250 for removing all adverse entries on her credit report. Intriguingly, Defendants' representatives refused to make this offer in writing.

27. Shortly thereafter, Defendants commenced an action against Ms. Serin here. In the Verified Complaint filed with the New York City Civil Court, Defendant Krieger falsely asserted, under penalties of perjury, that Ms. Serin had unconditionally and personally guaranteed the obligations under the said lease. Without revealing the General Release aforesaid, Defendants demanded $2,478 with

interest, and $495.60 towards attorneys' fees. "Ex. B," Summons and Verified Complaint.

28. Ms. Serin once again attempted to reason with Defendants. However, her repeated emails and telephone inquiries were simply met with a stonewalling response. All answers to her queries, she was told, were in the lease.

29. Finally, Ms. Serin received a notice from the Clerk, Civil Court of the City of New York, that Defendants' lawsuit against her was calendared for January 23, 2006. The official court notice stated that she had to appear in person in the Civil Court in New York (emphasis in original):

> THE CLERK CANNOT GRANT CHANGE IN THE
> SCHEDULED DATE OR TIME.  YOU MUST APPEAR AND
> BRING THIS CARD WITH YOU.

30. Ms. Serin had no choice but to come to New York to avoid an unwarranted default judgment against her. For this, she had to take time off from her work, spend time and resources on travel, boarding, and lodging expenses in New York.

31. Ms. Serin did so, and came to New York to attend the City Civil Court as required on January 23, 2006. However, after making her wait for about an hour in Court, Defendants' representative came to the City Civil Court, and voluntarily withdrew their bogus lawsuit against her with prejudice and without costs.

32. Meanwhile, Defendants made derogatory entries in Ms. Serin's _personal_ credit report. As a result, she suffered the usual consequences of such adverse reports, quite apart from from having to retain attorneys and incurring legal

expenses in New York.[1]  In addition, she was unable to secure a mortgage at affordable rates in order to purchase her first home.  This is, of course, in addition to her boarding, lodging, travel and legal expenses in New York.

Mr. Judson Russ

33. In May 2002, Mr. Russ discovered that Defendant Northern Leasing had been electronically debiting funds from four bank accounts of his corporation, Rapid Cash Advances, Inc., in Orlando, Florida.  He promptly contacted Defendants demanding an explanation.  Defendants' representative informed him that someone had signed four equipment leases in the name of his corporation, and also signed his name to guarantee payments thereunder.  Mr. Russ demanded a copy of the four alleged leases and guarantees.

34. Defendants sent him the alleged leases and guarantees.  Upon review, the forgery was clear and undisputable:  Mr. Russ was in Ukraine at the time when these documents were signed.  He so informed Defendants.

35. Defendants thereupon sent him their standard form letter referred to above, demanding a notarized affidavit of forgery and 3 other pieces of evidence of signature.

36. Mr. Russ filled out an Affidavit of Forgery as demanded by Defendants.  He presented evidence of his absence from the United States at that time, including copies of his passport stamped by the United States Immigration and

---

[1] Such damages include, for example, increased interest rates on existing debts, loss of promotional opportunities, curtailment and even possible refusal of credit.  P. McGeehan, *The Plastic Trap: Soaring Interest Compounds Credit Card Pain for Millions*, N.Y. Times, Nov. 21, 2004, at A1.