80. In addition, Defendants made adverse entries in Ms. Kettler's <u>personal</u> credit report. As a result, Ms. Kettler sustained damages.

Thomas J, Smith

81. Mr. Smith is a resident of Waukesha, Wisconsin.

82. In Winter 2002, Mr. Smith started receiving dunning calls and letters from Defendants, purportedly based on his signature guaranteeing an alleged equipment lease. Mr. Smith informed them that he never signed any such document, and had no agreement with Defendants.[5]

83. Nevertheless, Defendants commenced an action against Mr. Smith in New York City Civil Court. In the Verified Complaint filed with the New York City Civil Court, Defendant Krieger falsely asserted, under penalties of perjury, that Mr. Smith had unconditionally and personally guaranteed the lease obligations, and demanded $1,764 with interest, and $352.80 towards attorneys' fees[6].

84. In addition, Defendants made an adverse entry in Mr. Smith's <u>personal</u> credit report. As a result, Mr. Smith suffered damages.

---

[5] Details of Defendants' communication with Mr. Smith are substantially similar to those of the other Plaintiffs.

[6] Mr. Smith filed a motion for dismissal on the ground of forum non convenience, and Plaintiff moved for summary judgment. Judge Barbara Jaffe denied both motions motion stating that "although the evidence submitted on the motion is insufficient to warrant a dismissal of the action, it is sufficient to raise a triable issue of fact as to whether Defendant entered into a contract with Plaintiff, which issue precludes a summary judgment". <u>Northern Leasing Systems, Inc. V. Tom Smith</u>, 39815 CV 2004 (N.Y. City Civ. Ct.) (Order of December 4, 2006).

## COUNT I

(RICO, 18 U.S.C. §1962(c))

85. The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

86. The association of Defendants, certain attorneys retained by Defendants, salesmen and others whose identities are known only to Defendants at this time (cumulatively, the "Conspirators"), constituted an enterprise within the meaning of 18 U.S.C. §1961(c), which enterprise was engaged in, and whose activities affected, interstate and foreign commerce. This enterprise was continuous in that it lasted for more than two years, had an ascertainable structure, and was distinct from the predicate offenses alleged here.

87. Each Defendant is a person within the meaning of 18 U.S.C. §1961(3) and separate from the enterprise.

88. Defendant Cohen, the President of the Defendant Northern Leasing, was in charge of all its operations. As such, he set up, orchestrated, and supervised the entire racketeering scheme at issue.

89. Defendant Hahn, the Vice President for Sales of the Defendant Northern Leasing, was the supervisor of its internal account managers and customer service. As such, he was in-charge of monitoring the racketeering scheme at issue.

90. Defendant Krieger, the Vice President for Operations of the Defendant Northern Leasing, was responsible for several aspects of its day-to-day operations and

sales. In addition, she routinely verified the fraudulent complaints filed in the New York City Civil Court under penalties of perjury.

91. Defendants' scienter is clearly established from their pattern and practices at issue. Moreover, Defendants' continued repeating these false statements nonchalantly even after knowing of their falsity.[7]

92. Defendants participated, and conspired with others (including their attorneys and others whose identities are known only to Defendants at this time) to participate, in the affairs of the aforementioned enterprise through a pattern of racketeering activity, as more fully set forth below, an all in violation of 18 U.S.C. §§ 1962©).

Mail Fraud, Violations of 18 U.S.C. §1341

93. Defendants and the other members of the enterprise, having devised or intending to devise the scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, for the purpose of executing such scheme or artifice or attempting so to do, placed in post office(s) or authorized depository for mail matter, several letters and/or packages to be sent or delivered by the Postal Service, and/or took or received therfrom, letters and/or packages, or knowingly caused to be

---

[7]Thus, for example, Defendant Krieger boldly asserted under oath in State court filings that Mr. Russ's passport and visa entries were "inconclusive as to whether Mr. Russ was out of the country at the time the leases were signed". Indeed, even in this very case, Defendant Krieger swore that Ms. Serin
> is or was the principal of Jim Cameron's Garage Doors, a
> California business located in West Hills. Ms. Serin signed
> an Equipment Finance Lease with NLS on August 15, 2001.

Krieger Aff., July 14, 2006. This was about seven months after Defendants themselves had voluntarily dismissed, with prejudice and without costs, all claims against Ms. Serin, and 3 years after Defendants had given a "General Release" to Ms. Serin.

delivered by mail or such carrier according to the direction thereon, or at the place at which it was directed to be delivered by the addressee such letters and/or packages. Specifically,

a. On or about September 27, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

b. On or about March 1, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

c. On or about June 15, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

d. On or about September 2, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

e. On or about September 9, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia;

f. On or about August 14, 2002, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Russ in Florida;

g. On or about August 2, 2004, the Clerk of the New York City Civil Court, County of New York, through the use of interstate mail, mailed a letter to Mr. Russ in Florida, requiring him to appear in New York in connection with Defendants' bogus lawsuit;

h. On or about September 10, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Lim in Georgia;

i. On or about January 27, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Lim in Georgia;

j. On or about February 14, 2005, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Lim in Georgia;

k. On or about January 24, 2002, Defendants in New York, through the use of interstate mail, mailed the alleged lease to Ms. Kettler in Washington;

l. On or about March 11, 2002, Ms. Kettler in Washington, through the use of interstate mail, mailed the equipment with a notice of termination to Defendants in New York;

m. On or about May 17, 2002, Ms. Kettler in Washington, through the use of interstate mail, mailed by certified mail postage prepaid a notice of termination to Defendants in New York;

n. On or about June 3, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas;

o. On or about June 8, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas;

p. On or about September 13, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas

q. On or about June 16, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Redner in Texas;

    r.    On or about February 5, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

    s.    On or about February 24, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

    t.    On or about March 4, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

    u.    On or about March 19, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

    v.    On or about March 29, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin;

    w.    On or about April 29, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Mr. Smith in Wisconsin.

94. Each participant knew, expected, reasonably foresaw, and intended that the facilities of interstate mail would be used in furtherance of the racketeering scheme, and that such use was an essential part of the scheme.

95. The Conspirators wilfully and with intent to mislead concealed the material facts from the New York City Civil Court and from Plaintiffs as referred to above.

96. The material misrepresentations were made by Conspirators to the New York City Civil Court concerning Plaintiffs, and to Plaintiffs, Ms. Serin in Washingtion, District of Columbia, Mr. Russ in Florida, Mr. Lim in Georgia, Ms. Kettler in Washington, and Mr. Smith in Wisconsin.

97. The New York City Civil Court, and Plaintiffs, relied upon Defendants' misrepresentations, and such reliance was reasonable.

98. Defendants' perjurious misconduct was a fraud on the court and on Plaintiffs.

Extortion Under The Hobbs Act, 18 U.S.C. §1951

99. Defendants had and implemented a practice and pattern of starting bogus legal proceedings based on false representations and solely for the purpose of injuring Plaintiffs and recovering unwarranted sums through extortion.

100. For this purpose, Defendants affirmatively misrepresented in filings with the City Civil Court in New York, under penalties of perjury, that

   a. Ms. Serin "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;

   b. Ms. Serin "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

   c. Ms. Serin "consented" to litigation in New York;

   d. There was "presently due and owing" from Ms. Serin to Northern Leasing the sum of $2,478 with interest thereon from March 1, 2002;

   e. There "is due and owing" from Ms. Serin to Northern Leasing attorneys' fees in the sum of $495.60;

101. Defendants similarly affirmatively misrepresented in 4 different filings with the City Civil Court in New York, under penalties of perjury, that in each of those 4 cases,

   a. Mr. Russ "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;

   b. Ms. Russ "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

23

    c.    Ms. Russ "consented" to litigation in New York;

    d.    There was "presently due and owing" from Ms. Russ to Northern Leasing the sum of $1,770 with interest thereon;

    e.    There "is due and owing" from Ms. Russ to Northern Leasing attorneys' fees in the sum of $354;

102.    Defendants similarly affirmatively misrepresented in filings with the City Civil Court in New York, under penalties of perjury, that

    a.    Mr. Lim "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;

    b.    Mr. Lim "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

    c.    Mr. Lim "consented" to litigation in New York;

    d.    There was "presently due and owing" from Mr. Lim to Northern Leasing the sum of $2,060.26 with interest thereon;

    e.    There "is due and owing" from Mr. Lim to Northern Leasing attorneys' fees in the sum of $412.05;

    f.    That Defendants were entitled to a default judgment in the amount of $3,253.63 against Mr. Lim.

103.    Defendants similarly affirmatively misrepresented in filings with the City Civil Court in New York, under penalties of perjury, that

    a.    Ms. Kettler "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;