b.    Ms. Kettler "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

    c.    Ms. Kettler "consented" to litigation in New York;

    d.    There was "presently due and owing" from Ms. Kettler to Northern Leasing the sum of $1,158.55 with interest thereon;

    e.    There "is due and owing" from Ms. Kettler to Northern Leasing attorneys' fees in the sum of $231.71;

104.    Defendants similarly affirmatively misrepresented in filings with the City Civil Court in New York, under penalties of perjury, that

    a.    Mr. Smith "unconditionally guaranteed all of the merchant's obligations to" Defendant Northern Leasing;

    b.    Mr. Smith "personally guaranteed" a "non-cancelable equipment lease agreement" with Defendant Northern Leasing;

    c.    Mr. Smith "consented" to litigation in New York;

    d.    There was "presently due and owing" from Mr. Smith to Northern Leasing the sum of $1,764 with interest thereon;

    e.    There "is due and owing" from Mr. Smith to Northern Leasing attorneys' fees in the sum of $352.

105.    Defendants also threatened Mr. Redner with a similar lawsuit in New York City Civil Court. However, Mr. Redner retained attorneys in New York, and submitted an affidavit in the class action referred to above. Presumably as a result, Defendants have not commenced their threatened lawsuit.

106. Defendants knew, and should have known, that the above representations were false when made. Defendants' knowing fraud upon, and/or their intentional misrepresentations to, the Court deprived the litigation of its legitimacy.

107. Nevertheless, Defendants commenced at least 5 actions in The New York City Civil Court with the aforesaid false statements. Based upon such actions, they attempted to extort undeserved sums of money from Plaintiffs.

108. Thereby, Defendants used wrongful means for a wrongful objective, with an intent to obtain that which in justice and equity Defendants were not entitled to, and knew that they were not entitled to, receive.

109. Defendants affected interstate commerce by extortion and/or attempted or conspired so to do.

110. Defendants attempted to extort property from each Plaintiff, with each Plaintiff's consent, induced by wrongful use of actual or threatened fear of economic loss and/or injury. Such loss or injury included, without limitation, legal expenses in long-distance litigation, damage to credit rating, and/or entry of default judgments which could remain valid and enforceable for upto 20 years.

Extortion Under New York Law

111. Plaintiffs incorporate the aforesaid allegations herein by reference.

112. Defendants intended to deprive Plaintiffs of property or to appropriate the same to themselves. They wrongfully took or obtained, or attempted to take or obtain, such property from each Plaintiff.

113. Defendants wrongfully attempted to take such property by compelling or inducing Plaintiffs and other persons to deliver such property to Defendants. They did so

26

by attempting to induce a fear that, if the property is not so delivered, Defendants will cause damage to Plaintiffs' property, or engage in other conduct constituting a crime, or testify or provide false information with respect to Defendants' legal claim.

114. Thereby, Defendants committed the offense of extortion under New York's Extortion Act, N.Y. Penal Law, §155.05.

115. Defendants' extortions are chargeable under New York law and punishable by imprisonment for more than one year. As such, they constitute predicate racketeering acts under 18 U.S.C. §1961.

Pattern of Racketeering Activity

116. The aforesaid acts had the same or similar purposes, results, participants, victims, and/or methods of commission, and were otherwise interrelated by distinguishing characteristics and were not isolated events. The pattern of racketeering activity engaged in by Defendants consisted of a scheme executed by the aforementioned conspirators from January 1998, and continuing to date, to extort and collect unwarranted sums through litigation based on perjurious averments or threats thereof. That pattern included multiple predicate acts of extortion.

117. The racketeering acts identified hereinabove were related to one another and formed a pattern of racketeering activity in that they: (a) were in furtherance of a common goal, including the goal of profiting illegally by improperly commencing or threatening fraudulent litigation; (b) used similar methods and standard form letters to intimidate; (c) had similar participants; and (d) had similar victims.

118. The acts of racketeering activity extended over a substantial period of time from January 1998, and continue to this day. They were sufficiently continuous to form a pattern of racketeering activity.

119. Defendants participated in the scheme through themselves, and, in the case of Northern Leasing, its representatives, salesmen, employees and officers, and others whose identities are known only to Defendants at this time. Defendants benefitted enormously by the profits they made from the scheme, and the various amounts collected unlawfully. The Conspirators knew, enabled, and actively participated in the racketeering scheme.

120. Defendants engaged in a pattern of racketeering activity consisting of extortion. The predicate acts occurred over a period of well over 6 years. Defendants received income from these patterns in the form of unwarranted payments. Defendants disbursed these funds amongst themselves in a manner known only to them.

121. Each Defendants' participation was critical to the racketeering scheme. They enabled, conducted, maintained, aided, and abetted the racketeering scheme by:

   a. Drafting and preparing letters, "Important Notices," Verified Complaints, false affidavits, and other documents;

   b. Supervising, conducting, and monitoring the conduct of the fraudulent scheme;

   c. Concealing the scheme or, alternatively, consciously avoiding discovery of the scheme;

      d.    encouraging third parties to participate in the racketeering scheme;

      e.    wilfully violating, or being recklessly indifferent to, mandatory requirements of federal law and procedure concerning racketeering, and the misuse of the judicial system;

      f.    Wilfully violating or being recklessly indifferent to their legal obligations to verify the legality of the alleged lease agreements to ensure that they were not fraudulently procured; and

      g.    Wilfully violating or being recklessly indifferent to their legal obligations to conduct "due diligence" with respect to the accounts at issue.

122. The precise role played by each Defendant is known only to Defendants at this time. Such information, and evidence concerning their participation, is exclusively within the possession and knowledge of Defendants.

123. Plaintiffs have been injured in their business or property by reason of Defendants' violation of 18 U.S.C. §1962(c). As a direct and proximate result of these violations, Plaintiffs have been injured in that, *inter alia*, they had to waste time and resources in responding to Defendants's dunning calls, threats, lawsuit in New York, retaining lawyers and incurring legal expenses therefor. In addition, Plaintiffs' credit rating has also been adversely affected, and they have suffered damages as a consequence as detailed above.

124. By reason of this violation of 18 U.S.C. §1964(c), Plaintiffs are entitled to recover from Defendants three times their damages plus pre- and post- judgment interest, costs and attorneys' fees.

## COUNT II

(Violation of 18 U.S.C. § 1962(d))

125. The contents of the above paragraphs are incorporated herein by reference as if fully set forth herein.

126. In violation of 18 U.S.C. § 1962(d), Defendants and others whose identities are known only to Defendants at this time conspired to violate the provisions of 18 U.S.C. §1962(c) in that, beginning no later than January 1998 and continuing through today, they knowingly agreed and conspired to conduct or participate, directly or indirectly, in the affairs of an enterprise through the pattern of racketeering activity described above. The volume and frequency of the transactions, and the continuance of the scheme at issue for over 6 years, could not have occurred without the consent and knowing connivance of Defendants and other Conspirators.

127. As part of and in furtherance of their conspiracy, each Defendant agreed to and conspired in the commission of the many predicate acts described above, with the knowledge that they were in furtherance of that pattern of racketeering activity. As part of and in furtherance of their conspiracy, each Defendant agreed to and did commit at least two predicate acts of racketeering. Further, each Defendant's actions are attributable to the other Defendants.

128. None of the Defendants have withdrawn, or otherwise dissociated themselves from the conspiracy at issue or the other Conspirators. Defendants have also continued filing of perjurious affidavits under oath, abundantly showing the continuance of this conspiracy till today.

129. Plaintiffs have been injured in business or property by reason of Defendant's violations of 18 U.S.C. S 1962(d).

130. As a direct and proximate result of each Defendant's violations, Plaintiffs have been injured as aforesaid.

131. By reason of Defendants's violation of 18 U.S.C. §1964(d), Plaintiffs are entitled to three times their damages plus interest, costs and attorneys' fees.

### COUNT III

(N.Y. General Business Law Article 22-A)

132. Plaintiffs incorporate the contents of the paragraphs hereinabove.

133. None of the Plaintiffs had any commercial or other relationship with Defendants or any of them. None of the Plaintiffs signed any document, whether lease or otherwise, signifying a relationship with Defendants or any of them. None of the Plaintiffs sought any of Defendant Northern Leasing's alleged products or services for any purpose whatsoever. Plaintiffs were ordinary citizens and as such, "consumers" for purposes of consumer protection statutes.

134. Further, Defendants nonchalantly misused the state court system, and routinely made false and baseless statements with reckless abandon, and even after knowing the falsity of such statements. Litigants depend on the integrity of the conduct of participants in civil proceedings through disputing the validity of their opponents' claims to impose or resist civil liability. For a litigant and its Conspirators to concoct testimony or make false statements under oath even after they know it is wholly fabricated and baseless is an unacceptable fraud on

the court. Defendants' conduct at issue was thus, a deceptive and/or unfair practice which affected, and continues to affect, the public at large.

135. Defendants committed deceptive acts or practices in the conduct of business in New York. Their conduct was unlawful and of a recurring nature, and strongly affected the public interest. By its conduct aforesaid, defendants violated Article 22-A (Section 349) of New York's General Business Law.

136. Plaintiffs sustained damages due to the defendants' violation. Accordingly, under Section 349(h) of New York's General Business Law, Plaintiffs are entitled to recover compensatory and treble damages and reasonable attorneys' fees and expenses. In addition, Plaintiffs are also entitled to an injunction against Defendants preventing them from continuing the aforesaid deceptive practices.

## Jury Demand

137. Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs demand judgment against Defendants on each Count aforesaid:

    a. awarding compensatory, punitive, and/or treble damages to Plaintiffs in such amount, not less than $10 million, as may be determined after discovery and trial;

    b. awarding Plaintiffs the costs of this action, including reasonable attorneys' fees and expenses, experts' fees and other disbursements; and

    c. for such further and other reliefs as may be just and proper.

Dated:  New York, New York  
        October 1, 2008

**Chittur & Associates, P.C.**

/s/
_____
By: Krishnan Chittur, Esq. (KC9258)  
286 Madison Avenue Suite 1100  
New York, NY 10017  
Tel: (212) 370-0447

Attorneys for Plaintiffs