## Preliminary Statement

Defendants Northern Leasing Systems, Inc. ("NLS"), Jay Cohen, Rich Kahn and Sara Krieger (collectively, "Defendants"), by their attorneys, Moses & Singer, LLP, submit this memorandum of law in support of their motion to dismiss the Am. Compl., dated October 1, 2008 (the "Amended Complaint").[1] The Amended Complaint purports to assert claims under the Racketeer Influenced Corrupt Organizations (RICO) statute, 18 U.S.C. §1962, and under section 349(a) of the New York General Business Law ("section 349(a)"), which proscribes the use of deceptive acts or practices directed at consumers or the public generally. The Amended Complaint was filed by Plaintiffs in response to this Court's Order, dated September 2, 2008 (the "Order"; Exhibit B), which dismissed Plaintiffs' original Complaint. The original Complaint also purported to assert claims under RICO and under section 349(a). The Court dismissed the RICO claims on the ground that allegations that NLS had engaged in a pattern of filing "bogus" lawsuits, even if true, did not amount to extortion under either the Hobbs Act (28 U.S.C. §1951) or under New York law (N.Y. Penal L. § 155.05). Because those were the only predicate acts alleged in the Complaint, the Court concluded that "Plaintiffs have failed to set forth the pattern of racketeering activity required for a violation of § 1962(c)", and dismissed the Complaint. Exhibit B, p. 7.[2] The Court also dismissed Plaintiffs' section 349(a) claim on the ground that the six plaintiffs were not

---

[1] A copy of the Amended Complaint is annexed to the Declaration of Abraham Y. Skoff, dated November 21, 2008 (the "Skoff Dec."), as Exhibit A. Unless otherwise indicated, all further references to Exhibits are to the Exhibits annexed to the Skoff Declaration.

[2] The Court dismissed the RICO conspiracy claim because it relied on the same allegations as the § 1962(c) claim. Exhibit B, p. 8. The Court did not address the other grounds for dismissal asserted by Defendants.

731489 011082.0121

consumers who were protected by the statute, and because the claims made by these six plaintiffs could not "be construed to have had a demonstrable impact on the public at large." *Id.* at p. 9.[3]

In a letter sent by Plaintiffs' counsel following oral argument of the motion, Plaintiffs "signaled to the Court that they seek to add allegations of mail and wire fraud." Exhibit B, p. 10. The Court deemed that "representation sufficient in this instance to grant leave to replead", and therefore allowed Plaintiffs leave to serve an amended complaint as to Plaintiffs' RICO claims. Exhibit B, p. 10. The Amended Complaint filed by Plaintiff goes beyond the leave granted by the Court, purporting to amend the section 349(a) claim. Further, the Amended Complaint alleges the same predicate acts under the Hobbs Act, and the New York extortion statute, which were found by this Court to be legally insufficient.

The Amended Complaint does not come close to satisfying the shortcomings of the original Complaint, and is, itself, legally insufficient. The only new allegations in support of the mail fraud claim are found in paragraph 93 of the Amended Complaint, where Plaintiffs list eighteen letters allegedly mailed by Defendants (as well as two letters mailed by the Plaintiffs), without describing the contents of those letters, and without describing in what way the mailings were in any way fraudulent. Even giving plaintiffs the benefit of all favorable inferences, as set forth below, these new allegations fail to state a claim of mail fraud. They also fall short of the specificity required by Fed. R. Civ. P. 9(b).[4]

The RICO claims in the Amended Complaint should also be dismissed because Plaintiffs have failed to properly allege a "pattern" of racketeering activity, or the existence of an enterprise

---

[3] In a transparent attempt to avoid the fact that Plaintiffs are not consumers, Plaintiffs amended the Complaint by simply deleting the allegations from the original Complaint that described plaintiffs as proprietors of small businesses that had submitted applications to NLS for equipment lease financing. *See e.g.* Complaint, ¶¶ 9 (last sentence), 13, 32, 64, 68 ("based on … First American-Hurst"); 74, 82.

[4] In paragraph 93 of the Am. Compl., as they do throughout that pleading, Plaintiffs make no attempt to distinguish among the actions of any of the Defendants.

that is distinct from the defendants. Such allegations have been repeatedly found to be insufficient by Courts in the Second Circuit and elsewhere.

Plaintiffs' remaining claims, purporting to state a RICO conspiracy claim under 18 U.S.C. § 1962(d) and consumer fraud under section 349 of New York General Business Law ("section 349"), should also be dismissed for failure to state a claim. The RICO conspiracy claims fails because it relies on the same allegations as the § 1962(c) claim, which are legally insufficient. The section 349 claim should be dismissed because Plaintiffs were not granted leave to replead that claim, and because it is legally insufficient, as already found by this Court. *Id.* at p. 9.

## Statement Of Facts

NLS engages in the business of equipment lease financing, involving, as plaintiffs describe it, "financing credit card point of sale (POS) terminals and other business equipment" to "small business persons" like the plaintiffs. Complaint, ¶¶ 9, 13; Am. Compl., ¶¶ 9, 17, 33.[5] Defendants Cohen, Hahn and Krieger are President, Vice President of Sales and Vice President of Operations, respectively, at NLS. Am. Compl., ¶¶ 9-12. Plaintiffs assert that NLS contends that each of them signed a lease with NLS for such terminals and other business equipment; plaintiffs deny entering into any such leases. Am. Compl., ¶¶ 19-84. Plaintiffs allege that from 1998 to the present, NLS has filed suit or threatened to bring a lawsuit against each of the six plaintiffs in New York state court claiming, in general, that the plaintiffs have breached the terms of the lease agreement each had executed. *Id.*

---

[5] As noted above in footnote 3, Plaintiffs deleted certain allegations describing the Plaintiffs' businesses, and that of NLS, when they amended the Complaint. The original Complaint was verified by each of the Plaintiffs. The sworn statements of the Complaint constitute binding admissions by Plaintiffs, notwithstanding the fact that the Complaint has now been amended. *See Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (factual assertions sworn to by plaintiff in verified pleading are to be accepted as true).

Plaintiffs Amended Complaint continues to allege three separate claims, including one – the section 349(a) claim – that was dismissed by this Court, and that Plaintiffs have neither requested, nor been granted, leave to replead. Exhibit B, p. 10. In their first Count, Plaintiffs seek damages under the civil remedy provisions of RICO, 18 U.S.C. § 1964(c). Plaintiffs allege that the NLS, certain of its officers (i.e. defendants Cohen, Hahn and Krieger), as well as "certain attorneys retained by Defendants, salesmen and others whose identities are known only to Defendants at this time," constituted an enterprise that engaged in a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1961(c). Am. Compl., ¶¶ 86, 92. According to the Amended Complaint, this alleged activity consists of engaging in a "practice and pattern of starting bogus legal proceedings based on false representations and solely for the purposes of injuring plaintiffs and recovering unwarranted sums through extortion." Am. Compl., ¶ 99. Plaintiffs maintain that the legal proceedings brought by NLS against them "affirmatively misrepresented" facts to the New York State court in the complaints. Am. Compl., ¶¶ 100-104. Plaintiffs allege that defendants' alleged misrepresentations in their State Court proceedings "deprived the litigation of its legitimacy" and that as a result, defendants "attempted to extort undeserved sums of money from plaintiffs" by means of the lawsuits. Am. Compl., ¶¶ 106-107. Although this Court previously held that these precise claims do not amount to extortion under federal or state law (Exhibit B, p. 8), Plaintiffs again allege that such "extortion" violated both the federal Hobbs Act, 18 U.S.C. § 1951, and New York's "Extortion Act," N.Y. Penal Law § 155.05 (McKinney 1998) (Am. Compl., ¶¶ 106-115), and that such violations constitute the predicate acts of racketeering activity on which their civil RICO claims are based. Am. Compl., ¶ 115.

The Amended Complaint also purports to allege mail fraud, without providing any supporting detail as to the content of the mailings, or how they were fraudulent. The Amended Complaint contains a conclusory allegation that defendants used the mail for the purpose of

4

executing a "scheme or artifice to defraud, and/or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Paragraph 93 of the Amended Complaint then goes on to lists eighteen separate mailings allegedly made by "Defendants". Typical of these allegations is paragraph 93(a), which alleges, "On or about September 27, 2004, Defendants in New York, through the use of interstate mail, mailed a letter to Ms. Serin in the District of Columbia." That identical allegation, with immaterial variations, is repeated eighteen times in paragraph 93.[6]

Elsewhere in the Amended Complaint, Plaintiffs provide a limited description of some of the letters that they claim to have received from the "Defendants." In paragraphs 21, 71, and 77, they allege that "Defendants" sent them letters demanding payments that were due under equipment leases that were, according to NLS, guaranteed by Plaintiffs, but which Plaintiffs contend were forged documents. In paragraphs 24, 35, and 49, they allege that "Defendants" sent out a form letter requesting Plaintiffs to provide evidence to support their claims of an alleged forgery. In paragraphs 34, 67, 73, and 75, they allege that Defendants mailed a copy of the lease that was the basis of the claims being made by NLS against that Plaintiff.

What these allegations fail to do is describe how any of the mailings was used to deceive the Plaintiffs. Rather, the Amended Complaint alleges that these mailings made Plaintiffs aware of the allegedly "fraudulent" claims being made by NLS, and placed each Plaintiff in a position to contest those claims. Thus, there was nothing deceptive about them; the Amended Complaint is devoid of any allegations showing that any of the Plaintiffs were, in fact, deceived by any of the mailings they allege.

---

[6] The only variations are found in the name and address of the addressee of each letter. Three sub-paragraphs of paragraph 93 do not even allege mailings by any of the Defendants. *See* Am. Compl., ¶¶ 93(g), 93(l) and 93(m).

Further, the Amended Complaint does not allege that the foregoing mailings constitute the predicate acts for purposes of RICO. Plaintiffs continue to allege that "Defendants" commencement of "bogus" litigations constitutes the pattern of racketeering activity on which their RICO claims are based: the "pattern of racketeering activity engaged in by Defendants **consisted of a scheme . . . to extort and collect unwarranted sums through litigation based on perjurious averments or threats thereof. That pattern included multiple predicate acts** *of extortion*." (Am. Compl., ¶ 117) (emphasis added).

Plaintiffs claim that the predicate acts of extortion constitute a "pattern" which began as early as January 1998 and continues to date. (Am. Compl., ¶ 116). Despite that allegation, the Amended Complaint contains very limited allegations about only five allegedly "bogus" lawsuits commenced by NLS over a period of approximately five years. (Am. Compl., ¶¶ 19-84).[7] There are no facts alleged in the Amended Complaint to suggest that there is a "pattern" or that theses are anything other than isolated lawsuits, or that there were any such situations prior to 2001, or that they are continuing to date.

In Count II, Plaintiffs reallege the prior averments and allege a conspiracy under 18 U.S.C. § 1962(d) to participate in the racketeering activity alleged in Count I. (Am. Compl., ¶¶ 125-131). In Count III, plaintiffs allege a purely state law claim that defendants committed "deceptive acts or practices" in violation of section 349 of New York's General Business Law. (Complaint, ¶¶ 124-127). As noted above, this identical claim was dismissed by this Court, without leave to replead.

---

[7] Although Gordon is named as a plaintiff in this action, the Amended Complaint alleges that he was not sued by NLS. Am. Compl., ¶ 105.

## Argument

### I.

### THE RULE 12(b)(6) STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, the Court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs." *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998) (citations omitted). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). While this Court is required to accept the complaint allegations as true and view all inferences in favor of the non-moving party, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (*quoting Gebhardt v. Allspect, Inc.*, 96 F.Supp.2d 331, 333 (S.D.N.Y. 2000); *see Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 241 (2d Cir. 2002) ("'bald assertions' of harm contained in the complaint were not sufficient to defeat the motion to dismiss") (citation omitted).

Courts within this Circuit carefully scrutinize civil RICO claims. "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotations and citation omitted), *aff'd mem.*, 113 F.3d 1229 (2d Cir. 1997). A careful examination of a RICO complaint is necessary to separate a valid claim from one that is "nothing more than an