continuous to sustain a RICO claim). "[A] RICO plaintiff can prevail by either (1) demonstrating a closed-ended conspiracy that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended conspiracy that, while short-lived, shows clear signs of threatening to continue into the future." *Midwest Grinding Co.*, 976 F.2d at 1023; *See Cofacredit, S.A. v. Windsor Plumbing Supply, Co., Inc.*, 187 F.3d 229, 242-43 (2d Cir. 1999) (allegations were insufficient to establish either closed- or open-ended continuity where the predicate acts that the Defendants committed spanned less than one year and the nature of the predicate acts did not imply a threat of ongoing racketeering activity).

A "closed-ended" period of racketeering activity involves a course of criminal conduct that has come to a close. To satisfy the continuity element in a closed-ended case, the plaintiff must allege a series of related predicates enduring a "substantial period of time". *H.J., Inc.*, 492 U.S. at 242; *see Allen v. New World Coffee, Inc.*, 2001 WL. 293683, at *5 (S.D.N.Y. Mar. 27, 2001). Since the Supreme Court's decision in *H.J., Inc.*, the Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F.Supp.2d 486 (S.D.N.Y. 2007). Nevertheless, "while two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Capital Asset Mgmt. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004).

An open-ended period of racketeering, by contrast, is a course of criminal activity which lacks the duration and repetition to establish continuity. A RICO plaintiff may still satisfy the continuity requirement in that situation, however, by showing past conduct which "by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 242. Such a threat of continuity exists when the plaintiff can show (1) a "specific threat of repetition," (2) that the "predicate acts or offenses are part of an ongoing entity's regular way of doing business," or (3) that

15

the defendant operates a "long-term association that exists for criminal purposes." *Id.* at 242-43. Plaintiff must show that the Defendants' acts were neither "isolated nor sporadic." *Feirstein v. Nanbar Realty Corp.*, 963 F.Supp. 254, 259 (S.D.N.Y. 2007). The mere fact that a complaint alleges several mailings does not establish continuity, if they all relate to the same scheme. '[A] multiplicity of mailings does not necessarily translate into a 'pattern' of racketeering activity." *U.S. Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1267 (7th Cir. 1990) (no pattern where single scheme involved multiple acts of mail fraud causing identical injury), *quoting Sutherland v. O'Malley*, 882 F.2d 1196 (7th Cir. 1989) (same); *See Beauford v. Helmsley*, 865 F.2d 1386, 1394 (2d Cir. 1989) (Oakes, J., dissenting)

Here, Plaintiffs allege that Defendants engaged in a scheme to extort money from Plaintiffs by commencing or threatening fraudulent lawsuits. *See* Am. Compl., ¶ 116, 118. Plaintiffs claim that Defendants engaged in mail fraud by allegedly mailing pleadings, letters, and other documents. *See* Am. Compl., ¶ 93-108. Although Plaintiffs state, in conclusory fashion, that these acts "extended over a substantial period of time from January 1998, and continue to this day" (Am. Compl., ¶ 118), the earliest mailing alluded to in the Amended Complaint (though not in the mail fraud allegations set forth at paragraph 93) occurred in May 2001. *See* Am. Compl., ¶ 47. The mailings identified in the Amended Complaint involve a total six situations spanning a bit more than 4 years, from May 2001 to September 2005. *See* Am. Compl., ¶¶ 93(a)-(w) and 47.

Allegations that Defendants engaged in sporadic instances of mail fraud, involving only a few victims, over just a few years, is insufficient to satisfy the continuity requirement. *See Feirstein*, 963 F.Supp. at 259 (holding that allegations of four acts of annual mailings of allegedly fraudulent tax returns over a three-year period was insufficient to fulfill the continuity requirement); *see also Vaughn v. Air Line Pilots Ass'n, Intern*, 395 B.R. 520 (Bankr. E.D.N.Y. 2008) ("[e]ven if plaintiffs articulate the alleged enterprise's objective broadly, the start and end date of the relevant

acts cannot be premised upon inadequate predicate acts). Plaintiffs allegations of a multiplicity of mailings over a few years does not translate into a pattern or the sort of "long-term criminal conduct" that Congress sought to target in RICO. *See Allen*, 2001 WL. 293683, at *5. Nor are there allegations of future threats of repetition, or that the predicate acts, which were not inherently unlawful, were part of the Defendants' regular way of doing business. *Id.* at *6 (conclusory allegations that the predicate acts of the Defendants, who primarily conduct a legitimate business, were the regular way of operating the business and that the nature of the predicate acts implied a threat of continued criminal activity were insufficient to warrant the inference of a pattern of racketeering activity); *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995) (allegation that defendant would have continued fraudulent scheme had plaintiff not commenced litigation was entirely speculative and insufficient to suggest a threat of continuity). The RICO claims in the Amended Complaint therefore fail to satisfy RICO's continuity requirement.

**D.** **Plaintiffs Have Not Adequately Alleged A RICO "Enterprise"**

    1.    The alleged "enterprise" is not distinct from the Defendants

Plaintiffs' claims under RICO also fail because plaintiffs have not alleged an "enterprise" that is distinct from the defendants, or from the pattern of racketeering activity. Congress has defined an "enterprise" under RICO as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under 18 U.S.C. § 1962(c), an "enterprise" and the persons conducting the affairs of an "enterprise" must be distinct. *First Capital Asset Mgmt., Inc*, 385 F.3d at 174; *see also Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88-89 (2d Cir. 1999). A plaintiff cannot fulfill this distinctness requirement by alleging a RICO enterprise that "consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of

the defendant." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 399, 344 (2d Cir. 1994). The Second Circuit explained the reason for this as follows:

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. [Citation omitted]. **Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.** (Emphasis added).

*Id; accord Anatian*, 193 F.3d at 89; *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985) ("[A] corporate entity may not be simultaneously the "enterprise" and the "person" who conducts the affairs of the enterprise through a pattern of racketeering activity."). "[T]he plain language of section 1962(c) clearly envisions separate entities, and the distinctness requirement comports with legislative intent and policy." *DeFalco v. Bernas*, 244 F.3d 286, 307 (2d. Cir. 2001) (citation omitted).

Here, plaintiffs define the RICO enterprise as "the association of defendants, certain attorneys retained by defendants, salesmen and others whose identities are known only to defendants at this time." (Am. Compl., ¶86). This fails to satisfy the distinctness requirement because the defendants and their agents and employees are the same as the alleged "enterprise." Simply adding the word "others," without providing any specificity, does not satisfy the plaintiffs' burden of alleging and proving an enterprise under Section 1962(c). *See Smith & Reed*, 1-3 *Civil RICO* §3.07[2][a] (Matthew Bender 2004) ("The courts have grown increasingly reluctant to tolerate such easy evasion of the enterprise person distinctiveness requirement under Section 1962(c).")

This is not the first time that Plaintiffs' counsel has attempted, without success, to allege that the association of NLS, its employees, officers, attorneys and agents, constitutes a RICO enterprise. In *Pludeman v. Northern Leasing Systems, Inc.*, Index No. 101059, Supreme Court, New York

County, the same law firm that represents the plaintiffs in this action attempted to allege a RICO enterprise using the identical words that they use here:[10] "the association of defendants, certain attorneys retained by defendants, salesmen and others whose identities are known only to defendants at this time (cumulatively, the "Conspirators"), constituted an enterprise within the meaning of 18 U.S.C. §1861(c)". Exhibit C, ¶ 88. In *Pludeman*, present plaintiffs' counsel alleged that the RICO enterprise attempted to defraud a class of plaintiffs by participating in a scheme to conceal certain charges contained in the equipment leases that the plaintiff lessees had signed. The New York State court dismissed that RICO claim (and several other claims as well), holding: "The amended complaint fails to allege that the enterprise is distinct from the NLS and the allegation that the corporate defendant associated with its own employees or agents carrying on the regular affairs of the corporation fails to satisfy the distinctness requirement". *Pludeman* Order, p. 8 (copy annexed). Plaintiffs' current attempt to allege a RICO enterprise should fail on this same ground.

    2.    The "enterprise" allegations are not sufficiently specific

Plaintiffs' attempt to allege an enterprise also fails because they have not provided a "plain and concise" statement of the "enterprise" as required by the law. *See Sony Music Entm't, Inc. v. Robison*, 2002 WL. 272406, at *5 (S.D.N.Y. Feb. 26, 2002). As in *Sony Music*, plaintiffs provide no specific identities or numbers of participants, the structure of the enterprise or how the enterprise's activities are sufficiently distinguishable from the regular business activities of the entities. *See also First Nationwide Bank v. Gelt Funding Corp.*, 820 F.Supp. 89, 98 (S.D.N.Y. 1993) (complaint should identify information regarding the specific identities or number of participants, the structure of the enterprise, or show the enterprise's activities are sufficiently distinguishable from the regular business activities of these entities), *aff'd*, 27 F.3d 763 (2d Cir.

---

[10] A copy of the First Amended Complaint in *Pludeman* is annexed to the Skoff Aff. as Exhibit C. The state court's order dismissing the RICO claim in *Pludeman* (the "*Pludeman* Order") is annexed hereto as an Appendix.

1994); *Moll v. US Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y. 1987) (same). Instead, plaintiffs make conclusory assertions that the "enterprise" has an "ascertainable structure" and that it consisted of an unknown number of "certain attorneys," "salesmen" and "others". Am. Compl., ¶86. They concede ignorance about the roles allegedly played by the participants as "exclusively within the ... knowledge of defendants." Am. Compl., ¶122. This lack of specificity is plainly insufficient to satisfy the pleading requirements of the federal rules.

E.    The Statute Of Limitation Bars RICO Claims By Three Of The Plaintiffs

The RICO claims asserted by three of the Plaintiffs are barred by the applicable statutes of limitations. Civil RICO actions are subject to a four-year statue of limitation. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) (holding that the four-year limitations period established by the Clayton Act, 15 U.S.C. § 15b, applies to civil RICO claims). A civil RICO claim accrues for purposes of starting the running of the statute of limitations when the plaintiff discovers or should have discovered his injury. *Rotella v. Wood*, 528 U.S. 549, 552-554 (2000); *see also Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001) ("[T]he civil RICO limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action.") (citation omitted). With respect to the question of whether a plaintiff "should have discovered" his injury, *Rotella* makes it clear that the question is resolved by answering the separate question of whether the plaintiff was diligent investing whatever facts were first presented to him that would have led him to determine that he had been injured and the source of the injury. *Rotella*, 528 U.S. at 556-57 (the civil RICO plaintiff, like a malpractice plaintiff, must promptly take steps to discover the reason for his injury, and he cannot wait for events fortuitously to make it clear to him). If those facts are available to a plaintiff, and yet the plaintiff does nothing to investigate whether he had been injured and, if so, the source of the injury, the statue of limitations commences to run nonetheless. *Id.*

Here, three out of the six plaintiffs' claims are barred by the applicable statue of limitations because they knew or should have known about their alleged injuries by March 1, 2002 – four years prior to the filing of this lawsuit.

Plaintiff Lim claims that he received a Summons and Verified Complaint filed by defendants in May of 2001. Am. Compl., ¶47. He further contends that upon receipt, he "called and informed defendants that the signatures on the lease underlying that action were a forgery." Am. Compl, ¶48. Thus, by May 2001, he knew or should have known of the injury underlying this cause of action.

Plaintiff Kettler claims that on or about February 1, 2002, she received a four page lease from defendants "which was clearly not the document that Yodamo had signed." Am. Compl., ¶ 75. According to the Amended Complaint, Ms. Kettler's signature had been forged as guarantor on the lease." *Id*. Thus, by February 2002, she knew or should have known of the injury underlying her cause of action. The claims of plaintiffs Lim and Kettler are therefore time barred and should be dismissed.

Each plaintiff was also put on notice of the injury when the first deduction was made from that plaintiff's business bank accounts. *See In re Sumitomo Copper Litig.*, 104 F. Supp. 2d 314, 323 (S.D.N.Y. 2000) ("Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises.") (citation omitted). As set forth in paragraphs 7 - 9 of the Affidavit of Sara Krieger, sworn to on July 14, 2006, which was submitted in support of Defendants' motion to dismiss the original Complaint, the first deduction from Plaintiff Serin's business bank account took place on September 7, 2001; the first deduction from Plaintiff Russ's business bank account took place on April 2, 2001; the first deduction from Plaintiff Kettler's business bank account took place on January 15, 2002. In each case, the affected plaintiff was on notice more than four years prior to the filing of the Complaint in

21