UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

MELINDA SERIN, JUDSON RUSS, LONG SOUI   :
LIM, PERI KETTLER, GORDON REDNER, AND   :
THOMAS J. SMITH,   :
  :
  :
               Plaintiffs,   :
  :
  :    06 CV 1625 (SCR)
      -against-   :
  :
  :
NORTHERN LEASING SYSTEMS, INC., JAY   :
COHEN, RICH HAHN, and SARA KRIEGER,   :
  :
  :
             Defendant.   :

------------------------------------------------------------------ X

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

MOSES & SINGER LLP
Abraham Y. Skoff, Esq. (AS-5330)
Robert D. Lillienstein, Esq. (RL-4585)
*Attorneys for Defendants*
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................................. I

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.       "JUDICIAL NOTICE" OF NEWSPAPER ARTICLES AND OTHER
DOCUMENTS, CANNOT CURE THE DEFICIENCIES OF THE AMENDED
COMPLAINT .......................................................................................................... 1

II.     THE MAIL FRAUD ALLEGATIONS DO NOT SATISFY RULE 9(B) ........................... 2

III.    PLAINTIFFS' ALLEGATIONS DO NOT ESTABLISH A PATTERN OF
RACKETEERING ACTIVITY ................................................................................. 5

IV.    PLAINTIFFS' EXTORTION COUNT IS NOT RESURRECTED BY
BOOTSTRAPPING IT TO THEIR AMENDED RICO CLAIMS ..................................... 8

V.     PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THE EXISTENCE OF
AN ENTERPRISE THAT IS DISTINCT FROM THE DEFENDANTS ......................... 10

VI.    THE FOUR-YEAR STATUTE OF LIMITATIONS BARS THE RICO CLAIMS
OF FIVE OF THE SIX PLAINTIFFS ..................................................................... 13

VII.   THE N.Y. GENERAL BUSINESS LAW SECTION 349 CLAIM SHOULD BE
DISMISSED ......................................................................................................... 14

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acito v. IMCERA Group, Inc.*,
   47 F.3d 47, 52 (2d Cir. 1995)............................................................................5

*Armstrong v. McAlpin*,
   699 F.2d 79 (2d Cir. 1983)...............................................................................13

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*,
   909 F.Supp. 162 (S.D.N.Y. 1995) ....................................................................10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 127 S.Ct. 1955 (2007)..................................................................2

*Bernstein v. Misk*,
   948 F.Supp.228 (E.D.N.Y. 1997) .....................................................................11

*Bridge v. Phoenix Bond & Indemnity Co.*,
   128 S.Ct. 2131 (2008).........................................................................................6

*City of New York v. CYCO.NET*,
   383 F.Supp.2d 526 (S.D.N.Y. 2005)................................................................12

*Consol. Risk Servs., Inc. v. Auto Dealers WC Seld Ins. Trust*,
   2007 U.S. Dist. LEXIS 22097 (N.D.N.Y. Mar 27, 2007)................................14

*DLJ Mortgage Capital, Inc. v. Kontogiznnis*,
   __ F.Supp.2d __, 2009 WL 141497 (E.D.N.Y. Jan. 20, 2009)...........................3

*Defazio v. Wallis*,
   500 F.Supp.2d 197 (E.D.N.Y. 2007) .......................................................3, 6, 11

*Doe v. New York City Dep't of Soc. Servs*,
   709 F.2d 782 (2d Cir. 1983)..............................................................................14

*Excellus Health Plan, Inc. v. Tran*,
   287 F.Supp.2d 167 (W.D.N.Y. 2003) ...............................................................14

*First Capital Asset Management, Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)................................................................................8

*Gagasoules v. MBF Leasing*,
   Docket No. 08-CV-2409 (ADS) (E.D.N.Y. Feb. 2, 2009) (copy annexed).......14

*Global Network Communications, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006)......................................................................................8


*Hayden v. County of Nassau*,
   180 F.3d 42 (2d Cir. 1999)...................................................................................1, 6

*Jackson v. Nat. Life Insurance Co. v. Ligator*,
   949 F. Supp. 200 (S.D.N.Y. 1996)..........................................................................4

*Kucher v. Alternative Treatment Center of Patterson, LLC*,
   2006 WL. 2527851 (E.D.N.Y. Aug. 29, 2006)......................................................3

*Lakonia Management Ltd. v. Meriwether*,
   106 F.Supp.2d 540 (S.D.N.Y. 2000).......................................................................1

*Landy v. Mitchell Petroleum Technology Corp.*,
   734 F. Supp. 608 (S.D.N.Y. 1990)..........................................................................4

*Lemelson v. Wang Laboratories Inc.*,
   874 F.Supp. 430 (D. Mass 1994) ......................................................................9-10

*Mayen v. Artist*,
   2008 WL. 2201464 (S.D.N.Y. May 23, 2008) .................................................9, 14

*McLaughlin v. Anderson*,
   962 F.2d 187 (2d Cir. 1992)...........................................................................2, 3, 6

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
   1996 WL. 383135 (S.D.N.Y. July 9, 1996) ............................................................4

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993).................................................................................4, 5

*Moore v. Guesno*,
   485 F.Supp.2d 300 (W.D.N.Y. 2007) .....................................................................7

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
   165 F.Supp.2d 514 (S.D.N.Y. 2001).....................................................................11

*Piccone v. Board of Directors of Doctors Hospital of Staten Island, Inc.*,
   2000 WL. 1219391 (S.D.N.Y. Aug. 28, 2000).......................................................4

*Protter v. Nathan's Famous Systems, Inc.*,
   925 F.Supp.947 (E.D.N.Y. 1996) .........................................................................11

*Rezzonico v. H & R Block, Inc.*,
     182 F.3d 144 (2d Cir. 1999).................................................................................9

*Riverwoods Chappaqua Corp. v. Marine Midland Bank N.A.*,
     30 F.3d 339 (2d Cir. 1994)...............................................................................11

*Schlaifer Nance & Co. v. Estate of Warhol*,
     119 F.3d 91 (2d Cir. 1997).................................................................................7

*Schmidt v. Fleet Bank*,
     1998 WL. 47827 (S.D.N.Y. Feb. 4, 1998),.........................................................4

*Schmuck v. United States*,
     489 U.S. 705 (1989) ..........................................................................................6

*Smartix Intern. Corp. v. MasterCard Intern. LLC*,
     2008 WL. 4444554 (S.D.N.Y. Sep. 30, 2008)....................................................5

*Spool v. World Child Intern. Adoption Agency*,
     520 F.3d 178 (2d Cir. 2008)...............................................................................7

*Stoehr v. Hartford Financial Services Group, Inc.*,
     547 F.3d 406 (2d Cir. 2008)...............................................................................2

*Stolow v. Greg Manning Auctions, Inc.*,
     258 F.Supp.2d 236 (S.D.N.Y. 2003)............................................................11, 12

*In re Sumitomo Copper Litigation*,
     104 F. Supp. 2d 314 (S.D.N.Y. 2000)..........................................................12, 13

*United States. v. Eisen*,
     974 F.2d 246 (2d Cir. 1992)...............................................................................9

*United States v. Bagaric*,
     706 F.2d 42 (2d Cir. 1983)...............................................................................10

*United States v. Coonan*,
     938 F.2d 1553 (2d Cir. 1991)...........................................................................10

*United States v. Mazzei*,
     700 F.2d 85 (2d Cir. 1983)...............................................................................10

*Wexner v. First Manhattan Co.*,
     902 F.2d 169 (2d Cir. 1990)...............................................................................5

*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*,
     530 F. Supp. 2d 486 (S.D.N.Y. 2007)................................................................9

## STATE CASES

*Pludeman v. Northern Leasing Systems, Inc.*,
    10 N.Y.3d 486 (2008) ..................................................................................................5

## FEDERAL STATUTES

18 U.S.C. § 1951 .........................................................................................................8

Fed. R. Civ. Pro. 8(a) ..................................................................................................2

Fed. R. Civ. Pro. 9(b) ............................................................................................. 1-6

Local Civil Rule 6.3 ....................................................................................................9

## STATE STATUTES

N.Y. Gen. Bus. L.§ 349 ........................................................................................14, 15

N.Y. Penal L. § 155.05 ................................................................................................8

**Preliminary Statement**

Defendants Northern Leasing Systems, Inc. ("NLS"), Jay Cohen, Rich Hahn, and Sara Krieger (collectively "Defendants"), by their attorneys, Moses & Singer, LLP, submit this memorandum of law in reply to Plaintiffs' Memorandum of Law In Opposition To Defendants' Motion To Dismiss Amended Complaint ("Plaintiffs' Mem."). Although Plaintiffs were given leave to replead a RICO count after the original Complaint was dismissed, the Amended Complaint still does not plead a valid RICO claim for several reasons. Their state law claims, for which they were not given leave to replead, remain deficient as well. For the reasons that follow, the Amended Complaint should be dismissed in its entirety with prejudice, without a second leave to replead. *Lakonia Management Ltd. v. Meriwether*, 106 F.Supp.2d 540, 558 (S.D.N.Y. 2000).

**Argument**

**I.    "Judicial Notice" Of Newspaper Articles And Other Documents,**
**Cannot Cure The Deficiencies Of The Amended Complaint**

In Defendants' Memorandum of Law In Support of Defendants' Motion To Dismiss The Amended Complaint ("Defendants' moving memorandum"), Defendants established that the allegations of mail fraud in the Amended Complaint do not contain the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure. Recognizing the infirmities of the Amended Complaint, Plaintiffs' counsel now submits copies of letters, press reports, a news release, and a decision of the New York State Supreme Court, and requests the Court to take judicial notice of the "facts" set forth in these extrinsic documents. Plaintiffs' Mem., p. 13 - 14. That request should be denied. In addressing the sufficiency of Plaintiffs' current pleading, the Court is to review the allegations of the Amended Complaint, any exhibits annexed to the Amended Complaint (there are none), and any documents incorporated by reference in the Amended Complaint (there are none). *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999). The

Court may <u>not</u> take judicial notice of purported "facts" set forth in papers filed in other lawsuits, or in newspaper articles. *Stoehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *Defazio v. Wallis*, 500 F. Supp 2d 197, 206 (E.D.N.Y. 2007) (on a motion to dismiss, "[t]he Court will not consider these additional facts, which were not in the amended complaint.").

Plaintiffs need to plead mail fraud with the particularity required by Rule 9(b).  For all other allegations, Plaintiffs' obligation under Rule 8(a) is to provide "more than labels and conclusions, and a formulaic recitation of a cause of action's elements... Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-1965 (2007).   Plaintiffs cannot cure the deficiencies of the Amended Complaint by asking the Court to review newspaper articles and other documents in an effort to find a well pleaded claim.

## II.      <u>The Mail Fraud Allegations Do Not Satisfy Rule 9(b)</u>

Even if the Court considers the letters attached to counsel's declaration, the allegations of mail fraud still do not satisfy Rule 9(b) as to any of the individual defendants.   Indeed, those letters are inconsistent with even the conclusory allegations that are found in the Amended Complaint, highlighting an even more compelling reason why those conclusory allegations should not be credited.

As set forth in Defendants' moving memorandum, where mail fraud is alleged to be the RICO predicate, plaintiff must allege facts showing that each defendant mailed or caused to be mailed at least two letters in furtherance of an allegedly fraudulent scheme. *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).  It is not sufficient to lump all defendants together without alleging facts that identify what *each* of them did with respect to *each alleged mailing*. Here, rather than identify the specific predicate act that each defendant allegedly committed,

plaintiffs "simply clump[] together the . . . defendants it sues and alleges, without any distinction among them, that all of these defendants committed all of the enumerated acts.  This blunderbuss and conclusory pleading style . . . does not state a claim against these defendants." *DLJ Mortgage Capital, Inc. v. Kontogiznnis*, __ F.Supp.2d __, 2009 WL141497, at *11 (E.D.N.Y. Jan. 20, 2009). The Amended Complaint fails to specify which defendants used the mail, what each of them transmitted, and to whom each mailing was sent.  *Kucher v. Alternative Treatment Center of Patterson, LLC*, 2006 WL. 2527851, at *3 (E.D.N.Y. Aug. 29, 2006).

The letters attached to Plaintiffs' counsel's declaration – the letters that are supposedly referred in paragraph 93 of the Amended Complaint – do not add to the allegations set forth in the Amended Complaint.  *In fact, they contradict those allegations*.  A cursory review of those letters reveals that not one of them was actually authored or sent by *any of the individual defendants*.  *See* Chittur Decl., dated January 14, 2009, Exh. 1.  They were apparently mailed by others who are not parties to this lawsuit, and do not even refer to any of the individual defendants in this action.

Nor does the Amended Complaint satisfactorily allege that any of the individual defendants "caused each allegedly fraudulent statement to be spoken, written, wired or mailed," as required by Rule 9(b).  *Defazio, supra*, 500 F. Supp. 2d at 203, (*citing McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)).  Rather than provide any detail of what any of the defendants actually did to "cause" any letter to be mailed, the Amended Complaint simply alleges that *all of the defendants*, together with unnamed others, mailed or caused to be mailed *all of the letters* identified in paragraph 93 of the Amended Complaint – even those that they allege were sent by Ms. Kettler:

> *Defendants and other members of* the *enterprise*, having devised or intending to devise the scheme or artifice to defraud ... *placed in post office(s)* or authorized depository for mail matter, several letters and/or packages to be sent or delivered by the Postal Service, and/or took or received therefrom, *letters and/or packages, or knowingly*

> *caused to be delivered by mail* or such carrier ... such letters or
> packages.  (Emphasis added).

Am. Compl., ¶93.  This is precisely the type of non-specific or "group pleading" that is forbidden

by Rule 9(b).[1]  *Jackson v. Nat. Life Ins. Co. v. Ligator*, 949 F.Supp. 200, 208 (S.D.N.Y. 1996)

(plaintiffs "failure to distinguish among the 'Ligator Defendants' [was] an egregious example of

prohibited 'group pleading'"); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*, 1996 WL.

383135, at *2 (S.D.N.Y. July 9, 1996) ("[W]here there are multiple defendants, plaintiffs must

identify with particularity the roles of the individual defendants in the mail fraud"); *Piccone v.

Board of Directors of Doctors Hosp. of Staten Island, Inc.*, 2000 WL. 1219391, at *6 (S.D.N.Y.

Aug. 28, 2000); ("[i]n cases with multiple defendants, Rule 9(b) requires that the complaint allege

facts that specify each defendant's connection to the fraud.  General allegations against a group of

defendant[s] are insufficient"), *quoting Schmidt v. Fleet Bank,* 1998 WL. 47827, at *5 (S.D.N.Y.

Feb. 4, 1998), *citing Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Landy v.

Mitchell Petroleum Technology Corp.*, 734 F.Supp. 608, 623 (S.D.N.Y. 1990).  *See also* cases

cited at pp. 12-13 of Defendants' moving memorandum.

     Plaintiffs' contend that paragraphs 88 - 91 of the Amended Complaint specify each

Defendant's role in causing the mailings to be made.  Plaintiffs' Mem., p. 8.  However, those

paragraphs merely identify the corporate office held by each of the individual defendants within

NLS, not what they actually did to cause mailings to be made in furtherance of an alleged fraud.[2]

---

[1]    Paragraph 94 of the Amended Complaint contains a further example of "group pleading" in violation of Rule 9(b).

[2]    "88.  Defendant Cohen, the President of the Defendant Northern Leasing, was in charge of all its operations.  As such, he set up, orchestrated, and supervised the entire racketeering scheme at issue.

"89.  Defendant Hahn, the Vice President for Sales of the Defendant Northern Leasing, was the supervisor of its internal account managers and customer service.  As such, he was in-charge of monitoring the racketeering scheme at issue.

*Mills*, 12 F.3d at 1175 ("The mere fact that the Directors were controlling persons at Polar does not link them to the statements").[3]  By merely identifying the defendants' positions within the company, and adding, "as such" that defendant would have had certain responsibilities, it is clear that Plaintiffs' allegations of mail fraud consist entirely of speculation, which violates Rule 9(b).  *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (even when it comes to Rule 9(b)'s lessened requirement for pleading malice and intent, Rule 9(b) prohibits pleading fraud based "on speculation and conclusory allegations'"), *quoting Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990).

Because Plaintiffs' allegations of mail fraud are insufficiently pleaded, the Amended Complaint alleges no sustainable RICO predicate acts.  Accordingly, the RICO count must be dismissed.

## III.   <u>Plaintiffs' Allegations Do Not Establish A Pattern Of Racketeering Activity</u>

In Defendants' moving memorandum, Defendants established that the Amended Complaint alleges only sporadic mailings, involving only a few alleged victims, over just a few years.  Thus, even if those allegations satisfied the requirements of Rule 9(b) – which they don't – they are insufficient to establish a RICO pattern.  *Smartix Intern. Corp. v. MasterCard Intern.*

---

"90.  Defendant Krieger, the Vice President for Operations of the Defendant Northern Leasing, was responsible for several aspects of its day-to-day operations and sales.  In addition, she routinely verified the fraudulent complaints filed in the New York City Civil Court under penalties of perjury.

"91.  Defendants' scienter is clearly established from their pattern and practices at issue.  Moreover, Defendants continued repeating these false statements nonchalantly even after knowing of their falsity."

[3]      Plaintiffs' reliance (Plaintiffs' Mem., pp. 13-14) on *Pludeman v. Northern Leasing Systems, Inc.*, 10 N.Y.3d 486 (2008) is both misleading and misplaced.  Indeed, plaintiffs falsely suggest to this Court that the New York Court of Appeals made factual findings, when, in fact, the *Pludeman* decision was on a motion to dismiss the complaint, which tested the sufficiency of the pleading, and in which all of the allegations of the complaint had to be accepted as true.  Plaintiffs attempt to hide this fact by quoting selectively from a passage from the *Pludeman* decision – *a passage that describes the allegations of the Complaint in that case,* while omitting the phrase that precedes it: "As alleged . . .".  Their selective quotation gives the false impression that that the Court of Appeals made findings of fact concerning NLS, which is not the case.

*LLC*, 2008 WL. 4444554, at *8 (S.D.N.Y. Sep. 30, 2008) ("Plaintiff cannot demonstrate the existence of racketeering activity by merely stringing together a handful of discrete acts that allegedly were committed by at least one of the defendants, during a period of more than two and a half years.").  Here, because the allegations of mail fraud are wholly insufficient to satisfy Rule 9(b), the Amended Complaint contains *no sustainable allegations of mail fraud*, and hence, no pattern of racketeering activity.

Plaintiffs now attempt to bolster their insufficient "pattern" allegations by pointing to copies of twenty-two letters, and to unsubstantiated press reports, that are attached to the Declaration of Plaintiffs' counsel.  *See* Chittur Decl., Exhs. 1 - 3.[4]  Even if the Court considers the letters attached to Plaintiffs' counsel's declaration, they do not come close to establishing of pattern of racketeering activity because most of them are unrelated to the alleged fraudulent scheme.  "The gravamen of the offense is the scheme to defraud."  Not every mailing constitutes a potential act of mail fraud.  Only mailings that are "incident to an essential part of the scheme'" satisfy the mailing requirement.  *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131, 2138 (2008), *quoting Schmuck v. United States*, 489 U.S. 705, 712 (1989).   Or as the Second Circuit has stated, "the mail fraud statute punishes only mailings that have a place in the fraudulent scheme."  *McLaughlin*, 962 F.2d 187 at 191.  Plaintiffs' argument, if adopted, would result in a relaxation of mail fraud pleading standards in a way that would eliminate entirely the requirement that each mailing must be shown to be in furtherance of the alleged fraudulent scheme.

In their opposition to the motion, Plaintiffs take pains to identify what they consider to be part of the fraudulent scheme, and what is not.  They define the fraudulent scheme as the "commencement or threat of bogus legal proceedings . . . ***not*** the forged leases or wrongful

---

[4]       As discussed above in Point I.A., it is well settled that the Court should not consider these materials in connection with this motion.   *Hayden*, 180 F.3d 54; *Defazio*, 500 F.Supp.2d at 204.

electronic deductions."  Plaintiffs' Mem., p. 20 (italics and emphasis original).  Since that is the

fraudulent scheme of which Plaintiffs complain, the vast majority of the 22 mailings attached to

Plaintiffs' counsel's declaration clearly had no place in that fraudulent scheme.  Only four of the

letters – two dated March 1, 2004 and June 15, 2005 that were sent by NLS to plaintiff Serin, and

two dated September 10, 2004 and January 27, 2005 that were sent by NLS to plaintiff Lim, even

make any reference to the commencement or threat of possible litigation.   The other eighteen

mailings are entirely unrelated to the "commencement or threat of bogus legal proceedings," and

therefore do not comprise part of the pattern of racketeering.[5]  *See Schlaifer Nance & Co. v. Estate*

*of Warhol*, 119 F.3d 91, 96-97 (2d Cir. 1997) (holding that Schemes A, B, and H were not

sufficiently related to the underlying enterprise to comprise part of the pattern of racketeering

activity); *Moore v. Guesno*, 485 F.Supp.2d 300, 307 (W.D.N.Y. 2007) ("[e]ven giving plaintiffs

all reasonable inferences", the acts alleged were nothing more than isolated incidents unrelated to

one another, and did not constitute a pattern of racketeering activity).

     The four alleged predicate mailings that relate to the commencement of litigation are

isolated, discrete mailings by NLS, involving just two of the plaintiffs, over the course of about

fifteen months, are not related to one another, and are not sufficiently continuous to establish a

pattern of racketeering activity.  *See Spool v. World Child Intern. Adoption Agency*, 520 F.3d 178,

183 (2d Cir. 2008) (the amended complaint alleges only a "discrete and relatively short-lived

scheme to defraud a handful of victims," spanning a period of sixteen months, which is

---

[5]        The letters that plaintiffs purport to claim as a pattern of racketeering activity are: three letters sent
by plaintiff Kettler, and not NLS; three letters sent by NLS to plaintiffs Serin and Russ in response to
claims of potential forgery, enclosing an Affidavit for them to fill out; one mailing sent by NLS to plaintiff
Kettler enclosing the lease that she had requested; one letter sent by NLS to plaintiff Redner confirming
that he was the "Personal Guarantor" under a lease agreement between NLS and Gsr Gifts; one letter sent
by NLS thanking plaintiff Smith for his recent payment under his lease; and nine letters sent by NLS to
plaintiffs Serin, Redner, or Smith notifying them that they had failed to make required payments due under
their respective leases.  *See* Chittur Decl., Exh. 1.

insufficient to establish a pattern of racketeering activity); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("the remaining alleged predicate acts attributed to [defendant], which span barely seven months, do not extend over a sufficiently long period of time to satisfy the requirements of closed-ended continuity.")

Plaintiffs' attempt to bolster their pattern allegations by referring to press reports involving NLS should be rejected for several reasons.  First, as discussed in Point I.A., *supra*, the Court may take judicial notice of the existence of press reports, but not of the truth of anything set forth in them.  *See Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).  Second, because the press reports do not describe any mailings made by any of the defendants, they simply do not supply the missing allegations that are required to establish predicate acts of mail or wire fraud.  Therefore, even under the most liberal reading of the Amended Complaint, as supplemented by Plaintiffs' counsel's Declaration, Plaintiffs' allegations are insufficient to establish a pattern of racketeering activity.

## IV.    Plaintiffs' Extortion Count Is Not Resurrected By Bootstrapping It To Their Amended Rico Claims

The allegations of extortion in the Amended Complaint are the same – word-for-word – as those set forth in the original complaint (*compare* Am. Compl., ¶¶ 99-115 with Compl., ¶¶ 92-108).  Plaintiffs improperly attempt to resurrect their previously dismissed claims under the Hobbs Act (18 U.S.C. § 1951), and its state-law equivalent (N.Y. Penal L. § 155.05), by bootstrapping those claims to Plaintiffs' mail and wire fraud allegations.  *See* Plaintiffs' Mem., pp. 19-20; *see also* Am. Compl. at ¶¶ 99-115.  However, Defendants' alleged use of the mail and/or wires adds nothing to Plaintiffs' extortion claims, and none of the cases they cite suggests that it does.  The claims of mail fraud stand or fall on their own; they do not revive an otherwise deficient claim of extortion.

The underlying activity described in the Amended Complaint – specifically, the filing of meritless lawsuits and/or threats thereof – does not, as this Court previously held, constitute extortion under the Hobbs Act or its state-law equivalent.  Exhibit B, pp. 6-7 ("the filing of a lawsuit, 'even if it were meritless and for the purpose of harassment, would not as a matter of law constitute extortion under New York or federal extortion law because it does not involve threat of force, violence or fear.'").  That ruling is the law of the case, and should not be revisited by this Court at this time, on this record.[6]  *Mayen v. Artist*, 2008 WL. 2201464 (S.D.N.Y. May 23, 2008) (holding that plaintiff has not shown any "cogent" or "compelling" reason for reconsideration, and thus the claim is barred by the law of the case doctrine); *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999).

Plaintiffs' myriad citations to cases outside of this Circuit (*see* Plaintiffs' Mem., pp. 10 – 11) are not on point and are unavailing.[7]  *United States v. Eisen*, the only Second Circuit precedent cited by Plaintiffs in support of their extortion claims, did not include claims under the Hobbs Act or N.Y. Penal Law.  *Id.*, 974 F.2d 246, 255 (2d Cir. 1992).  The "extortionate conduct" in *Eisen* involved subornation of perjury and bribery of a witness in violation of N.Y. Penal L. §215.00.  *Id.* at 255.  However, the RICO predicate acts in *Eisen* were mail and wire fraud – not extortion.  In upholding the RICO conviction in that case, the Second Circuit made clear that it was the mail fraud and wire fraud that sustained the RICO claim, not the allegations of filing fraudulent lawsuits.  *Id.* at 254.  Plaintiffs' reliance on *Lemelson v. Wang Laboratories Inc.*, 874 F.Supp 430

---

[6]        Plaintiffs did not move for reconsideration or reargument of the Court's earlier ruling, and under Local Civil Rule 6.3, any such motion should have been made by September 12, 2008 – ten (10) days of entry of the Court's September 2, 2008 Decision and Order.

[7]        For example, in footnote 8, on page 11 of Plaintiffs' Memorandum, Plaintiffs cite to cases outside this Circuit which, Plaintiffs contend, uphold perjury as RICO predicate acts.  Whether or not that is the law in other jurisdictions, it is not the law in the Second Circuit.  *U.S. v. Eisen*, 974 F.2d at 254; *see also World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.*, 530 F.Supp.2d 486, 512 (S.D.N.Y. 2007).  Similarly, in footnote 9 of Plaintiffs' Memorandum, they quote at length from a 9th Circuit opinion involving an alleged antitrust violation, which is also not on point.

(D. Mass 1994) is even more misplaced.  In *Lemelson*, the predicate RICO acts were mail and wire fraud, not the filing of lawsuits based on fraudulently obtained patents.  *Id.* at 434.[8]  Indeed, to the extent that *Lemelson* suggests that the filing of a lawsuit can be a predicate act, it has been expressly rejected by this Court.  *See B.V. Optische Industrie De Oude Delft v. Hologic, Inc.*, 909 F.Supp. 162, 170 (S.D.N.Y. 1995).

The extortion allegations in the Amended Complaint are identical to the dismissed extortion allegations in the original Complaint.  Consistent with the law of this Circuit, and the law of this case, those allegations do establish a predicate act under RICO.[9]

## V.      Plaintiffs Have Not Adequately Alleged The Existence Of An Enterprise That Is Distinct From The Defendants

As with the original complaint, the Amended Complaint attempts to define the enterprise as "the association of defendants, certain attorneys retained by defendants, salesmen, and others whose identities are known only to defendant."  Amended Complaint, ¶ 86; Plaintiffs' Mem., p. 17.  Plaintiffs attempt to distinguish between the business of the corporate defendant – lease

---

[8]      Plaintiffs' contention that "enterprise" may be inferred from the predicate acts of racketeering is, at best, a strained interpretation of association-in-fact cases involving criminal RICO prosecutions that have no application here.  *See* Plaintiffs' Mem., p. 15.  *United States v. Coonan*, 938 F.2d 1553, 1560 (2d Cir. 1991) involved ten defendants, known as the "Westies", who were charged with a bevy of criminal acts including murder, loan sharking and drug dealing.  The predicate acts with which they were charged were used to link them together as an associate-in-fact enterprise – led by James Coonan – in which each individual defendant played specific roles.  *Id.* at 1560-61.  *United States v. Mazzei*, 700 F.2d 85, 89 (2d Cir. 1983) involved an interstate book-making and point-shaving conspiracy against three distinct groups of individuals.  The Second Circuit held that the proof to establish the pattern "*may in particular cases* coalesce with the proof offered to establish the enterprise element of RICO."  *Mazzei*, 700 F.2d at 88 (emphasis supplied).  The opinion in *United States v. Bagaric*, 706 F.2d 42, 55 (2d Cir. 1983) focuses primarily on the motivation of the alleged enterprise – specifically, whether financial and/or economic gain is necessary to establish a RICO enterprise.  *Id.*, 706 F.2d at 46.  *Bagaric* involved a group of individuals recruited to commit murders and bombings against individuals considered unsympathetic to the cause of Croatian independence.  *Id.*  In affirming the defendants' convictions, the Second Circuit rejected their argument that the U.S. had failed to establish an association-in-fact enterprise because defendants were not collectively motivated by financial gain, but for a long-term political purpose.  *Id.* at 54-55.  None of these cases has any relevance here.

[9]      Plaintiffs' Memorandum (at p. 21) concedes that the Amended Complaint (¶¶126-127) contains purely conclusory "conspiracy" allegations.  For the reasons set forth in Defendants moving memorandum (at pp. 22 - 23), that is not sufficient.  Count II of the Amended Complaint should therefore be dismissed.

financing – and the commencement of lawsuits by its attorneys to enforce its lease finance

agreements.  This reasoning fails for two reasons.  First, because the Amended Complaint does not

allege any role of the individual defendants beyond their employment with NLS.  *See Nasik*

*Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F.Supp.2d 514, 539 (S.D.N.Y. 2001)

("employees in association with [a] corporation do not form an enterprise distinct from the

corporation"), *citing Riverwoods Chappaqua Corp. v. Marine Midland Bank N.A.*, 30 F.3d 339,

344 (2d Cir. 1994).[10]  Plaintiff has merely "strung together all of the defendants in this action and

labeled the resulting group an association-in-fact enterprise."  *Id.; see also DeFazio v. Wallis*, 500

F.Supp.2d at 209-10 ("defendants, the enterprise and the persons engaging in pattern of

racketeering are the same" – "this fails to satisfy the distinctiveness requirement."), *citing*

*Bernstein v. Misk*, 948 F.Supp. 228, 235 (E.D.N.Y. 1997); *Protter v. Nathan's Famous Systems,*

*Inc.*, 925 F.Supp. 947, 956 (E.D.N.Y. 1996) (dismissing Section 1962(c) claim against employees

of the defendant corporation who allegedly associated together in the course of their employment

on behalf of the corporation, on the ground that the employees and the corporation did not form an

enterprise separate and distinct from the corporation).  Second, the acts of a corporate defendant in

enforcing its finance lease agreements cannot be said to be "separate" or "distinct" from the

regular affairs of defendant – to wit, the business of NLS.  To hold otherwise would open the door

to an endless parade of RICO claims against persons or entities that employ outside counsel to

enforce commercial business transactions.

   Plaintiffs' reliance on the "reasoning" of *Stolow v. Greg Manning Auctions, Inc*., 258

F.Supp.2d 236 (S.D.N.Y. 2003) is specious.  *See* Plaintiff's Mem., p. 17.  *Stolow* involved an

---

[10]      Plaintiffs' block quote from *Riverwoods* attempts to distort the Court's holding:  "where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation."  *Riverwoods*, 30 F.3d at 344.

alleged bid-rigging "enterprise" consisting of nine different corporations and seven individuals, all of whom allegedly committed mail and wire fraud.  258 F.Supp.2d at 247.  The Court found that a distinct enterprise existed, but differentiated those facts from the situation present here: "*[u]nlike enterprises that only consist of a corporation and its employees*, here the bid-rigging enterprise is an amalgam of unrelated individual defendants and corporations." *Id.* (emphasis added.).  The reasoning in *Stolow* does nothing to bolster Plaintiffs' loose interpretations of what constitutes an "enterprise" for purposes of RICO claims.

Plaintiffs are correct in arguing that some overlap between the RICO "person" and a member of the "enterprise" is permitted.  However, this does not dispose of the distinctiveness requirement – e.g., that other entities in the enterprise are not defendants or that the entities that comprise the enterprise are different corporations or where an employee is alleged to be the person and the company is alleged to be the enterprise.  *See City of New York v. CYCO.NET*, 383 F.Supp.2d 526, 550-51 (S.D.N.Y. 2005) (dismissing plaintiff's RICO claims for failure to establish the distinctiveness requirement under § 1962).  Plaintiffs have failed to meet the distinctiveness requirement and their RICO claims must, therefore, be dismissed.

**VI.    The Four-Year Statute Of Limitations Bars**
**       <u>The Rico Claims Of Five Of The Six Plaintiffs</u>**

Plaintiffs concede that the statute of limitations begins to run from the date when the plaintiff discovers or should have discovered the RICO injury.  Plaintiffs' Mem., pp. 19-20.  *In re Sumitomo Copper Litigation*, 104 F.Supp.2d 314, 322 (S.D.N.Y. 2000).  Here, Plaintiffs' injuries are claimed to be:  "(a) inconvenience, annoyance, distress, waste of time and resources, and the nuisance in responding to Defendants's [sic] dunning calls, threats, fraudulent lawsuit, retaining lawyers and incurring legal expenses therefore; and (b) adverse effect upon their credit rating." Plaintiffs' Mem., p. 20.  Plaintiffs' own definition of their RICO injury shows that Mr. Lim, Ms.

Kettler and Mr. Smith suffered their alleged injuries far earlier than they claim in opposition to this motion.  The facts set forth in the Amended Complaint, and in the Affiidavit of Sara Krieger (without contradiction by Plaintiffs), reveal that the events concerning Ms. Serin, Mr. Russ, Mr. Lim, Ms. Kettler and Mr. Smith all occurred, at the latest, by February 1, 2002.[11]

| Plaintiff | Date Of Injury | Description |
|---|---|---|
| Serin | September 7, 2001 | First deduction from business bank account. Krieger Aff, ¶7. |
| Russ | April 2, 2001 | First deduction from business bank account. Krieger Aff, ¶8. |
| Lim | May 2001 | Mr. Lim received copy of Summons and Verified Complaint. Am. Compl., ¶47. |
| Lim | May 2001 | Mr. Lim called Defendants regarding allegations in Verified Complaint. Am. Compl., ¶48. |
| Kettler | January 15, 2002; February 1, 2002 | First deduction from business bank account. Krieger Aff, ¶9; Received lease which she believed to be forged. Am. Compl., ¶75. |

Once the alleged injuries have been identified, the Court must "determine when [plaintiffs] discovered or should have discovered the injur[ies]."  *In re Sumitomo*, 104 F.Supp.2d at 322.  The test to be applied is "where the circumstances suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of that fraud will be imputed to him."  *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983).  Based on the foregoing, all of the Plaintiffs (except Mr. Redner) either discovered or should have discovered their RICO injuries before March 1, 2002, four years prior to the date on which plaintiffs commenced this action.  Accordingly, the claims of plaintiffs Serin, Russ, Lim, Kettler and Smith are all barred by the statute of limitations.

---

[11]     Plaintiff Smith alleges that he "started receiving dunning calls and letters from Defendants" in Winter 2002.  Amended Complaint, ¶82.

13

**VII.**   <u>**The N.Y. General Business Law Section 349 Claim Should Be Dismissed**</u>

Plaintiffs' arguments with respect to their New York Gen. Bus. L. section 349 claim constitute nothing more than an improper and untimely attempt to reargue the Court's earlier dismissal of that claim, without any support therefor.  The Court previously held that the "bogus" lawsuits described in the Amended Complaint involved Plaintiffs' business activities, and not their activities as "consumers," and that "there is no indication how these six individual episodes could be construed to have had a demonstrable impact on the public at large."  Exhibit B, p. 9.  That determination is not only correct,[12] it is now the law of the case.  Plaintiffs have given no reason at all to revisit that decision, much less a "cogent" or "compelling" reason.[13]

In opposition to the motion, Plaintiffs cite several cases that purportedly stand for the proposition that the allegations against Defendants in this case constitute harm to the public.  Each case, however, is clearly distinguishable.  *Consol. Risk Servs., Inc. v. Auto Dealers WC Seld Ins. Trust*, 2007 U.S. Dist. LEXIS 22097, at *25 (N.D.N.Y. Mar 27, 2007), involved allegations that each defendant falsely represented "*to the general public* that it was skilled in claims administration", even though four out of the five trusts that defendants were administering were under-funded and in the process of being dissolved by the New York Worker's Compensation

---

[12]      In addition to the case law cited in Defendants' moving memorandum, which fully supports this Court's holding, on February 2, 2009, the United States District Court for the Eastern District of New York dismissed claims brought by the same plaintiffs' counsel as in the present case, against a finance lessor of business equipment.  The court dismissed claims under the Fair Credit Reporting Act, holding that credit reports pertaining to the guarantors of equipment leases for credit card swiping machines were not "consumer" reports, because they were issued in connection with equipment leases for their businesses. *Gagasoules v. MBF Leasing,* Docket No. 08-CV-2409 (ADS) (E.D.N.Y. Feb. 2, 2009) (copy annexed).

[13]      *See Mayen*, *supra*, 2008 WL. 2201464 at *3 ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"), q*uoting Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.1983) (internal quotations omitted).  The press reports attached to Plaintiffs' counsel's declaration may not be considered on this motion (*see* Point I.A., *supra*), and they do not, in any event, demonstrate how the alleged scheme, involving six people over several years, could have an impact on the public generally.

Board.  *Id*. at *26 (emphasis added).  The Court denied defendants' motion to dismiss because "the alleged business practices affected . . . numerous self-insurance trusts, and these trusts represent dozens of employers.  In turn, these employers employ potentially thousands of workers who rely on the trusts for worker's compensation insurance."  *Id*. at *27.  Similarly, in *Excellus Health Plan, Inc. v. Tran*, 287 F.Supp.2d 167 (W.D.N.Y. 2003), the court found that the counterclaimants properly alleged harm to the public at large.  In so doing, however, the court made clear that the public at large is in New York.  Here, none of the Plaintiffs are in New York and make no allegations that the Defendants' alleged scheme impacts New Yorkers.[14]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint should be granted in its entirety, and Plaintiffs should not be given further leave to replead.

Dated:   New York, New York
      February 5, 2009                MOSES & SINGER LLP

                                       *Attorneys for Defendants*

                                       By:  _____/s/_____
                                       Abraham Y. Skoff, Esq. (AS-5330)
                                       Robert D. Lillienstein, Esq. (RL-4585)
                                       405 Lexington Avenue
                                       New York, New York 10174
                                       (212) 554-7800 (telephone)

On the brief:

Scott E. Silberfein, Esq. (SS-1947)
Jennifer Nigro, Esq. (JN-3584)
Danielle Friedberg, Esq. (DF-9679)

---

[14]    As stated in the memoranda submitted by Defendants in support of their motion to dismiss the original complaint (*see* Docket #16 and 20), which were incorporated by reference in Defendants' moving memorandum (at. p. 24 fn 11), Plaintiffs' GBL section 349 claims also fail because (a) those claims do not relate to the "furnishing of any service in this state [New York]" and (b) because Section 349 claims are governed by a three year statute of limitations.  Plaintiffs do not address either these arguments.

<u>CERTIFICATE OF SERVICE</u>

       I do hereby certify that on this 5th day of February, 2009 I served a copy of the within Answer to the persons listed below by sending a copy of the same by U.S. Mail to the following:

Krishnan Chittur, Esq.
Chittur & Associates, P.C.
286 Madison Avenue, Suite 1100
New York, New York 10017


MOSES & SINGER LLP


By:        /s/ Robert D. Lillienstein
        Robert D. Lillienstein (RL-4585)
        The Chrysler Building
        405 Lexington Avenue
        New York, NY  10174-1299
        (212) 554-7800 voice