UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

                                    :
SERIN, ET AL.,                      :
                                    :       CASE NO. 7:06-CV-1625
             Plaintiffs,            :
                                    :
vs.                                 :       OPINION & ORDER
                                    :       [Resolving Doc. Nos. 31, 33, 41, 43]
NORTHERN LEASING SYSTEMS, INC.,     :
ET AL.,                             :
                                    :
             Defendants.            :
                                    :

-------------------------------------------------------

JAMES S. GWIN,[1/] UNITED STATES DISTRICT JUDGE:

    Defendants Northern Leasing Company, Jay Cohen, Rich Hahn, and Sara Krieger move this

Court to dismiss the Amended Complaint in this civil RICO case.  [Doc. 41, 43.] The Plaintiffs

oppose the motion.  [Doc. 34.]  The Defendants have replied. [Doc. 44.]

    To resolve the Defendant's motion to dismiss, the Court must decide whether the Plaintiffs'

Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is

plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations omitted).  Because

the Plaintiffs have met this standard, the Court **DENIES** the Defendants' motion to dismiss.

## I.  Background

    In their Complaint, Plaintiffs Melinda Serin, Judson Russ, Long Sui Lim, Gordon Redner,

Peri Kettler, and Thomas J. Smith (collectively "Plaintiffs") allege that Defendants Northern Leasing

-------

    [1/]The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting
by designation.

Case No. 7:06-CV-1625
Gwin, J.

Systems, Inc. ("NLS" or "Northern Leasing"), Jay Cohen, Rich Hahn, and Sara Krieger engaged in a racketeering scheme by forging leases bearing the Plaintiffs' names and signatures and then commencing lawsuits against the Plaintiffs in New York City Civil Court, in an effort to extort money from the Plaintiffs, who all live out-of-state.  The Plaintiffs assert claims under the federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 and 1964, and New York's Anti-Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349.

Defendant Northern Leasing Systems, Inc. finances equipment leases, including leases of credit card point-of-sale terminals and other equipment to small businesses.  [Doc. 26 at 17; Doc. 43 at 3.]  Jay Cohen, Rich Hahn, and Sara Krieger are, respectively, the President, Vice President for Sales, and Vice President for Operations of Defendant NLS. [Doc. 26 at 2-3.]

Plaintiff Melinda Serin, a resident of Washington, D.C., says she began receiving letters and phone calls from the Defendants in early 2003, demanding payments on a lease that she says she had no knowledge regarding. [*Id.* at 4.]  Serin contacted the Defendants and informed them that she had not signed or guaranteed such a lease, and that any lease bearing her signature must be a forgery. [*Id.*]  Serin subsequently received a General Release from Northern Leasing releasing her from any obligations under the lease, which was notarized on June 24, 2003.  [*Id.* at 5, 35.]  However, Serin alleges that she continued to receive communications from the Defendants, including a May 17, 2005 letter demanding payment of $2,478 on the same lease and threatening litigation.  [*Id.* at 5.]  Serin then received a letter dated June 15, 2005 that indicated that the Defendants had initiated a lawsuit against her in New York City Civil Court.  [*Id.*]  Serin contacted the Defendants, who in a letter dated September 2, 2005, demanded a notarized affidavit of forgery and at least three other pieces of evidence.  [*Id.*]   Serin sent the requested documents but never received any response

Case No. 7:06-CV-1625
Gwin, J.

regarding the Defendants' investigation into the forgery. [*Id.* at 6.] Serin alleges that the Defendants

instead demanded $2,000 to mark her account as closed and to remove adverse entries on her credit

report. [*Id.*]

Serin then learned that Defendants had filed against her in the New York City Civil Court.

[*Id.* at 7.][2/] Upon receiving notice that the case was scheduled for January 23, 2006 and that she was

required to appear in person to defend against the suit in New York, Serin traveled to New York and

appeared in City Civil Court on that day. [*Id.*] The Defendants' representative also appeared in

court on January 23, and voluntarily withdrew the action. [*Id.*] Serin alleges that despite the suit's

being dismissed, the Defendants made derogatory entries in her personal credit report, which has

had adverse effects on her personally. [*Id.*]

In May 2002, Plaintiff Judson Russ, a resident of Orlando, Florida, discovered that NLS had

been debiting funds from four of his corporate bank accounts. [*Id.* at 8.] After he demanded

explanation, the Defendants informed him that someone had signed four equipment leases in the

name of his corporation, and also signed his name as a personal guarantor. [*Id.*] Upon inspecting

the leases, Russ discovered that they were forged, as he was out of the country in the Ukraine at the

time the documents were signed. [*Id.*] The Defendants requested that Russ provide evidence of the

forgery, which he did. [*Id.*] Russ closed the bank accounts from which the Defendants had been

making the withdrawals. [*Id.* at 9.] The Defendants then proceeded to debit funds from a different

corporate account. [*Id.*] After Russ closed additional corporate bank accounts, the Defendants

brought four lawsuits against Russ–personally–in New York City, requesting $8,366.28 in damages.

[*Id.*] Upon receiving notice of his required personal attendance, Russ hired lawyers in New York

---

[2/]The lawsuit appears to have actually been filed on May 17, 2005. [Doc. 26 at 37.]

Case No. 7:06-CV-1625
Gwin, J.

traveled to New York, and testified in Court. [*Id.* at 10.] The Judge dismissed the lawsuit on

December 4, 2003. [*Id.* at 10, n. 2.] Russ also alleges that the Defendants made derogatory entries

in his personal credit report and that he has suffered adverse consequences as a result. [*Id.* at 10.]

In May 2001, Plaintiff Long Soui Lim received a copy of a Summons and Verified

Complaint, filed by the Defendants against him in the City Civil Court of New York, demanding

$2,060.26 from him personally as a guarantor on a lease. [*Id.* at 11.] Lim contacted the Defendants

and informed him that the signatures on the lease had been forged. [*Id.*] He also told them that the

summons had been delivered to an old address in Smyrna, Georgia, and gave the Defendants his new

address, in Marietta, Georgia. [*Id.*] Lim sent the Defendants documents to verify the forgery. [*Id.*]

After not hearing back from the Defendants, Lim sent two letters to the Defendants in July 2001, one

of which was personally addressed to Defendant Krieger, but never received a response. [*Id.*] On

July 23, 2003, the Defendants initiated a lawsuit against Lim in New York City Civil Court. [*Id.* at

12.] Lim never received a copy of the summons and complaint as it was again delivered to his old

address, despite his supplying the Defendants with his correct address. [*Id.*] The Defendants

obtained a default judgment against Lim in the amount of $3,253.63 in May 2004. [*Id.*] Lim again

wrote to Defendant Krieger and requested from the Defendants a copy of the judgment but received

no response. [*Id.* at 12-13.] Lim eventually hired a lawyer in New York, and the court dismissed

the lawsuit on April 20, 2006 for insufficient service and want of jurisdiction. [*Id.* at 14, n. 3.]

Despite his ultimate success in the litigation, Lim, like the other Plaintiffs, alleges that he suffered

adverse consequences as a result of the Defendants' making derogatory entries in his personal credit

report. [*Id.* at 14.]

Case No. 7:06-CV-1625
Gwin, J.

In early 2004, Plaintiff Gordon Redner, a resident of Duncanville, Texas, noticed that the Defendants had made electronic withdrawals from his bank account.[3/]  [Doc. 26 at 14.]  Redner contacted the Defendants, who claimed that he had signed and personally guaranteed a lease with them.  [*Id.*]  Redner alleges that he had never seen the lease before, that the document was forged, and that he never authorized NLS to automatically deduct funds from his bank account. [*Id.* at 15.]  Eventually, Redner closed his bank account to prevent further deductions.  [*Id.*]  The Defendants then sent Redner letters threatening to sue him in New York.  [*Id.*]  The Defendants also made derogatory entries in Redner's personal credit report.  [*Id.*]

Plaintiff Peri Kettler was the principal of Yodamo, Inc., a small business in Port Townsend, Washington. [*Id.*]  On January 9, 2002, Kettler alleges she received and signed a one-page lease agreement with the Defendants for a credit card payment terminal.  [*Id.*]  Kettler claims that she then received equipment different from that specified in the lease.  [*Id.* at 16.]  She complained, but the Defendants said the lease was noncancellable and sent her a copy of a four-page lease, which was not the lease that Kettler had signed.  [*Id.*]  Kettler alleges that her signature was forged as guarantor of this lease. [*Id.*]  On March 11, 2002, Kettler returned the equipment and attempted to cancel the lease.  [*Id.*]  Northern Leasing refused the equipment and continued making monthly deductions from Yodamo's bank account.  [*Id.*]  Kettler subsequently closed Yodamo's account, and the Defendants threatened Kettler with litigation.  [*Id.*]  Northern Leasing sued Kettler personally in

---

[3/]In their original Complaint, the Plaintiffs acknowledge that Redner had contact with the Defendants' local sales representative in Texas on approximately January 27, 2004, and that Redner signed two applications to lease credit card equipment from Sterling Payment Technologies and First American-Hurst. [Doc. 1 at 13.] However, Redner alleges that these representatives did not mention Northern Leasing, that Redner did not sign a lease with NLS, and that he had never heard of NLS until he noticed the debits from his bank account. [*Id.*]

Case No. 7:06-CV-1625
Gwin, J.

New York City Civil Court demanding payment on the allegedly forged lease.[4/]  [*Id.*]    The

Defendants also made adverse entries in Kettler's personal credit report.  [*Id.* at 17.]

In Winter 2002, Plaintiff Thomas J. Smith, a resident of Waukesha, Wisconsin, began

receiving calls and letters from the Defendants demanding payment on a lease he had allegedly

personally guaranteed.[5/]  [Doc. 26 at 17.] Smith alleges that his signature was forged and that he

never entered into an agreement with the Defendants. [*Id.*]  The Defendants filed an action against

Smith in New York City Civil Court to collect payment, with interest and costs, on the lease Smith

had allegedly personally guaranteed.[6/]  [*Id.*]  Smith also claims that the Defendants made adverse

entries in his personal credit report. [*Id.*]

On March 1, 2006, the Plaintiffs initiated the present action against the Defendants.  In their

Complaint, the Plaintiffs alleged that the Defendants' commencing of small-claims proceedings

against the out-of-state Plaintiffs on the forged leases constituted extortion, and that this pattern of

extortion amounted to a racketeering scheme and entitled the Plaintiffs to damages under 18 U.S.C.

§§ 1962 and 1964. [Doc. 1 at 17-26.]  The Plaintiffs further claimed that the Defendants' actions

violated New York's consumer protection statute, N.Y. Gen. Bus. Law § 349, and that the Plaintiffs

were entitled to damages under this law as well. [*Id.* at 26-27.]

---

[4/]Although unclear, the Amended Complaint suggests that the Defendants obtained a default judgment against Kettler, but that this judgment was subsequently vacated. [Doc. 26 at 16, n. 4.] The Amended Complaint also states that Defendant Krieger swore to the veracity of the Defendants' complaint against Kettler. [*Id.* at 16.]

[5/]Like Plaintiff Redner, Smith also apparently had an agreement with an affiliate of the Defendants for the leasing of credit card equipment. [*See* Doc. 1 at 16.] The Plaintiffs' original Complaint states that Smith "arranged for credit card processing facilities" with a local supplier, Tarly Dall, in October 2002, but later stopped using the facilities when he discovered they were charging higher rates than promised. [*Id.*]

[6/]Again, Defendant Krieger swore to  he truth of the Complaint. [Doc. 26 at 17.] The Court denied both Smith's motion to dismiss for forum non conveniens and NLS's motion for summary judgment, finding that there was a triable issue of fact as to whether Smith ever entered into a contract with NLS. [*Id.* at 17, n. 6.] It is unclear what the current status of this suit is.

Case No. 7:06-CV-1625
Gwin, J.

On June 17, 2006, the Defendants filed a Motion to Dismiss the Complaint [Doc. 15], which this Court granted on September 2, 2008 [Doc. 23]. In dismissing the action, this Court held that the filing of meritless lawsuits alone, absent any other finding of fraud or other activity, does not constitute extortion and does not establish a pattern of racketeering activity required to support a RICO claim under § 1962. [Doc. 23 at 7.] The Court further held that the Plaintiffs' RICO conspiracy claim must be dismissed because it relied on the same allegations as the substantive RICO claim. [*Id.* at 8.] Finally, the Court dismissed the Plaintiffs' claim under the New York consumer protection statute, N.Y. Gen. Bus. Law § 349, because the Plaintiffs were not consumers within the definition of the Act. [*Id.* at 9.] The Court granted the Plaintiffs' request for leave to file an Amended Complaint. [*Id.* at 10.]

The Plaintiffs filed their Amended Complaint on October 3, 2008. In their Amended Complaint, the Plaintiffs again make claims under the federal civil RICO statute, 18. U.S.C. §§ 1962 and 1964 and the New York consumer protection statue, N.Y. Gen. Bus. Law § 349. [Doc. 26.] The Plaintiffs allege that the Defendants and certain unidentified attorneys and salesmen constituted an enterprise that affected interstate commerce, and that the Defendants conducted the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c). [*Id.* at 19.] In their Amended Complaint, the Plaintiffs allege that the Defendants committed numerous predicate acts of Mail Fraud, in violation of 18 U.S.C. § 1341. [*Id.* at 19-22.] The Plaintiffs claim that these predicate acts of mail fraud and the filing of frivolous lawsuits, which they argue amount to extortion, constitute a pattern of racketeering activity. [*Id.* at 27-29.] Because this alleged violation of 18 U.S.C. § 1962(c) caused injury to the Plaintiffs, they claim treble damages, interest, and costs under 18 U.S.C. § 1964(c). [*Id.* at 29.] The Plaintiffs further assert that the Defendants and others

Case No. 7:06-CV-1625
Gwin, J.

conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).  [*Id.* at 30-31.]

Finally, the Plaintiffs claim that they are entitled to protection under N.Y. Gen. Stat. § 349 because

none of them entered into a business relationship with the Defendants and the Defendants caused

them injury as individuals by suing them personally and creating derogatory entries in their personal

credit reports.  [*Id.* at 31-32.]

The Defendants filed a motion to dismiss the Amended Complaint, which is currently before

the Court.  [Doc. 41.]  In support of their Motion, the Defendants argue that the Plaintiffs' RICO

claim should be dismissed because the Plaintiffs fail to adequately allege predicate acts of

racketeering activity [Doc. 43 at 8-14], fail to allege an adequate "pattern" of racketeering activity

[*id.* at 14-17], and fail to adequately allege a RICO "enterprise" [*id.* at 17-20].  The Defendants also

allege that some of the Plaintiffs' RICO claims are barred by the applicable statute of limitations,

[*id.* at 17 -22] and that the Plaintiffs' RICO conspiracy claims must be dismissed because their

substantive RICO claim is without merit [*id.* at 22].  The Defendants further argue that the Plaintiffs'

Section 349 claim should be dismissed because the Plaintiffs are not consumers and because the

Plaintiffs did not seek leave to amend or replead their Section 349 claim.  [*Id.* at 23-24.]  Finally,

the Defendants argue that the Court should not grant the Plaintiffs leave to further amend their

Complaint.  [*Id.* at 24-25.]

The Plaintiffs oppose the Defendants' motion.  [Doc. 34.]  The Plaintiffs argue that they have

adequately alleged that the Defendants committed mail fraud.  [*Id.* at 4-9.]  They further claim that

extortion is also properly considered a predicate act because the Court previously ruled only that

extortion standing alone was insufficient, and the Plaintiffs have now added allegations of mail

fraud.  [*Id.* at 9-12.]  The Plaintiffs also argue that the Defendants' mailing of numerous similar

Case No. 7:06-CV-1625
Gwin, J.

documents over several years constitutes a "pattern" of racketeering activity [*id.* at 13-15], that the Plaintiffs' Complaint meets the pleading requirements to allege a RICO enterprise different and distinct from the Defendants [*id.* at 15-19], that all of their RICO claims are timely [*id.* at 19-20], and that the RICO conspiracy claims should survive [*id.* at 21-22].  Finally, the Plaintiffs claim that their Section 349 claim is valid because the Amended Complaint indicates that the Defendants' conduct was harmful to the public, and the Court did not restrict their ability to amend or replead this claim.  [*Id.* at 22-24.]  The Defendants have replied, reiterating the arguments they put forth in their motion.  [Doc. 44.]  The Defendants also argue that the Court should not consider the letters, court decisions, news articles, and other documents referenced in and attached to the Plaintiffs' opposition brief.  [*Id.* at 1-2.]

## II.  Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's legal conclusions as true. *Iqbal*, 129 S. Ct. at 1949.  Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed).  Rule 8 does not require "detailed factual allegations, but it requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations and internal quotations omitted).

Case No. 7:06-CV-1625
Gwin, J.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).   The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.* The Supreme Court has explained the line between possible and plausible: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (citations and internal quotations omitted).

The elements of a RICO claim that are based on the defendant's alleged fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *Air China Ltd. v. Nelson Li*, 2009 WL 857611, *3 (S.D.N.Y. March 31, 2009).  In contrast to the liberal pleading standard in Rule 8, Federal Rule of Civil Procedure 9 requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In RICO claims in which the alleged predicate acts are frauds, "Rule 9(b) calls for the complaint to specify the statements it claims are false or misleading, give the particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir.1999).

In contrast, an action under New York's Consumer Protection Statute, Section 349 of the New York General Business Law, is not subject to the heightened pleading standard of Rule 9(b), but need only meet the "bare-bones notice pleading requirements of Rule 8(a)."  *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008), *cert. granted on other grounds, Hemi Group, LLC v. City of New York*, 129 S.Ct. 2159 (2009).

-10-

Case No. 7:06-CV-1625
Gwin, J.

## III.  Analysis

**A. RICO Claim: 18 U.S.C. § 1962(c)**

The Plaintiffs assert a claim under 18 U.S.C. § 1964, more commonly known as the civil provision of the Racketeer Influenced Corrupt Organizations Act ("RICO").  To recover under § 1964, a plaintiff must show that the defendant committed a substantive RICO violation under 18 U.S.C. § 1962 that caused an injury to the plaintiff's business or property.  *Smokes-Spirits.com,* 541 F.3d at 439.  In order to establish a RICO violation under § 1962(c), the section on which the Plaintiffs rely, a plaintiff must show four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).

The Defendants argue that the Plaintiffs' civil RICO claim should be dismissed because (1) the Plaintiffs do not sufficiently allege predicate acts of racketeering activity, (2) the Plaintiffs fail to make out a pattern of racketeering activity, (3) the Plaintiffs fail to adequately plead the existence of a RICO enterprise, and (4) some of the Plaintiffs' RICO claims are barred by the applicable statute of limitations.

*1. Pattern of Racketeering Activity*

a. <u>Sufficiency of Allegations of Predicate Acts of Racketeering</u>

The Plaintiffs allege that Defendants engaged in a pattern of racketeering activity by extorting money from the Plaintiffs by threatening and initiating lawsuits against them in New York City to recover on fraudulent leases.  In support of their RICO claims, the Plaintiffs allege that the Defendants committed predicate acts of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, and extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951 and New York's Extortion Act, N.Y. Penal Law § 155.05.  Responding, the Defendants argue that the Plaintiffs' RICO claims

Case No. 7:06-CV-1625
Gwin, J.

should be dismissed because the Plaintiffs fail to adequately allege predicate acts of either mail/wire fraud or extortion.

A defendant engages in a pattern of racketeering activity by committing at least two predicate acts of racketeering, as defined in § 1961(1), within a period of ten years.  18 U.S.C. § 1961(5).  Mail and wire fraud are forms of racketeering activity for purposes of RICO.  18 U.S.C. § 1961(1)(B); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 454 (2006).  To successfully make a claim of mail or wire fraud as a predicate act, a plaintiff must allege (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.  *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).  It is not necessary for a plaintiff to show that the defendants actually mailed or wired anything themselves.  *Smokes-Spirits.com*, 541 F.3d at 446 (citing *Pereira v. United States*, 347 U.S. 1, 8 (1954)); *see also  McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992).  It is also unnecessary that the mail or wire communications themselves contain fraudulent communications.  *Schmuck v. United States*, 489 U.S. 705, 711 (1989).  It is sufficient that the plaintiff allege that the defendant caused the mailing or transmission and that the mailing or transmission was for the purpose of executing, or incidental to an essential part of, a scheme which itself has a fraudulent and deceptive purpose.  *Id.*; *Smokes-Spirits.com*, 541 F.3d at 446; *McLaughlin*, 962 F.2d at 191.

A plaintiff must allege mail fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  *McLaughlin*, 961 F.2d at 191.  In applying Rule 9(b) to predicate acts of mail or wire fraud, Southern District of New York courts have articulated different requirements to apply in either a "*per se*" or "in furtherance of fraud" context.  *Am. Med. Ass'n v. United Healthcare*

Case No. 7:06-CV-1625
Gwin, J.

*Corp.*, 588 F.Supp.2d 432, 442 (S.D.N.Y. 2008); *see also In re Sumitomo Copper Litig.*, 995 F.Supp. 451, 456 (S.D.N.Y. 1998).  In a case in which a plaintiff claims that the mailings themselves were fraudulent, *i.e.*, that the mailings themselves contained false or misleading information, Rule 9(b) requires that the complaint specify the fraud involved, and identify the parties responsible for the fraud and where and when the fraud occurred.  *In re Sumitomo Copper Litig.*, 995 F.Supp. at 456. *See also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *McLaughlin*, 961 F.2d at 191.  However, in a case in which the plaintiff claims that the mails or wires were "simply used in furtherance of a master plan to defraud, the communications themselves need not have contained false or misleading information themselves," and "a detailed description of the underlying scheme and the connection of the mail and/or wire communications to the scheme is sufficient to satisfy Rule 9(b)."  *In re Sumitomo Copper Litig.*, 995 F.Supp at 456; *see also Southern Illinois Laborers' and Employers Health and Welfare Fund v. Pfizer Inc.*, 2009 WL 3151807, at *4, n. 10 (S.D.N.Y. Sept. 30, 2009);  *Evercrete Corp. v. H-Cap. Ltd.*, 429 F.Supp.2d 612, 624 (S.D.N.Y. 2006); *Spira v. Nick*, 876 F.Supp. 553, 559 (S.D.N.Y. 1995).  In such a case, particularity as to the mailings themselves is unnecessary. *Am. Med. Ass'n*, 588 F.Supp.2d at 443. "In complex civil RICO actions involving multiple defendants, therefore, Rule 9(b) does not require that the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity.  In such cases, Rule 9(b) requires only that the plaintiff delineate with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme."  *In re Sumitomo Copper Litig.*, 995 F.Supp. at 456 (internal citations omitted).

Case No. 7:06-CV-1625
Gwin, J.

The Plaintiffs in this case do not allege that the letters and/or wire transmissions themselves contained misrepresentations. Rather, the Plaintiffs argue that the communications are part of an ongoing scheme by the Defendants to defraud them. The Plaintiffs describe with the required amount of particularity the details of the racketeering scheme: they describe in detail how the Defendants allegedly forged leases in each Plaintiff's name; how the Defendants made electronic deductions from the bank accounts of Plaintiffs Russ, Redner, and Kettler; how the Defendants then called and/or mailed letters to each Plaintiff demanding payment on the leases and threatening litigation if the Plaintiffs refused to pay; how the Defendants initiated litigation in New York City Civil Court against Plaintiffs Serin, Russ, Lim, Kettler, and Smith; how these Plaintiffs personally appeared and defended these allegedly meritless lawsuits; and how the Defendants allegedly made adverse entries in all of the Plaintiffs' personal credit reports. The general allegations of mail fraud in Paragraph 93 of the Amended Complaint, when read in the context of the specific allegations the Plaintiffs make earlier in the Amended Complaint, are sufficient to adequately plead mail fraud. *See In re Sumitomo Copper Litig.*, 995 F.Supp. at 457.

Moreover, it is also unnecessary for the Plaintiffs to allege that each of the individual Defendants personally committed at least two of the predicate acts of mail and/or wire fraud. It is sufficient that the Plaintiffs allege that the individuals committed the predicate acts of mail and wire fraud by directing NLS and its employees to use the mails and/or wires to further the fraudulent scheme. *See Smokes-Spirits.com*, 541 F.3d at 446; *accord Pereira*, 347 U.S. at 8-9 ("Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used"). Because the Amended Complaint alleges that the individual Defendants, by

-14-

Case No. 7:06-CV-1625
Gwin, J.

nature of their positions within Northern Leasing, orchestrated, supervised, monitored, and/or oversaw the day-to-day operations of the alleged scheme, the Plaintiffs' allegations against all of the Defendants are sufficient to allege a pattern of racketeering activity for purposes of RICO. *See Smokes-Spirits*, 541 F.3d at 446. Based upon the information contained in the Amended Complaint, the Plaintiffs have adequately met their pleading requirement with respect to their mail and wire fraud claims under Rule 9(b).

The Defendants also claim that the Amended Complaint does not adequately allege mail fraud because the Plaintiffs fail to establish that they reasonably relied on the Defendants' misrepresentations to their detriment. [Doc. 43 at 9-10.] The Defendants claim that "in order to prevail in a RICO action predicated on any type of fraud, including mail and wire fraud, the plaintiff must establish reasonable reliance on the defendants' purported misrepresentations or omissions." [*Id.* at 9.] The Defendants' contention is contrary to the Supreme Court's holding in *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131 (2008), in which the Court held: "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Id.* at 2145. In considering "whether a plaintiff asserting a [civil] RICO claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations," the Court held that "a showing of first-party reliance is not required." 128 S.Ct. at 2134. Following *Bridge*, this Court concludes that the Plaintiffs do not need to allege that they relied on the Defendants' misrepresentations to their detriment to allege a predicate act of mail (or wire) fraud. The Court holds that the Plaintiffs have made sufficient allegations of mail and wire fraud and denies the Defendants' motion to dismiss on that ground.

Case No. 7:06-CV-1625
Gwin, J.

The Defendants also argue that the RICO claims should be dismissed to the extent they rely on predicate acts of extortion.  The Defendants argue that because the Court, in dismissing the original Complaint, held that the filing of meritless lawsuits could not constitute extortion under either federal or New York law, that holding requires the Court to dismiss the extortion-based claims in the Amended Complaint.  Because the Court finds that the Plaintiffs have adequately pleaded a pattern of racketeering in which the alleged enterprise committed multiple predicate acts of mail and/or wire fraud in further of its allegedly fraudulent and extortionate scheme, it finds that it is not necessary to consider whether the filing of lawsuits could itself be considered a predicate act of extortion for RICO purposes.  *Compare Lemelson v. Wang Labs., Inc.*, 874 F.Supp. 430, 434 (D. Mass. 1994)(denying defendant's motion to dismiss under 12(b)(6) where plaintiff alleged predicate acts of mail and wire fraud in furtherance of scheme to extort money through pattern of litigation involving claims based upon fraudulently obtained patents).

b. Continuity

The Supreme Court has held that to satisfy the "pattern" requirement, a plaintiff must further show that the predicate acts "are related, *and* that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)(emphasis in original).  The "relatedness" requirement is satisfied if the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *Id.* at 240 (internal citations omitted).  "Continuity" can be either closed- or open-ended.  *Id.* at 241.  A plaintiff alleging a RICO violation may demonstrate closed-ended continuity by sufficiently alleging a series of related predicate acts extending over a "substantial period of time."  *Id.* at 242.   In considering whether the continuity

-16-

Case No. 7:06-CV-1625
Gwin, J.

requirement is satisfied, the Second Circuit has consistently held that a period of less than two years

is not a "substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184

(2d Cir. 2008); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999);

*GICC Capital Corp. v. Tech. Finance Group*, 67 F.3d 463, 467 (2d Cir. 1995).  "Although closed-

ended continuity is primarily a temporal concept, other factors such as the number and variety of

predicate acts, the number of both participants and victims, and the presence of separate schemes

are also relevant in determining whether closed-ended continuity exists." *Cofacredit*, 187 F.3d at

242.

　　　　To satisfy open-ended continuity, in contrast, a plaintiff need not show that the predicate acts

extended over a substantial period of time, but must show that there was "a threat of continuing

criminal activity beyond the period during which the predicate acts were performed." *Id.* "Where

the enterprise is engaged primarily in racketeering activity, and the predicate acts are inherently

unlawful, there is a threat of continued criminal activity, and thus open-ended continuity." *Id.* at

242-43.  However, where the enterprise primarily conducts a legitimate business, there must be some

evidence from which the court may infer that the predicate acts were the regular way of operating

that business, or that the nature of the predicate acts themselves implies a threat of continued

criminal activity.  *Id.* at 242; *see also H.J. Inc.*, 492 U.S. at 243 ("The continuity requirement is

likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's

ongoing legitimate business (in the sense that it is not a business that exists for criminal purposes),

or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'")

Case No. 7:06-CV-1625
Gwin, J.

The Defendants argue that the Plaintiffs fail to adequately allege either closed- or open-ended continuity.[7]  In their Amended Complaint, the Plaintiffs allege that the Defendants committed at least twenty separate acts of mail fraud, spanning a period from January 2002 to September 2005.[8] [Doc. 26 at 20-22.]  The Defendants argue that only four of these alleged acts of mail fraud should be considered predicate acts because the remaining mailings were not in furtherance of the fraudulent scheme.  [Doc. 44 at 6.]  The Defendants claim that the Plaintiffs "define the fraudulent scheme as the 'commencement or threat of bogus legal proceedings . . . *not* the forged leases or wrongful electronic deductions.'"  [*Id.* at 6-7 (citing Doc. 34 at 20).]  However, the Defendants blatantly misrepresent the Plaintiffs' brief.  The Plaintiffs, in response to the Defendants' contention that their claims are time barred,[9] stated:

> Here, the pattern of racketeering activity was defendants' mail and wire fraud, and commencement or threat of bogus legal proceedings based on false representations.  The ***RICO injury*** is, thus, *not* the forged leases or wrongful electronic deductions.

[Doc. 34 at 20 (emphasis in original).]  The Defendants' attempt to misrepresent the Plaintiffs' allegations is transparent.  The Plaintiffs specifically allege that the "fraudulent scheme" involved the acts of mail and wire fraud.  Because the Court finds, for the reasons described above, that the Plaintiffs have adequately pleaded the predicate acts of mail and wire fraud as part of the

---

[7] The parties also dispute whether the Court should consider the additional materials the Plaintiffs attached to their opposition brief in considering this issue.  While the Court notes that it may examine documents incorporated into the Complaint by reference and matters of which it may take judicial notice in addition to the Complaint itself, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Samuels v. Air Transp. Local 504*, 992 F.2d 12. 15 (2d Cir. 1993), it finds in this case that the allegations contained within the Amended Complaint are sufficient to decide this issue, and thus does not find it necessary to look to outside materials.

[8] The Court agrees with the Defendants that any mailing that the Defendants did not mail or cause to be mailed should not be considered a predicate act.

[9] This claim is discussed in Part III.3, *infra*.

Case No. 7:06-CV-1625
Gwin, J.

Defendants' ongoing fraudulent scheme, all of these acts of mail fraud are properly considered as predicate acts in considering whether the Plaintiffs have pleaded a "pattern of racketeering activity."

The Court finds that Plaintiffs have adequately alleged both closed- and open-ended continuity. The Court measures the duration of a pattern of racketeering activity by the RICO predicate acts the Defendants commit. *Cofacredit*, 187 F.3d at 243. The Amended Complaint alleges that the Defendants' first act of mail fraud occurred in January 2002. The Plaintiffs claim that the Defendants then committed multiple predicate acts of mail fraud over the next three-and-a-half years. The Plaintiffs allege that these acts of mail fraud had a similar purpose, similar methods of commission, similar victims, and similar results. *See H.J. Inc.*, 492 U.S. at 240. The Plaintiffs have therefore adequately alleged a series of related predicate acts of mail fraud extending over a "substantial period of time," here more than three years, and have satisfied the closed-ended continuity requirement. *See id.* at 242.

The Plaintiffs have also adequately alleged open-ended continuity. Where an enterprise primarily conducts a legitimate business, in order to plead open-ended continuity a plaintiff must allege that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts threatens continued racketeering activity. *See Spool,* 520 F.3d at 185; *Cofacredit*, 187 F.3d at 242. The Plaintiffs have alleged twenty instances of mail fraud in which the Defendants sought payment on forged leases and threatened litigation if the Plaintiffs refused to pay. The Defendants' alleged fraudulent scheme is not "inherently terminable," but could continue indefinitely. *Compare GICC Capital* 67 F.3d at 466 (no open-ended continuity because looting scheme was "*inherently* terminable" because there was nothing left to loot); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180-81 (no threat of continued criminal activity after

Case No. 7:06-CV-1625
Gwin, J.

defendant had conveyed assets and filed for bankruptcy) *with Beauford v. Helmsley*, 865 F.2d 1386, 1392 (2d Cir.)(en banc), *vacated and remanded*, 492 U.S. 914, *adhered to on remand*, 893 F.2d 1433, *cert. denied*, 493 U.S. 992 (1989)(finding open-ended continuity and pattern of racketeering activity in one-time fraudulent mailing to thousands of individuals because of threat of future fraudulent mailings). The allegations in the Amended Complaint sufficiently plead that the fraudulent scheme constitutes the regular way of operating business for the Defendants, and that there is a threat of continued racketeering activity. *See Air China Ltd.*, 2009 WL 857611, at *5 (finding open-ended continuity and pattern of racketeering activity where defendants committed more than twenty acts of mail fraud in which they made fraudulent representations about their business).

The Plaintiffs have adequately pleaded that the Defendants committed at least two predicate acts of racketeering activity and that these acts were related and continuous. The Court therefore finds that the Plaintiffs have sufficiently alleged a pattern of racketeering activity and deny the Defendants' motion to dismiss on this ground.

*2. RICO Enterprise*

The Defendants further argue that the Plaintiff's Amended Complaint should be dismissed because the Plaintiffs fail to adequately allege the existence of a RICO enterprise. To successfully plead the existence of a RICO enterprise, a plaintiff must allege the existence of two distinct entities: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same person referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). In arguing that the Plaintiffs have not pleaded a RICO enterprise, the Defendants rely on Second Circuit precedent that "a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the

Case No. 7:06-CV-1625
Gwin, J.

affairs of the enterprise through a pattern of racketeering activity." [Doc. 43 at 18 (quoting *Bennett v. United States Trust Co.*, 770 F.2d 308, 315 (2d Cir. 1985).] *See also Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 244 (2d Cir. 1994) (corporate defendant associated with its own employees or agents carrying on regular affairs of the defendant cannot be a RICO enterprise).

However, the Supreme Court distinguished these cases, and overruled the Second Circuit, in *Cedric Kushner Promotions, Ltd. v. King*, holding that the president and sole shareholder of a closely-held corporation who conducts that corporation's affairs through a pattern of racketeering activity could be considered a RICO person distinct from the corporation, the alleged RICO enterprise. 533 U.S. 158, 164-66 (2001). The Court held that a corporation and its employees are not legally identical, and can be considered distinct entities for the purposes of RICO. *Id.* at 166. Moreover, "[a] corporate entity may be held liable as a RICO person 'where it associates with others to form an enterprise that is sufficiently distinct from itself.'" *Stolow v. Greg Manning Auctions Inc.*, 258 F.Supp.2d 236, 247 (S.D.N.Y. 2003)(quoting *Riverwoods Chappaqua Corp.*, 30 F.3d at 344). A RICO claim survives the distinctness requirement where there is only a partial overlap between the RICO person and the RICO enterprise. *Riverwoods Chappaqua Corp.*, 30 F.3d at 344; *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989).

A plaintiff does not need to plead the existence of RICO enterprise with particularity, but must only "provide a clear and concise statement of the enterprise pursuant to Rule 8 of the Federal Rules of Civil Procedure." *Sony Music Entm't Inc. v. Robinson*, 2002 WL 272406, at *6 (S.D.N.Y. Feb. 26, 2002); *Trustees of Plumbers and Pipefiitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1145 (S.D.N.Y. 1995). In their Amended Complaint, the Plaintiffs allege that

Case No. 7:06-CV-1625
Gwin, J.

"[t]he association of Defendants, certain attorneys retained by Defendants, salesmen and others whose identities are known only to Defendants at this time constituted an enterprise within the meaning of 18 U.S.C. § 1961(c)."  [Doc. 26 at 18.]  The Plaintiffs further allege that "[e]ach Defendant is a person within the meaning of 18 U.S.C. § 1961(3) and separate from the enterprise." [*Id.*]  The Plaintiffs have not alleged that all of the individuals participating in the RICO enterprise are merely employees or agents of Defendant Northern Leasing.  The Court therefore finds that the Plaintiffs have sufficiently pleaded an enterprise that is distinct from the Defendants, *see Stolow*, 258 F.Supp.2d at 247; *Sony Music Entm't*, 2002 WL 272406, at *5, and denies the Defendants' motion to dismiss for failure to plead a RICO enterprise.

   *3. Statute of Limitations*

      The Defendants also argue that the Court should dismiss as time-barred the claims of Plaintiffs Serin, Lim, Russ, Kettler, and Smith.[10/]  While the RICO statute does not contain an explicit statute of limitations, the Supreme Court has held that civil RICO actions are subject to the same four-year limitations period as contained the Clayton Act.  *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188-89 (1997); *Agency Holding Corp. v. Malley-Duff & Associates*, 483 U.S. 143, 156 (1987). The limitations period begins to run when the plaintiff discovers or should have discovered his RICO injury.  *Rotella v. Wood*, 528 U.S. 549, 552-554 (2000);  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998).  The Second Circuit has adopted a "separate accrual" rule

---

[10/]In their brief in support of their Motion to Dismiss, the Defendants say that the Court should dismiss as time-barred the claims of only three Plaintiffs, but then go on to argue that Serin's, Lim's, Kettler's, and Russ's claims are barred by the statute of limitations. [Doc. 43 at 20-21.]  In their Reply Brief, the Defendants argue that five Plaintiffs' claims should be dismissed as time-barred, alleging in a footnote that Plaintiff Smith also suffered his injury outside the limitations period.  [Doc. 44 at 13, n. 13.]  While the Court does not look favorably upon claims raised only in reply, because the Plaintiffs' RICO claims survive for similar reasons, the Court will consider this claim with respect to each of these five Plaintiffs.

Case No. 7:06-CV-1625
Gwin, J.

under which a new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury. *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988) ("[E]ach time a plaintiff suffers an injury caused by a violation of 18 U.S.C. § 1962, a cause of action to recover damages based on that injury accrues to plaintiff at the time he discovered or should have discovered the injury").

The Defendants argue that the claims of Plaintiffs Serin, Russ, and Kettler should be dismissed as time-barred because they had inquiry notice of their injuries at the time the first deductions were made from their bank accounts. Relying on the affidavit of Defendant Krieger, the Defendants claim that the first deductions from Serin's, Russ's, and Kettler's accounts occurred in September 2001, April 2001, and January 2002, respectively, or more than four years before the Plaintiffs filed their original Complaint on March 1, 2006. However, in considering the Defendants' motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations contained in the Amended Complaint, and draw all reasonable inferences in the Plaintiffs' favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In deciding a 12(b)(6) motion, a court may consider documents incorporated into, referenced in, or integral to the pleadings, as well as matters of which it may take judicial notice. *See id.* at 152-53; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). However, a court should only consider such a document in disposing of a 12(b)(6) motion when it is clear that the plaintiff relied on the terms and effect of the document in drafting the complaint. *Chambers*, 282 F.3d at 153.

Defendant Krieger's affidavit is not such a document, and the Court will not consider it in deciding the present 12(b)(6) motion. Accordingly, the Court will accept as true the allegations

Case No. 7:06-CV-1625
Gwin, J.

contained in the Amended Complaint.  In their Amended Complaint, the Plaintiffs allege that Serin began receiving calls and letters from the Defendants in early 2003, and that she had previously never heard of the Defendants.  The Amended Complaint further alleges that Russ first discovered deductions from his bank accounts in May 2002.   Accordingly, the Court finds that the Plaintiffs have alleged that Serin and Russ suffered all of their injuries within the four-year limitations period and denies the Defendants' motion to dismiss their claims as time-barred.  The Court further notes that Plaintiffs Serin's and Russ's claims are also not barred for the reasons discussed below.

The Defendants argue that Plaintiff Lim's claims are time-barred because he knew or should have known of his injury by May 2001, when he received a copy of the Summons and Verified Complaint filed by the Defendants.  The Defendants similarly argue that Plaintiff Kettler's claims are barred by the statute of limitations because she knew or should have known of her injury when she received a forged lease in February 2002.  The Defendants therefore suggest that Lim's and Kettler's claims should be dismissed because they both "either discovered or should have discovered their RICO injuries before March 1, 2002, four years prior to the date on which plaintiffs commenced this action." [Doc. 44 at 13.] The Defendants also claim that Plaintiff Smith's claims are time-barred because he alleges that the Defendants first contacted him in the Winter of 2002. [Doc. 44 at 13, n. 11.]

However, in considering the statute of limitations in civil RICO cases, the Second Circuit has explicitly rejected the general federal rule of accrual that in cases involving continuing violations and injury the statute of limitations begins running upon the commission of the first overt act causing damage and does not permit a subsequent injury to start the limitations period anew. *Bankers Trust Company*, 859 F.2d at 1104.  Instead, the Second Circuit has held RICO actions are

-24-

Case No. 7:06-CV-1625
Gwin, J.

subject to a rule of separate accrual: "[E]ach time [a] plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred." *Id.* A plaintiff suing under the civil RICO statute therefore may recover for any specific injury caused by the defendant's RICO violation if he discovered or should have discovered that specific injury within four years of the time he brings suit. *Id.*; *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995).

The Plaintiffs allege that they were injured by, *inter alia*, wasting time and resources in responding to Defendants' calls and letters, retaining lawyers and incurring expenses to defend against the New York litigation, and adverse entries in their credit reports. [Doc. 26 at 29.] Plaintiffs Serin, Russ, Lim, Kettler, and Smith[11] each incurred expenses and inconvenience in responding to the Defendants' lawsuits in New York. The Defendants initiated lawsuits against each of these Plaintiffs after March 1, 2002.[12] Each Plaintiff therefore suffered at least one separate and distinct injury as a result of the alleged RICO violation within the limitations period. While some Plaintiffs may be barred from recovering damages for injuries they sustained prior to March 1, 2002,[13] because each Plaintiff suffered some specific injury that he or she discovered or should have discovered after this date, the Court denies the Defendants' motion to dismiss any of the Plaintiffs' claims on statute of limitations grounds.

---

[11] The Amended Complaint does not allege that the Defendants initiated a lawsuit against Plaintiff Redner. However, the Defendants do not challenge Redner's claims under the statute of limitations and admit that any and all of Redner's injuries occurred during the limitations period.

[12] The Amended Complaint suggests that the Defendants initiated two separate lawsuits against Defendant Lim. For purposes of RICO, the expenses incurred in defending the second lawsuit would be considered separate and distinct injuries from those incurred in the first lawsuit.

[13] Plaintiffs may still be able to recover for injuries suffered outside the limitations period if they can prove an exception such as fraudulent concealment. *Bankers Trust*, 859 F.2d at 1105.

Case No. 7:06-CV-1625
Gwin, J.

**B. Conspiracy Claim: 18 U.S.C. § 1962(d)**

The Defendants also move to dismiss the Plaintiffs' claims under the RICO conspiracy provision, 18 U.S.C. §1962(d). The Defendants claim that the Plaintiffs' conspiracy claim must fail because they argue that the Plaintiffs have failed to plead a legally sufficient substantive RICO violation. However, because the Court finds that the Plaintiffs have adequately pleaded a substantive RICO claim, it must examine the Defendants' RICO claim on the merits.

To state a civil RICO conspiracy claim, a plaintiff must plead "the existence of an agreement to violate RICO's substantive provisions." *Cofacredit*, 187 F.3d at 244 (quoting *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)). The plaintiff must allege that the defendants "agreed to commit the substantive RICO offense by agreeing to participate in the racketeering acts related to the conspiracy, and that each knew the general nature of the [RICO] conspiracy and that the conspiracy extend[ed] beyond his individual role." *Air China Ltd.*, 2009 WL 857611, at *6 (quoting *United States v. Cervone*, 907 F.2d 332, 344 (2nd Cir.1990)). RICO conspiracy claims are subject to the more relaxed pleading standards of Federal Rule of Civil Procedure 8(a). *Air China Ltd.*, 2009 WL 857611, at *6. *See also Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003)("[T]he requirements for RICO's conspiracy charges under § 1962(d) are less demanding"). A plaintiff must allege that a RICO conspirator intended to "further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that [the defendant] has adopted the goal of furthering or facilitating the criminal endeavor." *First Capital Asset Mgmt.*, 385 F.2d at 178. In the civil context, a plaintiff must allege that a RICO conspirator "knew about and agreed to facilitate the scheme." *Baisch*, 346 F.3d at 377 (quoting *Salina v. United States*, 522 U.S. 52, 65 (1997)).

Case No. 7:06-CV-1625
Gwin, J.

The Plaintiffs allege that the Defendants conspired with others to commit predicate acts of mail fraud in furtherance of their scheme to extort money from the Plaintiffs; that each of the individual Defendants, by nature of their positions at Northern Leasing, knew of the general nature of the conspiracy and facilitated the furtherance of the conspiracy; and that none of the Defendants have withdrawn or otherwise dissociated themselves from the conspiracy or the other conspirators. Furthermore, the knowledge of Defendants Cohen, Hahn, and Krieger can be imputed to the corporate entity they allegedly controlled and utilized to further the conspiracy, Defendant NLS. *See Air China Ltd.*, 2009 WL 857611, at *6. Thus the Plaintiffs have sufficiently alleged their RICO conspiracy claim against all of the Defendants under the liberal pleading requirements of Rule 8(a), and the Defendants' motion to dismiss is denied with regard to this claim.

### C. Deceptive Trade Practices Claim: N.Y. Gen. Bus. Law § 349

New York General Business Law Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." N.Y. Gen. Bus. Law § 349(a). Under the Act, "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages . . . or both such actions." N.Y. Gen. Bus. Law § 349(h). The Defendants argue that the Plaintiffs do not qualify for protection under Section 349 because they are not "consumers" under the definition of the statue.[14]  The Plaintiffs claim that they are consumers because they did not enter into business

---

[14]The Defendants also argue that the claim should be dismissed because the Court dismissed this claim as pleaded in the original Complaint in its September 2, 2008 order, and, according to the Defendants, did not give the Plaintiffs leave to re-plead this claim. As stated in the September 2 Order, the Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." [Doc. 23 at 10 (quoting *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F2d 274,276 (2d Cir. 1996).] In that order, the Court gave the Plaintiffs general leave to amend their Complaint. The Court now finds that the Plaintiffs have not exceeded the scope of that leave in re-pleading the Section 349 claim.

Case No. 7:06-CV-1625
Gwin, J.

agreements or transactions with the Defendants.  The Plaintiffs further argue that they are entitled

to relief under the statute because they have suffered harm as individuals, as the Defendants sued

each Plaintiff in his or her individual capacity and made derogatory entries in each Plaintiff's

personal credit report.

Federal courts in New York have interpreted the "expansive language" of Section 349 as

evidence that the statute "was intended to be broadly applicable, extending far beyond the reach of

common law fraud." *New York v. Feldman*, 210 F.Supp.2d 294, 301 (S.D.N.Y. 2002).  The Second

Circuit has held that while Section 349 "is, at its core, a consumer protection device . . . it does

provide a right of action to any person who has been injured by reason of any violation of this

section." *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 211,

218 (2d Cir. 2003)(quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.

1995)).  The Second Circuit therefore held in *Securitron* that a corporation could sue under Section

349 to halt a competitor's deceptive trade practices, even though the plaintiff was neither a consumer

nor standing in the shoes of a consumer.  65 F.3d at 264.  The Second Circuit has directed that "[t]he

critical question [in assessing the validity of a § 349 claim] is whether the matter affects the public

interest in New York, not whether the suit is brought by a consumer . . . ." *Id.*

While the Plaintiffs claim that they are all consumers under the statute, the Amended

Complaint alleges that Plaintiff Kettler is the principal of Yodamo, Inc. and suggests that Yodamo

may have entered into a business transaction with the Defendants.[15]   However, the fact that one or

more Plaintiffs may be a business or a small business owner is not necessarily fatal to the Plaintiffs'

---

[15]/The Plaintiffs' original Complaint also made clear that Plaintiff Russ was the principal of Rapid Case
Advances, Inc., a Florida corporation.

Case No. 7:06-CV-1625
Gwin, J.

claims under Section 349.  *See, e.g., Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 at n. 3 (E.D.N.Y. 2008)(allowing Section 349 claim to proceed on behalf of class containing businesses where deceptive practice was found to affect the public interest).  As stated above, the central question is not whether all of the Plaintiffs are consumers, but whether the Defendants' actions affect the public interest.  In *Securitron*, the court found that the defendants' actions were contrary to the public interest because their false representations caused a regulatory agency to "undertake unnecessary investigations and interfered with its decision-making process." *Id.*  The Plaintiffs here allege that the Defendants filed frivolous lawsuits, containing false averments and based upon forged documents, in the New York City civil courts.  The Court therefore finds that, while it is not clear that all of the Plaintiffs are consumers entitled to the protections of N.Y. Gen. Bus. Law § 349, the Plaintiffs have sufficiently alleged that the Defendants' practices affect the public interest in New York for this claim to survive a 12(b)(6) motion to dismiss.

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** the Defendants' motion to dismiss on all grounds.

IT IS SO ORDERED.


Dated: December 15, 2009                                s/
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE