# MOSES & SINGER LLP

THE CHRYSLER BUILDING
405 Lexington Avenue, NY, NY 10174-1299
Tel: 212.554.7800   Fax: 212.554.7700
www.mosessinger.com

Jennifer Nigro
Direct: 212.554.7808  Fax: 917-206-4308
jnigro@mosessinger.com

April 2, 2010

**VIA ECF**

Honorable James S. Gwin
United States District Court
Southern District of New York
500 Pearl Street
Courtroom 20D
New York, New York 10007-1312

      Re:    Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler, Gordon
               Redner, and Thomas J. Smith, v. Northern Leasing Systems, Inc.,
               Jay Cohen, Rich Hahn, and Sara Krieger;
               Docket No. 06 CV 1625 (JG)

Your Honor:

      This firm represents defendants Northern Leasing Systems, Inc. ("NLS"), Jay Cohen, Rich Hahn and Sara Krieger (the "Individual Defendants"; together with NLS, "Defendants") in the referenced matter. We write in response to Plaintiffs' counsel's letter motion, dated March 16, 2010, to compel the production of certain documents from Defendants.

      Foremost, Plaintiffs' counsel has failed to comply with Local Rule 37.2 (S.D.N.Y.), which requires a moving party, prior to making any motion pursuant to Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure, to request an informal conference with the court. I informed Plaintiffs' counsel of this and requested that he withdraw Plaintiffs' motion, without prejudice. However, as set forth in the attached e-mail correspondence with Plaintiffs' counsel, Krishan Chittur, Esq., dated March 25th through March 29th, 2010, Plaintiffs' counsel simply refuses to comply with Rule 37.2. Exhibit A.

      Moreover, on February 25, 2010, at the request of Plaintiffs' counsel, counsel for both sides participated in an hour-long conference call to discuss Defendants' responses to Plaintiffs' discovery demands. I personally spoke with Mr. Chittur's associate, Andrey Strutinskiy, Esq., for over an hour on that date in an effort to resolve discrepancies. Subsequently, I spent another few hours following up with NLS on the items discussed with Mr. Strutinskiy, and another few hours summarizing each item discussed during counsels' meet and confer, which I then forwarded to Mr. Strutinskiy and Mr. Chittur for their review and comment. A copy of that summary, dated March 8, 2010, is attached as Exhibit B.

April 2, 2010
Page 2

The next correspondence I received from Plaintiffs' counsel was an e-mail from Mr. Strutinskiy, dated March 11th, requesting a 4-week extension of time for Plaintiffs to respond to Defendants' discovery requests, which were served on Plaintiffs' counsel on February 9th. On March 15th, I received another e-mail, this time from Mr. Chittur, containing an attachment that was in a word processing format that I could not open, which Mr. Chittur described as a stipulation. A copy of that e-mail correspondence is also attached as Exhibit C. I immediately telephoned Mr. Chittur to tell him that I could not open the attachment; no one responded. A few hours later, after receiving no response to my call, I sent Messrs. Chittur and Strutinskiy an e-mail again stating that I could not open the attachment, and to please send me the document in MS Word or PDF format so that I could respond. Rather than respond, Mr. Chittur wrote his letter motion to Your Honor, in violation of the rules, and without completing the meet and confer process which is designed to resolve differences and avoid burdening the Court with motions of these types. We believe that the Court should disregard Plaintiff's letter motion, but in an abundance of caution, we address the substantive issues raised by that motion.

Litigation Documents and Privileged Documents

With respect to Request No. 3, as set forth in the March 8th summary of counsels' meet and confer, Defendants' position is not that all documents in NLS's litigation files are privileged. Defendants' position is that communications between NLS and its legal counsel that may otherwise be responsive to Plaintiffs' discovery requests are protected from disclosure pursuant to the attorney-client privilege and/or the attorney work product privilege. Indeed, documents from NLS's litigation files concerning the Plaintiffs have already been produced to Plaintiffs' counsel: NLS00048, 00064-78 (for plaintiff Garner); NLS00100-08; 00111-19; NLS00150-55; 00158-171; 00175-79; 00182-83; NLS00210-18; 00221-23; 00232; NLS00258-66; 00269-79 (for plaintiff Russ – who has four leases); NLS00309-12; 00323-37; 00345-48 (for plaintiff Kettler); NLS00402-04 (for plaintiff Lim). At set forth in the March 8th summary (Exhibit B), Defendants have agreed to follow up with respect to the existence of additional documents responsive to Request 3 that are in Defendants' possession, and that are not otherwise protected by any applicable legal privilege.

As further noted in the March 8th summary of counsels' meet and confer (Exhibit B), Defendants will produce a privilege log if a document is withheld from production on the basis of the attorney-client privilege or work product doctrine. Thus far, no documents responsive to Plaintiffs' discovery requests have been withheld from production on the grounds of the attorney-client or work-product privilege. The current motion to compel production of otherwise privileged documents under the crime-fraud exception is a non-starter because to date, no documents have been withheld from production under the attorney-client privilege or the work-product doctrine.

Moreover, even if Defendants had withheld documents responsive to Plaintiffs' discovery requests on the grounds of the attorney-client privilege or work-product doctrine, Plaintiffs' counsel's blanket assertion that **any** documents withheld by Defendants on the grounds of privilege are discoverable under the "crime-fraud exception" is without merit. The crime-fraud exception only applies in narrow circumstances where the proponent can demonstrate "probable cause to believe that crime or fraud has been attempted or committed and that the communications were in furtherance

thereof." *See e.g., In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) ("A simple finding of relevance does not demonstrate a criminal or fraudulent purpose and thus does not trigger the exception."); *see also Sackman v. Ligget Group, Inc.*, 173 F.R.D. 358, 364 (E.D.N.Y. 1997) (plaintiffs have failed to sustain the high burden of probable cause, which is prerequisite to application of the crime-fraud exception."); *Rattner v. Netburn*, 1989 WL 223059, at *48 (S.D.N.Y. June 20, 1989) (defendants consultations with counsel have not been shown to bear the necessary indicia of impropriety to justify piercing the protection of the attorney-client privilege or the work-product rule."). It is Plaintiffs' responsibility, as the party seeking to invoke the exception, to demonstrate that the exception is applicable. *See Bria v. United States*, 2002 WL 663862, at *4 (D. Conn. March 26, 2002). Here, Plaintiffs' counsel doesn't even bother to cite to the "sufficient facts" set forth in the Amended Complaint that, according to Plaintiffs, "provide a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." Pls' Mot. at p. 2 (quoting *In re John Doe, Inc.*, 13 F.3d 633, 637 (2d Cir. 1994)). Plaintiffs' counsel's speculation does not substitute for showing probable cause. *See Danisco A/S v. Novozymes A/S*, 427 F.Supp.2d 443, 445 (S.D.N.Y. 2006) ("While courts must be vigilant to prevent a client's attempt to misuse attorneys to perpetrate a crime or a genuine fraud, the privilege is not to be lightly cast aside based on speculative allegations."). Courts have regularly rejected attempts to substitute speculative allegations for a proper *prima facie* showing. *See, e.g., Ross v. UKI Ltd.*, 2004 WL 67221, at * 6 (S.D.N.Y. Jan. 15, 2004).

Request Nos. 4, 9, 12, 14 and 16

With respect to Request Nos. 4 and 9, Plaintiffs' counsel's motion is premature. As clearly stated in the March 8th summary of counsels' meet and confer (Exhibit B), Defendants' position with respect a Confidentiality Agreement and Protective Order relates only to Plaintiffs' request for written agreements between NLS and vendors or independent sales organizations (ISOs), and vendor/ISO compensation. A proposed Confidentiality Stipulation and Protective Order was sent to Plaintiffs' counsel on Tuesday, March 30th. As further set forth in the March 8th summary of counsels' meet and confer, with respect to other documents responsive to these requests – e.g., correspondence between NLS and vendors or ISOs that dealt with any of the named Plaintiffs – such documents will be produced to the extent they exist and are in Defendants' possession and are not otherwise protected by any legal privilege.

Plaintiffs' motion also states falsely that no documents concerning vendors or ISOs that dealt with Plaintiffs have been produced. The names and/or addresses of those vendors are identified at NLS0002, 00012, 00014, 00049-51, 00071, 00074 (for plaintiff Serin); NLS00080, 00082-83, 00086, 00115, 00118, 00124-25, 00129, 00131-33, 00136, 00138-39, 00142, 00184, 00189, 00194, 00196-97, 00200, 00227, 00230, 00234, 00238, 00240, 00242, 00245, 00248, 00284, 00287-88, 00292 (for plaintiff Russ – who has four leases); NLS00296, 00298, 00329, 00332, 00338, 00341, 00349-50, 00357, 00364 (for plaintiff Kettler); NLS00373, 00375, 00383, 00386-88 (for plaintiff Redner); NLS00390, 00406, 00409, 00411, 00423 (for plaintiff Lim); NLS00426, 00434, 00439, 00441 (for plaintiff Smith).

April 2, 2010
Page 4

Moreover, Plaintiffs' counsel's reference to an unrelated case involving the Missouri Attorney General – that settled for approximately $25,000 including attorneys' fees – is nothing more than attempt to mislead this Court by citing to sound bites from media articles – that Mr. Chittur himself was responsible for and are not relevant to the instant action.

With respect to Request No. 12, as set forth in the March 8th summary of counsels' meet and confer, Defendants object to this request – specifically compensation of all vendors and/or ISOs – as overly broad. The request should be limited to the vendors and/or ISOs that dealt directly with the named Plaintiffs. *See e.g., PMC, Inc. v. Ferro Corp.*, 131 F.R.D. 184 (C.D. Cal. 1990) (rejecting Plaintiff's argument in civil RICO case that evidence of fraudulent transactions not connected with the sale of the plant was relevant to proving a "continuing threat" – rather, the predicate acts alleged in the complaint were use of the mail and wires incident to the sale of the plant).

> The need to reasonably limit the scope of discovery is acute for claims brought under the RICO statute. The Supreme Court has recognized that the breadth of the RICO language encourages attempts to turn business disputes into federal racketeering charges. (citations omitted). Thus, the risk that a party will attempt to use discovery to conduct a 'fishing expedition' is a significant concern. For these reasons, this Court must ensure that [plaintiff] has some basis in fact for seeking discovery of matters unrelated to its allegations of mail and wire fraud in the sale of the Productol plant. (citations omitted) (emphasis added).[1]
>
> \*\*\*
>
> Unfortunately, the *Northwestern Bell* requirement is now being used by RICO plaintiffs to expand the scope of discovery far beyond anything in dispute between the parties. RICO plaintiffs now claim license for broad discovery of documents and transactions having nothing whatsoever to do with the parties and the transaction underlying the RICO claim. The specter of such pervasive and expensive discovery may well be more of a threat to a defendant than treble damages and the stigmata of being labeled a racketeer. Except for extraordinarily well-heeled defendants, many defendants looking down the wrong end of a double-barreled RICO discovery may well be forced to capitulate or settle at figures having little or nothing to do with the merits of the dispute."[2]

---

[1] *Id.* at 187
[2] *PMC, Inc. v. Ferro Corp.*, 131 F.R.D. at 187; *see also McCurdy v. Wedgewood Capital Management Co., Inc.*, 1998 WL 964185 (E.D. Pa. 1998) (observing that "courts have recognized that the need to reasonably limit the scope of discovery is acute for claims under the RICO statute."); *Paul v. WinCo Holdings, Inc.*, 249 F.R.D. 643 (D. Idaho 2008) (rejecting Plaintiff's argument that discovery sought in civil RICO action was necessary to establish that defendants' conduct constituted a pattern of § 186 violations on a chain-wide basis).

April 2, 2010
Page 5

Additionally, as further set forth in the March 8th summary of counsels' meet and confer (Exhibit B), as with Request No. 9, due to the highly sensitive and confidential nature of information concerning compensation paid to vendors and/or ISOs, a Confidentiality Agreement and Protective Order should be negotiated by and among counsel prior to the disclosure of such information, if available. A proposed Confidentiality Stipulation and Protective Order was sent to Plaintiffs' counsel on Tuesday, March 30th. Plaintiffs' demand for documents and/or information concerning the compensation of the Individual Defendants is also overly broad – and is basically a request for personnel files. Defendants object to producing the personnel files of any of its employees, including, without limitation, the Individual Defendants absent some showing by Plaintiffs that such information is clearly relevant to Plaintiffs' claims. *See In re Del-Val Financial Corp. Securities Litigation*, 158 F.R.D. 275, 276-77 (S.D.N.Y. 1994) ("This court applies a balancing test in order to resolve discovery disputes concerning requests for confidential internal employee evaluations... the party seeking discovery must first demonstrate that the information sought is clearly relevant to the issues or subject matter of the underlying action."). If the party seeking the information can demonstrate that it is clearly relevant, then the Court must balance the need for discovery against the potential harm to the subject of the discovery request, taking into account the relevant public policy considerations and the ability or inability of the party seeking discovery to obtain the desired information from other sources. *Id.* citing *Quinn v. Nat'l Basketball Ass'n*, 1992 WL 179781 at *2-3 (S.D.N.Y. July 23, 1992); *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985); *New York Stock Exchange v. Sloan*, 22 Fed. R. Serv. 2d 500, 504-05 (S.D.N.Y. 1976).[3]

With respect to Request No. 14, as set forth in the March 8th summary of counsels' meet and confer (Exhibit B), Defendants object to this request as overly broad; the request should be limited to communications with the BBB and other governmental authorities (e.g., Attorney General) concerning any or all of the Plaintiffs. This information has already been produced at NLS 00396-401; 00351-354.

With respect to Request No. 16, as set forth in the March 8th summary of counsels' meet and confer (Exhibit B), Defendants have agreed to produce documents concerning complaints concerning the vendors and/or ISOs that dealt with any or all of the named Plaintiffs. As with Request No. 12, Defendants object to the production of personnel files of NLS employees.

With respect to the time period covered by Plaintiffs' discovery requests, as set forth in the March 8th summary of counsels' meet and confer, Defendants' object to the time period 1998 – present, as overly broad because it exceeds the time period of the events described in the Amended Complaint, the earliest of which takes place in 2001, and the latest in early 2006. This is not a class action; this action involves transactions concerning the six plaintiffs listed in the caption. *See Paul v. WinCo Holdings, Inc., supra* (granting Defendants' motion to limit discovery to matters concerning the

---

[3] All provisions as to the scope of discovery are subject to the initial qualifications that the court may limit discovery in accordance with these rules. Rule 26 (c)... confers broad powers on the courts to regulate or prevent discovery even though the materials sought are within the scope of 26(b), and these powers have always been freely exercised. *New York Stock Exchange v. Sloan*, 22 Fed. R. Serv. 2d at 504-05 (citing Advisory Committee's Notes to 1970 Amendment of FRCP 26).

April 2, 2010
Page 6

predicate acts described in the complaint – e.g., Defendants' alleged § 186 violations relating to WinCo Store No. 1 prior to January 18, 2002).

<u>Plaintiffs' Failure to Respond to Defendants' Discovery Requests</u>

Plaintiffs have failed to provide any response to Defendants' discovery requests, which were served in early February. Notably, Mr. Strutinskiy waited until the night before Plaintiffs' responses were due to request a 4-week extension. I personally responded to Mr. Strutinskiy's request. I informed him that because the proposed extension conflicts with Plaintiffs' deposition dates – all of which have been noticed for April – we would need to have new dates for each plaintiff's deposition in New York. Mr. Strutinskiy responded that he would have to confer with his clients. As set forth in the attached correspondence between counsel for the parties (Exhibit A), we have attempted to obtain alternate deposition dates for each plaintiff's deposition; however, Plaintiffs' counsel refuses to produce his clients for deposition or to respond to Defendants requests unless and until Defendants produce all documents responsive to Plaintiffs' requests. The bottom line: Plaintiffs are in default, and they refuse to engage in any good faith discussion to resolve the dispute. Accordingly, in accordance with Local Rule 37.2, Defendants request leave to make a motion to compel, and for sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure.

It is difficult to discern why Mr. Chittur took it upon himself to draft his letter motion to Your Honor given the foregoing circumstances. Accordingly, we respectfully request that Plaintiffs' letter motion be rejected in its entirety, and that the Court grant Defendants leave to make a discovery motion as outlined above.

Respectfully,

Jennifer Nigro

Encs.
cc: Krishan Chittur, Esq.
    Andrey Strutinskiy, Esq.
    Abraham Y. Skoff, Esq.
    Robert D. Lillienstein, Esq.