# Chittur & Associates, P.C.

Attorneys & Counsellors at law
286 Madison Avenue
New York, New York 10017
Web: www.chittur.com
Tel: 212 370 0447
Fax: 212 370 0465
kchittur@chittur.com

April 9, 2010

Hon. James Gwin
United States District Judge
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113-1838

  Re: *Serin v. Northern Leasing*, S.D.N.Y. (7:06-CV-01625)

Dear Judge Gwin:

  Defendants have not produced a single document (paper or electronic) in furtherance of what they concede they agreed to in the "meet and confer" of February 25, 2010. Instead, they seek to continue endless discussions under the garb of "meet and confer," and, to that end, interpose procedural and substantive objections to our letter (Dkt. 51, "PL"). None of these objections survive scrutiny. Accordingly, Plaintiffs request that the Court enter an order for production of (a) the discovery sought in our letter and (b) the documents Defendants concede they agreed to produce, (Dkt. 54-3, Email of March 8, 2010), which agreement is reflected in the draft Stipulation and Order we sent to Defendants weeks ago, "Ex. 1."

<u>Plaintiffs Have Complied with Local Rule 37.2</u>

  Defendants' contention that our letter (PL) violated Local Rule 37.2 is meritless. As Defendants are well aware, we sent it to Your Honor first, and then, in compliance with instructions of Your Honor's clerk Ms. Gwen Mackey, e-filed it as a "Notice". That does not render the letter violative of Local Rules. The very first line on our letter sates that it "is submitted under Local Civil Rule 37.2 to resolve discovery disputes." PL1.

  Defendants' suggestion that we refused to "complet[e] the meet and confer process," DL2, is pure gamesmanship. That process was completed on February 25, when Defendants agreed to supplement their production in some respects, and refused to withdraw other objections. The issues at bar are those on which the parties continued to disagree. Defendants do not even <u>hint</u> at any inclination to change their position on any of those issues in any manner. These issues have to be resolved by the Court.

Hon. James Gwin                                                                April 9, 2010
*Serin v. Northern Leasing*, SDNY (7:06-CV-01625)                                    Page 2

     With respect to items which Defendants agreed to produce, we sent Defendants a draft Stipulation and Order on March 17, 2010. That draft (a) tracked Defendants' own summary of what they had agreed to; and (b) was in PDF format. "Ex. 1," Email with Stipulation and Order. Defendants do not even <u>mention</u> this fact, although they complain about an earlier draft sent in Word Perfect X4. In the past, Defendants have received, opened, and responded to our documents sent in Word Perfect X4 without a murmur; their instant complaint is bewildering.

     Defendants have not bothered responding to that draft Stipulation and Order as of today. They have not even given any date by which they would make the supplementary production agreed to on February 25, 2010. Accordingly, Plaintiffs' request that Your Honor sign this proposed Stipulation and Order ("Ex. 1") with respect to the items agreed upon on February 25, 2010.

<u>Defendants' Objections Are Equally Infirm</u>

<u>Request No. 3</u> (Attorney client communication and work product documents concerning the fraudulent lawsuits in the City Civil Court): We asserted that no documents could be withheld because (a) by failing to provide a privilege log, Defendants waived the privilege; and (b) in any event, the documents were subject to the crime fraud exception.

     Defendants say nothing about their waiver. They simply claim that "no documents" have been withheld on attorney-client or work product doctrine. That is not what Defendants' counsel stated in the February 25th "meet and confer." "Ex. 2," Strutinskiy Affirmation. Further, Defendants <u>have not provided the requisite statement under oath</u> to that effect from a responsible corporate officer.

     Besides, Defendants' fraudulent case against Mr. Russ case was handled by outside counsel (Epstein Becker), while the remaining fraudulent cases at issue were handled by Joseph Sussman, Esq. Both were independent professionals. <u>It is simply inconceivable that there is not a single email, letter, fax, memo, or any communication between Defendants and either counsel concerning any of these six fraudulent proceedings at issue</u>. Plaintiffs will, of course, explore this further in a 30(b)(6) deposition - which Defendants have refused to provide dates for - and through subpoenas to the attorneys involved.

     Defendants' suggestion that their attorneys' statement of "no documents" renders the issue of crime fraud exception a "non-starter," DL2, is misconceived. Defendants' commencement and continuance of the fraudulent proceedings at issue will be a major subject of inquiry at depositions. Defendants cannot be permitted to hide behind "counsel's advice" for the fraud on the court underlying this lawsuit. Hence, this issue of crime fraud exception is properly addressed now.

     Defendants then boldly assert that Plaintiffs have not established probable cause for

Hon. James Gwin April 9, 2010
*Serin v.  Northern Leasing*, SDNY (7:06-CV-01625) Page 3

invoking the crime-fraud exception.  This is frivolous.  Defendants' fraudulent proceedings are the nub of this case.  The factual allegations were verified by Plaintiffs at the very inception of the case, in the original complaint filed; that verified statement is obviously admissible evidence and establishes more than a "prima facie" case.  As detailed therein, despite <u>conclusive</u> evidence of forgery, Defendants persisted in their lawsuit against Mr.  Russ, and dragged him to court in New York all the way from Florida.  In fact, Defendants refused consent to even adjourning the hearing in the City Civil Court before Judge Jaffe to accommodate Mr. Russ - and when he did show up, Defendants had <u>no</u> case to present before Judge Jaffe.  So also, despite having sent Ms.  Serin a general release on grounds of her signature having been forged on the lease, Defendants dragged her to court in New York all the way from Washington, D.C., only to drop the case when she did appear.  These are far from "speculative allegations," but hard - indeed, indisputable - facts evidencing the fraud on the City Civil Court  at issue here.

Thus, Defendants' communication with attorneys Mr.  Sussman and Epstein Becker were in furtherance of the crime and fraud at issue:  commencing and/or persisting in fraudulent legal proceedings.  Such communication was "intended to facilitate or conceal ongoing or contemplated criminal or fraudulent activity."  *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir.1995).  While "there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud."  *U.S. v. Kerik*, 531 F.Supp.2d 610, 617 (S.D.N.Y. 2008) (citation omitted).  The crime-fraud exception applies even where the attorney was not a knowing participant in the crime or fraud in question.  *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir.1984).  Defendants should be required to produce, and answer deposition questions, on all their attorney-client communication on the fraudulent legal proceedings underlying this action.  *U.S. v. Bilzerian*,  926 F.2d 1285, 1292 (2nd Cir. 1991) (attorney client conversations "directly relevant in determining the extent of his knowledge and, as a result, his intent.")

<u>Request No.  4, 9</u> (Transactions with and payments to vendors on Plaintiffs' alleged leases): Defendants claim that they've withheld vendor agreements for want of a confidentiality order which they sent over a month after the "meet and confer."  We sent revisions on April 7 to Defense counsel, but have had no response, and no documents.  Those documents should be ordered produced forthwith.

<u>Request No.  12</u> (compensation paid to vendors, individual defendants and other enterprise members).  Plaintiffs agree to narrow this request to include only the ISOs that dealt with Plaintiffs.

Defendants' objection to producing documents concerning compensation paid to individual defendants is unsustainable.  Such compensation goes directly to motive and intent underlying the racketeering scheme at issue.  How much and when the individual defendants were paid to conduct, orchestrate, and/or participate in the fraud on the City Civil Court is directly relevant and admissible.  As the Court observed,

Hon. James Gwin                                                                                          April 9, 2010
*Serin v. Northern Leasing*, SDNY (7:06-CV-01625)                                                        Page 4

> RICO renders criminally and civilly liable "any person" who uses or invests income "derived from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise engaged in interstate commerce, § 1962(a); or who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or who conspires to violate the first three subsections of § 1962, § 1962(d). *See H.J., Inc., et al., etc. v. Northwestern Bell Telephone Company, et al.*, 492 U.S. 229 (1989).

*Beres v. Thomson McKinnon Securities, Inc.*, 1989 WL 105967, 13 (S.D.N.Y. Sep 1, 1989).

Request No. 14 (communication with BBB and governmental authorities): Defendants seek to restrict this to communication concerning Plaintiffs alone. But at issue is Defendants' pattern of open and continuing racketeering activity. While Defendants' suggestion that we were "responsible" for the Missouri Attorney General's lawsuit against them is flattering, albeit facetious, their fraudulent scheme has been the subject of repeated media coverage, including four television broadcasts by investigative news reporter Sarah Wallace on Channel 7 (ABC news),[1] apart from articles in the news media all over the country, and the web. Indeed, no less than the highest court of New York State has upheld fraud claims against these very Defendants for a fraudulent scheme to entrap small businesspersons into these leases:

> it is significant that plaintiffs, unrelated to one another, all registered parallel complaints. Moreover, it is the language, structure and format of the deceptive lease form and the systematic failure by the salespeople to provide each lessee a copy of the lease at the time of its execution that permits, at this early stage, an inference of fraud against the corporate officers in their individual capacity and not the sales agents.

*Pludeman v. Northern Leasing Systems, Inc.*, 10 N.Y.3d 486, 493 (2008). That scheme continues unabated today.

---

[1] http://abclocal.go.com/wabc/video?id=6802390, broadcast on ABC NY Channel 7 on May 7, 2009, at 11:00 p.m. ("paying back?);
http://abclocal.go.com/wabc/story?section=news/local&id=5316084 ("Is a corporation scamming small businesses?"), broadcast on Channel 7, ABC News New York on May 17, 2007;
http://abclocal.go.com/wabc/story?section=news/local&id=5390031 ("Alleged Fraud Targeting small businesses?"), broadcast on Channel 7, ABC News New York on June 12, 2007; and http://abclocal.go.com/wabc/story?section=news/investigators&id=6971081 ("Check scanning machine scam"), broadcast on ABC News channel 7 on August 20, 2009, at 6:00 p.m.

Case 7:06-cv-01625-JSG   Document 55   Filed 04/09/10   Page 5 of 6

Hon. James Gwin                                                                April 9, 2010
*Serin v. Northern Leasing*, SDNY (7:06-CV-01625)                                       Page 5

     Thus, Defendants' communication with law enforcement authorities and BBB are much more than discoverable; they are relevant and admissible. They bear on Defendants' *scienter*, the existence of a racketeering pattern as well as an enterprise, and should be required to be produced.

<u>Request No. 16</u> (files of employees who dealt with each plaintiff): Defendants do not specifically dispute our assertion that the "background, training, performance reviews, and compensation" of these employees who dealt with Plaintiff go directly to the issue of "motive and intent, pattern of racketeering, and who constituted the enterprise." PL3. Nevertheless, they object to the production of these files as not "clearly relevant." DL5. That is unhelpful.

     Significantly, Defendants do not seek a protective order with respect to these files, *see, e.g., Duling v. Gristede's Operating Corp.*, 2010 WL 1257354 (S.D.N.Y. Mar 30, 2010). This is understandable, since Defendants have no "good cause" for such an order. *Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005); *Savitt v. Vacco*, 1996 WL 663888 at *4 (N.D.N.Y. Nov. 8, 1996). Plaintiffs are entitled to discover how and why these employees facilitated the functioning of the racketeering scheme at issue.

<u>Time Period</u>

     Defendants' objection to the time period for which discovery is sought is equally flawed. The scheme at issue dates back to (at least) 1998, when Defendants re-designed their standard form Lease in furtherance of the scheme.[2] While this is not a class action, the "pattern of racketeering" involves an open-ended scheme, the evidence of which is discoverable. Thus, the time-period covered here is proper.

<u>Defendants' Attempt to Manufacture Discovery Complaints Against Plaintiffs Should Be Rejected</u>

     Seeking to divert attention from their dilatory tactics and continuing discovery infractions, Defendants seek "sanctions" against Plaintiffs. But as Defendants concede, Plaintiffs' responses to Defendants' document requests are not even due until April 12. There is simply no basis for Defendants to even bother this Court with any alleged "discovery dispute" against Plaintiffs. Of course, Defendants say nothing about their ignoring our deposition notices of January 2010 (which noticed depositions for February 2010), and failure to provide deposition dates. Moreover, Defendants ignored our discovery requests of July 2006 for 3 ½ years. They have not made the supplementary production they themselves agreed to in February 2010. Defendants' request is transparent moonshine.

     In sum, the Court should enter (a) an order requiring Defendants to produce the

---

[2] That was the basis for the Court to certify a class from January 1, 1999, in *Pludeman v. Northern Leasing Systems, Inc.,* 2009 WL 1812532, 1 (N.Y.Sup. Apr 24, 2009).

Hon. James Gwin April 9, 2010
*Serin v. Northern Leasing*, SDNY (7:06-CV-01625) Page 6

documents sought in our letter of March 16, 2010 (Dkt 51), and (b) an order along the lines of "Ex. 1" hereto with respect to documents which Defendants agreed to but have not produced. These documents should be required to be produced within two weeks from the date of the order.

If Your Honor has any questions, please have Your Honor's law clerk call me. Thank you for your attention.

Yours very truly,

Sd/-

Krishnan S. Chittur, Esq.
Attorneys for Plaintiffs

cc: Robert Lillienstein, Esq.