

# MOSES & SINGER LLP

THE CHRYSLER BUILDING
405 Lexington Avenue, NY, NY 10174-1299
Tel: 212.554.7800    Fax: 212.554.7700
www.mosessinger.com

Jennifer Nigro
Direct: 212.554.7808 Fax: 917-206-4308
jnigro@mosessinger.com

May 20, 2010

**VIA ECF**

Honorable James S. Gwin
United States District Court
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113-1838

Re:  *Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler, Gordon*
     *Redner, and Thomas J. Smith, v. Northern Leasing Systems, Inc.,*
     *Jay Cohen, Rich Hahn, and Sara Krieger*
     Docket No. 06 CV 1625 (JSG)

Your Honor:

   This firm represents defendants Northern Leasing Systems, Inc. ("NLS"), Jay Cohen,
Rich Hahn and Sara Krieger (the "Individual Defendants"; together with NLS, "Defendants") in
the referenced matter. We write in response to plaintiffs' counsel's letter dated May 18th.
Counsel's letter is correct in one aspect alone – that Defendants have not yet produced e-mails,
although counsel's letter fails to note that we have been communicating with them regularly
about the issues raised by the email search and our progress. Plaintiffs' counsel's letter also fails
to mention that Defendants have produced over 26,000 pages of documents – responsive to
request numbers 4, 9, 12, 14 and 16 – over the last week, as directed by Your Honor's April 16th
Order.

   We have looked into, and have been conferring with plaintiffs' counsel on, the review
and production of e-mails, including the time, effort and costs associated therewith. As I stated
to plaintiffs' counsel, Andrey Strutinskiy, there are over 675 gigabytes of data that are potentially
responsive to Plaintiff's request, which covers the period from December 2005 to May 2010.
The format in which such data is stored is Lotus Notes NSF files. These files were created by
the Lotus Notes Journaling system in 2 GB increments and they are not broken out by custodian.
There are several hundred of these files for the period in question. Northern Leasing does not
have the technical facilities to be able to open all of these files and index them for searching. To
make the files searchable, they have to be indexed by an outside vendor, then search terms have
to be applied to identify potentially relevant data, and then the resulting data has to be reviewed. .
Plaintiffs' counsel is aware of this because we have been addressing this very issue with counsel
in an effort to narrow down the universe of potentially relevant data. We have engaged an
outside vendor to assist us with evaluating the time, effort and cost associated with culling and
reviewing potentially responsive information from NLS's server. The estimate that we just

818544v4  011082.0121

# MOSES & SINGER LLP

Hon. James S. Gwin
May 20, 2010
Page 2

received, which is attached, ranges between $93,825 and $114,193, depending on the software platform on which the results will be hosted.   Defendants believe that the burden and cost of complying with this demand, in particular, far exceeds any benefit that will be derived from the production.   Accordingly, we ask that the Court require Plaintiffs to either pay for or share in the cost of producing emails.

In the meantime, notwithstanding a meet and confer with plaintiffs' counsel, Plaintiffs continue to refuse to produce documents responsive to the following requests made by Defendants:

- Request Nos. 9 and 10 -- which request the social security cards and drivers licenses of each plaintiff.  This case involves claims of forgery -- indeed, Ms. Serin filed a police report for identity theft.  Plaintiffs' identities -- specifically documents that evidence same -- are a crucial issue in this case.  Social security cards and drivers licenses are universally acceptable forms of identification.  Plaintiffs' objections on the grounds of relevance and plaintiffs' privacy rights are improper.  These are not trade secrets. Plaintiffs' counsel has rejected our offer to enter into a mutual confidentiality agreement with respect to documents containing sensitive information.

- Request No. 12 -- bank statements and cancelled checks for specified accounts, for the periods indicated.  This case involves claims by plaintiffs, among other things, of alleged unauthorized deductions from plaintiffs' bank accounts by NLS.  At least one plaintiff claims that he was forced to close his bank account (Compl. 70).  To object to producing the very documents that would evidence such deductions and alleged injury on the basis of relevance, over breadth and "privacy rights" is without merit.  In addition to being relevant to plaintiffs' claims, these documents are also relevant to the issue of whether the Plaintiffs ratified the transaction, despite their claims of forgery, which is clearly within the scope of discovery.  As for plaintiffs' "privacy" objection, these are not trade secrets or unrelated to the claims.  Plaintiffs' counsel has rejected our offer to enter into a mutual confidentiality agreement with respect to documents containing sensitive information.

- Request Nos. 21 - 26 -- all equipment finance leases for credit card processing equipment, other than the Leases, that each plaintiff signed (as lessee and/or guarantor), for the periods indicated.  This case involves, among other things, alleged forgeries and/or unauthorized deductions for equipment -- specifically, credit card processing machines -- that Plaintiffs allege they never used, received, and/or financed.  Defendants are entitled to discovery pertaining to equipment finance leases executed by any of the Plaintiffs during the time periods indicated.  At paragraph 64 of the Complaint, plaintiff Redner alleged that he signed applications for a credit card check usage with Sterling Payment Technologies and another for a credit card machine with First American-Hurst. Plaintiff Kettler alleges that she received equipment that was different from the one specified by a vendor identified as First National Processing (Compl. 74), and that she

818544v2  011082.0121

# MOSES & SINGER LLP

Hon. James S. Gwin
May 20, 2010
Page 3

signed a lease but not the one received from NLS (Compl. 75-77). Plaintiff Smith also claims to have "arranged for credit card processing facilities through a local supplier" -- but that after he allegedly discovered that the rates were higher than anticipated, he "stopped using the processing facilities all together" (Compl. 82). We believe that Plaintiffs' objections on the grounds of relevance and over breadth are without merit.

• Request Nos. 38 - 43 -- credit card processing statements for all credit card processing machines utilized by each plaintiff during the periods indicated. Again, this case involves, among other things, alleged forgeries and/or unauthorized deductions for equipment -- credit card processing machines – that Plaintiffs allege they never used, received and/or financed. As with Request Nos. 21 - 26, Defendants are entitled to discovery pertaining to the equipment -- specifically, credit card processing machines -- utilized by any of the Plaintiffs during the time periods indicated in the Requests.

• Request No. 50 -- retainer or other written agreements between any of the Plaintiffs and Chittur & Associates. In addition to compensatory damages, the Complaint seeks punitive damages and attorneys' fees and costs. Plaintiffs' counsel's fee arrangement(s) with Plaintiffs in this case is discoverable, and is not protected by the attorney-client privilege. *See e.g., New Markets Partners, LLC v. Sal Oppenheim Jr., & Cie. S.C.A.*, 258 F.R.D. 95 (S.D.N.Y. 2009)(attorney's engagement letters consisting mainly of proposed fee arrangement for attorney, boilerplate termination and arbitration provisions, etc., was not protected by attorney-client privilege; none of the statements contained legal advice nor did they reveal undisclosed motive, strategy, or nature of services provided). To the extent that Plaintiffs maintain that such documents are protected by the attorney-client privilege, they have failed to list them on a privilege log, along with any other documents withheld from Plaintiffs' document production on the grounds of privilege.[1]

• Request No. 52 -- documents reflecting the identity of persons who signed each Lease as guarantor. The Complaint alleges, among other things, that the signatures on the Leases were forged and/or unauthorized; indeed, plaintiff Serin appears to know the individual who is alleged to have stolen her identity. Documents pertaining to the alleged "forgeror" are clearly relevant to this case.

---

[1] The "privilege log" attached to plaintiffs' document production dated April 30, 2010, is reproduced, verbatim, below:

| No. | Documents Withheld & Redacted | Reason |
|---|---|---|
| 1 | Document No. 48 – redacted | Social security number |
| 2 | communications between plaintiffs and their attorneys Chittur & Associates, P.C. | Attorney-client privilege |

# MOSES & SINGER LLP

Hon. James S. Gwin
May 20, 2010
Page 4

- Request No. 53 -- telephone/gas/electricity bills addressed to or in the name of Plaintiff Lim and/or Lung Lim for the period indicated. This request is specifically tailored to Plaintiff Lim's claims that he was unaware of any action commenced against him by NLS because the summons and complaint, along with other correspondence from NLS, was sent to an old address (Compl. ¶¶ 42-54). Documents such as utility bills are relevant to Plaintiff Lim's claim that he was not living at the address indicated on the summons and complaint when NLS served him with a copy of same, and that NLS was allegedly aware of this fact when it entered judgment against him 2 years later. Plaintiffs' objections on the basis of relevance and privacy of Mr. Lim and third parties (not identified) are without merit. These are not trade secrets. Plaintiffs' counsel has rejected our offer to enter into a mutual confidentiality agreement with respect to documents containing sensitive information.

Plaintiffs' counsel has also failed to inform us whether plaintiff Thomas Smith, whom, according to plaintiffs' counsel, cannot come to New York for his deposition due to a physical disability, can appear for deposition via videoconference. Also, with respect to plaintiff Peri Kettler, plaintiffs' counsel informed us that they have been unable to reach Ms. Kettler, and that they do not know whether she is living or dead. We have also been unable to confirm a date for plaintiff Gordon Redner. Defendants depositions have been scheduled and confirmed for June 8, 10, 15 and 17 respectively.

Due to the sheer volume and nature of the e-mails stored, Defendants will simply not be able to produce e-mails by the end of this week. Additionally, Defendants anticipate that the cost involved in doing so warrant cost-sharing between Plaintiffs and Defendants.

For the foregoing reasons, Defendants respectfully request that Your Honor deny Plaintiffs' motion to compel the production of all e-mails from Defendants by Friday, May 21st and/or to strike Defendants' answer. Defendants further request that Plaintiffs be ordered to produce documents responsive to Defendants' discovery requests, including the requests outlined above, to produce a privilege log that provides the detail required set forth in Rule 26(a)(5) of the Federal Rules of Civil Procedure and the Local Civil Rules, and to provide the information regarding the depositions of plaintiffs, as outlined above.

Respectfully submitted,

*Jennifer Nigro* / n m

Jennifer Nigro

cc.   Chittur & Associates
      *Attorneys for Plaintiffs*

818544v2   011082.0121

| | A | B | C |
|---|---|---|---|
| 1 | | | |
| 2 | Dec 2005 - May 2010 - NSFs from Mail Journal | | values in blue can be changed and $ estimates will update |
| 3 | **Data Size Assumptions** | | |
| 4 | Number of months  Dec 2005 - May 2010 | 54 Months | |
| 5 | Average GB per month | 12.5 GB (based on historical estimates from M Rodriguez) | |
| 6 | Estimated Size of NSFs from  Dec 2005 - May 2010 | 675 GB | |
| 7 | | | |
| 8 | | | |
| 9 | **Processing and Review Assumptions** | | |
| 10 | Source Data Size | 675 GB | |
| 11 | Reduction rate through deduplication | 40% Removed | |
| 12 | Reduction rate through searching | 95% Removed | |
| 13 | Total Estimated Data Size Post-Dedupe and Searching (GIG OUT) | 20.3 GB | |
| 14 | Estimated images per GB of Native Files converted | 60,000 pgs * historical average | |
| 15 | Estimated Docs per GB (emails + attachments) | 15,000 Docs * historical average | |
| 16 | Estimated % of natives reviewed  to produce in TIFF | 25% | |
| 17 | | | |
| 18 | **Hosting Assumptions (in Catalyst)** | | |
| 19 | Number of GB for hosting and Native Review in Catalyst | 24.3 GB  (*Total size approximated as GIG OUT + 20% ) | |
| 20 | Months Data Hosted | 12 months | |
| 21 | Number of Initial Data Loads into Catalyst | 3 Loads | |
| 22 | | | |
| 23 | **Calculated Assumptions** | | |
| 24 | Estimated pages **prior** to dedupe / filtering | 40,500,000 | |
| 25 | Estimated number of Docs prior to dedupe / filtering | 10,125,000 | |
| 26 | Estimated pages **after** deduplication / filtering | 1,215,000 | |
| 27 | Estimated number of Docs after deduplication / filtering | 303,750 | |
| 28 | Estimated pages to be converted native to TIFF for production | 303,750 | |
| 29 | Estimated number of Docs to Produce | 75,938 | |
| 30 | | | |
| 31 | **Processing and Pricing Options** | | |
| 32 | **Option A-Processing and Review in Catalyst Hosted** | | |
| 33 | | | |
| 34 | Processing and Hosting of Natives | $  114,193 | **Estimated Total** |
| 35 | Processing | $  87,750 | (@ $115/GB to dedupe/search and $500 output to native) |
| 36 | Catalyst Hosting | $  17,330 | (inclusive of setup, uploads and monthly charegs @ $50/GB/MO) |
| 37 | Image Conversion and Production | $  9,113 | (@ $.03 per page) |
| 38 | | | |
| 39 | **Option B-Processing and Review in Concordance** | | |
| 40 | Processing and Concordance Review of Images | $  93,825 | **Estimated Total** |
| 41 | Processing | $  93,825 | (@ $115/GB to dedupe/search and $800 output to image) |
| 42 | Concordance / Opticon Database | $  - | |
| 43 | Image Conversion and Production | $  - | (no charges if MS does productions) |
| 44 | | | |
| 45 | Processing and Concordance Review of Natives | $  96,863 | **Estimated Total** |
| 46 | Processing | $  87,750 | (@ $115/GB to dedupe/search and $500 output to native) |
| 47 | Concordance / Opticon Database | $  - | |
| 48 | Image Conversion and Production | $  9,113 | (@ $.03 per page) |

These estimates are based on assumptions above.  Actual values may be higher or lower than what is listed.