# Chittur & Associates, P.C.

Attorneys & Counselors at law
286 Madison Avenue Suite 1100
New York, New York 10017
Tel: (212) 370-0447
Fax: (212) 370-0465
Web: www.chittur.com
Email: kchittur@chittur.com

May 24, 2010

**VIA ECF**

Hon. James Gwin
United States District Judge
Carl B. Stokes United States Court House
801 West Superior Avenue
Cleveland, Ohio 44113-1838

> Re:    *Serin v. Northern Leasing*,
> Southern District of New York - Docket No. 7:06-CV-01625

Dear Judge Gwin:

Defendants concede that they have not produced a single email.  Instead, three weeks after they were ordered to produce these emails, they claim for the first time that such production, comprising of an estimated 75,938 documents, would cost the manifestly incredible amount of "between $93,825 and $114,193," or about $1.20 - $1.50 per document.  This burden, they say, "far exceeds any benefit" from production.  Nigro letter (Dkt. 61, "Letter").  Defendants' objections are specious.

First, Defendants' objections concern only the time period "December 2005 to May 2010."  Letter at 1.  It would thus appear that they have no objection to producing emails prior to that period as directed by the Court, i.e., for the period "1998 to the present," Order of Apr. 16, 2010, at 3-4.  But Defendants have not produced even those emails.

Second, Plaintiffs commenced the instant action in February 2006.  As clear from the Complaint itself, Defendants had commenced litigation against Plaintiffs much earlier - for example, Defendants sued Mr. Lim in 2001, and Mr. Russ in 2003 in the City Civil Court.  Hence, Defendants had the obligation to preserve these emails in easily accessible form.

"The obligation to preserve evidence arises when the party has notice that the evidence is

Hon. James Gwin                                                    *Serin v.   Northern Leasing*
Page 2

relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd.  V.  Federal Exp.  Corp.*, 247 F.3d 423, 436 (2nd Cir.  2001).  Once this obligation arises, a litigant must preserve electronic data so as to be easily accessible.  *See Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).  As another Court summarized,

> The Second Circuit has held that conduct that hinders access to relevant information is sanctionable, even if it does not result in the loss or destruction of evidence. *See Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 110 (2d Cir.2002). Accordingly, permitting the downgrading of data to a less accessible form-which systematically hinders future discovery by making the recovery of the information more costly and burdensome-is a violation of the preservation obligation.

*Treppel v. Biovail Corp.*, 233 F.R.D. 363, 372 (S.D.N.Y. 2006).  Defendants were obligated to "take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party."  *Pension Committee of University of Montreal Pension Plan v. Banc of America Securities*, 2010 WL 184312, 1 (S.D.N.Y. Jan 15, 2010).  Further, "the presumption is that the party possessing [evidence] must bear the expense of preserving it for litigation." *Treppel*, 233 F.R.D. at 373; *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978).

Third, Defendants do not explain why they cannot produce the emails of the individual defendants from their individual email-boxes - a relatively simple task.  Defendants bypass this issue completely, and misleadingly refer to 12.5 gigabytes of emails per <u>month</u>.  This is obviously for the entire company.

Fourth, even with respect to the entire company emails, Defendants do not claim that the emails are inaccessible.  Given their preservation obligations seen above, Defendants cannot saddle Plaintiffs with the cost of Defendants' violation of those obligations.  "[T]he party responsible for production generally bears the cost." *Clever View Invs., Ltd. v. Oshatz*, 233 F.R.D. 393, 394 (S.D.N.Y.2006); *Mahar v. U.S. Xpress Enterprises, Inc.*, 2010 WL 681342, 11 (N.D.N.Y. Feb 24, 2010).

In sum, with respect to the emails, Defendants had the obligation to preserve these emails in accessible form since 2001, or certainly no later than February 2006.  Thus, if Defendants failed to keep the electronic data in accessible format, they should bear the consequences.  They cannot be permitted to take advantage of their own wrong.  Further, they have not made a showing of inaccessibility or inordinate burden, and their unverified attorneys' letter and alleged vendor quotation are clearly insufficient.  They should be required to produce the emails in readable and searchable electronic format forthwith.

To divert attention from their own discovery failure, Defendants manufacture a dispute

Hon. James Gwin                                           *Serin v.  Northern Leasing*
Page 3

concerning Plaintiffs' document production.  While the documents they seek are totally irrelevant to any issue in the case, Plaintiffs have agreed to produce all responsive documents, to the extent they exist and are in Plaintiffs' possession, custody, or control, except for Request No. 50 (retainer agreements).

Defendants' only reason for seeking attorneys' retainer agreements is that the Complaint seeks "punitive damages and attorneys' fees and costs".  Letter at 3.  But that is irrelevant; as another Court held while rejecting a similar request, "the case has not even progressed to the stage where attorney fees are at issue,"  *Abels v. JBC Legal Group, P.C.*, 233 F.R.D. 645, 646 (N.D.Cal. 2006).  Defendants' case, *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 99 (S.D.N.Y. 2009), involved a partnership dispute where that plaintiff alleged that his partner "wrongfully refused to consent to the filing of this lawsuit."  The various versions of the retainer agreement exchanged with those attorneys was thus directly at issue. That is not the case at bar.  Indeed, Defendants themselves have not disclosed their retainer agreement or invoices.

Likewise, Defendants' complaint about our privilege log is baseless.  As we have informed them categorically, no documents have been withheld except those protected by attorney-client or work product privilege.  We had not listed every such communication, but if Defendants do so in their privilege log - which they have yet to produce - we will provide the same information.

So also, Defendants' complaint about Plaintiffs' deposition-schedule is completely disingenuous.  They conceal the fact that four of the Plaintiffs' depositions were confirmed to have been completed this week, but on May 14, Defendants sought to postpone these depositions because one of their lawyers had a death in his family.  Plaintiffs consented to this postponement, and we have been coordinating with Plaintiffs who have had to rearrange their schedules and travel arrangements. We expect to have confirmed dates by this week.  As the Court is aware, depositions are to be completed by June 30, 2010.

In sum, no orders are warranted with respect to Plaintiffs' alleged document production or deposition.  With respect to the email production, Defendants should not be permitted to sandbag Plaintiffs by producing massive documents at the last minute.  As they concede, they are obligated to produce Defendants for depositions by June 8, and Plaintiffs should have at least two weeks prior to the deposition to review Defendants' production. Accordingly, Defendants should be required to produce the emails and all other documents forthwith, on pain of preclusion.

Yours very truly,

Sd/

Krishnan S. Chittur, Esq.
Attorneys for Plaintiffs