UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MELINDA SERIN, JUDSON RUSS, LONG SOUI LIM,    :
PERI KETTLER, GORDON REDNER, AND THOMAS    :
J. SMITH,                                                      :        06 CV 1625 (SCR)
                                                                 :
                                    Plaintiffs,               :
                                                                 :
              -against-                                       :
                                                                 :
NORTHERN LEASING SYSTEMS, INC., JAY          :
COHEN, RICH HAHN, and SARA KRIEGER,          :
                                                                 :
                                    Defendant.              :
------------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTIONS _IN LIMINE_**

MOSES & SINGER LLP
_Attorneys for Defendants_
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

Of Counsel:

Robert D. Lillienstein, Esq.
Declan Butvick, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

    A.    Plaintiffs' Claims ................................................................................. 1

    B.    The Evidence That Should Be Excluded ............................................ 2

RULES OF EVIDENCE APPLICABLE TO THESE MOTION ................................. 5

    C.    Rules 401, 402 and 403 .................................................................... 5

    D.    Rule 404(b) ....................................................................................... 6

    E.    Rules 602, 801 and 802 .................................................................... 7

    F.    Rule 1002 .......................................................................................... 8

ARGUMENT ............................................................................................................. 9

I.    EVIDENCE OF DEFENDANTS' ALLEGED MISREPRESENTATIONS, FRAUD OR ALLEGEDLY ILLEGAL OR IMPROPER BEHAVIOR, ALLEGED BAD ACTS, ETC., THAT IS NOT DIRECTLY RELATED TO THE CLAIMS ALLEGED IN THE AMENDED COMPLAINT, OR THAT DID NOT PROXIMATELY CAUSE PLAINTIFFS' ALLEGED LOSSES, SHOULD BE EXCLUDED ....................................................................................... 9

    1.    The Evidence Is Not Relevant To Plaintiffs' RICO Claims ................... 11

    2.    The Evidence Is Not Relevant To Plaintiffs' Section 349 Claim ........... 13

II.    PURPORTED DAMAGES FOR LOSS OF TIME SPENT, REDUCED VALUE OF LIFE, AND LOSS OF CREDIT EXPECTANCY ARE NOT RECOVERABLE UNDER RICO ................................................................... 14

III.    DAMAGES FOR LOSS OF TIME SPENT, LOSS OF CREDIT EXPECTANCY AND REDUCTION IN VALUE OF LIFE ARE NOT RECOVERABLE UNDER SECTION 349 ................................................................... 14

IV.    DAMAGES FOR INJURIES THAT WERE ALLEGEDLY INCURRED PRIOR TO FEBRUARY 24, 2003 ARE NOT RECOVERABLE UNDER SECTION 349 ....... 15

V.    EVIDENCE OF COMPLAINTS MADE BY NON-PARTIES CONCERNING NORTHERN LEASING SHOULD BE EXCLUDED ................................................ 15

VI.    EVIDENCE OF AN APPLICATION TO REFINANCE A MORTGAGE, ALLEGEDLY MADE BY THOMAS SMITH, OR OF THE REASONS WHY SUCH APPLICATION WAS DENIED, SHOULD BE EXCLUDED ......................... 17

    A.    Mr. Smith Has Produced No Documentary Evidence In Discovery ................. 17

    B.    Fed. R. Evid. 1002 Bars Smith From Testifying As To The Contents Of Mortgage Documents ......................................................................... 18

|   |   |   |
|---|---|---|
| C. | Mr. Smith's Proposed Testimony Concerning  The Reasons Why A Lender Denied His Application To Refinance Constitutes Hearsay | 19 |
| VII. | EVIDENCE OF THE REASONS WHY LUNG LIM'S APPLICATIONS FOR CREDIT WERE DENIED SHOULD BE EXCLUDED | 20 |
| VIII. | EVIDENCE REGARDING JUDSON RUSS'S ATTEMPT TO PURCHASE THREE CHECK CASHING LOCATIONS, THE PROFIT HE WOULD HAVE MADE, AND THE REASONS WHY THE "LANDLORD" WOULD NOT ACCEPT RUSS AS A PURCHASER, SHOULD BE EXCLUDED | 21 |
| A. | Russ Has Produced No Documentary Evidence In Discovery | 21 |
| B. | Russ's Testimony Concerning The Profits That The Three Stores Would Have Generated Should Be Excluded | 22 |
| C. | Fed. R. Evid. 1002 Bars Russ From Testifying As To The Contents Of Contract Documents | 23 |
| D. | Mr. Russ's Proposed Testimony Concerning The Reasons Why The "Lender" Would Not Accept Russ As A Purchaser Constitutes Hearsay | 24 |
| IX. | PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING  ANY EVIDENCE OF DAMAGES THAT IS NOT IDENTIFIED IN THEIR EXPERT'S REPORTS AND THEIR RULE 26 DAMAGE DISCLOSURES | 25 |
| X. | EVIDENCE REGARDING THE CAUSE OF THOMAS SMITH'S STROKE, OR THAT HIS STROKE WAS CAUSED BY NORTHERN LEASING, SHOULD BE EXCLUDED | 26 |
| XI. | EVIDENCE REGARDING PERI KETTLER SHOULD BE EXCLUDED | 26 |
| XII. | EVIDENCE REGARDING GORDON REDNER SHOULD BE EXCLUDED | 27 |
| | CONCLUSION | 27 |

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Acumed LLC v. Advanced Surgical Services, Inc.*,
    561 F.3d 199 (3rd Cir. 2009) ...............................................................................8, 19, 22

*Allstate Ins. Co. v. Administratia Asigurarilor De Stat*,
    948 F. Supp. 285 (S.D.N.Y. 1996)......................................................................17, 21, 24

*In re American Express Company Shareholder Litigation*,
    840 F. Supp. 260 (S.D.N.Y. 1993)....................................................................................12

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006)...........................................11, 12

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*,
    129 F. Supp. 2d 578 (W.D.N.Y. 2000) ............................................................................13

*Berkovitch v. Hicks*,
    922 F.2d 1018 (2nd Cir. 1991)..........................................................................................6

*Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*,
    614 F.Supp.2d 481 (S.D.N.Y. 2009).................................................................17, 21, 23

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
    650 F. Supp. 2d 314 (S.D.N.Y. 2009).............................................................................7, 22

*DataMill, Inc. v. U.S.*,
    91 Fed. Cl. 722 (Fed. Cl. 2010) .......................................................................................8

*Design Strategies, Inc. v. Davis*,
    367 F. Supp. 2d 630 (S.D.N.Y. 2005).............................................................................18

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 1996)............................................................................................25

*Hemi Group, LLC v. City of New York*,
    ___ U.S. ___, 130 S. Ct. 983 (2010)......................................................................11, 12, 14

*Holmes v. Securities Investor Protection Corporation*,
    503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1991)...........................................11, 12

*Kilarjian v. Horvath*,

379 F.2d 547 (2d Cir. 1967)..............................................................................6

*Leopold v. Baccarat, Inc.*,
174 F.3d 261 (2nd Cir. 1999)..........................................................................7

*In re Macmillan, Inc.*,
186 B.R. 35 (Bankr. S.D.N.Y. 1995).................................................17, 21, 23

*McMillan v. Experian, et al.*,
170 F. Supp. 2d 278 (D.Conn. 2001)..........................................19, 20, 22, 25

*Outley v. City of N.Y.*,
837 F.2d 587 (2nd Cir. 1988)..........................................................................6

*Park West Radiology v. CareCore Nat. LLC*,
675 F. Supp. 2d 314 (S.D.N.Y. 2009)............................................................16

*Schonfeld v. Hilliard*,
218 F.3d 164 (2nd Cir. 2000)........................................................................23

*Spadaro v. McKeon*,
693 F. Supp. 2d 183 (N.D.N.Y. 2010)..............................................................8

*U.S. v. Awadallah*,
436 F.3d 125 (2d Cir. 2006)...................................................................3, 6, 9

*U.S. v. Holland*,
381 F.3d 80 (2d Cir. 2004)..............................................................................5

*U.S. v. Doyle*,
130 F.3d 523 (2d Cir. 1997)..........................................................................16

*U.S. v. Kaplan*,
490 F.3d 110 (2d Cir. 2007)................................................................. passim

*U.S. v. Miller*,
248 Fed. Appx. 426, 429 (3d Cir. 2007)..........................................................8

*U.S. v. Ruffin*,
575 F.2d 346 (2d Cir. 1978)......................................................................8, 22

*Zubulake v. UBS Warburg LLC, et al.*,
382 F. Supp. 2d 536 (S.D.N.Y. 2005)..............................................................6

## STATE CASES

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    3 N.Y.3d 200, 785 N.Y.S.2d 399 (2004) .......................................................................13

*Chapman v. Universal Motown Records Group*,
    08 Civ. 3255, 2010 WL 517480 (S.D.N.Y. Feb 04, 2010) ...................................................8

*Chiang v. Verizon New England Inc.*,
    No. 06-cv-12144, 2009 WL 102707 (D. Mass Jan. 13, 2009)........................19, 20, 22, 24

*Earhart v. Countrywide Bank, FSB*,
    No. 3:08-cv-238, 2009 WL 2998055 (Sept. 15, 2009) ....................................19, 20, 22, 24

*Gurwin v. UBS Financial Services, Inc.*,
    No. 07-10323, 2008 WL 302314 (E.D. Mich. Feb. 4, 2008)...........................19, 20, 22, 24

*Kam Hing Enterprises, Inc. v. Wal-Mart Stores, Inc.*,
    No. 09- 1373, 2010 WL 23049 (2d Cir. Jan. 6, 2010) .......................................................17

*Kenford Co. v. County of Erie*,
    67 N.Y.2d 257, 502 N.Y.S.2d 131 (1986) .......................................................................23

*Lombardo v. Stone*,
    No. 99 CIV. 4603, 2002 WL 113913 (S.D.N.Y. Jan. 29, 2002)..........................................7

*Pro Bono Investments, Inc. v. Gerry*,
    No. 03 Civ. 4347, 2005 WL 2429777 (S.D.N.Y. Sept. 30, 2005) .......................................7

*Sadler v. Moran Towing Corp.*,
    No. 01 Civ. 1666, 2002 WL 1977604 (S.D.N.Y. Aug. 28, 2002) ........................................6

*Schratz v. Potter*,
    No. 03-cv-6610, 2008 WL 5340992 (W.D.N.Y. Dec. 19, 2008) .......................................18

*Sheridan v. Mariuz*,
    No. 07 Civ. 3313, 2009 WL 920431 (S.D.N.Y. April 6, 2009).........................................12

*Small v. Lorillard Tobacco Co., Inc.*,
    252 A.D.2d 1, 679 N.Y.S.2d 593 (1st Dep't 1998), aff'd, 94 N.Y.2d 43, 698
    N.Y.S.2d 615 (1999) ....................................................................................................13

*The Gillette Co. v. Wilkinson Sword, Inc.*,
    No. 89 CIV. 3586, 1989 WL 82453 (S.D.N.Y. July 6, 1989) ...........................................16

*Williams v. Equifax Credit Information Services*,
    No. 4:07-00322, 2007 WL 4458914 (D. S.C. Dec. 17, 2007) ..........................................19

*Yeboah v. U.S.*,
    No. 99 Civ. 4923, 2000 WL 1876638 (S.D.N.Y. Dec. 26, 2000)......................................6

## FEDERAL STATUTES

18 U.S.C. § 1964(c) ..............................................................................................................11, 14

19 U.S.C. §1964(c) ...................................................................................................................13

Fed. R. Civ. P. 26(a)(1)(A)(iii) ................................................................................................25

Fed. R. Civ. P. 37..........................................................................................................1, 17, 18

Fed. R. Civ. Pro. 37(c)(1) ...................................................................................................17, 21

Fed. R. Civ. P., Rule 37(d)........................................................................................................26

Fed. R. Evid. 401 .............................................................................................................1, 5, 10

Fed. R. Evid. 402 .............................................................................................................1, 5, 11

Fed. R. Evid. 403 .......................................................................................................1, 6, 7, 11

Fed. R. Evid. 404(b).....................................................................................................................1

Fed. R. Evid. 602 .............................................................................................................1, 7, 22

Fed.R. Evid. 702 ........................................................................................................................23

Fed.R. Evid. 703 ........................................................................................................................26

Fed.R. Evid. 802 ................................................................................................................1, 20, 22

Fed. R. Evid. 901 ........................................................................................................................16

Fed. R. Evid. 1002 ............................................................................................................ passim

Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 .....................2

**STATE STATUTES**

New York's Anti-Deceptive Trade Practices Act, N.Y. Gen. Bus. Law §349.....................2, 13, 14

## PRELIMINARY STATEMENT

Defendants, Northern Leasing Systems, Inc. ("Northern Leasing"), Jay Cohen, Rich Hahn and Sara Krieger (collectively, the "Defendants"), by their attorneys Moses & Singer LLP, submit this memorandum in support of Defendants' motions *in limine* to preclude Plaintiffs Melinda Serin ("Serin"), Judson Russ ("Russ"), Long Soui Lim ("Lim"), Gordon Redner ("Redner"), Peri Kettler ("Kettler") and Thomas J. Smith ("Smith") from introducing certain evidence at trial pursuant to Fed. R. Evid. 401, 402, 403, 404(b), 602, 802 and 1002, and Fed. R. Civ. P. 37.

### A.      Plaintiffs' Claims

Those claims asserted by the Plaintiffs in their Amended Complaint, which were upheld by this Court as stating a claim (dkt. #46), allege a specific fraudulent scheme that consists of starting "bogus legal proceedings" (Amended Complaint, Exh. A[1], ¶13), "[b]ased on forged documents, <u>which Defendants knew were forged</u>" (*id.* at ¶99; emphasis original), "solely for the purpose of injuring Plaintiffs and recovering unwarranted sums through extortion." *Id.* at ¶99. The Amended Complaint claims that Defendants allegedly "…sought to intimidate Plaintiffs with dunning letters and phone calls, telling them that it would be more expensive for them to dispute Defendants's [sic] claims in New York City Civil Court than it would be to pay off Defendants." Exh. A, ¶13. As this Court described Plaintiffs' claims herein: "Plaintiffs . . . allege that Defendants Northern Leasing Systems, Inc. . . . Jay Cohen, Rich Hahn, and Sara Krieger engaged in a racketeering scheme by forging leases bearing Plaintiffs' names and signatures and then commencing lawsuits against the Plaintiffs in New York City Civil Court, in

---

[1]      References to Exhibits are to the Exhibits annexed to the Declaration of Robert D. Lillienstein, dated November 8, 2010, which accompanies this memorandum.

an effort to extort money from the Plaintiffs, who all live out-of-state.  The Plaintiffs assert

claims under the federal Racketeering Influenced Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1962 and 1964, and New York's Anti-Deceptive Trade Practices Act, N.Y. Gen. Bus.

Law §349."  Opinion & Order, December 17, 2009 (dkt. #46), at p. 1-2.

> Plaintiffs describe the "pattern of racketeering activity" under RICO as follows:

>> The pattern of racketeering activity engaged in by Defendants
>> consisted of a scheme executed by the aforementioned conspirators
>> from January 1998, and continuing to date, **to extort and collect**
>> **unwarranted sums through litigation based on perjurious**
>> **averments or threats thereof**.

Exh. A, ¶116 (emphasis added).

> With respect to damages, the Amended Complaint alleges that "Plaintiffs have been

injured in that, <u>inter alia</u>, they had to waste time and resources in responding to Defendants's

[sic] dunning calls, threats, lawsuit in New York, retaining lawyers and incurring legal expenses

therefor.  In addition, Plaintiffs' credit rating has also been adversely affected, and they have

suffered damages as a consequence as detailed above."  *Id.*, ¶123.

**B.**    **The Evidence That Should Be Excluded**

> (1) <u>Conduct Related Evidence</u>.  At depositions recently held, Plaintiffs have questioned

Defendants about evidence of alleged conduct that is completely unrelated to the claims and

predicate acts alleged herein by Plaintiffs, but which Plaintiffs' counsel will assert is wrongful,

misleading to merchants *other than* Plaintiffs, or fraudulent.  As but one example, at recent

depositions of Defendants, Plaintiffs' attorney leadingly questioned about a $25 property tax

filing service fee, insinuating that this is collected under one of several lease provisions that are

alleged to be misleading to the merchants who enter into this lease, ***although not to Plaintiffs,***

***who claim to have never to have even seen or signed a lease at all.***  *See e.g.* Cohen Dep. Tr.,

10/28/2010, p. 30-31.[2]  While the lawyer who represented Northern Leasing in collections matters was deposed and testified that this $25 charge is covered by the handling costs provision specified in paragraph 7 of the lease at issue (Exh. H, p. 98-103),  the evidence and questioning on allegedly misleading aspects of a lease signed by others –  but not by Plaintiffs – is clearly intended to prejudice the jury by portraying the Defendants as "bad people", and does not demonstrate that Defendants have committed the offenses for which they have been charged in this case.  *See*, *e.g.*, *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).  Plaintiffs intend to offer other such evidence – evidence of what Plaintiffs will contend is improper conduct, but which has no materiality to Plaintiffs' claims herein, and will be both confusing to the jury and prejudicial to the Defendants.

By this motion in limine, Defendants seek to preclude Plaintiffs from opening to the jury on, and from using at trial, evidence of alleged acts on the part of any of the Defendants that is unrelated to the claims, predicate acts and damages pled and going to trial herein, or which, while marginally relevant, is prejudicial to Defendants and/or would be confusing to the jury. Some of the specific items of such evidence is specifically identified below and objected to[3]. Other such evidence may be objected to when offered by Plaintiffs.  Defendants also raise this issue now to avoid improper statements by Plaintiffs to the jury during voir dire and opening.

1.  (2) <u>Damages</u>.  Defendants also move, *in limine*, to preclude Plaintiffs from offering or addressing the jury concerning: (i) damages which were not properly identified,

---

[2]   Excerpts from this deposition transcript are annexed hereto as Exhibit B.

[3]   Because this motion is being submitted prior to the parties completion of a proposed pre-trial order, Defendants do not know exactly which exhibits of this type Plaintiffs will seek to introduce.  Defendants also seek to preclude Plaintiffs from opening or addressing the jury as to this evidence, and, based on the very recent deposition questioning, it appears that Plaintiffs intend to do so.

substantiated and supported during discovery; or (ii) damages which may not be recovered under either of the statutes on which Plaintiffs premise their claims.  Since such damages may not be recovered herein, Plaintiffs should not be able to address these damages at trial, and permitting them to do so will serve to confuse the jury and prejudice the defendants.

(3) <u>Other Matters</u>.  Defendants also move *in limine* to exclude evidence on certain other grounds, more fully described below.  Defendants seek to preclude Plaintiffs from introducing or otherwise putting before the jury, the following:

(1)     any evidence of alleged fraud, misrepresentations or illegal or allegedly improper behavior, etc. on the part of any of the Defendants that: (i) is unrelated to the claims alleged in the Amended Complaint and which are going to trial herein– i.e. that Defendants, "based on forged documents, **which Defendants knew were forged**," had "a practice and pattern of starting bogus legal proceedings based on false representations and solely for the purpose of injuring Plaintiffs and recovering unwarranted sums through extortion" (Exh. A, ¶¶13, 99; **emphasis in original**); (ii) that is not alleged to have proximately cause any of the losses that Plaintiffs seek to recover in this action, and that are properly recoverable under the statutes alleged by Plaintiffs;

(2)     evidence of complaints made by non-parties concerning Northern Leasing;

(3)     any evidence of an application to refinance a mortgage, allegedly made by Plaintiff Thomas Smith, and any evidence of the reasons why an application to refinance a mortgage, allegedly made by Thomas Smith, was denied;;

(4)     any evidence of an application to refinance a mortgage, allegedly made by Plaintiff Long Lim and any evidence of the reasons why that application, was denied;

(5)     any evidence of any application to obtain credit cards allegedly made by Long Lim; and

(6)     any evidence of the reasons why such applications were denied;

(7)     any evidence of any opportunity that Plaintiff Judson Russ allegedly had to purchase three checking cashing locations;

(8)     any evidence of the amount of profit that Judson Russ allegedly would have made if he had been able purchase three check cashing locations;

(9)     any evidence that an as yet unidentified "landlord" did not approve of Judson Russ's acquisition of three check cashing locations that he allegedly sought to purchase;

(10)    any evidence of the reasons why the "landlord" did not approve Judson Russ's purchase of the three check cashing locations that Judson Russ allegedly sought to purchase;

(11)    any evidence of the amount of profit that Judson Russ was allegedly earning from his existing stores at the time that he sought to acquire three check locations;

(12)    any expert testimony that the Plaintiffs failed to disclose during discovery;

(13)    any evidence of the cause of Thomas Smith's stroke, or that his stroke was caused by Defendant Northern Leasing;

(14)    any evidence of damages that were not the subject of Plaintiffs' Rule 26 disclosures or their expert's reports;

(15)    any evidence regarding Peri Kettler;

(16)    any evidence regarding Gordon Redner;

## RULES OF EVIDENCE APPLICABLE TO THESE MOTION

### C.    Rules 401, 402 and 403

Evidence that is not relevant is inadmissible.  Fed. R. Evid. 402.  Evidence is relevant if it has the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401; *U.S. v. Kaplan*, 490 F.3d 110 (2d Cir. 2007); *United States v. Holland*, 381 F.3d 80, 85 (2d Cir. 2004).

Under Fed. R. Evid. 403, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403; *See*, *e.g.*, *United States v. Awadallah*, *supra,* 436 F.3d at 131 (district court did not abuse discretion in barring evidence where "'the prejudicial effect of the proposed testimony substantially outweigh[ed] its probative value'" (cit. om.)); *Kaplan*, 490 F.3d at 121-122 (excluding evidence where "whatever slight probative value the testimony might have had was outweighed by the risk that the jury would draw improper inferences from the testimony" which would constitute "unfair prejudice"); *Kilarjian v. Horvath*, 379 F.2d 547, 548 (2d Cir. 1967) (no abuse of discretion where trial court excluded evidence where its prejudicial nature outweighed its probative value); *Sadler v. Moran Towing Corp.*, 2002 WL 1977604, at *1 (S.D.N.Y. Aug. 28, 2002) (excluding evidence that "would be of doubtful relevance, would be confusing, misleading, and would suggest, improperly, a willingness on defendant's part to settle the liability claim"; also excluding the evidence because "any probative value would be far outweighed by unfair prejudice and likely confusion"); *Yeboah v. U.S.*, 2000 WL 1876638, at *2 (S.D.N.Y. Dec. 26, 2000) (excluding evidence because "its 'probative value would be outweighed by…considerations of undue delay, waste of time, or needless presentation of cumulative evidence'" (cit. om.)).

## D.     Rule 404(b)

It is well settled in the Second Circuit that evidence of wrongful acts "may not be admitted merely to show the defendant's propensity to commit the act in question."  *Berkovitch v. Hicks*, 922 F.2d 1018, 1022 (2nd Cir. 1991); *Outley v. City of N.Y.*, 837 F.2d 587, 593-94 (2nd Cir. 1988) (holding that under Rule 404(b), evidence of plaintiff's litigious history was inadmissible); *Zubulake v. UBS Warburg LLC, et al.*, 382 F.Supp.2d 536, 541 (S.D.N.Y. 2005)

(holding that, in a sex discrimination suit, Rule 404(b) barred the admission of evidence relating

to plaintiff's performance deficiencies in prior employment); *Lombardo v. Stone*, No. 99 CIV.

4603, 2002 WL 113913, at *3 (S.D.N.Y. Jan. 29, 2002) ("[Rule 404(b)] prohibits the

introduction of certain character evidence to show that an individual has a certain predisposition,

and acted consistently with such predisposition during the event in question") (citation omitted).

 While evidence of other acts may be admitted for purposes other than to show propensity,

such evidence must be relevant and pass the balancing test proscribed by Rule 403. *Id.* at *4.

Moreover, in order to be admissible, the other acts must be "sufficiently similar" to the alleged

act. *Id.* (citations omitted).

## E.  Rules 602, 801 and 802

 Rule 602 provides: "A witness may not testify to a matter unless evidence is introduced

sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R.

Evid. 602. The Second Circuit and courts in this District have consistently precluded the

introduction of testimony when the witness lacks personal knowledge of the matter for which he

or she is testifying. *Leopold v. Baccarat, Inc.*, 174 F.3d 261, 271 (2nd Cir. 1999) (relying on Rule

602, the Second Circuit affirmed the District Court's exclusion of plaintiff's testimony regarding

other age-based firings by the defendant because plaintiff lacked personal knowledge of such

dismissals); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F.Supp2d 314,

321 n.4 (S.D.N.Y. 2009) (holding that testimony of lay witness regarding plaintiff's damages

was inadmissible under Rule 602 because witness lacked personal knowledge of damages); *Pro

Bono Investments, Inc. v. Gerry*, No. 03 Civ. 4347, 2005 WL 2429777, at *7 (S.D.N.Y. Sept. 30,

2005) (holding that witness' declaration regarding the execution of a note was inadmissible

under Rule 602 because witness was not present when the note was signed and therefore, lacked

the prerequisite personal knowledge).

Hearsay in out-of-court documents and verbal statements is inadmissible.  *E.g., Chapman v. Universal Motown Records Group*, 08 Civ. 3255, 2010 WL 517480 at *3 (S.D.N.Y. Feb 04, 2010) (holding that testimony regarding what someone else said or wrote on his website was inadmissible hearsay).  Hearsay statements should be excluded unless they fall within one of the exceptions set forth in rules.  *U.S. v. Ruffin*, 575 F.2d 346, 357-58 (2d Cir. 1978) (holding that testimony of witness as to what various documents in the land records in the county clerk's office said, was classic hearsay); *Spadaro v. McKeon*, 693 F. Supp. 2d 183, 190 (N.D.N.Y. 2010) (refusing to consider statements "having absolutely no factual support beyond the inadmissible hearsay testimony.").

## F.   Rule 1002

Rule 1002 provides: "To prove the content of a writing, recording or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these Rules or by Act of Congress."  Under this rule, a witness may not provide testimony as to the contents of a document such as a contract, without introducing the actual contract into evidence. *Acumed LLC v. Advanced Surgical Services, Inc.*, 561 F.3d 199 (3rd Cir. 2009) (testimony as to contents of party's contract with third parties was excluded); *DataMill, Inc. v. U.S.*, 91 Fed. Cl. 722, 737 (Fed. Cl. 2010) (statements in declaration were inadmissible since the best evidence of the contents of the documents were the documents themselves, not declarant's interpretations thereof); *U.S. v. Miller*, 248 Fed. Appx. 426, 429 (3d Cir. 2007) (hard copy of bank's security policies, rather than internal investigator's testimony about same, was best evidence to prove substance of bank's policies, in trial for embezzlement).

## ARGUMENT

### I.

### EVIDENCE OF DEFENDANTS' ALLEGED MISREPRESENTATIONS, FRAUD OR ALLEGEDLY ILLEGAL OR IMPROPER BEHAVIOR, ALLEGED BAD ACTS, ETC., THAT IS NOT DIRECTLY RELATED TO THE CLAIMS ALLEGED IN THE AMENDED COMPLAINT, OR THAT DID NOT PROXIMATELY CAUSE PLAINTIFFS' ALLEGED LOSSES, SHOULD BE EXCLUDED

The claims asserted by the Plaintiffs allege a specific fraudulent scheme that consists of starting "bogus legal proceedings" (Exh. A, ¶13), "[b]ased on forged documents, which Defendants knew were forged" (*id.* at ¶99; emphasis original), "solely for the purpose of injuring Plaintiffs and recovering unwarranted sums through extortion." *Id.* at ¶99. Plaintiffs further allege that "Defendants sought to intimidate Plaintiffs with dunning letters and phone calls, telling them that it would be more expensive for them to dispute Defendants's [sic] claims in New York City Civil Court than it would be to pay off Defendants." Exh. A, ¶13.

Now, instead of focusing and trying to prove what they have alleged – a pattern of trying to judicially enforce the terms of knowingly forged documents – Plaintiffs apparently plan to attempt to inundate the jury with – and have Defendants testify about -- alleged conduct that is unrelated to the claims Plaintiffs alleged, and which Plaintiffs will claim or insinuate is wrongful, misleading or fraudulent. Clearly, this evidence is intended to prejudice the jury by portraying the Defendants as "bad people", not to demonstrate that they have committed the offenses for which they have been charged in this case. *Awadallah*, *supra*, 436 F.3d at 131.

In addition to the property tax filing fee described above, in recent depositions Plaintiffs' attorneys also elicited testimony seeking to prove that the purchase option contained in a Northern Leasing equipment lease would be unfair *to other lessees* (though not to plaintiffs, none of whom claims to have attempted to exercise a purchase option) because it does not represent what counsel contends is the "fair market price" of the leased equipment. *See e.g.* Exh. B., p.

106-110.  Plaintiffs' attorneys have also elicited testimony about whether Northern Leasing was aware that certain employees of the independent sales organizations ("ISOs") that sell credit card processing equipment to merchants, who have direct contact with merchants, and who are authorized to offer Northern Leasing's equipment leasing program, were misrepresenting the terms of certain leases *to other lessees* (though not to Plaintiffs, who all claim that their leases were forged, and in most cases, claim that they had no dealings at all with any ISO).  *See e.g.* Exh. B, p. 141-144.  Plaintiffs have also sought to elicit testimony from Defendants that it would have been better to have each lessee initial each page of the lease, to avoid a claim by *other lessees* that they did not read each page of the lease.  Exh. B, p. 228-230.  Here, of course, none of the Plaintiffs claims to have read or signed any page of the lease, because his or her signature was forged.

Thus Plaintiffs apparently seek to place before the jury every criticism or allegation concerning the Defendants, rather than evidence that is material to the Plaintiffs' claims.  None of these other areas of inquiry that Plaintiffs have pursued is relevant to Plaintiffs' RICO claims, which, as noted above, are specifically limited to claims that Northern Leasing forged and seeks to enforce forged leases in Court. This evidence does not tend to "make the existence of any fact *that is of consequence to the determination of the action* more probable" (Fed.R. Evid. 401) (emphasis added) because this evidence has nothing to do with whether Northern Leasing has a practice of trying to enforce leases that it knows to be forged.  *Kaplan*, 490 F.3d at 121.

Evidence as to whether Northern Leasing's lease forms are misleading, unfair, or contain spaces for initials on all pages, are irrelevant to the claims asserted by the Plaintiffs because all of the Plaintiffs in this case claim that they never signed a Northern Leasing equipment lease, and that their signatures were forged.  However, if this evidence is allowed to be presented to the

jury, there is a strong likelihood that this highly prejudicial evidence will unduly influence and confuse the jury.  For that reason, it should be excluded under Rules 402 and 403 of the Federal Rules of Evidence.  It should be excluded under Rule 402 because it is not relevant to the claims that have been asserted in this case.  And it should be excluded under Rule 403 because even if it were marginally probative, its prejudicial effect will far outweigh any probative value that it may have.  *Kaplan*, 490 F.3d at 121-122.

### 1.   The Evidence Is Not Relevant To Plaintiffs' RICO Claims

To establish that a RICO injury came about "by reason of" a RICO violation, as required by 18 U.S.C. § 1964(c), a plaintiff must show that a predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well."  *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1991) (dismissing complaint for failure to allege that injuries were proximately caused by RICO predicate acts); *Hemi Group, LLC v. City of New York*, ___ U.S. ___, 130 S.Ct. 983, 984-985 (2010) (same). "Proximate cause for RICO purposes should be evaluated in light of its common-law foundations; it thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.' [cit. om.]. A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Id.* at 984-985*, quoting Holmes*, 503 U.S. at 271, 274, 112 S.Ct. 1311.  *See also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458, 126 S.Ct. 1991, 164 L.Ed. 2d 720 (dismissing the complaint where the conduct directly causing the harm was distinct from the conduct giving rise to the fraud).

In *Hemi Group*, the Supreme Court's most recent discussion of RICO proximate cause, the City of New York alleged that Hemi – an out-of-state cigarette retailer – engaged in a fraudulent scheme to deprive the City of taxes, by intentionally failing to file reports of its sales of cigarettes to New York City residents, as required by the Jenkins Act.  The City alleged that

the failure to file Jenkins Act reports made it impossible for the City to identify persons who owed taxes, and therefore, impossible to collect those taxes.

The Supreme Court dismissed the Complaint, holding that the RICO injury alleged – loss of tax revenues – was not proximately caused by the fraudulent scheme.  In doing so, the Court reaffirmed its *Holmes* and *Anza* decisions, which had held that the proximate cause element of RICO required a showing of more than a "but for" connection between the RICO predicate act and the alleged injury.  *Id.* 130 S.Ct at 989.

Here, any evidence that Plaintiffs may seek to introduce that is not directly related to the predicate acts alleged in the Amended Complaint would not satisfy either a "but for" or proximate cause analysis under *Hemi*, and should be excluded.  For example, even if Plaintiffs can prove that Northern Leasing's equipment lease forms are deceptive as to merchants who actually reviewed and signed them, because certain charges -- like the tax filing fee  -- are not specified, or that the purchase option provided for in Northern Leasing's equipment lease does not represent the "fair market price" of the equipment, that wrongful conduct (assuming that it could qualify as a RICO predicate act[4]) was not alleged as a predicate act in the Amended Complaint, and even if it was, it would not survive a motion to dismiss.  *Holmes*, *supra* (dismissing complaint for lack of proximate cause); *Hemi Group*, *supra* (same); *In re American Express Company Shareholder Litigation*, 840 F.Supp. 260, 264 (S.D.N.Y. 1993) (dismissing complaint alleging conduct having only a "tenuous relationship" to the RICO predicate acts).

---

[4]   *Sheridan v. Mariuz*, No. 07 Civ. 3313, 2009 WL 920431 (S.D.N.Y. April 6, 2009) ("Plaintiff cannot predicate his civil RICO claim on allegations of criminal activity that fall outside of the scope of criminal activity delineated in 18 U.S.C. § 1961. *See Spool*, 520 F.3d 178, 2008 WL 706580, at *4 ('The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1) ...')").

Plaintiffs' injuries, as alleged in the Amended Complaint, stem from Northern Leasing's alleged practice of seeking to enforce forged leases through dunning letters, telephone calls, damaging credit, and commencing lawsuits in the New York City Civil Court.  That is <u>all</u> that is alleged in the Amended Complaint.  Evidence that other lessees were misled by an agreement that these Plaintiffs didn't sign, and or that other lessees were injured by an allegedly unfair purchase option, or that it would have been better to have other lessees initial each page of a four page lease, is simply not relevant to the claims in this action, is prejudicial to Defendants, is confusing to the jury, and should be excluded.  Whatever slight probative value the evidence might have is outweighed by the risk that the jury would draw improper inferences from the testimony.  *Kaplan*, 490 F.3d at 121-122.

### 2.        The Evidence Is Not Relevant To Plaintiffs' Section 349 Claim

For many of the same reasons discussed above with respect to Plaintiffs' RICO claims, the evidence that Plaintiffs may to seek to introduce is also not relevant to Plaintiff's Section 349 Claim.  Section 349 uses the same "by reason of" language as RICO to describe the proximate cause element.[5]  Thus, the Courts have interpreted Section 349 to require a plaintiff to prove that his injuries were proximately caused by the deceptive practice alleged in the Complaint,  *Small v. Lorillard Tobacco Co., Inc.*, 252 A.D.2d 1, 679 N.Y.S.2d 593 (1st Dep't  1998), *aff'd*, 94 N.Y.2d 43, 698 N.Y.S.2d 615 (1999); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578 (W.D.N.Y. 2000) (claims under Section 349 require proximate causation); *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 785 N.Y.S.2d 399 (2004) (the New York State Court of Appeals interpreted Section 349 to include similar direct

---

[5]    Section 349(h) provides a private cause of action for "any person who has been injured <u>by reason of</u> any violation of this section . . .."  (emphasis added).  *Compare* 19 U.S.C. §1964(c) (RICO provides a private cause of action for "[a]ny person injured in his business or property <u>by reason of</u> a violation of section 1962 of this chapter."  (Emphasis added).

injury requirement as the Supreme Court in *Hemi Group* found that RICO required), not by some other conduct.

Because Section 349 contains the same proximate cause requirement as RICO, any evidence of wrongdoing (assuming that such wrongdoing constitutes an actionable deceptive practice) that is different than that alleged in the Amended Complaint, should be excluded.

## II.

### PURPORTED DAMAGES FOR LOSS OF TIME SPENT, REDUCED VALUE OF LIFE, AND LOSS OF CREDIT EXPECTANCY ARE NOT RECOVERABLE UNDER RICO

RICO permits recovery only for injury to a Plaintiff's business or property.  18 U.S.C. § 1964(c).  Damages allegedly arising from reduced value of life, loss of time spent, and loss of credit expectancy are not injuries to business or property, and are not recoverable under RICO, for the reasons discussed at length at Point I.A of the Memorandum Of Law In Support Of Defendants' Motion In Limine To Exclude The Testimony Of Plaintiffs' Damage Expert, Dr. Stan V. Smith Defendants, dated November 3, 2010 (dkt #130-9).  Any testimony or other evidence in support of such damages should therefore be excluded, and Plaintiffs' counsel should not be permitted to refer to such damages to the jury.

## III.

### DAMAGES FOR LOSS OF TIME SPENT, LOSS OF CREDIT EXPECTANCY AND REDUCTION IN VALUE OF LIFE ARE NOT RECOVERABLE UNDER SECTION 349

Section 349 of the New York General Business Law permits "any person who has been injured by reason of any violation of this section … to recover his *actual damages*…." N.Y. G.B.L. §349(h) (2010) (emphasis added).  For the reasons set forth in Point I.B of the Memorandum Of Law In Support Of Defendants' Motion In Limine To Exclude The Testimony Of Plaintiffs' Damage Expert, Dr. Stan V. Smith Defendants, dated November 3, 2010 (dkt

#130-9), Plaintiffs are precluded from recovering damages for loss of time spent, loss of credit

expectancy, and loss of enjoyment of life because these are theoretical damages, which do not

constitute actual damages or losses, as required by Section 349.  Any testimony or other

evidence in support of such damages should therefore be excluded, and Plaintiffs' counsel should

not be permitted to refer to such damages to the jury.

IV.

### DAMAGES FOR INJURIES THAT WERE ALLEGEDLY INCURRED PRIOR TO FEBRUARY 24, 2003 ARE NOT RECOVERABLE UNDER SECTION 349

Certain of the Plaintiffs are barred from recovering some of their claimed damages

because they were allegedly sustained before February 24, 2003, and therefore, fall outside the

applicable statute of limitations, for the reasons set forth in Point I.C of the Memorandum Of

Law In Support Of Defendants' Motion In Limine To Exclude The Testimony Of Plaintiffs'

Damage Expert, Dr. Stan V. Smith Defendants, dated November 3, 2010 (dkt #130-9).   Any

testimony or other evidence in support of such damages should therefore be excluded, and

Plaintiffs' counsel should not be permitted to refer to such damages to the jury.

V.

### EVIDENCE OF COMPLAINTS MADE BY NON-PARTIES CONCERNING NORTHERN LEASING SHOULD BE EXCLUDED

At the trial of this action, Defendants anticipate that Plaintiffs will seek to introduce

purported evidence of complaints made by non-parties concerning Northern Leasing.  This

material may be in the form of unsubstantiated complaints to the Better Business Bureau, to the

offices of the Attorneys General of certain states, internet postings, and correspondence to

Northern Leasing, among others.[6]  This evidence should be excluded under Fed. Rules of Evid. 602, 802 and 403.

First, none of these documents is authenticated, and Plaintiffs will not be calling any of the authors of these writings as witnesses.  The mere fact that some of the writings came out Northern Leasing's files is not sufficient to authenticate them as evidence.  Fed. R. Evid. 901; *The Gillette Co. v. Wilkinson Sword, Inc.*, No. 89 CIV. 3586, 1989 WL 82453, at *2-3 (S.D.N.Y. July 6, 1989) (holding that consumer use study was inadmissible because it was not properly authenticated).

Second, Plaintiffs will evidently attempt to offer these documents to prove that the assertions set forth therein are true.  As such, these documents constitute base hearsay, and should be excluded for that reason.  *Park West Radiology v. CareCore Nat. LLC*, 675 F.Supp.2d 314 (S.D.N.Y. 2009) (evidence of complaints in earlier litigations constituted inadmissible hearsay, and in any event, prejudicial value outweighed probative value; emails exchanged between non-parties concerning defendants' business practices "are inadmissible hearsay and, because not kept as a regular business practice, not subject to the business records exception. To the extent that portions of the email may be offered not for the truth of the matter asserted but as evidence of the nonparty writers' state of mind, they are not relevant, and therefore not admissible.").  Even if Plaintiffs offer such a document that they received in discovery from Northern Leasing's files, that does mean that it is Northern Leasing's business record.  *U.S. v. Doyle*, 130 F.3d 523, 546 (2d Cir. 1997).  There is no other exception to the hearsay rule that would be applicable.

---

[6]   An example of this type of evidence is contained in Plaintiffs' deposition exhibit 178 (Exh. G), which is an email containing a string of alleged complaints made by non-parties, many of which were apparently copied from anonymous postings on the internet.

# VI.

### EVIDENCE OF AN APPLICATION TO REFINANCE A MORTGAGE, ALLEGEDLY MADE BY THOMAS SMITH, OR OF THE REASONS WHY SUCH APPLICATION WAS DENIED, SHOULD BE EXCLUDED

As indicated in Plaintiffs' expert report regarding Mr. Smith (Exh. C), Plaintiffs will seek to introduce evidence that Thomas Smith attempted to refinance an existing 5.5% mortgage at a 4.5% rate, and that his attempt was denied due to negative marks on his credit report made by Northern Leasing. They will claim that the additional interest paid and to be paid by Thomas Smith constitutes damages for which Defendants are liable. This evidence should be excluded for several reasons.

### A.      Mr. Smith Has Produced No Documentary Evidence In Discovery

First, Plaintiffs have produced no documents in support of these claims in discovery, and Mr. Smith is barred from testifying as to their contents by Federal Rules of Evidence 1002. *Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*, 614 F.Supp,2d 481, 484-85 (S.D.N.Y. 2009) (holding that copies of letters were inadmissible because they violated the "best evidence rule"); *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 305 (S.D.N.Y. 1996) (stating that the best evidence rule requires that a party seeking to prove the contents of a writing must establish a proper excuse for the non-production of the document and that the original did exist.) (internal quotations omitted); *In re Macmillan, Inc.*, 186 B.R. 35, 47 (Bankr. S.D.N.Y. 1995) ("the rule requires that parties that seek to prove what the contents of a writing are must produce the original writing unless a federal statute or another evidence rule affords them an exception."). Mr. Smith has not produced his existing mortgage documents.[7] He has

---

[7]   On November 2, 2010, during a conference call, the Court directed Smith to produce his existing mortgage note.

produced no documentary evidence showing what he has paid on that mortgage, or what portion of the amounts paid constitutes interest.  He has produced no documentary evidence showing that he applied to refinance his existing mortgage, or the terms of the mortgage that he allegedly applied for.  He has produced no documentary evidence that the application was denied, or the reasons why the application was denied.  Mr. Smith was asked to produce these documents in discovery, and he refused.  Accordingly, he should be precluded from introducing any such documents in evidence.  <u>See</u> Fed. R. Civ. Pro. 37(c)(1);[8] *Kam Hing Enterprises, Inc. v. Wal-Mart Stores, Inc.*, No. 09-1373, 2010 WL 23049 at *2 (2d Cir. Jan. 6, 2010) (district court properly excluded evidence pursuant to Rule 37(c)(1) where defendants never produced underlying documentation on which evidence was based); *Schratz v. Potter*, 2008 WL 5340992 (W.D.N.Y. Dec. 19, 2008) (precluding evidence pursuant to Rule 37(c)(1) based on plaintiff's failure to produce such documents during discovery); *Design Strategies, Inc. v. Davis*, 367 F.Supp.2d 630, 635 (S.D.N.Y. 2005) ("Given that [plaintiff] has not presented, and the Court has not found, a substantial justification for its failure to disclose the required discovery, preclusion of any evidence of lost profits is mandatory under Rule 37(c)(1).").

**B.**     **Fed. R. Evid. 1002 Bars Smith From Testifying**
           **<u>As To The Contents Of Mortgage Documents</u>**

Not only have Plaintiffs failed to produce any of these documents in discovery, but Plaintiffs' attorneys have also indicated that they do not plan introduce any documentary evidence to prove the contents of Mr. Smith's mortgage, or the terms of the mortgage refinancing for which he was allegedly denied.

---

[8] Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Under Federal Rules of Evidence 1002, Mr. Smith may not testify as to the contents of either his mortgage, or of the mortgage that he allegedly applied for. *Acumed*, 561 F.3d 199 (testimony as to contents of party's contract with third parties was excluded).

## C.   Mr. Smith's Proposed Testimony Concerning The Reasons Why A Lender Denied His Application To Refinance Constitutes Hearsay

Mr. Smith apparently intends to testify not only as to the fact that his application to refinance a mortgage was denied, but that the application was denied due to negative marks on his credit report caused by Northern Leasing. Mr. Smith's proposed testimony concerning the reasons why a non-party lender denied his mortgage refinance application constitutes inadmissible hearsay. *McMillan v. Experian, et al*., 170 F.Supp2d 278, 281 (D.Conn. 2001) ("If plaintiff's basis for his knowledge of the reason for the denial is what a Colonial Penn representative told him, his testimony on that fact would be inadmissible hearsay because offered for the truth of its contents"); *Earhart v. Countrywide Bank, FSB*, No. 3:08-cv-238, 2009 WL 2998055, at *3 (Sept. 15, 2009) (holding that statements made by plaintiff's mortgage broker regarding lenders' denials of plaintiff's mortgage applications were inadmissible hearsay); *Chiang v. Verizon New England Inc*., No. 06-cv-12144, 2009 WL 102707, at *5 (D. Mass Jan. 13, 2009) ("I similarly sustain Verizon NE's objection to Chiang's hearsay testimony that a banker personally told him his loan was denied based on Verizon NE's negative credit reports"); *Gurwin v. UBS Financial Services, Inc.*, No. 07-10323, 2008 WL 302314, at *5 (E.D. Mich. Feb. 4, 2008) ("These statements allegedly made to Plaintiff by Ms. Reid regarding his loan denial constitute hearsay and do not fall under any hearsay exception"); *Williams v. Equifax Credit Information Services*, No. 4:07-00322, 2007 WL 4458914, at *3 (D. S.C. Dec. 17, 2007) ("The Court has not been provided with a copy of the deposition testimony of the plaintiff. However,

even if he did testify as to what the loan officer told him as to the reason the loan was denied, this would clearly be hearsay").

The only way that Mr. Smith could have any personal knowledge as to the reasons why his mortgage application was denied would be if a representative of the lender[9] told him why his application was denied, or if he received a document indicating the reasons why his mortgage application was denied. If he attempts to testify about a conversation with the lender, Mr. Smith will be presenting evidence of an out-of-court statement for the truth of that statement, which is classic hearsay for which no exception applies. *McMillan*, 170 F.Supp2d at 281; *Earhart*, 2009 WL 2998055, at *3; *Chiang*, 2009 WL 102707, at *5; *Gurwin*, 2008 WL 302314, at *5. If he tries to testify about the contents of a writing, he will be testifying about an out-of-court document for the truth of its contents. Such testimony would not only be inadmissible hearsay under Fed.R. Evid. 802 (*id*.), it would also be inadmissible under Fed.R. Evid. 1002.

## VII.

### EVIDENCE OF THE REASONS WHY LUNG LIM'S APPLICATIONS FOR CREDIT WERE DENIED SHOULD BE EXCLUDED

As indicated in Plaintiffs' expert report regarding Mr. Lim (Exh. D), Plaintiffs will seek to introduce evidence that Lung Lim attempted to refinance an existing mortgage, and that he applied for credit cards, and that both attempts were denied due to negative marks on his credit report made by Northern Leasing. For the same reasons that similar evidence regarding Thomas Smith should be excluded[10], set forth above, evidence of any denial of credit and/or of the reasons why Mr. Lim's applications for credit were denied by non-parties, should be excluded.

---

[9]   Plaintiffs have not listed any representative of the as yet undisclosed lender as a witness.

[10]   *See* Point VI.C, *supra*.

# VIII.

## EVIDENCE REGARDING JUDSON RUSS'S ATTEMPT TO PURCHASE THREE CHECK CASHING LOCATIONS, THE PROFIT HE WOULD HAVE MADE, AND THE REASONS WHY THE "LANDLORD" WOULD NOT ACCEPT RUSS AS A PURCHASER, SHOULD BE EXCLUDED

Plaintiffs' expert's report regarding Judson Russ (Exh. E) indicates that Russ intends to testify that he attempted to purchase three check cashing locations, that those check cashing locations would have generated $169,000 per year in profit[11], and that Russ was unable to complete that purchase because the as yet unidentified "landlord" would not approve Russ as a purchaser, due to negative credit entries on Russ' credit report caused by Northern Leasing. *Id.* at p. 3. This testimony should be excluded for several reasons.

### A.     Russ Has Produced No Documentary Evidence In Discovery

First, as with the claims made by Thomas Smith, discussed above, Mr. Russ has produced no documents to support any of these claims, and Mr. Russ is barred from testifying as to the contents of these documents by Federal Rules of Evidence 1002. *Caroll*, 614 F.Supp.2d at 484-485; *Allstate Ins. Co.*, 948 F. Supp. at 305; *Macmillan*, 186 B.R. at 47. Mr. Russ has not produced any document indicating that any such proposed transaction actually took place, or the reasons why it didn't close. He has not produced a contract (signed or unsigned), or any correspondence that is referable to the transaction. He has not produced any document that identifies the seller of the three check cashing locations, where the stores were located, or any

---

[11]  Apparently, Mr. Russ plans to testify that two of the locations would have generated at least $72,000 per year in profit, and that one of them would have generated $25,000 in profit, supposedly based on his experience with his "successful" check cashing operations. Exh. E, p. 3. Mr. Russ has provided no documentation to support the claim that his "successful" stores generated $72,000 per year in profit, or even that he owned any stores.  On November 2, 2010, during a conference call, the Court directed Russ to produce tax returns for his existing businesses for two years before and two years after the injury that he claims to have sustained in this case.

financial document reflecting the amount of income that those locations were producing, or the

costs associated with their operations.  Nor has he produced any document reflecting what he

would have paid to acquire the three locations.  Russ should be precluded from introducing any

such documents in evidence, and from testifying concerning their contents.  See Fed. R. Civ. Pro.

37(c)(1).[12]

**B.    Russ's Testimony Concerning The Profits That**
**       The Three Stores Would Have Generated Should Be Excluded**

Mr. Russ should not be permitted to testify as to the amount of profits that the three stores

would have generated for several reasons.  First, Mr. Russ lacks personal knowledge as to what

profits those stores were generating.  Fed. R. Evid. 602; *Compania Embotelladora Del Pacifico,*

*S.A. v. Pepsi Cola Co.*, 650 F.Supp.2d 314, 321 n.4 (S.D.N.Y. 2009) (holding that testimony of

lay witness regarding plaintiff's damages was inadmissible under Rule 602 because witness

lacked personal knowledge of damages).  To the extent that he claims to have knowledge based

on his review of financial documents concerning the stores, his testimony constitutes hearsay in

that he will be testifying as to the truth of contents of those out-of-court documents.  Fed. R.

Evid. 802.  *McMillan*, 170 F.Supp2d at 281; *Earhart*, 2009 WL 2998055, at *3; *Chiang*, 2009

WL 102707, at *5; *Gurwin*, 2008 WL 302314, at *5; *Ruffin*, 575 F.2d at 357-58.   The financial

documents (e.g. financial statements, tax returns, general ledger) are the best record of the stores'

financial performance.  Mr. Russ may not testify as to their contents.  *Acumed*, 561 F.3d 199

(testimony as to contents of party's contract with third parties was excluded).

Moreover, any testimony by Mr. Russ as to his projection of the profit that the stores

would have generated would be pure speculation.  Notably, Plaintiffs have retained an expert

economist to provide expert testimony as to Mr. Russ's lost profit damages.  Yet, they did not

---

[12]  *See* cases cited at Point VI.A., *supra*.

ask their expert to analyze the financial records of the three stores to prepare a projection of the profits that they would have generated for Mr. Russ. Rather, Plaintiffs' expert simply adopted the projection provided to him by Mr. Russ, without reviewing *any* documents. The expert's testimony is thus wholly dependent on the testimony of Mr. Russ.

Mr. Russ is not qualified to provide expert testimony concerning lost profits, and in any event, Plaintiffs have not identified him as an expert witness, or provided the disclosures that would be required to qualify him as an expert witness. Fed.R. Evid. 702. Testimony concerning the amount of profit that would have been generated is not a proper subject for lay testimony, particularly when the lay witness does not base his opinions on documents reflecting the actual financial performance of the stores. Any such testimony as to lost profits damages will be entirely speculative, and should be excluded for that reason as well. *Schonfeld v. Hilliard*, 218 F.3d 164 (2nd Cir. 2000) ("Projections of future profits based upon 'a multitude of assumptions' that require 'speculation and conjecture' and few known factors do not provide the requisite certainty.") *quoting Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 262, 502 N.Y.S.2d 131, 132 (1986).

## C.    Fed. R. Evid. 1002 Bars Russ From Testifying As To The Contents Of Contract Documents

Not only have Plaintiffs failed to produce any documents concerning the transaction about which Russ apparently intends to testify, but Plaintiffs' attorneys have also indicated that they do not plan to introduce any documentary evidence to prove the terms of the allegedly aborted transaction that gives rise to Mr. Russ's claim of lost business profits.

Federal Rules of Evidence 1002 provides that "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress." Under this rule, Mr. Russ may not

may not testify as to the contents of a contract or other document that sets out the terms under which he was alleging going to purchase three check cashing locations.   The best evidence of the terms of the transaction are the documents.  *Caroll*, 614 F.Supp.2d at 484-485; *Allstate Ins. Co.*, 948 F. Supp. at 305; *Macmillan*, 186 B.R. at 47.

**D.   Mr. Russ's Proposed Testimony Concerning The Reasons Why The "Lender" Would Not Accept Russ As A Purchaser Constitutes Hearsay**

Mr. Russ apparently intends to testify not only as to the "fact" that some unidentified landlord would not approve Russ's purchase of three check cashing locations, but as to the reason why the "landlord" would not accept Russ as a purchaser – allegedly due to negative marks on Russ's credit report caused by Northern Leasing.[13]  Mr. Russ's proposed testimony concerning the reasons why an as yet unidentified "landlord" would not accept Russ as a purchaser constitutes inadmissible hearsay, and should be excluded for the same reasons that similar testimony proffered on behalf of Mr. Smith should be excluded.[14]

The only way that Mr. Russ could have any personal knowledge as to the reasons why the "landlord" would not accept Russ as a purchaser would be if the "landlord"[15] or prospective seller told him the reason, or if he received a document indicating the reasons why the landlord would not accept him.  If Mr. Russ attempts to testify about a conversation with the landlord or seller, Mr. Russ will be presenting evidence of an out-of-court statement for the truth of that

---

[13]   Presumably, the "landlord's" approval was required because Mr. Russ was going to take over existing store leases.  Of course, we don't even know if there were any store leases involved, or whether they required the landlord's consent to a sublease or assignment, because Mr. Russ has not produced those leases.  Mr. Russ should be precluded from testifying as to the contents of any leases that are not in evidence.  Fed.R. Evid. 1002 and 802.

[14]   *See* cases cited at Point VI.C, *supra*.

[15]   Plaintiffs have not listed the "landlord" as a trial witness.  Nor have they taken the "landlord's" deposition.

statement, which is classic hearsay for which no exception applies. *McMillan*, 170 F.Supp2d at 281; *Earhart*, 2009 WL 2998055, at *3; *Chiang*, 2009 WL 102707, at *5; *Gurwin*, 2008 WL 302314, at *5. If he tries to testify about the contents of a writing, he will be testifying about an out-of-court document for the truth of its contents.

**IX.**

**PLAINTIFF SHOULD BE PRECLUDED FROM PRESENTING
ANY EVIDENCE OF DAMAGES THAT IS NOT IDENTIFIED IN THEIR EXPERT'S
REPORTS AND THEIR RULE 26 DAMAGE DISCLOSURES**

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires Plaintiffs to produce a calculation of damages and documentary evidence in support of that calculation. Plaintiffs provided a belated Rule 26 damage disclosure on October 28, 2010 (Exh. F), in which they disclosed that the damages they intend to prove are the damages described in their experts' reports.

In those disclosures, none of the Plaintiffs (other than Thomas Smith) claimed that they sustained damages in the form of additional interest actually paid. These plaintiffs should therefore be precluded from introducing such evidence. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293-98 (2d Cir. 1996) (even absent bad faith, precluding evidence of alleged lost damages because, *inter alia*, no computation or evidence of such damages was produced).

Plaintiffs's disclosures also do not purport to include as damages the value of the time that they actually spent in dealing with Northern Leasing. Rather, their expert has opined as to the cost that they would have incurred if they had hired a clerk to deal with the issues allegedly caused by Northern Leasing, even though no plaintiff claims to have hired such a clerk. Plaintiffs should not be able to formulate new theories of damages on the eve of, or during the trial. Accordingly, Plaintiffs should not be permitted to introduce evidence as to the value of the time that they spent dealing with the issues caused by Northern Leasing. *Id.*

## X.

## EVIDENCE REGARDING THE CAUSE OF THOMAS SMITH'S STROKE, OR THAT HIS STROKE WAS CAUSED BY NORTHERN LEASING, SHOULD BE EXCLUDED

Plaintiffs' expert report regarding Thomas Smith indicates that Mr. Smith intends to testify that he had a stroke, and that the stroke was caused, at least in part, by the stress he felt as a result of his dealings with Northern Leasing.  Plaintiffs have not identified any expert witness who is going to testify as to the cause of Mr. Smith's stroke, and there is no indication that Mr. Smith has any expertise to testify as to the cause of his stroke.

Clearly, any testimony by Mr. Smith that his medical condition was caused by Northern Leasing will be extremely prejudicial to Defendants, and that prejudice will far outweigh the minimal probative value that any such testimony will have.  Indeed, because Mr. Smith has no expertise to give expert testimony as to the cause of his medical condition, that testimony would have no probative value at all.  That testimony should be excluded under Fed.R. Evid. 703.

## XI.

## EVIDENCE REGARDING PERI KETTLER SHOULD BE EXCLUDED

Plaintiffs' attorneys have indicated that they do not intend to introduce any evidence regarding, Peri Ketter, who has apparently abandoned her claims in this action.  She did not appear for deposition, Plaintiffs' expert has not submitted a report concerning any damages allegedly sustained, and she is not listed as a witness on Plaintiffs' witness list.  For all of these reasons, the Court should preclude Plaintiffs from introducing any evidence regarding Peri Kettler at trial.  Fed. R. Civ. P., Rule 37(d); 26(a)(1)(A)(iii).

**XII.**

**EVIDENCE REGARDING GORDON REDNER SHOULD BE EXCLUDED**

As noted above, the fraudulent scheme alleged in the Amended Complaint involves the commencement of fraudulent lawsuits based on documents that Defendants knew to be forged. Exh. A, ¶¶ 13, 99.

Northern Leasing never sued Gordon Redner, and Redner does not claim that he was sued by Northern Leasing.  Accordingly, he cannot establish that he was injured by the RICO violation alleged, and he should be precluded from introducing any evidence in support of his claims.

**CONCLUSION**

For the reasons stated above, this Court should grant Defendants' motion *in limine*.

Dated: New York, New York
       November 8, 2010

MOSES & SINGER LLP

By: _____/s/_____
Robert D. Lillienstein, Esq. (RL-4585)
Declan M. Butvick, Esq. (DB-8289)
405 Lexington Avenue
New York, New York  10174
Tel.: (212) 554-7807
Attorneys for Defendants

847866v5  011082.0121                                    27