**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler,
Gordon Redner, and Thomas J. Smith,

|  | |
|---|---|
| Plaintiffs, | Docket No.<br>06-CV-1625 (JSG) |

      vs.

Northern Leasing Systems, Inc., Jay Cohen, Rich Hahn,
and Sara Krieger

                         Defendants

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

Dated: New York, New York
      December 30, 2010

**Chittur & Associates, P.C.**
286 Madison Avenue, Ste. 1100
New York, NY 10017
Tel: (212) 370-0447
Fax: (212) 370-0465
Attorneys for Plaintiffs and the Class

TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.     The Applicable Principles For Determining a Reasonable Award of Fees and
       Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.    The Award Sought is Fair and Reasonable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.     The Time Spent Was Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.     The Rates Charged Are Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       C.     The *Goldberger* Factors Support the Award Sought. . . . . . . . . . . . . . . . . . 13

              1.     The Time and Labor Expended. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

              2.     The Magnitude and Complexities of the Litigation. . . . . . . . . . . . . . 15

              3.     The Risks of the Litigation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

              4.     The Quality of Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              5.     The Results Achieved Justify the Award.. . . . . . . . . . . . . . . . . . . . . 18

              6.     Public Policy Considerations Support the Requested Fee. . . . . . . . . . . 20

III.   A Multiplier of Four Is Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV.    Counsel Should Be Reimbursed for Litigation Expenses Reasonably Incurred. . . . . . . 23

V.     Plaintiffs are "Prevailing Parties" and Hence, the Individual Defendants Are
       Jointly and Severally Liable For Any Fee Award Herein. . . . . . . . . . . . . . . . . . . . 24

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

TABLE OF AUTHORITIES

<u>Cases</u>

*Adorno v. Port Authority of New York and New Jersey*,
685 F.Supp.2d 507, 511 (S.D.N.Y.2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ames v. Ohle*,
WL 5055893 (E.D. La. Dec. 1, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182, 189 (2nd Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Avalon Cinema Corp. V. Thompson*,
689 F.2d. 137, 139 (8th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*,
36 F. Supp. 2d 560, 580 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Brady v. Wal-Mart Stores, Inc.*,
2010 WL 4392566 (E.D.N.Y. Oct. 29, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*City of Riverside v. Rivera*,
477 U.S. 561, 580 n.11 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Colbert v. Furumoto Realty, Inc.*,
144 F.Supp.2d 251, 262 (S.D.N.Y.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*D'Jamoos v. Griffith*,
340 F. App'x. 737, 741 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*DeMunecas v. Bold Food, LLC*,
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Detroit v.  Grinnell Corp.*,
495 F.2d 448, 470 (2nd Cir.  1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*DiBella v. Hopkins*,
403 F.3d 102, 120 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*DiFilippo v. Morizio*,
759 F. 2d 231, 235-36 (2nd Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

-i-

*Farbotko v. Clinton County of N.Y.,*
433 F.3d 204, 209 (2d Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Farbotko v. Clinton County of New York,*
433 F.3d 204, 209 (2d Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Goldberger v. Integrated Res., Inc.,*
209 F.3d 43, 50 (2d Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 16, 22

*Graham v. Sauk Prairie Police Comm.,*
915 F.2d. 1085, 1109 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Grant v. Martinez,*
973 F.2d 96, 99 (2nd Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Grievson v. Rochester Psychiatric Ctr.,*
2010 WL 3894983 (W.D.N.Y. Sept. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.,*
995 F.2d 414, 420 (3rd Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hicks v. Morgan Stanley & Co.,*
2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 21

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,*
No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) . . . . . . . . . . . . . . . . 17

*In re AOL Time Warner S'holder Derivative Litig.,*
2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Comverse Technology, Inc.  Securities Litig.,*
2010 WL 2653354 (E.D.N.Y. Jun 24, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436, 467 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Merrill Lynch Tyco Research Sec. Litig.,*
249 F.R.D. 124, 141 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297, 363 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re RJR Nabisco, Inc.  Sec.  Litig.*,
1992 WL 210138 (S.D.N.Y. Aug 24, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 20, 23

*In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*,
2008 WL 2600364 (E.D. Pa. June 26, 2008), *aff'd*, 579 F.3d 220 (3d Cir. 2009), *cert. denied*, 130
S. Ct. 1546 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Warner Commc'n Sec. Litig.*,
618 F.Supp. 735, 747-48 (S.D.N.Y.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*,
2010 WL 3290965 (S.D.N.Y. Aug. 11, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Johnson v. Kay*,
742 F.Supp. 822, 837 (S.D.N.Y.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Johnson v. Univ. Coll. Of Univ. Of Ala in Birmingham*,
706 F.2d 1205, 1208 (11th Cir. 1983).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748, 764 (2d Cir.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 23

*Lochren v. County of Suffolk*,
344 F. App'x. 706, 709 (2d Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*LV v. New York City Dept. of Educ.*,
700 F. Supp. 2d 510, 526-27 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*M.C., ex rel. Mrs. C. v. Voluntown Bd. of Educ.*,
56 F. Supp. 2d 243, 260 (D. Conn. 1999) *rev'd in part on o'r gr, M.C. ex rel. Mrs. C. v.
Voluntown Bd. of Educ.*, 226 F.3d 60 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Maley v. Del Global Techs. Corp.*,
186 F.Supp.2d 358, 369 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Malletier v. Apex Creative Int'l Corp.*,
687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McDaniel v. County of Schenectady*,
595 F.3d 411, 423 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*McDow v. Rosado*,
657 F.Supp.2d 463, 467 (S.D.N.Y.2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Missouri v. Jenkins*,
491 U.S. 274, 284 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Morris v. Eversley*,
343 F.Supp.2d 234, 245 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Group Int'l, LLC*,
2010 WL 2143661 (S.D.N.Y. Feb. 24, 2010) *report and recommendation adopted in part,
rejected in part on o'r gr*, 2010 WL 2158294 (S.D.N.Y. May 27, 2010) . . . . . . . . . . . . . . . . . . 10

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
74 F. Supp. 2d 213, 215 (E.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Natural Res. Def. Council, Inc. v. Fox*,
129 F.Supp.2d 666, 675 (S.D.N.Y.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ne. Women's Ctr. v. McMonagle*,
889 F.2d 466, 474 (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*New Leadership Comm. v. Davidson*,
23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Pinkham v. Camex, Inc.*,
84 F.3d 292, 294 (8th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Planned Parenthood of Cent. New Jersey v. Attorney General*,
297 F.3d 253, 272 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Polk v. New York State Dep't of Corr. Serv's.*,
722 F.2d 23, 25 (2d Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Proctor v. PMR Law Group*,
2010 WL 4174723 (W.D.N.Y. Oct. 25, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Qantum Communications Corp. v. Star Broad., Inc.*,
491 F. Supp. 2d 1123, 1135 (S.D. Fla. 2007) *aff'd*, 290 F. App'x. 324 (11th Cir. 2008). . . . . . . . 8

*Rabin v. Concord Assets Group, Inc.*,
1991 WL 275757, at *2 (S.D.N.Y. Dec 19, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Rahman v. The Smith & Wollensky Rest. Group, Inc.*,
2008 WL 1899938 (S.D.N.Y. Apr. 29, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ramirez v. New York City Off-Track Betting Corp. .*,
1997 WL 160369, at *2 (S.D.N.Y. Apr.3, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Reiter v. MTA N.Y. City Transit Auth.*,
457 F.3d 224, 232 (2d Cir.2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
977 F.2d 47, 53 (2d Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Roberson v. Giuliani*,
346 F.3d 75, 82 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Rodonich v. Senyshyn*,
52 F.3d 28, 32-33 (2d Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Serricchio v. Wachovia Sec., LLC*,
258 F.R.D. 43, 43-47 (D.Conn.2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Silver v. Law Offices Howard Lee Schiff, P.C.*,
2010 WL 5140851 (D. Conn. Dec. 16, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*SNET v. Global Naps, Inc.*,
2008 WL 1848899, at *2-4 (D.Conn. Apr.25, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Steinberg v. Nationwide Mut. Ins. Co.*,
612 F.Supp.2d 219, 224 (E.D.N.Y.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Stirral v. Ace Audio/Visual, Inc.*,
2007 WL 2229993 (S.D.N.Y. Jul.31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Stirrat v. Ace Audio/Visual, Inc.*,
2007 WL 2229993, at *2 (E.D.N.Y. July 31, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261, at * 3 (S.D.N.Y. May 14, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Terminate Control Corp. v. Horowitz,*
28 F.3d 1335, 1343 (2d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Wong v. Hunda Glass Corp.,*
2010 WL 3452417 (S.D.N.Y. Sept. 1, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Zito v. Leasecomm Corp.,*
2003 U.S. Dist. Lexis 17236 at *14 (S.D.N.Y. Sept. 30, 2003) . . . . . . . . . . . . . . . . . . . . . 15

Statutes

18 U.S.C.A. § 1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

42 U.S.C. §2005e-5(k). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

PRELIMINARY STATEMENT

This action arose out of defendants' racketeering scheme to intimidate out-of- state individuals into paying tribute to Defendants by commencing fraudulent lawsuits in New York City Civil Court for relatively small sums of money, typically under $3,000.  Defendants were aware well before bringing such actions that the documents underlying Defendants' claims against Plaintiffs were forged.  Nevertheless, Defendants commenced and persisted in these small claims proceedings - and even obtained fraudulent default judgments - in order to harass, intimidate, and thereby extort money from Plaintiffs through threats of expensive long-distance litigation, of damage to credit rating, and/or entry of default judgments.

After thwarting Defendants successfully in the City Civil Court, Plaintiffs' counsel brought this action to hold Defendants accountable under federal racketeering laws, and stop Defendants' scandalous misuse of New York's judicial system.  Plaintiffs asserted claims under the federal racketeering statute, 18 U.S.C. §1962, and New York's Anti-Deceptive Trade Practices Act, N.Y.G.B.L., §349, and sought compensatory, treble and/or punitive damages, together with attorneys' fees and expenses.  After about six years of litigation (including the City Civil Court proceedings), Defendants finally agreed to a settlement just four days before trial was set to begin ("Settlement Agreement").  That Settlement Agreement,[1] affirmed in open Court, provided for a substantial but confidential payment to each of the five Plaintiffs, who are

---

[1]Defendants have not yet submitted a final, formalization of this agreement to be signed by Plaintiffs.  Since Plaintiffs' payments under the settlement are due only upon Defendants' receipt of duly signed general releases, it would appear that Defendants' delay is simply an attempt at delaying payment to Plaintiffs.  Thus, "Settlement Agreement" as used herein refers to the letter-agreement of November 10, 2010, confirmed in open Court on November 15, 2010.

1

obviously delighted at the settlement[2].  The Court retained jurisdiction to determine Plaintiffs'

attorneys' fees and expenses, and to enforce the Settlement Agreement.

The Settlement Agreement precluded Northern Leasing from disputing Plaintiffs'

entitlement to attorneys' fees and expenses, but remained silent on this issue with respect to the

individual defendants:

> Northern will not challenge Plaintiffs' attorneys' right to recover
> attorneys' fees in a hearing or proceeding to be held before Judge Gwin or
> a U.S. Magistrate Judge.  Northern reserves the right to challenge the
> amount or reasonableness of the attorneys' fees sought by Plaintiffs'
> attorneys.  Judge Gwin will retain jurisdiction over this case until the fee
> application is decided.

Court Ex.  1, Tr.  Nov.  15, 2010.[3]  However, since Plaintiffs are the "prevailing parties" under

settled law, the individual defendants are also liable, jointly and severally together with the

Northern Leasing, for Plaintiffs' attorneys' fees and expenses.

In evaluating Plaintiffs' fee application, it is significant that Defendants' counsel have

billed at least $2,371,282 in this case, which billing obviously involved no risk of non-payment.

Plaintiffs' counsel, on the other hand, undertook this extremely risky case against well-heeled

Defendants, and battled tenaciously for over six years against Defendants' army of lawyers with

no guarantee of payment - or even recuperation of expenses - at all.  Given the risks,

uncertainties, and the delays in this proceeding, and the extraordinary result achieved for the

Plaintiffs - as abundantly clear from their unreserved compliments to Plaintiffs' counsel -

---

[2]Plaintiff Kettler's claims have been severed, since Plaintiffs' counsel has been unable to communicate with her for well over a year.

[3]The settlement is confidential, and hence, not being submitted herewith.  It is, however, a part of the Court record of November 15, 2010, and can be readily provided for confidential review by the Court upon request.

2

Plaintiffs' counsel seek an award of $3,344,438.65.  This award is comprised of a multiplier of 4 on their attorneys' fees of $3,302,232, and includes expenses of $42,206.65.  Such a multiplier is well-justified under the circumstances: Plaintiffs, who could not even get a lawyer to represent them, have walked away with significant sums of money and no liability to Northern Leasing. Further, these proceedings should be a significant deterrent to Defendants from further misuse of the judicial system, and Plaintiffs counsel should be rewarded for that.  Accordingly, the instant application should be granted in its entirety.

## STATEMENT OF FACTS

The relevant facts are detailed in the accompanying Chittur affirmation, which are incorporated herein by reference for the sake of brevity.

## ARGUMENT

I.      The Applicable Principles For Determining a Reasonable Award of Fees and Expenses

"To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."  *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).  To paraphrase another Court from the slightly different context of securities litigation,  "generous fee awards in cases such as this serve the dual purpose of encouraging plaintiffs' attorneys to act as private attorneys general and discouraging wrongdoing".  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 363 (E.D.N.Y. 2010) (citation omitted).

To determine what is "fair and rewarding" remuneration for attorneys, the Second Circuit has set the "presumptively reasonable fee" standard. *Arbor Hill Concerned Citizens*

3

*Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189 (2ⁿᵈ Cir. 2008); *Proctor v. PMR Law Group*, 2010 WL 4174723 (W.D.N.Y. Oct. 25, 2010).

> Using the presumptively reasonable fee standard, the district court must engage in a four-step process: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award. *See Adorno v. Port Authority of New York and New Jersey*, 685 F.Supp.2d 507, 511 (S.D.N.Y.2010); *McDow v. Rosado*, 657 F.Supp.2d 463, 467 (S.D.N.Y.2009).

*Silver v. Law Offices Howard Lee Schiff, P.C.*, 2010 WL 5140851 (D. Conn. Dec. 16, 2010). The relevant factors for an "appropriate adjustment" of the lodestar "include, but are not limited to, the attorney's customary hourly rate, the complexity and difficulty of the case, the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side), the experience, reputation and ability of the attorneys, and the preclusion of employment by the attorney due to acceptance of the case," *Brady v. Wal-Mart Stores, Inc.*, 2010 WL 4392566 (E.D.N.Y. Oct. 29, 2010).[4]

While the fee application should be buttressed by time-records, "[p]laintiff's counsel is not required to record in great detail how each minute of [her] time was expended. But at least counsel should identify the general subject matter of his time expenditures."  *Silver*, 2010 WL 5140851 (D. Conn. Dec. 16, 2010).

---

[4]The Second Circuit has identified the following factors for this purpose: (1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.
*McDaniel v. County of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010) (*quoting Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

4

Moreover, "the opposing side's attorneys' fees may be a relevant factor in determining reasonableness," *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2d Cir.2008); *Serricchio v. Wachovia Sec., LLC*, 258 F.R.D. 43, 43-47 (D.Conn.2009); *SNET v. Global Naps, Inc.*, 2008 WL 1848899, at *2-4 (D.Conn. Apr.25, 2008). Here, Defendants' counsel have produced attorney time-records, at Judge Gwin's direction, which reveal that they billed Defendants at least $2,371,282 in this case,[5] which included time spent by twenty-four attorneys from three different law firms. Moreover, Defendants' counsel had no risk of non-payment nor any delay in payment. They recovered their fees and expenses contemporaneously, as opposed to Plaintiffs' counsel's six year (and still continuing) wait. It is clear that the fees and expenses sought are imminently reasonable and should be granted.

II.    The Award Sought is Fair and Reasonable

A.    *The Time Spent Was Reasonable*

Plaintiffs' counsel seeks compensation for a total of 1,826 hours expended from 2004 to December 29, 2010. To determine whether the hours should be compensated, the Court should

---

[5]Defendants redacted the most material information, such as what the specific attorney did, in their time-sheet productions. These wholesale redactions are clearly improper, and render it impossible to determine whether these time-sheets are accurate and encompass all the billings for this case. *See, e.g.,DiBella v. Hopkins*, 403 F.3d 102, 120 (2d Cir. 2005) ("Under New York law, however, the time record at issue is not privileged. . . Time records and billing statements that are "detailed in showing services, conversations, and conferences between counsel and others" to such an extent that "to allow access to [the] material would disclose ... trial strategy, and reveal the ... legal work that has been done by [the party's attorneys]" are privileged in New York. *Licensing Corp. of Am. v. Nat'l Hockey League Players Ass'n,* 580 N.Y.S.2d 128 (N.Y.Sup.Ct.1992))").
    This redaction is especially problematic since Defendants' counsel have been representing Northern Leasing in several other related cases also. But even *de hors* such information, Defendants' own documents reveals that it paid over $2.3 million to its attorneys in this case.

5

> examine the hours expended by counsel and the value of the work product
> of the particular expenditures to the client's case . . .  In making this
> examination, the district court does not play the role of an uninformed
> arbiter but may look to its own familiarity with the case and its experience
> generally as well as to the evidentiary submissions and arguments of the
> parties.

*DiFilippo v. Morizio*, 759 F. 2d 231, 235-36 (2nd Cir. 1985).

The time spent by Plaintiffs' counsel is described in the accompanying Chittur affirmation, as well as the declarations of the other attorneys who worked on this case, which declarations are annexed as exhibits to the Chittur Affirmation.  Plaintiffs seek compensation for eight attorneys who performed services at various times over a period of more than six years. The timekeeper records "sufficiently identify the timekeepers, their role in the litigation, and their hourly rates. These records describe with adequate particularity the tasks performed." *Internet Law Library, Inc. v. Southridge Capital Mgmt. LLC*, 2010 WL 3290965 (S.D.N.Y. Aug. 11, 2010).[6]

To determine whether the use of multiple attorneys is compensable, the Court looks to whether lawyer time is divided up appropriately.  *See, e.g., Johnson v. Univ. Coll. Of Univ. Of Ala in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983); *Avalon Cinema Corp. V. Thompson*,

---

[6]All attorneys except those from the Finkelstein law firm maintained contemporaneous time records.  The Finkelstein attorneys' time-records were reconstructed based on contemporaneous documents, such as deposition transcripts, emails, and letter-motions.  This is permissible.  *D'Jamoos v. Griffith*, 340 F. App'x. 737, 741 (2d Cir. 2009) ("New York courts have specifically rejected the hard and fast rule that reconstructed time records can never serve as a basis for compensation in favor of wider trial court discretion in evaluating fee petitions," *quoting Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir.1992)); *Johnson v. Kay*, 742 F.Supp. 822, 837 (S.D.N.Y.1990) ("Where the attorneys have provided the court with affidavits that have been reconstructed from contemporaneous records and that set forth all charges with specificity, fees have not been denied." (citation omitted)).

689 F.2d. 137, 139 (8th Cir. 1982).  As evidenced by Chittur's contemporaneous time-records and the Chittur affirmation, Chittur & Associates staffed this case and divided lawyer time appropriately.  Most of the attorney time was spent by Krishnan Chittur and Andrey Strutinskiy, who shepherded the case through investigation, discovery including document production and review, taking and defending depositions, legal research and briefing, client communication, expert retention and report, court conferences and communication, and motion practice and trial preparation.  Significant time was also expended by Keith Altman, who reviewed Defendants e-discovery, took depositions, and handled significant pre-trial preparation.

The remaining attorneys do not have significant amounts of time since they were brought in for specific purposes at specific points.  Mr. Sharma conducted legal research and assisted in the Amended Complaint, including research on RICO and briefing on Defendants' motion to dismiss that pleading.  Mr. Lesser counseled on initial pleadings but primarily provided of counsel assistance in matters relating to the negotiation and settlement of this matter in 2009.  Three attorneys at Mr. Altman's law firm conducted legal research regarding Defendants' motions in limine and conducted similar discrete legal research, because Plaintiffs' principal counsel Chittur had to be away in India to attend to religious ceremonies on the first anniversary of his father's demise.

Given the extensive motion practice in this case and the complexity of the trial preparation process and the time deadlines, it was reasonable and necessary for multiple lawyers to work on the case.  *See Planned Parenthood of Cent. New Jersey v. Attorney General*, 297 F.3d 253, 272 (3rd Cir. 2002) (upholding awards for multiple counsel in complex case where the magnitude of the case mandated the help of numerous attorneys for both parties).  Defendants'

own records reveal that they had 24 lawyers working on the case at various times.

Plaintiffs' counsel seeks compensation only for time reasonably expended in furtherance of this case, which includes the time spent in defending Defendants' fraudulent lawsuits against Plaintiffs in the City Civil Court.  As the Court explained,

> the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on other litigation was "inextricably linked" to the issues raised in the present litigation, and that plaintiff has not previously been compensated for those fees and expenses, then the district court may include those fees and expenses in its fee award. *See Keenan [v. City of Philadelphia]*, 983 F.2d [459,] 474 [3rd Cir.1992].

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3rd Cir. 1993).

*Accord, In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*, 2008 WL 2600364 (E.D. Pa. June 26, 2008), *aff'd*, 579 F.3d 220 (3d Cir. 2009), *cert. denied*, 130 S. Ct. 1546 (2010);  *Qantum Communications Corp. v. Star Broad., Inc.*, 491 F. Supp. 2d 1123, 1135 (S.D. Fla. 2007) *aff'd*, 290 F. App'x. 324 (11th Cir. 2008); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996).

That is precisely the situation here.  The City Civil Court litigations were "inextricably linked" to this action, and the fees and expenses incurred in those proceedings resulted in work product that was actually utilized here.  Plaintiffs counsel has not been compensated for those proceedings, and hence, those fees and expenses may be included here.

Defendants vigorously defended the action, engaging in aggressive discovery and motion practice.  Pre-trial discovery was extensive and contentious.  The parties disagreed on several discovery and pre-trial issues, resulting in an exchange of over forty letter-briefs between the parties and the court, as well as active motion practice.  Defendants' litigation tactics compelled Plaintiffs' counsel to fight hard to obtain documents and other disclosure that laid bare the facts

8

that sustained Plaintiffs' claims.  Simultaneously, Plaintiffs' counsel had to defend against

obtrusive discovery demands from Defendants.  Both sides submitted intensively briefed motions

for dismissal, for discovery, and, as trial approached, motions in limine.  Plaintiffs' counsel also

worked extensively on Requests to Charge, Voir Dire, and the Special Verdict Sheet.  Because

the parties did not reach settlement until the night of Wednesday before the first day of trial,

Plaintiffs had expended almost all of the time necessary to try the case.

The settlement negotiations themselves were laborious.  The first round of negotiations,

which took place in 2009 before much of the discovery took place, were infructuous.  While the

second round was not as time-consuming, Defendants' surreptitious slipping in of an undiscussed

term - whereby Defendants sought to preserve the individual defendants' right to object to

Plaintiffs' entitlement to attorneys' fees - led to further expenditure of attorney time.  So also,

Defendants have dragged their heels on providing the final, formal agreement, claiming that the

draft they sent had not been "approved" by Defendants; that may also lead to further expenditure

of attorney time by Plaintiffs.

Indeed, Defendants' aggressive tactics were only highlighted by their insistence on

Plaintiffs producing decade-old bank-statements reflecting Defendants' deductions - when

Defendants' own documents reflected these deductions, and no dispute existed on that issue.  As

the Seventh Circuit explained, "A defendant cannot litigate tenaciously and then be heard to

complain about the time necessarily spent by the plaintiff in response."  *Graham v. Sauk Prairie

Police Comm.*, 915 F.2d. 1085, 1109 (7th Cir. 1990); *see also City of Riverside v. Rivera*, 477

U.S. 561, 580 n.11 (1986).  Hence, as Judge Rakoff observed, "the hours expended, though by no

means insubstantial, were reasonable in light of the no-holds-barred nature of this litigation."

*Internet Law Library, Inc.*, 2010 WL 3290965.

Plaintiffs' counsel is also entitled to be compensated for the time spent on successful and unsuccessful motions and issues, those initiated and those defended.  In fact, in this matter, one could not say that any aspect of the effort did not play a part in the highly successful result.  "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2nd Cir. 1992); *accord*, *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1343 (2d Cir.1994).

Further, the time expended also includes the time spent in this fee application.  *Colbert v. Furumoto Realty, Inc.*, 144 F.Supp.2d 251, 262 (S.D.N.Y.2001) ("A prevailing party is entitled to reimbursement for the time expended in the preparation of the fee application."); *Natural Res. Def. Council, Inc. v. Fox*, 129 F.Supp.2d 666, 675 (S.D.N.Y.2001) ("[T]he fee application is a necessary part of the award of attorney's fees"); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 526-27 (S.D.N.Y. 2010) (same).  Obviously, this does not include the time spent on any reply papers, and the instant application will be supplemented with those figures later.[7]

---

[7]The time-sheets reflect the attorney time spent until December 29, 2010.  The time for December 30, 2010, will be included in a supplemental filing which will also include fees for preparation of reply papers herein, if warranted.  *N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Group Int'l, LLC*, 2010 WL 2143661 (S.D.N.Y. Feb. 24, 2010), *report and recommendation adopted in part, rejected in part on o'r gr*, 2010 WL 2158294 (S.D.N.Y. May 27, 2010) ("For the fees that it incurred in this inquest proceeding after it filed its initial request-such as fees incurred in the preparation of its reply papers-it has not submitted the contemporaneous time records necessary for the reimbursement of legal fees in this Circuit. *See Scott*, 2009 WL 2610747, at *1 & n. 11."); *M.C., ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 56 F. Supp. 2d 243, 260 (D. Conn. 1999) *rev'd in part on o'r gr, M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60 (2d Cir. 2000) ("later supplemented his request to include $7,027.50 for attorneys' fees related to his fee application and his opposition and reply briefs.").

10

B.      *The Rates Charged Are Reasonable*

The hourly rates used in making a fee award should be "what a reasonable, paying client would be willing to pay." *Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 359 (S.D.N.Y. 2010) (citing *Arbor Hill*).  The reasonableness of the rate sought is measured by the prevailing market rate for lawyers in the district in which the ruling court sits.  *Polk v. New York State Dep't of Corr. Serv's.*, 722 F.2d 23, 25 (2d Cir.1983).

Moreover, "[a]n adjustment for delay in payment is ... an appropriate factor in the determination of what constitutes a reasonable attorney's fee," *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).  This is because "compensation received several years after the services were rendered-as it frequently is in complex civil rights litigation-is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed," *id*. at 283.

Further, "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment."  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir.1998).  *Accord, Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir.2006); *Lochren v. County of Suffolk*, 344 F. App'x. 706, 709 (2d Cir. 2009).

To determine the prevailing rate, courts may conduct an empirical inquiry based on the parties' evidence or may rely on the "court's own familiarity with the rates" if no such evidence is submitted.  *Stirral v. Ace Audio/Visual, Inc.*, 2007 WL 2229993 (S.D.N.Y. Jul.31, 2007) (*quoting Farbotko v. Clinton County of N.Y.*, 433 F.3d 204, 209 (2d Cir.2005)).  *Accord*, *Wong v. Hunda Glass Corp.*, 2010 WL 3452417 (S.D.N.Y. Sept. 1, 2010).  The court may "rely on [the court's] own knowledge of comparable rates" charged by lawyers in the community, *Morris v. Eversley*, 343 F.Supp.2d 234, 245 (S.D.N.Y. 2004) (*citing Ramirez v. New York City Off-Track Betting*

11

*Corp.* ., 1997 WL 160369, at *2 (S.D.N.Y. Apr.3, 1997)), "as well as on evidence submitted by the parties." *Stirrat v. Ace Audio/Visual, Inc.*, 2007 WL 2229993, at *2 (E.D.N.Y. July 31, 2007) (*citing Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir.2005)).

Under these standards, the hourly rates sought are clearly reasonable.  The most telling evidence here is Defendants' own time-records.  They reveal that Mr. Bressler, who is not even a litigator or trial lawyer, billed Defendants at $695 per hour, and Mr. Skoff, with twenty five years of experience, billed them at $635 an hour.  These are significantly higher than the rates charged by any Plaintiffs' attorney here.  Mr. Chittur, who has thirty-three years of experience in complex litigation in several jurisdictions, seeks an hourly rate of $600 - the rate at which he bills his regular, paying clients.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) ("Perhaps the best indicator of the 'market rate' in the New York area for plaintiffs' counsel in securities class actions is to examine the rates charged by New York firms that defend class actions on a regular basis. Viewed in light of that market barometer, Plaintiffs' Counsel's rates are entirely reasonable.").

Further, Plaintiffs' counsel's proposed rates are also borne out by the affirmations of Brian Bromberg, Esq., and Stephen Gardner, Esq.  Both of them are well-versed with attorney billing rates in Manhattan, and are skilled, seasoned attorneys handling complex litigation themselves.  These affirmation also bear out the reasonableness of Mr. Lesser's hourly rate of $660.

The other attorneys' hourly rates are also reasonable.  Plaintiffs seek an hourly rate of $425 for Mr. Altman and the other three attorneys at his firm, which rate is also supported by the declarations of several attorneys.  Mr. Sharma's rate is $350, which was previously upheld by

this Court.  *Rahman v. The Smith & Wollensky Rest. Group, Inc.*, 2008 WL 1899938 (S.D.N.Y. Apr. 29, 2008).[8]  Mr. Strutinskiy's rate of $350 is the rate charged to the firm's regular clients, and well within the range of reasonable rates for attorneys of his experience and stature.[9]

These rates are reasonable, and appropriate to the level and skill of attorneys who have represented Plaintiffs.  They are also in line with rates charged by attorneys of comparable skill and experience in Manhattan - as clear from the rates charged by Defendants' counsel here.  *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 612 F.Supp.2d 219, 224 (E.D.N.Y.2009) (awarding $585 to $790 for partners and $270 to $500 for associates).

C.      *The **Goldberger** Factors Support the Award Sought*

1.      The Time and Labor Expended

As detailed in Plaintiffs' Counsel's declarations concerning fees and expenses, counsel invested substantial time and effort to the prosecution of this action.  Counsel devoted a total of 1,826.43 hours to the prosecution and resolution of the claims, resulting in a lodestar amount of US $825,448 at current billing rates.  As explained by the Second Circuit in *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998), "current rates, rather than historical rates, should be applied in order to compensate for the delay in payment."

Plaintiffs' counsel's time spent litigating was marked with efficiency and effective time management.  Counsel expended substantial effort investigating the claims and defenses; drafting the Complaint and the Amended Complaint; researching jurisdictional issues; responding to

_____

[8]The *Rahman* Court also upheld a rate of $540 per hour for Mr. Chittur in 2008; his current rate is $600 per hour, which is the rate applicable to this application.  *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir. 1998).

[9]Mr. Strutinskiy's rate is also the rate at which regular, paying clients of the firm.

Defendants' two separate motions to dismiss; serving discovery requests and responses to Defendants' discovery requests; reviewing and analyzing hundreds of thousands of pages of document production; reviewing, analyzing, and synthesizing the electronic data produced by Defendants; preparing for and taking depositions; conferring with individual Plaintiffs, supervising and arranging for production of documents; preparing Plaintiffs for their deposition, and defending the same; retaining the expert and conferring and supervising the preparation of the expert reports; briefing the several motions on discovery, in limine, and *Daubert*; arranging for and supervising the video-synchronizing of the deposition transcript; and finally, negotiating the settlement and attempting to get Plaintiffs paid.

Furthermore, Plaintiffs' counsel's efforts are notable in view of the constrained timeframes under which these results were achieved.  Plaintiffs' counsel completely analyzed and assimilated over a million documents, much of which was produced electronically, within weeks of the production, and took depositions based thereon.  Indeed, the month before trial, i.e., October 2010, Defendants' time sheets reveal that they had no less than eleven lawyers working on the case; Plaintiffs had three.

Plaintiffs' counsel's efforts were always driven toward an efficient prosecution focused on achieving a prompt resolution.  For example, barely three attorneys - Chittur, Altman, and Strutinskiy - were dedicated to the litigation in order to ensure continuity, expertise and proper allocation of resources.   The remaining attorneys had minimal, discrete roles, as detailed in their declarations.  With respect to the analysis of electronic documents, Mr. Altman conducted a selective review of the nearly 800,000 page production to quickly and efficiently assemble the most relevant evidence promptly, as detailed in his Declaration.

14

2.      The Magnitude and Complexities of the Litigation

Courts have recognized the notorious complexity of RICO litigation.  *Zito v. Leasecomm Corp.*, 2003 U.S. Dist. Lexis 17236 at *14 (S.D.N.Y. Sept. 30, 2003) ("RICO is a complex statute, whose defining elements consist of abstract conceptions").  Here, in addition to the complex issues of law and fact associated with RICO actions generally, the underlying allegations and defenses were intertwined with facts concerning six different Plaintiffs. Defendants themselves proclaim the Northern Leasing to be "the market leader in micro-ticket leasing."  Www.northernleasing.com.  Additionally, while the internet is rife with complaints against Defendants, given the absence of any governmental entities and regulators pursuing claims against these market-leader Defendants, Plaintiffs' counsel stood alone to develop, articulate, and prove the claims, adding to the magnitude of the effort required to prosecute the case.

The litigation was hard-fought, and involved extensive motion practice and fact discovery.  Still, serious issues remained ahead.  To prevail at trial, Plaintiff would necessarily have had to overcome the *Daubert* motions, convince a jury that Defendants had perpetrated a racketeering scheme, and that this conduct caused the losses of each individual Plaintiff.  Even if a favorable verdict was rendered, Defendants would have doubtless appealed the verdict.

These trial-related issues only highlighted the magnitude and complexity of this action. This factor also supports the conclusion that the requested fee is reasonable and fair.

15

3.      The Risks of the Litigation

Our courts have identified "the risk of success as 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (*citing Goldberger*, 209 F.3d at 54).  Courts continue to recognize that "[l]ittle about litigation is risk-free," *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at * 3 (S.D.N.Y. May 14, 2004).  As another Court commented,

> There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery. . . "Even a victory at trial is not a guarantee of ultimate success.... An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself." 2007 WL 4115808, at *6 (*quoting In re Warner Commc'n Sec. Litig.*, 618 F.Supp. 735, 747-48 (S.D.N.Y.1985)).

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)

Furthermore, Counsel undertook this Action on a strictly contingent-fee basis, and prosecuted the claims with no guarantee of compensation or recovery of any expenses.  Counsel has received no compensation or reimbursement to date.  As discussed in the Chittur Declaration, while Plaintiffs remained confident in their ability to prove their claims and to effectively rebut Defendants' arguments, the pursuit of this case through Defendants' motions to dismiss, contested discovery and depositions revealed potential barriers to recovery.  Continued litigation against the settling defendants would be subject to both the extraordinary risks of complex RICO litigation, given that such cases are by their nature legally and factually complex, and the specific risks posed by the claims at issue in this litigation.

16

Plaintiffs' counsel faced significant hurdles with respect to proving liability at trial.  In this instance, there were real risks that the Plaintiffs would be unable to establish the required elements of the RICO claims, including, for example, the existence of "enterprise", the "pattern of racketeering", *scienter*, and a fraudulent motive.

While Plaintiffs and Counsel believe they could have countered Defendants' arguments and could have prevailed at trial, an analysis of the risks faced by Plaintiffs strongly supports the requested fee award.

4.    The Quality of Representation

This Settlement Agreement represents a highly favorable result for the Plaintiffs, who not only thwarted Defendants' claims, but in fact, collected money for damages inflicted by Defendants' misconduct.

This result can only be attributable to the diligence, determination, and hard work of Plaintiffs' counsel.  The factual intricacies of the claims, the presence of numerous contested issues, and the tenacious fight put up by Defendants spent over $2 million in attorneys' fees and expenses for twenty four lawyers, required the expertise and capacity of Plaintiffs' counsel and their proven ability to prosecute cases over an extended period and through trial.  Plaintiffs' counsel never took "short cuts or relaxed [their] efforts at any stage of the litigation." *In re Comverse Technology, Inc., Securities Litig.,* 2010 WL 2653354.  Their commitment to protect Plaintiffs' interests, and to deter further abuse of New York's judicial system, was remarkable.

The quality of opposing counsel is also important in evaluating the quality of Counsel's work.  *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (McKenna, J.) ("The fact that the settlements

17

were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).  Here, Plaintiffs' counsel was opposed by Moses & Singer, LLP, very skilled and highly respected counsel with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases such as this.

5.    The Results Achieved Justify the Award

The fifth *Goldberger* factor, the results obtained, also supports the requested attorneys' fees.  Each of the five Plaintiffs have been more than satisfied with the settlement - a 100% satisfaction rate.  Indeed, satisfaction might be a euphemistic term under the circumstances: each Plaintiff, who could not even get a lawyer to protect their interests against Defendants' bogus claims, walks away with significant compensation.  As Plaintiff Russ observed, "From being unable to get a lawyer to represent me, I found excellent representation."

Not surprisingly, each Plaintiff has unreservedly heaped accolades upon Plaintiffs' counsel:

> I wanted to let you know how much I appreciate your services and the top quality legal representation you provided me for the last six years.
> . . .  I did not have any ties or connections with New York so it was an impossible task for me to attempt to defend myself being so far away. I spoke to several people in an attempt to retain a lawyer in New York. However, I found no one interested in defend my case, let alone help me recuperate the losses I had suffered due to Northern Leasing trashing my personal credit report based on these forgeries.  I was at a total loss on what to do, when I came across your firm during a search on the Internet. Boy, was that a god-send!  You were courteous, knowledgeable, and very responsive, and agreed to represent me on a fully contingent basis against Northern Leasing.
> Thereafter, you were always there for me. . .

18

. . . Throughout this entire period, your persistence and commitment to protecting my interests was remarkable.  You ungrudgingly put in the time and resources that were necessary.  I know that you have had significant ongoing expenses, but you never let my case suffer for want of attention or time for over six years.  Finally, you obtained a settlement where I am to be paid multiple times what I had expected to recover.

You far exceeded anything I expected.  Words cannot express how delighted I am at the quality of your legal services, your commitment to protecting my interests, your performance throughout the last six years, and the success you achieved.  I would be delighted to recommend you to anyone seeking top quality and aggressive legal representation in any matter.

CX1, Russ.  Plaintiff Lim, against whom Defendants had obtained a fraudulent default judgment,

was equally thrilled:

I like to take a few minutes to thank you for the job well done in dealing NLS the evil empire.  For years, my family and I had suffered various forms of threats, intimidations and extortions from these cons.  I am so glad you put an end to it.

I applauded you for your courage to fight against a well-organized criminals like NLS.  It had been a very long and exhausting battle, and I am grateful you gave NLS what they deserved.  There was moment I thought this case would never getting anywhere and it impossible to win, but your tireless efforts and persistent in your works had made all this possible.  I am also greatly appreciating for being a wonderful counsel, coach, mentor and friend.

I hope every person had been victimized by NLS will come to seek helps from you.

CX5, Lim.  The young college student, Mindy Serin, who had to fend off Defendants' bogus

claims herself, was also effusive:

As Mr. Chittur got to work, weight was taken off my shoulders. He kept in constant contact with me, providing me with regular updates -- even while I was traveling across the country for work in 5 different states. Any question I had, Mr. Chittur was there for me.

. . . Mr. Chittur made sure to get me what I wanted, and what I deserved. I am extremely pleased with Mr. Chittur's hard work, and would recommend him to anyone.

19

CX4, Serin.  So also, Plaintiff Redner,

> . . . thank you for all the hard work your team has done on my case that we
> won in the New York court system.  It has been a long time coming since
> 2004 when it all started.  I am very pleased with the outcome of my case . .
> .

CX3. Redner.  And lastly, Plaintiff Thomas Smith echoed all these sentiments:

> Without your professionalism and expertise, we might have not been on
> the winning side.  I am very satisfied with the outcome and feel you did
> your very best in achieving our goal of bringing justice to all of the
> plaintiffs involved in this case.

CX2, Smith.  These accolades abundantly bear out the highly successful results of Plaintiffs'

counsel's efforts.

### 6.    Public Policy Considerations Support the Requested Fee

Courts have also recognized that, in addition to providing just compensation, awards of

attorneys' fees serve to encourage skilled counsel to represent those victims of racketeering

scams, and to discourage future misconduct of a similar nature. *See Maley v. Del Global Techs.

Corp.*, 186 F.Supp.2d 358, 369 (S.D.N.Y. 2002); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d

570, 585 (S.D.N.Y. 2008).  The federal racketeering statutes are the bulwark against organized

criminal misconduct.  *See, e.g., Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris,

Inc.*, 36 F. Supp. 2d 560, 580 (E.D.N.Y. 1999) ("Society's general interest in RICO's

enforcement"); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 213,

215 (E.D.N.Y. 1999) ("the expansive public policies of RICO").  Congress intended to "use civil

litigants as a supplement to government efforts" to advance these policies.  *Ames v. Ohle*, WL

5055893 (E.D. La. Dec. 1, 2010).

Even in the relatively limited context of federal securities laws, courts have held that "In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."  *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).[10]  Obviously, the public policy of "vigorously enforcing" RICO, a wider statute addressing much more serious problems, mandates correspondingly greater consideration. Private actions such as this one serve to further the objective of the federal racketeering laws to thwart long-term criminal conduct.  As a practical matter, such lawsuits can be maintained only if competent counsel, who can go toe-to-toe with the best lawyers in the nation, can be retained to prosecute them.

Here, the racketeering action was the only way that innocent citizens from out of state could obtain compensation for the wrongdoing, while also enforcing accountability for Defendants' misuse of the judicial system.  As noted above, no government entity or regulator has filed claims against Defendants, leaving this private right of action as the only recourse for investors.  As Plaintiff Thomas Smith said,

> Hopefully, we have now put a stop to the unfair and unjust practices of Northern Leasing.  Without your help, I am sure that we would still be trying to deal with Northern Leasing and their unscrupulous business practices.

CX2. (Smith).  But for the initiative of Plaintiffs' Counsel to assume the risks and expense of litigation, and the unwavering commitment to stop this abuse of New York's judicial system,

---

[10]"Public policy favors the award of reasonable attorneys' fees in class action securities litigation."  *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008). "The concept of a private attorney acting as a private attorney general is vital to the continued enforcement and effectiveness of the Securities Acts."  *Hicks*, 2005 WL 2757792, at * 9.

21

Plaintiffs would never have been able to recover from the Defendants.  Worse, Defendants'

misuse of New York's judicial system would have continued untrammeled.

III.    A Multiplier of Four Is Appropriate

"Where, as here, counsel has litigated a complex case under a contingency fee

arrangement, they are entitled to a fee in excess of the lodestar."  *In re Comverse Technology,*

*Inc.  Securities Litig.*, 2010 WL 2653354 (E.D.N.Y. Jun 24, 2010) (*quoting Detroit v.  Grinnell*

*Corp*., 495 F.2d 448, 470 (2nd Cir.  1974)).  Hence, "a multiplier is typically applied to the

lodestar."  *Global Crossing*, 225 F.R.D. at 468.  "The multiplier represents the risk of the

litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the

attorneys, and other factors."  *Id. (citing Goldberger*, 209 F.3d at 47; *Savoie,* 166 F.3d at 460).

As Judge Batts reiterated recently

> "Plaintiffs may find it difficult to obtain representation if attorneys know
> their reward for accepting a contingency case is merely payment at the
> same rate they could obtain risk-free for hourly work, while their downside
> is no payment whatsoever." *In re Abrams*, 605 F.3d 246.

*DeMunecas v. Bold Food, LLC*, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).

"Historically, the two major factors driving a fee multiplier have been quality and risk."

*In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010).

Clearly, here, there can be no serious question about the sophisticated representation that

Plaintiffs received, and the considerable risk that Plaintiffs' counsel took - and persisted with for

over six years.

The significant risks that Plaintiffs' counsel assumed, and the extraordinary results

counsel obtained abundantly justifies a multiplier.  The propriety of a multiplier is only

highlighted by the fact that Plaintiffs could not even find an attorney in Manhattan to represent them in the first place.

"In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008); *accord, Maley*, 186 F.Supp.2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within range awarded by courts in this Circuit and courts throughout the country"); *Rabin v. Concord Assets Group, Inc.*, 1991 WL 275757, at *2 (S.D.N.Y. Dec 19, 1991) (multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138 (S.D.N.Y. Aug 24, 1992) (multiplier of 6).

The total lodestar of Counsel is $825,558.  Plaintiffs request a multiplier of 4, which is well within the range of multipliers awarded by courts within this Circuit.  *WorldCom*, 388 F. Supp. 2d at 357 ("multipliers of between 3 and 4.5 are common," *citing Visa*, 396 F.3d at 123.)

In short, the reasonableness of the requested attorneys' fee is readily confirmed by the lodestar.

IV.    Counsel Should Be Reimbursed for Litigation Expenses Reasonably Incurred

In addition to a reasonable attorneys' fee, Counsel respectfully seeks reimbursement in the amount of $42,206.65 for out-of-pocket expenses reasonably incurred in connection with prosecuting the Action.  Plaintiffs' counsel has submitted declarations attesting to the accuracy of these expenses.  It is well-established that such expenses are properly recovered by counsel. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg*, 143 F.3d at 763.

Counsel's declaration itemizes the various categories of expenses incurred.  These

23

expenses were reasonably and necessarily incurred in prosecuting the claims and achieving the proposed Settlement.  Counsel further submits that these expenses, which include costs such as expert and consultant fees, photocopying, postage, meals while working, and transportation are the type for which "the paying, arms' length market" reimburses attorneys and should therefore be reimbursed.  *Global Crossing*, 225 F.R.D. at 468.

Expert expenses totaled $22,740.81, and represented 56% of total expenses.  Plaintiffs' experts provided critical assistance in assessing damages.

Additionally, the expenditures for meals and transportation were in compliance with Counsel's policies for working meals and transportation reimbursement.  Duplicating expenses were also billed at a standard rate of 15 cents per page, which is considerably lower than the federal court's charge of $0.50 cents a page.

V.    Plaintiffs are "Prevailing Parties" and Hence, the Individual Defendants Are Jointly and Severally Liable For Any Fee Award Herein

While the Settlement Agreement precludes the Northern Leasing from disputing Plaintiffs' *entitlement* to attorneys' fees, it says nothing about the individual defendants' liability therefor.  However, since Plaintiffs are the prevailing parties here, the individual defendants are also liable for attorneys fees and expenses under RICO as well as under Section 349, GBL.

Statutes such as RICO "under which attorneys' fees can be shifted are based upon the policy of encouraging lawsuits to vindicate important rights that otherwise might not be vindicated."  *New Leadership Comm. v. Davidson*, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998) (*citing Rodonich v. Senyshyn*, 52 F.3d 28, 32-33 (2d Cir.1995)).  This oft-cited policy reason favoring fully compensable fee awards for prevailing plaintiffs is not just an abstract principle,

24

but reflects a fundamental reality of legal practice, nationally and in this District.  If Plaintiffs

cannot obtain ample attorneys' fees when they prevail in a racketeering case, there will be few or

no "private attorneys' general" action because few attorneys will be willing or able to take such

cases.  The attorneys' fees under RICO are intended to attract qualified counsel even in cases

where the anticipated monetary recovery may otherwise be too small to create an incentive for

representation in complex or protracted matters.  RICO encourages "private citizens to enforce

the objectives of the RICO statute . . . by ensuring that the plaintiff's recovery will not be

diminished by counsel fees."  *Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 474 (3d Cir.

1989).

> Any person injured in his business or property by reason of a
> violation of section 1962 of this chapter may sue therefor in any
> appropriate United States district court and *shall recover* threefold
> the damages he sustains and the cost of the suit, including a
> reasonable attorney's fee, . .

18 U.S.C.A. § 1964(c) (emphasis added).  This mandatory language in RICO - "shall recover" -

is in sharp contrast to that found in some other federal statutes which make the award of

attorneys' fees and expenses discretionary upon the District court.  *See, e.g.,* 42 U.S.C. §2005e-

5(k).

Quite apart from Northern Leasing's consent in the Settlement Agreement, a party who

achieves relief through a settlement is a prevailing party where the agreement carries sufficient

judicial imprimatur.  "[T]he district court's retention of jurisdiction . . . entails a level of judicial

sanction sufficient to support an award of attorney's fees."  *Roberson v. Giuliani*, 346 F.3d 75, 82

(2d Cir. 2003).  *Accord, Grievson v. Rochester Psychiatric Ctr.*, 2010 WL 3894983 (W.D.N.Y.

Sept. 30, 2010).  Here, the Court has retained jurisdiction and included the agreement as part of

25

the Court record in open court while dismissing the action on November 15, 2010.  Thus,

Plaintiffs are prevailing parties, and entitled to a fee award against *all* Defendants.

<u>CONCLUSION</u>

For the foregoing reasons, Counsel respectfully requests that this Court grant the

requested award of $3,302,232 towards attorneys' fees and $42,206.65 towards expenses, for a

total award of $3,344,438.65.

Dated: New York, New York
        December 30, 2010

**CHITTUR & ASSOCIATES, P.C.**

Sd/

By:  Krishnan Chittur, Esq. (KC 9258)
286 Madison Avenue Suite 1100
New York, New York 10017
Tel: (212) 370-0447
Attorneys for Plaintiff and the Class

26