UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MELINDA SERIN, JUDSON RUSS, LONG SOUI LIM, PERI KETTLER, GORDON REDNER, AND THOMAS J. SMITH,

Plaintiffs,

-against-

NORTHERN LEASING SYSTEMS, INC., JAY COHEN, RICH HAHN, and SARA KRIEGER,

Defendants.

------------------------------------------------------------------X

06 CV 01625 (JSG)

**DECLARATION OF KEITH ALTMAN, ESQ.**

I, KEITH ALTMAN, an attorney licensed to practice in the state of California and admitted to the above case *pro hac vice*, make the following declaration:

1. I am an attorney with Finkelstein & Partners, LLP.  I make the following declaration in support of Plaintiffs' application for fees in accordance with the Settlement Agreement herein.  My declaration consists of a description of my experience and qualifications, a description of my activities herein, and a discussion of my hourly rate and support for my billable hours.

2. The total number of hours spent by Finkelstein and Partners in this matter is 582.30.  Of that time, 540.80 hours represents work performed directly by me and 41.5 hours represents work done by other attorneys at the firm.  In addition to my work hours, I also have 36 hours for travel time for which I have used half the normal billing rate.  My firm does not generally engage in hourly work.  Accordingly, we have used an hourly rate of

$425 per hour which represents the low side of rates for comparable work in New York. In addition, we have incurred expenses of $931.20. Attached as Exhibit "A" is a report of my hours, attached as Exhibit "B" is a report of my colleagues' hours, and attached as Exhibit "C" is a report of my case expenses.

### Qualifications

3. Attached as Exhibit "D" is my current c.v. For the past 15 years, I have been involved in complex litigations, primarily Multi-District Litigations. In that capacity, I have taken or defended more than 50 depositions as lead counsel, attended more than 100 other depositions as second chair or in a support role, and assisted in well over 100 other depositions. I have argued dispositive motions, *Daubert* motions, and briefed such motions. I have written all or part of more than 100 motions and briefs and assisted in the drafting of numerous others. I am also proficient in electronic discovery matters and forensic data analysis, and I have testified numerous times through declaration, deposition, or trial testimony where I have been admitted as an expert.

4. I have had direct involvement in more than 10 complex trials; indeed, some of these were even before I was formally licensed as an attorney. In these trials, I have engaged in many of the same activities I performed in this case. These activities include reviewing and selecting video testimony for presentation, development of the trial exhibits for effective presentation before the jury, and generally, strategy planning and implementation of trial including, for example, development of the order of witnesses and evidence.

5. I was formally licensed as an attorney in August, 2008. Since then, I have taken or defended more than 50 depositions of key fact and expert witnesses in many complex litigations and MDLs. These include Avandia (MDL), Viagra (MDL), Neurontin (MDL), and Byetta (Consolidated California Litigation). Given that these are MDLs, thousands of cases have been directly benefited by my work. In addition, I have attended more than 100 additional depositions providing second chair support, whether licensed or not.

6. I have also testified before the Federal Rules Committee on amendments to the Federal Rules of Civil Procedure in connection with e-discovery. The first time was in 2005 as part of the amendments to Rules 16, 26, and 34 on production of electronic information. In 2007, I testified before the Committee on the creation of F.R.E. 502 and had substantial involvement in the drafting of the committee notes for the rule.

7. With respect to electronic discovery, I have extensive experience spanning more than 15 years. I am the founder and co-chair of the Electronic Discovery Litigation group of the American Association for Justice (AAJ, formerly ATLA). I am also a member of Working Group One of the Sedona Conference on Electronic Discovery ("Sedona"). Through Sedona, I am one of the authors of the Sedona Database Principles, to be released for public comment before the end of 2010. I am also one of the authors of the Cooperation Toolkit for Litigators. I actively participate in Sedona and have spoken at several of the annual and mid-year meetings.

8. I am also experienced in forensic data analysis, a skill that was used as part of the preparation for depositions in this case. I have testified as an expert in U.S. and Canadian courts on data analysis. In many of the litigations that I have worked, I have had primary

responsibility for negotiating the production of databases and ultimately, the analysis of the data. Furthermore, many experts have reviewed and relied upon my work for litigation purposes.

9. I have drafted all or parts of numerous motions on everything from discovery disputes to motions for summary judgment and motions to exclude under *Daubert*. Furthermore, I have argued such motions in Federal and State courts in major mass tort litigations and complex single cases. I was one of the authors of an amicus briefs submitted to the U.S. Supreme Court, on behalf of Anju Budhwani, *et. al*., in *Wyeth v. Levine,* decided in 2009. I also assisted David Fredericks who argued the case before the Supreme Court on behalf of Ms. Levine.

10. Further, I have been substantially responsible for the planning of document reviews in complex litigations involving numerous law firms. For example, I built the document depository and developed the review strategy for FenPhen, Meridia, Hormone Therapy, Rezulin, Propulsid, Neurontin, Viagra, and Byetta. As part of that process, I have been intimately involved in complex document production issues including negotiation of preservation and production protocols, negotiations of scope and format of discovery, and coordination of document productions for use by the multitude of law firms involved in these cases.

11. Currently, I serve on the Steering Committee for the Byetta consolidated litigation before Judge Carl West in California. There are more than 300 cases in the litigation. In this role, I have primary responsibility for negotiating document productions and developing the review strategy for more than three million pages. I also have primary responsibility

for the general liability portion of the case as it pertains to regulatory issues and epidemiology. I have already taken one deposition and I am scheduled to take several more in January and February of 2011.

12. I have attached as Exhibit "E" several declarations from various attorneys around the country attesting to my qualifications as well as the appropriateness of the rate of $425 per hour for the work performed by me and other Finkelstein attorneys in this case.

### Activities in the Serin Matter

13. In this case, I served several key roles. First, I had responsibility for electronic document production issues in this case. Much of the production was based upon emails and email archives. I coordinated with Defendants' counsel on the scope of backup tapes to be recovered as well as keywords to be searched to find potentially responsive documents. To further limit Defendants' burden, I negotiated an agreement under F.R.E. 502 to lessen the need for a privilege review. I also negotiated an agreement to protect the confidentiality of personally identifiable information within the production, despite there being no general agreement on the confidentiality of documents. This saved Defendants an enormous amount of time in not having their attorneys review and redact such information. Given the scope of the production, these agreements likely saved Defendants several hundred hours of attorney time in document review.

14. Defendants ultimately produced about 800,000 pages of material in electronic format. I was responsible for the review of those materials. Using my extensive experience in document production and litigation management, I was able to optimize the review of the

documents. Instead of reviewing each of the more than 24,000 documents, I was able to review a smaller collection. Had standard review methods been used, it could have easily taken 400 to 500 hours to have reviewed the collection plus additional time to condense the materials to a usable set for deposition and trial purposes. Instead, I was able to locate potential deposition and trial exhibits in under 200 hours. This smaller population was then refined for actual use in the depositions and for trial.

15. Based upon my review of and selection of the documents, I deposed all of the company witnesses in the matter. Given the nature of the claims in this case, these depositions were enormously important to establishing Defendants' liability. For each of these depositions, I established a deposition plan and determined the appropriate documents to use as exhibits. This preparation involved several hours per witness, which because of my expertise, I was able to minimize.

16. In terms of trial preparation, I reviewed the transcripts of the depositions and selected video testimony to be played to the jury. It was also my responsibility to integrate the available evidence into the trial plan to prove Plaintiffs claims and defeat a motion for directed verdict.

17. I also participated in drafting Plaintiffs' section of the Joint Pre Trial Order. This included preparing a first draft of Plaintiffs statement of the case of approximately 10 single spaced pages, and responses to Defendants' motions in limine. In addition, I reviewed the depositions, deposition exhibits, and pleadings in the case to prepare the trial exhibits.

18. With respect to the motions in limine, I enlisted the assistance of my firm's motions department. The three individuals, Steve Lim (partner), Nora Polemini (partner), and Gail Schlanger (senior associate) have extensive experience responding to similar motions over many years. These individuals have had primary responsibility for the motions in complex MDL litigations and trials. Because most of the time expended was by Gail Schlanger, I have used the same rate of $425 per hour for all three individuals, although attorneys Lim and Polemini would be much higher. Attached as Exhibit "F" are the qualifications of the three Finkelstein attorneys besides myself who worked on this case.

## Time Records and Hourly Rate

19. Because my firm works essentially on a contingency basis, I do not customarily keep contemporaneous time records. However, I did keep contemporaneous records for this case starting November 1. To establish my time in this matter, assuredly lower than the actual hours spent, I relied upon the relatively discrete activities that I undertook over essentially a four month span. In support of these activities, there are certain obvious events. For example, much time was spent actually taking depositions, which Defendants counsel attended[1]. Furthermore, most of the time was expended in the six weeks before the matter resolved and it was not difficult to identify my activities during that time. My time can be summarized as follows:

| Activity | Hours |
|---|---|
| Final pre trial preparation activities | 60 |

---

[1] Sara Krieger twice, Ken Krebs, Richard Hahn, Jay Cohen, Lina Kravic, Sam Buono, Ricky Brown, and Joseph Sussman. Also partially defended the deposition of Plaintiffs' expert Stan Smith.

| Activity | Hours |
|---|---|
| Depositions and Deposition Preparation | 164 |
| Document Production Issues | 44 |
| Document Review (Approx 800,000 pages in collection) | 184 |
| General Trial Preparation | 45 |
| Miscellaneous | 11 |
| Post Settlement Activities | 33 |
| | |
| Travel Time | 36 |

20. To further support this application, I have identified some 1200 emails and 300 phone calls pertaining to this matter. Attached to this application as Exhibits "G", "H", and "I" are those records. Based upon these materials and my discrete activities, I was able to reconstruct my time with a reasonable amount of accuracy, essentially all spent over the four months preceding resolution. While not strictly necessary in my practice, I have implemented a formal time tracking process to better track time for instances such as this. Although I have included the time spent preparing this fee application in the application itself, I did not include approximately eight hours of time I spent documenting the actual time spent on the various activities using the provided supporting materials.

21. With respect to the work done by my colleagues, this time was recorded contemporaneously and was performed within approximately one week before the resolution of the matter.

22. As to the hourly rate, I routinely charge $350 per hour when I give testimony as an expert on electronic databases. Providing legal services such as those in this case commands a rate above that for which I charge for testimony. To determine a fair rate for the nature of the services I provided in this case, I spoke with several different firms that are

involved in complex litigation including those that have litigated RICO claims. As the Court is undoubtedly aware, RICO actions are particularly difficult cases that require a very high level of advocacy. Because of my more than 15 years of experience working in complex litigation, I was able to provide the high level of services required on this matter. As such, I believe that it is fair that I be considered an attorney with the same 15 years of experience. Given my experience and the attached declarations, I believe that $425 per hour is more than fair and likely to be lower than what an individual with my skills could command in other similar circumstances.

### Conclusion

23. In conclusion, my extensive litigation experience over the last 15 years coupled with my specific topical expertise warrants an hourly rate commensurate with those 15 years and not limited to the time that I have been licensed as an attorney. I had extensive, significant involvement with the development of the trial evidence through a review of Defendants' document production and taking of Defendants' depositions. Although I did not initially keep contemporaneous time records, the discrete activities I performed in this matter over the short period of time coupled with other evidence demonstrates that the time listed in my fee application is adequately supported. Furthermore, based upon my experience, a rate of $425 per hour, if anything, is probably lower than I could command in other similar circumstances.

I declare under penalties of perjury that the foregoing statement is true and correct to the best of my knowledge.

                                          /s Keith Altman

\_

                                        Keith Altman, Esq.
                                        Finkelstein & Partners
                                        1279 Route 300
                                        Newburgh, NY 12551
                                        800-634-1212
                                        kaltman@lawampmmt.com
                                        Co-Counsel for Plaintiffs

Dated: December 30, 2010