**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler,
Gordon Redner, and Thomas J. Smith,

<table>
<tr><td></td><td>Plaintiffs,</td><td>Docket No.<br>06-CV-1625 (JSG)</td></tr>
<tr><td>vs.</td><td></td><td></td></tr>
</table>

Northern Leasing Systems, Inc., Jay Cohen, Rich Hahn,
and Sara Krieger

Defendants

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

Dated: New York, New York
       February 4, 2011

**Chittur & Associates, P.C.**
286 Madison Avenue, Ste. 1100
New York, NY 10017
Tel: (212) 370-0447
Fax: (212) 370-0465
Attorneys for Plaintiffs

TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The Individual Defendants Are Liable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     The Fees Sought Are Justified by the Extraordinary Result, and the Need for Deterrence
        of Misuse of Our Courts And For Providing Incentive to Private Attorneys to Take Such
        Difficult Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.      Defendants Paid over 2,000% of Their Own Settlement Offer of 2009, And
                That Too to Persons They Had Sought to Collect Money From. . . . . . . . . . . . . . 5

        B.      Plaintiffs Accepted the Settlement Less Than Their Demand Due to Defendants'
                Tottering Finances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      Plaintiffs Achieved a Significant Quantum And Quality of Success. . . . . . . . . . . 6

        D.      Defendants' Attorneys' Fees of $2.3 million And the "Formidable" Resources
                They Marshaled Support the Award Requested. . . . . . . . . . . . . . . . . . . . . . . . . 8

        E.      The Fee Award And the Multiplier Would Advance the Public Interest. . . . . . . . 9

III.    Defendants' Objections Are Specious. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.     Time Spent in Defending Plaintiffs In the City Civil Court Is Compensable. . . . . . . . . 13

V.      Time Spent Making the Fee Application, and Formalizing the Settlement Agreement
        Are Compensable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VI.     Defendants' Objection to Mr. Altman's Time And Rate Are Misconceived Because
        Scott Did Not Overrule Riordan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

VII.    Defendants' Request For Discovery Is Baseless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF AUTHORITIES

<u>Cases</u>

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*,
522 F.3d 182, 184 (2nd Cir.  2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*,
2010 WL 2593522 (S.D.N.Y. June 28, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Auto. Club of New York, Inc. v. Dykstra*,
2010 WL 3529235 (S.D.N.Y. Aug. 24, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Baird v. Boies, Schiller & Flexner LLP*,
219 F. Supp. 2d 510, 512 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Barfield v. New York City Health & Hospitals Corp.*,
537 F.3d 132, 152 (2nd Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Black v. Lojac Enterprises, Inc.*,
117 F.3d 1420 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*,
532 U.S. 598, 622 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cabell v. Sony Pictures Enterprises, Inc.*,
2011 WL 92765 (S.D.N.Y. Jan. 7, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*City of Riverside v. Rivera*,
477 U.S. 561, 574 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Colbert v. Furumoto Realty, Inc.*,
144 F.Supp.2d 251, 261-62 (S.D.N.Y.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*D'Jamoos v. Griffith*,
340 F. App'x. 737, 741-42 (2nd Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Field Day, LLC v. County of Suffolk*,
2010 WL 5491025 (E.D.N.Y. Sept. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fiore v. Kelly Run Sanitation, Inc.*,
609 F. Supp. 909, 917 (W.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517, 533, 534 n. 19 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Gares v. Willingboro Twp.*,
1995 WL 125873 (D.N.J. Mar. 10, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Grievson v. Rochester Psychiatric Ctr.*,
2010 WL 3894983 (W.D.N.Y. Sept. 30, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Hensley v. Eckerhart*,
461 U.S. 424, 435 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hensley v. Eckerhart*,
461 U.S. 424, 437 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Imbeault v. Rick's Cabaret Int'l Inc.*,
2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jim Billado Roofing, LLC v. Custom Copper & Slate, Ltd.*,
2010 WL 1881097 (D. Vt. May 10, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kronfeld v.  Transworld airlines, Inc.*,
129 F.R.D. 598 (S.D.N.Y. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*LeBlanc-Sternberg v. Fletcher*,
143 F.3d 748, 764 (2nd Cir.1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
597 F. Supp. 1186, 1193 (E.D.N.Y. 1984), *aff'd*, 765 F.2d 966 (2nd Cir. 1985). . . . . . . . . . . . . 11

*Lunday v. City of Albany*,
42 F.3d 131, 134 (2d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*McDow v. Rosado*,
657 F. Supp. 2d 463, 469 (S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Miller v. Midpoint Resolution Group, LLC*,
608 F. Supp. 2d 389, 396 (W.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mitchell v. American Tobacco Company*,
28 F.R.D. 315, 319 (D.C. Pa 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nationwide Mut. Ins. Co. v. Mortensen*,
2010 WL 5071046 (D. Conn. Dec. 7, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136, 1146 (2d Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Rahman v. The Smith & Wollensky Rest. Group, Inc.*,
2009 WL 72441 (S.D.N.Y. Jan. 7, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Riordan v. Nationwide Mutual Fire Insurance Company*,
977 F.2d 47 (2nd Cir.  1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Robertson v. Giuliani*,
346 F.3d 75 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Robinson v. City of Edmond*,
160 F.3d 1275, 1284 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rozell v. Ross-Holst*,
576 F. Supp. 2d 527, 543 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Schwartz v. Chan*,
142 F. Supp. 2d 325, 331 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Scott v. City of New York*,
626 F.3d 130 (2d Cir. Dec. 1, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Shannon v. Fireman's Fund Ins. Co.*,
156 F. Supp. 2d 279, 302 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Shaw v. AAA Eng'g & Drafting, Inc.*,
213 F.3d 538, 543 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Torres v. Walker*,
356 F.3d 238, 241 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*TSI Energy, Inc. v. Stewart & Stevenson Operations, Inc.*,
1998 WL 903629 (N.D.N.Y. Dec. 23, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*U.S. Football League v. Nat'l Football League*,

887 F.2d 408, 412 (2nd Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Zagorski v. Midwest Billing Services, Inc.*,
128 F.3d 1164, 1167, n. 6 (7th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Other Authorities

N.Y. Gen. Bus. Law (GBL) § 349. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Wright & Miller, Federal Practice & Procedure, §1259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>PRELIMINARY STATEMENT</u>

While Plaintiffs have adjusted their fee request in response to those entries as to which Defendants raise legitimate issues, two overriding factors are relevant in evaluating the instant application.  First, given the public interest in deterring misuse of our State court system, this is an apposite case for a generous fee award "to advance considerations of compensation and deterrence," *Cabell v. Sony Pictures Enterprises, Inc.*, 2011 WL 92765 (S.D.N.Y. Jan. 7, 2011) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 534 n. 19 (1994))).  Defendants' cleverly conceived and highly lucrative racket of bringing fraudulent lawsuits far away from the victim's home for relatively small sums of money had been running unchecked for over a decade.  The victims' transactional costs and procedural hurdles in long-distance litigation was the foundation of Defendants' racket.[1]   And of course, the reason Defendants spent $2.3 million defending this action, and sought desperately to seal all filings concerning this fee application, dkt.  148.  The need to deter such racketeers with formidable resources conducting a national scam by misusing our over-burdened judicial system can hardly be over-emphasized.  Plaintiffs' attorneys took on the challenge and relentlessly waged a pitched battle over six years, which must be applauded and encouraged.   Thus, public interest would be substantially enhanced with a handsome compensation.  That would give attorneys the incentive to take hard cases with near-impossible odds such as this.

Second, Defendants' attempt to belittle the settlement is misplaced.  It was Defendants that sued Plaintiffs ***to collect*** a few thousand dollars (maximum was about $9,000, from Russ).

---

[1]As Mr.  Russ affirmed, "I found no one interested in defend[ing] my case, let alone help me recuperate the losses I had suffered due to Northern Leasing trashing my personal credit report based on these forgeries."  Dkt 143-1.

1

Instead, they have landed up **paying Plaintiffs** $295,000, **and** agreeing to pay Plaintiffs' attorneys' fees and costs.  For this, Defendants utilized 24 lawyers from three well-reputed law firms, and paid at least $2.3 million in attorneys' fees and expenses.  Plaintiffs' lodestar is a fraction of this.  Defendants' claims of "excessiveness" has to be seen in this light.  *Black v. Lojac Enterprises, Inc.*, 117 F.3d 1420 (6th Cir. 1997) ("Undoubtedly, where the issue of the reasonableness of the time expended is fully joined, the amount of time spent by the opposing party is a relevant benchmark as to the amount of time reasonably required.").

Viewed in this perspective, Defendants' reference to Plaintiffs' settlement demand as evidence of "limited success" is frivolous.  While Plaintiffs eventually accepted a lower figure than what they had demanded, that was due to concerns raised by Defendants' precarious financial condition, not about Plaintiffs' trial prospects.  More significant is that as late as October 2009, Defendants had offered $12,000 cumulatively to all Plaintiffs,[2] Chittur Aff.  (Dkt 143) at 6 n.6, which fact is not disputed by Defendants.  This settlement is thus about 2,000% of what Defendants were willing to offer about a year before trial.

Defendants' other objections are baseless and, in many cases, contrary to settled law.  Further,

> [T]he Second Circuit has determined that the district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items" *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir.1994) (per curiam), particularly when the billing records are voluminous, as they are in this action. *See also New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983) (In cases "with voluminous fee applications, courts have recognized that it is unrealistic to expect a trial judge to evaluate and rule on every entry in

---

[2]Further, that offer made no provision for Plaintiffs' attorneys' fees and expenses, so that the entire $12,000 would have been insufficient to meet litigation expenses alone.

2

an application.").

*Auto. Club of New York, Inc. v. Dykstra*, 2010 WL 3529235 (S.D.N.Y. Aug. 24, 2010).

Defendants have not objected to any of the expenses sought.  Accordingly, Plaintiffs' application, as adjusted herein, should be granted in its entirety.

ARGUMENT

I.      <u>The Individual Defendants Are Liable</u>

The parties had never even discussed, let alone agreed, to absolve the Individual Defendants of all liability.  CRX 5.  (Altman decl Nov.  24, 2010), at ¶5.  Thus, Defendants' assertion that Plaintiffs "agreed" to let them off scot-free, DM16, is baseless.  If that were the intent, the settlement agreement would have said so expressly.

The settlement was "so ordered" and the Court retained jurisdiction expressly to enforce it; that suffices to sustain this fee application under *Robertson v. Giuliani*, 346 F.3d 75 (2nd Cir. 2003), and its progeny.  Defendants do not mention, cite, or even address these cases, and their reliance upon a 1984 case, DM17, is unavailing.[3]

So also, Defendants' denial of wrongdoing in the settlement is inconsequential. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, 622 (2001) ("The entry need not be a judgment on the merits. Nor need there be any finding of wrongdoing. A court-approved settlement will do."); *accord*, *Torres v. Walker*, 356 F.3d 238, 241 (2nd Cir. 2004) ("Defendants would make no admission of any wrongdoing" in settlement;

---

[3]Defendants argument that Plaintiffs' 349 claims would not have "met the test for liability under that statute," DM24, is a meritless attempt at belated reargument.  This Court expressly upheld the 349 against this very challenge.  Order of December 18, 2009 ("Defendants' practices affect the public interest in New York").

3

does not bar attorneys' fees).

Thus, for example, in *Champion v. ADT Sec. Services, Inc.*, 2010 WL 4736908 (E.D. Tex. Nov. 16, 2010), the settlement agreement provided that it was not to "be construed as an admission of liability, responsibility, or wrongdoing as alleged in the Lawsuit." Indeed, that settlement went even further, and provided that "It is expressly understood by the Parties that [plaintiffs] shall not be deemed a "prevailing party" for any purpose, including any fee shifting statute, rule, or agreement." *Id*., *3. Based on this language, those defendants also objected to paying those plaintiffs' attorneys' fees.

The Court reasoned that settlement agreements are contracts, and to be construed accordingly. Under axiomatic principles of contract,[4] "the plaintiffs are entitled to attorney's fees, or in other words, the settlement agreement does not prevent the plaintiffs from being considered prevailing parties." *Id*., *4. Although that settlement also provided expressly that those plaintiffs were not to be considered "prevailing parties", it simultaneously provided for the Court to determine the appropriate attorneys' fees. *Id.* Accordingly, the Court "interpret[ed] the settlement agreement as unambiguously allowing" attorneys fees to be determined by the Court. *Id*.

That reasoning is fully applicable here. Indeed, the Individual Defendants' case is much weaker, because the *Champion* settlement expressly provided that those plaintiffs would not be considered "prevailing parties", while the instant settlement does not. Clearly, the Individual Defendants are liable, jointly and severally, for attorneys' fees and costs here.

---

[4]While that Court recited Texas State law, "The substantive law relating to contract interpretation is essentially the same in both New York and Texas." *TSI Energy, Inc. v. Stewart & Stevenson Operations, Inc.*, 1998 WL 903629 (N.D.N.Y. Dec. 23, 1998).

4

II.   The Fees Sought Are Justified by the Extraordinary Result, and the Need for Deterrence of Misuse of Our Courts And For Providing Incentive to Private Attorneys to Take Such Difficult Cases

    A.   *Defendants Paid over 2,000% of Their Own Settlement Offer of 2009,[5] And That Too to Persons They Had Sought to* **Collect** *Money From*

Defendants (a) paid $295,000 to Plaintiffs, the very people it had sued to collect money from, <u>and</u> (b) agreed to pay Plaintiffs' attorneys' fees and expenses; <u>after</u> (c) employing at least twenty-four attorneys from three big law firms, <u>and</u> (d) spending at least[6] $2.3 million in attorneys' fees and expenses.

Barely a year earlier, Defendants had made a settlement offer of $2,000 to each Plaintiff. Thus, Defendants eventually paid over 2000% of what they had themselves offered.  Quite apart from the fact that Defendants had sought to collect from, not pay, Plaintiffs.

    B.   *Plaintiffs Accepted the Settlement Less Than Their Demand Due to Defendants' Tottering Finances*

Defendants claim "unequivocal victory," DM20¶17, because the settlement was less than their anticipated trial costs, and less than Plaintiffs' settlement demand.  This is frivolous.

It is settled that "the parties' positions during settlement should have no bearing on the Court's assessment of the degree of success or any other element of the fee award that the plaintiff may be entitled to." *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 543 (S.D.N.Y. 2008). Thus, Plaintiffs' settlement demand has no bearing whatsoever on this application.

---

[5]While parties' settlement positions are not relevant for fee applications, we point this out solely in view of Defendants' repeated reference to Plaintiffs' settlement offer.

[6]This is based on the time-sheets provided until October 31, 2010, dkt. 143-15.  These time-sheets improperly redacted all the relevant information, making it impossible to determine whether time was wrongly billed to Defendants' other cases, all of which were defended by the same attorneys.

In any event, the reason Plaintiffs accepted the lower settlement was Defendants'

desperate financial situation.  Defendants have been unable to pay their monthly rent to their

landlord.  CRX 3.  Since June 2010, Defendants have also defaulted on their monthly dues to

their bank.  CRX 4.  Further, Defendants faced significant liability in *Pludeman v.  Northern*

*Leasing Sys.*, 74 A.D.3d 420 (1st Dep't 2010), where a class has been certified and summary

judgment granted for the class, 27 Misc.3d 1203 (N.Y. Sup.  2010).  Under the circumstances,

Plaintiffs acceptance of the settlement offer was imminently reasonable.

    C.    *Plaintiffs Achieved a Significant Quantum And Quality of Success*

Defendants repeatedly assert that Plaintiffs had a "limited degree of success," citing the

*ad damnum* clause in the complaint.

But the *ad damnum* clause is largely irrelevant for present purposes.  *See* Wright &

Miller, *Federal Practice & Procedure*, §1259 ("Specific Allegation of Amount of Damages")[7].

Much more important for present purposes is the "quantity and quality" of success, *Barfield v.*

*New York City Health & Hospitals Corp.*, 537 F.3d 132, 152 (2nd Cir. 2008), a case which

Defendants completely misread since it actually supports Plaintiffs.

*Barfield* was a FLSA collective action.  That plaintiffs' counsel failed in obtaining

collective action certification because he "could not make even the 'modest factual showing'"

required.  *Id*. Subsequently, that plaintiff obtained summary judgment, and damages of

$1,774.50, on which the Court awarded attorneys' fees of $49,889, ***twenty-five times the***

---

[7]*See, e.g., Mitchell v. American Tobacco Company*, 28 F.R.D. 315, 319 (D.C. Pa 1961)
(striking clause as "dollars claimed impertinent and immaterial").  *Accord, Fiore v. Kelly Run
Sanitation, Inc.*, 609 F. Supp. 909, 917 (W.D. Pa. 1985) (same).

*damages awarded*.

That fee award was nonetheless a substantial reduction from that sought by that plaintiff's counsel. This was because that "'plaintiff's primary aim in [that] litigation,' as reflected in both the 'complaint and in the first four months of litigation before this Court,' was collective action certification," 537 F.3d at 140. Hence, a reduction was necessary for policy reasons:

> Indeed, plaintiff's failure to certify a collective action precluded declaratory and injunctive relief, which was sought on behalf of individuals, unlike plaintiff, who were still working for defendants. As noted above, the district court was rightly concerned that not reducing the fee award in these circumstances would pose two risks: (a) decreasing the incentive for plaintiffs' lawyers vigorously to litigate collective action certification, and (b) encouraging plaintiffs' lawyers to file collective action-based claims even where there is little basis for doing so.

537 F.3d at 152.

In other words, the *Barfield* reduction was in order to discourage pusillanimous, and encourage aggressive, litigation in collective actions. That has nothing to do with the *ad damnum* clause in the complaint.[8]

Defendants ignore that those very considerations support the instant application. This was never brought or intended to be a class action. The "degree of success" is evident by the fact that Plaintiffs' counsel turned the tables on Defendants who landed up paying instead of collecting, by what Defendants spent to defend it, by the settlement offer they made of $12,000,[9]

---

[8]*Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 512 (S.D.N.Y. 2002), did not involve a settlement but a Rule 68 offer of judgment. Obviously different considerations apply to such offers.

[9]Defendants misleadingly refer to Plaintiff Kettler as having settled her claims for "$0." In fact, Plaintiffs' counsel has not been able to communicate with Kettler for about two years now and she is not a part of this settlement at all - and Defense counsel *certainly* knows that.

by their agreement to pay 25 times that amount and do so at a time when they are unable to even make their rent payment - and by their desperate attempts to keep the terms of this settlement confidential.  In this perspective, the settlement may be fairly characterized as a spectacular success.  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (attorneys' fees should not be reduced "[w]here [plaintiff] has obtained excellent results.").

        D.     *Defendants' Attorneys' Fees of $2.3 million And the "Formidable" Resources They Marshaled Support the Award Requested*

Defendants assert that the $2.3 million fees they incurred is irrelevant, DM19 n.15.  This is contrary to Second Circuit law.

As our courts have consistently reiterated, "the opposing side's attorneys' fees may be a relevant factor in determining reasonableness."  *Nationwide Mut. Ins. Co. v. Mortensen*, 2010 WL 5071046 (D. Conn. Dec. 7, 2010); PB (dkt 142 at 13).  As the Tenth Circuit observed, "Evidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable," *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000) (*quoting Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998)).

Here, Defendants were represented by three big and well-reputed law firms - Milberg, LLP; Epstein Becker; and Moses & Singer.  Defendants requisitioned no less than twenty-four lawyers, as clear from their own time-sheets.  Defendants paid attorneys' fees of at least $2.3 million to defend this action.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*, 522 F.3d 182, 184 (2nd Cir.  2008) (court should "take account of the resources being marshaled on the other side").  This also supports the award requested.

8

E.     *The Fee Award And the Multiplier Would Advance the Public Interest*

Defendants were misusing the State judicial system to enforce their fraudulent leases. Victims, such as Plaintiffs, were largely from far off places, being sued for a few thousand dollars in New York City Civil Court.  Obviously, the expenses of litigation would far exceed the tribute sought by Defendants.  Moreover, even those victims willing to fight as a matter of principle have serious difficulty even retaining a lawyer.   As Russ stated, he could not even get a lawyer to handle this until he came upon Plaintiffs.

Not surprisingly, Defendants have been wildly successful with their scam for over a decade, as clear from their scorched earth litigation tactics.  For example, they refused even a week's adjournment to accommodate Russ's scheduling conflict to compel him to appear in the City Civil, and when he did show up, they had no evidence against him.  And this litigation itself was no cake-walk, with Defendants incurring $2.3 million to out-litigate and out-spend Plaintiffs into crying "uncle."

Thus, a generous award here would serve <u>both</u> purposes.  First, it would be a significant deterrent to Defendants - and others with similar proclivities - from misusing our courts.  This "deterrent effect" is an important consideration when evaluating the 'degree of success' obtained by a particular plaintiff".  *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389, 396 (W.D.N.Y. 2009) (*quoting Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167, n. 6 (7th Cir.1997)).  In this respect, the settlement is a spectacular success.  The huge price that Defendants have had to pay for attempting to bully payments of a few thousand dollars by misusing the judicial system is certainly a huge deterrent.  The significance of this is evident from Defendants' desperate attempts to seal the Court records so that other victims and attorneys

are kept in the dark and too intimidated to hold Defendants accountable.

Second, it would provide a significant incentive to attorneys to take on such long-shot cases. "[I]f those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2nd Cir.1998); *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ( referring to "important social benefits that are not reflected in nominal or relatively small damages awards"). Our courts have thus routinely awarded fees irrespective of the actual amount recovered in damages. *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 412 (2nd Cir. 1989) (damages of $1, trebled to $3; "recovery of their reasonable attorney's fees must be sustained regardless of the amount of damages awarded"); *Grievson v. Rochester Psychiatric Ctr.*, 2010 WL 3894983 (W.D.N.Y. Sept. 30, 2010) (damages of $14,000, atty fees of $75,885; "While the amount that she was paid under the agreement may appear modest in comparison to some federal court settlements, it is not modest when compared to the twenty-one day period giving rise to her damage claim.").

Defendants minimize the public benefits by citing to the confidentiality clause. But as this Court has held, ***only*** the settlement agreement itself is confidential. Everything else is public, including these documents concerning Plaintiffs' fee application. Indeed, since Defendants have themselves referred, in their opposition papers herein, to their settlement payments to Plaintiffs, their claim of "confidentiality" is illusory. Further, this Court's ruling on this fee application is not, and cannot be, confidential. ***That*** is what is important.

Thus, given the extra-ordinary success by Plaintiffs in the face of aggressive litigation by

twenty-four attorneys and Defendants' formidable resources,[10] to paraphrase another Court, "the relief that plaintiff obtained in this litigation-judged by both quantitative and qualitative norms, justified the hours spent by her attorneys," *Grievson*, 2010 WL 3894983; *see also McDow v. Rosado*, 657 F. Supp. 2d 463, 469 (S.D.N.Y. 2009) (damages of $10,000, fee award of $78,980 due to "quantity and quality of relief obtained."); *Imbeault v. Rick's Cabaret Int'l Inc.*, 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) (plaintiff "obtained a complete, albeit early, victory for herself, notwithstanding the fact that she initially may have envisioned a broader litigation. . . . For these purposes then, she was fully successful and accordingly no reduction for limited success is warranted.").

These factors abundantly justify the multiplier sought.  Defendants seek to distinguish the cases we cited as "common fund class action cases, DM37.  But that is hardly relevant.  No court has denied a multiplier merely because a case was not a class action, and nothing in the case-law justifies such a distinction.

III.    Defendants' Objections Are Specious

Defendants raise a slew of objections to Plaintiffs' time-records,[11] none of which survive scrutiny:

A.      Mr.  Strutinskiy performed a dual function at the seven depositions:  as attorney

---

[10]*Louis Vuitton S.A. v. Spencer Handbags Corp.*, 597 F. Supp. 1186, 1193 (E.D.N.Y. 1984), *aff'd*, 765 F.2d 966 (2nd Cir. 1985) ("In deciding to award attorneys' fees under the new statute the Court considered, among other factors, that defendant's resources were "formidable" as compared to plaintiffs'," citations omitted).

[11]The party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified.  *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989).

assisting the deposition and videographer.  That actually saved the cost of a separate videographer of $11,200 for the seven depositions.  CRX 6.  As Defendants concede, they produced 812,000 pages in discovery, DM5 n.5, and the presence of two attorneys was certainly appropriate.

B.    Mr.  Chittur's attendance at depositions.  Mr.  Chittur attended the Custodian of Records depositions of Krieger and Krebs and, for a few minutes, the depositions of Sussman and Buono.  Mr.  Chittur was the principal trial counsel, and as such, had to attend these:  the Custodian depositions were critical, and it was necessary to get a sense of how Sussman and Buono would come across as trial witnesses.  This was reasonable, and compensable under *Kronfeld v.  Transworld airlines, Inc.*, 129 F.R.D. 598 (S.D.N.Y. 1990), DM30; *see also Rozell*, 576 F. Supp. 2d at 541 ("while two of plaintiff's attorneys attended a number of proceedings, these tended to be the most critical points in the litigation, such as the depositions of key witnesses, where it was entirely appropriate to staff in this manner.")

C.    Defendants object to Mr.  Strutinskiy's billing 22.8 hrs for copying or burning CDs or DVDs as "Secretarial/IT work".  In fact, the entries identified by Defendants also have other items they have not objected to, and the time legitimately attributable to these items is a total of 6.4 hours.  For this purpose, Plaintiffs are willing to reduce the hourly rate to that which would be normally charged for this purpose ($100), a reduction of $1,600.

D.    Plaintiffs withdraw the time which Defendants object as "messenger" work[12] for a total reduction of 2.2 hours, or $770.  The remainder of the entries are compensable, and this reduction is reasonable.[13]

---

[12]In fact, these were proper and justified because the documents were ready to be served late in the day, and typically had to meet deadlines.  Otherwise, Plaintiffs delivered documents by email or by U.S. mail.

[13]"[C]ourts [often] have ordered such reductions for block-billing only when there was evidence that the hours billed were independently unreasonable or that the block-billing was mixing together tasks that were not all compensable...."  *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) (*quoting Hnot v. Willis Group Holdings Ltd.*, 2008 WL 1166309 at *6 (S.D.N.Y. 2008).  *Accord, Rahman v. The Smith & Wollensky Rest. Group, Inc.*, 2009 WL 72441 (S.D.N.Y. Jan. 7, 2009) ("Although block billing can make it more difficult to determine precisely how much time was spent on each task, the practice is tolerable "as long as all of the work recorded in one entry is compensable.");  *Imbeault v. Rick's Cabaret Int'l Inc.*, 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) (block-billing is "not automatically disfavored," but "reductions for block-billing" may be appropriate in cases where the block-billing "mix[es] together tasks that [are] not all compensable, or not all compensable at the same rate.").

E.     Defendants object to Mr.  Strutinskiy's billing 13.8 hrs for "paralegal" work.
Once again, the entries identified by Defendants also have other items they have
not objected to, and the time legitimately attributable to these items is a total of
5.1  hours.  For this purpose, Plaintiffs are willing to reduce the hourly rate to that
of paralegal which Defendants' counsel charge ($225), a reduction of $1,147.50.

Defendants' objections to Mr.  Chittur's conducting research is absurd since Plaintiffs'

counsel is a 2-person law firm.  No court has held that senior attorneys cannot conduct research;

otherwise, small law firms or solo practitioners could not even be in the profession.  What courts

have frowned upon is senior attorneys doing so when cheaper alternatives existed, *i.e.*, the law

firm had junior attorneys to do that.  *See Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d

279, 302 (S.D.N.Y. 2001) (law firm of 20 attorneys with support staff; even so, Court observed,

"While the Court recognizes that in some situations a senior attorney may not have the capacity

to delegate tasks to younger associates, that was not a problem here"); *Kronfeld* 129 F.R.D. at

603 (law firm of 20 lawyers).  Those cases are clearly inapplicable, especially given Defendants'

formidable resources.[14]

IV.    Time Spent in Defending Plaintiffs In the City Civil Court Is Compensable

Defendants object to the billing of time spent in the City Civil Court defending these

Plaintiffs.  This is frivolous.

Defendants' bogus lawsuits in the City Civil Court against these Plaintiffs was the very

---

[14]In *Rahman v.  Smith & Wollensky*, 2008 WL 1899938 (S.D.N.Y. Apr.  29, 2008),
DM31, Mr.  Sharma was co-counsel, and the Court perceived duplicative work.  That Court
granted Plaintiffs attorneys' fees and expenses of over $44,000.  Defendants' suggestion that the
Court found Chittur "guilty" of "discovery misconduct," DM31 n.32, is absurd.  While those
developments are completely irrelevant for present purposes, the indisputable fact is that the case
settled for a very significant cash payment; as here, that plaintiff was also thrilled with the result.

basis of this lawsuit.  The issues there are, ***by definition***, "inextricably linked" to this action.  The very basis of the racketeering charge here is that Defendants brought those lawsuits in the City Civil Court fraudulently.  For example, had Defendants prevailed against Russ there, his claims here would have been barred.  The State court judgment would have been final, and even the forged leases would have been beyond challenge under the *Rooker-Feldman* doctrine.  That was, of course, the reason Defendants brought Barry Cozier, a former judge of the Appellate Division, First Department, to appear before the much lower City Civil Court (thrice removed from the Appellate Division) in their $9,000 case against Russ.

Further, Plaintiffs issued a subpoena for documents and deposition of Joseph Sussman, who was Defendants' counsel in the City Civil Court.  Even Defendants did not challenge the relevance of that discovery; they balked only at producing attorney-client privileged documents.  Plaintiffs conducted his deposition.  Documents from the City Civil Court litigation were used in the preparation as well as deposition of many witnesses.  Thus, "this work was intrinsic to the result reached in this litigation, and fees are warranted."  *Gares v. Willingboro Twp.*, 1995 WL 125873 (D.N.J. Mar. 10, 1995).

Defendants also object to time spent on "other matters."  Once again, this is baseless.  At issue here was Defendants' pattern of racketeering activity.  Far from being "unrelated", those were predicate acts, issues that went to the heart of the claims here, to establishing that filing fraudulent cases were Defendants' standard *modus operandi,* and done with the requisite *scienter.*

V.    Time Spent Making the Fee Application, and Formalizing the Settlement Agreement Are
      Compensable

"It is well-settled that the time spent preparing a fee application is compensable." *Field

Day, LLC v. County of Suffolk*, 2010 WL 5491025 (E.D.N.Y. Sept. 9, 2010) (citations omitted).

Defendants' objections to the time spent since November 10 is baseless.

First, the time spent on this application is <u>less</u> that what courts have found justified.

*Colbert v. Furumoto Realty, Inc.*, 144 F.Supp.2d 251, 261-62 (S.D.N.Y.2001) (fee application

awards in this Circuit range from 8 to 24% of the total time claimed in the entire case).  The time

spent on the fee application here is ***less than 7%*** of the total time claimed.

Second, the motion practice after November 10, 2010, was necessary.  The first motion

was to clarify the terms of the settlement.[15]  The second was to stop Defendants' procrastination

of payment, due to Defendants' own financial problems, under the guise of repetitious re-drafting

of the settlement agreement.  *See* Order of Jan 28, 2011 ("The Court finds both the November

21st version of the proposed settlement and the January 24th version of the proposed settlement

are entirely consistent with the terms of the letter agreement and the Court's December 10

order.").

Defendants' attempts at re-draft continued even after Judge Gwin's order of January 27,

2011, approving the version already signed by Plaintiffs.  Defendants continually kept re-drafting

the formal settlement agreement, and made Plaintiffs' counsel spend time review those re-drafts,

and should be required to pay therefor.

_____

[15]Interestingly, Defendants themselves stated in a recent letter to Judge Gwin that their
November 21st draft which Plaintiffs' counsel had found problematic was not "fully consistent"
with the November 10th agreement.  CRX 7. Letter to Judge Gwin, Jan. 14, 2011.

VI.    Defendants' Objection to Mr.  Altman's Time And Rate Are Misconceived Because *Scott* Did Not Overrule *Riordan*

Defendants contend that Mr. Altman's time should not be compensated because he did not keep contemporaneous records for some of the time he worked on this case.  Defendants are wrong.  First, under established Second Circuit precedent, the Court must view a fee application under N.Y. Gen. Bus. Law (GBL) § 349 under state rules which do not require contemporaneous time records.  Second, *Scott v. City of New York*, 626 F.3d 130 (2d Cir. Dec. 1, 2010) is inapplicable here; in any event, it permits this Court to consider whether this should be an exception to the contemporaneous timekeeping rule under federal fee-shifting statutes.

In *Riordan v. Nationwide Mutual Fire Insurance Company*, 977 F.2d 47 (2nd Cir.  1992), the plaintiff prevailed on claims for breach of an insurance contract and violation of N.Y. Gen. Bus. Law (GBL) § 349, and the Court awarded attorneys' fees.  977 F.2d at 48.  On appeal, Defendants challenged the fee award because Riordan's "attorneys did not submit contemporaneous time records."  *Id*., 53.

The Second Circuit noted that Section 349(h), GBL, allows a court to award "reasonable attorney's fees to a prevailing plaintiff."  *Id.*, 53.  While federal courts, under federal statutes, had required contemporaneous time-records, State courts "have specifically rejected the 'hard and fast rule that reconstructed time records can never serve as a basis for compensation' in favor of wider trial court discretion in evaluating fee petitions."  *Id.*   Rejecting that defendants' attempt to import federal record-keeping requirement, the Court held

> State law creates the substantive right to attorney's fees . . . a right which cannot be deprived by applying the contemporaneous time records rule adopted in this Circuit.

16

*Id.* (citations omitted).

*Riordan* was expressly reiterated by the Second Circuit itself, *D'Jamoos v. Griffith*, 340 F. App'x. 737, 741-42 (2nd Cir. 2009), and continues to be good law, *see, e.g., Jim Billado Roofing, LLC v. Custom Copper & Slate, Ltd.*, 2010 WL 1881097 (D. Vt. May 10, 2010).

New York courts consider "the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved." *Schwartz v. Chan*, 142 F. Supp. 2d 325, 331 (E.D.N.Y. 2001). The party requesting an award of attorney fees based on reconstructed time records has the burden of providing sufficient documentation. *Id.* Plaintiffs did so, producing documentation of over 1200 e-mails and 300 phone calls, apart from the deposition transcripts, videos, and other documents. For example, Altman conducted depositions, which is clear from the transcripts, and had innumerable conversations with Defendants' counsel about discovery and settlement, which are also backed up by emails.

Defendants raise conclusory objections, but fail to cite a single instance where Mr. Altman's reconstructed time was not sufficiently documented. That is not surprising, since Defendants' counsel themselves were witnesses to many such instances; they were present for depositions, for example. Thus, Mr. Altman's time should be properly considered.

Defendants' reliance upon *Scott* 626 F.3d 130, is misplaced. First, *Scott* did not overrule *Riordan's* articulation of a different rule for record-keeping for attorneys' fees under State law. *Riordan* was not cited, mentioned, or even referred to in *Scott* 626 F.3d 130, which dealt with a fee application under FLSA, not under State law. Thus, *Scott* is inapplicable here since the fees sought are proper under Section 349 anyway.

Second, in any event, *Scott* acknowledged that there could be exceptions even to the

federal contemporaneous rule.  It did not preclude this court from considering the totality of the evidence to find that the time was sufficiently proved.  Altman has provided substantial documentary evidence based upon time-stamped information which took place over a very short period of time in the conduct of this case.  Defendants do not deny that these activities took place- activities they themselves were part of.  They simply argue they should be denied because of a technicality.  That would be wholly unjust.[16]

Defendants' objections to Mr. Altman's rate is equally misconceived.  While he may have been *licensed* as an attorney for just two years, his technical expertise in e-discovery and document review, and his considerable experience in depositions abundantly justify the rate.  Plaintiffs presented several affirmations from respected attorneys attesting to the fairness of the rate.  In the face of these facts, Defendants' objections are baseless.

VII.    Defendants' Request For Discovery Is Baseless

Defendants' request for discovery and deposition of all Plaintiffs' counsel is improper, unwarranted, and nothing more than an attempt to harass Plaintiffs' counsel and further needlessly prolong this five year old litigation.  Defendants do not cite a single case in support of this request *see* DM39-40.  In fact, the United States Supreme Court itself has cautioned that "A request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *accord, Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 2010 WL 2593522 (S.D.N.Y. June 28, 2010).

---

[16]*Scott*'s reversal was based upon the trial court's seemingly inconsistent review of the fee application.  On the one hand, the trial court found substantial concerns about the documentary backup for the fee application.  On the other hand, the trial court gave the applicant the benefit of the doubt.  It was this inconsistency that troubled the Second Circuit.

Further, Defendants' demand for Plaintiffs' counsel's retainer agreements with Plaintiffs was already rejected by Judge Gwin in the conference of November 15, 2010, a fact which Defendants have not disclosed to Your Honor.

Lastly, the discovery demand attempts to saddle this Court with more than the restricted order of reference from Judge Gwin of November 15, 2010 (dkt 137).

<u>CONCLUSION</u>

In view of the aforesaid and the accompanying Chittur affirmation, the Court may award attorneys' fees and expenses of $3,499,974.

Dated: New York, NY
      February 4, 2011               **CHITTUR & ASSOCIATES, P.C.**

                                     Sd/

                         By:  Krishnan Chittur, Esq. (KC 9258)
                         286 Madison Avenue Suite 1100
                         New York, New York 10017
                         Tel: (212) 370-0447
                         Attorneys for Plaintiffs

19