**United States District Court**
**Southern District Of New York**

| | |
|---|---|
| Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler, Gordon Redner, and Thomas J. Smith, Plaintiffs<br><br>v.<br><br>Northern Leasing Systems, Inc., Jay Cohen, Rich Hahn, and Sara Krieger<br><br>Defendants | 06 CV 1625 (JIG) |

**Reply Affirmation of Krishnan Chittur, Esq., in**

**Further Support of Application For Attorneys' Fees and Expenses**

Krishnan Chittur, an attorney duly admitted to the bar of this Court and elsewhere, being duly sworn, states as follows under penalties of perjury:

1.　I am the principal of Chittur & Associates, P.C., attorneys of record for the plaintiffs abovenamed.  I submit this reply affirmation in further support of our fee application in order to correct the misstatements in Defendants' filings, and to adjust the fee application to remove entries as to which legitimate questions have been raised and to add the time spent in formalization of the settlement and on the fee application.

<u>Defendants' *Real* Business, Plaintiffs' Reasons for Settlement</u>

2.　While it is improper to argue the merits of the case at this stage, Defendants seem to have made that the thrust of their defense, and present a completely misleading portrayal of themselves and their business.  We refrain from a similar full-scale discussion of the merits, but merely point out salient facts that we have uncovered in several years of litigation.

3. Discovery here revealed the truth of the Missouri Attorney General's assertion that Defendants are in the business of leasing out $300 machines for $4,000 or more.[1] Since no one, fully informed, would consent to such a transaction, Defendants paid huge commissions to their allegedly independent vendors - about $2,000 for these $300 gizmos - for obtaining victim's signatures on their alleged "leases" by hook or by crook or by forgery. Defendants then collected whatever they wanted from the victim's bank accounts. Since they never sent any invoices or statement of account, this made for a perfectly sneaky self-help. The bulk of victims were largely from out of state, so that the expenses of long-distance litigation led most victims to pay tribute.

4. A very small number of victims objected. And when they were bold enough to come to the City Civil Court, Defendants cited Defendants' own electronic deductions from the victims' bank accounts to claim that the victims had actually "made" these payments, thereby "ratifying" the Lease. In other words, Defendants used their own sneaky self-help to validate the alleged lease, as they did in their lawsuit against Russ.

5. Thus, by Defendants' own documents, for example, they <u>knew</u> that the Russ leases were forged long before Defendants brought the lawsuits: As early as August 21, 2002, Mr. Russ had submitted the requisite affidavit of forgery - a form drafted and sent by Defendants to him - and annexed copies of his passport with visa entries, affidavits, and even an ATM receipt from Ukraine. "Ex. 1," Russ Affidavit of Forgery produced by Defendants.

---

[1] Missouri Attorney General's News Release, April 9, 2007, available at http://ago.mo.gov/newsreleases/2007/040907b.htm, *Firm that leases credit card machines defrauded small businesses in Missouri of thousands of dollars, Nixon says*. "Through a web of misrepresentation and fraud, . . . Northern Leasing entangled [small businesses] in contracts where the businesses were obliged to pay much more than the machines were worth." *Id*.

Nevertheless, Defendants sued him personally in July 2003 - about a year later - for about $9,000, and actively prosecuted these lawsuits in the City Civil Court until it was dismissed by that Court. "Ex. 2," Decision of Judge Jaffe.[2]

6.     Defendants' attempt to present an innocuous picture of their business is understandable but untrue. The outrageous facts here were hardly isolated.  For example, Plaintiffs had listed Mr. Stephen Turner and Ms. Jaya Patel as trial witnesses to Defendants' racketeering pattern at issue.  Defendants sued Turner's brother, the late Edward Turner, and Turner's company based on three alleged leases wherein Edward Turner's signatures were - <u>indisputably</u> - fraudulently obtained while he was under 14 different sedatives in the Intensive Care Unit of an Arizona hospital.  So also, Defendants sued Ms. Patel on a fraudulent lease and obtained a default judgment against her; when she moved to vacate the default and sought damages, Defendants - consistent with their racketeering pattern - did not even show up in Court, and she obtained a judgment for $4,645.31.

7.     Thus, Plaintiffs' claims were strong, and the evidence would bear out the racketeering scheme at issue.  Plaintiffs strongly expected to prevail at trial.

8.     Nevertheless, Plaintiffs accepted a settlement offer which was lower than their settlement demand, because Plaintiffs were seriously concerned with Defendants' tottering finances.  Public records reveal that Defendants have repeatedly defaulted in paying their monthly rent, due to which their landlord has drawn down on their security deposit. *Northern*

---

[2] Defendants brought Barry Cozier, a former judge of the Appellate Division, First Department, to appear before the City Civil Court in their $9,000 case against Russ.  The conclusion is inescapable that Defendants consistently made an overwhelming use of formidable resources to dissuade Plaintiffs - or more properly, Plaintiffs' counsel - from continuing with this lawsuit.

*Leasing Systems, Inc. V. Penn Tower LLC*, 602072/09 (N.Y. Sup. N.Y. Co); Ex. 3, Friedlander aff. Defendants have also repeatedly defaulted in paying their dues to the bank, *Sovereign Bank v. Northern Leasing*, 1:10-CV-05530 (AKH) (S.D.N.Y.); "Ex. 4," Rule 54.1 Statement of Undisputed Material Facts. Further, Defendants faced significant liability in *Pludeman v. Northern Leasing Sys.*, 74 A.D.3d 420 (1st Dep't 2010), where a class has been certified and summary judgment granted for the class, 27 Misc.3d 1203 (N.Y. Sup. 2010).

   9. Thus, Plaintiffs were concerned about Defendants being judgment-proof. Under the circumstances, Plaintiffs acceptance of the settlement offer was imminently reasonable.

Defendants' Objections Are Specious

   10. The accompanying reply memo addresses the legal infirmities in Defendants' objections, and this affirmation is to attest to the underlying facts therefor.

   11. First, Defendants speculate about the possibility of certain time-entries being for work in other cases. But in fact, the time sheets presented here are solely attributable to this case. While my firm also has other cases against Defendants, time spent on those cases are billed separately to those cases. Thus, Defendants' attempt to impugn our time entries on that ground, DM 27 n.23, are misconceived. Thus, for example, the entries entitled "Email to" are all emails concerning litigation strategy in this case.

   12. Second, Defendants question whether the litigation expenses herein would be recovered from the settlement funds of $295,000. As stated in my earlier affirmation, the $295,000 is going entirely to Plaintiffs.

13.     Third, Defendants' assertion that Plaintiffs "agreed" to absolve the Individual Defendants of all liability is false. There was never any such discussion or agreement. As Mr. Altman stated forthrightly in his affirmation submitted to the Court earlier,

> During the negotiations, Mr. Lillienstein never stated that the individual defendants were taking a different position than Northern Leasing with respect to the settlement. He never mentioned, referred to or even raised the issue of the individual defendants being treated differently from Northern Leasing. Also, there was no discussion or mention whatsoever about whether Plaintiffs were willing to waive the individual defendants' joint and several liability.

"Ex. 5," Altman Declaration Nov 24, 2010.

14.     Fourth, Defendants question the need for my presence at certain depositions. I was the principal trial counsel. I was in regular touch with the Plaintiffs. I had shepherded the case through the City Civil Court, and was familiar with the paper documents produced. I brought Mr. Altman into the case primarily for e-discovery purposes. He reviewed the electronic discovery produced by Defendants, and conducted depositions. Thus, Mr. Altman's responsibilities were distinctly different from mine. I attended two depositions fully - the Custodian of Records depositions of Ms. Krieger and Mr. Krebs - because these were critical under the circumstances and the discovery runaround that Defendants had been giving us. Thus, it was necessary for both of us to attend that.

15.     I was present just for a few minutes in two other depositions (Sussman and Buono). This was to get a sense, for trial purposes, of these two individuals and how they would come across as witnesses. Thus, the remaining time in those two entries (October 12 and 14), were spent on the other items specified therein. All these items are thus proper and compensable.

5

16. Fifth, Defendants assert that Mr. Strutinskiy billed 53.1 hours "for videotaping seven (7) depositions," DM29. This is false and misleading. In fact, Mr. Strutinskiy performed a dual function at those depositions: as attorney assisting the deposition and as videographer. That actually saved the cost of a separate videographer of $11,200 for the seven depositions.[3]

17. Sixth, Defendants object to the time spent on this fee application as well as the time spent after the November 10th agreement. But that was clearly necessary and proper. We filed the first letter-motion to clarify the terms of the Settlement,[4] since there had never been any discussion of the individual defendants separately. The Court clarified this, and ruled that Defendants' November 21st draft was "fully consistent" with the November 10th agreement. But even thereafter, Defendants continued sending re-draft after re-draft after re-draft, the first few of which we reviewed. When it became clear that these re-drafts were pretexts for delaying payment, we promptly executed and tendered Defendants' own November 21st draft. Defendants balked, which necessitated the second letter-motion for immediate payment of the settlement funds. We prevailed, and the Court ordered Defendants to pay the funds "immediately." Dkt. 147. The Court found that the November 21st draft - that we had accepted and signed - was "fully consistent"; Defendants could and should have simply accepted that instead of indulging in endless re-drafts and making us expend the time. That time is fully compensable. Defendants

---

[3]The standard market rate for a videographer is $350 for 2 hours, and $150 for every subsequent hour, a total of $1,450 for a 7-hour deposition. Ex. 6, Veritext quotation.

[4]Interestingly, Defendants themselves stated in a recent letter to Judge Gwin that their November 21st draft was not "fully consistent" with the November 10th agreement. Ex. 7.

6

have finally tendered the check for $295,000, about three months after the November 10, 2010 settlement.

   18. Seventh, Defendants' requests for discovery and depositions of all Plaintiffs' counsel is manifestly improper, and a clear attempt to drag this case endlessly. For example, in the November 15th conference, Judge Gwin expressly rejected Defendants' demand for Plaintiffs' retainer agreements, but they nevertheless continue to seek it - without disclosing that it had been denied, DM14 n.9. This is improper.

   19. Eighth, Defendants object to my conducting legal research. My firm is a small firm, with just myself and Mr. Strutinskiy. While I am a senior attorney, it is necessary for me to conduct legal research whenever necessary. Otherwise, small firms and solo practitioners would not even be able to practise law. Thus, the time spent on this was reasonable, proper, and compensable.

Adjustments To Fee Application

   20. Since December 30, 2010, I have spent 58.8 hours. "Ex. 8," time sheets from December 30, 2011.[5] These time-sheets are also contemporaneously maintained in Amicus software.

   21. In addition, Mr. Strutinskiy has spent 20 hours, as detailed in his affirmation.[6] "Ex. 10."

---

[5] This also includes time from December 30, 2010, spent after the time-sheets were printed out for e-filing that day. Hence, this is not duplicative of another entry of the same date in the opening papers.

[6] Of this, 1 hour is an estimate of the time anticipated to be spent after the time-sheet printout was obtained.

7

22. Further, we have also incurred additional expenses of $485.39.[7] "Ex. 9." Additional expenses.

23. Moreover, as explained in the accompanying memo, I have reduced some of the entries earlier submitted by $3,517.50. Thus, the amended fee application is as follows:

| Description | Rate | Number | Amount |
|---|---|---|---|
| Krishnan Chittur | $600 | 560 + 58.8 = 618.8 hrs | $371280 |
| Andrey Strutinskiy | $350 | 617.2 + 20 = 637.2 hrs. | $223,020 |
| Keith Altman & other Finkelstein lawyers | $425 | 582.3 hours | $247,477.50 |
| Seth Lesser | $660 | 8.5 hours | $5,610 |
| H. Rajan Sharma | $350 | 58.43 hours | $20,450.5 |
| Total | | 1,826.43 + 77.9 = 1905.23 hrs | $867,838 |
| Less Reductions | | | ($3,517.50) |
| Total after reduction | | | $864,32.50 |
| Multiplier of 4 | | | $3,457,282 |
| | | | |

---

[7]A major portion of this expense, $478.00 is for obtaining a copy of the videotape of Defendants' deposition. We had an agreement with Defendants' counsel that both sides would exchange, free of cost to the other, copies of videotapes of depositions. While Plaintiffs complied with this fully and submitted copies of all videotapes of depositions taken by Plaintiffs, Defendants never did so and consistently ignored my repeated reminders to this effect.

| Expenses | | | |
|---|---|---|---|
| Chittur & Associates | | $41,275.45 + 485.39 = $485.39 | $41760.84 |
| Finkelstein & Partners | | | $931.20 |
| Total Expenses | | | $42,692.04 |
| | | | |
| Grand total | | | $3,499,974 |

24.    In view of the aforesaid, and the reasons in the accompanying papers, the Court may grant Plaintiffs' attorneys' fees and expenses in the amount of $3,499,974

Dated: February 4, 2011

Sd/
_____
Krishnan Chittur, Esq.