SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
NORTHERN LEASING SYSTEMS, INC.

                                                      Index No. 602072/09

                          Plaintiffs,

                                                      <u>AFFIRMATION</u>

        -against-

PENN TOWER , LLC,

                          Defendant.
------------------------------------------------------------------X

        **MARK S. FRIEDLANDER, ESQ.**, an attorney duly admitted to practice hereby affirms under penalty of perjury as follows:

        1.     I am the attorney for the above named Defendant, and I am personally familiar with the fact and circumstances surrounding this litigation and now offer this affirmation in opposition to Plaintiff's application for a "Yellowstone Injunction".

## <u>BACKGROUND</u>

        2.     This application was ostensibly precipitated by the service of a Notice To Cure served by Defendant upon the Plaintiff seeking the restoration of the letter of credit maintained by Plaintiff as the security deposit for its performance of its obligations under the Lease between the parties. Copy of the Notice is annexed as Exhibit "A" under Plaintiff's Order to Show Cause.

        3.     What is not revealed in this Notice, nor in the moving papers, is the history of Plaintiff's chronic failure to pay its rent since January 2009. This ongoing failure by Plaintiff to perform its most fundamental obligation under the Lease (see Exhibit "B" under Plaintiff's Order to Show Cause), the payment of rent and additional

rent is fully described in the companion affidavit of Ms. Katherine Henry, part of the management team at the real estate broker Cushman and Wakefield, which manages the Premises in issue.

4. Plaintiff makes much of the fact that no notice to cure was served before the security deposit was drawn down by Defendant by submitting a sight draft to Plaintiff's bank asking to withdraw funds from Plaintiff's letter of credit in the amount of the rent then owed. See paragraphs 12 and 15 of the **SEMAYA** affirmation. Such contention is belied by a cursory reading of the salient provisions of the Lease.

5. The most telling flaw in the argument present in the **SEMAYA** affirmation is the misplaced reliance upon article 17 of the Lease as a basis for requiring written notice before Defendant could invade Plaintiff's security deposit. Article 17 of the lease is what is commonly known as a conditional limitation, which in this case was drafted to include the non-payment of rent as a basis for terminating Plaintiff's lease. *See* Rasch New York Landlord and Tenant 2nd Edition §32.04. This Article 17 is not a general notice provision and is only to be employed should the Defendant Landlord seek to terminate the Lease for non-payment of rent, invoking the conditional limitation that is the essence of this lease provision.

6. The fact that Plaintiff would attempt to use this Article 17 which is specifically crafted as a mechanism for the forfeiture of Plaintiff's lease, as a conditional limitation, demonstrates how desperate Plaintiff really is. Plaintiff, by asserting that Defendant has failed to give Plaintiff written notice of its default pursuant to Article 17 of the Lease as a condition precedent to drawing down upon the letter of credit, has either

2

failed to discern the import of Article 17 as a conditional limitation or is intentionally misrepresenting to this Court the true purpose of this lease provision.

7. Moreover, this entire application is a study in misdirection. Plaintiff comes before this Court in the posture of an aggrieved tenant. However, Plaintiff does not reveal to this Court anywhere in the moving papers that it has broken numerous promise to "catch up" on its rent arrears as detailed in the companion **HENRY** affidavit. Plaintiff's persistent failure in paying the rent and additional rent owed foreshadows Plaintiff's inability to demonstrate that is prepared to cure its default and maintains the ability to cure the default in issue. *See 225 East 36th Street Garage Corp. v. 221 East 36 Owners Corp.*, 211 AD2d 420.

8. Plaintiff in its moving papers has failed to posit to this Court that it is truly a viable candidate for a "Yellowstone Injunction". Plaintiff does have a valid commercial lease and Plaintiff has received a Notice To Cure but these are only two parts of the recognized judicial litmus needed to obtain such injunctive relief. *See 225 East 36th Street Garage Corp. v. 221 East 36 Owners Corp., supra.* Plaintiff does not in the moving papers demonstrate to this Court that it has met the final and critical branch of that test: that it is prepared to cure the alleged default and has the ability to cure such default by delivering to Plaintiff the sum of $590,181.53.

9. Absent a clear and convincing showing by Plaintiff that it is prepared to cure the default asserted in the Notice to Cure and maintains the ability to do so, this Court is compelled to deny the application for a "Yellowstone Injunction".

3

## PLAINTIFF'S MOTION FOR A "YELLOWSTONE INJUNCTION" SHOULD BE DENIED

10. It is well settled that a "Yellowstone Injunction" is a preferred remedy available to a commercial tenant confronted by a threat of termination of its Lease, so that such tenant may protect its investment in the leasehold by obtaining a stay tolling the cure period so that upon adverse determination on the merits the tenant may cure the default and avoid a forfeiture. *See Walbaum, Inc., v. Fifth Avenue of Long Island Realty Associates*, 85 N.Y.2d 600.

11. Accordingly, this Court under such circumstances will exercise its equitable jurisdiction to prevent an undue forfeiture of the leasehold, provided that the commercial tenant seeking such relief can demonstrate: (1) that it holds a commercial lease; (2) that it receive from the Landlord a Notice of Default/Notice to Cure; (3) that the application for such injunctive relief is sought prior to the determination of the Lease; and (4) such commercial tenant was prepared and maintained the ability to cure the alleged default by any means short of vacating the premises. *See 225 East 36th Street Garage Corp. v. 221 East 36 Owners Corp.*, 211 AD2d 420.

12. Affirmant now submits to this Court that the Plaintiff herein is not prepared to cure the claimed default under the lease and does not have the ability to cure the default that is alleged in the Notice To Cure that is annexed as Exhibit "A" in the instant application being considered by this Court. There is nothing submitted on behalf of the Plaintiff Tenant which demonstrates to this Court that this Plaintiff now has the financial ability to replenish the sum of $590,181.53 drawn down upon the letter of credit offered as security for this Plaintiff's dutiful performance of the Lease annexed as Exhibit "B" to Plaintiff's moving papers.

4

13.     This Court should note that this litigation has its genesis in Plaintiff's failure to pay its rent as it came due starting in December 2008. The chronic default in payment of rent is detailed in the companion affidavit of Kathleen Henry. The unequivocal default by Plaintiff in the most fundamental obligation under its lease (see Exhibit "A") to pay the rent and additional rent as it came due is nowhere disputed by Plaintiff.

14.     Instead, Plaintiff urges a disingenuous argument that Defendant wrongfully drew down upon the letter of credit without having given Plaintiff notice of such default, despite the fact that Article 46 of the Lease does not have any such notice requirement and there is no other term of the Lease that requires Plaintiff be given written notice of such default before Defendant avails itself of the right to withdraw from the letter of credit the amount of rent arrears owed by Plaintiff. See Exhibit "A."

15.     The companion **HENRY** affidavit details for this Court Plaintiff's failure to timely pay its rent which eventually led to Defendant's exercise of its rights under Article 46 of the Lease annexed as Exhibit "A". This history is relevant to this motion because it augurs Plaintiff's inability to cure the default that is the focus of this litigation. This clear inability of Plaintiff to muster the financial resources to replenish the security deposit mandates the denial of this application for a "Yellowstone Injunction". *See Post 120 East End Avenue Corp.*, 162 NY2d 19; *225 East 36th Street Garage Corp. v. 221 East 36th Street Owners Corp., supra.*

16.     Plaintiff's inability to cure the claimed default is underscored by the fact that Plaintiff presently owes the sum of $235,622.23 in rent arrears as evinced by the computer print out annexed as Exhibit "E". This document shows electric charges for

5

electricity consumed by Plaintiff in May and June 2009 but is not posted to the account until August 1, 2009. It has always been the custom and practice between the parties that such billing follows the actual consumption of the electricity because of the time that it takes for the meters to be read. The statement of charges annexed as Exhibit "E" shows all charges that have accrued during the month of July 2009, however the charges will not be actually billed to Plaintiff until August 1, 2009.

17. The most telling reason that this Court should recognize as the basis for denying this application is the untenable claim in paragraph 23 of the **SEMAYA** affirmation that " **THERE IS NO DEFAULT UNDER THE LEASE**". This erroneous statement is manifest from Plaintiff's chronic non-payment of rent which led to Defendant's exercise of it rights under Article 46 of the Lease. In turn this default in the payment of rent resulted in the ensuing demand by Defendant that Plaintiff replenish the amount of the security deposit withdrawn by Defendant. All of this is spelled out distinctly in the Notice to Cure annexed as Exhibit "A" in Plaintiff's own motion papers.

18. Similarly, this position urged by Plaintiff and its counsel that there is no default as evidenced by the reading of the "plain language of the Lease, at Articles 17 and 46..." is legally untenable. Affirmant respectfully submits that the "plain language of the Lease, at Article 17..." shows that such lease provision is the well-established conditional limitation common to most commercial leases. *See* Rasch New York Landlord and Tenant 3rd Edition §32:42; *Grand Liberte Cooperative, Inc. v. Bilhaud*, 487 NYS2d 250 (1st Dept 1984); *AWRP Properties, Inc. v. 506 Broadway, Inc.*, 875 NYS2d 818 (1st Dept 2008). In point of fact the language in Article 17 of the Lease is lifted directly from Article 17 of the New York Real Estate Board Commercial Lease, a copy of

6

which is annexed as Exhibit "CC." The language in Article 17 is not a notice to cure provision as urged by Plaintiff and its counsel. This lease provision is divided into two elements which must be met as a condition precedent to the termination of the Lease. *See, Grand Liberte Cooperative, Inc. v. Bilhaud, supra.; AWRP Properties, Inc. v. 506 Broadway, Inc., supra.*

19. The "plain language of Articles 17 and 46" of the Lease reveal that there is **no notice to cure required** when Plaintiff defaults in the payment of its rent and Defendant wishes to avail itself of the remedy available under Article 46 to draw down upon the security deposit rather than seeking to terminate the Lease pursuant to Article 17. Article 46 makes it plain that Defendant's remedy is self executing without the need for any written notice. Accordingly, the withdrawal of the security deposit by Defendant was proper just as the demand upon Plaintiff to replenish it was.

20. Affirmant respectfully submits to this Court that Defendant had the unequivocal right to draw down upon Plaintiff's Letter of Credit without any prior notice. This remedy was necessary when it became apparent that Plaintiff was not able to rectify its chronic default in rent payment as detailed in the companion **HENRY** affidavit. Consequently, Defendant had the further right to demand that the Security Deposit be replenished as demanded in the Five Day Notice sent to Plaintiff pursuant to Article 46 of the Lease and when that demand went unheeded. See Exhibit "A" in Plaintiff's moving papers. Defendant then had the equally valid right to take steps pursuant to Article 17 to terminate Plaintiff's Lease.

21. Plaintiff should not be allowed by this Court to obscure these facts with an improper interpretation of Articles 46 and 17 of the Lease. There is absolutely no basis

for claiming that Article 17 of the Lease requires a notice to cure before Defendant can exercise its right under Article 46. Such contorted interpretation of Article 17 arises from a failure to understand the significance of that lease clause as a conditional limitation. *See* Rasch New York Landlord and Tenant 3rd Edition § 32:42.

22. Affirmant respectfully submits to this Court that Plaintiff urges this desperate argument that Article 17 requires a Notice to Cure before Defendant can exercise any rights under Article 46, because it has no valid argument to posit in opposition to the steps taken by Defendant to assert its rights under the Lease. This Court should not be persuaded by such an obvious ploy calculated to hide the fact that Plaintiff is unprepared and unable to cure the default now in dispute.

23. The ineluctable conclusion that this Court should reach is that the instant application for a "Yellowstone Injunction" should be denied.

**WHEREFORE** Affirmant respectfully requests that this application be denied in all respects as such other and further as to this Court seems just and proper.

Dated:  New York, New York
        July 10, 2009

                                                    MARK S. FRIEDLANDER