SCHIFF HARDIN LLP
Louis T. DeLucia
Carl W. Oberdier
Matthew L. Curro
900 Third Avenue
New York, NY 10022
212-753-5000
212-753-5044 (facsimile)
*Attorneys for Sovereign Bank*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SOVEREIGN BANK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NORTHERN LEASING SYSTEMS, INC., ) <br> ) <br> Defendants. ) <br> ) | Case No. 1:10-CV-05530 (AKH) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS
PURSUANT TO LOCAL RULE 56.1 IN SUPPORT OF
PLAINTIFF SOVEREIGN BANK'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, plaintiff Sovereign Bank ("**Sovereign**") submits the following Statement of Undisputed Material Facts as to which plaintiff contends there is no genuine issue to be tried:

**The Loan Agreements and Guaranties**

1. This action involves three (3) servicer limited guaranties executed by Northern Leasing Systems Inc. ("**Northern**"), pursuant to which Northern agreed to guaranty certain payment obligations in connection with various loans made by Sovereign to two of Northern's affiliates – Northern Capital Associates XVI, L.P. ("**Associates XVI**") and Northern Capital Associates XII, L.P. ("**Associates XII**," and together with Associates XVI, the "**Borrowers**").

*See* Declaration of William Kendall in Support of Sovereign Bank's Motion for Summary Judgment (the "***Kendall Decl.***"), ¶ 2.

2. The Borrowers sought and obtained Loans (as defined below) from Sovereign for the purpose of purchasing from Northern certain pools of leases Northern had assembled and the related equipment. The leases, and the related equipment, were then pledged as collateral to Sovereign to secure the Loans. Northern thereafter serviced, and continues to service, the leases that comprise Sovereign's collateral under the Loan Agreements (as defined below). *See* Kendall Decl. ¶ 4.

3. Sovereign loaned approximately $89 million to the Borrowers pursuant to the following transactions and documents:[1]

    a. In 2007, Sovereign advanced approximately $50 million to Associates XII (the "**2007 Loan**"). The 2007 Loan is governed by that certain Master Loan and Security Agreement, dated August 29, 2007, by and between Sovereign and Associates XII, which was thereafter amended and restated by that certain Amended and Restated Master Loan and Security Agreement dated September 4, 2009 (the "**2007 Loan Agreement**"). *See* Kendall Decl., Ex. 1.

    b. In 2008, Sovereign advanced an additional approximately $24 million to Associates XII (the "**2008 Loan**," and together with the 2007 Loan, the "**Original Loans**"). The 2008 Loan is governed by that certain Master Loan and Security Agreement, dated July 2, 2008, by and between Sovereign and Associates XII, which was thereafter amended and restated by that certain Amended and Restated Master Loan and

---

[1] Capitalized terms used, but not defined, herein shall have the meanings ascribed to such terms in the Loan Agreements (as hereinafter defined).

Security Agreement dated September 4, 2009 (the "**2008 Loan Agreement**"). *See* Kendall Decl., Ex. 2.

      c.      Pursuant to that certain Loan and Security Agreement, dated September 4, 2009, Sovereign and the Borrowers agreed to certain amendments to the 2007 Loan Agreement and 2008 Loan Agreement, and Sovereign agreed to make one additional term loan of approximately $15 million (the "**2009 Loan**," and together with the Original Loans, the "**Loans**") to Associates XVI. The 2009 Loan is governed by that certain Loan and Security Agreement, dated September 4, 2009, by and between Sovereign and Associates XVI (the "**2009 Loan Agreement**," and together with the 2007 Loan Agreement and the 2008 Loan Agreement, the "**Loan Agreements**"). *See* Kendall Decl., Ex. 3.

4.      Each advance made by Sovereign was evidenced by the following Promissory Notes executed by the respective Borrower:

| **Title** | **Borrower** | **Amount** | **Effective Date** |
|---|---|---|---|
| Amended and Restated Promissory Note No. 1 | Associates XII | $14,465,620.58 | August 29, 2007 |
| Amended and Restated Promissory Note No. 2 | Associates XII | $17,283,357.67 | September 27, 2007 |
| Amended and Restated Promissory Note No. 3 | Associates XII | $18,434.078.33 | October 31, 2007 |
| Amended and Restated Promissory Note No. 1 | Associates XII | $7,980,626.21 | July 2, 2008 |
| Amended and Restated Promissory Note No. 2 | Associates XII | $8,033,660.78 | September 5, 2008 |
| Amended and Restated Promissory Note No. 3 | Associates XII | $4,027,648.81 | October 30, 2008 |
| Amended and Restated Promissory Note No. 4 | Associates XII | $3,975,418.02 | December 30, 2008 |
| Promissory Note No. 1 | Associates XVI | $14,999,158.18 | September 4, 2009 |
| **Total:** | | **$89,199,568.58** | |

*See* Kendall Decl., Exs. 4 – 11.

5.     As of the date hereof, the total outstanding principal balance of the Loans is not less than $34,880,000, plus accrued interest, costs and other fees, such as attorneys' fees and expenses, to which Sovereign is entitled to under the Loan Agreements.  *See* Kendall Decl. ¶ 7.

6.     Northern executed certain Servicer Limited Guaranties, originally dated as of August 29, 2007, July 2, 2008, and September 4, 2009, respectively (collectively, the "**Guaranties**"),  pursuant to which Northern agreed to guarantee certain of the Borrowers' payment obligations due from time to time under the Loan Agreements to Sovereign up to an aggregate amount equal to ten percent (10%) of the original principal amount of the Loans (such amount aggregating to approximately $8.9 million).  *See* Kendall Decl., Exs. 12 – 14.

### Northern's Payment Obligations

7.     Under the Loan Agreements, the Borrowers must repay each of the Loans pursuant to separate amortization schedules issued in connection with each promissory note and related advance.  On each Payment Date, which is defined to be the 15th of each month, the Borrowers must pay to Sovereign the Required Payment (among other amounts).  *See* Kendall Decl. ¶ 9.

8.     Pursuant to the Loan Agreements, there are three (3) distinct sources (the "**Funding Sources**") from which funds are derived to pay when due the monthly Required Payments under the Loans, as follows:

a.     <u>ACH Payments</u>:  The underlying leases are structured so that the lessees primarily make their lease payments via electronic account draft through the National Automated Clearing House ("**ACH**") system directly to a Lockbox Account, which is maintained by Northern at First Premier Bank, which Lockbox Account is subject to a lien in favor of Sovereign. The funds in the Lockbox Account are periodically wire transferred out of the

Lockbox Account to an account held at, or directly controlled by, Sovereign. *See* Kendall Decl., Exs. 1 – 3, § 8.3(c).

    b.  <u>Square-up Payments</u>: Not all of the underlying lessees make their required lease payments directly to the Lockbox Account via the ACH system, and some payments are made via standard check or other payment method directly to Northern, as servicer. Northern has an obligation under the Loan Agreements to periodically remit to Sovereign or the Lockbox Account portions of the monies it receives from the underling lessees (net of certain amounts that Northern is entitled to keep) in the form of "Square-up Payments," which are due on the applicable Determination Date, which is three (3) business days before the Payment Date. *See* Kendall Decl., Exs. 1 – 3, § 8.3(b)

    c.  <u>Reserves</u>: Lastly, various reserve accounts were established under the Loan Agreements to provide a source of funds to cover, in part, any possible shortfall in payments due from the Borrowers from time to time after application of funds obtained from the other two (2) Funding Sources. If the amounts defined from the above described two (2) Funding Sources are insufficient to cover the periodic amounts due from time to time to Sovereign, Sovereign is authorized to use funds in the reserve accounts to be applied to the Required Payment. *See* Kendall Decl., Exs. 1 – 3, § 2.7.

  9.  Northern's obligations under the Guaranties are triggered when the amounts received by Sovereign from the three (3) Funding Sources are insufficient to cover the Required Payment. Thus, under Section 8.3(d) of the Loan Agreements and Section 3.1 of the Guaranties, if, on any Determination Date, the amounts received by Sovereign from the three (3) Funding Sources are insufficient to satisfy the amounts due to Sovereign on the applicable Payment Date, such insufficiency is a "Payment Deficiency" and Northern is required to pay into the Lockbox

Account or an account designated by Sovereign such Payment Deficiency. Specifically, the relevant provisions of the Loan Agreements and Guaranties are as follows:

### Section 8.3(d) of the Loan Agreement

In the event that on any Determination Date the aggregate of the amounts received by Lender during the relevant Due Period directly from the Lockbox Account and amounts received from Servicers in the form of the Square-up Payment, after the payment of the amounts set forth under Section 8.3(c)(i), are not sufficient to pay to Lender the amount required under Section 8.3(c)(ii) including the Required Payment after the application of the Reserves and the Additional Reserves for such purpose, Servicer shall, on such Determination Date, pay directly into the Lockbox Account or into an account at Sovereign Bank as directed by Lender by wire transfer the Payment Deficiency as defined in the Servicer Guaranty, but only to the Maximum Amount as defined therein.

*See* Kendall Decl., Exs. 1 – 3, § 8.3(d).

### Section 3.1 of the Guaranties

Pursuant to the Loan Agreement, Borrower is required, on each Payment Date, to make payment on the Loan to Lender in accordance with the Amortization Schedule from the Contract Receivables and other proceeds of the Collateral collected by Guarantor, as Servicer of the Contracts, and deposited into the Lockbox Account. If on any Determination Date, the funds available for payment to Lender in the Lockbox Account are less than the amounts required to be paid under Section 8.3(c)(ii) of the Loan Agreement, Guarantor [Northern] shall, on such Determination Date, without notice from Lender, deposit into the Lockbox Account, the amount of such deficiency (the "**Payment Deficiency**"); provided, that, Guarantor shall not be obligated to fund Payment Deficiencies in excess of an aggregate amount equal to the Maximum Payment Amount.

*See* Kendall Decl., Exs. 12 – 14, § 3.1.

### Events of Default Under the Loan Documents and Northern's Failure to Remit the Payment Deficiencies

10. Northern has defaulted on its payment obligations under the Loan Agreements and Guaranties no fewer than five (5) times. On each of the Determination Dates for June, July, August, September and October 2010, the amounts received by Sovereign from the three (3) standard Funding Sources were insufficient to cover the total amounts due under the Loan

Agreements on the applicable Payment Dates. The aggregate Payment Deficiencies for those months was $2,714,724.16. Accordingly, in each instance, Northern's obligation to fund the respective Payment Deficiency was triggered, but Northern failed to remit to the Lockbox Account or to pay to Sovereign the Payment Deficiencies (each failure, a "**Payment Default**"). These Payment Defaults were as follows:

| Payment Date | Total Scheduled Amount Due | Total Amount Received by Sovereign (inclusive of all reserves and credits) | Unpaid Payment Deficiencies Owed by Northern |
|---|---|---|---|
| June 15, 2010 | $2,222,160.49 | $1,307,085.23 | ($915,075.26) |
| July 15, 2010 | $2,197,422.64 | $1,787,071.76[2] | ($410,350.88) |
| August 15, 2010 | $2,162,357.09 | $1,728,086.69[3] | ($434,270.40) |
| September 15, 2010 | $2,123,857.25 | $1,616,565.51[4] | ($507,291.74) |
| October 15, 2010 | $2,089,277.69 | $1,641,541.81[5] | ($447,735.88) |

*See* Kendall Decl. ¶ 12.

11. Section 6.1 of the Loan Agreements, which enumerates those events that constitute "Events of Default," provides that the occurrence of the following constitutes an Event of Default:

> Borrower or Servicer shall fail to pay when due any Indebtedness or other Obligation due Lender, or fail to deposit to the Lockbox Account any payment required to be deposited under the terms of the Agreement, and such failure shall continue unremedied for a period of five (5) Business Days."

*See* Kendall Decl., Exs. 1 – 3, § 6.1(a). Accordingly, each Payment Default constitutes an Event of Default under the applicable Loan Agreement and Guaranty. Furthermore, each of the

---

[2] Includes a Square Up Payment of $239,978.38, which was received more than ten (10) days late.

[3] Includes a Square Up Payment of $118,323.35, which was received more than ten (10) days late.

[4] Includes a Square Up Payment of $34,876.48.

[5] Includes a Square up Payment of $128,817.12.

foregoing payment defaults remained unremedied for a period of five (5) business days (the cure period under the Loan Agreements), and, in fact, continues to remain unremedied.

12. Due to Northern's defaults under the Loan Agreements and Guaranties, Sovereign exercised its rights under Section 8 of the Guaranties, which provides as follows:

> Upon the occurrence of an Event of Default, Lender may, in its sole discretion, by written notice to such effect, require Guarantor [Northern] to deposit into the Lockbox Account an amount equal to the difference between the Maximum Payment Amount and the aggregate amount of Deficiency Payments theretofore paid by Guarantor into the Lockbox Account, provided that such amount to be deposited shall in no event be more than the unpaid balance due Lender under all of the Notes or otherwise owing to Lender under the Loan Agreement.

*See* Kendall Decl., Exs. 12 – 14, § 8. Accordingly, on June 18, 2010, and in accordance with the terms of the Guaranties, Sovereign provided written notice to Northern that the guaranty amount was due and demanded that Northern immediately deposit into the Lockbox Account not less than $8,690,527.94, which amount was net of a credit of $235,000 for amounts previously paid by Northern under the Guaranties. Northern has consistently and continually failed or otherwise refused to deposit the required amount into the Lockbox Account or to otherwise remit same to Sovereign *See* Kendall Decl. Ex. 15.

Dated: November 1, 2010
New York, New York

Respectfully submitted,

SCHIFF HARDIN LLP

By: /s/ Louis T. DeLucia
Louis T. DeLucia
Carl W. Oberdier
Matthew L. Curro
900 Third Avenue
New York, New York 10022
Telephone: (212) 753-5000
Facsimile: (212) 753-5044

*Attorneys for Sovereign Bank*

NY\50883565.5