UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

MELINDA SERIN, JUDSON RUSS, LONG SOUI LIM,　　　:
PERI KETTLER, GORDON REDNER, and THOMAS　　　　:
J. SMITH,　　　　　　　　　　　　　　　　　　　　　:　　06 CV 1625 (SCR)
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　Plaintiffs,　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　-against-　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
NORTHERN LEASING SYSTEMS, INC., JAY　　　　　　　:
COHEN, RICH HAHN, and SARA KRIEGER,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　Defendant.　　　　:

------------------------------------------------------------------ X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' APPLICATION FOR AN AWARD OF ATTORNEYS' FEES

MOSES & SINGER LLP
*Attorneys for Defendants*
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

Of Counsel:

Abraham Y. Skoff, Esq.
Robert D. Lillienstein, Esq.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

    A.    Northern's Business ................................................................................. 3

    B.    Plaintiffs' Claims ................................................................................... 4

    C.    The Lack Of Evidence Supporting Plaintiffs' Claims ........................................... 5

        1.    Melinda Serin ............................................................................. 7

        2.    Judson Russ ................................................................................ 8

        3.    Gordon Redner ........................................................................... 9

        4.    Long Soui Lim ........................................................................... 10

        5.    Thomas Smith ........................................................................... 10

ARGUMENT ...................................................................................................................... 12

I.     LEGAL STANDARD ................................................................................................ 12

    A.    RICO ................................................................................................... 12

    B.    Section 349 .......................................................................................... 15

II.    UNDER THE EXPRESS TERMS OF THE SETTLEMENT LETTER,
       PLAINTIFFS ARE ENTITLED TO NO AWARD  AGAINST THE
       INDIVIDUAL DEFENDANTS ................................................................................. 16

III.   THE INDIVIDUAL DEFENDANTS' POSITION IS THAT COUNSEL IS
       ENTITLED TO NO AWARD AS A MATTER OF LAW ............................................... 17

IV.   THE FEES SOUGHT BY PLAINTIFFS ARE EXCESSIVE, ARE NOT
       SUPPORTED BY CONTEMPORANEOUS TIME RECORDS, AND SHOULD
       BE SUBSTANTIALLY REDUCED ........................................................................... 18

    A.    The Amount Of Any Award Should Reflect  Plaintiff's Limited Success In
        This Case ............................................................................................. 18

        1.    Defendants' Motions In Limine Put Any Recovery By Plaintiffs'
           At Substantial Risk .................................................................... 22

        2.    Plaintiffs' GBL §349 Claims Were Suspect ........................................... 24

        3.    The Settlement Reflects Counsel's Lack of Success ................................. 25

    B.    Most Of Mr. Altman's Time Charges Are Based On Reconstructed Time
        Records, And Should Be Excluded ............................................................. 25

    C.    Many Of Counsel's Time Charges Are Not Reasonable, Relate To Time
        Spent On Cases Other Than This Case, Or Are Improperly Documented
        With Vague Entries ................................................................................. 27

i

**TABLE OF CONTENTS**

**Page**

|   |   |   |   |
|---|---|---|---|
|   | 1. | The Court Should Reduce The Award For Non-Lawyer Time Billed By Mr. Strutinskiy and Mr. Altman, And For Excessive Charges For Research Made By Mr. Chittur | 28 |
|   | 2. | Many of Counsel's Time Entries Are Too Vague. | 31 |
|   | 3. | Mr. Altman's Time Charges, Which Are All In Full One Hour Increments, Appear To Be Estimated, And Should Be Rejected | 32 |
|   | 4. | Many of Mr. Chittur's and Mr. Strutinskiy's Time Charges Are For Work Done On Matters Other Than This Case | 34 |
|   | D. | The Hourly Rate Charged By Mr. Altman Is Excessive | 35 |
|   | E. | Counsel's Charges For Post Settlement Activities, Including Making A Frivolous Motion, And Preparing The Fee Application, Are Excessive | 36 |
| V. | | THERE IS NO JUSTIFICATION FOR A MULTIPLIER IN THIS CASE | 37 |
| VI. | | DISCOVERY IS NEEDED | 39 |
| CONCLUSION | | | 41 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Cas. & Surety Co. v. Liebowitz,*
    730 F.2d 905 (2d Cir. 1984)..........................................................................................15

*Anderson v. Rochester-Genesee Regional Transp. Authority,*
    388 F. Supp. 2d 159 (W.D.N.Y. 2005).........................................................................26

*In Re AOL Time Warner Shareholder Derivative Litigation,*
    2010 WL 363113 (S.D.N.Y. Feb. 1, 2010)...................................................................36

*Baird v. Boies, Schiller & Flexner LLP,*
    219 F. Supp. 2d 510 (S.D.N.Y. 2002).....................................................................16, 18

*Barfield v. New York City Health and Hospitals Corp.,*
    537 F.3d 132 (2d Cir. 2008).....................................................................................17, 19

*Bingham v. Zolt,*
    823 F. Supp. 1126 (S.D.N.Y. 1993).............................................................................25

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,*
    190 F. Supp. 2d 407 (E.D.N.Y. 2002), rev'd on other grounds and remanded sub
    nom. Empire Healthchoice, Inc. v. Philip Morris USA Inc., 393 F.3d 312 (2d Cir.
    2004) .................................................................................................................13, 14, 21

*Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc.,*
    2008 WL 2510601 (E.D.N.Y. Jun 20, 2008) ..........................................................30, 31

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,*
    187 F.3d 229 (2d Cir. 1999).........................................................................................15

*In re Comverse Technology,*
    2010 WL 2653354 (E.D.N.Y. 2010)......................................................................13, 35

*Dailey v. Societe Generale,*
    915 F. Supp. 1315, *aff'd in part, vacated in part on other grounds*, 108 F.3d 451
    (2d Cir.1997)..................................................................................................................30

*Demunecas v. Bold Food,*
    2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010)..............................................................36

*Diaz v. Paragon Motors of Woodside, Inc.,*
    2008 U.S. Dist. LEXIS 37440 (E.D.N.Y. May 6, 2008) ..............................................11

*Farrar v. Hobby*,
  506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)..............................16, 17

*Genesco Entm't v. Koch*,
  593 F. Supp. 743 (S.D.N.Y. 1984)..................................................................22

*Gerritsen v. Glob Trading, Inc.*, No. 06-CV-3756, 2009 WL 262057 at 12 (E.D.N.Y.
  Feb. 4, 2009) ...................................................................................................15

*In re Global Crossing*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................13, 35

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..........................................................................13, 36

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
  995 F.2d 414 (3d Cir. 1993)...........................................................................32

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................................. passim

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
  25 F. Supp. 2d 127 (E.D.N.Y.  1998) .........................................................21, 22

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ...........................................................11, 13, 15, 38

*Kelly v. City of Oakland*,
  198 F.3d 779 (9th Cir. 2000) ..........................................................................36

*Kirsch v. Fleet Street Ltd.*,
  148 F.3d 149 (2d Cir. 1998)........................................................................12, 29

*Kraft v. Staten Island Boat Sales, Inc.*,
  715 F. Supp. 2d 464 (S.D.N.Y. 2010).............................................................22

*Kronfeld v. Transworld Airlines, Inc.*,
  129 F.R.D. 598 (S.D.N.Y. 1990) ................................................................27, 28

*Lukaszuk v. Sudeen*,
  2007 WL 4699018 (E.D.N.Y. Nov. 27, 2007)........................................11, 26, 30

*Maley v. Del Global Technologies Corporation*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2007).............................................................35

*Meriwether v. Coughlin*,
    727 F. Supp. 823 (S.D.N.Y. 1989)..............................................................25, 31

*Miller v. Midpoint Resolution Group, LLC*,
    608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009) ......................................................19

*Mitland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993)....................................................................11

*N.A.A.C.P. v. Town of East Haven*,
    259 F.3d 113 (2d Cir. 2001)..............................................................................16

*New York State Association For Retarded Children, Inc., et al. v. Hugh L Carey*,
    711 F.2d 1136 (2nd Cir. 1983)....................................................................12, 25

*In re Nortel Networks Corp. Securities Litigation*,
    2010 WL 3431152 (S.D.N.Y. Aug. 20, 2010)...........................................26, 28

*Nu-Life Const. Corp. v. Board of Educ. of City of New York, Div. of School Bldgs. of
    Educ. of City of New York*,
    795 F. Supp. 602 (E.D.N.Y. 1992) .........................................................11, 25, 31

*Nwagboli v. Teamwork Transp. Corp.*,
    2009 U.S. Dist. LEXIS 121893 (S.D.N.Y. Dec. 7, 2009) .....................11, 12, 14

*Oxford Venture Fund Ltd. P'ship v. CIT Group/Equip. Financing, Inc.*,
    1990 WL 176102 (S.D.N.Y. Nov 05, 1990)......................................................31

*In re Painewebber Ltd. P'ships Litig.*,
    No. 94 Civ. 8547, 2003 WL 21787410 (S.D.N.Y. Aug. 4, 2003) .....................27

*Pinkham v. Camex, Inc.*,
    84 F.3d 292 (8th Cir. 1996) ..............................................................................32

*Quantum Communications Corp. v. Star Broadcasting, Inc.*,
    491 F. Supp. 2d 1123 (S.D.Fla. 2007) ..............................................................32

*Rabin v. Concord Assets Group*,
    1991 WL 275757 (S.D.N.Y. Dec. 19, 1991) .....................................................36

*Rahman v. The Smith & Wollensky Rest. Group, Inc.*,
    2008 WL 1899938 (S.D.N.Y. Apr. 29, 2008)....................................................28

*Rahman v. The Smith & Wollensky Restaurant Group, Inc.*,
    2009 WL 72441 (S.D.N.Y. Jan 07, 2009) .........................................................29

*R.E. v. New York City Bd. of Educ., Dist. 2*,
    2003 WL 42017 (S.D.N.Y. Jan. 6, 2003) ........................................................................34

*Riordan v. Nationwide Mut. Fire Ins. Co.*,
    977 F.2d 47 (2d Cir. 1992)..........................................................................................14

*Schwartz v. Chan*,
    142 F. Supp. 2d 325 (E.D.N.Y. May 7, 2001) ........................................................17, 25

*Scott v. City of New York*,
    2009 WL 2610747 (S.D.N.Y. Aug 25, 2009), *vacated on other grounds*, 626 F.3d
    130 (2d Cir. Dec. 1, 2010) .....................................................................................12, 17, 24

*Seigal v. Merrick*,
    619 F.2d 160 (2d Cir.1980)........................................................................................27

*Shannon v. Fireman's Fund Insurance Co.*,
    156 F. Supp. 2d 279 (S.D.N.Y. 2001)..................................................................28

*Skold v. American International Group, Inc.*,
    No. 96 CIV 7137, 82461, 1999 WL 405539 (S.D.N.Y., June 18, 1999)..........................29

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993)........................................................................................25

*In re Telik, Inc.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 1984)...............................................................36

*In re Unisys Corp. Retiree Medical Benefits Erisa Litigation*,
    2008 WL 2600364 (E.D. Pa. June 26, 2008) ..................................................................32

*U.S. Football League v. National Football League*,
    887 F.2d 408 (2d Cir. 1989)................................................................................19, 25

*In re Worldcom, Inc. Securities Litigation*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)..............................................................35

## STATE CASES

*Aldrich v Northern Leasing Systems, Inc.*,
    2009 N.Y. Misc. LEXIS 4752 (N.Y. Sup. Ct. Mar. 12, 2009) ........................................22

*Devlin v. 645 First Ave. Manhattan Co.*,
    229 A.D.2d 343 (1st Dep't 1996).......................................................................22

*Diller v. Steurken*,
  185 Misc.2d 274 (Sup. Ct., N.Y. Co. 2000) .......................................................22

*Fulton v. Allstate Ins. Co.*,
  14 A.D.3d 380 (1st Dep't 2005).........................................................................22

*Keos, Inc. v. Helgen Indus., Inc.*,
  No. 1888/07, 2009 N.Y. Misc. LEXIS 6311 (Sup. Ct., Nassau Co. 2009).......................22

*La Barbera v. Pass 1234 Trucking, Inc.*,
  No. 04 CV 1364, 2007 WL 2908175 (E.D.N.Y., Sept. 28, 2007)....................................31

*Martin v. Group Health Inc.*,
  2 A.D.3d 414 (2d Dep't 2003).............................................................................22

*Pellegrino v. Robert Half Intern., Inc.*,
  182 Cal. App. 4th 278, 106 Cal. Rptr. 3d 265 (Cal. App. 4 Dist. 2010)...........................36

## FEDERAL STATUTES

Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. 1964(c) ............................ passim

## STATE STATUTES

New York Anti-Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349(h) .................. passim

## PRELIMINARY STATEMENT

Defendants, Northern Leasing Systems, Inc. ("Northern"), Jay Cohen, Rich Hahn and Sara Krieger (the "Individual Defendants" and together with Northern, the "Defendants"), by their attorneys Moses & Singer LLP, submit this memorandum of law in opposition to the application for attorneys' fees being made by Chittur & Associates, P.C. and Finkelstein & Partners, LLC (collectively referred to as "Counsel"), counsel for the Plaintiffs, Melinda Serin ("Serin"), Judson Russ ("Russ"), Long Soui Lim ("Lim"), Gordon Redner ("Redner"), Peri Kettler ("Kettler") and Thomas J. Smith ("Smith") (collectively, the "Plaintiffs"), in this action. Because Plaintiffs' Counsel has pursued the Individual Defendants despite the settlement agreement which precludes their liability on this application, the Individual Defendants join Northern in this opposition, and assert all Points raised below.  Northern joins in Points I, II, IV, V and VI, below.

On November 10, 2010, the parties agreed to settle this action, with their attorneys signing a settlement letter (the "Settlement Letter"[1]), and thereafter confirming the terms of that settlement in open court.  The amount that Plaintiffs sued for was $10 million (dkt #26), and just days prior to the settlement and scheduled trial, Plaintiffs' demand was $795,000. Exh. A. Defendants believed that the case lacked merit and would not offer an amount anywhere near these numbers.  Ultimately, the amount agreed to in settlement was: (a) $0 for Kettler; (b) $10,000 for Redner; (c) $15,000 for Smith; (d) $25,000 for Ms. Serin; (e) $45,000 for Lim and (f) $200,000 for Russ.[2] These amounts are 37% of the demand made on behalf of Plaintiffs just

---

[1]  Because the parties have agreed that the terms of the settlement will remain confidential, the Settlement Letter will be filed under seal.

[2]  Mr. Russ was the only one of the Plaintiffs who claimed to have sustained a loss of business profits.  That is the only reason that Northern agreed to pay substantially more to him than the others.

days prior to the settlement, and are a small fraction of the  Plaintiffs' Counsel's current request for a fee award of more than ten times the amount of the Plaintiffs' recovery, and four times the amount of their inflated time charges.  A fee request in these amounts is unsupported by any case law.[3]

Defendants were unable to settle Counsel's demand for attorneys' fees, which Defendants regard as grossly excessive, and which have increased by $1.5 million since the last settlement proposal was made by Counsel.  On November 5, 2010 – just five days before the Settlement Letter was finalized, Counsel was demanding $1.705 million in fees and expenses.  (Exh. A). Their current demand has ballooned to more than $3.34 million, or roughly twice what they sought in November and more than 10 times what they achieved for Plaintiffs.  Plaintiffs' counsel attempt to justify this exorbitant demand by asking for a multiplier of four times the amount of their inflated time charges (the "lodestar").  However, they have failed to cite one non-class action case involving either of the two statutory claims involved in this action in which the Court awarded a multiple of the attorneys' time charges.  The multiplier that Counsel seeks may sometimes be seen in large, common fund class actions.  It should not be available in a case involving six individuals that was settled before trial, for a small fraction of what they claimed.

The amount to be awarded to Counsel should be less than Counsel's time charges, due to their clear lack of success, their critical lack of contemporaneous billing records, and the inflated nature of many of the charges, all of which are discussed in further detail below.  Moreover, as discussed further in Point II, because Plaintiffs agreed to settle their claims, rather than bring

---

[3]    From Defendants' perspective, the amount paid in settlement amounts to less than the expected cost of the remaining litigation.  Defendants were incurring substantial amounts in fees and costs during the weeks leading up to the trial, and fees and costs were expected to increase substantially during the approximately ten-days of trial scheduled.  The settlement allowed Defendants to avoid the risks of a jury trial, for less than what it would have cost just to try the case.

them to trial, the Individual Defendants are of the view that relevant case law establishes that <u>no fee award</u> is available to Counsel.[4]  For the reasons discussed below, the amount of attorneys' fees requested by Counsel is not reasonable and should be substantially reduced to an amount more in line with normal contingency fee cases in New York – no more than one third of the amount recovered by Plaintiffs.

To do otherwise would be to validate Counsel's attempt to turn the Court's authority under RICO and GBL 349 to award reasonable attorneys fees into a lottery for lawyers.  If Counsel's argument is accepted, it will stand for the proposition that a lawyer can bring a weak case, pour enormous hours into it, achieve a meager result for the client and then walk away with a jackpot in legal fees.  We submit that this is not the intent of the law, it is not what the controlling precedent requires, and it should not be countenanced by this court.

## BACKGROUND

A brief review of the nature of the claims, as well as the evidence and Defendants' position with respect to such claims is relevant to a determination of the degree of success obtained by Plaintiffs, and ultimately, the reasonableness of an attorneys' fee award to Counsel.

## A.    Northern's Business

Northern is an equipment lease finance company which primarily serves the credit card authorization equipment market.  Northern's customers include Taco Bell restaurants, AMF bowling alleys, Getty Petroleum, Benigans Restaurants, Outback steak-houses, Louis Vuitton, Hooters, The UPS Store, and Dominos Pizza, as well as numerous small businesses.  Credit card

---

[4]    Under the terms of the Settlement Letter, the Individual Defendants reserved the right to contest Counsel's right to collect any amount as a result of the settlement, while Northern agreed that it would contest only the amount of the award.  As set forth below, we believe that plaintiffs are expressly precluded from seeking fees from the Individual Defendants, but Plaintiffs are seeking such fees, and the Individual Defendants have contested this claim.

authorization equipment (*e.g.*, point of sale terminals) is generally marketed by vendors of credit card processing services.  Such vendors typically offer their customers the option of acquiring equipment through a lease, including, but not limited to, the leasing program offered by Northern.

Northern typically has no contact with any merchant/lessee prior to the time when the vendor and the merchant select equipment, choose Northern as the lessor, and submit a signed lease application to Northern.  The lease form is provided to the merchant/lessee by the vendor. Only after the merchant/lessee has already signed it, is it submitted to Northern for its acceptance.  It purchases the equipment chosen by the merchant from the vendor, and only then does Northern lease the equipment to the merchant-lessee.

In the case of the six Plaintiffs in this case, Northern paid the vendors a total of $13,950.31 to purchase equipment that it leased to the businesses identified on the leases – leases that appeared to be valid instruments, duly executed by the persons identified in the documents, and which passed Northern's credit review and verification checks.

**B.**     **Plaintiffs' Claims**

The claims asserted by the Plaintiffs in their Amended Complaint allege a fraudulent scheme that alleged to consist of starting "bogus legal proceedings" (Amended Complaint [dkt #26], ¶13), "[b]ased on forged documents, <u>which Defendants knew were forged</u>" (*id*. at ¶99; emphasis in original), "solely for the purpose of injuring Plaintiffs and recovering unwarranted sums through extortion."  *Id*. at ¶99.  As the Court described Plaintiffs' claims, "Plaintiffs … allege that Defendants Northern Leasing Systems, Inc. … Jay Cohen, Rich Hahn, and Sara Krieger engaged in a racketeering scheme <u>by forging leases bearing Plaintiffs' names and signatures and then commencing lawsuits against the Plaintiffs in New York City Civil Court</u>, in

an effort to extort money from the Plaintiffs, who all live out-of-state."    Opinion & Order,

December 17, 2009 (dkt. #46), at p. 1-2 (emphasis added).

C.      **The Lack Of Evidence Supporting Plaintiffs' Claims**

Despite the extensive discovery that was provided by Defendants,[5] Plaintiffs' Counsel

was unable to establish that Defendants had a pattern or practice of commencing lawsuits based

on forged leases.[6]  Indeed, Defendants' practice was just the opposite.  Plaintiffs were unable to

demonstrate that the lawsuits commenced by Defendants against the Plaintiffs were "bogus", or

that Defendants motivation in commencing those lawsuits was anything other than to collect

payments that Northern believed, in good faith, were owed to it, after investing thousands of

dollars to purchase equipment for these specific Plaintiffs, in reliance on signed leases that

Northern had no reason to doubt were valid in all respects.

Northern invested $13,950.31 in equipment because it believed that there were nine

legitimate finance leases in place, that they were all properly signed by the six Plaintiffs, and that

Northern could reasonably expect to recoup its investment, and a profit, by receiving the monthly

payments called for in those leases.  Northern had no incentive to make an investment in

equipment if it had any reason to suspect that a particular lease was forged.  There was nothing

in the Plaintiffs' leases to alert Northern to the possibility that the Plaintiffs' signatures were

---

[5]    Defendants produced over 812,000 pages of documents in discovery.  In addition, Defendants' witnesses were deposed over the course of ten days.

[6]    Much of the time spent by Plaintiffs' Counsel in discovery for which they seek to be compensated was not directed at proving the claims asserted in the Complaint.  Rather, it appears that Plaintiffs were engaging in discovery as to matters outside of the scope of the Amended Complaint, pertaining to non-parties and other litigation in which present counsel and defendants are involved, and unrelated to the claims that they pled in this case.  For that reason, Defendants filed a motion *in limine* on November 8, 2010 (dkt. #132) which sought, *inter alia*, to preclude Plaintiffs from introducing such irrelevant, inadmissible and prejudicial evidence.  Counsel should not be compensated for spending many, many hours in discovery that were aimed at issues unrelated to this case, which resulted in nothing of use to the Plaintiffs, and which caused Defendants to incur fees and expenses unnecessarily.

forged.  The Plaintiffs' names, addresses, social security numbers, telephone numbers and other identifying information all checked out.  After the leases were signed, Northern verified that the equipment was installed and was operating properly.  And in most cases, monthly lease payments were made by the Plaintiffs via direct withdrawals, known as "ACH withdrawals," from the bank accounts identified in the leases, for many months, without any objection, before they became delinquent.

Only much later did Northern learn that some of the Plaintiffs (though not all) claimed that their signatures had been forged.  In three cases (Serin, Redner and Smith), Northern did not learn of a forgery claim until after it had already begun the process of starting lawsuits to collect the amounts due on the leases.  In two cases (Smith and Redner), Northern was *never* advised that the Plaintiff claimed that a signature on the lease was forged until this action was started.

In a situation involving a claim of forgery, Northern has procedures that it follows to determine whether the claim is valid or not.  If it determines that that the lease was forged, it has contractual recourse with the vendor, by charging back the amount that Northern originally funded.  Northern has no incentive to fund leases and commence lawsuits against merchants in situations in which it believes that there has been a forgery.  Northern's procedures were followed in the cases of each of the Plaintiffs.  As discussed in greater detail below with respect to each Plaintiff, after following those procedures, and looking at the facts available to it, Northern was not convinced that there was a forgery in the cases of these Plaintiffs, and as to some of them, Northern filed collection actions. [7]

---

[7] With respect to a plaintiff who claimed forgery, Northern retained a forensic examiner and former forensic document examiner for the Nassau County Police Department, who determined and opined, as set forth in his expert report, that there was no basis from a normal examination of the document to believe that it was a forgery.

### 1.    Melinda Serin

In the case of Melinda Serin, although the Complaint alleged that Northern sued to enforce an equipment lease that Northern knew had been forged, Northern had no such knowledge when it sued, and Plaintiffs established no facts to show that it did.  It turned out that Ms. Serin was the apparent victim of identity theft by her aunt, who signed Ms. Serin's name to numerous documents, including the equipment lease with Northern.  According to Ms. Serin's deposition testimony, and documents produced in discovery, Ms. Serin suspected that her aunt was responsible for the forgery, and acknowledged that the aunt was also apparently responsible for opening a bank account, and filing a fictitious name license using Ms. Serin's name, none of which was known to Northern when it decided to commence suit.

In fact, Northern had reason to suspect the claim of forgery was fabricated.  Ms. Serin's lease payments to Northern were current for 6 months, which is a highly unusual occurrence if the lease document is forged.  When the payments became delinquent, Northern began a running conversation with someone claiming to be Ms. Serin and whom Northern believed to be Ms. Serin.  That person made alternative payment arrangements with Northern, and eventually agreed to a settlement with Northern, by making a payment by credit card, only to reverse the credit card payment after Northern issued a release.  Serin did not provide Northern with evidence of forgery until *after* Northern decided to commence suit.  That evidence consisted, in part, of an affidavit in which Serin claimed that her aunt had forged her name, although the affidavit also stated that the business was in Serin's name, and that the bank account listed on the lease was also in her name. These facts, among others, led Northern to question Serin's claim of forgery once it was eventually asserted by her.

### 2.     Judson Russ

In the case of Judson Russ, there was nothing in the four signed lease forms, or in any of Northern's underwriting, that would have alerted Northern to any irregularities in the lease.  All of the information on all four leases was accurate, including Russ's name, address and social security number, his business name and address, and his bank account name, account number and routing number.  Russ's account with Northern was current for over a year, which would be very odd if there had been a forgery.  At one point during the first year, when an ACH payment was not received, Russ's bookkeeper provided Northern with updated banking information so that Northern could continue receiving ACH payments.  Later, after Northern issued a past due notice for a payment that was missed, one of Russ's employees issued a check payable to Northern.  Northern accepted this payment and only later learned that the employee had signed Russ's name at the direction of Russ's office manager.  During these initial communications with Russ's business, no one ever suggested that the leases were forged.

Although the Complaint alleges that Northern knowingly sought to enforce a lease that it knew to be forged, the Complaint omits the fact that Mr. Russ later admitted that he believed that one of his employees, Daniel Magyari, who helped rum Mr. Russ's business, is the person who signed his name on the leases.[8]  The Complaint also fails to note that Mr. Russ had a pay-day lending business that had multiple locations, that Mr. Russ left Magyari in charge of his business for long periods of time while Russ was out of the country, and that ***Magyari and others had authorization to sign Russ's name*** in many circumstances (even though Russ claims that leasing was not one of those circumstances), that each of Russ's locations had a need for check scanning

---

[8]   Defendants' handwriting expert was prepared to testify that he could not detect any indication that the signatures were not genuine upon visual examination of the leases and comparison of the signatures on those leases with other known signatures of Russ.

equipment, and that each of those businesses received and retained the equipment described in the leases that were allegedly forged. Northern received what appeared to be valid, confirmed signatures and leases, and then spent thousands of dollars to buy the equipment chosen by Russ or his employees, and leased these machines to Russ's stores. Discovery did not reveal any evidence either that Northern forged Russ's name or sued on documents that it either knew or suspected of being forged. Discovery did not reveal that Northern had any knowledge that this was really a dispute between Russ and the employees he left to run his business when he was out of the country.

### 3.     Gordon Redner

Mr. Redner was never sued by Northern. Indeed, Redner never notified Northern that he believed the lease in his name was forged until this lawsuit was commenced. When attempts to ACH his bank account were returned for insufficient funds, Northern contacted Redner, who did not protest and claim forgery, but said that he needed an equipment manual for his terminal, because he didn't understand the prompts. He never disputed an adverse charge on his credit report to the credit reporting agency. He also admitted signing a document that refers to the equipment that Northern leased to him (Nurit 3000), and to a lease of 48 months at $49.00 per month plus tax, even though he contradictorily claims that someone forged his name to an equipment lease containing those same terms. Redner also admits that he received the equipment described in the allegedly forged equipment lease, and that he never returned it. Northern did not commence a lawsuit against Redner. This suggests that it was frivolous to even allege that his situation is part of fraudulent scheme consisting of the commencement of "bogus" lawsuits. In sum, it is difficult to see how anyone could even allege that Northern did wrong in the case of Redner.

### 4.      Long Soui Lim

Mr. Lim's lease is dated April 28, 1998.  There is nothing in the lease form, or in any of Northern's underwriting, that would have alerted Northern to any irregularities in the lease.  Mr. Lim admits that all of the information on the lease was accurate, including his name, address, social security number and telephone number, as well as his business's name and address, and his bank's name, routing number and account.  Mr. Lim admitted that he provided the vendor with that information, as well as a check for $143, and that he understood that he was acquiring credit card processing equipment, which he admits receiving.  Mr. Lim made three payments on the lease via ACH deductions before calling Northern to state the vendor had come and picked up the equipment, and that Mr. Lim could not locate the vendor.  In June 2001, after numerous unsuccessful attempts by Northern to contact Mr. Lim, Northern started suit, which was later discontinued voluntarily due to improper service.  In response to that suit, Lim contacted Northern in July 2001, claiming for the first time – three years after the lease was signed – that his signature had been forged.  He then sent documents to Northern allegedly showing that his signature had been forged.  Those papers were reviewed by two Northern employees, including a manager, who both concluded that the allegedly forged signature appeared to be similar to the genuine signatures.  Defendants' handwriting expert was prepared to testify that he was unable to make a determination as to whether the signature was genuine or not.  Because Northern had legitimate reasons to question the validity of Mr. Lim's forgery claim, it commenced a second suit to recover the amounts due under the lease.

### 5.      Thomas Smith

Mr. Smith's lease is dated August 15, 2001.  There is nothing in the lease form, or in any of Northern's underwriting, that would have alerted Northern to any irregularities in the lease.  Mr. Smith admits that all of the information on the lease was accurate, including his name,

address, social security number and telephone number, as well as his business's name and address, and his bank's name, routing number and account.  Mr. Smith clearly knew that he was signing up for credit card processing, and admits his signature on the credit card processing agreement that he executed on the same day as the date of the lease.  He admits that the signature on a check payable to Northern is his signature.  After Northern accepted the lease, Northern received a full year of monthly payments via ACH without any complaint from Mr. Smith.  When a payment due in November 2003 was not received, Northern spoke to Mr. Smith on the phone.  Mr. Smith said nothing about his signature being forged.  Subsequently, Northern received payment of the amount due November 2003.  In March 2004, Northern received a letter from an attorney representing Smith, which said nothing about forgery.  In April 2004, Northern spoke to one of Russ's employees, who said that the business was not using the machine, and that they would like to terminate the lease and return the equipment.  Nothing was said about a forgery.

Smith never told Northern that his signature was forged.  He never presented Northern with any evidence of forgery, forms of ID or signatures showing that his signature was different than the signature on the lease.  He never filed a police report and he never disputed the adverse entry to his credit report with any credit reporting agency.  Based on all of the foregoing, Northern decided to commence suit to recover the amount due under the lease, which it did in June 2004.  After filing suit against Smith, Smith's attorney attempted to negotiate a settlement with Northern, without ever mentioning a claim of forgery.  Again, it is hard to fathom how anyone could allege, in good faith, that Northern commenced suit against Smith to enforce an equipment lease that it "knew" to have been forged.

In short, Defendants believed that the claims made by Plaintiffs were lacking in merit. Ultimately, the case was settled by Defendants for an amount that was less than what Defendants believed would be spent at trial.  Plaintiffs' counsel, who brought this questionable suit, and achieved a minimal recovery for the Plaintiffs, now seeks fees that are about eleven times the amount obtained for the Plaintiffs.  Defendants believe that there is no basis for an award of such fees.  That is why this aspect of the case could not be settled.  Similarly, Defendants submit that the Court should not award the fees sought herein by Counsel.

## ARGUMENT

## I.

## LEGAL STANDARD

Plaintiffs' Counsel's claim for fees is based on the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. 1964(c), and New York's Anti-Deceptive Trade Practices Act, N.Y. Gen. Bus. Law § 349(h) ("Section 349").

## A.    RICO

The RICO statute provides that any person injured as a result of a violation thereof may sue and recover damages and "the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).  In the Second Circuit, what constitutes a reasonable attorney's fee under RICO (or otherwise) is first determined by calculating the "presumptively reasonable fee," or the "lodestar."  *See Lukaszuk v. Sudeen*, 2007 WL 4699018, at *10 (E.D.N.Y. Nov. 27, 2007); *see also Nwagboli v. Teamwork Transp. Corp.*, 2009 U.S. Dist. LEXIS 121893, at *26 (S.D.N.Y. Dec. 7, 2009); *Diaz v. Paragon Motors of Woodside, Inc.*, 2008 U.S. Dist. LEXIS 37440, at *19-20 (E.D.N.Y. May 6, 2008).  The "presumptively reasonable fee" or "lodestar" is reached by multiplying all reasonable hours expended by the successful party's attorney by a reasonable

hourly billable rate.  *See Mitland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 238 (S.D.N.Y.

1993); *Nwagboli*, 2009 U.S. Dist. LEXIS 121893, at *26 ("[T]he 'presumptively reasonable fee,'

… is 'the product of hours worked and an hourly rate.'" (citation omitted)); *Diaz*, 2008 U.S.

Dist. LEXIS 37440, at *20; *Nu-Life Const. Corp. v. Board of Educ. of City of New York, Div. of

School Bldgs. of Educ. of City of New York*, 795 F. Supp. 602, 605 (E.D.N.Y. 1992).

      The "reasonable hourly rate" component is arrived at by considering the "prevailing rate

charged in the district where the court sits" and several "case-specific variables," *i.e.*, the

*Johnson* factors set forth below.  *Nwagboli*, 2009 U.S. Dist. LEXIS 121893, at *26-27 (citations

and internal quotation marks omitted); *see also Lukaszuk*, 2007 WL 4699018, at *12;  ("[T]he

reasonable hourly rates should be based on the rates prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience, and reputation" and "factors

such as the attorney's skill and experience and the novelty of the issues."); *Mitland Raleigh-

Durham*, 840 F. Supp. at 238 ("A 'reasonable hourly rate' is the rate charged by attorneys of like

skill and experience, located in the same region, for comparable work.").

      Courts should exclude hours that are "excessive, redundant, or otherwise unnecessary,"

and can do so by simply deducting "a reasonable percentage of the number of hours claimed …

."  *Nwagboli*, 2009 U.S. Dist. LEXIS 121893, at *30 (citations and internal quotation marks

omitted);  *Scott v. City of New York*, 2009 WL 2610747 (S.D.N.Y. Aug 25, 2009) (reducing fee

award by 30%), *vacated on other grounds*, 626 F.3d 130 (2d Cir. Dec. 1, 2010).  The Court

should also reduce or eliminate any time charges where the hours were inadequately documented

or not reasonably expended.  *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).  Indeed, it has

long been the rule in the Second Circuit that if an attorneys' fee application is not based on

contemporaneous time records, that application may be denied in its entirety.  *New York State*

*Association For Retarded Children, Inc., et al. v. Hugh L Carey*, 711 F. 2d 1136, 1148 (2nd Cir.

1983):

> any attorney -- whether a private practitioner or an employee of a
> nonprofit law office -- who applies for court-ordered compensation
> in this Circuit for work done after the date of this opinion must
> document the application with contemporaneous time records.
> These records should specify, for each attorney, the date, the hours
> expended, and the nature of the work done.

This rule was strongly reaffirmed by the Second Circuit just a few weeks ago, in *Scott*, *supra*,

626 F.3d at 133:

> Carey sets out unequivocally that absent unusual circumstances
> attorneys are required to submit contemporaneous records with
> their fee applications. The permissive language at the end of the
> opinion recognizes that exceptions to the rule may exist. The
> strength with which we articulated the general rule, however,
> signals that any possible exceptions are minimal and limited in
> scope. In other words, Carey establishes a strict rule from which
> attorneys may deviate only in the rarest of cases.

*Kirsch v. Fleet Street Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("we see no abuse of discretion in

the ... reduction for vagueness, inconsistencies, and other deficiencies in the billing records").

The Supreme Court noted in *Hensley*, *supra*, 461 U.S. at 429-430 that a district court may

adjust the lodestar amount by taking into consideration the factors identified in *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974): "1) the time and labor

required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal

service properly; 4) the preclusion of other employment by the attorney due to acceptance of the

case; 5) the customary fee; 6) whether the fee is fixed or contingent[9]; 7) time limitations imposed

---

[9]    Plaintiffs' Counsel has not disclosed to the Court or Defendants the retainer agreements with the
Plaintiffs.  The retainer agreements would have a bearing, *inter alia,* on the reasonableness of the fee now
claimed, hourly billing rates, whether the fee is fixed or contingent, whether Counsel will share in the
recovery obtained for Plaintiffs, and whether expenses incurred will be paid out of Plaintiffs'
recovery.  In this regard, we note that Plaintiffs' counsel has insisted that the settlement proceeds be paid
to Counsel's escrow account, and not directly to the Settling Plaintiffs themselves.

by the client or the circumstances; 8) the amount involved and the results obtained; 9) the

experience, reputation and ability of the attorneys; 10) the 'undesirability' of the case; 11) the

nature and length of the professional relationship with the client; and 12) awards in similar

cases."[10]

## B.    <u>Section 349</u>

Pursuant to section 349(h) of the G.B.L., a "court may award reasonable attorneys' fees

to a prevailing plaintiff."  G.B.L. § 349(h).  The decision to award attorneys' fees under section

349(h) is discretionary.  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 190 F.

Supp. 2d 407, 421 (E.D.N.Y. 2002), *rev'd on other grounds and remanded sub nom. Empire*

*Healthchoice, Inc. v. Philip Morris USA Inc.*, 393 F.3d 312 (2d Cir. 2004).  The plaintiff bears

the burden of showing the reasonableness of the fee award by a preponderance of the evidence.

*Id.* at 422.

Courts consider the following factors in determining the reasonableness of fee awards

under section 349(h):  (i) the time and skill required in litigating the case, (ii) the complexity of

issues, (iii) the customary fee for the work, (iv) the results achieved, (v) the lawyer's experience,

ability and reputation, (vi) the amount in dispute, and (vii) the benefit to the client.  *Id.* (citing

cases); *see also Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992).[11]

---

[10]  Plaintiffs' Counsel improperly relies on a line of cases following *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), which, while similar to the *Hensley/Johnson* standard applicable to statutory fee cases like this, were developed for use in class action common fund cases, where the courts have authorized fee awards that equate to a multiple of the "lodestar."  *See e.g. In re Global Crossing*, 225 F.R.D. 436 (S.D.N.Y. 2004); *In re Comverse Technology*, 2010 WL 2653354 (E.D.N.Y. 2010). While Counsel's motivations in this regard are transparent, as discussed in Point III.F, *infra*, a multiplier is not available to Counsel in this case.

[11]  While state statutes that provide for attorneys' fees (such as GBL § 349(h)) are governed by state substantive law, "absent some overriding reason in policy or contrary state rulings, it is appropriate for federal courts to rely on federal practice in awarding fees under state substantive laws."  *Blue Cross*, 190 F. Supp. 2d at 418.  *See Nwagboli*, 2009 U.S. Dist. LEXIS 121893, at *26-33 (determining appropriate amount to be awarded for attorneys' fees pursuant to GBL § 349(h) by calculating "presumptively

Thus the standard for determining the reasonableness of an attorney's fee award under the RICO statute and section 349(h) of the GBL are substantially similar.  As such, the discussion below regarding the appropriate award for attorneys' fees applies to an award under either statute.  Any differences in the application of the standard under a particular statute will be noted.

## II.

### UNDER THE EXPRESS TERMS OF THE SETTLEMENT LETTER, PLAINTIFFS ARE ENTITLED TO NO AWARD AGAINST THE INDIVIDUAL DEFENDANTS

On this application, Counsel seeks an award of fees against all Defendants, including the Individual Defendants, against whom Plaintiffs agreed to settle their cases for nothing.  In the Settlement Letter signed by the attorneys for all parties, Plaintiffs and the Individual Defendants agreed to exchange "full, general releases (i.e., akin to a standard Blumberg general release form) of all their respective claims of any kind against the other."  There is no exception for a claim for attorneys' fees.  In contrast, Northern agreed that it "will not challenge Plaintiffs' attorneys' right to recover attorneys' fees in a hearing or proceeding to be held before Judge Gwin or a U. S. Magistrate Judge" although it did expressly "reserve[] the right to challenge the amount or reasonableness of the attorneys' fees sought by Plaintiffs' attorneys."  When Plaintiffs made a motion challenging the Defendants' position that the Individual Defendants not agreed to be liable for attorneys' fees, and that all claims against them had been released, the Court denied Plaintiffs' motion and directed the parties to "execute a final settlement agreement that is fully consistent with the terms of the letter agreement agreed upon in open court."  *See* dkt. #139, p. 4.

---

reasonable fee").  Nevertheless, each of factors used to determine reasonable of fee awards under section 349(h) are also considered when determining the "reasonably hourly rate" under the federal standard.

Under the terms of the Settlement Letter, Plaintiffs agreed to dismiss their case against the Individual Defendants, with prejudice, without the Individual Plaintiffs having to pay any money, and without them agreeing to do anything, other than exchange releases. [12]  Moreover, the Settlement Letter expressly provides that the settlement "does not constitute an admission or evidence of wrongdoing."

Since, despite the express provisions of the Settlement Letter and this Court's ruling of December 10, 2010,  Plaintiffs' Counsel has nevertheless sought legal fees from the Individual Defendants, the Individual Defendants join in this opposition.

## III.

### THE INDIVIDUAL DEFENDANTS' POSITION IS THAT COUNSEL IS ENTITLED TO NO AWARD AS A MATTER OF LAW[13]

Not only does the Settlement Letter preclude recovery from the Individual Defendants, but because Plaintiffs settled their claims, Counsel is not entitled to a recovery of fees as a matter of law.  *Aetna Cas. & Surety Co. v. Liebowitz*, 730 F.2d 905, 907 (2d Cir. 1984) ("Nothing in [RICO's statutory] language indicates an intent to authorize an attorney's fee award … for a plaintiff's successfully negotiating a settlement of his claim.")

Moreover, in the words of the RICO statute, Plaintiffs failed to establish that they were "injured as a result of a violation" – a pre-requisite to the award of any fees.   For that reason alone, there can be no fee award.  *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 245 (2d Cir. 1999).  The same result applies under GBL §349.  *Gerritsen v. Glob Trading, Inc.*, No. 06-CV-3756, 2009 WL 262057 at *12 (E.D.N.Y. Feb. 4, 2009) (because

---

[12]   On the other hand, the Settlement Letter imposes several obligations on the Settling Plaintiffs, including an obligation not to disclose the terms of the settlement and a covenant not to sue any of the Individual Defendants or to assist anyone else in a lawsuit against the Individual Defendants.

[13]   This argument is advanced on behalf of the Individual Defendants only.

plaintiffs were not entitled to recovery on their deceptive trade practices claims, "an award of attorney's fees is not warranted in this case.")

### IV.

### THE FEES SOUGHT BY PLAINTIFFS ARE EXCESSIVE, ARE NOT SUPPORTED BY CONTEMPORANEOUS TIME RECORDS, AND SHOULD BE SUBSTANTIALLY REDUCED[14]

Plaintiffs' Counsel now seeks an award of $3,344,438.65, comprised of $825,558 in attorneys' fees, multiplied by four, and $42,206.65 in expenses.  For the reasons that follow, we believe that the amount requested by Plaintiffs' Counsel is wildly excessive, particularly in comparison to their limited success.  A substantial portion of the fees claimed are not supported by contemporaneous time records; numerous entries are vague and non-descriptive; others reflect excessive billings, including billings for three attorneys at several depositions; substantial amounts are billed at attorney rates for services not requiring the skill – or billing rate – of an attorney; and an inordinate amount of time has been billed for post-settlement activities, including the making of two frivolous post-settlement motions, and the preparation of the instant fee application.  For those reasons, and those discussed further below, any amount awarded as Counsel's attorneys' fee in this case should be significantly reduced to a percentage of the amount claimed by Counsel.

A.      **The Amount Of Any Award Should Reflect Plaintiff's Limited Success In This Case**

As noted by this Court in *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 519 (S.D.N.Y. 2002):

> "'[T]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar*, 506 U.S. at 114, 113 S.Ct. 566 (*quoting Hensley*, 461 U.S. at 436, 103 S.Ct.

---

[14] This argument is advanced on behalf of all Defendants.

1933); *N.A.A.C.P. v. Town of East Haven*, 259 F.3d 113, 117 (2d
Cir. 2001). The Supreme Court has reasoned that if a plaintiff
achieves only limited or partial success, the lodestar amount may
be excessive. *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. "This will
be true even where the plaintiff's claims were interrelated,
nonfrivolous, and raised in good faith." *Id.*

In *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir.

2008), the Court noted that the "degree of success" inquiry "is not limited to inquiring whether a

plaintiff prevailed on individual claims." *Id.* at 152.  "Both the quantity and quality of relief

obtained, <u>as compared to what the plaintiff sought to achieve as evidenced in her complaint</u>, are

key factors in determining the degree of success achieved." *Id.* (quotation marks and citation

omitted; emphasis added).  "A plaintiff who seeks compensatory damages but receives no more

than nominal damages is often such a prevailing party.... When a plaintiff recovers only nominal

damages because of his failure to prove an essential element of his claim for monetary relief, the

only reasonable fee is usually no fee at all."  *Farrar v. Hobby*, 506 U.S. 103, 115, 113 S.Ct. 566,

121 L.Ed.2d 494 (1992). *See also Scott*, 2009 WL 2610747 (reducing fee award by 30% to

reflect limited success), *vacated on other grounds,* 626 F.3d 130.[15]

Here, any amount awarded should reflect Plaintiffs' very limited success in this action.

In the Amended Complaint, Plaintiffs demanded judgment in an amount not less than $10

million, trebled in accordance with RICO, as well as punitive damages.  (dkt. #26).  As trial

approached, Plaintiffs submitted five reports of their purported damages expert, who calculated

the five settling Plaintiffs' damages to be between $6,903,487 to $8,534,223, which if trebled,

would have amounted to anywhere from $20 to $25 million.  *See* dkt #130-2-6.  On or about

---

[15]  Moreover, there is no basis "for calculating attorneys' fees according to the fees an adversary
pays his own attorney."  *Schwartz v. Chan*, 142 F. Supp. 2d 325, 332 (E.D.N.Y. May 7, 2001) (rejecting
argument that claimant should be awarded the same fee that his adversary paid his own attorneys where
claimant did not state what those fees were, did not explain how the court should determine what those
fees were, and failed to refer to any legal authority that stands for such a proposition).

November 5, 2010, ten days before trial was scheduled to commence, Plaintiffs offered to settle the action for $2.5 million, of which $795,000 was for the Plaintiffs, and $1.705 million was for Counsel's attorneys' fees and costs.  Plaintiffs ultimately accepted settlements ranging from $10,000 to $200,000, totaling $295,000, exclusive of attorneys' fees and costs, which represents less than 3% of the amount of damages demanded in the Amended Complaint (before trebling), and only approximately 3.5% to 4.3% of the damages claimed by their purported expert (before trebling).

In a situation closely analogous to this, the Court in *Baird* reduced the requested lodestar by 60% to reflect the lack of success by plaintiffs in accepting an offer of judgment that was far less than the amounts they had originally demanded.  In that case, plaintiffs initially calculated their damages at $1.25 million, but they accepted a settlement of $37,500 (representing 3% of the initial claim), without any admission of liability, and without any injunctive relief.  219 F. Supp. 2d at 512.  Judge Chin found that "plaintiffs accepted the offer of judgment because they realized as the case progressed, that they had little hope of success on the merits," and reduced the fee award by 60%.  *Id.* at 523-25.  The settlement by Plaintiffs in this case also represents approximately 3% of the amount that they original claimed, and even less if those claimed damages had been trebled.  Accordingly, as in *Baird*, the lodestar claimed by Counsel in this case should be reduced by at least 60%, and probably more.

Under any view of the facts here, Plaintiffs achieved remarkably little in comparison to what they sought, and it is folly to suggest that Plaintiffs were "successful."  One of the six Plaintiffs receives nothing from the settlement,[16] and three others receive $25,000 or less.[17]

---

[16]  This fact alone warrants an overall reduction of Counsel's request by approximately 17%.

[17]  On the other hand, it is equally clear that Northern achieved what can fairly be characterized as an unequivocal victory.   As invoices from Northern's attorneys reflect (*see* dkt #143-15 at p. 45-46

Plaintiffs agreed that the settlement "does not constitute an admission or evidence wrongdoing" and Northern has not agreed to change any aspect of its business practices as part of the settlement.  As such, the fee requested by Counsel's award must be significantly reduced to an amount that is far below the lodestar that they seek.  *See Barfield*, 537 F.3d at 152 (district court did not abuse its discretion by reducing lodestar amount by half to account for plaintiff's failure to obtain collective action certification); *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009) (reducing requested fee award from $18,045.50 to $7,000 where "the award of actual damages is far less than what [plaintiff] claimed."); *U.S. Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir. 1989) (district court properly reduced the lodestar amount by 20 percent "given the limited success of the [plaintiff], and its recovery of only nominal damages.")

The same type of reduction is warranted here.  As reflected by the low settlement amounts accepted by Plaintiffs, the claims of each Plaintiff suffered from a number of serious and potentially dispositive flaws, including the following, which were the subject of motions *in limine* that were *sub judice* at the time the settlement was made.

---

[Northern 812276-812277], attached to the Affirmation of Krishnan Chittur), in October 2010 - the month leading up to the expected November 15th jury trial of this action – Northern incurred legal fees and expenses in excess of $330,000 in connection with this case.  A similar amount, if not more, was expected to be incurred during the month of November 2010, when several depositions were to be completed, pre-trial motions were to be filed, a pre-trial order was to be prepared and filed, a *Daubert*-type hearing was to be held, and the expected 10 day trial would take place.  By settling for a total of $295,000, Northern likely paid substantially less than it would have spent in attorneys' fees alone, and it avoided the risk of a jury trial.  For the reasons discussed above, Northern strongly believes that there was no admissible evidence to support Plaintiffs' claims, and it made appropriate motions *in limine* to prevent Plaintiffs counsel from making unsupported argument to the jury (see dkt #130, 132).  However, at the time that Northern agreed to settle, it was unknown how the Court would rule on those motions.  By settling for a small percentage of what Plaintiffs were seeking, Northern not only saved money on legal fees, but it avoided any risk of an adverse damage award, and the possibility of that award being trebled.

1.      **Defendants' Motions *In Limine* Put Any
        Recovery By Plaintiffs' At Substantial Risk**

Shortly before the settlement was reached, Defendants filed two motions which, if

granted, would have made it unlikely that Plaintiffs would be able to sustain their burden of

proof as to liability, or that they would be able to prove that they sustained recoverable damages.

In the first motion (dkt #130), which was filed on November 3, 2010 – one week before the

settlement was reached – Defendants moved to exclude the expert reports and testimony of

Plaintiffs' damages expert, Stan Smith, on several grounds.  Dr. Smith had opined that Plaintiffs

collectively sustained between $6,903,487 and $8,534,223 in damages, most of which consisted

of what he termed "hedonic damages" or "reduction in the value of life" – another way of saying

pain and suffering.  However, neither of the statutes that formed the basis for the Plaintiffs'

causes of action permits recovery for pain and suffering.  RICO only permits recovery of damage

to a plaintiff's business or property.  Section 349 of the GBL permits recovery only for actual

measurable losses incurred by plaintiffs.  Defendants sought to exclude Smith's testimony

concerning those damages that were not recoverable by Plaintiffs under either statutory scheme.

Defendants' motion to exclude Dr. Smith's reports and testimony also argued that many

of the types of losses discussed in Dr. Smith's reports were not recoverable because they were

purely theoretical, and did not show that a particular Plaintiff actually sustained an actual,

measurable loss.  His opinions were riddled with numerous, speculative assumptions for which

there was no evidentiary support.  He relied on virtually no documentary evidence to support

most of his opinions in this case, including his opinions concerning hedonic damages and loss of

business profits – two of the largest losses that he calculated.  For these reasons, and others,

Defendants argued, persuasively, that Dr. Smith's opinions did not pass muster under Rule 702,

and that they warranted exclusion under Rule 403 as well, because their prejudicial value

outweighed their limited probative value.  By agreeing to settle, Plaintiffs avoided having to respond to that motion.

In the second motion (dkt 132), Defendants moved *in limine* to prevent Plaintiffs from introducing evidence, *inter alia*, of alleged bad acts or allegedly improper behavior that was unrelated to the claims alleged in the Amended Complaint – i.e. that Defendants, "based on forged documents, <u>which Defendants knew were forged</u>," had "a practice and pattern of starting bogus legal proceedings based on false representations and solely for the purpose of injuring Plaintiffs and recovering unwarranted sums through extortion," as they alleged in the Complaint. (dkt #26, ¶¶13, 99; emphasis original).  This motion was necessitated by Plaintiffs' change in strategy, which was made evident as trial approached.  Recognizing that they had uncovered no evidence to support their contention that Defendants had a practice of starting lawsuits to enforce equipment leases that they knew to be forged, Plaintiffs' Counsel submitted a proposed pre-trial order that made clear that Plaintiffs were going to try to show that Northern was a bad actor generally, based largely on unsubstantiated complaints that had been made by non-parties, involving situations that were wholly unrelated to and dissimilar from the claims asserted by the Plaintiffs in this case.[18]  Defendants' motion also sought to preclude Plaintiffs from introducing evidence of certain damages that they claimed to have sustained, based on Plaintiffs' repeated failure to produce any documents supporting those claimed damages, despite Court Orders directing them to do so.  Defendants' second motion was filed on November 8, 2010.  It is no coincidence that the settlement was reached two days later.

---

[18]   Much of the discovery that Plaintiffs demanded focused on these irrelevant issues, which is another reason why the fees sought are excessive.  Had Counsel limited their discovery demands to the claims that are pleaded in the Complaint, they could have avoided at least half of the attorney time that both sides put in to this case.  Counsel should not be compensated for engaging in burdensome and needless discovery, which produced nothing of value to their case.

2.      **Plaintiffs' GBL §349 Claims Were Suspect**

Although Plaintiffs asserted claims under both RICO and GBL §349, their claims under the latter statutory scheme stood on even shakier ground than their RICO claims.  A number of Courts have recognized the importance of considering the "purpose of section 349 … when deciding whether to award fees and how much should be awarded."  *Blue Cross*, 190 F. Supp. 2d at 422 (*citing Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp. 2d 127, 132 (E.D.N.Y. 1998)).  Such purpose is to "combat fraud against consumers, particularly the disadvantaged." *Indep. Living Aids*, 25 F. Supp. 2d at 132 (citation and internal quotation marks omitted).

Based on the facts discussed above, it is unlikely that Plaintiffs' section 349 claims would have met the test for liability under that statute.  *See Aldrich v Northern Leasing Systems, Inc.*, 2009 N.Y. Misc. LEXIS 4752, at *18 (N.Y. Sup. Ct. Mar. 12, 2009) (dismissing similar GBL §349 claims against Northern, brought by Chittur & Associates, on grounds that the leasing transactions involved in that case did not have a broad impact on the public at large); *see also Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 479 (S.D.N.Y. 2010) (dismissing GBL §349 claims based on plaintiff's failure to produce evidence of misrepresentations that impacted the public at large); *Genesco Entm't v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (dismissing GBL §349 claims where it was a "single shot transaction" and the "only parties truly affected ... by the alleged misrepresentations ... [were] the plaintiff and the defendants.").

Accordingly, Counsel's attorney's fee claim, to the extent that it is based upon section 349(h), is not reasonable.  *See Martin v. Group Health Inc.*, 2 A.D.3d 414, 415 (2d Dep't 2003) (holding that plaintiffs were not entitled to attorneys' fees under section 349 where there was no proof of consumer-oriented conduct); *Devlin v. 645 First Ave. Manhattan Co.*, 229 A.D.2d 343, 344 (1st Dep't 1996); *Keos, Inc. v. Helgen Indus., Inc.*, 2009 N.Y. Misc. LEXIS 6311, at *9-10 (Sup. Ct. Sept. 28, 2009); *Diller v. Steurken*, 185 Misc. 2d 274, 278-79 (Sup. Ct. 2000).  *See*

*also Fulton v. Allstate Ins. Co.*, 14 A.D.3d 380, 381-82 (1st Dep't 2005) (claim for attorneys' fees based upon alleged violation of section 349 should be dismissed because section 349 claim could not stand).

### 3. The Settlement Reflects Counsel's Lack of Success

Ultimately, five of the six Plaintiffs agreed to settle their cases, and the sixth abandoned her case entirely.  Based on the objective evidence in this case, we submit that Plaintiffs' claims were not well founded, and in the case of four of them, were borderline frivolous – a fact that is reflected in the very small amounts that Northern agreed to pay them:  (a) $0 to Kettler; (b) $10,000 to Redner; (c) $15,000 to Smith; (d) $25,000 to Ms. Serin; (e) $45,000 to Mr. Lim; and (f) $200,000 to Mr. Russ.[19]  Settlement avoided the substantial additional legal fees that would have been incurred by Northern during the days leading up to trial and the trial itself – amounts that likely would have far exceeded the amount of the settlement.  Settlement also eliminated the inherent risk involved in a jury trial, including the possibility that any damage award would be trebled under RICO.  Plaintiffs and their Counsel clearly recognized the significant weaknesses in their cases, by accepting just 3% of the amount they originally demanded for five plaintiffs (before trebling), and abandoning the claims asserted by the sixth.

### B. Most Of Mr. Altman's Time Charges Are Based On Reconstructed Time Records, And Should Be Excluded

On this application, Counsel seeks attorney time charges totaling $825,558, based on 1,826.43 hours of attorney time.  Of that, 582.3 hours were expended by Keith Altman, an attorney who was admitted to practice in California in 2008, and who, we are advised, is ineligible to be admitted in New York because he obtained his law degree through an online

---

[19]  As noted above, Mr. Russ was the only one of the Plaintiffs who claimed to have sustained a loss of business profits.  The risk of a substantial damage award justified a higher settlement amount, even though objectively, the merits of Mr. Russ's claim were no stronger than those of the others.

course that is not recognized in New York.[20]  The Declaration submitted by Mr. Altman in this matter candidly admits that he did not keep contemporaneous time records in this matter until November 1, 2010 – just ten days before the settlement was reached.  Thus, Mr. Altman has submitted "reconstructed" time records.  According to his reconstructed time records, using emails sent and received, and telephone records during the period prior to November 1, 2010, Mr. Altman put in a total of 428 hours on this case prior to November 1, 2010.[21]  Altman Decl., ¶20.  Under prevailing law in this circuit, all of this time should be excluded in calculating the fee award in this case.  *Scott*, 626 F.3d at 133.

In *Scott*, *supra*, the Second Circuit vacated an attorneys' fee award that was based on time entries that had been reconstructed using, *inter alia*, "an extensive database of incoming emails, . . . the records of [other law firms], my office files, court records and court calendars."  *Id.*, 2009 WL 2610747 at *6 & n. 41.  In rejecting any fee based on reconstructed time records, the Second Circuit held that absent unusual circumstances, "**attorneys are required to submit contemporaneous records with their fee applications**," failing which, the district court must deny the application entirely.  626 F.3d at 133 (emphasis added).[22]  The "unusual circumstances" that might justify an exception to the rule, said the Court, include "where the records were consumed by fire or rendered irretrievable by a computer malfunction before counsel had an

---

[20]  Mr. Altman's biography indicates that he received a J.D. from Concord Law School, an online law school based in Los Angeles, California, which is not accredited by the American Bar Association, or by the California Committee of Bar Examiners.  http://en.wikipedia.org/wiki/Concord_Law_School (last visited Jan. 19, 2011).

[21]  At $425 per hour, which Counsel used to calculate their claims in this case, this amounts to $181,900.

[22]  Counsel's memorandum of law in support of this application cite cases at footnote 6 for the proposition that there is no hard and fast rule concerning reconstructed time records.  Those cases, all of which were decided before the Second Circuit's opinion in *Scott*, are not good law.

opportunity to prepare his application." *Id.,* 626 F.3d at 134.  Those unusual circumstances are not claimed to exist in this case.

*Scott* mandates that the Court reduce the fees sought by Counsel by $181,900, to eliminate the time charges for which Counsel has submitted no contemporaneous time records. *Id.*[23]

**C.    Many Of Counsel's Time Charges Are Not Reasonable, Relate To Time Spent On Cases Other Than This Case, Or Are Improperly Documented With Vague Entries**

In determining the reasonableness of Counsel's fee request, the Court must examine the hours expended by the attorney, review them for reasonableness, and exclude any excessive or unnecessary hours. *See Hensley*, 461 U.S. at 434; *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1168 (2d Cir. 1993) (disallowing fees resulting from "unreasonably excessive" litigation); *Bingham v. Zolt*, 823 F. Supp. 1126, 1137 (S.D.N.Y. 1993) (reducing requested fee award by 15 percent based on the reasonableness of certain expenses.)[24] *Nu-Life Const. Corp.*, 795 F. Supp. at 605 (reducing requested fee award from $303,235.25 to $174,850 based on vague descriptions of legal work performed, failure to provide contemporaneous time records and failure to substantiate hours purportedly billed to plaintiff relating to the one successful

---

[23]    It bears pointing out that Mr. Altman reconstructed his time records using records of telephone calls to and from "Chittur & Associates" and Moses & Singer, as well as emails to and from Mr. Chittur, Mr. Strutinskiy, and various attorneys at Moses & Singer.  However, Mr. Altman fails to acknowledge that he is co-counsel of record with Chittur & Associates in another lawsuit, beside this one, in which Moses & Singer are attorneys for the defendants.  His phone records give no indication as to whether the telephone calls involved this case, or the other, unrelated case.  Many of the email entries have the subject line redacted, making it impossible to determine whether they relate to this action or not.

[24]    Similarly, with respect to attorney's fee requests under section 349(h), courts "must consider the specificity of counsel's time records when it assesses a claim for attorneys' fees."  *Schwartz v. Chan*, 142 F. Supp. 2d 325, 332 (E.D.N.Y. 2001) (citation omitted).  The party seeking an attorney's fee award has the burden of documenting the amount of an attorney's fee award.  *Id*. at 331.  Such documentation "must include a proper basis for determining how much time was spend on particular claims, including a detailed and specific record of the work that was completed."  *Id*. (citations and internal quotation marks omitted).

claim); *U.S. Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir.1989),

*cert. denied* 493 U.S. 1071 (1990) (lodestar reduced 30% due to vague documentation of time

entries); *Carey*, 711 F.2d at 1146 (5%-20% reductions made to multiple claims for fees upon

objections to duplicative and excessive hours); *Meriwether v. Coughlin*, 727 F.Supp. 823, 830-31

(S.D.N.Y. 1989) (30% reduction to fees requested due to vagueness and inability to match fees

with successful claims).

"The applicant should exercise "billing judgment" with respect to hours worked and

should maintain billing time records in a manner that will enable a reviewing court to identify

distinct claims." *Hensley*, 461 U.S. at 437.  "A party seeking attorneys' fees bears the burden of

supporting its claim of hours expended by accurate, detailed, and contemporaneous time

records."  *Lukaszuk*, 2007 WL 4699018 at *10.  The purpose of this requirement is to provide the

court with enough information to audit the hours and determine whether they were reasonably

expended.  *Anderson v. Rochester-Genesee Regional Transp. Authority*, 388 F. Supp. 2d 159

(W.D.N.Y. 2005).

    1.    **The Court Should Reduce The Award For Non-Lawyer Time Billed By Mr. Strutinskiy and Mr. Altman, And For Excessive Charges For Research Made By Mr. Chittur**

Submitted herewith as Exhibit B is a schedule showing numerous questionable time

entries submitted by Counsel.  Many of those were made by Mr. Strutinskiy and Mr. Altman for

performing services that are not typically performed by attorneys, and which certainly are not

entitled to be compensated at attorney rates ($350/hr in the case Mr. Strutinskiy, and $425/hr in

the case of Mr. Altman).  In many instances, the time entries for the questionable entries are

lumped in with other more appropriate entries, but because the time for each task is not specified,

it is impossible to separate the appropriate time entries from the questionable.

Billing entries such as those submitted by Counsel have been rejected by Courts in this District.  In *In re Nortel Networks Corp. Securities Litigation*, 2010 WL 3431152 (S.D.N.Y. Aug. 20, 2010), the court held that a large portion of the fees requested by three firms were not compensable because of both improper staffing and inadequate documentation (*id.* at *3):

> It is clear that a significant portion of the work done by senior attorneys could have been performed by more junior attorneys or paralegals at lower billing rates. [citation omitted]. For example, Mr. Bauer, a partner at Milberg charging $725 an hour, billed for certain tasks that easily could have been performed by more junior attorneys or paralegals, including "get PDF copies to GCG for filing on Website"; "send signature on addendum # 2 to FMC regarding BC retention"; "update Excel spreadsheets for Escrow Agents and send information to [Defendant's counsel]"; "receive [Murray Gold] signature and fax to HSBC"; and "send courtesy copies to all counsel." [citation omitted]  Similarly, Murray Gold, a partner at Koskie charging $475 an hour, requests reimbursement for tasks such as "review[ing] case law"; "review[ing] file documentation"; and "attending to file." [citation omitted].
>
> *   *   *
>
> Accordingly, the Court concludes that Lead Plaintiff's Counsel's request for fees billed from September 1, 2006 to June 30, 2010 should be reduced by 35%, because the timesheets reflect an overly expensive and/or inefficient allocation of resources. See *In re Painewebber Ltd. P'ships Litig.*, No. 94 Civ. 8547, 2003 WL 21787410, at *4 (S.D.N.Y. Aug. 4, 2003) ("Because 'it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application,' courts apply across-the-board percentage cuts 'as a practical means of trimming fat from a fee application.'") (*quoting N.Y. State Ass'n for Retarded Children, Inc. (N.Y.SARC) v. Carey*, 711 F.2d 1136, 1146 (2d Cir.1983)).

Examples of Counsel's excessive and inappropriate time entries in this case abound.  For example:

- Mr. Strutinskiy billed a total of 53.1 hours for videotaping seven (7) depositions, while another attorney – Mr. Altman, was conducting those depositions;[25]

---

[25]  These entries are highlighted in yellow on Exh. B.  Mr. Strutinsky acted as the videographer at these depositions, as is reflected on the record of those depositions.

- Mr. Chittur billed a total of 18.6 hours for attending depositions that Mr. Altman was conducting, and which Mr. Strutinskiy was videotaping (*Kronfeld v. Transworld Airlines, Inc.*, 129 F.R.D. 598, 604-605 (S.D.N.Y. 1990)  ("The presence at a deposition of two partners (whether from the same firm or different firms), without a showing that each had a distinct responsibility in the case necessitating his or her presence, is duplicative and noncompensable."), *citing Seigal v. Merrick*, 619 F.2d 160, 163 (2d Cir.1980);[26]

- Mr. Strutinskiy billed a total of 22.8 hours for doing tasks such as copying or burning CD's or DVD's – tasks typically done by secretaries or IT personnel, and considered part of overhead;[27]

- Mr. Strutinskiy billed a total of 19.8 hours for services that included acting as a messenger;[28]

- Mr. Strutinskiy billed a total of 13.8 hours for services that are normally done by a secretary or paralegal, such as "arranging the file" or "filing", "making copies", scanning and emailing documents to co-counsel.  These entries should be reduced or excluded from any computation.  *In re Nortel Networks*, 2010 WL 3431152 at *2-3;[29]

- Mr. Altman billed a total of 8 hours for doing work typically done by an IT person, such as loading Defendant's document production into Concordance, and preparing images.[30] *Id.*;

- Mr. Chittur billed a total of 125 hours at $600/hr for activities that included doing legal research, which is more appropriately performed by a more junior attorney.[31]  *Shannon v. Fireman's Fund Insurance Co.*, 156 F.Supp.2d 279, 301-302 (S.D.N.Y. 2001) (reducing total hours billed by senior partner who charged,

---

[26]  Some of these entries, which are highlighted in tan on Exh. B, are combined with other tasks, without specifying the time spent on each.

[27]  These entries are highlighted in orange on Exh. B.

[28]  These entries are highlighted in pink on Exh. B.  It should be noted that many of these time entries include other tasks as well, some of which are appropriate for an attorney.  Because the time for all tasks is lumped together, it is impossible to separate the time spent on the inappropriate tasks from the time spent on the tasks that are appropriate for an attorney.  Unless Defendants have an opportunity to depose Mr. Strutinskiy about these issues, the entire amount of these entries should be excluded.

[29]  These entries are highlighted in light blue on Exh. B.

[30]  These entries, which are highlighted in green on Exh. B, are combined with other attorney appropriate tasks, without specifying the time spent on each.

[31]  These entries are highlighted in dark blue on Exh. B.

> *inter alia*, for legal research that should have been handled by younger associate);
> *Kronfeld v. Transworld Airlines, Inc.*, 129 F.R.D. 598, 603 (S.D.N.Y. 1990)
> (reducing hour rate billed for 60 hours of research and other similar work done by
> senior attorney by 33.3%);

All of these time charges should be excluded from the Court's computation of Counsel's

fee in this case, or they should be substantially reduced.

In *Rahman v. The Smith & Wollensky Rest. Group, Inc.*, 2008 WL 1899938 at *4

(S.D.N.Y. Apr. 29, 2008), a case that Plaintiffs' Counsel cites as support for the hourly rates

charged by Mr. Chittur and Mr. Sharma, the Court actually reduced the amounts sought by both

attorneys because both attorneys engaged in precisely the same type of excessive billing that

Messrs Strutinskiy and Altman have done in this case.  There, the Court held:

> [W]here time entries reflect excessive billing or duplicative work,
> a court may impose an across-the-board percentage reduction in
> order to achieve a reasonable fee award. [citations omitted].  This
> is an apt case in which to apply that technique. . . . That may have
> resulted in part from the fact that two attorneys worked on tasks
> that could easily have been handled by one. In addition, the work
> was performed by senior counsel billing at high rates, when many
> of the tasks could have been performed by less expensive junior
> attorneys.  <u>I will therefore reduce the number of hours to be
> included in the lodestar by one-third</u>.  (Emphasis added).[32]

### 2.   Many of Counsel's Time Entries Are Too Vague.

A large number of entries by Counsel are too vague, and fail to give the Court sufficient

information on which to base an award.  For example, Mr. Chittur has multiple entries such as

"email Serin", "tc mindy Serin"; "mtg Andrey re Russ"; "email Seth"; "tc Seth", "email"; "email

to def counsel", "ltr to Judge"; "tc client"; "email re expert".[33]  Courts have routinely eliminated

---

[32]   In a later decision in that same case, Mr. Chittur was found guilty of misconduct in discovery, and
ordered to pay the defendants' attorneys fees and costs in the amount of $80,230.44.  *Rahman v. The
Smith & Wollensky Restaurant Group, Inc.*, 2009 WL 72441 at *9 (S.D.N.Y. Jan 07, 2009).

[33]   Mr. Chittur fails to inform the Court that he is co-counsel of record with Seth Lesser (presumably
the "Seth" referred to above) in another lawsuit, beside this one, in which Moses & Singer are attorneys

or reduced these types of entries, and others like them, because they do not provide enough detail to evaluate whether the charge is compensable. *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172 (2d Cir. 1998) (entries such as "letter to court", "staff conference", or "work on motion" are too vague to sufficiently document the hours claimed); *Skold v. American International Group, Inc.*, No. 96 CIV 7137, 82461, 1999 WL 405539 at *10 (S.D.N.Y., June 18, 1999) ("Entries such as 'telephone call', 'consultation', and 'review of documents' are not sufficiently specific so as to enable the court to determine whether the hours billed are excessive"), *citing Dailey v. Societe Generale*, 915 F.Supp. 1315, 1328 (S.D.N.Y. 1996), *aff'd in part, vacated in part on other grounds*, 108 F.3d 451 (2d Cir.1997).

### 3.    Mr. Altman's Time Charges, Which Are All In Full One Hour Increments, Appear To Be Estimated, And Should Be Rejected

Estimated time entries billed in minimum increments, even if done contemporaneously, should stand on no firmer footing than reconstructed time records.  In both cases, the accuracy of the entries is in question, and the Court should reduce them substantially, if they are allowed at all.  Where entries consist of estimated time charges, invariably rounded up, Courts have routinely discounted them substantially.  *Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc.*, 2008 WL 2510601 (E.D.N.Y. Jun 20, 2008) (noting that "courts have consistently criticized" the practice of billing in minimum increments); *see also La Barbera v. Pass 1234 Trucking, Inc.*, 04-CV-1364, 2007 WL 2908175 at *7 (E.D.N.Y. Sept. 28, 2007) (reducing hours billed by fifteen percent where method of billing was "not entirely accurate since [attorneys'] time is divided into fifteen minute increments instead of the more traditional six minutes.").

---

for the defendants.  His time records give no indication as to whether the telephone calls and e-mails involved this case, or the other, unrelated case.  Many of the email entries have the subject line redacted, making it impossible to determine whether they relate to this action or not.}

Even a cursory review of Mr. Altman's time records demonstrates that those entries could not possibly reflect an accurate portrayal of the time that he actually spent on this case, since every single entry (with the exception of three entries on November 18, 23 and 24, 2010 - after the settlement was reached) is in an increment of one whole hour.[34]  This includes the reconstructed time for the period prior to November 1, 2010, as well as the time that he asserts is registered contemporaneously after November 1, 2010.  Needless to say, it is highly unorthodox to bill in hourly increments.  In fact, attorneys who have billed in minimum increments of more than .10 hours routinely have had their fees reduced.  *Cheesecake Factory*, 2008 WL 2510601 at *5;  *La Barbera,* 007 WL 2908175 at *7; *Oxford Venture Fund Ltd. P'ship v. CIT Group/Equip. Financing, Inc.*, 1990 WL 176102 at *2-4 (S.D.N.Y. Nov 05, 1990) (reducing fee request based on .25 hour increments by 30%); *see also* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 93-379 (Dec. 6, 1993) (concluding that it is unethical to bill in minimum increments that involve rounding up).

Accordingly, to the extent that Mr. Altman's time charges are not excluded from the computation for the reasons discussed elsewhere in this memorandum, they should be reduced substantially because they lack the accuracy necessary to support an award.

---

[34]  Mr. Altman also billed 36 hours for travel, at uniform 3 hour increments, no matter where he travelled.  This too suggests that these entries were estimates, leaving open the possibility that they are also inflated.  Moreover, while billing for travel may be appropriate where the travel makes the attorney unavailable to perform services on other matters, it is inappropriate where the attorney uses that travel time to conduct other business, make telephone calls, or review documents for another client.  ABA Comm. on Ethics and Professional Responsibility, Formal Op. 93-379 (Dec. 6, 1993).  Because Mr. Altman apparently does not keep time records for other matters, these fees should be rejected, unless Mr. Altman is deposed to determine whether he was able to make productive use of the travel time on other matters.  Clearly, Defendants should not be required to pay for time that Mr. Altman put to productive use on other matters.

**4.      Many of Mr. Chittur's and Mr. Strutinskiy's Time Charges
Are For Work Done On Matters Other Than This Case**

As Counsel's Memorandum of Law candidly admits at page 8, many of the time charges

for which Mr. Chittur and Mr. Strutinskiy seek to be compensated relate to their representation

of Plaintiffs Smith, Lim and Russ in New York City Civil Court actions that were commenced

by Northern approximately two years before this action was commenced.[35]  Those entries,

totaling 54.9 hours and $32,940, should be eliminated from any award in this case.  *Nu-Life*

*Const. Corp.*, 795 F. Supp. at 605; *Meriwether*, 727 F.Supp. at 830-31 (30% reduction to fees

requested due to vagueness and inability to match fees with successful claims).

Counsel argues that their time charges in defending civil court actions brought by

Northern against the Plaintiffs in this case are compensable because they are "inextricably

linked" to this action.  However, other than Mr. Chittur's one conclusory statement that the "fees

and expenses incurred in those proceedings resulted in work product that was actually used

here", there is nothing in Counsel's application to suggest that fees incurred in the Civil Court

actions are compensable.[36]

Counsel should also not be compensated for any of their time entries that involve matters

that are unrelated to the Plaintiffs in this case.  For example, Mr. Chittur has a 1.3 hour entry on

---

[35]  These entries are highlighted in red on Exh. B.

[36]  The cases on which Counsel rely are inapposite.  In *Gulfstream III Assocs., Inc. v. Gulfstream
Aerospace Corp.*, 995 F.2d 414 (3d Cir. 1993), the related litigation included the same liability issue as
the litigation at issue, and much of the work performed in the related litigation was helpful to and actually
used in the litigation at issue.  In *In re Unisys Corp. Retiree Medical Benefits Erisa Litigation*, 2008 WL
2600364, at *9 (E.D. Pa. June 26, 2008) the instant litigation was same litigation as the original class
action, but was proceeding under a different caption.  In *Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir.
1996), both cases were for copyright infringement that were consolidated for trial.  The Court held that
since 90% of billed time was necessary to both actions, recovery of fees for full amount of time for joint
preparation was appropriate.  In *Quantum Communications Corp. v. Star Broadcasting, Inc.*, 491 F.Supp.
2d 1123, 1134-35 (S.D.Fla. 2007), the related litigation was a bankruptcy, where counsel had to get the
automatic stay lifted in order to pursue the instant litigation.

April 8, 2006 that includes, "review of <u>Chang complaint</u>"; he has a 1.7 hour entry on March 30,

2006 that includes the entry, "review <u>California complaint</u>"; and he has a 1.2 hour entry on July

8, 2006 that includes the entry, "review answering papers in <u>Dougish.</u>"  Mr. Strutinskiy has a 2.1

hour entry on July 20, 2005 for "Court appearance in Civ Ct for Lim and <u>Dougish</u> motions"; he

has a 3.9 hour entry on May 25, 2006 that includes "Filing motions in Civ Ct re Russ,

<u>McAndrew</u>, <u>Kabbage</u>;" and he has a 1.2 hour entry on July 5, 2006 that includes a telephone

conference involving the "<u>Kabbage</u>" case.  None of these charges have anything to do with this

case and should be excluded in their entirety.

### D.        The Hourly Rate Charged By Mr. Altman Is Excessive

In connection with this application, Counsel requests that Mr. Altman be compensated at

the rate of $425/hr.  Mr. Altman was admitted to practice law in August 2008 – the same year

that he states that he obtained a B.S. in Astronomy/Physics from SUNY Stony Brook, and the

same year that he states that he received a J.D. from Concord Law School, an online program

based in California.  *See* dkt 143-25, p. 1.  Mr. Altman is an associate at Finkelstein & Partners,

LLP, which has offices in Newburgh, New York.  However he is not admitted to practice in New

York.  At the time the bulk of his services were performed in this case, Mr. Altman had had been

admitted to practice as an attorney for little more than 2 years.  He appears to have technical

expertise in the fields of e-discovery and forensic data analysis.  However, only a portion of the

work done by him involved that type of work, and there is nothing submitted by Counsel to

suggest that the type of IT work that Mr. Altman did warrants compensation at the rate of

$425/hr.  For these reasons, even if the Court is inclined to credit any of Mr. Altman's charges,

despite his lack of contemporaneous records and his practice of billing in one-hour increments,

the Court should reduce his hourly rate substantially to reflect the fact that he has been admitted

to practice for just over 2 years.

**E.      Counsel's Charges For Post Settlement Activities, Including Making
          A Frivolous Motion, And Preparing The Fee Application, Are Excessive**

Even though this case was settled as of November 10th, and the settlement was confirmed

in open court on November 15th, Counsel has continued to bill excessively, and their fee

application improperly seeks to be compensated for all of this work.  Since November 15th, Mr.

Chittur has billed a total of 65.9 hours, Mr. Altman has billed 32.80 hours, and Mr. Strutinskiy

has billed a total of 7.6 hours, representing a total of $56,140 in fees (billed at the rates they are

seeking), *after the settlement was reached.* [37]

A portion of the post-settlement time was spent by Counsel in making motions

concerning the terms of a formal settlement agreement.  Counsel's first motion, in which Mr.

Chittur claimed that the signed, written settlement letter he confirmed in open court did not

accurately reflect the terms of the settlement, was denied in its entirety by Judge Gwin on

December 10, 2010, who ordered that the "parties execute a final settlement agreement that is

fully consistent with the terms of the letter agreement agreed upon in open court."  *See* dkt 139.[38]

Since that time, Plaintiffs have refused to execute a formal settlement agreement, despite the

Court's clear directive to do so.  Counsel should not be permitted to be compensated for

engaging in this needless litigation, post settlement, which has done nothing to help the Plaintiffs

obtain any recovery, and which has, in fact, delayed that recovery.

In paragraph 41 of Mr. Chittur's Declaration, he states that the fee being sought includes

"65.9 hours (as of yesterday) in the preparation of this fee application."  There is a substantial

---

[37]   As noted above, many of Counsel's time entries are vague, and do not permit the Court to
evaluate what work was done.  This is especially true with regard to Mr. Chittur's post-settlement time
entries.  *See* dkt 143-33.

[38]   Because this motion relates to the confidential settlement, it has not been filed on ECF or with the
Clerk of the Court.  The motions and Defendants' opposition have been submitted to Judge Gwin via
email to his clerk.

question as to whether Counsel should be compensated for this work, which clearly is of no benefit to the Plaintiffs. In any event, the amount sought for this work is clearly excessive. *R.E. v. New York City Bd. of Educ., Dist. 2*, 2003 WL 42017 (S.D.N.Y. Jan. 6, 2003) (reducing requested fees for fee application and litigation from $24,522.10 to $ 12,000).

**V.**

**THERE IS NO JUSTIFICATION FOR A MULTIPLIER IN THIS CASE**

As noted, Counsel's application for fees in this case not only seeks compensation for the hours that they claim to have devoted to this case, but it seeks *four times* the total of their time charges.  There is no justification for a multiplier in this case, and they fail to cite one case involving a non-class action claim under RICO or GBL Section 349, in which a multiplier was awarded.  Our research also failed to reveal any such case.

In making their argument that a multiplier of four is appropriate, Counsel relies on a number of class action common fund cases, with settlements reaching the hundreds of millions of dollars or more, which have no bearing on this case.  For example, in *In re Global Crossing*, 225 F.R.D. 436 (S.D.N.Y. 2004), a class-action alleging violations of federal securities laws and ERISA, the court approved a partial settlement of $245 million, noting that the figure amounted to "one of the largest settlements since the passage of the Private Securities Litigation Reform Act." *Id.* at 447.  The Settlement Agreement the court approved called for $38.4 million in fees, and another $2.9 million for expenses, and the court noted that "in class action cases under the PSLRA, courts presume fee requests submitted pursuant to a retainer agreement negotiated at arm's length between lead plaintiff and lead counsel are reasonable." *Id.* at 466.  The court eventually awarded the attorneys fees as requested for all three classes, finding the percentage recoveries appropriate, with the lodestar multipliers falling in a range between 1.5 and 2.6. *Id.* A multiplier was also approved in *In re Comverse Technology*, 2010 WL 2653354, which

involved a securities class action that resulted in a $165 million common fund settlement. *Maley v. Del Global Technologies Corporation*, 186 F. Supp. 2d 358 (S.D.N.Y. 2007) involved a securities class action that resulted in a $11.5 million common fund settlement. *In re Worldcom, Inc. Securities Litigation*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) involved the settlement of a securities class action for in excess of $6 billion. *In re Telik, Inc.*, 576 F. Supp. 2d 570 (S.D.N.Y. 1984) involved the settlement of a securities class action for $5 million. *Demunecas v. Bold Food*, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) involved an $800,000 settlement of a class action alleging labor law violations. *In Re AOL Time Warner Shareholder Derivative Litigation*, 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010) involved the settlement of securities and ERISA class actions in which the settlement obtained by counsel consisted of "cutting-edge" changes in corporate governance. *Rabin v. Concord Assets Group,* 1991 WL 275757 (S.D.N.Y. Dec. 19, 1991), involved the settlement of a class action in which there was a cash payment of $2.7 million and a restructuring of the mortgage debt on the numerous properties which were the assets of the defendant real estate limited partnerships.[39]

Needless to say, Plaintiff's reliance on class action common fund cases, and a case resulting in cutting edge changes in AOL Time Warner's corporate governance, to support their claim for a multiplier in this case, is badly misplaced.[40]  Large scale class actions such as those cited by Counsel simply cannot be compared to the case at bar, where:

---

[39]  Even if this was the type of case in which a multiplier was appropriate, the portion of the fees incurred post settlement should not be multiplied. *Kelly v. City of Oakland*, 198 F.3d 779, 786 (9th Cir. 2000) (when a multiplier is used to enhance a fee award, the multiplier should not be applied to hours spent on the attorney's fee application); *Pellegrino v. Robert Half Intern., Inc.*, 182 Cal. App. 4th 278, 106 Cal. Rptr. 3d 265 (Cal. App. 4 Dist. 2010) (finding it inappropriate for trial court to apply multiplier to attorney's fees incurred in bringing attorney's fees application).

[40]  Indeed, the standard used in those cases – the so called *Goldberger* factors cited at pages 13-21 of Counsel's memorandum of law, apply to fee applications in class action common fund cases.  They do not apply to individual claims asserted under RICO and state statutes.

- this is not a class action;

- one of the plaintiffs received nothing;

- all six Plaintiffs obtained no relief against any of the Individual Defendants;

- six of the Plaintiffs agreed to settlement amounts totaling approximately 3% of the amounts that they sought to recover at the outset of this case;

- the settlement does not require Northern to change anything in the way it does business;

- all Plaintiffs agreed that the they would not disclose either the fact of the settlement, or the terms of the settlement, to anyone.

A multiplier is neither justified nor warranted on these facts.  Because of the confidential nature of the settlement, Counsel's argument that "significant public policy interests [were] vindicated" (Chittur Dec., ¶1) is illusory.  The public will never be aware of the terms of the settlement.  The settlement has no "deterrent effect" on anyone (*id*, at ¶34), since Northern does not admit any wrongdoing and did not agree to change any aspect of the way it does business. Likewise, the statement in paragraph 50 of Mr. Chittur's Declaration, that Northern was misusing the courts, is not supported by the terms of the settlement.  That claim is untrue, was never proved, and the settlement terms explicitly reject the idea that Northern engaged in any wrongdoing of any kind.[41]

## VI.

## DISCOVERY IS NEEDED

Defendants respectfully request the opportunity to conduct discovery with respect to Counsel's fee application.  Specifically, Defendants request depositions of Mr. Altman, Mr. Strutinskiy and Mr. Chittur, for the purpose of evaluating the reasonableness of their time charges, as well as limited document production from Mr. Altman.  If the Court is willing to credit any of Mr. Altman's reconstructed time entries, a deposition is warranted to evaluate the

---

[41]  If anything, Mr. Chittur's statement that no Attorney General tried to stop Northern's business practices undercuts the claim that there are improper practices to stop.

accuracy of those entries.  Mr. Altman should also be required to explain why his time entries –

including those that are allegedly based on contemporaneous time entries – are virtually all in

increments of one full hour, and whether those entries accurately reflect the time actually spent.

Mr. Altman should also be required to state whether he was able to put any of the 36 hours of

travel time for which he has billed for to productive use on other matters.  In this regard,

Defendants would also request that he produce documents, including telephone records and

records of emails sent and received, for the dates in question.  A deposition of all three attorneys

is also necessary to determine what opportunities Counsel turned down to litigate this case, since

that is one of the *Johnson* criteria.  Depositions are also necessary in order to evaluate many of

Counsels' vague time entries, and to evaluate whether their time entries reflect time reasonably

and necessarily devoted to this case, or to other cases.  Finally, a deposition of Mr. Strutinskiy is

necessary to examine what portion of his time entries relate to tasks that are appropriate for

attorneys, and what portion of those entries relates to tasks more appropriate for a videographer,

messenger, secretary or file clerk.

Finally, Defendants request that Counsel produce their retainer agreements for review by

Defendants, or at minimum, that they be produced initially for *in camera* inspection by the

Court, *inter alia*, to determine whether any portion of the settlement proceeds is to be retained by

Counsel, or whether a portion of the settlement proceeds may be used to pay for the $42,206.65

in costs and expenses that Counsel claims to have incurred in this case, as is typical in

contingency fee cases in New York.  The retainer agreements are also relevant  to "the nature …

of the professional relationship with the client" and "whether the fee is fixed or contingent",

which are two of the *Johnson* criteria.

## <u>CONCLUSION</u>

For the reasons stated above, this Court should significantly reduce the amount requested

by Counsel for its attorneys' fee award.

Dated: New York, New York
January 28, 2011

MOSES & SINGER LLP

By: _____/s/_____
Abraham Y. Skoff, Esq.
Robert D. Lillienstein, Esq.
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 554-7800
Fax: (212) 554-7700

*Attorneys for Defendants*

EXHIBIT A

**Robert Lillienstein**

| | |
|---|---|
| **From:** | Krishnan Chittur [kchittur@chittur.com] |
| **Sent:** | Friday, November 05, 2010 4:00 PM |
| **To:** | Robert Lillienstein |
| **Cc:** | Gwen_Mackey@ohnd.uscourts.gov; Keith Altman; Andrey Strutinskiy |
| **Subject:** | Serin v. Northern Leasing, Settlement Offer, Without Prejudice |

For settlement purposes only, without prejudice

Dear Mr. Lillienstein:

This is in response to your request for a breakdown of the $2.5 million settlement demand.  Our settlement demand comprises the following:

1. Judson Russ - $525,000 plus attorneys' fees and expenses.

2. Melinda Serin - $100,000 plus attorneys' fees and expenses.

3. Long Lui Lim - $100,000 plus attorneys' fees and expenses.

4. Gordon Redner - $25,000 plus attorneys' fees and expenses.

5. Thomas Smith - $45,000 plus attorneys' fees and expenses.

The attorneys' fees and expenses are $1.705 million.

While the total amount is higher than the various figures discussed in the settlement context before today - whether at the inception of the case or during its pendency or through the JAMS mediator - you will appreciate that since then, much more discovery has been taken, several depositions have been conducted, several briefings have been done, and plaintiffs themselves have had to put in much effort in complying with the discovery demands and depositions.  All this has added significant value to the case.  Accordingly, Plaintiffs are willing to settle for the total of $2.5 million.

This settlement offer is valid until 5:00 p.m. on Monday, November 8, 2010, and will lapse of its own accord if not accepted in writing accompanied by a check for the requisite amount by then.

Yours truly,
K. Chittur, Esq.
Chittur & Associates, P.C.
286 Madison Avenue Suite 1100
New York, New York 10017
Tel: (212) 370-0447

P.S.  This email may contain confidential and/or privileged material for the sole use of the intended recipient(s). Any review, use, distribution or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message

1/28/2011

EXHIBIT B

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| **Andrey Strutinskiy** | | | | | | **Andrey Strutinskiy** |
| Andrey Strutinskiy | 11/5/2010 | Attended and *video recorded* Lina Kravic deposition | $350 | 6.20 | Videographer | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/4/2010 | Reviewed video depositions of Krieger and Cohen and *transferred it onto CDs* | $350 | 1.60 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/3/2010 | Reviewing deposition transcripts and videos; *Copied videos of depos on a hard drive and arranging the file documents.* | $350 | 4.00 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/2/2010 | *Arranging the file and documents for JPTO* | $350 | 1.60 | Secretarial/Paralegal work | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/2/2010 | *Prepared & sent out the video deposition for sync to Todd Goldberg.* | $350 | 2.20 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/28/2010 | Attended and *videotaped* Cohen Deposition at Moses & Singer's office and tele conf w/Nigro and Altman | $350 | 9.20 | Videographer | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/27/2010 | Reviewed Buono deposition video and *created Buono depo DVD* | $350 | 1.20 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/27/2010 | Reviewed deposition videos; *Created DVDs of Krieger 30 (b)(6) Deposition, and Hahn Deposition* | $350 | 2.80 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/25/2010 | Attended the Deposition of Richard Hahn, *videotaping* | $350 | 7.30 | Videographer | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/25/2010 | Reviewed deposition video; *Burned Hahn Depo DVD* | $350 | 1.20 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/25/2010 | Prepared for deposition of Hahn, reviewed and prepared documents; *printed out docs and made copies of exhibits* | $350 | 2.50 | Secretarial/Paralegal work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/19/2010 | Reviewed and *copied the CDs w/docs received from Defendants* | $350 | 0.70 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/19/2010 | Prepared documents; drafted cover letter re doc production and *hand delivered the documents to Moses & Singe r* | $350 | 0.70 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/14/2010 | Attended and *videotaped Sam Buono deposition* | $350 | 6.60 | Videographer | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/13/2010 | Reviewed video of the deposition; *burned Susssman Depo on DVDs* | $350 | 2.60 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/12/2010 | Meeting with Altman; Prepared, attended and *videotaped Sussman depo* | $350 | 10.90 | Videographer | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/8/2010 | Reviewed video deposition; *created DVD of Krebs deposition* | $350 | 1.40 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/4/2010 | *Scanned and e-mailed Exhibits from P's depos to Altman; Scanned Russ depo transcript. Emailed all depo transcripts to Altman* | $350 | 0.90 | Secretarial/Paralegal work | Andrey Strutinskiy |

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Andrey Strutinskiy | 9/28/2010 | Prepared docs for production re Expert discovery, *bates numbered, scanned and hand delivered to Moses and Singer* | $350 | 1.40 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/20/2010 | TC w/Jane from Hudson; attended and *videotaped continuation of 30(b)(6) deposition of ?* | $350 | 4.50 | Videographer | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/15/2010 | *Hand delivered* Amended Rule 26 Disclosure | $350 | 0.20 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/30/2010 | Finalized Responses to 2nd Discovery request;  Reviewed and prepared for production Russ Bank of America statements;  Reviewed and prepared for production recorded files received from Serin on to the CD for Defendants;  *hand delivered documents to Moses & Singer* | $350 | 6.00 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/12/2010 | *Organized the exhibits and documents after Krieger deposition* ; reviewed depo video; *created DVDs of the deposition* | $350 | 1.30 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/12/2010 | Custodian of records deposition of Sara Krieger.  Prepared for deposition, prepared document and Exhibits; *videotaping of the deposition.* | $350 | 8.40 | Videographer | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/10/2010 | Reviewed and *copied CD w/docs received from Defendants* | $350 | 0.40 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/6/2010 | *Copied disc and FedEx to Altman* | $350 | 0.50 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/5/2010 | *Copied disc and FedEx to Altman* | $350 | 0.30 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/2/2010 | *Prepared documents for co-counsel; Copying and zipping CD for sending it to Keith Altman* | $350 | 1.70 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/26/2010 | Reviewed and *copied CDs w/docs produced by Defendants NLS* | $350 | 0.90 | Secretarial/IT work | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/8/2010 | *Emailed tel nos of plaintiffs to Stan Smith;  Filing* | $350 | 0.60 | Secretarial/Paralegal work | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/7/2010 | *Preparing documents for Stan Smith;  scanning our document production and copying defendants docs* | $350 | 1.60 | Secretarial/Paralegal work | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/28/2010 | Meeting with client Lim.  Prepared the documents from clients for depo prep; *bates numbered the documents for production, made copies and hand delivered docs to Lillienstein* | $350 | 1.40 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/24/2010 | *Reviewed numbered and copied additional documents produced by Plaintiffs and hand delivered it to Moses and Singer* | $350 | 1.20 | Messenger | Andrey Strutinskiy |

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Andrey Strutinskiy | 6/11/2010 | Finalized and *delivered interrogatories to Moses and Singer* | $350 | 1.40 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/9/2010 | Finalized and *served subpoena upon Sussman* | $350 | 2.00 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/27/2010 | *Entered expenses and filed documents* | $350 | 0.20 | Secretarial/Paralegal work | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/26/2010 | Reviewed and *bates numbered documents received from Russ and delivered it to Moses and Singer's office* | $350 | 0.70 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/30/2010 | Reviewing and arranging documents for production;  *making copies, numbering documents* | $350 | 2.60 | Secretarial/Paralegal work | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/30/2010 | Prepared and reviewed documents for production;  *hand delivered documents to Moses & Singer* | $350 | 0.60 | Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/20/2007 | E-mail to Sussman re Smith Discovery dispute | $350 | 0.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 1/2/2007 | Finalizing discovery requests and answer in NLS v. Simith, mailed it to Sussman | $350 | 3.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 12/27/2006 | Drafting e-mails to Sussman; e-mailed Sussman re Simth case | $350 | 0.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 12/15/2006 | Checking the civil court judgments re Lim and Russ | $350 | 0.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 12/15/2006 | Checked the files re Lim and Russ City Civ Court judgments; Drafted, finalized and faxed letter | $350 | 1.10 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 12/5/2006 | Reviewing Jaffe's orders in Simth and Russ | $350 | 0.50 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 12/1/2006 | Finalizing letter to Joseph Sussman | $350 | 0.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/8/2006 | Meeting w/Russ and court appearance | $350 | 7.50 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/7/2006 | Reviewing motion papers in Russ & Smith | $350 | 2.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/2/2006 | Drafting reply to motion for reargument in Smith | $350 | 3.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/31/2006 | Drafting reply to motion to renew and reargue--Smith; drafting answer and counterclaim, notice of deposition in Ketler | $350 | 3.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/23/2006 | Conf w/KC re Deposition and civ ct cases Smith and Russ;  TC w/filed notice of appeal and motion to renew and reargue in NLS v Smith | $350 | 5.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/19/2006 | Reviewed civ ct files and re affidavit of Tarly Dall from the Tomas Simth file;  drafted and finalized notice of appeal in Pludeman;   Conf w/KC re motion for renew and reargue | $350 | 5.20 | Civil Court Case | Andrey Strutinskiy |

857763v1

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Andrey Strutinskiy | 10/13/2006 | TC w/Valerie Smith she wil finalize the affidavit by tomorrow and we should get it by Monday;  working on Smith's motion to reargue and renew; checked the files for Tarly Dall's affidavit re NLS v Smith case | $350 | 4.10 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/10/2006 | Drafting motion for reargument and reconsideration in NLS v. Smith | $350 | 2.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/6/2006 | Finalized and submitted Reply re Russ' motion for stay to the App Term by hand delivery | $350 | 3.20 | Civil Court Case/Messenger | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/5/2006 | Conf w/KC re Hearing in Russ and Smith; attending the hearing in Smith and Russ before Jaffee in City Civ Ct | $350 | 5.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/4/2006 | Finalizing reply affirmation re motion to stay proceedings pending appeal in NLS v Russ | $350 | 2.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 10/2/2006 | Scanned and e-mailed Valerie Smith's letter to KC | $350 | 0.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/25/2006 | Conf w/KC re Russ case;  Finalizing Russ' motion to the Appellate term | $350 | 6.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/22/2006 | Finalizing Russ' motion for stay | $350 | 3.50 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/15/2006 | TC w/Russ | $350 | 0.30 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/14/2006 | Scanned and e-mailed decisions on the motion to Smith and Russ | $350 | 0.30 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/11/2006 | Reviewing Jaffe's decision re NLS v. Russ; conf w/KC re Smith and Russ cases'  TC w/Russ re his affidavit he mailed it by regular mail | $350 | 1.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/6/2006 | Finalizing Russ affidavit re Rapid Cash;  Reviewing Jaffe's Decision re Thomas Smith;  Consultation w/KC;  e maile affidavit re default judgment to Russ; reviewing Kettler's e-mail re Krieger affidavit | $350 | 2.50 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/25/2006 | Drafted and finalizing opposition papers re motion to dismiss;  filing memo of law and affirmation via ECF; **prepared courtesy copies of motion papers for court** | $350 | 3.80 | Secretarial/Paralegal work | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/17/2006 | Reviewed Smith and Russ documents and files;  Smith-finalized and *hand delivered letter to Jaffee with additional affidavits* ; **faxed copy to Sussman;**  TC w/Sussman re document sent to judge;  Tele-Conference **w/Judge Jaffe**  re Simth and Russ cases | $350 | 4.20 | Messenger & Secretary work; who is Judge Jaffe?;  Civit Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/7/2006 | called Valerie Smith, drafted aff re his signature;  Scanning and emailing Krieger affidavit to Kettler, left message to Kettler; | $350 | 1.50 | Civil Court Case | Andrey Strutinskiy |

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Andrey Strutinskiy | 8/4/2006 | Appeared in court for Russ & Smith motions; consultation w/KC; Scanning and E-mailing Krieger's affidavit re motion to dismiss | $350 | 4.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 8/3/2006 | Preparing for court appearance in Russ and Smith cases | $350 | 2.80 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/25/2006 | Received notice of Cross motion in Russ; Reviewing Notice of Cross Motion in NLS v. Russ;  TC w/Sussman re returnable date of the motion | $350 | 3.10 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/25/2006 | Reviewed NLS Opp due in Russ-received by mail on July 25, 2006 | $350 | 1.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/5/2006 | TC w/Sussman re adjournment of the Kettler, Kabage and Russ motions; reviewing and sending signe stipulations back to Sussman;  TC w/clients | $350 | 1.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/20/2006 | Civ Court Appearance in NLS v Smith, return date was adjourned to July 12, 2006 | $350 | 2.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/19/2006 | Finalizing attorney affirmation in Smith's case;  e-mailing Sussman re Rapid Cash; TC w/Valery Smith re affidavit she sent; preparing for the oral argument on Smith case in Civil court | $350 | 3.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/16/2006 | Finalizing affirmation in Smith's case | $350 | 0.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/15/2006 | Reviewing e-mail from Rus; e-mail to Sussman re NLS v. Rapid Cash civ court litigation | $350 | 0.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/6/2006 | Finalizing Smith's reply to cross-motion; reviewing Ketter's e-mail;  TC w/Dean he does not recognize Ketter's name, hung up the phone; L/M for Kettler; | $350 | 3.10 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/5/2006 | Finalizing Smith's reply papers | $350 | 4.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/1/2006 | E-mail to Sussman re Kettler; e-mail to Sussman re Russ | $350 | 0.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/26/2006 | Drafting and sending an e-mail to Sussman; drafting opposition in Smith motion to dismiss | $350 | 2.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/25/2006 | Filing motions in Civ CT re Russ, McAndrews, Kabage;  Drafting Smith Affidavit, TC w/Alla re document review tomorrow l/m for Sussman | $350 | 3.90 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/23/2006 | Finalizing Russ motion;  preparing affidavits of service | $350 | 1.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/22/2006 | Drafting and finalizing Russ motion | $350 | 1.90 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/19/2006 | Finalizing civ ct motion Russ | $350 | 5.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/16/2006 | Appearance in civil court-adjourning Smith's motion | $350 | 3.40 | Civil Court Case | Andrey Strutinskiy |

857763v1

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|----------|------|-------------|-------------|------------|-------|----------|
| Andrey Strutinskiy | 5/11/2006 | Russ-Court appearance for oral argument on motion to dismiss. Reviewed and scanned NLS Reply to Smith motion to dismiss | $350 | 4.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/10/2006 | Russ Civ Ct-drafting memo in reply; TC w/Sussman re briefing schedule | $350 | 4.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/25/2006 | Reviewing the decision in Lim; Drafted and served Notice of Entry; TC with Sussman Re Adjournment of Smith Motion from May 2nd Return on 5/15/06 his opp due on 5/9 or reply on 5/5 | $350 | 2.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/24/2006 | Reviewing Russ' responses to X-Motion | $350 | 0.80 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/18/2006 | Court appearance for Russ motion; drafting and sending letter to Kettler | $350 | 1.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/17/2006 | E-mail to Russ;  Reviewed and Scanned opposition papers;  reviewing cases and deadlines in Civ Court Litigation | $350 | 1.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/14/2006 | File M-n to Dismiss in Civil Court-Smith | $350 | 1.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/12/2006 | E-mail to Sussman re Thomas Smith offer | $350 | 0.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/6/2006 | Russ-Filing Motion to consolidate and to dismiss, requested Russ' files for review in civ court, but clerk could not locate them | $350 | 4.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/30/2006 | TC w/Alla from Sussman's office re our request for extension to file response in civ ct on Russ, Kettler, Smith; drafting motions in Smith and kettler; l/m for Kettler; Consultation with KC | $350 | 2.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/30/2006 | Finalizing Smith motion to dismiss; served it on Sussman | $350 | 2.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/29/2006 | Drafting motion to dismiss re Thomas Smith | $350 | 3.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/9/2006 | Appearance in civil court for oral argument on Lim's motion to dismiss | $350 | 3.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/8/2006 | Finalizing Lim's Motion and preparing for the oral argument on the motion to dismiss | $350 | 0.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/2/2006 | Drafting and finalizing reply re Lim's motion to dismiss;  drafting response letter to Sussman re his offer of settlement to Lim | $350 | 2.10 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 3/1/2006 | Drafting Reply in re Lim's motion to dismiss | $350 | 1.90 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 2/3/2006 | Finalizing the motion to dismiss in Lim case | $350 | 2.60 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 12/5/2005 | Filing Answer in Civ Ct in Lim's Case | $350 | 1.50 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 12/1/2005 | Drafting motion to dismiss for forum non conv-LIM | $350 | 4.00 | Civil Court Case | Andrey Strutinskiy |

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Andrey Strutinskiy | 11/30/2005 | LIM-Drafting motion to dismiss for forum non convenience; Replying to Russ's e-mail | $350 | 0.80 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 11/30/2005 | LIM-Drafting motion to dismiss for forum non convenience | $350 | 0.30 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/20/2005 | Court appearance in City Civ Ct for a motion | $350 | 2.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/20/2005 | Court appearance in City Civ Ct for Lim and Dougish motions | $350 | 2.10 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/13/2005 | Reviewing responses from Lim to Krieger's affidavit;  drafting affidavit; consultation w/KC | $350 | 1.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 7/13/2005 | Reviewing Lim's responses to Krieger affidavit, making notes for client's affidavit | $350 | 1.10 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/10/2005 | Finalizing and filing OSC to Vacate the Judgment in Lim's case (civ ct) | $350 | 2.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/9/2005 | Finalizing OSC in Lim's case (re judgment) | $350 | 1.80 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 6/9/2005 | Reviewed files in Civil Court to get information about the cases in which we represent defendants;  Finalizing OSC in Lim's case (re judgment) | $350 | 4.70 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/12/2005 | Finalizing OSC to vacate the judgment in Lim's case | $350 | 2.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 5/12/2005 | Drafting OSC to vacate the judgment in Lim's case | $350 | 2.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/29/2005 | Drafting OSC re Lim drafting client affidavit re judgment | $350 | 1.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/29/2005 | Correcting Lim's affidavit re judgment and e-mailing it to him. | $350 | 1.00 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/28/2005 | Drafting discovery request;  Finalizing OSC to vacate the judgment in civil court against Lim | $350 | 1.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 4/28/2005 | Finalizing OSC to vacate the judgment in civil court against Lim | $350 | 1.40 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 1/24/2005 | Reviewed and replied to J. Russ' e-mail | $350 | 0.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/20/2004 | TeleConv w/Judson Russ re affidavit and missing last page from his original affidavit | $350 | 0.20 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/14/2004 | Finalizing Judson Russ Affidavit in City Civ Ct litigation | $350 | 1.90 | Civil Court Case | Andrey Strutinskiy |
| Andrey Strutinskiy | 9/14/2004 | Finalizing Judson Russ Affidavit in City Civ Ct litigation | $350 | 0.20 | Civil Court Case | Andrey Strutinskiy |
|  |  | **TOTALS for Andrey Strutinskiy** |  | **251.20** |  |  |
|  |  |  |  |  |  |  |
| Keith Altman |  |  |  |  |  | Keith Altman |
| Keith Altman | 7/6/2010 | Initial review of Defendants' first email production.  *Loading into Concordance and preparation of images.* | $425 | 4.00 | IT work | Keith Altman |

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Keith Altman | 7/16/2010 | Receipt of hard drive containing approximately 770,000 pages of documents. Initial survey of data. *Preparation of images into multi-page format. Loading data and documents into concordance and inspecting integrity of data.* Correspondence with Co-Coun | $425 | 4.00 | IT work | Keith Altman |
| Keith Altman | 8/12/2010 | Deposition of Sara Krieger-30(b)(6)-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 9/20/2010 | Deposition of Ken Krebs-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 10/5/2010 | Meetings with co-counsel-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 10/12/2010 | Deposition of Joseph Sussman-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 10/14/2010 | Deposition of Sam Buono-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 10/25/2010 | Deposition of Richard Hahn-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 10/26/2010 | Deposition of Ricky Brown-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 10/27/2010 | Deposition of Sara Krieger-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 10/28/2010 | Deposition of Jay Cohen-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 11/4/2010 | Deposition of Jay Cohen-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 11/5/2010 | Deposition of Lina Kravic-Travel Time | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| Keith Altman | 11/15/2010 | Travel time round trip to court | $213 | 3.00 | Unnecessary/Excessive Travel | Keith Altman |
| | | **TOTALS for Keith Altman** | | **44.00** | | |
| | | | | | | |
| **Krishnan Chittur** | | | | | | **Krishnan Chittur** |
| Krishnan Chittur | 1/2/2007 | Smith-review, finalize answer and discovery requests | $600 | 2.10 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 10/4/2006 | Finalize Russ reply | $600 | 5.00 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 10/3/2006 | TC Varnell, review Russ papers re motion for stay | $600 | 2.30 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 9/26/2006 | TC Cozier re Russ motion | $600 | 0.30 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 9/25/2006 | Mtg. Andrey re Russ | $600 | 3.10 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 9/11/2001 | Review Russ decision, conf AS | $600 | 0.50 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 8/4/2008 | Meeting AS re Russ and Smith cases | $600 | 1.20 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 5/23/2006 | Finalize Russ affirmation | $600 | 1.30 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 5/17/2007 | Review/finalize Russ papers | $600 | 4.40 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 5/11/2006 | TC AS re Russ Motion; conf AS re McAndrews, Kabage | $600 | 1.00 | Civil Court Case | Krishnan Chittur |

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Krishnan Chittur | 3/30/2006 | Conf AS re civil court cases, email smith aff | $600 | 3.40 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 3/28/2006 | Review, revise Andrey email to Sussman, mtg Andre re new case, review Smith case | $600 | 2.60 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 3/8/2006 | Review Lim papers, TC Jane | $600 | 2.90 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 2/3/2006 | Draft Lim motion | $600 | 2.20 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 2/2/2006 | Finalize Lim motion | $600 | 1.50 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 12/2/2005 | Respond to email, finalize Lim motion | $600 | 2.20 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 7/8/2005 | Email Kaufman, review answering papers in Dougish, Lim | $600 | 1.20 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 6/20/2005 | conference with AS re Lim | $600 | 1.00 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 6/9/2005 | draft OSC re Lim | $600 | 6.90 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 4/20/2005 | TC LAS, review affidavit of Lim, research re 5015 and OSC re transfer, TC Certo | $600 | 5.40 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 8/24/2004 | Research, TC Russ | $600 | 2.80 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 8/17/2004 | TC Judson Russ | $600 | 0.20 | Civil Court Case | Krishnan Chittur |
| Krishnan Chittur | 8/11/2004 | TC Valerie Smith | $600 | 0.40 | Civil Court Case | 240 |
| Krishnan Chittur | 8/6/2004 | Email to client Smith | $600 | 0.40 | Civil Court Case | 240 |
| Krishnan Chittur | 7/27/2004 | Email to Kaufman, review fax from client Smith | $600 | 0.60 | Civil Court Case | 360 |
| Krishnan Chittur | 12/29/2010 | Draft aff re fees, research, revise fee brief | $600 | 8.10 | Legal Research | 4860 |
| Krishnan Chittur | 12/28/2010 | Research and draft fee app | $600 | 3.90 | Legal Research | 2340 |
| Krishnan Chittur | 12/27/2010 | Research, draft fee application | $600 | 9.30 | Legal Research | 5580 |
| Krishnan Chittur | 12/26/2010 | Research, draft fee brief | $600 | 1.20 | Legal Research | 720 |
| Krishnan Chittur | 12/24/2010 | Research re fee standards | $600 | 5.10 | Legal Research | 3060 |
| Krishnan Chittur | 11/30/2010 | Review time sheets, research re attorney time sheets, email Defense counsel | $600 | 0.80 | Legal Research | 480 |
| Krishnan Chittur | 11/18/2010 | Research, draft fee application | $600 | 0.80 | Legal Research | 480 |
| Krishnan Chittur | 11/15/2010 | Research re attorneys' fees in NY | $600 | 1.80 | Legal Research | 1080 |
| Krishnan Chittur | 11/6/2010 | Research, prepare JPTO | $600 | 9.10 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 10/29/2010 | Review documents, research | $600 | 9.30 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 10/24/2010 | Review docs on CD, research | $600 | 7.30 | Legal Research | Krishnan Chittur |

| ATTORNEY | DATE | DESCRIPTION | HOURLY RATE | TIME (HRS) | NOTES | ATTORNEY |
|---|---|---|---|---|---|---|
| Krishnan Chittur | 10/14/2010 | Atd deposition of Sam Buono, review doc | $600 | 3.00 | Unnecessary Attendance at Deposition | Krishnan Chittur |
| Krishnan Chittur | 10/12/2010 | Atd deposition of Sussman, review Judge order, email clients | $600 | 3.60 | Unnecessary Attendance at Deposition | Krishnan Chittur |
| Krishnan Chittur | 9/20/2010 | Mtg Altman, prepare for and atd deposition of Krebs, mtg Altman and Andrey | $600 | 3.90 | Unnecessary Attendance at Deposition | Krishnan Chittur |
| Krishnan Chittur | 8/12/2010 | Deposition of custodian of records Sara Krieger | $600 | 8.10 | Unnecessary Attendance at Deposition | Krishnan Chittur |
| Krishnan Chittur | 8/24/2006 | Lesser email re appeal; serin-review, revise brief, research | $600 | 7.30 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/21/2006 | Research, draft brief | $600 | 8.20 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/18/2006 | Serin-research draft brief | $600 | 8.50 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/17/2006 | Serin-research draft brief | $600 | 5.80 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/15/2006 | Serin-research draft response | $600 | 2.60 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/11/2006 | Research re Serin brief | $600 | 5.20 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/10/2006 | Review, research, draft Serin response | $600 | 5.30 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/8/2006 | Review appellate division brief, research re Serin case, draft brief | $600 | 4.60 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 8/7/2006 | Review Serin brief, research, drafting | $600 | 2.70 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 5/10/2006 | Email Russ, research, draft Russ Reply | $600 | 7.90 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 5/9/2006 | Review russ affidavit, legal research, draft and finalize KC affidavit | $600 | 3.10 | Legal Research | Krishnan Chittur |
| Krishnan Chittur | 2/19/2006 | Research re RICO, draft complaint | $600 | 7.10 | Legal Research | Krishnan Chittur |
| | | | | | | |
| | | **TOTALS for Krishnan Chittur** | | **198.50** | | |
| | | | | | | |
| | | **TOTALS for Andrey Strutinsky, Keith Altman, and Krishnan Chittur** | | **493.70** | | |

857763v1