UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELINDA SERIN, JUDSON RUSS, LONG SOUI LIM, PERI KETTLER, GORDON REDNER, THOMAS J. SMITH, | 06 Civ. 1625 (JSG) (PED) |
| Plaintiff(s), | **REPORT AND RECOMMENDATION** |
| *- against -* | |
| NORTHERN LEASING SYSTEMS, INC., JAY COHEN, RICH HAHN, SARA KRIEGER, | |
| Defendant(s). | |

TO:   THE HONORABLE JAMES S. GWIN,
      UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Plaintiffs commenced this suit in 2006, alleging violations of the civil Racketeering

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO") and state law

claims for deceptive business practices. Shortly before trial was set to begin, the parties entered

into a settlement agreement. Plaintiffs' counsel now moves, pursuant to 18 U.S.C. § 1964(c) and

N.Y. Gen. Bus. Law § 349, for an award of attorneys' fees and costs for services rendered in

connection with this action. For the foregoing reasons, I respectfully recommend counsel's fee

application should be **GRANTED** to the extent that counsel should be awarded fees in the

amount of $543,248.00 and costs in the amount of $43,006.46.

## II. BACKGROUND

### A.     Counsel's Fee Application

Plaintiffs' counsel seeks $3,457,282.00 in attorneys' fees[1] and $42,692.04 in expenses[2]—

---

[1] (See Feb. 4, 2011 Chittur Affirm., at 8 (Docket No. 150)). In response to certain
objections raised by Defendants, counsel has voluntarily reduced the requested award by

a total award of $3,499,974.04.  (Feb. 4, 2011 Chittur Affirm., at ¶ 23 (Docket No. 150)).  The

components of counsel's fee application—as amended—are summarized in the following table:

| ATTORNEY | RATE | HOURS BILLED | | TOTAL |
|---|---|---|---|---|
| Krishnan Chittur | $600 / hour | 560.0<br>+ 58.8<br>618.8 | (hours as of 12/30/10 motion)<br>(supplemental hours) | $371,280.00 |
| Andrey Strutinskiy | $350 / hour | 617.2<br>+20.0<br>637.2 | (hours as of 12/30/10 motion)<br>(supplemental hours) | $ 223,020.00 |
| Seth Lesser | $660 / hour | 8.5 hours | | $5,610.00 |
| H. Rajan Sharma | $350 / hour | 58.43 hours | | $20,450.50 |
| Keith Altman and other attorneys from Finkelstein & Partners, LLP | $425 / hour | 582.3 hours | | $247,477.50 |
| **TOTAL** | | 1,826.43<br>+ 78.80<br>= **1905.23** total hours | (hours as of 12/30/10)<br>(supplemental hours) | **$ 825,558**<br>**+ $42,280** (as of 12/30/10 motion)<br>(supplemental fees)<br>= **$867,838.00** |
| - Voluntary Reduction | | | | ($3,517.50) |
| **TOTAL** | | | | **$864,320.50** |
| **Multiplier (x 4)** | | | | **$3,457,282.00** |
| **+ Expenses** | | | | **+ $42,692.04** |
| **TOTAL** | | | | **$3,499,974.04** |

$3,517.50.  Specifically, the time spent delivering documents has been omitted (a $770 reduction), the hourly rate of Mr. Strutinskiy has been reduced to $100 per hour for time spent in allegedly secretarial or IT work (a $1,600 reduction), and the hourly rate of Mr. Strutinskiy has been reduced to $225 per hour for time spent in allegedly paralegal work (a $1,147.50 reduction).  (Pls.' Reply Mem., at 12-13 (Docket No. 149)).  I note that the records provided by Mr. Altman and the other attorneys at Finkelstein & Partners, LLP total 618.3 hours, which appears to include: 36 hours of travel time (billed at a one-half rate), 540.8 hours of work by Mr. Altman, and 41.5 hours of work by three other attorneys.  However, counsel's calculations seek payment for only 582.3 hours for this group.  The 36 hours of travel time—which does not appear as an expense in any report—is apparently not sought to be recovered.  Additionally, I note that in counsel's amended fee calculation table, they have made minor calculation errors.  (See Feb. 4, 2011 Chittur Affirm., at ¶ 23) (totaling the combined supplemental hours of Mr. Chittur (58.8 hours) and Mr. Strutinskiy (20.0 hours) as 77.9, and stating that the total fee, after the voluntary reduction, is "$864,32.50.")).

[2] Plaintiffs' counsel has incorrectly calculated the sum of the expenses listed as incurred by Mr. Chittur's firm.  (See Docket No. 143, at Ex. 16 (the correct sum of the expenses listed is $41,559.08); Docket No. 150, at Ex. 8 (the correct sum of the expenses listed is $516.18)).  Including the expenses incurred by the Finkelstein attorneys ($931.20), the correct total is therefore $43,006.46—not $42,692.04 as indicated.  (See Feb. 4 Chittur Affirm., at ¶ 23).

(See id.)

**B.    Defendants' Opposition**

Defendants raise several objections to counsel's fee application.  First, Defendants argue that counsel may not recover attorneys' fees from the individual defendants under RICO because the litigation ended through settlement.  Second, Defendants argue that, to the extent Plaintiffs' counsel may recover attorneys' fees, the amount requested is unreasonable because: (1) certain time records were not kept contemporaneously; (2) certain time records are vague; (3) counsel has unnecessarily billed for more than one attorney's time at depositions; (4) counsel has billed for matters unrelated to the instant action; (5) the hours spent on post-settlement activities are not recoverable; (6) the hourly rate for one of Plaintiffs' attorneys is excessive; (7) tasks normally performed by lower-billing associates are instead billed by lead counsel at his higher rate; (8) certain non-legal work performed by an associate is improperly billed at the associate's rate; and (9) the settlement shows that Plaintiffs did not succeed in their litigation.  (See Defs.' Mem. (Docket No. 152)).

### III. DISCUSSION

**A.    Standard of Review for Attorney's Fees**

**1.    _RICO_**

Pursuant to federal statute, a successful litigant to a RICO cause of action "shall recover . . . the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).  The Second Circuit has recently abandoned its previous "lodestar" approach in calculating this fee in favor of what it coins the "presumptively reasonable fee" approach.  Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009 (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 493 F.3d 110, 118 (2d Cir. 2007), _amended on other grounds by_ 522

F.3d 182 (2d Cir. 2008)).  Under the current approach, the reasonable fee is determined by

multiplying the attorney's reasonable billing rate by the reasonable number of hours spent

working on the case.  See id. at 117-18; see also Arbor Hill, 522 F.3d at 186-90 (rather than a

two-step calculation, which adjusts the product of the attorney's fees and hours by certain case-

specific variables, "[t]he focus of the district court is . . . on setting a reasonably hourly rate,

taking account of all case-specific variables").  In determining whether the rate and hours are

reasonable, a court must "bear in mind all of the case-specific variables that [the Second Circuit]

and other courts have identified as relevant to the reasonableness of the attorney's fees."  Arbor

Hill, 493 F.3d at 117 (emphasis omitted).  These factors include:

> (1) [T]he time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service properly; (4)
> the preclusion of employment by the attorney due to acceptance of the case; (5)
> the attorney's customary hourly rate; (6) whether the fee is fixed or contingent;
> (7) the time limitations imposed by the client or the circumstances; (8) the amount
> involved in the case and the results obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and
> length of the professional relationship with the client; and (12) awards in similar
> cases.

Id. at 114 n.3.[3]  Overall, the fee's reasonableness should reflect "the rate a paying client would

be willing to pay," id. at 117, and a court must bear in mind that "a reasonable, paying client

wishes to spend the minimum necessary to litigate the case effectively," id. at 118.[4]  Finally, the

---

[3] These are known as the Johnson factors.  See Johnson v. Ga. Highway Express, Inc.,
488 F.2d 714 (5th Cir. 1974).

[4] See also Arbor Hill, 522 F.3d at 190, holding that:

> The meaning of the term "lodestar" has shifted over time, and its value as
> a metaphor has deteriorated to the point of unhelpfulness.  This opinion abandons
> its use.  We think the better course—and the one most consistent with attorney's
> fees jurisprudence—is for the district court, in exercising its considerable
> discretion, to bear in mind all of the case-specific variables that we and other
> courts have identified as relevant to the reasonableness of attorney's fees in

burden is on the party seeking such an award to supply sufficient evidence to the Court

supporting its claims.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

   2.   *N.Y. Gen. Bus. Law § 349(h)*

   Under New York State's deceptive business practices statute, a "court may award

reasonable attorney's fees to a prevailing plaintiff."  N.Y. Gen. Bus. Law § 349(h).  Factors to

consider in assessing the reasonableness of this award are similar to those considered under the

federal civil RICO statute, and include "the time and skill required in litigating the case, the

complexity of the issues, the customary fee for the work, and the results achieved."  Riordan v.

Nationwide Mut. Fire Ins. Co., 977 F.2d 47, 53 (2d Cir. 1992).  Additionally, a court may also

consider "the lawyer's experience, ability and reputation, the amount in dispute, and the benefit

to the client."  Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc., 190 F. Supp.2d 407,

422 (E.D.N.Y.), *rev'd on other grounds*, 393 F.3d 312 (2d Cir. 2004).

**B.   Analysis of Counsel's Fee Application and Defendants' Opposition**

   1.   *Right to Attorney's Fees Pursuant to the Terms of the Settlement Letter*

   Defendants initially argue that, as part of the parties' settlement letter orally entered into

without objection on the record on November 15, 2010, Plaintiffs agreed to release the

individually named defendants in exchange for Defendant Northern Leasing ("Northern")'s

agreement not to challenge Plaintiffs' counsel's ability to recoup reasonable attorney's fees.

(See Defs.' Mem. at 16-17).  Defendants argue that the instant motion seeks fees from each

---

   setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying
   client would be willing to pay.  In determining what a paying client would be
   willing to pay, the district court should consider, among other things, the Johnson
   factors . . . .  The district court should then use that reasonable hourly rate to

5

Defendant, and therefore, because Plaintiffs' counsel has not abided by the terms of the agreement, the individually named defendants may now oppose counsel's right to collect fees.[5] (See id.)  Plaintiffs deny that they ever absolved a party of liability for attorneys' fees.  (See Pls.' Reply Mem., at 3).  However, this Court has already determined that, "[a]s part of the settlement, the parties agreed that Plaintiffs' attorneys were entitled to an award of attorneys' fees and that an application would be made to the Court for a reasonable award."  (Dec. 10, 2010 Order, at 2 (Docket No. 139)).  Additionally, the Court has found that, under the terms of the settlement, the individually named defendants would not be held joint and severally liable for any award of attorneys' fees.  (See id. at 2-3).  To the extent that Plaintiffs now seek to hold the individually named defendants jointly and severally liable with Northern for an award of fees, this Court has already reviewed the matter and found that under the terms of the settlement, Plaintiffs' contentions were without merit.  (See id.)  Accordingly, the remaining issue to consider is the extent to which the award sought by counsel is reasonable—an issue that, pursuant to the parties' agreement, may be contested by Northern.

2.    *Assessing the Presumptively Reasonable Fee*

---

calculate what can properly be termed the "presumptively reasonable fee."

[5] Specifically, Defendants argue that Plaintiffs' counsel is not entitled to recover attorneys' fees under § 1964(c) because they cannot prove Plaintiffs suffered a statutory injury—a requirement under RICO's fee-shifting provision and absent where the litigation has ended by way of settlement. (Defs.' Mem., at 17-18); see Blue Cross, 190 F. Supp.2d at 422; see also Hensley, 461 U.S. at 433 (entitlement to attorney's fees under federal fee-shifting statutes requires a showing that the movant is a "prevailing party"); Aetna Cas. & Surety Co. v. Liebowitz, 730 F.2d 905, 907 (2d Cir. 1984) (terms of § 1964(c), unlike other federal fee-shifting statutes, do not permit a party to have "prevailed" if litigation ends in injunctive relief or settlement). Notwithstanding this argument, because Northern has agreed not to challenge counsel's recoupment of fees, Northern is bound by that agreement. (See Dec. 10, 2010 Order, at 2-3 (Docket No. 139)).

### a.    **Reasonable Hours**

#### 1.    *Contemporaneous Records*

Defendants argue that Mr. Altman has not kept contemporaneous records and that this failure warrants excluding or reducing his billable hours.  (See Defs.' Mem., at 25-27).  Mr. Altman concedes that his time records were not maintained contemporaneously prior to November 1, 2010 because his firm generally works on a contingency basis.  (Dec. 30, 2010 Altman Decl., at ¶ 19 (Docket No. 143, at Ex. 15)).  He states that prior to November 1, 2010, it was his understanding that email and telephone records were adequate to support the number of hours he claims to have worked on this matter.  (Feb. 4, 2011 Altman Decl., at ¶ 14 (Docket No. 151)).  Mr. Altman also notes that Defense counsel is aware of the number of hours Mr. Altman spent working on the depositions in this case because they were present, (Dec. 30, 2010 Altman Decl., at ¶ 19), and that his review of his cell phone records, emails, and deposition transcripts— which he has attached to support his declaration—enabled him "to reconstruct [his] time with a reasonable amount of accuracy," (id. ¶ 20).[6]

In determining whether a requested fee is reasonably justified by the time and labor expended, the Second Circuit requires that, except in unusual circumstances, contemporaneous time records must accompany an application for statutory attorney's fees.  See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983) ("contemporaneous time records are a prerequisite for attorney's fees in this Circuit"); see also Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (explaining that an exception to Carey's strict

---

[6] Mr. Altman has not included the eight hours of time he spent reconstructing his time records among his billing hours.  (See Dec. 30, 2010 Altman Decl., at ¶ 20; Docket No. 143, at

contemporaneous billing hours requirement may exist when there are "unusual circumstances"). The Second Circuit has frequently noted that the lack of contemporaneous record-keeping frustrates a court's attempt to assess the reasonableness of the hours billed and the overall fee requested. See, e.g., Scott, 626 F.3d at 132-33 (citing Carey, 711 F.2d at 1147)); McDonald ex rel. Prendergast v. Pension Plan of the NYSL-ILA Pension Trust Fund, 450 F.3d 91, 96 (2006) (per curiam) ("In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records."); Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986) (noting that the importance of contemporaneous record-keeping "is so critical in determining a reasonable fee"). Indeed, the Court of Appeals requires not only that contemporaneous records be kept, but that those records be actually submitted to the Court as part of the fee application. See Lewis, 801 F.2d at 577 (while the Second Circuit "recognize[s] that other courts have held that affidavits summarizing time logs are acceptable . . . Carey places the burden of producing these records on the attorney submitting the fee request"); Carrero v. New York City Hous. Auth., 685 F. Supp. 904, 909 (S.D.N.Y. 1988) ("penalties have been imposed for failure to provide the actual records").

Plaintiffs' counsel correctly point out that they also seek to recover attorneys' fees pursuant to N.Y. Gen. Bus. Law § 349, and that under this provision, New York State courts do not demand contemporaneous records as a prerequisite to awarding attorneys' fees. See Riordan, 977 F.2d at 53; (Pls.' Reply Mem., at 16-18). However, unlike the federal statute, an award for attorney's fees under § 349 lies within the discretion of the court. See Nwagboli v. Teamwork Transp. Corp., 2009 WL 4797777, at *7 (S.D.N.Y. Dec. 7, 2009); compare N.Y. Gen. Bus. Law

---

Ex. 15).

§ 349(h) (emphasis added) ("[t]he court *may* award reasonable attorney's fees"), with 18 U.S.C.

§ 1964(c) (emphasis added) (the injured party "*shall* recover . . . the cost of the suit, including a

reasonable attorney's fee"). The discretion afforded under New York law therefore allows this

Court to consider the failure to supply contemporaneous records as a factor in determining the

reasonableness of the hours billed and the requested fee.

Plaintiffs' counsel has not cited, and I cannot find, any authority within this Circuit for

the proposition that a list of emails and telephone calls is an acceptable substitute for

contemporaneous time records documenting an attorney's billing hours. Further, while counsel

for Defendants was present during the several depositions Mr. Altman took, those depositions

account for only 106 out of the 583.2 hours for which Mr. Altman has billed, and because of his

method of "block billing," that figure includes numerous hours in addition to the time he

physically spent in depositions. (See Docket No. 143, at Ex. 15).[7] In addition, I do not find the

mere fact that Mr. Altman normally works on a contingency fee basis to constitute the type of

"unusual circumstance" contemplated by the Second Circuit in Carey. See Scott, 626 F.3d at

134 ("we can imagine rare circumstances where an award might be warranted even in the total

---

[7] Each of Mr. Altman's reconstructed billing entries involving depositions also includes work spent on other tasks, such as "Preparation for deposition," various correspondences, and "misc conferences with co-counsel for trial preparation matters." (See Docket No. 143, at Ex. 15). As discussed below, such entries do not enable this Court to assess the reasonableness of the time actually spent on each task. In addition, review of Mr. Altman's reconstructed deposition-related time entries reveals troubling inconsistencies. For example, Mr. Altman's time records state that on August 12, 2010, he spent eight hours—among other tasks—in the deposition of Sara Krieger. (See id.) However, no transcripts from August 12, 2010 have been provided. (See Feb. 4, 2011 Altman Decl., at Ex. A). The same is true for other deposition-related time entries. In addition, while the transcripts indicate that the October 27, 2010 deposition of Ricardo Brown lasted approximately two hours and forty-five minutes, Mr. Altman's time entry states that on October 26, 2010—one day earlier—he spent 12.00 hours in

absence of contemporaneous records—such as where the records were consumed by fire or rendered irretrievable by a computer malfunction before counsel had an opportunity to prepare his application"). Indeed, other courts within this Circuit have specifically held that the lack of contemporaneous billing records by contingency fee attorneys "frustrates a court in its effort to evaluate the fairness and reasonableness of a proposed settlement, including legal fees." Griffiths v. Jugalkishore, 2010 WL 4359230, at 7 (S.D.N.Y. Oct. 14, 2010), *report and recommendation adopted* 2010 WL 4365552 (Nov. 3, 2010); see also Monaghan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 83-84 (S.D.N.Y. 1994) (no exception to Carey for personal injury case where counsel retained on contingency basis).

While Mr. Altman's declaration states that he did contemporaneously record his time as of November 1, 2010, no actual contemporaneous records reflecting any period have been supplied, and the spreadsheet provided by Mr. Altman incorporates both time spent before and after November 1.[8] Additionally, it is unclear whether the 41.5 hours spent by Altman's colleagues—some of which had been spent before November 1, 2010 and some thereafter—was contemporaneously recorded. Records for these attorneys appear in the same style and format as Mr. Altman's records, and only one of the three attorneys for whose time this spreadsheet reflects has supplied a sworn affidavit regarding the Serin matter—yet this declaration fails to attest to whether or not the records were contemporaneously maintained or even, for that matter, whether the number of hours indicated on the spreadsheet is accurate. (See Polimeni Decl. (Ex.

---

this deposition, among other tasks. (See id.; Docket No. 143, at Ex. 15).

[8] Mr. Altman's spreadsheet appears to indicate that, less his travel time, 139.8 hours—or approximately 24% of the total number of hours sought by Plaintiffs to be collected for the Finkelstein attorneys' work—was spent after the point in which Mr. Altman began keeping

15)).  In previous cases involving a lack of contemporaneous billing records, courts within this

Circuit have either excluded the undocumented time wholly from the applicant's request, or have

reduced by a flat percentage rate the total fee.  See, e.g., Scott, 626 F.3d at 133-34 (collecting

cases); Ward v. Brown, 899 F. Supp. 123, 129-30 (W.D.N.Y. 1995) (denying compensation for

reconstructed hours and collecting cases); see also, e.g., Monaghan, 154 F.R.D. at 84 (reducing

award).

### 2.   *Vague Time Records*

Defendants also object to numerous time record entries which they argue are too vague to

permit a reasonable analysis of the work represented by the entries.  (See Defs.' Mem., at 27-28,

31-33).  In addition to contemporaneous record-keeping, Carey also mandates that time entries

be sufficiently detailed in order to enable a court to determine the reasonableness of the time and

labor expended.  See Carey, 711 F.3d at 1148; see also Simmonds v. New York City Dep't of

Corr., 2008 WL 4303474, at *8 (S.D.N.Y. Sept. 16, 2008) ("[i]n the absence of relevant details,

it is nearly impossible for the court to assess the reasonableness of the time spent on each

activity"); Williams v. New York City Hous. Auth., 975 F. Supp. 317, 327 (S.D.N.Y. 1997)

(internal quotation omitted) ("[a]lthough time records need not contain great detail and

specificity, attorneys should identify the general subject matter of their work" so as to enable the

Court to decipher "the reasonableness of the amount charged in relation to the work performed").

Pursuant to § 349, time records must also be sufficiently detailed.  See, e.g., Schwartz v. Chan,

142 F. Supp.2d 325, 331 (E.D.N.Y. 2001).  If a court finds that the records have been

insufficiently documented, it is warranted in decreasing the award sought by either refusing to

contemporaneous records.  (See Docket 143, at Ex. 15).

11

credit the time documented by the vague entry, or by reducing the award by a flat percentage rate. See F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987); Wise v. Kelly, 620 F. Supp.2d 435, 442 (S.D.N.Y. 2008).

A review of the attorneys' records in this case indicates that several time entries indeed fail to adequately refer to the general subject matter of the work involved. For example, Mr. Chittur and Mr. Altman's time records, and to some extent, Mr. Strutinskiy's as well, reveal numerous vague references to telephone calls, emails, meetings, and other correspondence. Such "vague entries do not provide the court with an adequate description of the work being performed or the complexity thereof." Schwartz, 142 F. Supp.2d at 331; see also Ragin v. Harry Macklowe Real Estate Co., 870 F. Supp. 510, 520 (S.D.N.Y. 1994) (finding vague records which simply stated, for example, meetings or telephone calls with other individuals). The time records of Mr. Chittur, Mr. Strutinskiy, and Mr. Altman also reveal certain entries which simply state, for example, "Review documents," "Doc Review," "Review of document production," or "Review docs on CD, research." Vague references to research or document review also hamper a court's assessment of reasonableness. Id.; see also Krear, 810 F.2d at 1265 (finding as vague records that simply stated, for example, "Rev. Docs"); Barfield v. New York City Health & Hosps. Corp., 2006 WL 2356152, at *1 (S.D.N.Y. Aug. 11, 2006) (vague entries stating that documents or materials were reviewed "without any indication of what materials or documents were reviewed or of what that review consisted" are insufficient); Ragin, 870 F. Supp. at 520 (finding vague records which simply stated "research" or "research for reply brief"). In addition, I note that Mr. Altman's records contain numerous "miscellaneous" entries, such as "Miscellaneous trial preparation activities." Such a description is also too vague for this Court to

12

reasonably assess "the nature of the work, the need for it, and the amount reasonably required." Krear, 810 F.2d at 1265; see also Marshall v. N.Y. Div. of State Police, 31 F. Supp.2d 100, 106 (N.D.N.Y. 1998) (finding records which billed for "trial preparation" too vague). Even when these numerous vague entries are placed into context with surrounding entries, or when the attorneys' affirmations are taken into consideration,[9] the general subject matter or necessity of the tasks documented does not, in every instance, become readily apparent. See Rozell v. Ross-Holst, 576 F. Supp.2d 527, 540 (S.D.N.Y. 2008); Meriwether v. Coughlin, F. Supp. 823, 827 & n.6 (S.D.N.Y. 1989).

In addition, as noted above, most of Mr. Altman's reconstructed entries refer to multiple tasks, which by itself frustrate this Court's ability to assess reasonableness.[10] "Fee applicants should not 'lump' several services or tasks into one time sheet entry because it is then difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." Williams, 975 F. Supp. at 327 (internal quotation omitted). Moreover, Mr. Altman's statement that his time records—which in all but one instance reflect whole-hour increments—have been rounded down, (Feb. 4, 2011 Altman Decl., at ¶ 8), is unpersuasive given the fact that Mr. Altman has not kept track of his hours prior to November 1, 2010. See, e.g., MZH, AG v. State Indus.-Trade Unitary Enter. "Belaya Russ," 2003 WL 22852895, at *1 (S.D.N.Y. Nov. 10, 2003) (use of tenth-of-an-hour increments, rather than quarter-hour increments, is the preferred method of recording time in order to accurately reflect

---

[9] For example, Mr. Altman states in his Declaration that the reason he had spent such a large number of hours on document review is due to the fact that Defendants produced over 800,000 pages during discovery. (See Dec. 30, 2010 Altman Decl., at ¶ 14).

[10] Mr. Chittur's time records also reveal a small number of cumulative entries, as do Mr.

time actually worked).[11]

### 3.   *Multiple Attorneys at Depositions*

Defendants object to the billing by Plaintiffs' counsel for 53.1 hours of time spent by Mr. Strutinskiy videotaping and otherwise attending depositions. (See Defs.' Mem., at 29). Defendants also argue that Mr. Chittur's presence at certain depositions, which were also attended and billed by Mr. Strutinskiy and Mr. Altman, is duplicative, excessive billing. (See id. at 30). In response, Plaintiffs' counsel argues that Mr. Strutinskiy also acted as assistant counsel and that, in any event, $350 per hour is the rate charged by other deposition videographers. (Pls.' Reply Mem., at 11-12; Feb. 4, 2011 Altman Decl., at ¶ 16). They also argue that the presence of Mr. Chittur, in addition to the other attorneys, was appropriate. (See Pls.' Reply Mem., at 12).

A court should not award attorneys' fees for those hours which are "excessive, redundant or otherwise unnecessary." Hensley, 461 U.S. at 434. A district court has discretion to determine whether the use of multiple attorneys on any given task is a reasonable expenditure of time and resources, see Simmonds, 2008 WL 4303474, at *6, and may exercise its "discretion [to] simply . . . deduct a reasonable percentage of the number of hours claimed" if it finds the hours billed were unnecessary, Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (citing Carey, 711 F.2d at 1146). I find reasonable the 18.6 hours of time Mr. Chittur spent attending depositions Mr. Altman conducted. As lead counsel, Mr. Chittur had a responsibility to gauge how effective certain witnesses would be on the stand. See, e.g., Rozell, 576 F. Supp.2d at 541

---

Strutinskiy's, particularly in the early stages of the litigation.
[11] I note that the contemporaneous time records of Mr. Sharma and Mr. Lesser, by

(finding no duplicative hours where two attorneys attended depositions of key witnesses). As discussed below, the same argument, however, does not hold true for Mr. Strutinskiy, as it is not clear how much legal assistance he actually provided or how necessary it was.[12]

### 4.   *Billing for Work Done on Other Cases*

Defendants argue that any time billed by Mr. Chittur and Mr. Strutinskiy for work involving actions in New York City Civil Court is outside the scope of the instant matter and therefore should be wholly excluded from the fee application. (Defs.' Mem., at 34). Plaintiffs' counsel argues that the state court matters were "inextricably linked" to the instant federal court case and that work product stemming from that litigation was actually used in the case at hand. (Pls.' Mem., at 8 (Docket No. 142)).

Counsel's argument, which relies on authorities from outside this Circuit, is unpersuasive. (See Pls.' Mem., at 8-10). Moreover, counsel's analysis of the Third Circuit's rules regarding the award of attorneys' fees for related litigation fees and expenses, appears misapplied.  Counsel cites a portion of the opinion in Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 420 (3d Cir. 1993) for the proposition that the other case must merely relate to the instant case for which fees are sought.  This, however, misconstrues Gulfstream's holding.  In Gulfstream, the Third Circuit actually held that the movant must *provide proof* that, among other things, any "fees or expenses incurred in the other litigation

---

contrast, do not contain vague or insufficient entries. (See Docket No. 143, at Exs. 13-14).
    [12] Mr. Altman states that Mr. Strutinskiy "supported me during the deposition on substantive matters.  He suggested exhibits that should be used.  He also was able to research legal issues that I would ask of him during the deposition.  At virtually ever[y] break, he and I consulted as to the immediately previous testimony and the strategy during the next deposition segment." (Feb. 4, 2011 Altman Decl., at ¶ 16).

resulted in work product that was actually utilized in the instant litigation." Gulfstream, 995

F.2d at 420. In awarding attorneys' fees for related litigation, the Third Circuit therefore requires

proof that the other litigation actually did provide work product that was, or would be, used in

the current litigation, thus saving on duplicate expenses. See also Gares v. Willingboro Twp.,

1995 WL 125873, at *7 (D.N.J. Mar. 10, 1995) (attorneys' fees may be recovered "if the work

performed in one case obviated performing that same work in the other case").

Here, Plaintiffs' counsel states that "[d]ocuments from the City Civil Court Litigation

were used in the preparation as well as deposition of many witnesses" and that therefore the

"work was intrinsic to the result reached in this litigation." (Pls.' Reply Mem., at 14). Without

more, however, this conclusory statement is insufficient to enable this Court to determine the

extent to which the state court matters actually did result in discovery or work product that was,

or could have been, used in the instant matter, thereby preventing duplication of effort.

### 5.    *Post-Settlement and Attorneys' Fee Application Billing Hours*

Defendants argue that Plaintiffs' counsel may not recover for hours spent litigating post-

settlement issues or the instant application for attorneys' fees. (See Defs.' Mem., at 36-37).

Plaintiffs' counsel argues that the post-settlement litigation was necessary to clarify terms of the

settlement agreement and to ensure that Defendants would forward to Plaintiffs the agreed-upon

payment. (See Pls.' Reply Mem., at 15). This Court has previously concluded that the parties'

litigation involving the drafting of the settlement agreement has been a waste of time:

> Frankly, the Court finds this dispute difficult to understand and slightly
> ridiculous. The settlement could easily have been completed weeks ago if the
> parties were not purposely delaying the drafting process by squabbling over every
> petty issue. The parties both propose versions of the finalized settlement

16

agreement that are largely consistent with each other and that differ from each other only in very minor ways.

(Jan. 27, 2010 Order, at 2-3 (Docket No. 147)).  Accordingly, I find the time spent on these issues to be excessive.

In general, reasonable time spent litigating a fee application may be recouped by a party seeking attorneys' fees.  See Gagne v. Maher, 594 F.2d 336, 343-44 (2d Cir. 1979).  If the reviewing court finds the time spent in preparing the fee application is excessive, a flat percentage rate deduction may be given.  See Kirsch, 148 F.3d at 173.  Here, I have estimated (in light of counsels' various vague time entries) that Plaintiffs' counsel has spent approximately 115.7 hours on litigating the fee application.[13]  Based on counsels' billing rates, this amounts to $59,520.  Plaintiffs' counsel provides no indication as to why three attorneys needed to work on this matter, or why Mr. Chittur—the highest billing attorney—was responsible for the majority of the needed research.  In addition, the number of hours attributed to this project "is suspect" given the miscalculations, inexplicable omissions of time, typos, and other citation errors found within the memorandum and reply submitted by Plaintiffs' counsel.  See, e.g., Nwagboli, 2009 WL 4797777, at *11 (citing Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997)) (noting that miscalculated figures on timesheet is one factor in finding "suspect" the purported time spent on fee application).

### 6.     *Conclusion as to Reasonable Hours*

Accordingly, considering the above issues and in light of Arbor Hill, I find that the

---

[13] Mr. Chittur spent approximately 42.6 hours prior to the December 30, 2010 motion and 28.7 supplemental hours; Mr. Strutinskiy spent approximately 11.8 hours prior to the December 30, 2010 motion and 16.6 hours thereafter, and Mr. Altman spent approximately 16 hours prior

reasonable hours attributed to Mr. Altman should be reduced by 35%, or to 378.5 hours; the

reasonable hours attributed to Mr. Chittur should be reduced by 10%, or to 556.9 hours; and the

reasonable hours attributed to Mr. Strutinskiy should be reduced by 15%, or to 541.6 hours. See,

e.g., Carey, 711 F.2d at 1146 (noting that, in cases where voluminous records have been

produced, a court's decision to make flat percentage rate reductions is a "practical means of

trimming fat from a fee application").

### b.   Reasonable Rates

#### 1.   Prevailing Market Rates

An attorney's reasonable hourly rate must be "calculated according to the prevailing

market rates in the relevant community," Blum v. Stenson, 465 U.S. 886, 895 (1984), and

"in line with those [rates] prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation," id. at 895 n.11. The relevant

community is "the district in which the reviewing court sits." Simmons, 575 F.3d at 174. The

party seeking an award of fees has the "burden to produce satisfactory evidence in addition to the

attorney's own affidavits showing that the requested rates are at the prevailing market level."

Reiter v. Metro. Transp. Auth. of N.Y., 2007 WL 2775144, at *8 (S.D.N.Y. Sept. 25, 2007)

(internal quotation omitted).

In this case, Plaintiffs' counsel argues that $425 per hour is a reasonable billing rate for

Mr. Altman, an attorney licensed in California in 2008, and provide affidavits from Mr. Altman

attesting to his extensive experience in multi-district litigation matters, efficient document

review, and e-discovery, which includes experience gained prior to his admittance to the

to the December 30, 2010 motion.

California bar.[14]  (See, e.g., Feb. 4, 2011 Altman Decl., at ¶ 4).  Mr. Altman also provides

declarations from three attorneys attesting to his qualifications.  (See Docket No. 143, at Ex. 15).

However, Mr. Altman's skills involving e-discovery and multi-district litigation do not appear of

particular relevance in this case.  Additionally, while this Court does not dispute Mr. Altman's

expertise as an efficient document reviewer, I note that $425 per hour appears to be well above

the current, prevailing market rate for either a second-, third-, fourth-, or even fifth-year associate

in the Southern District for comparable work.  See, e.g., LV v. New York City Dep't of Educ.,

700 F. Supp.2d 510, 519-20 (S.D.N.Y. 2010) (reviewing recent case law, determining that junior

associate who participated in all stages of pre-trial proceedings and took deposition entitled to a

reasonable rate of $275 per hour, and collecting cases); see also Chambless v. Masters, Mates &

Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (judge may rely on his or her own

knowledge of hourly rates charged in the community).[15]  Moreover, contrary to counsel's

argument that fees charged may be compared to those charged by opposing counsel, (see Pls.'

Mem., at 5, 12), I note that because "smaller firms may be subject to their own prevailing market

rates," Chambless, 885 F.2d at 1059, it is reasonable to conclude that the rates charged by Mr.

Altman's firm should be lower than those charged by Defendants' firm, see Pascuitti v. N.Y.

---

[14] Plaintiffs' counsel also cites Steinberg v. Nationwide Mut. Ins. Co., 612 F. Supp.2d
219, 224 (E.D.N.Y. 2009) for the proposition that $425 is a reasonable billing rate. (See Pls.'
Mem., at 13).  However, I first note that the rates involved in Steinberg did not involve the
Southern District, the community relevant in the instant case.  Second, the court in Steinberg
noted that, while the rates proposed by the attorneys in that case were "at the extreme high end"
of the spectrum of reasonable rates in that District, the defendant had not objected to them.
Steinberg, 612 F. Supp.2d at 224.  Such is not the case here.
[15] In addition, I note that the other Finkelstein attorneys—who include a senior partner
licensed in New York in 1980, a partner with over twenty-two years experience at Finkelstein,
and a fifth-year associate—also seek $425 per hour for their work.  (See Docket No. 143, at Ex.

Yankees, 108 F. Supp.2d 258, 266-67 (S.D.N.Y. 2000); see also Reiter, 2007 WL 2775144, at *7 (reviewing recent case law, collecting cases, using the court's own experience and knowledge, and finding that highly experienced counsel from small firms in the Southern District normally compensated at rates ranging from $250-$425 per hour); cf. McDonald, 450 F.3d at 97 n.6 (citing Chambless and cautioning that "it would be in error to use an attorney's status as a solo practitioner as an automatic deduction or shortcut for determining the reasonable hourly rate").

### 2. *Lead Counsel Performing Associate Tasks*

Defendants argue that 125 hours of research billed by Mr. Chittur at his rate of $600 per hour is excessive because such a task is more appropriately left to a more junior attorney who bills at a lower rate. (See Defs.' Mem., at 30-31). Plaintiffs' counsel replies by noting that Mr. Chittur's law firm is a small, two-person practice and that accordingly, Mr. Chittur must perform such tasks himself. (See Pls.' Reply Mem., at 13). I agree with Plaintiffs' counsel and note that in situations where courts have found unnecessary a senior partner's billing of unspecialized tasks, those firms had lower-paid associates available. See, e.g., Shannon v. Fireman's Fund Ins. Co., 156 F. Supp.2d 279, 301-02 (S.D.N.Y. 2001); but cf. Tlacoapa v. Carregal, 386 F. Supp.2d 362, 372 (S.D.N.Y. 2005) (finding senior attorney's billing of research time at firm employing three full-time attorneys, two of counsels, and three paralegals, was unnecessary because at least one lower-paid associate was available to perform the work instead).

It is not clear in this case whether Mr. Strutinskiy was available to conduct this research in place of Mr. Chittur. In addition, I note that Mr. Strutinskiy's time records show significantly fewer hours devoted to "research" than do Mr. Chittur's records. Although Plaintiffs' counsel

---

15).

has provided, among other things, one client contract where $600 per hour for Mr. Chittur was also charged, as well as two attorney affidavits attesting to the reasonableness of this rate, (see Docket No. 143, Ex. 8), relying on my own knowledge, experience, and recent case law, I find this rate to be higher than the amount a paying client would be willing to pay—especially considering the amount of work Mr. Chittur must expend on tasks which, in a larger firm, would be delegated to a lower-billing associate.

### 3.   *Associate's Billing Rate for Non-Legal Work*

Defendants argue that much of the work billed by Mr. Strutinskiy involves non-legal work and therefore should not be billed at an associate's rate. (See Defs.' Mem., at 28-31). As discussed above, Plaintiffs' counsel has voluntarily reduced the billing rate and hours for some of these tasks. However, a review of Mr. Strutinskiy's time entries reveals that a great deal of his time was devoted to tasks more properly accomplished by a paralegal or secretary. (See, e.g. Docket No. 143, at Ex. 12 (billing for tasks such as scheduling meetings, leaving voicemails, scanning and downloading documents, and organizing documents and files)). Accordingly, a further reduction in Mr. Strutinskiy's billing rate is warranted.[16] Further, with respect to Mr. Strutinskiy's presence at the depositions, because it is not clear how much of his time spent actually involved legal work—as opposed to mere attendance and filming—a reduction in his billing rate for this work is warranted.[17] Finally, such a reduction is also warranted in light of the

---

[16] I also note that many of Mr. Strutinskiy's records that reflect secretarial tasks also include work properly performed by a higher-billing associate. However, as discussed above, the vagueness of these collective entries prevents this Court from reasonably assessing how much time was actually devoted to each task.

[17] In addition, I note that Plaintiffs' counsel's exhibit, which purports to show that the standard hourly rate for deposition videographers is $ 350 per hour, actually indicates that the

21

small size of the practice, as discussed above.

### 4.     *Plaintiffs' Degree of Success*

Defendants argue that the attorneys' fee awarded should reflect that Plaintiffs accomplished relatively little success in the settlement of this case. Specifically, Defendants argue that the $295,000 settlement is a nominal figure in light of what Plaintiffs had sought in their Complaint and initial settlement negotiations. (Defs.' Mem., at 18-21, 25). Plaintiffs' counsel, however, argues that the settlement reflects a successful outcome, especially in relation to Defendants' initial offer, and have provided letters from their clients attesting to their satisfaction. (See Pls. Reply Mem., at 6-8; Docket No. 143, at Exs. 1-5).

"[T]he most critical factor" in determining the reasonableness of an attorneys' fee award "is the degree of success obtained." Hensley, 461 U.S. at 436. The Second Circuit has expressly rejected a requirement that an award of attorneys' fees—at least with respect to civil rights litigation—be proportional to the recovery obtained. See Lunday v. City of Albany, 42 F.3d 11, 134-35 (2d Cir. 1994). Notwithstanding, the degree of success may be considered limited—and the resulting attorneys' fee award reduced—where recovery is for mere nominal damages. See, e.g., Carroll v. Blinken, 105 F.3d 79, 81-82 (2d Cir. 1997). However, "a party's posturing during negotiations can hardly be taken as a fair measure of what would constitute a successful outcome." Rozell, 576 F. Supp.2d at 542. In this case, the amounts recovered by the individual plaintiffs represent more than mere nominal damages and accordingly, a reduction in the reasonable fee for this reason is not warranted.

---

rate charged for each hour beyond the first two is discounted at a rate of $150 per hour. (See Feb. 4, 2011 Chittur Affirm., at Ex. 5). Note that the courtesy copies provided by Plaintiffs'

### 5.   *Additional* **Johnson** *Factors*

Finally, Plaintiffs' counsel argues that the fee award should be increased to reflect certain other facts, including the inherently complex nature of the case, the risks that the case would proceed to trial, the "undesirability" of the case, and public policy considerations supporting future deterrence of similar behavior. (See Pls.' Mem., at 5-22).[18]

Defense counsel has not argued that the issues involved in this case lacked sufficient complexity—rather they argue the evidence did not support the claims—and it is also not disputed that discovery in this case produced a large number of documents, that the parties were on the verge of trial when settlement was reached, and that some plaintiffs had difficulty securing representation prior to meeting counsel. These factors, as well as the extent to which the instant case will have a deterrent effect on Defendants—or any future party—from engaging in the wrongful behavior that was alleged here, I take into consideration.

### 6.   *Conclusion as to Reasonable Hourly Rates*

In light of Arbor Hill and the considerations discussed above, I find the following to be reasonable billing rates: $275 per hour for Mr. Altman; $450 per hour for Mr. Chittur; and $300 per hour for Mr. Strutinskiy. I therefore recommend the following fees be paid by Northern: $104,087.50 for Mr. Altman's work, $250,614 for Mr. Chittur's work, and $162,486 for Mr. Strutinskiy's work.

---

counsel differ in their exhibit numbers than do the documents filed to the docket.

[18] Counsel has not indicated whether certain other factors are relevant to this case, specifically, whether counsel was precluded from other employment during the course of this case, whether counsel's fee was fixed or contingent, whether the clients imposed any relevant time constraints, whether counsel had any prior relationships with the clients, or what awards in similar actions have entailed.

### c.   *Use of a Multiplier*

Plaintiffs' counsel seeks to recover its fees multiplied by four.  Although the use of a

multiplier is "the exception rather than the rule," Ramos v. Patrician Equities Corp., 1993 WL

58428, at *41 (S.D.N.Y. Mar. 3, 1993) (citing In re Agent Orange, 818 F.2d 226, 234-37 (2d Cir.

1987)), its use may, in certain class actions involving the creation of a common fund, be used to

adjust the lodestar number in light of certain factors such as the risks of the litigation or the

degree of success, see, e.g., Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47-53 (2d Cir.

2000); Steinberg v. Nationwide Mut. Ins. Co., 612 F. Supp.2d 219, 222 (E.D.N.Y. 2009); In re

Saxon Sec. Litig., 1986 WL 1813, at *2 (S.D.N.Y. Jan. 31, 1986).  The instant case does not

involve a class action or common fund.  Moreover, as explained above, the Second Circuit no

longer follows the two-step lodestar approach.  Rather, any Johnson factor that warrants an

increase in the fee is assessed in terms of the reasonableness of the hours or rates billed.  Because

I have already taken these factors into consideration, counsel's use of a multiplier is

unwarranted.

## C.   **Expenses**

Defendants have not raised any objections to the expenses sought by Plaintiffs' counsel

and my review of these expenses does not reveal anything particularly irregular or of concern,

other than the calculation error noted above.

## D.   **Defendants' Request for Discovery**

Defendants have requested certain discovery into Plaintiffs' counsel's request for

attorneys' fees, as well as a conference before this Court.  (Defs.' Mem., at 39-40).  However,

because the documentation involved in this matter permits me to calculate a presumptively

24

reasonable fee, such a request is denied. See Hensley, 461 U.S. at 437 ("A request for attorneys' fees should not result in a second major litigation.").

## IV. CONCLUSION

Counsel's fee application and the reductions I have recommended are set forth in the accompanying table attached to this Report and Recommendation. In addition, I note that Defendants have not objected to the fees requested for the work by Mr. Lesser and Mr. Sharma, and therefore, I recommend that those fees remain as they are billed. Accordingly, for the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that Plaintiff's fee application should be **GRANTED** to the extent that Plaintiffs' counsel should be awarded fees in the amount of $543,248.00 and expenses in the amount of $43,006.46.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable James S. Gwin at the United States Courthouse, 801 W. Superior Ave, Courtroom18A, Cleveland, Ohio 44113, and to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Gwin.

Dated: **February 24**, 2011
White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

26

| ATTORNEY | NUMBER OF HOURS BILLED | | RATE REQUESTED | TOTAL REQUESTED | RECOMMENDED REDUCTION: HOURS | RECOMMENDED REDUCTION: RATE | RECOMMENDED TOTAL |
|---|---|---|---|---|---|---|---|
| Chittur | 560<br>+ 58.8<br><br>618.8 | (as of 12/30/10)<br>(supplemental) | $600/hour | $371,280.00 | 10%<br><br><br>(618.8 − 61.88 = 556.92) | $450/hour | $250,614.00 |
| Strutinskiy | 617.2<br>+ 20.0<br><br>637.2 | (as of 12/30/10)<br>(supplemental) | $350/hour | $223,020.00 | 15%<br><br><br>(637.2 − 95.58 = 541.62) | $300/hour | $162,486.00 |
| Lesser | 8.5 | | $660/hour | $5,610.00 | | | $5,610.00 |
| Sharma | 58.43 | | $350/hour | $20,450.50 | | | $20,450.50 |
| Altman & Other Finkelstein Attorneys | 582.3 | | $425/hour | $247,477.50 | 35%<br><br><br>(582.3 − 203.805=378.5) | $275/hour | $104,087.50 |
| | | | | | | | |
| **TOTAL** | 1826.43<br>+ 78.8<br>1905.23 | | | **$867,838.00** | | | **$543,248.00** |
| | | | | | | | |
| Counsel's voluntary reduction | | | | ($3,517.50) | | | |
| | | | | | | | |
| **TOTAL** | | | | **$864,320.50** | | | |
| | | | | | | | |
| **Requested Multiplier (x 4)** | | | | **$3,457,282.00** | | | |
| | | | | | | | |
| + Expenses | | | | + $42,692.04 | | | + $43,006.46 |
| | | | | | | | |
| **TOTAL** | | | | **$3,499,974.04** | | | **$586,254.46** |

28