**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler,
Gordon Redner, and Thomas J. Smith,

                                 Plaintiffs,

      vs.

Northern Leasing Systems, Inc., Jay Cohen, Rich Hahn,
and Sara Krieger

                             Defendants

Docket No.
06-CV-1625 (JSG)

# Plaintiffs' Objections to Certain Portions of the Report and Recommendation of Magistrate Judge of February 24, 2011 (Dkt. 153)

Dated: New York, New York
       March 9, 2011

**Chittur & Associates, P.C.**
286 Madison Ave Suite 1100
New York, NY 10017
Tel: (212) 370-0447
Fax: (212) 370-0465
Attorneys for Plaintiffs

TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.  The Applicable Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.  The R&R's Reductions Were Unwarranted and Excessive. . . . . . . . . . . . . . . . . . . . 4

  A.  Since Plaintiffs Were Forced To Defend Defendants' Underlying Lawsuits In the N.Y. City Civil Court Lest Plaintiffs Lose Their Federal Claims, That Time Ought to Be Included. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

  B.  The Hourly Rates for Mr. Chittur and Mr. Strutinskiy - Which Rates Were Those Paid By Regular Clients And Borne Out By Attorneys' Affidavits As Well As Defendants' Counsel's Billing Rates - Should Have Been Upheld. . . . . . 7

  C.  No Reduction Was Called For On Account of "Vague Time Records". . . . . . . . 8

  D.  Time Spent Formalizing the Settlement Agreement Was Proper. . . . . . . . . . . . 11

  E.  Time Spent on the Fee Application Was Below the Normal Range, And Ought Not to Have Been Slashed. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

  F.  No Reduction Was Warranted for Mr. Strutinskiy's Assistance at the Depositions; in Fact, His Videotaping the Depositions While Assisting Mr. Altman Saved Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

  G.  The Reductions For the Finkelstein attorneys Were Improper And Excessive. . . 15

III.  The Fees Sought Are Justified by the Extraordinary Result, and the Need for Deterrence of Misuse of Our Courts And For Providing Incentive to Private Attorneys to Take Such Difficult Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

  A.  Defendants' Attorneys' Fees of At Least $2.3 million And the "Formidable" Resources They Marshaled Support the Award Requested. . . . . . . . . . . . . . . . . 17

  B.  A Generous Fee Award Would Advance the Public Interest, and Is Justified in View of the Risks Assumed by Plaintiffs' Counsel, the Quality of Their Work, and the Results Achieved. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IV.  A Multiplier of Four Is Appropriate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.  The Individual Defendants Are Liable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

*Allen v. McCurry*,
449 U.S. 90 (1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*,
522 F.3d 182, 184 (2nd Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

*Baptiste v. Ercole*,
2011 WL 611821 (S.D.N.Y. Feb. 16, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
448 F.3d 573, 580 (2nd Cir.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Blowers v. Lawyers Cooperative Publ'g, Inc.*,
526 F.Supp. 1324, 1327 (W.D.N.Y. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*,
532 U.S. 598, 622 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cabell v. Sony Pictures Enterprises, Inc.*,
2011 WL 92765 (S.D.N.Y. Jan. 7, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Catalan v. RBC Mortg. Co.*,
2009 WL 2986122 (N.D. Ill. Sept. 16, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Champion v. ADT Sec. Services, Inc.*,
2010 WL 4736908 (E.D. Tex. Nov. 16, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n.*,
1996 WL 66111 (N.D. Ill. Feb. 13, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

*Clark v. First Unum Life Ins. Co.*,
2009 WL 1150318, at *4 (S.D.N.Y. Apr. 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Coalition to Save Our Children v. State Board of Education of Delaware*,
143 F.R.D. 61 (D.Del. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Colbert v. Furumoto Realty, Inc.*,
144 F.Supp.2d 251, 261-62 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Crispin R., Jr. v. Bd. of Educ. of the City of Chicago, Dist. 299*,
2010 WL 3701328 (N.D. Ill. Sept. 10, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*D.H. Blair & Co., Inc. v. Gottdiener*,
2010 WL 4258967 (S.D.N.Y. Oct. 27, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Delgado v. Mak*,
2009 WL 211862 (N.D. Ill. Jan. 29, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*DeMunecas v. Bold Food, LLC*,
2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Detroit v. Grinnell Corp.*,
495 F.2d 448, 470 (2nd Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Donovan v. Poway Unified School Dist.*,
167 Cal.App.4th 567, 628, 84 Cal.Rptr.3d 285 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Exeter-W. Greenwich Reg'l Sch. Dist. v. Pontarelli*,
788 F.2d 47, 51-52 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Field Day, LLC v. County of Suffolk*,
2010 WL 5491025 (E.D.N.Y. Sept. 9, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fogarazzo v. Lehman Bros., Inc.*,
2011 WL 671745 (S.D.N.Y. Feb. 23, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517, 533, 534 n. 19 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Gares v. Willingboro Twp.*,
1995 WL 125873 (D.N.J. Mar. 10, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gesualdi v. BD Haulers Inc.*,
2009 WL 5172859 (E.D.N.Y. Dec. 22, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Grievson v. Rochester Psychiatric Ctr.*,
2010 WL 3894983 (W.D.N.Y. Sept. 30, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
315 F. Supp. 2d 511, 525 *amended in part*, 328 F. Supp. 2d 439 (S.D.N.Y. 2004) . . . . . . . . . . 14

*GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*,
2009 WL 3241757 (E.D.N.Y. Sept. 30, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*,
995 F.2d 414, 420 (3rd Cir. 1993).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Henson v. Columbus Bank & Trust Co.*,
770 F.2d 1566, 1571-72 (11th Cir.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hicks v. Morgan Stanley & Co.*,
2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hilborn v. Klein Indep. Sch. Dist.*,
2010 WL 1463472 (S.D. Tex. Apr. 12, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Houbigant, Inc. v. IMG Fragrance Brands, LLC*,
2009 WL 5102791 (S.D.N.Y. Dec. 18, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Imbeault v. Rick's Cabaret Int'l Inc.*,
2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re AOL Time Warner S'holder Derivative Litig.*,
2010 WL 363113 (S.D.N.Y. Feb. 1, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Comverse Technology, Inc.  Securities Litig.*,
2010 WL 2653354 (E.D.N.Y. Jun 24, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Falzone (New York Cent. Mut. Fire Ins. Co.)*,
15 N.Y.3d 530, 536 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re RJR Nabisco, Inc.  Sec.  Litig.*,
1992 WL 210138 (S.D.N.Y. Aug 24, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*In re Unisys Corp. Retiree Med. Benefits Erisa Litig.*,
2008 WL 2600364 (E.D. Pa. June 26, 2008), *aff'd*, 579 F.3d 220 (3d Cir. 2009), *cert. denied*, 130
S. Ct. 1546 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Keenan [v. City of Philadelphia]*,
983 F.2d 459, 474 (3rd Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lafferty v. Providence Health Plans*,
2011 WL 127489 (D. Or. Jan. 14, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Leuzinger v. County of Lake*,
2009 WL 839056, at 10-11 (N.D. Cal.  Mar.  30, 2009) .. . . . . . . . . . . . . . . . . . . . . . . . . . 22

iii

*Long v. U.S. Dept. of Justice,*
703 F. Supp. 2d 84, 101 (N.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Louis Vuitton S.A. v. Spencer Handbags Corp.,*
597 F. Supp. 1186, 1193 (E.D.N.Y. 1984), *aff'd,* 765 F.2d 966 (2nd Cir. 1985) . . . . . . . . . . . . . 19

*LV v. New York City Dep't of Educ.,*
700 F. Supp.2d 510, 519-20 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Maley v. Del Global Technologies Corp.,*
186 F. Supp. 2d 358, 368-69 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Maliza v. 2001 MAR-OS Fashion, Inc.,*
2010 WL 502955 (E.D.N.Y. Feb. 10, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Manganiello v. Agostini,*
2008 WL 5159776 (S.D.N.Y. Dec. 9, 2008) *aff'd sub nom. Manganiello v. City of New York,* 612
F.3d 149 (2nd Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McDaniel v. County of Schenectady,*
595 F.3d 411, 424 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Michels v. Phoenix Home Life Mut. Ins. Co.,*
1997 WL 1161145, at *31 (N.Y.Sup.Ct. Jan. 3, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Miller v. Midpoint Resolution Group, LLC,*
608 F. Supp. 2d 389, 396 (W.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Murray v. Stuckey's, Inc.,*
153 F.R.D. 151, 153 (N.D. Iowa 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Group Int'l, LLC,* MHD,
2010 WL 2143661 (S.D.N.Y. Feb. 24, 2010), *adopted on this gr,* 2010 WL 2158294 (S.D.N.Y.
May 27, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Naismith v. Professional Golfers Assoc.,*
85 F.R.D. 552, 563 (N.D.Ga. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Nationwide Mut. Ins. Co. v. Mortensen,*
2010 WL 5071046 (D. Conn. Dec. 7, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 17

*New York State Ass'n for Retarded Children, Inc. v. Carey,*
711 F.2d 1136, 1146 (2nd Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nwagboli v. Teamwork Transp. Corp.*,
2009 WL 4797777 (S.D.N.Y. Dec. 7, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pappas v. Watson Wyatt & Co.*,
2008 WL 45385 (D. Conn. Jan. 2, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pizarro v. Bartlett*,
776 F.Supp. 815, 817 (S.D.N.Y.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Qantum Communications Corp. v. Star Broad., Inc.*,
491 F. Supp. 2d 1123, 1135 (S.D. Fla. 2007) *aff'd*, 290 F. App'x. 324 (11th Cir. 2008). . . . . . . 5

*Rabin v.  Concord Assets Group, Inc.*,
1991 WL 275757, at *2 (S.D.N.Y. Dec 19, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Raghavendra v. Trustees of Columbia Univ.*,
686 F. Supp. 2d 332, 335 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Real v. Continental Group, Inc.*,
116 F.R.D. 211, 213 (N.D.Cal. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Riker v. Distillery*,
2009 WL 2486196 (E.D. Cal. Aug. 12, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Robertson v. Giuliani*,
346 F.3d 75 (2nd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Robinson v. City of Edmond*,
160 F.3d 1275, 1284 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Serricchio v. Wachovia Sec., LLC*,
258 F.R.D. 43, 43-47  (D. Conn. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Shaw v. AAA Eng'g & Drafting, Inc.*,
213 F.3d 538, 543 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Slamow v. Delcol*,
571 N.Y.S.2d 335 (N.Y.App.Div., 2d Dep't), *aff'd*, 584 N.Y.S.2d 424 (N.Y. 1991). . . . . . . . . 23

*SNET v. Global Naps, Inc.*,
2008 WL 1848899, at *2-4 (D. Conn. Apr.25, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stastny v. Southern Bell Telephone and Telegraph Co.*,
77 F.R.D. 662, 663 (W.D.N.C. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stathos v. Bowden*,
728 F.2d 15, 22 (1st Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Storfer v. Guarantee Trust Life Ins. Co.*,
2011 WL 213461 (S.D. Fla. Jan. 21, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Torres v. Walker*,
356 F.3d 238, 241 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*TSI Energy, Inc. v. Stewart & Stevenson Operations, Inc.*,
1998 WL 903629 (N.D.N.Y. Dec. 23, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Gotti*,
457 F. Supp. 2d 411, 415 (S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Hagan*,
2010 WL 1816338 (D. Kan. May 3, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Vessell v. Astrue*,
2009 WL 3400660 (W.D. Wash. Oct. 20, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.*,
775 N.Y.S.2d 765, 768 (N.Y. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Winward v. Astrue*,
2010 WL 4983490 (W.D. Wash. Sept. 20, 2010), *report and recommendation adopted*, 2010 WL
4974047 (W.D. Wash. Dec. 1, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Yurman Designs, Inc. v. PAJ, Inc.*,
125 F. Supp. 2d 54, 56 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x. 46 (2d Cir. 2002). . . . . . . . . . . . 1, 5

*Zagorski v. Midwest Billing Services, Inc.*,
128 F.3d 1164, 1167, n. 6 (7th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Zoller v. INA Life Ins. Co. of New York*,
No. 06 Civ. 0112(RJS), ECF Nos. 86, 90, 99, 100. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PRELIMINARY STATEMENT

Under the parties' settlement agreement of November 10, 2010 ("Settlement

Agreement"), Plaintiffs sought attorneys' fees and expenses based upon time-sheets reflecting a

lodestar of $864,320.50.  Despite this request being barely *one-third* of Defendants' counsel's

lodestar - which lodestar amounts were paid on an ongoing basis, with no risk of nonpayment -

the Magistrate Judge *slashed Plaintiffs' lodestar by over 37%*, and further, refused to award a

multiplier.  Plaintiffs object to his Report and Recommendation (R&R) as erroneous, improper,

and unfair in these respects.[1]

"The recognition that litigation, and its necessary economic concomitant, billing, is more

of an art than a science, requires a less precise but more equitable analysis." *Yurman Designs,*

*Inc. v. PAJ, Inc.*, 125 F. Supp. 2d 54, 56 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x. 46 (2d Cir. 2002).

Accordingly, the proper perspective for evaluating this application merits emphasis of two

overriding factors.  First, Defendants' cleverly conceived and lucrative racket of commencing

fraudulent lawsuits in the N.Y. City Civil Court far away from the victim's home for relatively

small sums of money had been running unchecked for over a decade.  The victims' transactional

costs and procedural hurdles in long-distance litigation was the foundation of this racket.[2]   And

of course, the reason Defendants spent millions defending this action, and sought desperately to

seal all filings concerning this fee application, dkt. 148.  The need to deter such racketeers with

---

[1]The R&R granted Plaintiffs' expenses in their entirety and are hence not part of these
Objections.

[2]As Mr.  Russ affirmed, "I found no one interested in defend[ing] my case, let alone help
me recuperate the losses I had suffered due to Northern Leasing trashing my personal credit
report based on these forgeries."  Dkt 143-1.

1

formidable resources conducting a national scam by misusing our over-burdened judicial system cannot be over-emphasized.  Plaintiffs' attorneys took on the challenge, thwarted Defendants' fraudulent lawsuits in the N.Y. City Civil Court, and waged a pitched battle over seven years; as a direct consequence, Defendants landed up ***paying*** Plaintiffs significant sums instead of ***collecting*** a few thousand dollars from them through bogus lawsuits.[3]  Plaintiffs' counsel's valiant efforts should be applauded and encouraged.   Thus, public interest would be substantially enhanced with a handsome compensation to Plaintiffs' counsel; this case is the classic illustration for the propriety of a generous fee award with a multiplier "to advance considerations of compensation and deterrence," *Cabell v. Sony Pictures Enterprises, Inc.*, 2011 WL 92765 (S.D.N.Y. Jan. 7, 2011) (*quoting Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 534 n. 19 (1994)). That would give private attorneys the incentive to take hard cases with near-impossible odds such as this.

Second, Defendants utilized 24 lawyers from three well-established law firms, and paid ***at least***[4] $2.3 million in attorneys' fees and expenses.  As this Court is well aware, Defendants

---

[3]The R&R acknowledged that the "amounts recovered by the individual plaintiffs represent more than mere nominal damages".  R&R22.  The Plaintiffs themselves have been thrilled with the result.  Chittur Aff. (Dkt. 143), at 11-12¶¶33-34; dkt. 143-1 to 143-5.

[4]Defendants redacted the most material information - *i.e.*, description of work done - in their time-sheet productions, dkt. 143-11 to 143-15.  These wholesale redactions were  improper, and render it impossible to determine whether these time-sheets encompass all the billings for this case.  This redaction is especially problematic since Defendants' counsel have been representing Northern Leasing in several other related cases; we cannot ascertain whether time and/or expenses which ought to have been billed to this case was billed to one of the other cases.

For example, the time-sheets from Milberg do not reflect ***any*** expenses at all, although the invoice reflects $71,906.25 in attorney time.  Dkt 143-11, at 1-7.  This heightens the unfairness of the R&R's slashing of Plaintiffs' counsel's time based upon allegedly missing details.

battled every inch of the way; illustratively, Plaintiffs had to seek and obtain three court orders before Defendants produced the e-discovery.  Plaintiffs' counsel met these repeated challenges without any hesitation.  As another Court observed,

> this litigation has been long and complex, involving both unique facts and novel questions of law. In such circumstances, the defendant's fees may provide the best available comparable standard to measure the reasonableness of plaintiffs' expenditures in litigating the issues of the case.

*Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n.*, 1996 WL 66111 (N.D. Ill. Feb. 13, 1996).  *Accord, Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 184 (2nd Cir.2008).[5]  Nevertheless, the R&R did not even **consider** Defendants' lodestar or, for that matter, their billing records.

    While the R&R did not make findings on specific time entries, several of the grounds that

---

[5]*Accord, Serricchio v. Wachovia Sec., LLC*, 258 F.R.D. 43, 43-47  (D. Conn. 2009); *SNET v. Global Naps, Inc.*, 2008 WL 1848899, at *2-4 (D. Conn. Apr.25, 2008); *Nationwide Mut. Ins. Co. v. Mortensen*, 2010 WL 5071046 (D. Conn. Dec. 7, 2010).  *See also Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1571-72 (11th Cir.1985)(trial court abused its discretion by refusing discovery of hours spent preparing a defense where litigation continued for ten years and the judge expressed doubt as to the reasonableness of the hours claimed in plaintiff's petition for fees); *Murray v. Stuckey's, Inc.*, 153 F.R.D. 151, 153 (N.D. Iowa 1993)(hours devoted to the case and hourly rates relevant to extent they reflect the prevailing market rates); *Coalition to Save Our Children v. State Board of Education of Delaware*, 143 F.R.D. 61 (D.Del. 1992)(time records, billing rates and out of pocket expenses found relevant as production of same ordered); *Real v. Continental Group, Inc.*, 116 F.R.D. 211, 213 (N.D.Cal. 1986) (same); *Naismith v. Professional Golfers Assoc.*, 85 F.R.D. 552, 563 (N.D.Ga. 1979)(same); *Riker v. Distillery*, 2009 WL 2486196 (E.D. Cal. Aug. 12, 2009) (same); *Blowers v. Lawyers Cooperative Publ'g, Inc.*, 526 F.Supp. 1324, 1327 (W.D.N.Y. 1981) (amount of time spent by defendants' attorneys on a particular matter may have significant bearing on whether plaintiff's counsel expended a reasonable time on the same matter; amount of costs and disbursements incurred by defendants also has some bearing on the reasonableness of plaintiff's own costs and disbursement); *Stastny v. Southern Bell Telephone and Telegraph Co.*, 77 F.R.D. 662, 663 (W.D.N.C. 1978) ("In contest over what time was reasonably and necessarily spent in the preparation of a case, it is obvious that the time that the opposition found necessary to prepare its case would be probative.").

it cited for slashing the lodestar[6] were clear error, as was the denial of a multiplier.   As detailed

below, Plaintiffs' fee application should be granted in its entirety.

ARGUMENT

I.      The Applicable Standards

> A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection is made to the magistrate's recommendations, the court is required to review the contested portions *de novo*. *Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y.1991). The court "may adopt those portions of the [R & R] to which no objections have been made and which are not facially erroneous." *La Torres v. Walker*, 216 F.Supp.2d 157, 159 (S.D.N.Y.2000).

*Raghavendra v. Trustees of Columbia Univ.*, 686 F. Supp. 2d 332, 335 (S.D.N.Y. 2010).  *Accord,*

*Baptiste v. Ercole*, 2011 WL 611821 (S.D.N.Y. Feb. 16, 2011) ("A district court must review *de*

*novo* 'those portions of the report or specified proposed findings or recommendations to which

objection is made.'").

II.     The R&R's Reductions Were Unwarranted and Excessive

> A.    *Since Plaintiffs Were Forced To Defend Defendants' Underlying Lawsuits In the N.Y. City Civil Court Lest Plaintiffs Lose Their Federal Claims, That Time Ought to Be Included*

It is well-settled that where another litigation is "inextricably linked" to the issues raised

in the present litigation, then the time spent in that litigation should be included in the fee award.

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 420 (3ʳᵈ Cir.

---

[6]Significantly, Plaintiffs' counsel absorbed many out-of-pocket expenses as part of their overheads, unlike Defendants' counsel.  Thus, for example, Defendants' counsel's Westlaw and Lexis bills *alone* ($55,483.75) were 30% more than Plaintiffs' counsel's **total** expenses of $42692.04.  Plaintiffs' counsel did not bill for Westlaw, and for many other items that Defendants' counsel did.

4

1993).[7]  In such cases, courts have routinely included fees incurred in such other litigation; as the

First Circuit explained over a quarter of a century ago:

> **[P]laintiffs were forced to defend [the State Court action] lest they lose
> their § 1983 claim in the federal courts through collateral estoppel.** *See
> Allen v. McCurry*, 449 U.S. 90 (1980). ***Defense of the state court action
> was a necessary part of plaintiffs' efforts to achieve their § 1983 goal. . .***
> *Cf. Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir. 1982) (granting
> attorney's fees under related provision for contract debarment proceedings
> which led to settlement of Title VII suit), *cert. denied*, 461 U.S. 956
> (1983); *Bartholomew v. Watson*, 665 F.2d 910 (9th Cir.1982) (granting
> attorney's fees for state proceedings initiated in furtherance of § 1983 suit).

*Stathos v. Bowden*, 728 F.2d 15, 22 (1st Cir. 1984).[8]  "There is solid precedent for allowing fees .

. [for] work done in a state court." *Exeter-W. Greenwich Reg'l Sch. Dist. v. Pontarelli*, 788 F.2d

47, 51-52 (1st Cir. 1986) (*citing Lampher v. Zagel*, 755 F.2d 99 (7th Cir.1985), *Stathos*, 728 F.2d

15, and *Bartholomew v. Watson*, 665 F.2d 910 (9th Cir.  1992)).

That is precisely the situation here:  Defendants' bogus lawsuits in the N.Y. City Civil

Court against these Plaintiffs was the very basis of this lawsuit.  The very foundation of the

racketeering charge here is that Defendants brought those lawsuits in that Court fraudulently.

---

[7]*Accord, Keenan [v. City of Philadelphia]*, 983 F.2d 459, 474 (3rd Cir. 1992); *In re
Unisys Corp. Retiree Med. Benefits Erisa Litig.*, 2008 WL 2600364 (E.D. Pa. June 26, 2008),
*aff'd*, 579 F.3d 220 (3d Cir. 2009), *cert. denied*, 130 S. Ct. 1546 (2010) ("same litigation
proceeding under a different caption").

[8]*Accord, Qantum Communications Corp. v. Star Broad., Inc.*, 491 F. Supp. 2d 1123,
1134-35 (S.D. Fla. 2007) *aff'd*, 290 F. App'x. 324 (11th Cir. 2008) ("Qantum is entitled to its fees
incurred in the Bankruptcy Court Action because the lifting of the automatic stay was essential to
the resolution of Qantum's claims before this Court. . .  The award of bankruptcy-related fees is
especially warranted in light of the fact that Defendants themselves needlessly caused those fees
to be incurred by filing a bad-faith bankruptcy petition in the first place."); *Yurman Designs, Inc.
v. PAJ, Inc.*, 125 F. Supp. 2d 54, 56 (S.D.N.Y. 2000),  *aff'd*, 29 F. App'x. 46 (2d Cir. 2002) ("The
time and effort spent in resolving the jurisdictional issues and the effect of the Texas Action was
essential to the resolution of the claims in this Court. Contrary to PAJ's contention, that effort
was appropriately included in the fee and expense calculations.").

Plaintiffs' federal claims required that these bogus lawsuits against them be defended successfully.

For example, had Defendants prevailed against Russ in that Court, his claims here would have been barred.  That Court's judgment would have been final, and even the forged leases would have been beyond challenge under the *Rooker-Feldman* doctrine.  That was, of course, the reason Defendants brought Barry Cozier, a former judge of the Appellate Division, First Department, to appear before the much lower N.Y. City Civil Court (thrice removed from the Appellate Division in New York's judicial heirarchy) in their $9,000 case against Russ.  Dkt. 150 at 3 n.2.

Thus, all the proceedings and documents in the N.Y. City Civil Court were an integral part of discovery in this case.  As the Court may recall, Plaintiffs issued a subpoena for documents and deposition of Joseph Sussman, who was Defendants' counsel in the N.Y. City Civil Court.  Even Defendants did not challenge the relevance of that discovery; they balked only at producing attorney-client privileged documents.  Plaintiffs conducted his deposition. Documents from those litigations were also used in the preparation as well as deposition of many witnesses.  Thus,

> this work was intrinsic to the result reached in this litigation, and fees are warranted.

*Gares v. Willingboro Twp.*, 1995 WL 125873 (D.N.J. Mar. 10, 1995).

The R&R ignored all of this.  Instead, it found that Plaintiffs' counsel's assertions about the integral nature of the N.Y. City Civil Court lawsuits to this case were "conclusory" and "insufficient".  R&R16.  This was clearly erroneous; the claims here could not even have been

asserted had Plaintiffs' counsel not done the work in the N.Y. City Civil Court - work for which they have never been compensated.

      B.    *The Hourly Rates for Mr. Chittur and Mr. Strutinskiy - Which Rates Were Those Paid By Regular Clients And Borne Out By Attorneys' Affidavits As Well As Defendants' Counsel's Billing Rates - Should Have Been Upheld*

As the R&R acknowledged, Plaintiffs provided a retainer agreement in an unrelated case, which conclusively established that regular clients paid for Mr. Chittur's time at $600 per hour and Mr. Strutinskiy's, at $350. Further, Plaintiffs also provided two attorney affidavits attesting to the reasonableness of these rates. Dkt. 143-9, 143-10; R&R21. And most important, ***even Defendants did not dispute the reasonableness of these rates, which were below the rates charged by Defendants' counsel of comparable experience***.[9]

Nevertheless, the R&R reduced this rate by 25% for Mr. Chittur, from $600 to $450, and by 14.28% for Mr. Strutinskiy, from $350 to $300. It gave no basis for this reduction, but simply held that the rates were "higher than the amount a paying client would be willing to pay", R&R, 21. Given the undisputed evidence of precisely such a "paying client" who was, *in fact*, "willing to pay" these rates, the R&R's reduction was clear error. *In re Amino Acid Lysine Antitrust Litig.*, 918 F. Supp. 1190, 1194 (N.D. Ill. 1996) ("When clients choose their own lawyers, the free market operates-whether or not the bargain is made on the basis of truly full information, it reflects an agreement between a willing buyer and willing seller of legal services."). Given the retainer from a regular client, the attorneys' affidavits of reasonableness,

---

     [9]For example, Defendants' counsel charged $695, $635, $460, and $402 per hour for attorneys Bressler, Skoff, Butvick and Nigro . The first two attorneys are of comparable experience to Mr. Chittur, and the latter two, to Mr. Strutinskiy.

Defendants' counsel's billing rates, and Defendants' failure to dispute, Plaintiffs met their burden of proof.[10]

The R&R referred to work which Mr. Chittur "must expend on tasks which, in a larger firm, would be delegated to a lower-billing associate." R&R21. But the R&R failed to note that by the same token, "larger firms" separately bill to clients several expense items which Plaintiffs' counsel has absorbed here. Indeed, even Defendants' counsel's records reflect that they separately billed several such items, including, for example, "Westlaw," "Lexis/Nexis," "secretarial overtime," "search fees," "telecopy," "telephone," and even "Word processing", Dkt. 143-11 to 143-15, *passim*. None of these items have been billed by Plaintiffs' counsel.

**Indeed, Defendants' counsel's Westlaw and Lexis bills <u>alone</u> amount to $55,493.75, and their "Secretarial overtime" amounts to $6,799.** By themselves, these exceed Plaintiffs' counsel's **total** expenses. This highlights the unfairness in reducing Plaintiffs' counsel's rate.

C.   *No Reduction Was Called For On Account of "Vague Time Records"*

Defendants objected - and the R&R held - that Plaintiffs' application should be slashed due to allegedly "vague" entries in the time-sheets. Interestingly, Defendants themselves

---

[10]In such cases, courts accept the rate requested and do not take it upon themselves to reduce the rate to what a court may find "reasonable". *See, e.g., Hilborn v. Klein Indep. Sch. Dist.,* 2010 WL 1463472 (S.D. Tex. Apr. 12, 2010) ("In the absence of a factual challenge to the reasonableness of Defendants' counsels' billing rates, the court finds that the Feldman affidavit is sufficient to establish that his firm's rates are within the reasonable range for fees charged in this type of case in this geographical area for attorneys with similar experience"); *Lafferty v. Providence Health Plans,* 2011 WL 127489 (D. Or. Jan. 14, 2011) (same); *N. Am. Karaoke-Works Trade Ass'n, Inc. v. Entral Group Int'l, LLC,* MHD, 2010 WL 2143661 (S.D.N.Y. Feb. 24, 2010), *adopted on this gr,* 2010 WL 2158294 (S.D.N.Y. May 27, 2010).

withheld ***all*** of their own description of time-entries as being covered by attorney-client

privilege.[11]

> "[T]here is no binding standard on how hours should be described and
> how great the detail should be. If, on the face of it, the hours seem out of
> line, there is some weight to a claim that descriptions are too sparse, but
> the hours are not out of line here." *Kunz v. City of Chicago*, No. 01 C
> 1753, Memorandum Opinion and Order, at 3 (N.D.Ill. Aug. 14, 2008).

*Crispin R., Jr. v. Bd. of Educ. of the City of Chicago, Dist. 299*, 2010 WL 3701328 (N.D. Ill.

Sept. 10, 2010).   Here, even Defendants did not argue that the hours were "out of line," and

given Defendants' own refusal to provide ***any*** descriptions, this objection should not have been

considered at all.

In any event,

> "[P]laintiff's counsel 'is not required to record in great detail how each
> minute of his time was expended.'" [*Fischer v. SJB-P.D. Inc.*, 214 F.3d
> 1115, 1121 (9th Cir. 2000)] *quoting Hensley[ v. Eckerhart*, 461 U.S. 424,]
> 437-38, n. 12 (1983). "Instead, plaintiff's counsel can meet his
> burden-although just barely-by simply listing his hours and 'identifying the
> general subject matter of his time expenditures.'" *Id.* (finding denial of fee
> application an abuse of discretion where the fee request included

_____

[11]By order of November 11, 2010, this Court instructed that "defense counsel shall be
prepared to provide the Court with documentation of the hours spent in the litigation of this
case." "Ex. 1," Email of November 11, 2010.  In that conference of November 15, 2010, this
Court directed Defendants' counsel to provide their time-sheets, and those of all predecessor
counsel, to Plaintiffs' counsel, in furtherance of Plaintiffs' counsel's anticipated fee application.
***At that time, Defendants never raised any issue of redacting entries in their time-sheets, but
agreed to produce the time-sheets***.

Nevertheless, when Defendants belatedly did produce the time-sheets on November 30,
2010, they removed all the descriptions in all the time-entries, citing the attorney-client privilege.
Thus, Defendants foreclosed comparison on just how much details ***their*** time-sheets contained.
Hence, Defendants' objections to "vague" entries should not have been considered at all.

That apart, further details in the time-sheets would constitute attorney-client privilege - as
Defendants have contended.  "As a well-known maxim commands, "what is sauce for the goose
is sauce for the gander." *United States v. Gotti*, 457 F. Supp. 2d 411, 415 (S.D.N.Y. 2006);
*accord, In re Falzone (New York Cent. Mut. Fire Ins. Co.)*, 15 N.Y.3d 530, 536 (2010).

summaries of tasks such as "pleadings and pretrial motions") (*quoting Davis v. City of San Francisco*, 976 F.2d 1536, 1542 (9th Cir.1992) (*quoting Hensley*, 461 U.S. at 437 n. 12)). Here, plaintiff met this "basic requirement." *Id.*

*Winward v. Astrue*, 2010 WL 4983490 (W.D. Wash. Sept. 20, 2010), *report and recommendation adopted*, 2010 WL 4974047 (W.D. Wash. Dec. 1, 2010).  Thus, the correct standard is whether the details provided "are not outside the boundaries of what paying clients would accept, nor are they so cryptic as to preclude reasonable analysis."  *Delgado v. Mak*, 2009 WL 211862 (N.D. Ill. Jan. 29, 2009).  *Accord, Catalan v. RBC Mortg. Co.*, 2009 WL 2986122 (N.D. Ill. Sept. 16, 2009).

Here, the R&R referred to "vague references to telephone calls, emails, meetings, and other correspondence," R&R12.  But "it is not clear how much more detail would be necessary to evaluate" the reasonableness of these time entries, *Vessell v. Astrue*, 2009 WL 3400660 (W.D. Wash. Oct. 20, 2009).  Each of these may vary considerably in time spent; for example, a phone call could last for 5 minutes or 50.  Hence, determining the "reasonableness" of the time spent would require an ***extremely*** detailed description of every item and every suggestion that was discussed in each of these phone "calls, emails, meetings and other correspondence."   But providing such minute details would violate the attorney-client and/or work product privilege, *see, e.g., Long v. U.S. Dept. of Justice*, 703 F. Supp. 2d 84, 101 (N.D.N.Y. 2010) - and no client would seek that level of detail.

Hence, courts have uniformly held that "it is not required that counsel describe in great detail how billable time was spent; it is sufficient to identify the general subject matter of time expenditures."  *Gesualdi v. BD Haulers Inc.*, 2009 WL 5172859 (E.D.N.Y. Dec. 22, 2009);

10

*GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim*, 2009 WL 3241757 (E.D.N.Y.

Sept. 30, 2009) (same).[12]  The R&R's slashing of the time-entries on this basis was clear error.

        D.     *Time Spent Formalizing the Settlement Agreement Was Proper*

       The R&R slashed on this ground because the December 10th order found that that

settlement-related dispute was a "waste of time."  R&R16.  Whether or not that is a fair

characterization of that order, the R&R erred in saddling ***Plaintiffs' counsel*** with the cost of this

"waste of time."

       The motion practice after November 10, 2010, was necessary from Plaintiffs' perspective.

The first motion was to clarify the terms of the settlement in view of Defendants' attempt to

surreptitiously absolve the Individual Defendants of all liability for attorneys' fees and

expenses.[13]  The second motion was to stop Defendants' procrastination of payment, due to

Defendants' own financial problems, under the guise of repetitious re-drafting of the settlement

agreement.  Dkt. 147 at 3 ("The Court finds both the November 21st version of the proposed

settlement and the January 24th version of the proposed settlement are entirely consistent with the

terms of the letter agreement and the Court's December 10 order.").  That motion was ***clearly***

successful, ***since the Court ordered Defendants*** "to immediately make payment of the $295,000

settlement to Plaintiffs."  *Id.*

---

     [12]Where more detail would assist a court in evaluating the time-entries, courts have requested it.  *See, e.g., United States v. Hagan*, 2010 WL 1816338 (D. Kan. May 3, 2010).  Thus, the Magistrate Judge could have sought more details.

     [13]Interestingly, Defendants themselves stated in a recent letter to Judge Gwin that their November 21st draft which Plaintiffs' counsel had found problematic was not "fully consistent" with the November 10th agreement.  Lillienstein Letter to Court, Jan 23, 2011 (not filed in ecf).

Moreover, as that order held, the November 21st draft of the formalized settlement - which was prepared by Defendants' counsel and accepted by Plaintiffs' counsel accepted - was "fully consistent" with the Settlement Agreement.  It was Defendants' counsel who kept repeatedly revising that "fully consistent" settlement agreement, and each such revision had to be *carefully* reviewed[14] by Plaintiffs' counsel each time, and led to the second motion which resulted in payment and closure.  Thus, the "waste of time" was occasioned by Defendants' counsel alone, and the R&R erred in blaming Plaintiffs' counsel therefor.

> E.     *Time Spent on the Fee Application Was Below the Normal Range, And Ought Not to Have Been Slashed*

"It is well-settled that the time spent preparing a fee application is compensable."  *Field Day, LLC v. County of Suffolk*, 2010 WL 5491025 (E.D.N.Y. Sept. 9, 2010) (citations omitted).  The time spent on this application was *less than 7%* of the total time claimed; that is <u>less</u> than what courts have found justified.  *Colbert v. Furumoto Realty, Inc.*, 144 F.Supp.2d 251, 261-62 (S.D.N.Y. 2001) (fee application awards in this Circuit range from 8 to 24% of the total time claimed in the entire case).

Nevertheless, the R&R slashed the fee request grounds of "*inexplicable omissions of time*," R&R17 (emphasis added).  In other words, because Plaintiffs' counsel did *not* seek compensation for time which they ought to have, the R&R held that their time should be *further* slashed.  The R&R cited no authority for this counter-intuitive proposition.

Moreover, the R&R pointed out a "minor calculation error" (77.9 hours instead of 78.8) R&R2.  Although it specified no "typos or citation errors," it nevertheless found these alleged

_____

[14]The first dispute resulted from Defendants' counsel's having pulled a "Northern Leasing" by maneuvering to absolve the individual defendants of all liability.

errors rendered the application "suspect". *Id.*, 17.  This speculation was baseless; the "minor"

error actually resulted in **under-billing** by 0.9 hours.[15]  We found no case - and the R&R cited

none - permitting a slashing for such innocuous errors.

So also, the R&R found that three attorneys were not "needed to work on" the fee

application, R&R17.  Significantly, the R&R did not - and could not - find that there was

duplication of work.  In fact, the three attorneys worked efficiently, and without any

duplication.[16]  Further, all three attorneys had worked in the case through discovery and motion

practice, and it was imperative that they work on this fee application:  it was **their** time-sheets,

and **their** expenses, that were at issue.  The R&R ignored the fact that the litigation spanned over

six years, and given the complexities and the intense discovery involved, the three main attorneys

conducting the case properly worked on the fee application.

The R&R overlooked that "[a]pplications for attorneys' fees should be accompanied by

sufficient information to enable the reviewing court to audit the hours and determine whether

they were reasonably expended."  *Grievson v. Rochester Psychiatric Ctr.*, 2010 WL 3894983

---

[15]In *Nwagboli v. Teamwork Transp. Corp.*, 2009 WL 4797777 (S.D.N.Y. Dec. 7, 2009), cited by the R&R, counsel billed 5 hours for an inquest memorandum which was "simply a slightly modified version of the memorandum of law submitted in support of the judgment by default."  That would be "double compensation", *id*.  Further, that counsel provided no information about "his experience or the size and nature of his legal practice".  *Id.*  He also provided no information about his paralegal's "background and experience", whose time he sought to bill at $100 per hour.  Further, his time-entries were cumulative and impossibly vague (""review of papers, affirmation, documents and calculation of damages").  Accordingly, the Court reduced his hours from 26.5 hours to 20, and the paralegal's time from 2.5 hours to 1.  That is far removed from the case here.

[16]Hence, the R&R's faulting Mr. Chittur's being responsible for the bulk of the research is misconceived.  As the R&R acknowledged elsewhere, that would have been questionable only if the firms "had lower-paid associates available."  R&R20.  That was not the case here.

(W.D.N.Y. Sept. 30, 2010); *accord, Manganiello v. Agostini*, 2008 WL 5159776 (S.D.N.Y. Dec. 9, 2008) *aff'd sub nom. Manganiello v. City of New York*, 612 F.3d 149 (2nd Cir. 2010).  The fee application itself had 32 exhibits and three attorney affidavits, in addition to the usual memo, and motion, all of which amounted to about 14 MB, and the Reply had nine exhibits, in addition to the three attorney affidavits and the memo, amounting to 1.28 MB.  The three attorneys's participation was proper and warranted.

       F.     *No Reduction Was Warranted for Mr.  Strutinskiy's Assistance at the Depositions; in Fact, His Videotaping the Depositions While Assisting Mr. Altman Saved Costs*

"[I]t is common practice for a lawyer to bring along a colleague to assist at a deposition or at a court proceeding."  *Pappas v. Watson Wyatt & Co.*, 2008 WL 45385 (D. Conn. Jan. 2, 2008).  *Accord, Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 525 *amended in part*, 328 F. Supp. 2d 439 (S.D.N.Y. 2004) ("The same two attorneys have been intimately involved in this litigation on Gucci's behalf from the beginning, and the partner undoubtedly benefitted from having the associate present to assist").[17]

In addition to this "common practice," this was a particularly complex case.  As this Court is well aware, Defendants produced, in electronic and paper format, about a million pages of documents.  Mr.  Strutinskiy was involved in the case from the inception; indeed, much of the N.Y. City Civil Court proceedings were handled by him.  Dkt.  150 at 5¶14.

Further, Mr.  Strutinskiy in fact, actively assisted Mr.  Altman in taking the deposition by suggesting exhibits, researching legal issues at Mr.  Altman's request, and consulting with

---

[17]The R&R erroneously found that Mr.  Chittur had spent 18.6 hours in depositions, R&R14.  In fact, Mr.  Chittur spent only a "few minutes" in two of the depositions, dkt.  150 at 5¶15, with the remaining time spent on other compensable activities.

respect to strategy.  R&R15 n.12.  Thus, the presence of Mr.  Strutinskiy and Mr.  Altman was justified.  *Cfr., Maliza v. 2001 MAR-OS Fashion, Inc.*, 2010 WL 502955 (E.D.N.Y. Feb. 10, 2010) (disallowing multiple attorneys because "the case was not particularly complex").

Moreover, Mr.  Strutinskiy also videotaped the depositions, thereby saving the ***additional*** cost of a professional videographer.  The cost of videography ***alone*** would have been $11,200.  Dkt.  150, 6¶16.

Nevertheless, the R&R slashed because "it is not clear how much legal assistance he actually provided or how necessary it was".  R&R153.  This was clear error.  The R&R cited no case, and we found none, requiring detailed evidence of "actual" legal assistance or "necessity" thereof; the attorneys' averments under oath here were sufficient.  Mr.  Strutinskiy's attendance at the depositions were appropriate given the complexity of the action and the enormous number of documents.  As the Second Circuit held, "prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions."  *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2nd Cir. 1983).

G.     *The Reductions For the Finkelstein attorneys Were Improper And Excessive*

The R&R slashed the Finkelstein attorneys' time by 35%, and further slashed their billing rates improperly.  First, the R&R erroneously recorded that it was "unclear" whether the 41.5 hours spent by Mr. Altman's colleagues was "contemporaneously recorded," R&R10.  But in fact, the record bears out that their time was "recorded contemporaneously," dkt.  143-21 at 8¶21, and hence, that time, dkt.  143-23, may not be excluded.

15

Second, the R&R observed that Mr. Altman's "skills involving e-discovery . . . do not appear to be of particular relevance," R&R153. This was error. In fact, Mr. Altman was brought into this case precisely because of his e-discovery expertise; as Mr. Chittur stated:

> I brought Mr. Altman into the case primarily for e-discovery purposes. He reviewed the electronic discovery produced by Defendants, and conducted depositions.

Dkt. 150 at 5¶14. The electronic discovery here was significant, and comprised of about 800,000 documents. It was through Mr. Altman's skills that Plaintiffs were able to review, analyze, and conduct depositions based on the e-discovery.

Further, Mr. Altman routinely is paid $350 for expert consulting work, dkt 143-21¶22 - and that is for cases in which he has no professional responsibility as an attorney. When professional responsibility is added on to these responsibilities, the rates ought to be correspondingly higher.

The R&R also erred in comparing Mr. Altman to a junior associate attorney. In fact, Mr. Altman has been a key team member in several major litigations over the past 15 years; as such, he has

> taken or defended more than 50 depositions as lead counsel, attended more than 100 other depositions as second chair or in a support role, and assisted in well over 100 other depositions. I have argued dispositive motions, *Daubert* motions, and briefed such motions. I have written all or part of more than 100 motions and briefs and assisted in the drafting of numerous others. I am also proficient in electronic discovery matters and forensic data analysis, and I have testified numerous times through declaration, deposition, or trial testimony where I have been admitted as an expert.

*Id*., ¶¶3-15. This experience places him on par with partners shouldering considerable litigation responsibilities. Thus, the rate of $425 per hour is "appropriate, if not understated," dkt 143-26

16

at 5¶10 (Edgar Decl.).  It is in fact below the range in this District.  *See, e.g., Zoller v. INA Life Ins. Co. of New York*, No. 06 Civ. 0112(RJS), ECF Nos. 86, 90, 99, 100 ($560); *Barnes*, 2010 WL 1253742, at *3 ($495); *Clark v. First Unum Life Ins. Co.*, 2009 WL 1150318, at *4 (S.D.N.Y. Apr. 29, 2009) ($480).

The R&R cited *LV v. New York City Dep't of Educ.*, 700 F. Supp.2d 510, 519-20 (S.D.N.Y. 2010).  But unlike that case, Mr. Altman did far more than "participate" in pre trial activities and take an isolated deposition.  He coordinated, supervised, and conducted the e-discovery,  and took all of the corporate depositions in this case.  Dkt.  143-21, ¶¶13-17.

The propriety of Mr.  Altman's rate of $425 is also established by the attorney declarations.  Dkt.  143-26, at 1 (Grossman), 3 (Edgar), 6 (Monsour).

Lastly, the R&R noted that the other Finkelstein attorneys, including two partners and an associate, also sought billing at $425 per hour.  R&R19 n.15.  The R&R overlooked that these rates were discounted as an accommodation.  Dkt.  143-21 at 7¶18.

III.   The Fees Sought Are Justified by the Extraordinary Result, and the Need for Deterrence of Misuse of Our Courts And For Providing Incentive to Private Attorneys to Take Such Difficult Cases

    A.    *Defendants' Attorneys' Fees of At Least $2.3 million And the "Formidable" Resources They Marshaled Support the Award Requested*

As already seen, in complex cases such as this one, courts have used Defendants' lodestar as a benchmark.  *Chicago Prof'l Sports Ltd. P'ship*, 1996 WL 66111 ("the best available comparable standard"); *accord, Nationwide Mut. Ins. Co. v. Mortensen*, 2010 WL 5071046 (D. Conn. Dec. 7, 2010); *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000) (*quoting Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir. 1998)).

Here, Defendants were represented by three big and well-reputed law firms - Milberg, LLP; Epstein Becker; and Moses & Singer. Defendants requisitioned no less than twenty-four lawyers, as clear from their own time-sheets. *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 184 (court should "take account of the resources being marshaled on the other side"). Defendants paid attorneys' fees of at least $2.3 million to defend this action; it would appear that the actual figure is higher. This also supports the award requested.

B. *A Generous Fee Award Would Advance the Public Interest, and Is Justified in View of the Risks Assumed by Plaintiffs' Counsel, the Quality of Their Work, and the Results Achieved*

Defendants have been wildly successful with their scam for over a decade, as clear from their scorched earth litigation tactics. For example, they refused even a week's adjournment to accommodate Russ's scheduling conflict to compel him to appear in the N.Y. City Civil Court, and when he did show up, they had no evidence against him. And this litigation itself was no cake-walk, with Defendants incurring $2.3 million to out-litigate and out-spend Plaintiffs into crying "uncle."

This was a high risk litigation - which risks are borne out by Defendants' own opposition papers. Dkt. 152. Further, Plaintiffs - like most of Defendants' victims - could not even ***obtain*** legal representation to defend them in small claims part of the N.Y. City Civil Court: After all, which attorney would be inclined to take such a case - and that too, faced with the tenacious litigation put up by Defendants' army of lawyers?

Thus, a generous award here would serve ***both*** purposes. First, it would be a significant deterrent to Defendants - and others with similar proclivities - from misusing our courts. This "deterrent effect" is an important consideration when evaluating the 'degree of success' obtained

18

by a particular plaintiff". *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389, 396 (W.D.N.Y. 2009) (*quoting Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167, n. 6 (7th Cir.1997)).  In this respect, the settlement is a spectacular success.  The huge price that Defendants have had to pay for attempting to bully payments of a few thousand dollars by misusing the judicial system is a deterrent.  The significance of this is evident from Defendants' desperate attempts to seal the Court records so that other victims and attorneys remain unaware of the settlement, and continue to be too intimidated to hold Defendants accountable.

Second, it would provide a significant incentive to attorneys to take on such long-shot cases.  *Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."); *Michels v. Phoenix Home Life Mut. Ins. Co.*, 1997 WL 1161145, at *31 (N.Y.Sup.Ct. Jan. 3, 1997) ("[G]enerous fee awards in cases such as this serve the dual purpose of encouraging plaintiffs' attorneys to act as private attorneys general and discouraging wrongdoing.").

Thus, given the extra-ordinary success by Plaintiffs in the face of aggressive litigation by twenty-four attorneys and Defendants' formidable resources,[18] to paraphrase another Court, "the relief that plaintiff obtained in this litigation-judged by both quantitative and qualitative norms, justified the hours spent by her attorneys," *Grievson*, 2010 WL 3894983; *see also McDow v. Rosado*, 657 F. Supp. 2d 463, 469 (S.D.N.Y. 2009) (damages of $10,000, fee award of $78,980

---

[18]*Louis Vuitton S.A. v. Spencer Handbags Corp.*, 597 F. Supp. 1186, 1193 (E.D.N.Y. 1984), *aff'd*, 765 F.2d 966 (2nd Cir. 1985) ("In deciding to award attorneys' fees under the new statute the Court considered, among other factors, that defendant's resources were "formidable" as compared to plaintiffs'," citations omitted).

due to "quantity and quality of relief obtained."); *Imbeault v. Rick's Cabaret Int'l Inc.*, 2009 WL 2482134 (S.D.N.Y. Aug. 13, 2009) (plaintiff "obtained a complete, albeit early, victory for herself, notwithstanding the fact that she initially may have envisioned a broader litigation. . . . For these purposes then, she was fully successful and accordingly no reduction for limited success is warranted."). Plaintiffs' appreciation of counsel speaks for themselves. Dkt. 143-1 to 143-5.

IV.    A Multiplier of Four Is Appropriate

"Where, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Technology, Inc.  Securities Litig.*, 2010 WL 2653354 (E.D.N.Y. Jun 24, 2010) (*quoting Detroit v.  Grinnell Corp.*, 495 F.2d 448, 470 (2nd Cir.  1974)).   Hence, "a multiplier is typically applied to the lodestar." *Global Crossing*, 225 F.R.D. at 468.   "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id. (citing Goldberger*, 209 F.3d at 47; *Savoie,* 166 F.3d at 460).  As Judge Batts reiterated recently

> "Plaintiffs may find it difficult to obtain representation if attorneys know their reward for accepting a contingency case is merely payment at the same rate they could obtain risk-free for hourly work, while their downside is no payment whatsoever." *In re Abrams*, 605 F.3d 246.

*DeMunecas v. Bold Food, LLC*, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010).[19]

---

[19]"Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees . . . counsel may be entitled to a 'multiplier' of their lodestar rate to compensate them for the risk assumed by them, the quality of their work, and the result achieved," *Fogarazzo v. Lehman Bros., Inc.*, 2011 WL 671745 (S.D.N.Y. Feb. 23, 2011).   As another Court observed,

"Historically, the two major factors driving a fee multiplier have been quality and risk."

*In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113 (S.D.N.Y. Feb. 1, 2010).

Here, there can be no serious question about the sophisticated representation that Plaintiffs

received, and the considerable risk that Plaintiffs' counsel took - and persisted with for over six

years.

The significant risks that Plaintiffs' counsel assumed, and the extraordinary results

counsel obtained justifies a multiplier.  The propriety of a multiplier is highlighted by the fact

that Plaintiffs (like most of Defendants' victims) could not even find an attorney in Manhattan to

represent them in the first place.

"In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts,

including this Court."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008);

*accord, Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 368-69 (S.D.N.Y. 2002)

(awarding fee equal to a 4.65 multiplier, which was "well within range awarded by courts in this

Circuit and courts throughout the country").[20]

---

> "[T]he critical factor ... [is] the party's difficulty in finding counsel without
> risk-enhancement ... [and] there should be evidence in the record" to
> support such a finding. *Bell v. U.S.B. Acquisition Co., Inc.*, 734 So.2d 403,
> 409 (Fla.1999) (internal citations and quotation marks omitted). "A
> primary rationale for the contingency risk multiplier is to provide access to
> competent counsel for those who could not otherwise afford it." *Id*. at 411.

*D.H. Blair & Co., Inc. v. Gottdiener*, 2010 WL 4258967 (S.D.N.Y. Oct. 27, 2010).  *Accord, McDaniel v. County of Schenectady*, 595 F.3d 411, 424 (2nd Cir. 2010) ("level of risk associated with litigation, for example, which is 'perhaps the foremost factor' to be considered in assessing the propriety of a multiplier").

[20]*See also Rabin v.  Concord Assets Group, Inc.*, 1991 WL 275757, at *2 (S.D.N.Y. Dec 19, 1991) (multiplier of 4.4); *In re RJR Nabisco, Inc.  Sec.  Litig.*, 1992 WL 210138 (S.D.N.Y. Aug 24, 1992) (multiplier of 6).

21

The R&R rejected a multiplier because this case did not involve a "class action or common fund."  R&R 24.  But no court has granted or denied a multiplier on this basis; in fact, many courts have granted multipliers in other types of cases also.  *See, e.g., Leuzinger v. County of Lake*, 2009 WL 839056, at 10-11 (N.D. Cal.  Mar.  30, 2009) (in a disability and employment discrimination case, awarding a 2.0 multiplier); *Donovan v. Poway Unified School Dist.*, 167 Cal.App.4th 567, 628, 84 Cal.Rptr.3d 285 (2008) (1.25 multiplier in light of the case's difficulty and risk); *Storfer v. Guarantee Trust Life Ins. Co.*, 2011 WL 213461 (S.D. Fla. Jan. 21, 2011) (multiplier of 1.5).

Plaintiffs request a multiplier of 4, which is well within the range of multipliers awarded by courts within this Circuit.  *WorldCom*, 388 F. Supp. 2d at 357 ("multipliers of between 3 and 4.5 are common," *citing Visa*, 396 F.3d at 123.).  With this multiplier, Plaintiffs' counsel's fees would be comparable to that charged by Defendants' counsel.  It merits mention that Defendants' counsel's fees were guaranteed, entailed no risk of nonpayment or uncertainty of collection.

V.     The Individual Defendants Are Liable

The R&R held that this Court's order of December 10, 2010 (dkt.  139) had "already" held that the Individual Defendants "would not be held joint [*sic*, jointly] and severally liable for any award of attorneys' fees."  R&R6.  This was a clear error.

The December 10th order merely resolved the issue of whether the Settlement Agreement's bar on disputing Plaintiffs' entitlement to attorneys' fees and expenses covered ***only*** Northern Leasing, or whether that bar also covered the Individual Defendants.  This Court held that the bar did not apply to the Individual Defendants.  In other words, the Individual

22

Defendants, unlike Northern Leasing, *could* contest Plaintiffs' entitlement to attorneys' fees and expenses.

This is buttressed by the *undisputed* fact that the parties had never even discussed, let alone agreed, to absolve the Individual Defendants of all liability.  Altman decl Nov.  24, 2010, at ¶5; Dkt.  151.   Accordingly, the Settlement Agreement was silent about this.

> Where, as here, a contract is negotiated by sophisticated parties at arm's length, courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.

*Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 775 N.Y.S.2d 765, 768 (N.Y. 2004).  *Acord, Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 580 (2nd Cir.2006) ("Under New York law, [c]ourt[s] must enforce contract provisions clearly-expressing parties' intent.").  Hence,

> A court may not rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction, nor may it construe the language in such a way as would distort the contract's apparent meaning.

*Houbigant, Inc. v. IMG Fragrance Brands, LLC*, 2009 WL 5102791 (S.D.N.Y. Dec. 18, 2009) appeal dismissed, 627 F.3d 497 (2d Cir. 2010) (*quoting Slamow v. Delcol*, 571 N.Y.S.2d 335 (N.Y.App.Div., 2d Dep't), *aff'd*, 584 N.Y.S.2d 424 (N.Y. 1991).  Thus, it was clear error to hold that the Individual Defendants were absolved from all liability for attorneys' fees.

The settlement was "so ordered" and the Court retained jurisdiction to enforce it.  That suffices to sustain this fee application under *Robertson v. Giuliani*, 346 F.3d 75 (2nd Cir. 2003), and its progeny.  Defendants' denial of wrongdoing in the settlement is inconsequential.

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598,

23

622 (2001) ("The entry need not be a judgment on the merits. Nor need there be any finding of

wrongdoing. A court-approved settlement will do."); *accord*, *Torres v. Walker*, 356 F.3d 238,

241 (2nd Cir. 2004) ("Defendants would make no admission of any wrongdoing" in settlement;

does not bar attorneys' fees).

Thus, for example, in *Champion v. ADT Sec. Services, Inc.*, 2010 WL 4736908 (E.D.

Tex. Nov. 16, 2010), the settlement agreement provided that it was not to "be construed as an

admission of liability, responsibility, or wrongdoing as alleged in the Lawsuit."  Indeed, that

settlement went even further, and provided that "It is expressly understood by the Parties that

[plaintiffs] shall not be deemed a "prevailing party" for any purpose, including any fee shifting

statute, rule, or agreement." *Id*., *3.  Based on this language, those defendants also objected to

paying those plaintiffs' attorneys' fees.

The Court reasoned that settlement agreements are contracts, and to be construed

accordingly.  Under axiomatic principles of contract,[21] "the plaintiffs are entitled to attorney's

fees, or in other words, the settlement agreement does not prevent the plaintiffs from being

considered prevailing parties." *Id*., *4.  Although that settlement also provided expressly that

those plaintiffs were not to be considered "prevailing parties", it simultaneously provided for the

Court to determine the appropriate attorneys' fees. *Id.*  Accordingly, the Court "interpret[ed] the

settlement agreement as unambiguously allowing" attorneys fees to be determined by the Court.

*Id*.

---

[21]While that Court recited Texas State law, "The substantive law relating to contract interpretation is essentially the same in both New York and Texas." *TSI Energy, Inc. v. Stewart & Stevenson Operations, Inc.*, 1998 WL 903629 (N.D.N.Y. Dec. 23, 1998).

24

That reasoning is fully applicable here.  Indeed, the Individual Defendants' case is much weaker, because the *Champion* settlement expressly provided that those plaintiffs would not be considered "prevailing parties", while the instant settlement has no such provision.  Clearly, the Individual Defendants are liable, jointly and severally, for attorneys' fees and costs here.

<u>CONCLUSION</u>

The Court should modify the Magistrate Judge's Report and Recommendation, and award attorneys' fees and expenses of $3,499,974, and hold all the Defendants jointly and severally liable for the said amount.

Dated: New York, NY
       March 9, 2011

**CHITTUR & ASSOCIATES, P.C.**

Sd/

By:  Krishnan Chittur, Esq. (KC 9258)
286 Madison Avenue Suite 1100
New York, New York 10017
Tel: (212) 370-0447
Attorneys for Plaintiffs

25