**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Melinda Serin, Judson Russ, Long Soui Lim, Peri Kettler,
Gordon Redner, and Thomas J. Smith,

|                    |             |                       |
|--------------------|-------------|-----------------------|
|                    | Plaintiffs, | Docket No.            |
|                    |             | 06-CV-1625 (JSG)      |
| vs.                |             |                       |

Northern Leasing Systems, Inc., Jay Cohen, Rich Hahn,
and Sara Krieger

                                        Defendants


# Corrected Plaintiffs' Memorandum In Opposition to Defendants' Objections And In Further Support of Plaintiffs' Objections to Certain Portions of the Report and Recommendation of Magistrate Judge of February 24, 2011 (Dkt. 153)


Dated: New York, New York
       April 1, 2011

**Chittur & Associates, P.C.**
286 Madison Ave Suite 1100
New York, NY 10017
Tel: (212) 370-0447
Fax: (212) 370-0465
Attorneys for Plaintiffs

TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      The R&R's Reductions Were Improper and Excessive. . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Defendants' Demand For Excluding The Finkelstein Attorneys' Time Is Misconceived . 5

III.    Defendants' Counsel Fees Are a Relevant Benchmark. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.     A Generous Award Is Appropriate In Order to Deter Defendants' Misconduct, and to
        Incentivize Private Attorneys To Take Such Difficult Cases. . . . . . . . . . . . . . . . . . . . . 11

        A.      Plaintiffs Achieved a Remarkable Result:  Defendants Paid over 2,000%
                of Their Own Settlement Offer of 2009, And That Too to Plaintiffs Who
                Defendants Had Sought to Collect Money From. . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      Defendants' Mischaracterization Of the Case is Baseless, And In Any Event,
                Irrelevant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C.      Plaintiffs Accepted the Settlement Due to Defendants' Tottering Finances. . . . . 13

        D.      Plaintiffs Achieved Significant Success. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        E.      The Requested Multiplier of Four is Appropriate. . . . . . . . . . . . . . . . . . . . . . . . 18

V.      The Individual Defendants Are Liable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TABLE OF AUTHORITIES

<u>Cases</u>

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.*,
483 U.S. 143, 151 (1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Allende v. Unitech Design, Inc.*,
2011 WL 891445 (S.D.N.Y. Mar. 15, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Baird v. Boies, Schiller & Flexner LLP*,
219 F. Supp. 2d 510, 512 (S.D.N.Y. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Barfield v. New York City Health & Hospitals Corp.*,
537 F.3d 132, 152 (2nd Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Calabrese v. CSC Holdings, Inc.*,
2009 WL 425879 (E.D.N.Y. Feb. 19, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n.*,
1996 WL 66111 (N.D. Ill. Feb. 13, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cruz v. Local Union No. 3 of the IBEW*,
34 F.3d 1148, 1160 (2d Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*D'Jamoos v. Griffith*,
340 F. App'x. 737, 741-42 (2nd Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dickerson v. TLC Lasik Centers*,
2011 WL 382443 (D.S.C. Feb. 3, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ducote Jax Holdings LLC v. Bradley*,
335 F. App'x. 392, 402 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fiore v. Kelly Run Sanitation, Inc.*,
609 F. Supp. 909, 917 (W.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Genty v. Resolution Trust Corp.*,
937 F.2d 899, 912 (3d Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gross v. Waywell*,
628 F. Supp. 2d 475, 481-82 (S.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hensley v. Eckerhart*,
461 U.S. 424, 435 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jim Billado Roofing, LLC v. Custom Copper & Slate, Ltd.*,
2010 WL 1881097 (D. Vt. May 10, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Just Film, Inc., & ors v. Merchant Services, Inc. & ors.*,
4:10-cv-01993-CW (N.D. Cal.), dkt 207. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lawson v. New York City Bd. of Educ.*,
2011 WL 1044501 (S.D.N.Y. Mar. 18, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Marshall v. Kirby*,
2010 WL 4923486 (D. Nev. Nov. 29, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Miller v. Midpoint Resolution Group, LLC*,
608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mitchell v. American Tobacco Company*,
28 F.R.D. 315, 319 (D.C. Pa 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Moreno v. City of Sacramento*,
534 F.3d 1106, 1112 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nationwide Mut. Ins. Co. v. Mortensen*,
2010 WL 5071046 (D. Conn. Dec. 7, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ne. Women's Ctr. v. McMonagle*,
889 F.2d 466, 474 (3rd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 WL 2408560 (D. Mass. Aug. 3, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Nu-Life Const. Corp. v. Bd. of Educ. of City of New York, Div. of Sch. Bldgs. of Bd. of Educ. of City of New York*,
795 F. Supp. 602, 607 (E.D.N.Y. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pludeman v. Northern Leasing Sys.*,
74 A.D.3d 420 (1st Dep't 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*R.M. Perez & Assoc., Inc. v. Welch*,
960 F.2d 534, 542 (5th Cir.1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Riordan v. Nationwide Mutual Fire Insurance Company*,
977 F.2d 47 (2nd Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Robertson v. Giuliani*,
346 F.3d 75 (2nd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Robinson v. City of Edmond*,
160 F.3d 1275, 1284 (10th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Robinson v. Keane*,
1999 WL 459811 (S.D.N.Y. June 29, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rotella v. Wood*,
528 U.S. 549, 557 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Schwartz v. Chan*,
142 F. Supp. 2d 325, 331 (E.D.N.Y. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Scott v. City of New York*,
626 F.3d 130 (2d Cir. Dec. 1, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Scott v. City of New York*,
626 F.3d 130 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Shaw v. AAA Eng'g & Drafting, Inc.*,
213 F.3d 538, 543 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sys. Mgmt., Inc. v. Loiselle*,
154 F. Supp. 2d 195 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Terminate Control Corp. v. Horowitz*,
28 F.3d 1335 (2nd Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*U.S. Football League v. Nat'l Football League*,
887 F.2d 408, 413 (2nd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*,
501 F.3d 283, 293 (3rd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Statutes</u>

N.Y. Gen. Bus. Law (GBL) §349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PRELIMINARY STATEMENT

This racketeering action to enforce accountability for misuse of our courts was settled a week before trial. Under that settlement, Plaintiffs sought attorneys' fees and expenses of about $3.5 million, a multiplier of four on their lodestar. The R&R denied the multiplier, and further slashed Plaintiffs' counsel's lodestar substantially, even though that lodestar was barely a third of Defendants' counsel's lodestar. Plaintiffs objected, pointing out that the significant public interest in deterring misuse of our court system, and in providing adequate incentive for private attorneys to take such hard cases - and litigating them aggressively for about six years - warranted a generous fee award. Further, the R&R's grounds were clear error subject to reversal.

Defendants do not dispute that they spent well over $2.3 million defending this action. Instead, they provide a misleading summary of the proceedings, strenuously attempting to whitewash their misconduct. But tellingly, they stay away from explaining inconvenient facts, such as why they insisted on dragging Plaintiffs to New York to defend against these fraudulent lawsuits.[1]

Defendants argue that the settlement amount was relatively small compared to the damages sought. But that is barely relevant, because Plaintiffs settled due to concerns about Defendants becoming judgment-proof: Defendants had been unable to pay even their monthly rent, and their monthly bank dues. And despite such dire circumstances, Plaintiffs wrenched out

_____

[1]Thus, for example, Defendants don't explain why it was reasonable to drag Ms. Serin to New York City Civil Court but dismiss the case right away when she showed up. Or why, despite having indisputable evidence that Mr. Russ was not even in the country when the leases were signed in his name, they commenced three lawsuits against him, and insisted that he come to the City Civil Court. Or why they repeatedly brought such bogus lawsuits against out-of-state residents, which evidence they desperately tried to keep away from the jury.

1

settlement sums from Defendants which were substantial by any standards.  Further, Defendants also agreed to pay Plaintiffs' attorneys' fees and expenses.

Defendants contend that their own attorneys' lodestar is irrelevant for present purposes. But they say nothing about the cases from this Circuit which have held otherwise.  Rather, they justify their scorched-earth litigation as essential to avoid a "precedential value" against "numerous potential future plaintiffs," DR25 (citation omitted).  But that is precisely the reason why a generous fee award is ***necessary*** here: as a "precedential value" against misuse of our courts.  "Waste is not in the public interest," as Defendants concede, DR21 (citation omitted). Hence, Defendants' waste of New York's judicial resources warrants a deterrent fee award.  As the Supreme Court observed, RICO is "designed to remedy economic injury" and "bring[s] to bear the pressure of 'private attorneys general' on a serious national problem for which public prosecutorial resources are deemed inadequate," *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 151 (1987).  Accordingly, Plaintiffs' objections should be allowed, Defendants' objections rejected, and the R&R should be modified to award the fees requested.[2]

<u>ARGUMENT</u>

I.    <u>The R&R's Reductions Were Improper and Excessive</u>

Plaintiffs showed that the R&R improperly excluded time spent defending Plaintiffs in the City Civil Court because Plaintiffs were "forced to defend" that action "lest they lose their"

---

[2]Defendants blithely assert that Plaintiffs' fee award should be no more than "$96,666," DO15.  Given well-settled law "that a party advocating the reduction of the lodestar amount bears the burden of establishing that a reduction is justified," *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2nd Cir. 1989), Defendants' bald assertion is too frivolous to merit comment.

2

federal claims, PO[3] (citation omitted).  **Defendants do not deny this**; rather, their only objection

is that Plaintiffs didn't present evidence that "work product" from those cases was used here.

DR28.  This is frivolous; those efforts were not just necessary, but the very foundation of this

action.  PO13-16.[4]

So also, Plaintiffs pointed out that the R&R's unilateral reduction of Mr. Chittur's and

Mr. Strutinskiy's hourly rates was baseless since those were the rates paid by regular clients;

further, the reasonableness of these rates was borne out by attorneys' affidavits and even

Defendants' counsel's billing rates.  PO16-17.  Further, Mr. Strutinskiy's videotaping the

deposition actually saved costs because he also assisted as a junior attorney at the depositions.

PO23-24.  **Defendants do not dispute any of this**.  Nevertheless, they argue that the rate

reduction was proper because some of the work could have been done by "junior" lawyers or

others, DR30.  Indeed, Defendants blithely assert that Mr. Sharma or other lawyers from other

law firms were, in fact, "available to do legal research," DR30, as if all these lawyers were

hanging around with nothing else to do.[5]  Significantly, Defendants do not dispute that Plaintiffs'

---

[3]As used herein "DO" refers to Defendant' Objections (dkt. 155); "DR" refers to
Defendants' Response to Plaintiffs' Objections (dkt. 158); and "PO" refers to Plaintiffs'
Objections (dkt. 154).

[4]Defendants cite a handful of entries totalling 4.2 hours for Mr. Chittur and 7.5 hours for
Mr. Strutinskiy which "includes" reference to other cases.  DR28 n.16.  In fact, each of these
entries listed work done for these Plaintiffs, in addition to some work done in connection with
other witnesses.  The other work done was investigation in furtherance of the RICO claims at
issue and thus, properly included.

[5]Defendants also contend that Mr. Strutinskiy's time sheets reflect fewer hours to
research, which fact somehow "undermines" Plaintiffs' claim that Mr. Chittur himself "had to do
the research."  DR29-30.  This is incomprehensible.  Nothing suggests that Mr. Strutinskiy was
sitting idly by like day laborers in Farmingville waiting for work.

counsel absorbed, as part of their overhead, several items which were separately billed out by Defendants' counsel, which only highlights the unfairness of the reduction.  PO17.

Further, the R&R's slashing due to allegedly "vague" entries was clear error because (a) no "binding standard" exists about details required in time entries, and hence (b) vagueness becomes an issue only where the time spent is "out of line."  PO9 (citing cases).  ***Defendants do not assert that the time spent by Plaintiffs' counsel was "out of line"*** (in fact, it was much less than that of Defendants).  Further, requiring details sufficient to evaluate the reasonableness of time spent on, for example, entries such as "email client" would require disclosure of privileged information, which is improper.  PO19.  Defendants proffer no response to that.

Moreover, the R&R's reduction of the time spent formalizing the settlement agreement was improper since the "waste of time" was due to Defendants' attempt to delay payment. PO20-21.  ***Defendants do not deny this***; they merely reiterate the erroneous R&R's holding.[6]

Besides, the R&R's reduction of time spent on the fee application because Plaintiffs' counsel had ***not*** billed for time spent on the fee application which ought to have been billed was counterintuitive.  PO21.  The three attorneys who worked on the case had to work on the fee application, given the need to properly document the fee application.  Despite all this, Plaintiffs' counsel's time on the fee application was "less than 7%" of the total time, which was well below average.  PO21-23.  ***Defendants do not dispute this***, but again, merely reiterate the R&R.

In sum, as the Ninth Circuit held,

> [L]awyers are not likely to spend unnecessary time on contingency fee

---

[6]Defendants' assertion that the individually signed settlement agreements "have not been delivered," DR29 n.18, is false.  They were hand-delivered on March 24, 2011, to Defendants' counsel.

> cases....The payoff is too uncertain, as to both the result and the amount of the fee....the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). *Accord, Marshall v. Kirby*, 2010 WL 4923486 (D. Nev. Nov. 29, 2010). The R&R's reductions were improper and unwarranted.

II.    Defendants' Demand For Excluding The Finkelstein Attorneys' Time Is Misconceived

Plaintiffs argued that Mr. Altman's time after November 1, 2010, and the other Finkelstein attorneys' time were contemporaneously maintained. PO24. Further, Mr. Altman's e-discovery skills were precisely why he was involved in this case, and those skills were invaluable in reviewing the 800,000 plus electronic documents produced by Defendants. PO25. Moreover, Mr. Altman's experience and skills placed him on par with "partners shouldering considerable litigation responsibilities," PO25 and his rate and time were proper.[7]

Defendants demand the entire exclusion of the Finkelstein attorneys' time for not being contemporaneously recorded. DO8. This is baseless, as seen earlier; Mr. Altmans' post-November 1, 2010 time, and the other Finkelstein attorneys' time were contemporaneous.[8]   No question exists about the contemporaneity of this time - a total of 181.3 hours and 9 hours of

---

[7]Mr. Altman billed non-legal work at $350 per hour, dkt. 143-21¶22, which is higher than the rate that the R&R awarded for him here, although he did much more than that non-legal work.

[8]Defendants' assertion that "the actual contemporaneous records were not submitted to the Court," Dkt. 155 at 8, is false. They were e-filed. Dkt. 143-22 and 143-23.

5

travel time.[9]

Moreover, a fee application under N.Y. Gen. Bus. Law (GBL) §349 should be reviewed under state rules which do not require contemporaneous time records. Thus, *Scott v. City of New York*, 626 F.3d 130 (2nd Cir. Dec. 1, 2010) is inapplicable here *stricto sensu*; in any event, it permits this Court to consider whether this should be an exception to the contemporaneous timekeeping rule under federal fee-shifting statutes.

In *Riordan v. Nationwide Mutual Fire Insurance Company*, 977 F.2d 47 (2nd Cir. 1992), the plaintiff prevailed on claims for breach of an insurance contract and violation of N.Y. Gen. Bus. Law (GBL) § 349, and the Court awarded attorneys' fees. 977 F.2d at 48. On appeal, Defendants challenged the fee award because Riordan's "attorneys did not submit contemporaneous time records." *Id.*, 53.

The Second Circuit noted that Section 349(h), GBL, allows a court to award "reasonable attorney's fees to a prevailing plaintiff." *Id.*, 53. While federal courts, under federal statutes, had required contemporaneous time-records, State courts "have specifically rejected the 'hard and fast rule that reconstructed time records can never serve as a basis for compensation' in favor of

---

[9]In this connection, the Second Circuit has held that a time-compilation created from contemporaneous records suffices:

> Local Union No. 3 claims that attorneys fees should not have been awarded herein because, *inter alia*, Davis & Eisenberg did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records. This argument is unpersuasive. A review of the submissions made by Davis & Eisenberg shows that they made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records. We believe this falls sufficiently within the meaning of "contemporaneous," and that such a practice is not contrary to the dictates of Carey.

*Cruz v. Local Union No. 3 of the IBEW*, 34 F.3d 1148, 1160 (2d Cir. 1994).

6

wider trial court discretion in evaluating fee petitions." *Id.*   Rejecting that defendants' attempt to

import federal record-keeping requirement, the Court held

> State law creates the substantive right to attorney's fees . . . a right which
> cannot be deprived by applying the contemporaneous time records rule
> adopted in this Circuit.

*Id.* (citations omitted).

   *Riordan* was expressly reiterated by the Second Circuit itself, *D'Jamoos v. Griffith*, 340 F.

App'x. 737, 741-42 (2ⁿᵈ Cir. 2009), and continues to be good law, *see, e.g., Jim Billado Roofing,*

*LLC v. Custom Copper & Slate, Ltd.*, 2010 WL 1881097 (D. Vt. May 10, 2010).[10]

   Thus, Defendants' reliance upon *Scott* 626 F.3d 130, is misplaced.  First, *Scott* did not

overrule *Riordan's* articulation of a different rule for record-keeping for attorneys' fees under

State law.  *Riordan* was not cited, mentioned, or even referred to in *Scott*, which dealt with a fee

application under FLSA, not under State law.  Thus, *Scott* is inapplicable here since the fees

sought are proper under Section 349 anyway.

   Second, in any event, *Scott* acknowledged that there could be exceptions even to the

contemporaneous records rule for federal fee-shifting.  It did not preclude this Court from

considering the totality of the evidence to find that the time was sufficiently proved.  Mr. Altman

has provided substantial documentary evidence based upon time-stamped information which

took place over a very short period of time in the conduct of this case.  Defendants do not deny

that these activities took place - activities they themselves were part of.  Thus, exclusion of his

---

[10]New York courts consider "the time and skill required in litigating the case, the
complexity of issues, the customary fee for the work, and the results achieved."  *Schwartz v.
Chan*, 142 F. Supp. 2d 325, 331 (E.D.N.Y. 2001).  The party requesting an award of attorney fees
based on reconstructed time records has the burden of providing sufficient documentation.  *Id.*

time would be wholly unjust.[11]

Mr. Altman's records suffice for present purposes.  Thus, a contemporaneous entry for every call and email would entail at least 0.10 hours each, the minimum time that Defendants concede would be appropriate, DR6.  Mr. Altman's records reflect 939 emails and 183 phone calls prior to November 1, 2010, a total of 1124 communications which support 112.4 hours. Altman has sworn that all these communications were in this case, and, during this time period, there was very little activity in the other case that Mr. Altman was associated with Mr. Chittur.

Further, Mr. Altman's time spent in the depositions were recorded contemporaneously in the depositions themselves.  Dkt. 151-1.  These reflect 44.4 hours:

| Deponent | Date | Start Time | Stop Time | Elapsed (Hours) |
|----------|------|-----------|-----------|-----------------|
| Sara Krieger | 8/12/2010 | 10:00 | 3:22 | 5.4 |
| Ken Krebs | 9/20/2010 | 10:32 | 11:23 | 0.9 |
| Joseph Sussman | 10/12/2010 | 10:10 | 6:53 | 8.6 |
| Sam Buono | 10/14/2010 | 9:06 | 2:40 | 5.6 |
| Richard Hahn | 10/25/2010 | 10:43 | 3:59 | 5.3 |
| Sara Krieger | 10/26/2010 | 10:21 | 4:29 | 6.2 |
| Ricky Brown | 10/27/2010 | 10:10 | 12:57 | 2.8 |
| Jay Cohen | 10/28/2010 | 10:17 | 5:20 | 7.1 |
| Stan Smith | 10/29/2010 | 11:15 | 1:42 | 2.5 |

Adding the travel time of 31.5 hours (3.5 hours per trip), Dkt. 151 at 5, that amounts to 75.9 hours.  This excludes the deposition preparation time completely, and provides an alternative basis for his time.

Defendants do not deny that Mr. Altman's experience - having taken over 50 depositions

---

[11]*Scott*'s reversal of Judge Sheindlin's decision was based upon her seemingly inconsistent review of the fee application.  On the one hand, she expressed concerns about the documentary backup for the fee application.  On the other hand, she gave the applicant the benefit of the doubt.  This troubled the Second Circuit.

as lead counsel in several major litigations, for example - is equivalent to that of a litigation partner.  PO25.  Nevertheless, in an unfortunate *ad hominem* attack, they seek a reduction based on where Mr. Altman attended law school.  "These issues were not raised before the Magistrate Judge and therefore were not addressed by him; accordingly, they may not properly be deemed 'objections' to any finding or recommendation made in the Report and Recommendation." *Robinson v. Keane*, 1999 WL 459811 (S.D.N.Y. June 29, 1999); *accord, Lawson v. New York City Bd. of Educ.*, 2011 WL 1044501 (S.D.N.Y. Mar. 18, 2011).

That apart, Defendants cite neither precedent nor principle suggesting that an attorneys' law school is even relevant for present purposes.  If anything, by citing this factor, Defendants appear to concede that Mr. Altman's rate is not dependent entirely on how long he has been *licensed* as an attorney, but also on other factors.  In that light, Mr. Altman's technical expertise in e-discovery and document review, and his considerable experience in depositions abundantly justify the rate of $425, as clear from the declarations from attorneys Grossman, Edgar, and Monsour.  Dkt. 143-26.

Defendants themselves had not objected to Mr. Altman's admission *pro hac vice* in this case.  Dkt 78, 80.  Nevertheless, they now argue that Mr. Altman is not licensed to be a member of the New York Bar.  But tellingly, they do not challenge the quality of his work.  Indeed, Mr. Altman's track record with several major MDL proceedings at responsible levels leave no scope for such a challenge.

III.   <u>Defendants' Counsel Fees Are a Relevant Benchmark</u>

Plaintiffs asserted that Defendants' $2.3 million in counsel fees were "the best available comparable standard," PO26 (citation omitted).  Defendants only response is a disingenuous

misquotation from one of the cases Plaintiffs cited.

*Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n.*, 1996 WL 66111 (N.D. Ill. Feb. 13, 1996), PO12, considered that plaintiff's motion to compel production of that antitrust defendants' counsel's time-sheets.  The Court noted that "***In an attorney's fee petition arising from an antitrust suit,*** it is not an abuse of discretion to find that a defendant's costs and hours are irrelevant" to the antitrust plaintiffs' fee application.  Nevertheless, that Court went on to hold precisely that very information to be not just relevant, but the "best available comparable standard" even in that antitrust case because that litigation was "long and complex, involving both unique facts and novel questions of law."  1996 WL 66111.

Defendants disingenuously conceal the qualifying portion of that quotation emphasized above.  DR25.  The Court's reference to antitrust cases is of tremendous significance because in 1996, those cases could have been commenced very easily under the liberal pleading standards of that  time.  That is far from the truth in RICO cases, which have always required detailed pleading under Rule 9(b) and otherwise.  Indeed, several judges of this Court mandated, in their individual rules of practice, a specially tailored "RICO Statement" with the very filing of complaints alleging RICO claims.  The latest RICO complaint against Defendants and their cohorts filed in federal court in California is also illustrative.  ***Equally important, Defendants do not dispute that this action was also "long and complex, involving both unique facts and novel questions of law."***

Defendants also argue that it would have been "irresponsible . . not to defend" this case vigorously, DR25.  It would have been equally irresponsible for Plaintiffs' counsel not to prosecute this case aggressively.  Moreover, would it have been more responsible for Defendants

*not* to have misused the City Civil Court with their bogus lawsuits?  This lawsuit would never

have been brought, and there would have been no occasion for Defendants to defend this lawsuit,

responsibly or otherwise.

Defendants say nothing about Plaintiffs' other cases which reiterated that "the opposing

side's attorneys' fees may be a relevant factor in determining reasonableness." *Nationwide Mut.*

*Ins. Co. v. Mortensen*, 2010 WL 5071046 (D. Conn. Dec. 7, 2010); PB (dkt 142 at 13).  As the

Tenth Circuit observed, "Evidence of the hours expended by opposing counsel may be helpful in

determining whether time expended on a case was reasonable," *Shaw v. AAA Eng'g & Drafting,*

*Inc.*, 213 F.3d 538, 543 (10th Cir. 2000) (*quoting Robinson v. City of Edmond*, 160 F.3d 1275,

1284 (10th Cir. 1998)).  Defendants' attorneys' lodestar (and risk-free guaranteed payment) of at

least $2.3 million abundantly justifies the award requested here.

IV.     A Generous Award Is Appropriate In Order to Deter Defendants' Misconduct, and to
        Incentivize Private Attorneys To Take Such Difficult Cases

The fee award herein should be informed by the significant statutory purposes underlying

RICO and Section 349.  As another Court summarized:

> the attorneys' fee clause of § 1964(c) was designed to encourage private
> litigants to promote the policies underlying the substantive legislation. As
> we recently observed, "Congress provided fee shifting to enhance
> enforcement of important civil rights, consumer protection, and
> environmental policies. By providing competitive rates we assure that
> attorneys will take such cases, and hence increase the likelihood that the
> congressional policy of redressing public interest claims will be
> vindicated." *Student Public Interest Research Group of New Jersey, Inc. v.*
> *AT & T Bell Laboratories*, 842 F.2d 1436, 1449-50 (3d Cir.1988).

*Ne. Women's Ctr. v. McMonagle*, 889 F.2d 466, 474 (3rd Cir. 1989).  "Congress obviously had

much more in mind than merely providing compensation for individual RICO victims when it

authorized RICO civil actions." *Calabrese v. CSC Holdings, Inc.*, 2009 WL 425879 (E.D.N.Y.

Feb. 19, 2009) (*quoting Genty v. Resolution Trust Corp.*, 937 F.2d 899, 912 (3d Cir.1991)).

*Accord, Gross v. Waywell*, 628 F. Supp. 2d 475, 481-82 (S.D.N.Y. 2009).  Hence, courts have

repeatedly rejected the suggestion that "the award of attorneys' fees should be proportional to the

damage award in a civil RICO case."  *Ducote Jax Holdings LLC v. Bradley*, 335 F. App'x. 392,

402 (5th Cir. 2009) (*quoting R.M. Perez & Assoc., Inc. v. Welch*, 960 F.2d 534, 542 (5th

Cir.1992)).

A.       *Plaintiffs Achieved a Remarkable Result:  Defendants Paid over 2,000% of Their Own Settlement Offer of 2009, And That Too to Plaintiffs Who Defendants Had Sought to **Collect** Money From*

Defendants (a) paid $295,000 to Plaintiffs, the very people it had sued to collect money

from, <u>and</u> (b) agreed to pay Plaintiffs' attorneys' fees and expenses; <u>after</u> (c) employing at least

twenty-four attorneys from three big law firms, <u>and</u> (d) spending at least $2.3 million in

attorneys' fees and expenses.

As late as October 2009, Defendants had offered $12,000 cumulatively to all Plaintiffs,[12]

Dkt 143 at 6 n.6. Thus, Defendants eventually paid over 2000% of what they had themselves

offered.  Indeed, when the recovery is considered against what Defendants had sought to ***collect***

from Plaintiffs, the percentage is significantly higher than even this.  Defendants' attempt to

belittle Plaintiffs' success is facile.

B.       *Defendants' Mischaracterization Of the Case is Baseless, And In Any Event, Irrelevant*

While it is not necessary for the Court to try the settled case, Defendants indulge

---

[12]Further, that offer made no provision for Plaintiffs' attorneys' fees and expenses, so that the entire $12,000 would have been insufficient to meet litigation expenses alone.

12

themselves with misleading and self-serving mischaracterization of this case and what actually transpired.  Thus, Defendants' tedious explanations do not bother addressing the critical issues here.  For example, why they brought the lawsuit against Ms. Serin after issuing a general release, why they refused to dismiss it when she repeatedly requested that, and why, when she actually showed up in the New York Court, they readily dismissed their claims against her with prejudice.  Or why, although they had Mr. Russ's passport entries, ATM receipts, and affidavits attesting to his absence from the United States when the alleged leases were signed in his name, they nevertheless commenced three lawsuits, why they insisted that he come to Court in New York, and why, when he did come, they had no evidence to present to the Court.

Far from having "uncovered <u>no evidence</u>" of wrongdoing, DR20 (emphasis in original), Plaintiffs uncovered evidence of sustained wrongdoing precisely of the kind at issue.  While the fraudulent lawsuits against Plaintiffs alone would have sufficed to show Defendants' pattern of racketeering - which was, of course, the basis for this Court's dismissal of Defendants' 12(b)(6) motion  - the other evidence that Plaintiffs uncovered was what Defendants desperately tried to keep out of trial, *infra*.

C.    *Plaintiffs Accepted the Settlement Due to Defendants' Tottering Finances*

 While Plaintiffs were confident of their trial prospects, they chose to settle due to the serious likelihood of securing an unenforceable paper judgment for millions of dollars. Defendants financial situation was desperate, as clear from Plaintiffs' pending motion, dkt. 157. Defendants have been unable to pay their monthly rent to their landlord.  Dkt. 150-3.  Since June 2010, Defendants have also defaulted on their monthly dues to their bank.  Dkt. 150-4.

Further, Defendants faced significant liability in *Pludeman v.  Northern Leasing Sys.*, 74

13

A.D.3d 420 (1st Dep't 2010), where a class has been certified and summary judgment granted for the class, 27 Misc.3d 1203 (N.Y. Sup.  2010).  Under the circumstances, Plaintiffs acceptance of the settlement offer was imminently reasonable.

In any event, "[N]othing in the statute or its legislative history requires, or even suggests, that attorney's fees should be proportional to damage awards ..."  *Nu-Life Const. Corp. v. Bd. of Educ. of City of New York, Div. of Sch. Bldgs. of Bd. of Educ. of City of New York*, 795 F. Supp. 602, 607 (E.D.N.Y. 1992), *aff'd sub nom. Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2nd Cir. 1994).  *Accord, United Auto. Workers Local 259 Soc. Sec. Dept. v. Metro Auto Ctr.*, 501 F.3d 283, 293 (3rd Cir. 2007).  Under RICO, reasonable "costs and attorneys fees are mandatory."  *Dickerson v. TLC Lasik Centers*, 2011 WL 382443 (D.S.C. Feb. 3, 2011); *accord Sys. Mgmt., Inc. v. Loiselle*, 154 F. Supp. 2d 195 (D. Mass. 2001) (attorneys' fees of $180,737 awarded, although damages were barely $1,018.56).

D.     *Plaintiffs Achieved Significant Success*

Defendants assert that Plaintiffs "achieved little success," citing the *ad damnum* clause in the complaint.  DR14.  But the *ad damnum* clause is largely irrelevant for present purposes.  *See* Wright & Miller, *Federal Practice & Procedure*, §1259 ("Specific Allegation of Amount of Damages")[13].  Much more important for present purposes is the "quantity and quality" of success, *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 152 (2nd Cir. 2008), a case which supports Plaintiffs and which Defendants misread completely.

---

[13]*See, e.g., Mitchell v. American Tobacco Company*, 28 F.R.D. 315, 319 (D.C. Pa 1961) (striking clause as "dollars claimed impertinent and immaterial").  *Accord, Fiore v. Kelly Run Sanitation, Inc.*, 609 F. Supp. 909, 917 (W.D. Pa. 1985) (same).

14

*Barfield* was a FLSA collective action.  That plaintiffs' counsel failed in obtaining collective action certification because he "could not make even the 'modest factual showing'" required.  *Id*. Subsequently, that plaintiff obtained summary judgment, and damages of $1,774.50, on which the Court awarded attorneys' fees of $49,889, ***twenty-five times the damages awarded***.

That fee award was nonetheless a substantial reduction from that sought by that plaintiff's counsel.  This was because that "'plaintiff's primary aim in [that] litigation,' as reflected in both the 'complaint and in the first four months of litigation before this Court,' was collective action certification," 537 F.3d at 140.  Hence, a reduction was necessary for policy reasons:

> Indeed, plaintiff's failure to certify a collective action precluded declaratory and injunctive relief, which was sought on behalf of individuals, unlike plaintiff, who were still working for defendants. As noted above, the district court was rightly concerned that not reducing the fee award in these circumstances would pose two risks: (a) decreasing the incentive for plaintiffs' lawyers vigorously to litigate collective action certification, and (b) encouraging plaintiffs' lawyers to file collective action-based claims even where there is little basis for doing so.

537 F.3d at 152.

In other words, the *Barfield* reduction was in order to discourage pusillanimous, and encourage aggressive, litigation in collective actions.  That has nothing to do with the *ad damnum* clause in the complaint.[14]

_____

[14]*Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510, 512 (S.D.N.Y. 2002), DR15, did not involve a settlement but a Rule 68 offer of judgment.  Obviously different considerations apply to such offers.  As the Court held, "Faced with the Rule 68 offers of judgment and the prospect of having to pay costs if they did not fare better than $37,500 each, plaintiffs accepted the offers of judgment." 219 F. Supp. 2d at 524.  This is, of course, apart from the fact that, unlike *Baird,* the evidence here was damning against Defendants, and Plaintiffs would have savored a jury trial victory but had to bow to the reality of Defendants' finances.

15

Defendants ignore that those very considerations support the instant application.  This was never brought or intended to be a class action.  The "degree of success" is evident by the fact that Plaintiffs' counsel turned the tables on Defendants who landed up paying instead of collecting, by what Defendants spent to defend themselves, by the settlement offer they made of $12,000,[15] by their agreement to pay 25 times that amount and do so at a time when they are unable to even make their rent payment - and by their desperate attempts to keep the terms of this settlement confidential.  In this perspective, the settlement may be fairly characterized as a spectacular success.  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (attorneys' fees should not be reduced "[w]here [plaintiff] has obtained excellent results.").

Defendants' reliance upon *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389, 395 (W.D.N.Y. 2009), DR21, is misconceived.  *Miller* was an FDCPA action, where the Plaintiff obtained statutory damages.  However, much attorney time was expended on discovery of "actual damages," *i.e.*, emotional injury, although no "objective evidence" existed to support significant amounts for this claim, and plaintiff was "(and should have expected to be) largely unsuccessful,"  608 F. Supp. 2d at 396, in light of settled law.  That was the wasteful discovery effort which that Magistrate Judge referred to in the passage relied upon by Defendants.

Here, in sharp contrast, Defendants do not and cannot point to any such wasteful discovery.  Defendants had no defense to their dragging, for example, Ms. Serin from

---

[15]Defendants misleadingly refer to Plaintiff Kettler as having settled her claims for "$0." DO13, DR14-15.  In fact, Plaintiffs' counsel had not been able to communicate with Kettler for about two years.  The Court may recall that at the very inception of discovery, Plaintiffs' counsel had sought dismissal of her claims without prejudice.  Defendants' counsel agreed to consider that, but that issue was never resolved.  In any event, Ms. Kettler is not a part of this settlement at all - and Defense counsel certainly knows that.

Washington, D.C., to New York only to dismiss their claims against her - and repeating this misconduct with Mr. Russ from Florida, and many, many others.  Indeed, ***Defendants admit that they sought to exclude evidence of their misconduct concerning their other victims***.  DR20. That misconduct was very much part of the racketeering scheme at issue, and Defendants' contention is premised on a cascade of highly dubious assumptions - such as, for example, that this Court's grant of Defendants' motion to exclude evidence of other victims was certain.  Quite the contrary, that motion was all but certain to be denied.

In fact, Defendants' lucrative racket is clear from the 139-page 688 paragraph "Second Amended Class Action Complaint" filed in the federal court in California on March 18, 2011, which this Court can take judicial notice of.  Just Film, Inc., & ors v. Merchant Services, Inc. & ors.[16], 4:10-cv-01993-CW (N.D. Cal.), dkt 207.  Defendants' racket was being buttressed by aggressive misuse of our judicial system, and calls for deterrence.  As the very case cited by Defendants held,

> "success must be measured not only in the amount of the recovery but also in terms of the principle established and the harm checked.... Several courts have considered the deterrent effect of the litigation to be an important consideration when evaluating the 'degree of success' obtained by a particular plaintiff". *Zagorski v. Midwest Billing Services, Inc.*, 128 F.3d 1164, 1167, n. 6 (7th Cir.1997). Although mere technical violations of the FDCPA do not warrant a substantial award of attorneys' fees, "truly abusive or deceitful debt collection, credit reporting, and similar practices ... may establish a foundation for larger attorney's fee awards." *Carroll [v. Wolpoff & Abramson*, 53 F.3d 626,] 630 [(4th Cir. 1995)]

608 F. Supp. 2d at 396.  The case for "larger attorneys' fee awards" for violations of the

---

[16]Defendants in that case include Northern Leasing and its affiliates, the individual defendants Jay Cohen and Sara Krieger, and their attorney Joseph I. Sussman.  That complaint is annexed hereto as "Ex. 1" for ready reference.

17

racketeering statute - which violations are much more serious than "mere technical violations of the FDCPA" - is **much** stronger.  *See also Allende v. Unitech Design, Inc.*, 2011 WL 891445 (S.D.N.Y. Mar. 15, 2011) ("attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights").

E.    *The Requested Multiplier of Four is Appropriate*

Plaintiffs showed that our courts routinely award a multiplier where a "complex case" has been litigated "under a contingency fee arrangement," PO29.  If counsel could get only their regular risk-free hourly rate if they prevailed and nothing if they lost, no incentive exists for taking such difficult cases and preventing misuse of our court system.  *Id*.  Multipliers are determined by "quality and risk."  Under these criteria, a multiplier of four is appropriate here. PO29-31.  The R&R's rejection on the ground that this action did not involve a "class action or common fund" was error, since multipliers are not restricted to those types of cases.  PO31.

Defendants do not contest the quality of Plaintiffs' counsel's representation, or the substantial risks taken by Plaintiffs' counsel.  That suffices for present purposes.  *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560 (D. Mass. Aug. 3, 2009) ("Plaintiffs' counsel have been excellent in this complex, hard-fought litigation . . ;" multiplier of 8.3).

Defendants argue that public policy interests were not vindicated because the Settlement's confidentiality provisions ensure that "the public will likely never be aware of the terms of the settlement."  DR24.  That is absurd, since Defendants themselves have revealed in their public filings the precise amounts paid to Plaintiffs, which are far from nominal.  Moreover,

18

the attorneys' fee award is perhaps a lot more important since that is what would incentivize private attorneys.  And nothing concerning the attorneys' fee award is confidential.

Defendants also contend that multiplier is "not available in this type of case", DR24, because the claims are under RICO and Section 349.  But neither precedent nor principle bars a multiplier for these cases.  Indeed, if anything, given the tremendous significance of these statutes, a multiplier is abundantly justified.[17]  After all, as the Supreme Court observed, Congress' intention underlying RICO was "not merely [to] compensate victims but turn them into prosecutors ... dedicated to eliminating racketeering activity." *Rotella v. Wood*, 528 U.S. 549, 557 (2000).

V.       The Individual Defendants Are Liable

Plaintiffs showed that R&R erred in absolving the Individual Defendants of liability for attorneys' fees and expenses relying upon the December 10th order.  But that order merely held that the Agreement's provision which barred a challenge to our entitlement to attorneys' fees and expenses applied only to Northern Leasing,.  The Settlement Agreement was silent on the issue, and the R&R improperly rewrote the Agreement.  Since that Agreement was "So Ordered" by the Court, Plaintiffs were the "prevailing party" under *Robertson v. Giuliani*, 346 F.3d 75 (2nd Cir. 2003), and its progeny, PO32, and thus, the Individual Defendants were jointly and severally liable.  PO31-34.

Defendants do not even attempt to argue that *Roberson* is somehow inapplicable.  Instead, they merely reiterate the R&R, which is unavailing.

---

[17]Defendants correctly observe that the Court should not encourage "wasteful litigation".  It is Defendants' wasteful litigation in the City Civil Court that needs to be discouraged, and which will be deterred by a generous fee award here.

<u>CONCLUSION</u>

The Court should modify the Magistrate Judge's Report and Recommendation, and award attorneys' fees and expenses of $3,499,974, and hold all the Defendants jointly and severally liable for the said amount.

Dated: New York, NY                               **CHITTUR & ASSOCIATES, P.C.**
      April 1, 2011

                                                             Sd/

                            _____
                            By:  Krishnan Chittur, Esq. (KC 9258)
                            286 Madison Avenue Suite 1100
                            New York, New York 10017
                            Tel: (212) 370-0447
                            Attorneys for Plaintiffs