UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
MELINDA SERIN, JUDSON RUSS, LONG SOUI LIM,      :
PERI KETTLER, GORDON REDNER, and THOMAS         :
J. SMITH,                                       :      06 CV 1625 (SCR)
                                                :
                              Plaintiffs,        :
                                                :
            -against-                           :
                                                :
NORTHERN LEASING SYSTEMS, INC., JAY             :
COHEN, RICH HAHN, and SARA KRIEGER,             :
                                                :
                              Defendant.         :
-------------------------------------------------------------------- X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' OBJECTIONS TO CERTAIN PORTIONS OF THE REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE OF FEBRUARY 24, 2011**

MOSES & SINGER LLP
*Attorneys for Defendants*
405 Lexington Avenue
New York, New York 10174
(212) 554-7800 (telephone)
(212) 554-7700 (facsimile)

Of Counsel:

Robert D. Lillienstein, Esq.
John V. Baranello, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT.............................................................................................................................. 1

I.       PLAINTIFFS' LACK OF SUCCESS WARRANTS  A REDUCTION IN THE
         RECOMMENDED AWARD ........................................................................................ 1

II.      THE USE OF RECONSTRUCTED TIME RECORDS.................................................... 6

CONCLUSION.......................................................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Baird v. Boies, Schiller & Flexner LLP,*
  219 F. Supp. 2d 510 (S.D.N.Y. 2002)................................................................1, 2

*F.H. Krear & Co. v. Nineteen Named Trustees,*
  810 F.2d 1250 (2d Cir. 1987).......................................................................7

*Farrar v. Hobby,*
  506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)...................................1

*Hensley v. Eckerhart,*
  461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)...................................1

*Kassim v. City of Schenectady,*
  415 F.3d 246 (2d Cir.2005).............................................................................1

*Maurizio v. Goldsmith,*
  230 F.3d 518 (2d Cir. 2000)..........................................................................9

*Miller v. Midpoint Resolution Group, LLC,*
  608 F. Supp. 2d 389 (W.D.N.Y. 2009)...........................................................2

*Riordan v. Nationwide Mutual Fire Ins. Co,*
  977 F.2d 47 (2d Cir. 1992).........................................................................7, 8

*Scott v. City of New York,*
  626 F.3d 130 (2d Cir. 2010)......................................................................6, 7, 9

### STATE CASES

*Cruz v. NYNEX Information Resources,*
  263 A.D.2d 285, 703 N.Y.S.2d 103 (1st Dep't 2000).......................................9

*Northern Leasing Systems, Inc. v. Turner,*
  2008 N.Y. Slip Op. 32954, 2008 WL 4819601 (N.Y.Sup., New York County, Oct
  15, 2008) .......................................................................................................9

*Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank,*
  85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995) ...........................................................9

*Sheth v. New York Life Ins. Co.,*
  273 A.D.2d 72, 709 N.Y.S.2d 74 (1st Dep't 2000)............................................9

## PRELIMINARY STATEMENT

Defendants, Northern Leasing Systems, Inc. ("Northern"), Jay Cohen, Rich Hahn and Sara Krieger (the "Individual Defendants" and together with Northern, the "Defendants"), by their attorneys Moses & Singer LLP, submit this reply memorandum of law in response to Plaintiffs' Memorandum of Law In Opposition to Defendants' Objections[1] (dkt. 159) and in further support of Defendants' Objections To Certain Portions of the Report and Recommendation (the "Report") of Magistrate Judge of February 24, 2011 (dkt. 153) ("Plaintiffs' Mem.").

## ARGUMENT

### I.   PLAINTIFFS' LACK OF SUCCESS WARRANTS A REDUCTION IN THE RECOMMENDED AWARD

Plaintiffs don't dispute that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).  In arguing that they achieved "success," Plaintiffs distort the controlling case law, rely on blatantly false accusations that were alleged in their complaint but which were never supported, and for the first time, manufacture a rationalization for their settlement that was never even mentioned to the Magistrate.

Plaintiffs do not dispute that a District Court in the Second Circuit "is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought". *Kassim v. City of Schenectady*, 415 F.3d 246, 254 (2d Cir.2005).[2]  Under that standard, Plaintiffs were clearly not successful.  Indeed, they were less successful than the Plaintiffs in *Baird v. Boies, Schiller & Flexner LLP*, 219 F. Supp. 2d 510 (S.D.N.Y. 2002), who recovered 3% of the amount sought in their Complaint, and where the Court reduced the fees sought by 60%.  Plaintiffs

---

[1]   Plaintiffs' memorandum is referred to herein as "Plaintiffs' Mem."

blithely try to distinguish *Baird*, arguing that *Baird* involved a Rule 68 offer of judgment, and that different considerations apply in that case, due to the risk of having to pay costs if the *Baird* plaintiffs did not obtain more than the amount offered.  While Plaintiffs are correct that different considerations apply, those considerations support Defendants' argument that Plaintiffs' fees should be reduced substantially in this case, not vice versa.

The *Baird* plaintiffs risked having to pay costs if they did not obtain more than the amount offered.  Despite this added incentive – which arguably justifies accepting a smaller settlement – the Court held that their acceptance of an offer of judgment equal to just 3% of the amount they sought in their Complaint <u>warranted a fee reduction of 60%</u>.  219 F.Supp.2d at 523-525.  Here, even without any risk that they would have to pay the Defendants' costs, Plaintiffs accepted a settlement that is <u>less than 3%</u> of the amount demanded in their Complaint (before trebling or punitive damages), and <u>less than 1%</u> of the amount they demanded after trebling.  Moreover, they recovered <u>nothing</u> from three of the four defendants that they sued.  One of the Plaintiffs recovered <u>nothing</u> from any of the four Defendants that they sued.  Using the rationale of *Baird*, the fact that Plaintiffs settled for a very small amount compared to what they sought in their Complaint, without any risk of having to pay Defendants' costs, warrants a reduction to Plaintiffs' lodestar in an amount even greater than the 60% reduction in *Baird*.

Plaintiffs attempt to distinguish *Miller v. Midpoint Resolution Group, LLC*, 608 F. Supp. 2d 389, 396 (W.D.N.Y. 2009) by claiming that *Miller* involved wasteful discovery, and that "Defendants do not and cannot point to any such wasteful discovery" in this case. Plaintiffs' Mem., p. 16.  That would be laughable were it not so distressing.

As discussed in Defendants' Memorandum of Law submitted in opposition to Plaintiffs' objections (dkt. 158, at pp. 14-16), hardly any of the time that Plaintiffs forced Defendants to put

---

[2]   *See also* cases cited at pages 8-9 of Defendants' Objections (dkt. 155) and at pages 8-9 of

into discovery was aimed at proving the claims that were asserted by the Plaintiffs in their
Complaint.  Most of the discovery was addressed to issues that, while discoverable under the
broad definition of relevance under Rule 26, were entirely unrelated to the claims asserted in this
case.  If Plaintiffs had been able to uncover *any evidence* to support their claim that Northern had a
pattern and practice of commencing lawsuits based on documents that it knew to be forged, one
would expect that Plaintiffs would have referred to at least one piece of that evidence in one of the
four briefs that they have now filed in connection in their fee application in this case.  But they
haven't.  Not one fact.  Instead, they mention only two of the plaintiffs – Ms. Serin, and Mr. Russ,
and in so doing, they misrepresent the facts.

In the case of Ms. Serin, they ask why Northern brought a lawsuit against her after issuing
a general release.  What they hide is the fact that Serin's aunt, unbeknownst to Northern, purported
to make a payment in full by credit card, only to reverse that payment after Northern was induced
by the payment to issue a release.  What they also hide is that Ms. Serin presented no evidence of
forgery to Northern until after Northern made the decision to sue, and that the evidence she
presented was of dubious veracity in light of the admissions contained in the affidavit of forgery
that she submitted as "proof" of forgery.  In that affidavit, she claimed that she was aware that her
aunt had opened a business using Serin's name, and a bank account in Serin's name, suggesting
that Serin had a connection to the business that leased equipment from Northern that she as well.
Those facts, coupled with the fact that numerous payments were made to Northern by someone
claiming to be Serin, led Northern to question Serin's forgery claim and seek a ruling from a
court.[3]

---

Defendants' Response to Plaintiffs' Objections (dkt. 158).

[3]   The attorney who appeared in Civil Court representing Northern was unaware that a release had
been issued earlier in response to payment, or that the payment had been reversed.  When presented with
the release in Court, rather than engage in what would have been frivolous litigation, the attorney agreed to
discontinue the case voluntarily, not knowing that the release had been fraudulently obtained.

Plaintiffs' Memorandum also makes a few passing references to Mr. Russ, claiming that Northern had to know that Russ's leases were forged because Russ was out of the country at the time that the leases were signed.  What they hide from the Court is the fact that Russ admitted that his employees regularly signed his name to business documents, including a check that was issued to Northern when an ACH payment was refused.  At the time it sued, Northern had reason to believe that the leases were signed either by Russ or by one of Russ's employees, with Russ's approval, because Northern had received payments from Russ's business for over a year without any complaint about forgery, and Northern received updated banking information from Russ's bookkeeper when an ACH payment had been refused.  None of these facts is consistent with a claim that the leases were forged.

It is telling that Plaintiffs' Memorandum makes no reference to the facts relating to any of the other Plaintiffs, or to any other lessee who was allegedly sued by Northern based on documents that Northern knew had been forged.  The reason why is clear.  No such evidence was uncovered in this case.  No such evidence exists.

As noted above, Plaintiffs sought wide ranging and ultimately useless discovery on issues that were unrelated to claims asserted in the Complaint.[4]  For example, they sought and obtained discovery regarding charges for property taxes, property tax filing fees, and insurance, which had absolutely nothing to do with the claims in this case, but which is directly related to claims that Plaintiffs have tried to assert in a case called *Gagasoules v. MBF Leasing*, LLC, 08 CV 2409 (ADS), which was brought by Mr. Chittur's firm against an affiliate of Northern's in the Eastern District of New York.[5]  They also sought discovery of every type of complaint made by any lessee

---

[4]    Ultimately, Northern moved *in limine* to preclude Plaintiffs from introducing such evidence.  (dkt. 130, 132).  Plaintiffs settled two days after that motion was filed.

[5]    In the *Gagasoules* case, the Complaint originally asserted 16 causes of action on behalf of a five named plaintiffs and a putative class.  At the close of discovery, in which Mr. Chittur and Mr. Altman forced Northern to engage in a massive amount of wasteful class discovery, all but one claim for breach of

concerning Northern, either to Northern, to any Better Business Bureau, or to any Attorney General's office, regardless of whether the complaint had anything to do with a forgery, or whether there was any factual support for the complaint.  They sought emails sent and received by every Northern employee to any of the equipment vendors who dealt with any of the Plaintiffs, whether or not those emails had anything to do with the Plaintiffs, and whether or not they contained any reference to forgeries.  They sought personnel records and W-2s for a variety of NLS personnel, and obtained performance reviews for 47 different Northern employees, regardless of whether they had anything to do with the Plaintiffs' transactions.  They sought and obtained evidence of every payment made to each of the vendors who dealt with the plaintiffs in this case.

We urge the Court to look closely at Plaintiffs' submissions in this case.  There is nothing in any of those submissions to even suggest that any of the discovery that they forced Northern to provide produced anything of value to Plaintiffs' case.  Nothing.  The Court has not heard one word from Plaintiffs' counsel about how they were going to prove that Northern had a pattern and practice of commencing cases based on documents that they knew to be forged.  Their silence about what they were actually going to be able to prove should not be covered up by facile claims that the underlying facts are irrelevant to their fee application, or that the Court should disregard the facts and compensate them based on the amounts that Defendants had to spend to deal with their wasteful discovery tactics.  Plaintiffs' Counsel should not be rewarded for a waste of judicial

---

contract was dismissed and Plaintiffs never moved to certify a class as to that claim.  Rather, they wrote to the Court on December 17, 2010, acknowledging that there was probably no basis for federal court jurisdiction (*id.* at dkt. 141), and then sought leave to serve an amended complaint in which they seek to assert claims related to property taxes, property tax filing fees, and insurance.  *Id.* at dkt. 128-3.

resources and for forcing Defendants to engage in needless and ultimately useless discovery. Certainly, they should not be incentivized to bring another wasteful case like this.[6]

Plaintiffs try to justify their acceptance of a small settlement by claiming that Plaintiffs chose to settle due to "defendants' tottering finances."  Plaintiffs' Mem., p. 13.  Interestingly, Plaintiffs never mentioned this excuse to the Magistrate as the reason why they settled for such a small sum.  Clearly, this most recent rationalization should not overcome the fact that Plaintiffs recovered so little in this case.

Finally, Plaintiffs' Memorandum also refers to a recently filed complaint in an unrelated action now pending in the Northern District of California, *Just Films, Inc. v. Merchant Services, Inc.*, 10 CV 01993 (W.D.Cal).  Of course, the unsubstantiated allegations of a Complaint in an unrelated action are entirely irrelevant to the claims made in this case.  This type of smear tactic is indicative of the tactics that Plaintiffs' Counsel employed in this case, and is the primary reason why Northern made a motion *in limine* to exclude other similar unsubstantiated allegations in this case.  (See dkt. 132).  It is clear that Plaintiffs and their Counsel were going to try to use these smear tactics to improperly influence the jury, just as they are using them here to try to improperly influence this Court.

II.    **THE USE OF RECONSTRUCTED TIME RECORDS**

Plaintiffs apparently concede that the lack of contemporaneous time records from the Finkelstein attorneys dooms their claim for attorneys' fees, at least to the extent that those fees are awarded under RICO.  Although Plaintiffs argue that *Scott v. City of New York*, 626 F.3d 130 (2d Cir. 2010) allows for exceptions to the hard and fast rule requiring contemporaneous time records

---

[6]    At page 18 of their memorandum of law, Plaintiffs' Counsel show their true colors by admitting that these cases have little to do with the merits of a particular plaintiffs' claim, or about acting as private attorneys general, and much to do with the prospect of a large attorneys' fee award.  ("Moreover, the attorneys' fee award is perhaps a lot more important since that is what would incentivize private attorneys.") (emphasis added).  This is clearly not the type of incentive that Congress had in mind when authorizing the award of attorneys' fees under RICO.

in the Second Circuit, they fail to acknowledge that the exceptions suggested by the Court of Appeals are quite limited – "such as where the records were consumed by fire or rendered irretrievable by a computer malfunction before counsel had an opportunity to prepare his application."  626 F.3d at 134.   Plaintiffs do not suggest that any facts exist that would warrant an exception that would be valid under *Scott*.  No such facts were before the Magistrate, and none are before this Court.

As an alternative, Plaintiffs argue that they should be allowed to use reconstructed time records because the rule requiring contemporaneous time records does not apply to attorneys' fee claims arising under State law, such as GBL §349, *citing Riordan v. Nationwide Mutual Fire Insurance Co.,* 977 F.2d 47 (2d Cir. 1992).   This argument is disingenuous.  Throughout this case, Plaintiffs focused almost entirely on their RICO claims, and the GBL §349 claim was treated as an afterthought.  To permit an award of fees based on reconstructed time records, the Court would have to assume that all of Plaintiffs' counsel's time charges are attributable to GBL §349, which they clearly were not.

Even if the Court is inclined to credit a portion of the fees sought by Plaintiffs' counsel to the State law claim, a reduction of not less than 2/3 is warranted.  Plaintiffs asserted three separate Counts that permit recovery of attorneys fees in this case – two RICO claims, and one claim under GBL §349.  (dkt. 1).  Because it is impossible to make an accurate allocation of the fees expended on each claim based on Counsel's often vague and non-descriptive time entries, the Court should allocate 2/3 of the fees charged by the Finkelstein attorneys to the RICO claims, and 1/3 of the fees charged to the GBL §349 claim.  *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2nd Cir. Jan 20, 1987) (allocating 1/3 of fees to counterclaims for which attorneys' fees were not recoverable).  Because *Scott* requires the elimination of the fees associated with the RICO claim, the fees charged by the Finkelstein attorneys should be reduced by a minimum of

2/3.[7]  That amount should be further reduced to take into consideration the vague time entries,

block entries containing multiple tasks, time entries in increments of whole hours, redundant time

entries, and unnecessary work done after the settlement was reached, as found by the Magistrate.

(dkt. 153, p. 18).[8]

Plaintiffs' reliance on *Riordan* is also misplaced because Plaintiffs did not establish a

violation of GBL §349, due to the fact that the case was settled.  The Court in *Riordan* correctly

interpreted GBL §349(h) to mean that "a court may award reasonable attorney's fees to a

prevailing plaintiff."  *Riordan*, 977 F.2d at 53 (emphasis added).  The *Riordan* court held that

limited attorneys' fees were "warranted" because the attorneys prevailed:  the district court in

*Riordan* granted summary judgment to the plaintiffs on the issue of defendant liability, and there

was a trial on the issue of damages and a jury rendered a verdict in favor of the plaintiffs.  *Id.* at

50.  Here, the plaintiffs settled for a fraction of what they were suing for, and they have presented

no evidence to this Court, or to the Magistrate, that would support a violation of GBL §349.

Had the case proceeded to trial, it is quite clear that Plaintiffs would not have been able to

prove the elements of a GBL §349(a) claim, which requires proof that any alleged deceptive act is

---

[7]   Although Plaintiffs argue that Mr. Altman was the only Finkelstein attorney whose time records were reconstructed, and that Mr. Altman's time charges after November 1, 2010 were not reconstructed, the Magistrate was not persuaded.  As found by the Magistrate, "no contemporaneous records reflecting any period have been supplied, and the spreadsheet provided by Mr. Altman incorporates both time spent before and after November 1.  Additionally, it is unclear whether the 41.5 hours spent by Mr. Altman's colleagues – some of which had been spent before November 1, 2010 and some thereafter – was contemporaneously recorded.  Records for these attorneys appear in the same style and format as Mr. Altman's records, and only one of the three attorneys for whose time this spreadsheet reflects has supplied a sworn affidavit regarding the Serin matter – yet this declaration fails to attest to whether or not the records were contemporaneously maintained, or even, for that matter, whether the number of hours indicated on the spreadsheet is accurate.  (See Polemi Decl. (Ex 15))."  (dkt 153, p. 10).

[8]   In opposition to Plaintiffs' fee award in this case, Defendants challenged the fees requested by Mr. Altman *inter alia* because he was first admitted to practice law in 2008, and because "he is ineligible to be admitted in New York because he obtained his law degree through an online course that is not recognized in New York."  (dkt. 152, p. 25-26).  Plaintiffs' claim that this argument was not raised before the Magistrate (Plaintiffs' Mem., p. 9) is false.  Plaintiffs' characterization of this argument as an "unfortunate *ad hominem* attack" is misplaced.  Mr. Altman's lack of qualification to be admitted as an attorney in New

directed at consumers. *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (*citing Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529 (1995), recognizing that Section 349 "requires a finding that is consumer-oriented"). The New York State legislature enacted this state law to "protect consumers, that is, <u>those who purchase goods and services for personal, family or household use</u>." *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 73, 709 N.Y.S.2d 74 (1st Dep't 2000) (emphasis added).

The analysis of whether a party can make a GBL §349 claim "must take due account of the threshold question … whether the conduct at issue is consumer-oriented." *Cruz v. NYNEX Information Resources*, 263 A.D.2d 285, 291, 703 N.Y.S.2d 103 (1st Dep't 2000) (automobile repair service, video service, and two small law firms that purchased "Yellow Pages" advertisements that were available to businesses only did not come within scope of "consumer" for Section 349 purposes). Northern's actions were clearly not aimed at consumers. Northern leases point of sale equipment to merchants. The leasing of credit card terminals is not aimed at consumers, and commencing lawsuits to enforce such leases is also not consumer oriented. *See Northern Leasing Systems, Inc. v. Turner*, 2008 N.Y. Slip Op. 32954, 2008 WL 4819601, (N.Y.Sup., New York County, Oct 15, 2008). For that reason, it is unlikely that Plaintiffs could have succeeded on their GBL §349 claim. Therefore, under *Scott*, all of the reconstructed time records of the Finkelstein attorneys must be excluded from the Court's award of fees in this case.

---

York is a fact that the Court can and should take into consideration in determining the reasonable hourly rate component of the fee award.

## **CONCLUSION**

For the reasons stated above, Defendants' objections should be sustained in their entirety,

and Plaintiffs' objections should be rejected.

Dated: New York, New York
     April 6, 2011

                         MOSES & SINGER LLP
                         *Attorneys for Defendants*

                         By: _____/s/_____
                              Robert D. Lillienstein, Esq.
                              John V. Baranello, Esq.
                         The Chrysler Building
                         405 Lexington Avenue
                         New York, New York 10174
                         Tel: (212) 554-7800