UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
                                                :
MELINDA SERIN, *et al.*                         :
                                                :          CASE NO. 7:06-CV-1625
                      Plaintiffs,               :
                                                :
vs.                                             :          OPINION & ORDER
                                                :          [Resolving Doc. No. 141, 153]
NORTHERN LEASING                                :
SYSTEMS, INC., *et al.*                         :
                                                :
                      Defendants.               :
                                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

         In this racketeering case, Plaintiffs move under 18 U.S.C. § 1964(c) and N.Y. Gen. Bus Law

§ 349 for an award of attorney's fees and costs.  [Doc. 141; Doc. 150; Doc. 151.]  The Defendants

oppose the motion.  [Doc. 152.]  The Plaintiffs replied.  [Doc. 149.]

         On February 24, 2011, Magistrate Judge Paul Davison recommended that the counsel's fee

application be granted and that the Court award $543,248 in fees and $43,006.46 in costs.  [Doc.

153.] The Plaintiffs and Defendants both file objection to the Report and Recommendation.  [Doc.

154; Doc. 155.]  The parties' objections are both opposed.  [Doc. 158; Doc. 160.] The Defendants

also replied.  [Doc. 161.]

         For the following reasons, the Court **GRANTS IN PART** the petition and awards $594,359

in fees and $43,006.46 in costs and expenses.

## I.  Background

         Plaintiffs Melinda Serin, Judson Russ, Long Sui Lim, Gordon Redner, Peri Kettler, and

Case No. 7:06-CV-1625
Gwin, J.

Thomas Smith filed this action in 2006, alleging violations of the civil Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 (RICO) and state law claims for deceptive business practices. [Doc. 1.]   On October 3, 2008 the Plaintiffs filed an amended complaint. [Doc. 26.]  In the amended complaint, the Plaintiffs allege that Defendants Northern Leasing Systems, Inc. ("Northern Leasing"), Jay Cohen, Rich Hahn, and Sara Krieger engaged in a racketeering scheme by forging leases bearing the Plaintiffs' names and signatures and then commencing lawsuits against them in New York City Civil Court in an effort to extort money.  [*Id.*] Defendant Northern Leasing finances equipment leases, including leases of credit card point-of-sale terminals.  [*Id.*; Doc. 43 at 3.]  Jay Cohen, Rich Hahn, and Sara Krieger are officers of Northern Leasing.  [Doc. 26 at 2-3.] In their amended complaint, Plaintiffs sought $10 million in damages, as well as costs and attorney's fees.  [*Id.* at 33.]

On December 18, 2009, the Court denied the Defendants' motion to dismiss in all respects. *Serin v. Northern Leasing Systems, Inc.*, 2009 WL 7823216 (S.D.N.Y., Dec. 18, 2009).  The Court set the case for trial on September 20, 2010, and later moved the trial due to November 15, 2010, due to scheduling conflicts.  [Doc. 48; Doc. 95.]  The case settled on the eve of trial and the Court held a brief hearing on November 15, 2010, during which the parties submitted a letter agreement setting forth the basic terms of the settlement.  [Doc. 138.]  As part of the settlement agreement, Judson Russ received $200,000, Melinda Serin received $25,000, Long Sui Lim received $45,000, Gordon Redner received $10,000, Thomas Smith received $15,000, and Peri Kettler received $0. In all, the Plaintiffs obtained a settlement in the amount of $295,000.  [*Id.*]

In their current application for fees, the Plaintiffs seek $3,457,282 in attorney fees and $43,006.46 in expenses, for a total award of $3,499,974.04, payable jointly by all of the Defendants.

Case No. 7:06-CV-1625
Gwin, J.

[Doc. 142 at 34; Doc. 150 at 9; Doc. 153 at 1-2.] In breaking down the fee total, the Plaintiffs

request: (1) $371,280 in fees for Attorney Krishnan Chittur (618.8 hours billed at $600/hour); (2)

$220,650 in fees for Attorney Andrey Strutinskiy (637.2 hours billed at $350/hour, $222/hour, and

$100/hour, depending on the work completed); (3) $5,616 in fees for Attorney Seth Lesser (8.5

hours billed at $666/hour); (4) $20,450.50 in fees for Attorney H. Rajan Sharma (58.43 hours billed

at $350/hour); and (6) $247,477.50 in fees for the work of Attorney Keith Altman and the other

attorneys at Finkelstein & Partners, LLP (582.3 hours billed at $425/hour). [Doc. 150 at 8-9; Doc.

153 at 2.]  In their requested fee calculation, the Plaintiffs also utilize a multiplier – multiplying the

fee total of $864,320.50 by four – which yields a total requested fee amount of $3,457,282. [Doc.

150 at 8-9; Doc. 153 at 2.]  The Plaintiff says that these fees are fair and reasonable, given the time

spent on the case, the complexity of the subject matter, the quality of the representation, and the

risks involved in prosecuting the suit. [Doc. 142; Doc. 149; Doc. 150.]  The Plaintiffs also request

$43,006.46 in expenses. [Doc. 142; Doc. 150 at 8-9; Doc. 153 at 2.]  The Defendants dispute this

fee total, saying: (1) that only Northern Leasing is liable for fees under the settlement agreement;

(2) that the Plaintiffs are not entitled to any fees as a matter of law; (3) that the fees requested are

excessive and are not supported by the time records; and (4) that there is no justification for use of

a multiplier. [Doc. 152; Doc. 155.]

        On February 24, 2011, Magistrate Judge Paul Davison recommended that the Court grant

the fee petition and award Plaintiffs' counsel $543,248 in fees and $43,006.46 in costs. [Doc. 153.]

Through some combination of the parties' various objections, the parties object to almost every

portion of the Report and Recommendation.  [Doc. 154; Doc. 155; Doc. 158; Doc. 160; Doc. 161.]

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations

Case No. 7:06-CV-1625
Gwin, J.

made by the magistrate judge." 28 U.S.C. § 636(b)(1).  When a timely objection is made, the district

court's review of the contested portions is *de novo*; otherwise, the district court may adopt the

portions not objected to so long as they are not facially erroneous.  *Pizarro v. Bartlett*, 776 F.

Supp.2d 815, 817 (S.D.N.Y. 1991); *La Torres v. Walker*, 216 F. Supp.2d 157, 159 (S.D.N.Y. 2000).

In considering an adequate and fair amount of attorneys' fees, the Court will take into

account, and also finds highly relevant, the necessity (or lack thereof) of many of the motions filed

in this case.  The parties spent the majority of their time squabbling over largely petty discovery

disputes, many resulting from Defendants failure to provide timely and compliant discovery

responses.  Indeed, by the Court's count, the parties filed at least nineteen discovery disputes over

a period of about eight months, necessitating thirteen Court orders, Court review of tens of

thousands of allegedly privileged documents, and several phone conferences.  Even after the

November settlement hearing, the Court has entertained and ruled upon two disputes over the basic

terms of the settlement (which the parties already had agreed upon in open court).  Morever, the

parties, particularly the Plaintiffs, have constantly peppered the Court with a variety of faxes and

letters complaining about the other side's conduct.  Often the Court felt as though it was refereeing

a dispute between squabbling teenagers, rather than adjudicating a serious lawsuit in federal court.

These disputes were largely unnecessary, could have been resolved by the parties on their

own, and generally wasted the Court's time.  The parties, as well as the attorneys representing them,

are equally to blame for the behavior.  The Defendants have purposely engaged in dilatory tactics,

disputing every discovery request of the Plaintiffs, even where that information was obviously

discoverable under Federal Rule of Civil Procedure 26; similarly, the Plaintiffs objected any time

the Defendants withheld information, even where it was clearly justified for the Defendants to do

Case No. 7:06-CV-1625
Gwin, J.

so.  Considering the sum for which this case ultimately settled, if either side had used even a fraction of the energy spent fighting over discovery to meaningfully discuss settlement, the case surely have settled months earlier for a mere fraction of the total cost incurred litigating this suit.

## II. Analysis

### II.A   Standard of Review for Attorney's Fees

Under 18 U.S.C. § 1964(c), a successful litigant to a RICO cause of action "shall recover . . . the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).  In the Second Circuit, courts utilize the "presumptively reasonable fee" approach in calculating fees, rather than the older "lodestar" approach.  *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009).  Under the current approach, the reasonable fee is determined by multiplying the attorney's reasonable billing rate by the reasonable number of hours spent on the case.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007).   In determining whether the rate and hours are reasonable, a court must "bear in mind all of the case-specific variable that [the Second Circuit] and other courts have identified as relevant to the reasonableness of the attorney's fees."  *Arbor Hill*, 493 F.3d at 117.  These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 114 n.3; *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983).  It is the burden of the applicant to establish entitlement to fees.  *Id.* at 437.

Under New York State's deceptive business practices statute, a "court may award reasonable

Case No. 7:06-CV-1625
Gwin, J.

attorney's fees to a prevailing plaintiff." N.Y. Gen. Bus. L. § 349(h); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208 (N.Y. App. Div. 2010). Unlike RICO, this statute is not mandatory and leaves discretion with courts to decide if an award of attorney's fees is appropriate. *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53-54 (2d Cir. 1992); *Berkshire Fashions Inc. v. Sara Lee Corp.*, 729 F. Supp. 21, 23 (S.D.N.Y. 1990).

In fashioning an award under Section 349, a court must take into account the types of factors that New York courts usually consider when awarding attorney's fees. *Riordan*, 977 F.2d at 53-54. Among those facts are "the time and skill required in litigating the case, the complexity of issues, the customary fee for the work, and the results achieved." *Riordan*, 977 F.2d at 53; *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp.2d 127, 132 (E.D.N.Y. 1998). Additionally, the lawyer's experience, ability and reputation, the amount in dispute, and the benefit to the client should also be considered. *In re Estate of Gutchess*, 498 N.Y.S.2d 297, 300 (N.Y. App. Div. 1986). To determine a starting point, a court may make a lodestar calculation. That figure should then be adjusted, taking the other relevant factors into account. *Wilson v. Car Land Diagnostics Ctr., Inc.*, 2001 WL 1491280, at *1-4 (S.D.N.Y. Nov. 26, 2001). Generally, the burden lies on the claimant to prove that the requested award of attorney's fees is reasonable. *In re Karp*, 537 N.Y.S.2d 510, 515 (N.Y. App. Div. 1989).

## II.B   *Plaintiffs' Right to Fees and Defendants' Liability to Pay*

First, the Court will address the Defendants' contention that the Plaintiffs' counsel is not entitled to fees as a matter of law because the Plaintiffs settled their claims, rather than winning a verdict at trial. [Doc. 152 at 25.] In the Second Circuit, courts have interpreted RICO to prevent an award of attorney's fees to party who successfully negotiates a settlement without a judgment on the merits. *Aetna Casualty & Surety Co. v. Liebowitz*, 730 F.2d 905, 907 (2d Cir. 1984). New York

-6-

Case No. 7:06-CV-1625
Gwin, J.

law is not clear whether a party who settles a case is entitled to attorney's fees under Section 349.[1]

However, regardless of the Plaintiffs' right to fees as a statutory matter, the Defendants waived their

right to challenge the Plaintiffs' entitlement to attorney's fees as part of the settlement agreement.

*Serin v. Northern Leasing*, 2010 WL 6501662 (S.D.N.Y., Dec. 10, 2010). This contractual provision

trumps any argument the Defendants may have regarding a right to fees and the Court finds that

Plaintiffs are entitled to an award. *Id.* Thus, the only issue still pending in this suit is the size of a

reasonable award.

Second, the Court rejects the Plaintiffs' argument that all of the settling Defendants, rather

than just Northern Leasing, are liable to make payment for attorney's fees and costs. *Id.* The

settlement letter, which was signed by the parties, clearly distinguished between the Defendants

collectively and Northern Leasing individually. *Id.* As the Court already ruled, the section of the

letter discussing attorney's fees applies only to Northern Leasing individually, and thus, only

Northern Leasing is liable to make payment for attorney's fees. *Id.* Accordingly, the Court again

rejects this argument.

Having considered and rejected both of parties' attempt to unilaterally change the language

of the settlement agreement, the Court will now proceed to determine an appropriate fee award.

*II.C   Reasonable Hours Determination*

i.   <u>Keith Altman's Lack of Contemporaneous Records</u>

In their fee application, the Plaintiffs seek $247,477.50 in fees for the 582.3 hours billed by

Keith Altman and the other attorneys at Finkelstein & Partners, LLP. [Doc. 142; Doc. 150.]  The

Defendants object to this total because Keith Altman did not maintain contemporaneous time records

---

[1]   One district court applying New York law allowed attorney's fees in a suit that was decided through arbitration since the award of the arbitrator was based on § 349 liability. *Domon v. Warsitz*, 1993 WL 152079, at *3 (W.D.N.Y. Apr. 26, 1993).

Case No. 7:06-CV-1625
Gwin, J.

until November 1, 2010, and instead, most of his billed hours are based on reconstructed records.
[Doc. 152 at 33-35.]   In the Report and Recommendation, to which the parties both object, Judge
Davison recommends reducing the hours billed by Altman by thirty-five percent, or to 378.5 hours,
largely due to the lack of contemporaneous records and vague entries.  [Doc. 153 at 7-11, 17-18.]
The Plaintiffs say this reduction is not appropriate, while the Defendants say the fee award should
be reduced even further.  [Doc. 154; Doc. 158.] Altman explains the lack of contemporaneous
records by saying that his firm usually works on a contingency basis and also says that his email and
telephone records are adequate to prove the number of hours that he worked on this matter.  [Doc.
151.]

In determining whether a requested fee is reasonable and justified, the Second Circuit
requires, except in unusual circumstances, that contemporaneous time records accompany an
application for statutory attorney's fees.  *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136, 1147 (2d Cir. 1983); *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010)
(stating that the only potential exception to the contemporaneous billing requirement is in the case
of unusual circumstances).  *See also Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986)
(emphasizing importance of records and stating while the Second Circuit "recognize[s] that other
court have held that affidavits summarizing time logs are acceptable . . . *Carey* places the burden
on producing these records on the attorney submitting the fees request.").  Thus, as to any fees that
are  recoverable under federal law, Second Circuit law is clear that except in unusual circumstances
a lack of contemporaneous records prevents a fee award.

With regard to the recovery of fees under N.Y. Gen. Bus. Law § 349, New York State courts
do not generally demand contemporaneous records.  *Riordan*, 977 F.2d at 53.  But, any award
provided under Section 349 falls entirely within the discretion of the Court, and unlike an award

Case No. 7:06-CV-1625
Gwin, J.

made under RICO, is not mandatory.  *See  Riordan*, 977 F.2d at 53-54; *Nwagboli v. Teamwork*

*Tansp. Corp*, 2009 WL 4797777, at *7 (S.D.N.Y., Dec. 7, 2009).  As such, the Court may validly

take the lack of records into account when determining an appropriate award of fees.

Keith Altman submits a spreadsheet of billed hours in support of his portion of the fee

application, which indicates that only the hours billed after November 1, 2010 were recorded

contemporaneously.  [Doc. 143-21; Doc. 143-22; Doc. 143-23; Doc. 143-24; Doc. 153 at 10.] It is

also unclear whether 41.5 hours billed by other Finklestein & Partners attorneys between October

28 and November 10, 2010, submitted as part of the fee application, are supported by

contemporaneous records.  [Doc. 143-23; Doc. 153 at 10.] Keith Altman offers no other explanation

for not keeping appropriate records other than stating his firm does not usually maintain

contemporaneous records in contingency cases.  [Doc. 151.]  The Court finds that a contingency

arrangement is not an unusual circumstance justifying a lack of contemporaneous records.

*Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 83-84 (S.D.N.Y. 1994) (no exception to *Carey*

rule for contingency lawyers).  Faced with similar fee applications, courts in this Circuit have

entirely barred fee recovery or have reduced the hours by a flat percentage rate.  *See Scott*, 626 F.3d

at 133-34; *Ward v. Brown*, 899 F. Supp. 123, 129-30 (W.D.N.Y. 1995).

Accordingly, the Court finds that the analysis in the Report and Recommendation is largely

correct and also finds that the hours billed by Keith Altman and the other Finklestein & Partners

attorneys should be reduced due to the lack of contemporaneous records.[2/]   As contemporaneous

records are not mandated under New York State law, the Court finds that some fee award is justified,

but that it should be significantly reduced.  This is particularly true since a number of Keith

---

[2/] The Court agrees with the analysis in the Recommendation that questions the reasonableness of many of Keith Altman's time entries, particularly with regard to time spent in depositions.  [Doc. 153 at 9.]

Case No. 7:06-CV-1625
Gwin, J.

Altman's time entries indicate that he was billing hours researching and preparing the RICO claim, the recovery of which is entirely barred for lack of contemporaneous record keeping. [Doc. 143-22.] After considering the Defendants' other objections to the fee request, some of which also apply to Keith Altman, the Court will determine a reasonable hours total.

    ii.   <u>Vague Records</u>

The Defendants also object to time entries that they say are too vague to allow the Court to determine if the billed time was reasonable. [Doc. 152 at 35; Doc. 155 at 10-11.] The Plaintiffs say that these records are sufficiently detailed and that no reduction in hours is necessary. [Doc. 154 at 17-21.] Under *Carey*, time entries must be sufficiently detailed to allow a court to determine if the time and labor expended was reasonable. *Carey*, 711 F. 3d at 1148; *Simmonds v. New York City Dep't of Corr.*, 2008 WL 4303474, at *8 (S.D.N.Y., Sept. 16, 2008); *Williams v. New York City Hous. Auth.*, 975 F. Supp. 317, 327 (S.D.N.Y. 1997). New York State law also requires that time entries be sufficiently detailed to award fees under Section 349. *Schwartz v. Chan*, 142 F. Supp.2d 325, 331 (E.D.N.Y. 2001). While vague descriptions such as these are not fatal to a fee application, unspecific or vague records are generally removed. *See Nu-Life Const. Corp. V. Board of Educ. Of City of New York*, 795 F. Supp. 602, 607 (E.D.N.Y. 1992). This can be accomplished through excision of the vague entries or reducing the total hours by a flat percentage. *See F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987); *Wise v. Kelly*, 620 F. Supp.2d 435, 442 (S.D.N.Y. 2008).

Upon review of the records submitted, the Court finds that a number of entries fail to adequately explain the subject matter and tasks involved. As Judge Davison noted in the Recommendation, the billing records are replete with vague entries, such as "Review documents," "Doc Review," "Review of document production," "research," and "Miscellaneous trial preparation

Case No. 7:06-CV-1625
Gwin, J.

activities." [Doc. 153 at 12.]   In particular, the Court finds the records of Keith Altman to be the most problematic, although to some extent the records of both Chittur and Strutinsky are also too vague to allow for meaningful judicial review.  *See Barfield v. New York City Health & Hosps. Corp.*, 2006 WL 2356152, at *1 (S.D.N.Y., Aug. 11, 2006) (vague entries stating that documents or materials were reviewed "without any indication of what materials or documents were reviewed or of what that review consisted" are insufficient); *Krear*, 810 F.2d at 1265.

Counsel need not provide a comprehensive blow-by-blow of every conversation and task, but it is necessary for them to provide a sufficient level of detail to allow the Court to consider the necessity of the tasks completed.  *Meriweather v. Coughlin*, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (reducing total award where entries too vague to allow meaningful review).  For many records in the hours logs, it is not possible to determine even the basic the subject matter of the activity.  *See Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 540 (S.D.N.Y. 2008).   Moreover, as noted by the Recommendation, many of Keith Altman's reconstructed records lump multiple tasks into one entry, making it nearly impossible for the Court to determine whether the time spend on those activities was reasonable.  [Doc. 143-22; Doc. 153 at 13.] Additionally, Altman measured his time records in one-hour increments, rather than the normal tenth-of-an-hour increments.  *See MZH, AG v. State Indus.-Trade Unitary Enter. "Belyaya Russ"*, 2003 WL 22852895, at *1 (S.D.N.Y., Nov. 10, 2003) (stating that tenth-of-an-hour increments are the preferred method of timekeeping).  This inaccurate manner of timekeeping also weighs in favor of the Court reducing the total number of hours credited to Altman.[3/]

---

[3/] Because Altman apparently reconstructed his billing partially through phone records, the Court has some concern that he has not accurately determined whether calls were made on the current suit, or on other related cases in which Moses & Singer is the defense counsel and Chitter & Associates is a co-counsel.  This fact further weighs in favor of reducing Altman's total hours calculation.

Case No. 7:06-CV-1625
Gwin, J.

As such, the Court finds that some reduction of total hours is warranted due to these vague entries, particularly for Keith Altman, but also for Krishnan Chittur and Andrey Strutinskiy. These reductions will be taken into account in making a final hours determination. *See Carey*, 711 F.2d at 1146 (percentage reductions permissible to "trim fat" from a fee application); *United States Football League v. National Football League*, 704 F. Supp.474, 477 (S.D.N.Y. 1989) (ten percent reduction of ultimate fee award for numerous vague entries on time records).

  iii. <u>Multiple Attorneys at Depositions</u>

The Defendants also object to the billing of hours related to attendance at depositions. Specifically, the Defendants object to 53.1 hours that Andrey Strutinskiy spent videotaping and attending depositions and 18.6 hours that Krishnan Chittur spent attending depositions that Keith Altman conducted. [Doc. 152 at 36-37.] The Court finds the time spent by both Strutinskiy and Chittur at the depositions is reasonable. First, the Court finds that Chittur's attendance at the depositions was reasonable and appropriate because he is lead counsel. *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 541 (S.D.N.Y. 2008) (finding duplicative hours reasonable where two attorneys attended depositions of key witnesses). Second, the Court finds persuasive the Plaintiffs' argument that Strutinskiy's attendance at the depositions was reasonable, particularly considering that his presence allowed the parties to forgo hiring a deposition videographer, which the Plaintiffs testify would have cost $350 per hour. [Doc. 154 at 24.] In their objection to the Recommendation, the Plaintiffs also describe the work completed by Strutinskiy at the depositions, highlighting the fact that he helped to suggest exhibits, to research legal issues, and to discuss the questioning on breaks. [Doc. 151 at 5; Doc. 154 at 23-24.] The Court finds the presence of Strutinskiy at these depositions reasonable, particularly given the complexity of this case. *See Pappas v. Watson Wyatt & Co.*, 2008 WL 45385, at *6 (D. Conn., Jan. 2, 2008).

Case No. 7:06-CV-1625
Gwin, J.

      iv.  <u>Billing Completed on Other Cases</u>

      The next issue the Court will consider is whether the Plaintiffs' counsel may recover fees for billing completed in other related cases. Specifically, the Plaintiffs seek to recover for hours billed while defending the underlying actions filed by Northern Leasing in New York City Civil Court. [Doc. 142; Doc. 149 at 19; Doc. 154 at 13.] The Plaintiffs say that these hours should be recoverable because the litigation in those cases is "inextricably linked" to the issues raised in the present suit. [Doc. 149 at 19; Doc. 154 at 13.] The Defendants object to these fees, saying they are not recoverable because the Plaintiffs fail to show that the work-product was actually used in this action. [Doc. 158 at 21-22.]

      In making their claim for fees billed on the related state court cases, the Plaintiffs rely upon the precedent of *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, in which the Third Circuit Court of Appeals held that recovery for fees or expenses incurred in related litigation may be recoverable where a plaintiff "prove[s] that the fees and expenses incurred in the other litigation resulted in work product that was actually utilized in the instant litigation, that the time spent on the other litigation was 'inextricably linked' to the issues raised in the present litigation, and that the plaintiff has not previously been compensated for those fees and expenses . . ." 95 F.2d 414, 420 (3d Cir. 1993). To recovery under this rationale, a plaintiff must prove that the work in the first case "obviated the performing that same work in the other cases." *Gares v. Willingboro Tp.*, 1995 WL 125873, at \*7 (D.N.J. Mar. 10, 1995). Although this recovery rule has not ever been explicitly accepted by the Second Circuit, courts in this Circuit have looked upon it favorably. *Stryker Corp. v. Intermedics Orthopedics*, 898 F. Supp. 116, 124-25 (E.D.N.Y. 1995).

      Whether or not *Gulfstream* allows for recovery of fees on related cases, the Court finds, consistent with the Report and Recommendation, that the Plaintiffs fail to prove that the time spent

Case No. 7:06-CV-1625
Gwin, J.

during the underlying litigation resulted in a work product actually used in the current suit or that the work there somehow obviated the need for duplicative effort. [Doc. 153 at 16.] The relevant entries in Krishnan Chittur's and Andrey Strutinskiy's time reports do not provide the Court any insight into these issues. [Doc. 143-17; Doc. 143-33.] As the Plaintiffs carry the burden of proving that the activities are related and fail to do so, the Court denies this portion of the fee application.

More importantly, and aside from a *Gulfstream* theory of recovery, the Court notes that any costs or expenses, including attorney's fees, that the Plaintiffs allegedly suffered as a result of the Defendants filing of lawsuits in New York State is more appropriately is recoverable as damages. Similar causes of action, such as malicious prosecution or abuse of process, generally allow a plaintiff to recovery past attorney fees as a measure of damages. *See, e.g.*, *Avildsen v. Prystay*, 204 A.D.2d 154, 155 (N.Y. App. Div. 1994) ("Legal fees and damages for emotional distress are both recoverable under a cause of action for malicious prosecution); *Kizer v. Finch*, 730 So.2d 1197 1201-02 (Ala. Civ. App. 1998) (cost of defending underlying suit recoverable in abuse of process or malicious prosecution claim). In the amended complaint, the Plaintiffs seek damages for "time and resources [wasted] in responding to defendant's dunning calls, threats, lawsuit in New York, retaining lawyers and incurring legal expenses therefor." [Doc. 26 at 29.] As such, this an amount that was already have been taken into account when negotiating each Plaintiffs' settlement agreement and is not now recoverable again as a separate award of attorney's fees. *See Millenium Equity Holdings, LLC v. Mahlowitz*, 925 N.E.2d 513, 528 (Mass. 2010) (stating that fees for defending an actionable lawsuit are considered compensatory damages and are not recoverable as attorney fees).

    v.  <u>Post-Settlement Fees</u>

The Plaintiffs also seek recovery for the hours spent formalizing and finalizing the settlement

Case No. 7:06-CV-1625
Gwin, J.

agreement. [Doc. 142.]  The Defendants object to the inclusion of these hours, saying that the time

spent formalizing the settlement should not be recoverable.  [Doc. 152 at 44-45.]  The Court agrees

with the Defendants.  The vast majority of the time spent wrangling over the terms of the settlement

was unnecessary.  First, the Plaintiffs filed a merit-less motion accusing the Defendants of materially

altering the terms of the settlement, when in reality, the Plaintiffs were attempting to surreptitiously

amend the settlement to make all of the Defendants, rather than just Northern Leasing, liable for

attorneys' fees and costs.  *Serin v. Northern Leasing*, 2010 WL 6501662 (S.D.N.Y., Dec. 10, 2010).

Second, the parties spent many  hours arguing over the terms of the settlement, and then also spent

many hours briefing the dispute for the Court, all over an issue the Court described as "difficult to

understand and slightly ridiculous."  *Serin v. Northern Leasing*, 2011 WL 1437011, at *1-2

(S.D.N.Y., Jan. 28, 2011).  The Court continued by concluding that "[t]he settlement could easily

have been completed weeks ago if the parties were not purposely delaying the drafting process by

squabbling over every petty issue." *Id.*  These excessive and wasteful fees, incurred for such little

benefit, are not reasonable and may not be recovered through statutory fee shifting.

Second, the Plaintiffs' counsel also seeks to recover fees incurred in making this application

to the Court.  [Doc. 142.]  Generally, time spent completing a fee application is compensable.  *See

Gagne v. Maher*, 594 F.2d 336, 343-44 (2d Cir. 1979); *United States Football League*, 704 F. Supp.

at 486.  However, where those fees are excessive, a flat percentage rate discount may be applied.

*Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149,  173 (2d Cir. 1998).  The Recommendation estimates that

Plaintiffs had spent 115.7 hours litigating the fee application and concludes that a significant

reduction is warranted due to inconsistencies and typos in the briefing and submissions.  [Doc. 153

at 17.]  The Court does not find that rationale persuasive, but nonetheless agrees with the outcome.

First, the Court does not consider these various inconsistencies in the application so serious as to

Case No. 7:06-CV-1625
Gwin, J.

warrant a significant reduction in hours. [Doc. 154 at 21-22.] However, the Court does find the amount of time spent in this fees application, particularly the excessive and repetitive briefing, warrants some reduction. For example, the fees requested that are related to the application – approximately $60,000 – are larger than the final settlement for all but one of the Plaintiffs. Indeed, the excess of time invested in this application is representative of the willingness of the parties to this suit to waste time and money, even though it is not in the best interests of their clients. Therefore, the Court finds that some reduction in the number of hours billed towards this fee application is justified.

      vi.  <u>Total Reasonable Hours</u>

After considering the factors listed by the Second Circuit in *Abor Hill*, as well as the various arguments set forth by the parties, the Court finds that the hours attributed to Keith Altman and the other attorneys at Finkelstein & Partners, LLP should be reduced by thirty-five percent to 378.5 hours; that the hours attributed to Krishnan Chittur should be reduced by ten percent to 556.9 hours; and that the hours attributed to Andrey Strutinskiy should be reduced by six percent to 599 hours. *See Carey*, 711 F.2d at 1146 (in cases where voluminous records have been produced a flat fee percentage reduction is an appropriate means of reducing excess fees).

*II.D  Reasonable Rates Determination*

An attorney's reasonable hourly rate must be "calculated according to the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984), and "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *id.* at 895 n.11. The relevant community is "the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Authority,* 575 F.2d 170, 174 (2d Cir. 2009). The party seeking an award of fees has "the burden to produce satisfactory evidence in addition to the

Case No. 7:06-CV-1625
Gwin, J.

attorney's own affidavits showing that the requested rates are at the prevailing market level." *Reiter v. Metro. Transp. Auth. of N.Y.*, 2007 WL 2775144, at *8 (S.D.N.Y., Sept. 25, 2007).

       i.  <u>Prevailing Market Rate for Keith Altman</u>

The Plaintiffs seek to recover fees at an hourly rate of $425 per hour for the work completed by Keith Altman and the other attorneys at Finklestein and Partners.  [Doc. 142 at 20.]   The Plaintiffs say that this is a reasonable rate, given that Keith Altman is experienced in e-discovery, ably conducted depositions on his own, and has been involved in many lawsuits over his fifteen years working in the legal field.  [Doc. 154 at 24-26.]  The Defendants object to this rate, pointing out that Altman has only been admitted to practice since 2008, received his J.D. from an unaccredited law school, and is not eligible for admission in New York State.  [Doc. 152 at 43.]  The Report and Recommendation concludes that the proposed rate of $425 per hour is excessive, given Altman's experience, and instead recommends a rate of $275 per hour.  [Doc. 153 at 23.]

The Court agrees with the Recommendation that $425 per hour is an excessive rate for an attorney admitted in 2008.  *See LV v. NYC Dep't of Educ.*, 700 F. Supp.2d 510, 519-20 (S.D.N.Y. 2010) (finding that a junior associate who participated in pre-trial proceedings and conducted depositions was entitled to a reasonable rate of $275 per hour).  Regardless of Altman's other qualifications, his recent admission to the bar, as well as his inability to be admitted in New York State, would undoubtedly reduce the rate at which clients would be willing to pay for his services. *See Malletier v. Apex Creative Int'l Corp.*, 687 F. Supp.2d 347, 359 (S.D.N.Y. 2010) (finding that the hourly rate should be "what a reasonable, paying client would be willing to pay").  Moreover, although Altman possesses great experience in e-discovery and forensic data analysis, only a percentage of his work on this case utilized those specialized skills.

Nonetheless, the Court finds the recommended reduction to $275 per hour unduly severe.

-17-

Case No. 7:06-CV-1625
Gwin, J.

Although Altman was admitted only recently, he does possess much greater experience litigating cases than do most newly minted attorneys. Altman has been involved in litigation for over fifteen years, both as a licensed attorney and as a discovery consultant. [Doc. 143-21.] In this regard, Altman presents the unusual case of a recently admitted attorney who possesses a great deal of litigation experience. The Court would be ignoring the realities of modern litigation if it did not take into account the value of an attorney who is skilled at e-discovery. As such, the Court finds that a reasonable billing rate for Keith Altman's work is $325 per hour. *See Reiter v. Metropolitan Transp. Authority of State of New York*, 2007 WL 2775144, at *7 (S.D.N.Y., Sept. 25, 2007) (collecting cases and finding that experienced counsel at small Southern District firms normally receive rates between $250 and $425 per hour).[4]

    ii. <u>Chittur Performing Associate Tasks</u>

The Defendants also object to 125 hours of legal research billed by Krishnan Chittur at a rate of $600 per hour. The Defendants say this hourly rate is excessive since a junior associate should have performed this research at a lower billing rate. [Doc. 152 at 36-39.] The Plaintiffs argue that it was impossible to delegate all of this work to an associate since Chittur & Associates is a small firm. [Doc. 154 at 16.]

The Court finds the Plaintiffs' argument persuasive on this point. It is inevitable in smaller law firms that more experienced attorneys must complete work that would be completed by a junior associate at a larger firm. Indeed, the lean staffing at Chittur & Associates prevented Chittur from delegating all legal research to junior attorneys. *See Shannon v. Fireman's Fund Ins. Co.*, 156 F.

---

[4] The Court is not persuaded by the Plaintiffs' argument that Altman should receive a fee greater than his $325 per hour consulting fee, as his work on this case combined his expertise and the professional responsibility of being an attorney. [Doc. 154 at 25.] This argument ignores the fact that when Altman is consulting all of the time is spent working on topics where he is an expert, whereas here, much of his billed time was unrelated to his e-discovery expertise.

Case No. 7:06-CV-1625
Gwin, J.

Supp.2d 279, 302 (S.D.N.Y. 2001) (noting that a reduction warranted where a senior attorney has

the capacity to delegate tasks to a younger attorney).   Additionally, the greater cost of Chittur

performing legal research is somewhat offset by Chittur & Associate's practice of not billing

Westlaw or Lexis charges to their client, a $55,000 expense in this case. [Doc. 154 at 17.]

Therefore, the Court does not find reducing Chittur's rate justified simply because he performed

legal research that could have been completed by a junior associate at a larger firm.

The Court also does not find it appropriate to heavily discount Chittur's billing rate because

he works at a smaller firm.   [Doc. 153 at 19-21.]   Indeed, although a small firm, Chittur &

Associates maintains an office on Madison Avenue, near Grand Central Station.  As such, cases

reducing the billing rate for smaller firms due to lower overhead costs have much less application

here.  *See Saunders v. Salvation Army*, 2007 WL 927529, at *3 (S.D.N.Y., Mar. 27, 2007) (reduction

appropriate where firm with less than two employees did not pay rent).   Moreover, Chittur &

Associates regularly litigates complex cases, such as class actions or constitutional claims,

suggesting a higher rate than would normally be expected for such a small firm is appropriate.  The

Court finds the analysis in *Wise v. Kelly* particularly persuasive; in that case, the court found that

a  smaller civil rights firm, who occupied office space at Rockefeller Center, deserved a higher

billing rate due to the expense of maintaining an office in New York City.  620 F. Supp.2d 435, 445

(S.D.N.Y. 2008).

Nonetheless, the Court does find that the requested rate of $600 per hour is somewhat

excessive, even for an experienced attorney in Manhattan.  *See Heng Chan v. Sung Yue Tung Corp.*,

2007 WL 1373118, at *3 (S.D.N.Y., May 8, 2007) (finding a reasonable rate for a partner at

Skadden, Arps, Slate, Meagher and Flom LLP  is $450 per hour).  Indeed, under the rationale of

*Wise*, the Court must still consider market rates among similar firms.  *Wise*, 620 F. Supp.2d at 446-

Case No. 7:06-CV-1625
Gwin, J.

47. The Court finds, given the subject matter of this suit and the type of cases normally litigated by Chittur & Associates, that the billing rate for mid-sized civil rights firms is an appropriate comparison. *See, e.g., Id.* at 435 (finding rates of $425 per hour reasonable for partner with eighteen years of civil rights litigation experience);*Garcia v. Yonkers School Dist.*, 499 F.Supp.2d 421, 426 (S.D.N.Y. 2007) (rate of $350 per hour for experienced civil rights litigator); *Sheehan v. Metro. Life Ins. Co.*, 450 F. Supp.2d 321, 328 (S.D.N.Y. 2006) (rates of $425 for senior partner and $350 for junior partner of small firm in ERISA case); *Martinez v. Port Auth. Of New York & New Jersey*, 2005 WL 2143333 at *26 (S.D.N.Y., Sept. 2, 2005) (rates of $400 per hour for partner and $325 per hour for co-counsel in civil rights case); *Kuper v. Empire Blue Cross & Blue Shield*, 2003 WL 23350111, at *9-10 (S.D.N.Y., Dec. 18, 2003) (rate of $425 per hour for lead attorney of small firm in civil rights case); *Baird v. Boies, Schiller & Flexner*, 219 F.Supp.2d 510, 523 (S.D.N.Y. 2002) ($375 per hour to partner at small firm); *Marisol v. Giuliani*, 111 F.Supp.2d 381, 387 (S.D.N.Y. 2000) ($350 for civil rights attorneys with more than fifteen years of experience). Given the rates found to be reasonable in those cases, particularly the$425 per hour rate in *Wise*, and adjusting for inflation, the Court finds that a rate of $450 per hour is reasonable compensation.

### iii. Associates Billing for Non-Legal Work

The Defendants also object to certain tasks performed by Andrey Strutinskiy, saying that these tasks are non-legal in nature, and thus should not be billed at an associate rate. [Doc. 152 at 36-39.] In response, the Plaintiffs have reduced Strutinskiy's billing rate from $350 per hour, to $222 per hour or $100 per hour certain tasks. [Doc. 149 at 18.] For example, the Plaintiffs reduced Strutinskiy's rate to $100 per hour for 22.8 hours he spent burning CD's, entirely removed billing for 2.2 hours of messenger work, and also reduced the billing rate to $225 per hour for 5.1 hours of paralegal work. [*Id.* at 18-19.] Although these reductions are warranted, and somewhat reduce the

Case No. 7:06-CV-1625
Gwin, J.

need for a lower billing rate across the board, the Court finds that Strutinskiy's time logs are still filled with numerous tasks that necessitate a lower billing rate. Moreover, the generally vague nature by which Strutinskiy recorded his time makes it impossible for the Court to assign higher or lower billing rates depending on the exact task completed. [Doc. 143-17.] Thus, the Court concludes that a modest reduction from $350 per hour to $325 per hour is warranted given the non-legal nature of many of Strutinskiy's entries.

   iv. <u>Conclusion on Fee Rates</u>

  Having considered the factors set for in *Arbor Hill*, the arguments of the parties, and all of the other circumstances of the case, the Court finds that the following billing rates are reasonable: $450 per hour for Krishnan Chittur, $325 per hour for Andrey Strutinskiy, and $325 per hour for Keith Altman and the other attorneys at Finklestein and Partners.

*II.E Multiplying or Dividing the Total Fee Award*

  In their application for fees, the Plaintiffs request that the Court multiply the total fee award by a multiplier of four. [Doc. 142 at 30; Doc. 154 at 29.] The Plaintiffs say that since this case was complicated and was taken on a contingency basis, that they are entitled to have the fee award multiplied. [Doc. 142 at 30.] The Defendants oppose this request, saying that use of this type of multiplier is only permissible in class actions. [Doc. 152 at 45; Doc. 158 at 23.]

  The use of a multiplier is only proper in "'the *rare* case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was exceptional.'" *In re Agent Orange Product Liability Litig.*, 818 F.2d 226, 234 (2d Cir. 1987) (quoting *Blum v. Stentson*, 465 U.S. 886, 889 (1984)). This multiplier may be used to adjust a lodestar calcuation in light of a variety of factors, including the risk of the litigation and the degree of success. *Goldberger v.*

-21-

Case No. 7:06-CV-1625
Gwin, J.

*Integrated Res., Inc.*, 209 F.3d 43, 47-53 (2d Cir. 2000).

The cases cited by the Plaintiffs for the general proposition that lawyers who "litigate[] a complex cases under a contingency fee arrangement" are entitled to use of a multiplier do not support their argument, and instead, those cases show that while use of a multiplier may be appropriate in common fund actions, such as a class action or shareholder derivative suit, that they are far less common in lawsuits brought by individual plaintiffs.  *See In re AOL Time Warner S'holder Derivative Litig.*, 2010 WL 363113 (S.D.N.Y., Aug. 23, 2010); *deMunecas v. Bold Food, LLC*, 2010 WL 3322580 (S.D.N.Y., Aug. 23, 2010); *In re Comverse Technology, Inc. Securities Litigation*, 2010 WL 2653354 (E.D.N.Y., June 24, 2010); *Steinberg v. Nationwide Mut. Ins. Co.*, 612 F.Supp.2d 219 (E.D.N.Y. 2009); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp.2d 570 (S.D.N.Y. 2008); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138 (S.D.N.Y., Aug. 24, 1992).   In the current lawsuit, there is no common fund and any of the other factors – such as the complexity of the litigation, the amount of success, or the degree of risk – that are used to determine a multiplier have already been taken into account in calculating a reasonable fee.[5/]   *See also Davis v. Mutual Life Ins. Co. Of N.Y.*, 6 F.3d 367, 382 (6th Cir. 1993) (holding that "[u]nder RICO, a contingent fee arrangement does not justify the use of a multiplier").   As such, the Court finds that use of a multiplier is not appropriate in this case.

In their opposition to the fee application, the Defendants make a similar request, arguing that the Court should divide the total fee award by seventy-eight percent to reflect the Plaintiffs' "lack

---

[5/] The cases cited by the Plaintiff for the proposition that multipliers in non-common fund actions are used regularly are not particularly helpful.  The cases are all from courts who explicitly make use of a lodestar approach or are awards calculated under state law.  *See  Leuzinger v. County of Lake*,  2009 WL 839056, at *3-12 (N.D. Cal., Mar. 30, 2009); *Storfer v. Guarantee Trust Life Ins. Co.*, 2011 WL 213461, at *1-6 (S.D. Fla. 2011); *Donovan v. Poway Unified School Dist.*, 167 Cal. App.4th 567, 628 (Cal. App. Ct. 2008).  Where there is directly on point case law from this Circuit, the Court finds these out-of-Circuit cases unpersuasive.

Case No. 7:06-CV-1625
Gwin, J.

of success." [Doc. 155 at 12-15.] Specifically, the Defendants say that since the Plaintiffs recovered only a fraction of the amount that they demanded with the amended complaint that the total award should be reduced to reflect this arguable failure. [*Id.* at 13.] The Plaintiffs oppose the request, saying that regardless of the total settlement that the Plaintiffs achieved great success on the merits. [Doc. 160 at 19-23.]

The most important factor in assessing the reasonableness of an attorney's fees award "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). There is not a requirement that attorney's fees awards be proportional to the recovery obtained. *See Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (rejecting rule of proportionality in civil rights cases); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1168 (2d Cir. 1993) (upholding fee roughly three times the size of the damages); *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7 th Cir. 1990) (rule of proportionality does not apply to RICO claims); *Northeast Women's Center*, 889 F.2d 466, 474-75 (3d Cir. 19898) (same).[6/] However, the Court may still consider the degree of success achieved in determining whether a fee award is reasonable. *Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008); *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir. 1997).

The Plaintiffs overall settlement figure is significantly smaller than the total amount of damages requested in the complaint ($295,000 v. $10 million) and is much smaller than the damages figures suggested by the Plaintiffs' damages expert. [Doc. 26 at 33.] However, that comparison is not an accurate reflection of the Plaintiffs' actual degree of success. Based upon the expert reports submitted to the Court prior to trial, the vast majority of the damages sought by the Plaintiffs were

---

[6/] Awards made under Section 349 also need not be proportional with the damages won, although like under RICO, the success of the suit should be considered. *Wilson v. Car Land Diagnostics Ctr., Inc.*, 2001 WL 1491280, at *1-4 (S.D.N.Y. Nov. 26, 2001); *Diaz v. Paragon Motors of Woodside, Inc.*, 2007 WL 2903920, at *8 (E.D.N.Y. Oct. 1, 2007).

Case No. 7:06-CV-1625
Gwin, J.

based upon an untenable and unreliable theory of loss of value of life. It is highly unlikely the Court would have admitted this testimony at trial or would have allowed this theory to be presented to the jury. Removing this untenable portion of the requested damages, it is apparent that all of the Plaintiffs, aside from Peri Kettler, received the vast majority of their compensable damages. [Doc. 138.] Accordingly, having found that the Plaintiffs were generally successful in obtaining their likely provable damages, the Court rejects the Defendants' request to decrease the fee award by a flat percentage.

*II. F Expenses*

The Defendants do not object to the Plaintiffs' requested sum for costs and expenses. [Doc. 142 at 31; Doc. 152; Doc. 153 at 24; Doc. 155.]   The Court therefore awards the Plaintiffs $43,006.46 in expenses. *LeBlanc-Sternberg v. Fletcher*, 143 F. 3d 748, 763 (2d Cir. 1998).

**IV. Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART** the Plaintiffs' fee application. First, as the Defendants do not object to the fees requested for Seth Lesser and H. Rajan Sharma, the Court **GRANTS** Lesser $5,616 in fees (8.5 hours billed at $666/hour) and Sharma $20,450.50 in fees (58.43 hours billed at $350/hour). Second, the Court **GRANTS** the Plaintiffs' request for expenses and costs and awards the Plaintiffs $43,006.46 in expenses. Third, the Court **GRANTS IN PART** the fee application as to Krishnan Chittur, Keith Altman, and Andrey Strutinskiy; the Court finds that a reasonable hourly rate for Krishnan Chittur is $450 per hour and also finds that a reasonable hours total for Chittur is 556.9 hours, yielding an award of $250,605; that a reasonable hourly rate for Andrey Strutinskiy is $325 per hour and that a reasonable hours total for Strutinskiy is 599 hours, yielding an award of  $194,675; and that a reasonable hourly rate for Keith Altman and the other attorneys at Finklestein and Partners is $325 per hour and that a reasonable hours total is 378.5

Case No. 7:06-CV-1625
Gwin, J.

hours, yielding a total fee award of $123,012.50.  In total, the Court awards the Plaintiffs $594,359

in fees and $43,006.46 in expenses.

IT IS SO ORDERED.


Dated: April 19, 2011                              s/      *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE